HONORABLE JAMES L. ROBART

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

VIVENDI S.A.,                                    )
                                                 )        NO.  CV6-1524 JLR
              Plaintiff,                          )
                                                 )
       v.                                        )        SECOND AMENDED
                                                 )        COMPLAINT
T-MOBILE USA, INC., T-MOBILE                      )
DEUTSCHLAND GMBH, T-MOBILE                        )        Jury Trial Demanded
INTERNATIONAL AG, DEUTSCHE TELEKOM               )
AG, AND ZYGMUNT SOLORZ-ZAK,                       )
                                                 )
              Defendants.                         )

9

10

11

12

13

14

15

16

## INTRODUCTION

17        1.        Plaintiff Vivendi S.A. ("Vivendi") brings this action under the Racketeer

18   Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(b), (c) and (d) (the "RICO Act")

19   against Defendant Deutsche Telekom AG and its T-Mobile subsidiaries (collectively "T-

20   Mobile") and Defendant Zygmunt Solorz-Zak ("Solorz"), a convicted criminal and Polish

21   oligarch with undue influence in Poland.  Defendants engaged in a pattern of racketeering

22
     activity, including acts of wire fraud committed in the United States, in order to take over by
23
24   corruption an enterprise, Polska Telefonia Cyfrowa sp. zo.o. ("PTC"), which is the largest

25   wireless telephone company in eastern Europe and an integral part of the T-Mobile global

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

wireless network based in the United States in Seattle, Washington. In addition, Defendants have conducted the affairs of two enterprises in a corrupt manner — first, Elektrim S.A. ("Elektrim"), a Polish company controlled by Solorz, and second, the T-Mobile global wireless network, based in the United States — through a pattern of racketeering activity, including U.S. wire fraud. In 1999, prior to Solorz's takeover, Elektrim entered into a joint venture agreement with Vivendi to legitimately acquire and exercise control over PTC through a joint venture company, Elektrim Telekomunikacja Sp. z o.o ("Telco"). Starting in 1999, pursuant to a series of joint venture agreements, Elektrim transferred 48% of the shares of PTC (the "PTC Shares") to Telco, and Vivendi invested in several steps $2.5 billion in Telco in exchange for 51% ownership of Telco.

2.      T-Mobile conspired with Elektrim, under Solorz's control (a) to steal the PTC Shares from Telco and illegally transfer them to T-Mobile, (b) to strip from Elektrim a substantial portion of its assets, (c) to operate Elektrim and the T-Mobile network as corrupt enterprises and to expand the T-mobile network by adding PTC to it through a pattern of racketeering activity, and (d) to improperly expand and put T-Mobile USA, Inc. in a stronger position where it could acquire $4.182 billion of Advanced Wireless Services spectrum from the U.S. Federal Communications Commission. As a direct result of these acts, T-Mobile ended up with control over PTC, and Solorz – who controls Elektrim – ended up being paid twice (through Elektrim) for the same PTC Shares as well as receiving other benefits. In contrast, Vivendi has received nothing for its $2.5 billion investment in Telco.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 2
OHS East:160157671.8

3.      Defendants' misconduct in furtherance of their racketeering activity occurred in material part in the United States and involved among other things, Thomas Winkler, a key T-Mobile executive, integrating PTC and T-Mobile USA, Inc., which is headquartered in Seattle, and which is the most significant revenue-generator for the T-Mobile network into T-Mobile's global enterprise.  Upon information and belief, T-Mobile used the U.S. wires, to among other things, intentionally mislead U.S. bondholders and T-Mobile American Depository Receipt ("ADR") shareholders into believing that T-Mobile lawfully controlled and owned PTC, and to purposefully misrepresent their global earnings by incorporating PTC's assets and value as part of T-Mobile's consolidated financial reports, putting T-Mobile USA, Inc. in a stronger position to bid and purchase $4.182 billion in Advanced Wireless Services spectrum from the U.S. Federal Communications Commission and to otherwise finance the investment and expansion of T-Mobile USA, Inc.

4.      Defendants' misconduct has had substantial adverse effects on U.S. commerce. First, millions of U.S. consumers who use T-Mobile's international network have been affected by T-Mobile's illegal acquisition of PTC.  Those consumers have lost the benefit of PTC's honest services and, upon information and belief, are now paying higher roaming rates that include the functional equivalent of a "corruption tax" to cover the costs T-Mobile incurred in the unlawful conspiracy alleged herein.  Second, a substantial number of U.S. investors who hold Elektrim bonds have suffered losses as a result of Defendant's unlawful racketeering conspiracy.  Third, a substantial number of U.S. investors trading on the New York Stock Exchange have made investments in T-Mobile's ADRs, which are traded on the New York Stock Exchange, without

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    the benefit of full disclosure of T-Mobile's corrupt activities in furtherance of the racketeering

2    conspiracy.  Fourth, upon information and belief, T-Mobile affirmatively used the U.S. wires to

3    report consolidated earnings that incorporated PTC's revenues to enhance its investment profile

4    and thereby lower its cost of capital for funds used to improperly expand the T-Mobile USA, Inc.

5    network (which is at the core of the alleged conspiracy herein) by among other things, winning a

6    Federal Communications Commission spectrum auction in 2006.

7

8        5.      Defendants' misconduct included, but was not limited to, a pattern of U.S. wire

9    fraud that manifested itself on multiple occasions spanning a three-and-one-half year period.  As

10   set forth below, the U.S. wire fraud detailed in this Second Amended Complaint was material to

11   Defendants' illegitimate takeover of PTC, occurred at critical times and was a proximate cause of

12   injury to Vivendi.

13

14       6.      The Defendants' racketeering conspiracy and the accompanying wire fraud had

15   two phases.  Phase I occurred in 2003-2005 and involved Elektrim's theft of 48% of the shares of

16   PTC, legally owned by Telco, an entity in which Vivendi had invested $2.5 billion.  It also

17   included the Defendants' stripping of assets from Elektrim.  Phase II, which started in 2006 and is

18   continuing, involved (a) the secret and illegal transfer of the same PTC Shares from Elektrim to

19   T-Mobile, (b) the use of U.S. wires to fraudulently induce the U.S. bondholders of Elektrim to

20   dismiss their bankruptcy proceeding against Elektrim, and (c) to obtain funding in the U.S. for

21   further expansion of the corrupt T-Mobile global network enterprise, including upon information

22   and belief the acquisition of $4.182 billion in Advanced Wireless Services spectrum in the

23   United States.

24

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## Phase I

7.    In 2004, Defendants used the U.S. wires to deceive Vivendi into believing that Elektrim was complying with its fiduciary duties to Vivendi and was waging a good faith defense in a critical arbitration proceeding (the "Second Vienna Arbitration") that had been brought by T-Mobile against Elektrim and Telco seeking a ruling that Elektrim's 1999 transfer of the PTC Shares to Telco was illegal.  In fact, Elektrim (at Solorz's direction) was colluding with T-Mobile and was using the arbitration proceeding as a pretext to seize the PTC Shares from Telco and Vivendi.  Had Vivendi known in 2004 that Solorz and T-Mobile were in fact conspiring to strip Vivendi of its ownership interest in the PTC Shares, Vivendi would have taken immediate action to preclude the abuse of the Second Vienna Arbitration and thereby protect Vivendi's $2.5 billion investment.  Among other things, Vivendi would have (i) requested court orders to allow Vivendi to take control of Elektrim's defense in the Second Vienna Arbitration, as provided for in the joint venture agreement, so as to make sure that Vivendi's position was not compromised, (ii) filed an action in an Austrian court to dissolve the arbitration because the parties who were purportedly adverse were in fact conspiring, (iii) filed a declaratory action in Polish court to determine the rightful owners of the PTC Shares, (iv) filed an action in Polish court to enjoin the arbitration before the panel issued its decision, and (v) increased its 15% stake in Elektrim and blocked Solorz before he was able to consolidate his control over Elektrim.

8.    Later, in 2004, Defendants, in furtherance of their racketeering activity, used the U.S. wires to fraudulently induce Vivendi into sham settlement negotiations.  Speaking at the end of these negotiations, in late August 2004, a top executive of T-Mobile told a top executive of

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 5
OHS East:160157671.8

1    Vivendi that "we have a deal [to buy out Vivendi's stake in PTC] -- you can put champagne in the

2    fridge." He was fraudulently misleading Vivendi. Shortly thereafter, Vivendi received a two-

3    sentence letter abruptly ending the negotiations with no further explanation.

4        9.    In 2005 and 2006, upon information and belief, Elektrim used the U.S. wires to

5    transmit misleading information to U.S. bondholders of Elektrim, including among other things,

6    failing to disclose that Solorz was stripping its assets.

7

8                                            **Phase II**

9        10.    On August 28, 2006, acting in disregard of injunctions of Polish courts and

10   contrary to orders of an arbitration panel in Vienna, Elektrim transferred ownership of the PTC

11   Shares (that properly belonged to Vivendi through Telco) to T-Mobile and received no payment

12   from T-Mobile at that time.

13       11.    On September 5, 2006, a week after Elektrim had illegally transferred title in the

14   disputed PTC Shares to T-Mobile, and again on October 4, 2006, T-Mobile disseminated false

15   press releases that it knew would be carried on U.S. wires, representing that T-Mobile had

16   lawfully acquired PTC and was exercising control over it *pursuant to an award of the Vienna*

17   *arbitration panel* (which award was not public), when in fact, Defendants were acting in a

18   manner that *contradicted* the award rendered by the panel at that time. The press releases were

19   intended to falsely convey to Vivendi and to the U.S. bondholders of Elektrim who had initiated

20   a bankruptcy proceeding against Elektrim that T-Mobile lawfully owned the PTC Shares and that

21   the consideration that T-Mobile had paid for the PTC Shares could be paid to the bondholders

22   free and clear of any legal impediment and financial risk. Defendants intended that the

23

24

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    misleading press releases would cause the U.S. bondholders to withdraw their bankruptcy

2    petition, which the bondholders subsequently did, thereby removing the last significant obstacle

3    to Defendants' takeover of PTC.  The press releases were also misleading to U.S. investors in T-

4    Mobile's ADRs on the New York Stock Exchange.

5            12.      In 2006, Defendants engaged in two additional sham negotiating efforts in

6    furtherance of their racketeering conduct and deception against Vivendi.  First, in March 2006

7    Defendants used the U.S. wires to deceive Vivendi with respect to a settlement negotiated

8    between the Parties — this time going so far as to enter into an agreement with full intentions of

9    entirely reneging on the agreed upon terms of that settlement.  Second, in August and September

10   2006, Defendants initiated fraudulent negotiations with Vivendi using U.S. wires to deceive

11   Vivendi with respect to the disposition of the PTC Shares.  As with the 2004 episode of wire

12   fraud, these further episodes occurred during critical times and facilitated Defendants'

13   racketeering conduct.

14

15           13.      On January 28, 2007, T-Mobile issued a misleading press releases that, upon

16   information and belief, was carried over U.S. wires and that, among other things, omitted

17   material information related to the unlawful seizure of PTC and improperly consolidated PTC's

18   earnings into T-Mobile's global earnings forecast thereby misleading U.S. investors and

19   facilitating the improper expansion of T-Mobile USA, Inc.'s spectrum in the United States.

20           14.      As detailed below, Defendants' racketeering conspiracy also included (i) theft of

21   the PTC Shares, (ii) use of force to take over the PTC premises, (iii) falsification of PTC's

22   shareholder list, (iv) filing misleading disclosures with the U.S. Securities and Exchange

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   Commission ("SEC"), (v) stripping Elektrim of its assets, and (vi) disregarding injunctions and

2   court orders from three countries – including a decision of the Supreme Court of Poland and

3   another of the Supreme Court of Austria.

4         15.    Vivendi comes to this Court because it is located in the District where T-Mobile

5   USA, Inc. is headquartered and where conduct integral to the racketeering activity occurred in

6   furtherance of the conspiracy alleged in this Second Amended Complaint. This District is the

7   situs of T-Mobile USA, Inc.'s operations, which is the most significant generator of revenues for

8   the T-Mobile global network and the key entity that was integrated with PTC by T-Mobile's

9   then-CFO, Thomas Winkler. Moreover, this is the only forum where Vivendi can effectively

10   enforce a judgment against T-Mobile. Defendants have already ignored numerous injunctions

11   and orders issued by tribunals in three other countries – Poland, United Kingdom, and Austria –

12   demonstrating the importance of this action. Defendants' disregard of European courts and

13   arbitration panels has precluded Vivendi from having the opportunity to recover its shares in an

14   unbiased legal proceeding whose determination is enforceable against Defendants.

15         16.    The remedy and justice that this action seeks are simple: Vivendi asks this Court

16   to order Defendants to either pay Vivendi the fair market value of the assets that they stole or

17   return to Vivendi its rightful control of PTC – one or the other, the money or the shares.

18                              **JURISDICTION**

19         17.    This Court has subject matter jurisdiction pursuant to 18 U.S.C. § 1964 (c) and 28

20   U.S.C. §§ 1331, 1337(a), and 1367. Defendants' fraud and theft occurred in significant part as a

21   result of a pattern of wire fraud committed in the United States and have had direct, substantial,

22   and reasonably foreseeable effects on U.S. commerce. Their racketeering conduct has affected

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   T-Mobile's expanding international network, of which the United States is a centerpiece and PTC

2   is now an integral part.  Upon information and belief, the T-Mobile network is now bring

3   operated as a corrupt enterprise and millions of U.S. wireless telephone users who subscribe to

4   T-Mobile are now paying higher roaming charges than they otherwise would have paid when

5   making telephone calls to or from Poland — the functional equivalent of a "corruption tax" to a

6   now corrupted enterprise.  In addition, the racketeering conspiracy has harmed U.S. bondholders

7   by fraudulently inducing them to withdraw their bankruptcy petition against Elektrim and thereby

8   putting their investment at substantial risk.  Defendants deceived the bondholders into believing

9   that they would be paid in full after dismissing their bankruptcy petition against Elektrim.  In

10  fact, however, they remain unpaid by the bondholders' trustee because, on information and

11  belief, the trustee is concerned that the illegal and fraudulent conduct that led to his receipt of

12  those funds taints those funds.  As a result, the bondholders are suffering financial harm and will

13  continue to do so, even if those proceeds are eventually paid in full.  Defendants' racketeering

14  conspiracy also harmed U.S. investors in the ADRs of Deutsche Telekom AG on the New York

15  Stock Exchange, who were deprived of material information in order to conceal a conspiracy that

16  would have otherwise been exposed as the flagrant racketeering conduct that it was.  Finally,

17  Defendants' fraudulent inclusion of PTC's assets and value on T-Mobile's consolidated balance

18  sheet, upon information and belief, put T-Mobile in a stronger position to support a $4.182

19  billion bid and purchase in a 2006 U.S. Federal Communications Commission auction of

20  Advanced Wireless Services spectrum for the benefit of T-Mobile USA, Inc., and to leverage and

21  raise capital to support other commercial and banking transactions in U.S. commerce.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

18.    Defendants' racketeering conduct proximately caused Vivendi's injuries. First, but for the wire-fraud that Defendants committed in the United States, Vivendi would have been able to take timely defensive actions, such as preventing Solorz's takeover of Elektrim and, thus, preventing T-Mobile's takeover of PTC. Second, if T-Mobile had accurately described in its SEC filings its conduct with respect to Solorz and PTC, Vivendi also would have been alerted to take timely defensive action. Third, Vivendi has suffered lost revenues as a direct, proximate result of U.S. customers paying roaming fees to the corrupted PTC/T-Mobile enterprise rather than to the legitimate PTC that Vivendi had controlled prior to the unlawful takeover. Fourth, Defendants' racketeering has depressed Vivendi's share value, increasing its costs of raising capital in the U.S. financial markets, particularly over the last seven years when Vivendi's ADRs were traded on the New York Stock Exchange.

19.    Venue in this District is proper pursuant to 18 U.S.C. §1965(a) and 28 U.S.C. §§ 1391(b) and (c).

## PARTIES

20.    Vivendi is a joint-stock company organized and existing under the laws of France. It is headquartered in Paris and has offices in the United States. Until mid-2006, it was listed on the New York Stock Exchange. It derives billions of dollars in revenue from the United States and has thousands of U.S. employees. Vivendi owns 100% of Universal Music Group, a U.S. corporation, and 20% of NBC Universal.

21.    Defendant Deutsche Telekom AG is a German corporation that does business in the United States and owns T-Mobile International AG, T-Mobile USA, Inc., and T-Mobile

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 10
OHS East:160157671.8

1   Deutschland GmbH.  U.S. investors trade Deutsche Telekom AG's ADRs on the New York

2   Stock Exchange.  Deutsche Telekom AG relies on the U.S. financial markets to raise capital.

3       22.   Defendant T-Mobile International AG is a German corporation with substantial

4   interests in the United States, operating in the United States through T-Mobile USA, Inc. under

5   the well-known "T-Mobile" brand.

6

7       23.   Defendant T-Mobile USA, Inc. ("T-Mobile USA") is a Delaware corporation with

8   its principle place of business at 12920 S.E. 38th St., Bellevue, Washington.  T-Mobile USA,

9   Inc. has over 22 million U.S. wireless subscribers many of whom make calls to Poland, deriving

10  millions of dollars in U.S. revenues, and it employs thousands of people in the United States.  T-

11  Mobile USA is an integral part of the T-Mobile global wireless network which now includes

12  PTC.  According to T-Mobile USA's website, the global T-Mobile entities operate as "One

13  Company."  The website continues:  "Despite the number of national markets, 'One Company'

14  means one set of purchasing requirements, one technology architecture, one marketing and

15  communications strategy, and one set of customer service standards."  In addition the website

16  states, "[a]s the competitive landscape of the mobile communications market becomes

17  increasingly international, being 'One Company' is an indispensable prerequisite for the Group's

18  future success."  Thus, there is unity of interest among the T-Mobile Defendants, and T-Mobile

19  USA operates as an agent and instrumentality of Defendants T-Mobile International AG and

20  Deutsche Telekom AG, subject to their control.  Accordingly, Robert Dotson, who sits on the

21  Board of T-Mobile International AG also is the CEO of T-Mobile USA Inc.  In addition, senior

22  officials of T-Mobile International AG, including its CFO, Thomas Winkler, who, prior to his

23

24

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 11
OHS East:160157671.8

1    recent resignation, sat on the PTC Board and, upon information and belief, conducted business in

2    the U.S. at T-Mobile USA, Inc.'s Seattle, Washington headquarters to coordinate T-Mobile's

3    "One Company" strategy. Indeed, Mr. Winkler orchestrated the inclusion and integration of PTC

4    into T-Mobile's global wireless network, as evidenced by among other things, the public

5    reporting of PTC's revenues as part of T-Mobile's consolidated corporation earnings. T-Mobile

6    USA, Inc., as an integral component of the T-Mobile enterprise, has been a principle beneficiary

7    of Defendants' illegal scheme, and it has benefited from the expropriation of Vivendi's

8    investment in PTC and from the resulting profits to the T-Mobile enterprise. Indeed, upon

9    information and belief, Defendants' racketeering conduct facilitated its ability to expand T-

10   Mobile USA, Inc. by among other things, enabling it to bid and purchase $4.182 billion in

11   Advanced Wireless Services spectrum from the U.S. Federal Communications Commission in a

12   2006 auction.

13       24.    Defendant T-Mobile Deutschland GmbH (formerly DeTe Mobile Deutsche

14   Telekom MobilNet GmbH) is a limited liability company organized under the laws of the Federal

15   Republic of Germany. It is one of the T-Mobile International AG subsidiaries through which T-

16   Mobile International AG and Deutsche Telekom AG have perpetrated material parts of

17   Defendants' misconduct.

18       25.    Deutsche Telekom AG, T-Mobile International AG, T-Mobile Deutschland

19   GmbH, and T-Mobile USA, Inc. act together with unity of interest in the T-Mobile network to

20   promote the T-Mobile network in the United States and worldwide and to operate as one

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 12
OHS East:160157671.8

1    company. As set forth in this Second Amended Complaint, the T-Mobile network is now being

2    operated as a corrupt enterprise.

3        26.    Upon information and belief, Defendants have acted in a coordinated manner to

4    take over PTC and expand the T-Mobile brand into Poland. Accordingly, Deutsche Telekom, T-

5    Mobile International AG, T-Mobile Deutschland GmbH, and T-Mobile USA, Inc. are referred to

6    collectively as "T-Mobile."

7        27.    Defendant Solorz is a Polish citizen and, according to the Fortune 400 list, is a

8    billionaire. In 1994, he was convicted of two criminal offenses under Austrian law. In 2003,

9    Solorz began acquiring shares of Elektrim, the Polish energy and telecommunications company

10    through which Solorz and T-Mobile perpetrated their RICO violations. As discussed below, Mr.

11    Solorz has caused U.S. wires to be used pursuant to the fraudulent scheme set forth herein.

### FACTS

**A.    Background**

28.    In 1995, the Polish government granted PTC its first wireless license, and PTC

began operating as a mobile telecommunications provider. At that time, Poland precluded

foreign investors from holding more than 49% of a Polish telecommunications company's shares.

29.    A 1995 Shareholders Agreement (the "Shareholders Agreement") governs PTC's

shareholders and provides, among other things, that if any shareholder materially breaches the

agreement, certain of the other shareholders have a call option to buy the breaching party's

shares.

30.    In early 1999, the following companies held the following interests in PTC:

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 13
OHS East:160157671.8

- Elektrim, directly and (through a company called Carcom) indirectly - 37.1%;

- T-Mobile - 22.5%;

- US West International (MediaOne) - 22.5%;

- Polpager - 4%; and

- A group of Polish minority investors comprised of BRE Bank S.A., BRE Fundusz, Kulczyk Holdings S.A., and Warta S.A., (the "Polish Minority Investors") - collectively 13.9%.

31.     In 1999, both US West and the Polish Minority Investors decided to seek buyers for their shares. At the same time, both Elektrim and T-Mobile had designs to gain control over PTC. For T-Mobile to accomplish its designs, it had to violate Polish law, which at the time limited foreign ownership of PTC to 49% and, therefore, prohibited T-Mobile from owning and controlling more than 49% of PTC's shares.

32.     Elektrim, which was short of cash, initially approached T-Mobile to jointly acquire the shares of PTC, with Elektrim having majority control over the joint venture in order to comply with Poland's foreign-ownership limitations. T-Mobile, however, secretly intending to gain control of PTC, declined Elektrim's overture.

33.     While declining Elektrim's invitation to form a joint venture, T-Mobile went ahead on its own to acquire 49% of PTC's shares. First, T-Mobile secretly acquired Polpager's 4% stake. Then T-Mobile acquired US West's 22.5% stake by purchasing an intermediary holding company in the Netherlands. Significantly, T-Mobile disguised its purchase of Polpager's shares by using the wife of its Polish lawyer to organize a sham Polish company ("Holdco") to acquire Polpager and thus control the PTC shares it held.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

34.     T-Mobile held Holdco out as a Polish company notwithstanding the fact that T-Mobile had provided all of the money for Holdco's purchase of Polpager and controlled every action that Holdco took through T-Mobile's lawyer.  Hoping that no one would learn that it actually controlled Holdco and thus 49% of PTC, T-Mobile represented that it could still purchase another 3% from the Polish Minority Investors by exercising rights of first refusal arising from the Shareholders Agreement and still hold only 48% of PTC, ostensibly not violating the 49% ceiling under Polish law.

35.     While T-Mobile was secretly consolidating this 49% stake in PTC, Elektrim turned to Vivendi, knowing that Vivendi could provide the capital that Elektrim lacked in order to jointly acquire another 13.9% of PTC shares from the Polish Minority Investors.  That would bring Elektrim's control to 51% of PTC.

36.     Starting in 1999, Elektrim and Vivendi entered into a series of investment agreements that established a joint venture to control PTC and that culminated in the Third Amended and Restated Investment Agreement dated September 3, 2001 (the "Joint Venture Agreement").  The joint venture operated through Telco which came to hold 48% of PTC's shares – the shares that Defendants ultimately stole – and through Carcom Warsawa Sp. Zo.o. ("Carcom"), a sister joint venture company holding 3% of PTC's shares.  Initially, Elektrim used funds that Vivendi provided to acquire the Polish Minority Investors' shares.  It then contributed all of its PTC shares (48% of PTC's total shares) to Telco, and Vivendi acquired 49% of Telco and 50% of Carcom.  Subsequently, in December 2005, Vivendi acquired an additional 2% of Telco and 1% of Carcom, bringing its respective holdings to 51% of Telco and Carcom.  Over

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

time, Vivendi has invested approximately $2.5 billion to acquire 51% of Telco.  The following chart sets forth stock holdings in December 2005:



37.    As a result of the Joint Venture Agreement, Elektrim owed Vivendi a fiduciary duty of good faith and fair dealing.  The Joint Venture Agreement also contained provisions protecting Vivendi, including (i) a provision allowing Vivendi to control the defense of any arbitration action brought against Elektrim that could impair Vivendi's interest in PTC, and (ii) a provision setting forth what would happen under various outcomes of arbitration proceedings.

### 1.    Defendants' Attempt to Mislead the First Vienna Arbitration Panel

38.    On October 21, 1999, T-Mobile initiated an arbitration under the Shareholders Agreement and PTC's Deed of Formation against Elektrim and the Polish Minority Investors.  T-Mobile brought this arbitration in Vienna, before the International Arbitral Centre of the Austrian Federal Economic Chamber, claiming that T-Mobile was entitled under a right of first refusal to buy a portion of the Polish Minority Investors' shares – a portion that would have provided T-Mobile control over another 3% stake, giving T-Mobile control over a total of more than 52% of PTC's shares (the "First Vienna Arbitration").

39.    As a threshold matter, T-Mobile attempted to mislead the arbitral panel and asserted that it only owned and controlled 45% of PTC's shares.  T-Mobile intentionally concealed from the arbitrators the fact that it actually controlled Holdco's indirect 4% stake and,

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 16
OHS East:160157671.8

1    therefore, 49% of PTC's shares. Thus, T-Mobile hid the fact that it could not lawfully acquire

2    any more shares without violating Poland's 49% limit on foreign ownership.

3        40.    At the same time, to conceal its deception, T-Mobile filed false and misleading

4    public filings with the SEC. For example, on April 19, 2000, Deutsche Telekom AG filed a

5    Form 20-F for the year ending December 31, 1999 that stated the following (the "2000 20-F

6    Statements"):

7

8        "As part of this transaction, Deutsche Telekom in March 2000 acquired: Media One's 22.5
          percent interest in [PTC], the leading GSM mobile telecommunications provider in Poland,
9        *bringing Deutsche Telekom's total ownership interest in PTC to 45%.*"

10       "Deutsche Telekom has held a 22.5 percent stake in PTC since December 1995 and acquired an
          additional *22.5 percent stake* in March 2000."

11

12   T-Mobile continued its fraudulent misrepresentations regarding its control of PTC stock in the

13   20-F Statements that it filed for the years ending December 31, 2000 and December 31, 2001.

14       41.    Through discovery, Elektrim and the arbitration panel eventually learned the truth

15   – that T-Mobile controlled Holdco's indirect 4% PTC stake and that granting T-Mobile more

16   shares would violate Poland's 49% foreign ownership limitation. Indeed, Holdco's only officers

17   and directors appeared to be, at various times, the wife, brother-in-law, and sister-in-law of T-

18   Mobile's Polish lawyer.

19

20       42.    After being exposed, Deutsche Telekom AG subsequently filed its Form 20-F for

21   the year ending December 31, 2002, finally admitting that it owned 49% of PTC.

22       43.    On April 9, 2003, the arbitration panel denied T-Mobile its demand, finding that

23   T-Mobile:

24

25       wanted to "achieve a more [sic] 50% holding in PTC" while it was aware that the "foreign
          ownership restrictions" did not allow it due to the current foreign participation in PTC share

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 17
OHS East:160157671.8

capital. There is no doubt that the Polpager/Holdco structure has been set up by T-Mobile as a tool for achieving a more [sic] 50% holding in PTC.

### 2.    Defendants' Misconduct Relating to The Second Vienna Arbitration

44.    On December 7, 2000, perhaps anticipating defeat in the First Vienna Arbitration, T-Mobile filed a second arbitration in Vienna against Elektrim claiming that Elektrim's transfer of its PTC shares to Telco, pursuant to the Joint Venture Agreement with Vivendi, materially breached the Shareholders Agreement.  T-Mobile further asserted that, as a result of the alleged breach, it was consequently entitled to exercise a call option to buy all of those PTC shares at book value, which was only a fraction of the fair market value.[1]

45.    Under the Joint Venture Agreement, Vivendi was entitled to direct the defense and appoint the law firm representing Elektrim.  It exercised these rights, selecting Watson Farley and Williams as counsel.  Until 2003, Elektrim honored its obligations under the Joint Venture Agreement and mounted a vigorous defense to the Second Vienna Arbitration.

### B.    Phase I

### 1.    Solorz Gains Control of Elektrim and Begins to Conspire With T-Mobile.

46.    In the Spring of 2003, while the Second Vienna Arbitration was still pending, Solorz illegally purchased a significant stock interest in Elektrim in violation of Polish securities and antitrust laws.

47.    Upon information and belief, on or about the time that Solorz made his investment in Elektrim, T-Mobile, and Solorz entered into secret discussions regarding a plan

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    whereby T-Mobile would take over PTC and Solorz (through Elektrim) would be unjustly

2    enriched by being paid twice for the PTC Shares that properly belong to Vivendi.

3         48.    In order to facilitate that plan, Solorz, on January 14, 2004, caused Elektrim to

4    terminate Watson Farley and Williams, the legal counsel that had been representing Elektrim in

5    the Second Vienna Arbitration. And on February 20, 2004, Solorz caused Elektrim to notify

6    Vivendi that it was unilaterally voiding the Joint Venture Agreement. (A London arbitration

7    panel later found this purported voidance to be unfounded and null.)

8

9         49.    While Vivendi was concerned about these two actions by Solorz, Vivendi did not

10   interpret them as evidencing a conspiracy between T-Mobile and Solorz. Rather Vivendi

11   regarded them as business tensions between joint venture partners and tactical moves by Solorz

12   to improve Elektrim's position vis-à-vis Vivendi at a time when the two parties were discussing

13   the split of proceeds of a joint sale of PTC to T-Mobile. In hindsight, however, Elektrim's

14   termination of counsel and the other material facts explained below can only have resulted from

15   the fraudulent collusion of T-Mobile and Solorz.

16

17         **2.    As The Second Vienna Arbitration was Proceeding, Defendants**
             **Engaged in Their First Episodes of Unlawful Racketeering Conduct.**
18

19         50.    In 2004, Defendants used the U.S. wires to further their conspiracy and to

20   fraudulently induce Vivendi into wrongly believing that Elektrim was not colluding with T-

21   Mobile and that Elektrim, and T-Mobile were engaged in good-faith settlement negotiations

22   when neither was the case.

23

24   (...continued)
     T-Mobile did this with knowledge that as of January 1, 2001, Poland's 49% limit on foreign ownership would be
25                                                                                              (continued...)

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 19
OHS East:160157671.8

51.     On multiple occasions in the Spring and Summer of 2004, Elektrim (acting, upon information and belief, at Solorz's direction) and T-Mobile used the wires of the United States to perpetrate their deception on Vivendi. Specifically, T-Mobile and/or Solorz, acting through their representatives, engaged in the following fraudulent communications with Vivendi representatives when at least one of their representatives was in the United States:

- On May 11, 2004, Monika Halupczak of Elektrim emailed David Syed, an attorney representing Vivendi who was then in the United States, stating that Elektrim was prepared to sign a Term Sheet pursuant to which Elektrim and Vivendi would suspend litigation against T-Mobile while exploring a joint sale of their PTC stock to T-Mobile. The Term Sheet is very detailed, proposing specific terms of the transaction. There is no mention in the email of any cooperation, much less collaboration, between T-Mobile and Elektrim. Nor was there any disclosure that the negotiations were a sham or that T-Mobile fully intended to renege on any agreed-upon settlement.

- On or about May 11, 2004, Ms. Halupczak had a telephone conversation with David Syed regarding the Term Sheet. The discussion was sufficiently detailed to cause Mr. Syed to reasonably believe that Elektrim was acting in good faith. Once again, there was no disclosure that the negotiations were a sham or that T-Mobile fully intended to renege on any agreed-upon settlement.

- On May 13, 2004, Peter Golob, a senior official of T-Mobile, sent several emails to Mr. Syed in the United States. In the first, he "interpolate[d] the position on what should by my understanding be the last significant issue between the two sides regarding the term sheet." Mr. Golob attached a revised Term Sheet for the Sale of PTC to his email. In the second, he proposed several alternatives to overcome disagreement. In the third, he proposed an approach to "nail down the term sheet." Once again, there was no disclosure that the negotiations were a sham nor that T-Mobile fully intended to renege on any agreed-upon settlement.

- On June 7, 2004, Mr. Golob, while in the United States, telephoned Mr. Syed, informing him that T-Mobile had executed a revised version of the Term Sheet. Mr. Syed and Mr. Golob then exchanged views on an escrow agreement. Mr. Golob's statements were specific and substantive, reasonably conveying the

(...continued)
eliminated.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

impression to Mr. Syed that T-Mobile was acting in good faith and was committed to a settlement, when in fact, it was not.

- On June 9, 2004, Mr. Golob, while in the United States, sent a long email to George Rigo, another attorney for Vivendi, and to Mr. Syed, providing detailed comments on a draft Escrow Agreement. The next day, Mr. Syed and Mr. Golob had a telephone conversation on the same subject. Once again, there was no disclosure that the negotiations were a sham nor that T-Mobile fully intended to renege on any agreed-upon settlement.

- On June 10, 2004, Mr. Golob, while in the United States, telephoned Mr. Syed to address other potential terms of a settlement. Once again, Mr. Golob failed to disclose the collaboration between T-Mobile and Elektrim nor gave any indication that the settlement negotiations were being conducted in bad faith, which was, on information and belief, the case.

- On July 15, 2004, Mr. Golob, while in the United States, sent Mr. Syed another email concerning timing and pricing of the proposed transaction. Once again, there was no disclosure that the negotiations were a sham nor that T-Mobile fully intended to renege on any agreed-upon settlement.

- On July 27, 2004, Mr. Golob, while in the United States, emailed Messrs. Syed and Rigo a copy of a letter that Thomas Winkler of T-Mobile had written to Jacques Espinasse, Vivendi's CFO, stating that a "fully documented [settlement] offer would be presented to T-Mobile management board" on August 4, 2004. Mr. Golob expressed hope that Vivendi would be able to resolve matters with Solorz-Elektrim. Messrs. Syed and Rigo believed that Mr. Golob was being truthful, that Solorz-Elektrim was then still a loyal joint-venture partner of Vivendi, and that the negotiations were being conducted in good faith. In fact, they were not.

- On August 24, 2004, Marcin Olechowski on behalf of Elektrim sent two emails to Mr. Syed in the United States setting forth more terms of a proposed settlement and attaching a draft Guarantee and Indemnity Agreement between Elektrim and Vivendi on one hand and T-Mobile on the other. Once again, there was no disclosure that the negotiations were a sham nor that T-Mobile fully intended to renege on any agreed-upon settlement.

- On August 25, 2004, Mr. Winkler of T-Mobile, while in Seattle visiting T-Mobile USA, Inc., sent a text message to Mr. Espinasse regarding settlement negotiations. Upon information and belief, Mr. Winkler was in Seattle to make plans for the integration of both T-Mobile USA and PTC into the same international T-Mobile network. Once again, there was no disclosure that the negotiations were a sham nor that T-Mobile fully intended to renege on any agreed-upon settlement.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 21
OHS East:160157671.8

52.    In late August 2004, a senior T-Mobile official told Mr. Espinasse (Vivendi's CFO) that the settlement "deal" along the aforementioned terms was "done" and that he could "put the champagne in the fridge."  Mr. Espinasse understood this to mean that the remaining review of the deal by T-Mobile's Supervisory Board was *pro forma* and that there was definitely a settlement agreement.  On information and belief, this statement, and all of the settlement negotiations that had preceded it from April 2003 through September 2004, were a knowingly false and deceitful ruse in furtherance of the conspiracy between Solorz and T-Mobile to strip Vivendi of its ownership of PTC.

53.    On September 7, 2004, T-Mobile, which upon information and belief had advance notice of the pending decision in the Second Vienna Arbitration, notified Vivendi in a two-sentence letter that its Supervisory Board (the equivalent to a U.S. Board of Directors) had rejected the agreed-upon settlement, and that T-Mobile was terminating all negotiations with Vivendi.  Thereafter, on September 29, 2004, Solorz caused Elektrim to send a letter to PTC purporting to revoke Telco's appointees to PTC's Management Board and replace them with Elektrim appointees.

54.    The T-Mobile and Elektrim communications with Vivendi during this time period falsely expressed a desire to settle, falsely presented T-Mobile and Elektrim as acting independently, and falsely presented Defendants as negotiating terms that Defendants were actually considering.  In none of these communications did T-Mobile or Elektrim (acting under Solorz's control) disclose their collusion or the fact that the negotiations were a sham intended to

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 22
OHS East:160157671.8

1    fraudulently induce Vivendi into forbearing from taking action to protect its investment until it

2    was too late.

3        55.    Vivendi reasonably and detrimentally relied on the communications from

4    Defendants set forth in the preceding paragraphs and did not take steps that it could have taken to

5    lawfully protect its $2.5 billion investment in PTC against Defendants' scheme.  Among the

6    things that Vivendi could have done but for Defendants' wire fraud and illegal scheme were the

7    following:

8

9        •    Enforce its right under the Joint Venture Agreement to control Elektrim's defense
             of the Second Vienna Arbitration;

10

11       •    Call the arbitrators' attention to the collusion between the purportedly adverse
             parties;

12

13       •    File a declaratory action in a Polish court to confirm ownership of Telco.

14       •    File an action in a Polish court to enjoin the arbitration before the panel issued its
             decision; and

15       •    Block Solorz's efforts to take over Elektrim by, among other options, increasing
             Vivendi's 15% stake in Elektrim.

16

17       56.    By fraudulently inducing Vivendi into active settlement negotiations during this

18   critical time, Defendants gave themselves sufficient time and opportunity to implement their

19   scheme to influence the outcome of the Second Arbitration Proceeding and for Solorz to

20   consolidate his control over Elektrim, facilitating Defendants' illegal takeover of the PTC

21   enterprise and making it more difficult and costly for Vivendi to protect and ultimately vindicate

22   its legal rights.

23

24           **3.    Defendants' Unlawful Exploitation of the Second Arbitration Award**

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 23
OHS East:160157671.8

57.    On November 26, 2004, the Second Vienna Arbitration panel issued an award that in part held that Elektrim's transfer of its PTC shares to Telco violated the Shareholders' Agreement. The panel further ruled that, if Elektrim did not recover the shares from Telco within two months of the service of the decision on Elektrim, i.e., by February 9, 2005, Elektrim would be in material breach of its Shareholders Agreement. Finally, and of great significance, the arbitration panel ruled that it lacked jurisdiction over Telco. Accordingly, the panel dismissed all of T-Mobile's claims against Telco. As a result, the panel did not order Telco to return the PTC shares in its possession, and Telco was not otherwise required to do so. Thus, Telco's control over the PTC Shares should have remained secure.

58.    While the decision of the Second Vienna Arbitration panel exposed Elektrim to a damage action by T-Mobile, it did *not* issue any ruling that legally affected Telco's holding of the PTC Shares.

59.    After the Second Vienna Arbitration panel issued its award, Elektrim, under the control of Solorz and with the collaboration of T-Mobile, sought, on December 17, 2004, truncated partial recognition and enforcement in the Warsaw Regional Court of that part of the arbitration award that was adverse to Elektrim, entirely omitting the ruling with respect to lack of jurisdiction over Telco which was favorable to both Elektrim and Vivendi. Defendants thereby sought to alter the meaning and scope of the Second Vienna Award so that it could be used improperly by Elektrim (under the control of Solorz) to "retrieve" the shares from Telco and to set the stage for Elektrim's transfer of the PTC Shares to T-Mobile and the stripping of Elektrim's assets. Defendants also joined forces to bar Telco (and thus Vivendi) from participating in this

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 24
OHS East:160157671.8

1   truncated partial recognition proceeding even though Telco was the registered owner of the PTC

2   shares.

3       60.     It was at this point that Vivendi realized for the first time with certainty that it had

4   been the victim of collusion between T-Mobile and Solorz. To be sure, Elektrim and Vivendi

5   had not always agreed on all issues relating to the Joint Venture Agreement, but until that point,

6   there had been no clear evidence that T-Mobile and Solorz had been conspiring against Vivendi

7   and that Elektrim had become a corrupted enterprise.

8

9       61.     Despite repeated motions by Telco, the Warsaw Regional Court (in a decision that

10  was later reversed) did not permit Telco to participate as a party in the truncated partial

11  recognition proceeding. Upon information and belief, Solorz exercised undue influence over the

12  Warsaw Regional Court.

13

14      62.     On December 30, 2004, at Vivendi's direction, Telco obtained an injunction from

15  a different chamber of the Warsaw Regional Court, restraining PTC from making changes to its

16  share registry, including changing the Telco-owned PTC shares to Elektrim's name.

17      63.     On February 2, 2005, the Warsaw Regional Court granted Elektrim's and T-

18  Mobile's petition and, having expressly denied Telco or Vivendi's rights to be heard, partially

19  recognized that part of the Second Vienna Award that had ruled that the transfer of PTC stock

20  from Elektrim to Telco was ineffective. Thus, at Defendants' behest, without affording Vivendi

21  (through Telco) any hearing, and for presently unknown reasons, a Polish court issued an opinion

22  that Defendants misused to illegally strip Telco (and thus Vivendi) of its $2.5 billion investment

23  in the PTC Shares without any compensation. (As discussed below, this decision was overturned

24

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 25
OHS East:160157671.8

1   by the Polish Supreme Court on January 18, 2007, because of irregularities in the proceedings

2   and the lack of the required legal analysis for allowing the recognition of such a decision in

3   Poland.)

### 4.    Elektrim Seizes Control of Telco's and Vivendi's PTC Shares in 2005 in Defiance of an Injunction.

6   64.    As noted above, the decision in the truncated partial recognition proceeding did

7   not, and could not, compel Telco to transfer the PTC stock to Elektrim. Moreover, the December

8   30, 2004 injunction precluded PTC from making any change in its share registry. Thus,

9

10  Vivendi's $2.5 billion investment should not have been subject to seizure.

11  65.    Although Telco was under no legal obligation to return the PTC Shares to

12  Elektrim, Telco made a good faith offer to Elektrim to retransfer the shares for fair

13  compensation. However, Elektrim (under Solorz's control) rejected this offer, claiming that

14  Telco had no right to compensation, and thus did not recover ownership of the PTC Shares

15  within the two-month period referenced in the truncated partial recognition proceeding award.

16

17  66.    On February 22, 2005, the Polish Public Prosecutor joined Telco in appealing the

18  February 2, 2005, decision of the Warsaw Regional Court that partially recognized the Second

19  Vienna Arbitration Award, thereby suspending the effects of the recognition decision (and the

20  effects of the Second Vienna Arbitration Award in Poland). As discussed below, this appeal

21  later proved successful before the Polish Supreme Court.

22

23  67.    In or around January 2005, T-Mobile and Elektrim (under Solorz's direction)

24  created its own sham, illegitimate Supervisory Board of PTC and purported to appoint new

25  members of the Management Board and to revoke Telco's and Vivendi's appointees. On

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

February 23, 2005, the new "Management Board" drew up a false and inaccurate shareholder list not reflecting the actual shareholder registry. The inaccurate list made it appear that Elektrim, not Telco, owned the PTC shares. Defendants did this notwithstanding that Telco was still the legal shareholder of its PTC shares. Defendants had no legal right to assume *de facto* control of PTC or to draw up a fictitious list of shareholders, and such actions violated the December 30, 2004 injunction and constituted illegal conversion of the PTC Shares that lawfully belonged to Telco (and thus to Vivendi).

68.    Elektrim (under Solorz's direction) and T-Mobile jointly, through the sham PTC Management Board, filed a request (using the false shareholder list referenced above) with the Regional Court to change the government's official share register, the KRS. On February 24, 2005, a Regional Court judge ordered that the KRS be changed in Elektrim's favor, notwithstanding the outstanding injunction, and the fact that the recognition decision had been appealed and was therefore not effective and not final. (In a subsequent interview with a Polish official investigating the judge's improper conduct, the judge acknowledged that the sham PTC Management Board made up of Elektrim's appointees had misled him and caused him to believe that it was a legitimate Management Board and that their fictitious list of shareholders correctly reflected the shareholders as entered in the PTC share register.)

69.    Purposefully relying on this improper and unfounded ruling, Elektrim (under Solorz's control) and T-Mobile jointly seized control of PTC on or about March 4, 2005, using brute force to physically remove and then bar Telco and Vivendi representatives from PTC's premises. Elektrim (under Solorz's control) also took control of PTC's bank accounts.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 27
OHS East:160157671.8

70.    On or about March 7, 2005, Telco filed a criminal report regarding the takeover. On the same day, Vivendi filed a Notice of Dispute pursuant to the treaty between the French Republic and the Republic of Poland on reciprocal encouragement and protection of investments. However, these actions had no deterrent effect on Defendants and the Polish authorities have done nothing to return control of PTC to Telco and Vivendi.

### 5.    Solorz Strips Elektrim's Assets and Uses U.S. Wires to Mislead U.S. Investors Into Withdrawing a Bankruptcy Filing.

71.    Throughout this time, Solorz had been stripping Elektrim of its assets which caused concern among Elektrim's U.S. bondholders. Upon information and belief, Elektrim used the U.S. wires to communicate with its U.S. bondholders misleading information regarding Elektrim that, among other things, failed to disclose the stripping of Elektrim's assets. This had the effect of fraudulently inducing the U.S. bondholders to withdraw their bankruptcy petition (see ¶ 99 below), which caused irreparable injury to the bondholders and Vivendi.

72.    Historically, Elektrim has held four principal assets of significant value: (a) PTC shares, (b) shares in ZE PAK S.A. ("PAK") (one of Poland's leading power generation companies), (c) shares in Port Praski sp. z o.o., a company which owns a significant real estate asset known as Port Praski, and (d) a controlling stake in Rafako, a company producing energy plant equipment.

73.    On January 31, 2005, Solorz purported to strip Elektrim of the PTC shares by transferring them to a subsidiary, Mega Investments Sp z o.o. ("Mega") even though the KRS, the government's official register, listed Telco as the owner of those shares. Elektrim did so in a remote part of Poland where Solorz was from, without public disclosures and without fair value

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   in an attempt to hide the shares from the bondholders and from Vivendi in the event of

2   bankruptcy while Defendants finished consummating their plan to transfer the PTC shares to T-

3   Mobile. (The secret transfer came to light a year later, and the Polish Securities Commission

4   fined Elektrim for the manner in which Solorz had concealed the transaction. However, once

5   again, the Polish authorities did nothing to return the shares to Telco.)

6       74.    Solorz also stripped Elektrim of its shares in PAK, a 50% State-owned company,

7   by arranging for them to be transferred through an illegitimate transaction to one of his

8   companies for little value. (Despite a privatization agreement imposing significant performance

9   guarantees on Elektrim, the State did not object to this transfer and continued to consider Solorz

10  the owner.) In this transaction, Solorz managed to seize for himself an asset worth many times

11  more than his *de facto* purchase price.

12      75.    Solorz later engaged in a similar illegitimate transactions with respect to Port

13  Praski and Rafako, positioning himself to be able to seize Port Praski illegitimately for one of his

14  own companies for a fraction of its value and causing Rafako to incur a huge capital increase,

15  potentially highly dilutive for Elektrim, without any precise purpose.

16      76.    On March 3, 2005, a group of bondholders of Elektrim filed a petition to put

17  Elektrim into bankruptcy and seek its liquidation. Knowing that Elektrim's liquidation could

18  frustrate Defendants' illegal plan, Solorz used his influence, upon information and belief, to delay

19  consideration of the bankruptcy petition until Elektrim could transfer the PTC shares to T-Mobile

20  so that the shares would not become subject to the bankruptcy proceeding.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

77.    To achieve this objective, on May 3, 2005, T-Mobile initiated a third arbitration in Vienna "against" Elektrim (the "Third Vienna Arbitration"). In this arbitration proceeding, T-Mobile sought a formal, declaratory judgment that, on the basis of the Second Vienna Award, Elektrim had materially breached the Shareholders Agreement because Elektrim had not secured return of Telco's PTC shares within 60 days of the Second Vienna Award. T-Mobile asserted that it was thereby entitled to exercise (under the Shareholders Agreement) a call option on the PTC shares transferred to Telco and to buy them from Elektrim at PTC's net asset value, which was drastically below market. Telco and Vivendi were once again not parties to these proceedings notwithstanding the significant potential impact on them.

78.    This arbitration was largely deceptive because Defendants had illegally agreed beforehand to accelerate the process and to transfer the PTC Shares to T-Mobile prior to an Elektrim bankruptcy in return for at least the book value of the shares in order to avoid any cancellation of the August transfer as undervalued. Defendants also had agreed beforehand that if the arbitration panel held that the call was validly exercised, then the call option would be deemed exercised as of February 15, 2005 to avoid any cancellation as a result of bankruptcy.

79.    On November 15, 2005, the Warsaw Regional Court, at Telco's request, reinstated the original KRS entries regarding PTC's shareholders. But this reinstatement was in name only. Elektrim defiantly retained control over PTC (including its bank accounts) and refused to return

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 30
OHS East:160157671.8

1    control of PTC to Telco notwithstanding this court order, and the Polish authorities continued to

2    do nothing to help Telco enforce the order.[2]

### 6.    As the Third Vienna Arbitration Proceeded, Defendants Again Engaged in Wire Fraud to Deceive Vivendi.

80.    In the meantime, in December 2005, while the Third Vienna Arbitration was

proceeding, Defendants approached Vivendi purporting to seek a settlement and an agreement

through which Vivendi could recoup much of its investment and T-Mobile could increase its

shareholdings in PTC.  Despite its misgivings, Vivendi participated in the negotiations because

Deutsche Telekom's Chairman and Chief Executive Officer had initiated the talks, was

personally involved, and had assured Vivendi's Chairman and Chief Executive Officer of

Defendants' good faith.  In fact, however, as set forth below, Defendants were engaged in a ruse

designed to gain time for the Third Vienna Arbitration to issue a decision in the sham proceeding

and to otherwise fraudulently mislead Vivendi during a critical time period.

81.    On March 7, 2006, Kai-Uwe Ricke and Dr. Karl Gerhard Eick, Deutsche Telekom

AG's Chief Executive Officer and Deputy Chief Executive Officer, respectively, spoke over U.S.

wires to Jean-Bernard Levy, Vivendi's Chief Executive Officer, while Mr. Levy was in the

United States.  During this conversation, the T-Mobile executives made false and misleading

statements about T-Mobile's relationship with Solorz and Elektrim.  In particular, Messrs. Ricke

and Eick assured Mr. Levy that T-Mobile had not agreed that PTC would provide Solorz

(through PTC) with an agreement known as a Mobile Virtual Network Operator Agreement

---

[2]    The November 15, 2005, decision was reversed on June 14, 2006.  However, that does not justify
Defendants' contempt when the decision was in force.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 31
OHS East:160157671.8

("MVNO") – an agreement that would allow one of Solorz's companies to compete with PTC by using PTC's cellular network for its own customers. On information and belief, Mssrs. Ricke and Eick lied to Mr. Levy because three months later, on June 8, 2006, PTC's Supervisory Board (which included four T-Mobile representatives) approved granting Solorz's company an MVNO. T-Mobile's deception and bad faith negotiations materially contributed to Defendants' conspiracy.

82.    The negotiations proceeded, and an agreement was reached. On March 25, 2006, representatives of Vivendi and Defendants traveled to Poland to finalize in writing the terms on which they had previously agreed.

83.    On the morning of March 29, 2006, the Defendants and Vivendi met in the offices of Vivendi's lawyer to resolve the few minor remaining issues and to sign the settlement agreement. The parties knew that the Polish Court of Appeal would decide that afternoon whether to uphold the lower court's truncated partial recognition of the Second Vienna Award. The parties had expressly agreed, however, that their agreement would stand regardless of the Court of Appeal's decision.

84.    At approximately 1:00 p.m. on March 29, 2006, it was proposed to Vivendi that the parties make a joint application to stay the Court of Appeal's proceedings to ensure that any decision did not interfere with the implementation of the agreed-upon settlement. However, T-Mobile's chief legal counsel and Elektrim's principal counsel both asserted that it was unnecessary because an agreement had been reached and T-Mobile and Elektrim were bound regardless of the Court of Appeal's decision. In fact, however, Defendants had no intention of

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 32
OHS East:160157671.8

honoring the agreement in the event they received a favorable Court of Appeal decision. T-Mobile's communications during the 2006 settlement negotiations were made in bad faith and were fraudulent.

85.    One or two hours before the settlement was to be signed, the parties learned that the Court of Appeal had upheld the lower court's truncated partial recognition decision. Despite the months of communications asserting its good faith and its clear statements that very day, T-Mobile asserted that it was withdrawing its agreement and backing out of the deal.

86.    Vivendi reasonably relied on these false and misleading communications and did not take steps that it could have taken to better protect its $2.5 billion investment in PTC against T-Mobile's misconduct. Among other things, Vivendi did not move to suspend the Court of Appeal's decision nor did it join forces with the Elektrim bondholders to prevent Defendants' continued fraud.

**C.    Phase II**

      **1.    Elektrim Illegally Transfers Title to PTC Shares to T-Mobile, and T-Mobile Begins Exercising Full Control over PTC Contrary to the Holding of the Third Arbitration Panel and in Defiance of Numerous Injunctions.**

87.    On June 6, 2006, the Third Vienna Arbitration issued its "First Partial Award," ruling that T-Mobile had lawfully exercised its call option on February 15, 2006 and that T-Mobile *"will* acquire the shares that Elektrim owned in PTC and *will* be their owner." (Emphasis added.) (The arbitration panel did not rule on the number of shares subject to the call option.) As mentioned above in ¶ 28, the 1995 Shareholders Agreement among PTC shareholders provided that, if any shareholder breached the Shareholders Agreement, the other major

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 33
OHS East:160157671.8

1  shareholders would have a call option for the other party's stock at PTC's net asset value —

2  which is considerably below fair market value.

3    88.    Despite ruling that T-Mobile had properly exercised the call option, the June 6,

4  2006 First Partial Award *did not authorize or permit Elektrim to transfer the PTC shares to T-*

5  *Mobile.*  Rather, the Arbitration Panel *explicitly* stated that the transfer could occur only *in the*

6  *future* after the Panel resolved additional issues in a subsequent arbitral award.  The Panel stated

7  that "the Arbitral Panel expects the Parties to file the necessary documentation and to expose the

8  issues relating to the mechanism of transfer of ownership . . . *in preparation for the next*

9  *substantive award* in the present arbitral proceeding." (Emphasis added.)  In particular, the

10  opinion provides that "it is important to state in the Operative Part of the present award that as a

11  matter of principle the full transfer of ownership of the shares to DT [T-Mobile] *will* occur only

12  when the price of those shares is paid to Respondent" and that the price of the shares "*would* be

13  left to a subsequent award" and would be "established by the Arbitral Tribunal." (Emphasis

14  added.)  As is clear, the highlighted words from the First Partial Award show that *no* transfer of

15  title may presently occur until a subsequent decision by an arbitral panel explicitly authorizes it.

16    89.    The June 6, 2006 First Partial Award was not public and neither Vivendi nor the

17  U.S. bondholders of Elektrim had access to it until much later.  Vivendi first obtained a copy of it

18  on October 17, 2006.

19    90.    At the same time the Panel ruled that the PTC Shares had not been transferred,

20  injunctions issued by various tribunals prohibited Elektrim from transferring title to the PTC

21  Shares to T-Mobile.  Elektrim was subject to an Order issued by the London Court of

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 34
OHS East:160157671.8

International Arbitration ("LCIA") first issued on April 28, 2005, and then extended on September 9, 2005, which enjoined Elektrim from "voluntarily seeking to sell, agree to sell, transfer, encumber, or otherwise dispose of or create any interest in the PTC shares." In addition, Elektrim was subject to an injunction issued on November 23, 2005, by the Commercial Court of Warsaw in the bankruptcy proceeding to secure all PTC shares held by Elektrim.

91.    Faced with these injunctions and their failure to obtain an arbitral award authorizing an immediate transfer of the title and full ownership rights relating to the stolen PTC Shares, and faced with the looming prospect that the bankruptcy court would liquidate Elektrim, Defendants (as they had done so often in the past) simply ignored the injunctions and illegally and secretly transferred the title to the PTC Shares on August 28, 2006.

92.    On June 23, 2006, Elektrim sent a letter addressed to the Management Board at PTC stating that "title to these [disputed PTC shares] has passed to TMD [T-Mobile]." This letter was not public, and neither Vivendi nor the U.S. bondholders of Elektrim learned of the illegal transfer until much later. The illegal transfer of the PTC Shares was in flagrant violation of outstanding injunctions.

93.    On June 27, 2006, the Warsaw District Court issued yet another order attaching Elektrim's PTC shares as security for Vivendi's claims in the LCIA and, like the other injunctions, prohibiting Elektrim from transferring Telco's shares. The Court order granted "interim relief to secure the claim pursued by Vivendi . . . by attaching . . . shares possessed by Elektrim in PTC, National Court Register [NCR] registration number 0000029159."

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

94. On July 18, 2006, the Bailiff Court of the District Court of Poland issued an order attaching Elektrim's property rights in the PTC shares. Elektrim did not disclose to the Court the contents of its June 23, 2006 letter.

95. On August 2, 2006, the LCIA ordered further interim relief, confirming its original injunction and enjoining Elektrim from transferring the disputed PTC shares. In particular, the LCIA ordered Elektrim "to refrain from taking any actions aiming at preventing Telco from being registered or maintained as a shareholder in the PTC commercial register and in the PTC share ledger." Moreover, Elektrim had acknowledged before the LCIA that it already was subject to the June 27, 2006, injunction. The LCIA noted that "the dispute regarding title to the PTC shares has not yet been entirely resolved" and recognized the real "risk of impending injury and irreparable harm" to Vivendi if such a transfer took place. The LCIA reiterated that "it is the Arbitral Tribunal's duty to ensure that Elektrim does not appropriate the PTC shares without consideration in breach of the TIA [the Third Investment Agreement between Elektrim and Vivendi]."

96. On August 2, 2006, the LCIA also ordered Elektrim to immediately produce a copy of the First Partial Award to Vivendi, but Elektrim did not do so until October 17, 2006.

97. On August 28, 2006, in violation of the outstanding injunctions and the order of the LCIA, PTC's sham Management Board (at the direction of T-Mobile and Elektrim) created a "Shareholders List" for PTC showing that T-Mobile held title to the PTC Shares that Defendants had stolen from Telco, resulting in T-Mobile owning a total of 97% of PTC shares. The August 28, 2006 Shareholder List states that "T-Mobile Deutschland GmbH holds 332,055 (three

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 36
OHS East:160157671.8

1    hundred thirty two thousand fifty five) shares of PLN 1000," thus including the 226,080 disputed

2    PTC Shares (or 48% of the outstanding shares of PTC) – the very same shares stolen from Telco,

3    in which Vivendi invested $2.5 billion, and which were stolen from Telco in 2005 without

4    compensation, as noted above.

5        98.    Moreover, upon information and belief, beginning at least as of November 2006,

6    T-Mobile began to publicly report PTC's earnings and assets as part of T-Mobile's consolidated

7    financial asset base, which compounded Defendants' repeated (and continuing) acts of wire

8    fraud, and facilitated its use of that fraudulently inflated asset base to put T-Mobile in a stronger

9    position to support a $4.182 billion bid and purchase in a 2006 U.S. Federal Communications

10   Commission auction of Advanced Wireless Services spectrum and, upon information and belief,

11   used the false reports to leverage and raise capital to support commercial and banking

12   transactions in U.S. commerce.

13

14

15        **2.    Defendants' Use of the U.S. Wires to Disseminate False and
          Misleading Press Releases With the Intent and Effect of Harming
16        Elektrim's U.S. Bondholders as well as Vivendi.**

17        99.    On September 5, 2006, T-Mobile issued a materially misleading press release

18   which, upon information and belief, T-Mobile intended would be — and was — carried over

19   U.S. wires.  T-Mobile stated that it had legally acquired the PTC shares "based on a call option

20   awarded to Deutsche Telekom by a Court of Arbitration."  In fact, that was a false statement that

21   also omitted material information.  As quoted above in ¶ 87, the June 6, 2006 First Partial Award

22   expressly stated title could *not* be transferred until subsequent future decisions were made

23   regarding the quantity of the shares to which the call option applied and the value of those shares.

24   Thus, any acquisition by T-Mobile of the PTC Shares flagrantly defied the June 6, 2006 First

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 37
OHS East:160157671.8

1    Partial Award of the Third Vienna Arbitration, the June 27, 2006 injunction, and the August 2,

2    2006 order by the LCIA. Moreover, T-Mobile had not paid any price for the shares.

3        100.    T-Mobile's press release constituted a purposeful use of the U.S. wires to mislead

4    Elektrim's bondholders including numerous U.S. bondholders (who did not have access to the

5    June 6, 2006 arbitration decision) into believing that it was in their interest to move to dismiss

6    the bankruptcy petition on the understanding that Elektrim would have the funds from T-Mobile

7    to pay the bondholders in full without any delay or legal impediments to the trustee making such

8    full payment. Because T-Mobile had no lawful right to the PTC Shares, the money paid by

9    Defendants to the trustee for the bondholder was tainted, and the trustee has refused to release

10   those funds to the bondholders. Moreover, by withdrawing their bankruptcy petition, the

11   bondholders have lost their rights to their largest investment — the PTC Shares. The

12   bondholders have also suffered a postponement in the time period for calculating preferences in

13   any subsequent bankruptcy proceedings.

14       101.    T-Mobile's misleading press release was also intended to mislead Vivendi (who

15   also did not have a copy of the June 6, 2006 arbitration decision) into believing that it had lost its

16   fight for PTC and to accept a low settlement offer from Elektrim in September 2006, as

17   described below in ¶ 106.

18       102.    After the secret and illegal transfer of PTC Shares from Elektrim to T-Mobile on

19   August 28, 2006, under Polish law, PTC was required to file for re-registration of the shares in

20   the public court registry known as the "KRS" within seven days. That means such filing should

21   have occurred no later than September 4, 2006. But that would have necessarily exposed the

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 38
OHS East:160157671.8

illegality of the transfer prior to dismissal of the bankruptcy action, which as long as it continued prevented T-Mobile from taking free and clear title to the PTC Shares. Therefore, Elektrim and T-Mobile caused PTC to illegally delay the filing for re-registration of the PTC Shares in T-Mobile's name for nearly two months beyond the legally established deadline. Indeed, there was no such filing made at the KRS until November 2, 2006.

103.    Upon information and belief, Elektrim (at Solorz's direction) caused other information to be transmitted over U.S. wires to U.S. bondholders that misleadingly stated or implied that Elektrim had full authority to transfer the PTC Shares pursuant to the June 6, 2006 First Partial Award and/or October 2, 2006 Second Partial Award (see ¶ 109 below) of the Third Vienna Arbitration Panel.

104.    T-Mobile's false and deceptive press release also misled U.S. investors in T-Mobile's ADRs into believing that T-Mobile had lawful title to a valuable asset — the PTC Shares — when that was not the case. Indeed, the patina of legitimacy conveyed by the press release materially contributed to T-Mobile's fraudulent scheme and racketeering conduct by among other things, causing a dramatic increase in the value of its ADRs. In addition to the false and deceptive statements made in the press release, the press release omitted material facts noted above in ¶ 98.

105.    U.S. investors who made investments in T-Mobile's ADRs based on the false information also were harmed because, upon information and belief, they would not have made the same investment decisions if they had known that T-Mobile was engaged in racketeering.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

106.    On September 5, 2006, T-Mobile asserted full ownership rights over the PTC shares and appointed two new members of PTC's Supervisory Board. One of the new members was Thomas Winkler, who upon information and belief conducted business in the U.S. at T-Mobile USA, Inc.'s Seattle, Washington headquarters to, among other things, integrate both T-Mobile USA and PTC into the same global wireless network. Indeed, Mr. Winkler resigned as CFO of T-Mobile International in January 2007, amid praise of his integration of T-Mobile USA. This is the same Thomas Winkler who fraudulently used the U.S. wires in August 2004 as part of the conspiracy to transfer Telco's PTC shares back to Elektrim.

107.    On September 18, 2006, Elektrim (under Solorz' control) caused Elektrim's attorney, Professor Soltysinski, to telephone Robert de Metz of Vivendi and cause an email to be sent to de Metz in the U.S. that misleadingly represented that Solorz and T-Mobile had an interest in settling the matter and implying that the PTC Shares had not yet been transferred to T-Mobile, and that misleadingly omitted material facts noted above in ¶ 98.

108.    The next day, Mr. de Metz, who was in the United States, returned the call. During that call, Prof. Soltysinski made intentionally misleading statements regarding both his and T-Mobile's intentions.

109.    At approximately the same time, T-Mobile and Elektrim (under Solorz's control) jointly requested that the arbitration panel in the Third Vienna Arbitration accelerate the proceeding in order to obtain an award before the October 4, bankruptcy hearing and attempt a post-facto justification of the August 28 consensual transfer.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 40
OHS East:160157671.8

110.    On October 2, 2006, the Third Vienna Arbitration Panel issued its "Second Partial Award." While the Panel recognized that T-Mobile had properly exercised the call option and that the price would be based on PTC's net asset value, the Panel did not authorize the transfer of the PTC shares from Elektrim to T-Mobile before payment. The Second Partial Award noted that T-Mobile "acknowledges that both as a matter of fact and company law, full transfer of ownership of the PTC Option Shares will require further steps," including, but not limited to, payment for the stock and determination of the number of shares to which the call option applied. It further stated that "the validity of the so-called 'share purchase agreement' that would have been concluded on 15 February 2005 is put to doubt by reason of the indetermination of its very subject matter, an indetermination which the present proceeding at the present stage cannot lift in any meaningful way." With respect to the determination of a price, the Panel stated as follows in the Second Partial Award:

> [I]t is not possible to conclude that a share purchase agreement has been validly concluded on 15 February 2005 with the effect of transferring the full legal title to the Option Shares. Rather the exercise by Claimant of the call option under Article 16(1) of the Shareholders Agreement should be deemed the fulfillment of a necessary legal requirement to bring about the transfer of the shares once the determination of their precise number and of their price will have been undertaken in the present arbitral proceeding. . . . In sum, the exercise of the call option was a necessary but not a sufficient step in the conclusion of the share transfer agreement. The payment of the price, although it had been foreseen to occur 30 days after the formal transfer, is indispensable for the transfer to take place.

With respect to the number of shares covered by the call option, the Second Partial award stated as follows:

> Claimant [T-Mobile] has appropriately declared that the present title to the Shares is uncertain, and was uncertain at this time of the exercise of the call option. It points out

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 41
OHS East:160157671.8

that "it remains unclear whether DT has acquired 226,080 PTC shares (i.e., over 48 percent of the PTC shares), on the one hand, or only a single PTC share, on the other."

111.    On October 4, 2006, without disclosing the full content of the Second Partial Award, T-Mobile issued another misleading statement to the press, which upon information and belief, it knew would be carried on U.S. wires and would mislead the Elektrim bondholders. The press release stated:

> In yet another award of October 2, 2006, the Arbitral Tribunal in Vienna conferred the ownership title to the disputable 48% of the shares in PTC to Deutsche Telecom [sic] (with effect as of February 15, 2005, which remains in concord with the joint stand of Elektrim S.A. and Deutsche Telecom presented to date. For this reason Deutsche Telekom has paid an amount of more than EUR 600 million, which surely covers the current book value of the shares in PTC. [Emphasis added.]

112.    This release was also materially misleading. It deceived the public about the content and effect of the Second Partial Award (which was not publicly available). The Award had not "conferred ownership title" of Telco's PTC Shares to T-Mobile. Nor had T-Mobile paid for the shares at that time. Nor were the shares properly registered.

113.    Once again, by issuing the release Defendants intended to mislead the Elektrim bondholders into giving up their fight and accepting immediate settlements from Elektrim with a priority payment. The release was also noteworthy because it publicly acknowledges that Defendants had a "common position" to hand over ownership of Telco's (and Plaintiff's) PTC shares to T-Mobile for a fraction of its worth with retroactive effect, confirming the previously existing collusion between Elektrim and T-Mobile.

114.    On October 4, 2006, the Polish bankruptcy court held a hearing to determine whether to liquidate Elektrim. At the hearing Elektrim's lawyer asked for an adjournment to study what it called new evidence. In fact, Elektrim wanted more time so that it could continue

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    discussions with the bondholders and with T-Mobile which had not yet paid for the PTC shares it

2    had taken possession of several weeks earlier.  At the hearing Elektrim's attorney did not disclose

3    to the court that the PTC shares had already been transferred to T-Mobile without any

4    compensation.  Indeed, in its written submission to the court filed on September 28, 2006,

5    Elektrim had affirmatively misrepresented that it still had possession of the PTC shares.  The

6    bondholders' representative remained silent because they had been fraudulently induced into

7    supporting the dismissal of the bankruptcy petition.

8

9        115.    On or about October 26, 2006, pursuant to an arrangement between Elektrim, T-

10   Mobile, and representatives of the Elektrim bondholders, T-Mobile made a payment of €643

11   million to Elektrim of which €525 million went to the trustee of the bondholders and of which

12   €118 million went to Elektrim (in violation of the LCIA's order, which required Elektrim to

13   transfer this money into escrow to secure Vivendi's claims) and, upon information and belief, in

14   part, to Solorz.  Neither the bondholders nor their trustee was aware at the time that Defendants

15   were in fact violating the awards of the Vienna arbitration panel.  The amount of the payment for

16   the book value was €40 million higher than the book value as stated by PTC's finance department

17   on September 20, 2006 to the Third Vienna Arbitration panel.

18

19       116.    On October 27, 2006, with the unwitting support of the misled bondholders, the

20   bankruptcy court discontinued the bankruptcy proceedings against Elektrim.  At that time,

21   documents came to light that revealed Defendants' deception.

22

23

24

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 43
OHS East:160157671.8

117.    On November 2, 2006 – almost two months beyond Polish law requirements for disclosure – PTC filed an application with the KRS to change the KRS ownership for the PTC shares to T-Mobile.

### 3.    Defendants Complete Their Illegal Takeover of the PTC Shares in Defiance of Decisions of the Supreme Courts of Poland and Austria.

118.    On December 18, 2006, the Austrian Supreme Court, the highest judicial body with jurisdiction over the location of the seat of the Second Vienna Arbitration, conclusively reaffirmed that Telco was not a party to the Second Vienna Arbitration, and that the Second Vienna Award could not, in any event, compel Telco to give up its ownership of the PTC shares.

119.    On January 18, 2007, the Polish Supreme Court handed down a decision vacating the partial recognition of the Second Vienna Award in Poland (the "Polish Supreme Court Decision"). The Polish Supreme Court Decision vacated all previous decisions by Polish lower courts that had relied on the Second Vienna Award. This means that there is no valid Polish judgment that can be used as a pretext for denying Telco's ownership rights in the PTC shares. Therefore, the Polish Supreme Court Decision restored the legal status quo *ante*, i.e., Telco owning the PTC Shares. However, de facto control and changes in the KRS have not yet been implemented by the Polish courts.

120.    On January 23, 2007, Vivendi's Deputy General Counsel in New York City transmitted a formal written demand on T-Mobile demanding that it (a) discontinue its unjustified interference with the legitimate management of PTC, (b) discontinue its illegal occupation of PTC's premises, and (c) otherwise cease its racketeering. The letter added that each day of delay in taking these actions causes irreparable injury to Vivendi and millions of

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 44
OHS East:160157671.8

users of the T-Mobile network in the United States. The letter also noted that "[g]iven the definitive and unambiguous statements of both the Polish and Austrian Supreme Courts, DT's [Deutsche Telekom's] interpretation of the decision as set forth in The Wall Street Journal – that the decision has no impact on the ownership of PTC – is intentionally false and misleading, raising serious concerns under U.S. securities laws."

121.    On January 26, 2007, T-Mobile responded by denying the clear meaning and legal effect of the Polish Supreme Court Decision, which vacated all prior Polish court decisions, and, instead, speculated without foundation that "the [Second Vienna Arbitration] Award "will again be recognized in Poland." However, even if the Second Vienna Arbitration Award were to be fully recognized in Poland, it would have no legal effect on Telco's rights to the PTC Shares. T-Mobile refused to return control of PTC to Vivendi and continues to maintain control of PTC through use of lawless force.

122.    On January 28, 2007, T-Mobile used the U.S. wires to issue misleading press releases in furtherance of its continuing, illegal operation of the corrupt T-Mobile global network enterprise. The press releases attributed an increase in the number of T-Mobile customers, in part, to "the PTC consolidation in Poland." The press releases stated the consolidated earnings for the global T-Mobile enterprise that incorporated PTC's assets and revenues even though T-Mobile did not lawfully own PTC. The press releases omitted the material information that Elektrim's transfer of the PTC Shares (under Solorz' control) was contrary to the ruling of the Third Vienna Arbitration.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 45
OHS East:160157671.8

D.    **Summary of Facts**

123.    As explained in this Second Amended Complaint, Defendants engaged in a massive, multi-year racketeering conspiracy whereby Defendants (i) violated RICO section 1962(b) and (d) by secretly and illegally seizing PTC, which allowed Solorz to illegally enriched himself at the expense of Vivendi and U.S. Elektrim bondholders and in defiance of the Supreme Courts of Poland and Austria, and (ii) violated RICO section 1962(c) and (d) by using a pattern of corruption to operate two enterprises — the T-Mobile global network (with T-Mobile USA as its central revenue-contributor and most important component), and Elektrim (under the corrupt influence of Solorz, who secretly and illegally seized Elektrim, stripped Elektrim's assets during a bankruptcy proceeding and materially contributed to the defrauding of U.S. bondholders).

124.    With respect to Solorz and Elektrim, the hallmark of their post-2003 misconduct is that it often went against Elektrim's own, objective self-interest and against the interests of Elektrim's bondholders – a fact that can only be explained by the joint racketeering of Solorz and T-Mobile and the corrupt manner in which Solorz ran Elektrim.  Simply put, it was not in the self-interest of a non-corrupt Elektrim to: (a) seek a partial recognition of the Second Vienna Award and to exclude Telco from the proceedings; (b) defy and appeal the Vienna Commercial Court's annulment of the aspects of the Second Vienna Award that Elektrim had lost, (c) strip itself of valuable assets; (d) breach its obligations to Vivendi under the Joint Venture Agreement; (e) violate Polish court orders and injunctions; (f) violate arbitral rulings in the London Arbitration; (g) expedite the implementation of the call option at book value; (h) mislead Elektrim's bondholders and T-Mobile ADR investors and (h) defy the Polish Supreme Court.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

125.    Vivendi does not currently know all the inducements T-Mobile provided to Solorz

as part of the racketeering conspiracy.  However, as mentioned above, T-Mobile recently caused

PTC to grant to one of Solorz's companies an incredibly valuable benefit – the MVNO – while

Defendants were supposedly hotly contesting the Third Vienna Arbitration.  Also, as a result of

the unlawful scheme to defraud Vivendi, Elektrim was paid twice for the PTC Shares and, upon

information and belief, some of this money found its way to Solorz.

126.    After a three-year conspiracy, and notwithstanding the ruling of the Polish

Supreme Court, the Defendants' racketeering continues.  Defendants have defied the Supreme

Courts of two European countries – Austria and Poland – and ignored orders issued by a London

arbitration panel.  Notwithstanding these decisions, T-Mobile still possesses the PTC shares and

controls PTC and is still conducing the affairs of the T-Mobile network in a corrupt manner.  The

corrupt Elektrim and Solorz still retain the money that Elektrim received for the double payment

for the PTC sales which Elektrim first sold to Vivendi and then resold to Deutsche Telekom.

The Elektrim bondholders still have not received any monies from the sale of the PTC Shares.

This is classic racketeering conduct — including mobster-type physical seizure and expulsion of

Telco personnel by a hired security force, as described above in ¶ 68.  As a result, Vivendi, the

U.S. bondholders of Elektrim, and U.S. users of the T-Mobile network remain victims of the

Defendants' racketeering.

127.    This District is the proper forum for this action because it is the site of the

headquarters of T-Mobile USA, Inc., the largest part of the international enterprise, the T-Mobile

network which defendants operated and expanded by and through a pattern of racketeering

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 47
OHS East:160157671.8

activity by unlawfully seizing PTC. This District is also where conduct integral to the racketeering activity occurred in furtherance of the conspiracy. T-Mobile USA, Inc.'s operations also constitute the most significant generator of revenues for the T-Mobile global network, which was corrupted by Defendants and thereafter operated as a corrupt enterprise. Moreover, having exhausted its efforts elsewhere, Vivendi brings this action in the United States in a jurisdiction where it can get a fair hearing and enforce a judgment against T-Mobile. Elektrim is effectively judgment proof as a result of the racketeering.

128.    This is not the only time that Deutsche Telekom has used corruption to take over a central European company. In the late 1980's Deutsche Telekom engaged in corrupt practices to take over a Czech mobile phone company. Moreover, Deutsche Telekom's auditors refused to certify the 2005 accounts of Deutsche Telekom's Hungarian subsidiary as presented by the management because of illegitimate contracts. The CFO of the Hungarian subsidiary, Mr. Hartman, has just been appointed by Deutsche Telekom as CEO of PTC.

## COUNT ONE

### RICO Section 1962(b) and 1962(d)

129.    Vivendi incorporates by reference and realleges the allegations of each and every preceding paragraph.

130.    As set forth above, Defendants engaged in and conspired to engage in a pattern of related and continuous predicate, criminal acts to illegally acquire control of PTC in violation of 18 U.S.C. §§1962(b) and (d).

131.    As set forth above, from May through August 2004, during the course of the Second Vienna Arbitration, Solorz caused Elektrim to make misleading and deceptive statements

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   in emails and phone calls to Vivendi officials and agents in the United States, misleading

2   Vivendi officials into believing that Elektrim was protecting the interests of its joint venture

3   partner, Vivendi, in PTC rather than conspiring with T-Mobile to exclude Vivendi. These

4   communications, on which Vivendi relied, were part of Defendants' scheme to takeover and

5   corrupt PTC, and they constituted wire fraud in violation of 18 U.S.C. § 1343.

6

7        132.    As set forth above, on March 7, 2006, during the course of the Third Vienna

8   Arbitration, T-Mobile made misleading statements involving U.S. wires as part of its scheme to

9   take over and corrupt PTC. These communications constituted wire fraud in violation of 18

10  U.S.C. § 1343.

11       133.    As set forth above, on September 5, 2006, and again on October 4, 2006, T-

12  Mobile issued misleading press releases, which upon information and belief, were carried over

13  U.S. wires to the U.S. bondholders of Elektrim. This conduct as well as other conduct set forth

14  above constituted wire fraud in violation of 18 U.S.C. § 1343.

15

16       134.    Defendants' racketeering conduct took place in significant part in the United

17  States and has had, and threatens to have, substantial effects on United States commerce. PTC is

18  Poland's leading mobile telecommunications provider, and millions of United States citizens do

19

20  business with it when making wireless phone calls to Poland on the T-Mobile global network.

21  The corruption of PTC and thus of the T-Mobile network of which it is a part harms these United

22  States citizens (to whom T-Mobile owes a duty of good faith and fair dealing) by depriving them

23  of honest services when making wireless telephone calls from the United States to Poland. If

24  Vivendi had not been stripped of its ownership interest in PTC by Defendants' unlawful conduct,

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

United States consumers would not have been injured and the revenues T-Mobile is now receiving would have belonged to Vivendi. Upon information and belief, PTC's roaming rates would have been lower than they currently are but for Defendants' unlawful conduct. Moreover, as a result of the conspiracy, the corrupt Elektrim has defaulted on its obligations to U.S. bondholders who still have not been paid.

135.    Upon information and belief, Mr. Winkler engaged in material conduct in the United States to further Defendants' corrupt scheme by integrating T-Mobile USA with PTC through the T-Mobile global network. Indeed, Mr. Winker has been referred to as the "global integrator."

136.    Defendants' unlawful conduct has caused injury to Vivendi's business and property. Among other damages, Vivendi has (a) lost the fair market value of its investment in PTC (through Telco) which is at least $2.5 billion and (b) lost revenue and profits it otherwise would have earned, including revenue from roaming charges relating to calls to and from the United States.

137.    Vivendi's injury is caused by the same adverse effect of Defendants' unlawful conduct that harms United States commerce and consumers. United States consumers are exposed to higher roaming rates than otherwise would be the case, and have been deprived of the honest services they are owed, because Defendants' unlawful conduct has precluded them from doing business with a non-corrupt PTC controlled by Vivendi.

138.    The U.S. bondholders of Elektrim have also suffered substantial injury as a result of Defendants' unlawful conduct.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 50
OHS East:160157671.8

139.    Given T-Mobile USA's presence in the district and the regular involvement of the other T-Mobile defendants in the affairs of T-Mobile, this is the proper forum for resolution of this dispute.  Both Poland and Germany are also signatories to the Hague convention, thus facilitating efficient discovery.  Moreover, Vivendi has been unable to enforce awards in all the other fora where litigation has taken place, and T-Mobile is now ignoring decisions from the Supreme Courts of two countries and an arbitral proceeding of a third county.

**COUNT TWO**

**RICO Section 1962(c) and 1962(d)**

140.    Vivendi incorporates by reference and realleges the allegations of each and every preceding paragraph.

141.    As set forth above, Defendants have engaged in a conspiracy to illegally conduct the affairs of two separate enterprises – the T-Mobile global wireless network and Elektrim – in violation of 18 U.S.C. §§1962(c) and (d) through a pattern of racketeering activity.

142.  As set forth above, Defendants engaged in a pattern of racketeering activity, including wire fraud, in conducting the affairs of the T-Mobile global wireless network and Elektrim.  In particular, Defendants wire fraud included without limitation (a) issuing a false press release on September 5, 2006 as set forth above, (b) communications with U.S. bondholders that failed to disclose that Elektrim's transfer of the PTC Shares to T-Mobile was contrary to the direction of the Vienna arbitration panel, and (c) all of the other predicate acts of wire fraud that occurred in 2004-07, including but not limited to communications with the U.S. bondholders that were materially misleading because they failed to disclose the stripping of

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    Elektrim's assets.  Through these and other acts the Defendants operated and expanded the T-

2    Mobile global network through the addition of PTC through a pattern of racketeering activity.

3        143.  Moreover, Defendants' corrupt operation of the T-Mobile global network involved

4    acts of wire fraud including but not limited to Defendants' fraudulent inclusion of PTC's assets

5    on T-Mobile's consolidated balance sheet to, upon information and belief, put T-Mobile in a

6
7    stronger position to support a $4.182 billion bid and purchase in a 2006 U.S. Federal

8    Communications Commission auction of Advanced Wireless Services spectrum for the benefit of

9    T-Mobile USA, Inc., and to leverage and raise capital to support other commercial and banking

10   transactions in U.S. commerce.

11       144.  Defendants' unlawful conduct has caused injury to Vivendi's business and property.

12
13   Among other damages, Vivendi has (a) lost the fair market value of its investment in PTC

14   (through Telco) which has a fair market value of at least $2.5 billion  and (b) lost revenue and

15   profits it otherwise would have earned, including revenue from roaming charges relating to calls

16   to and from the United States.

17       145.   Vivendi's injury is caused by the same adverse effect of Defendants' unlawful

18
19   conduct that harms United States commerce and consumers.  United States consumers are

20   exposed to higher roaming rates than otherwise would be the case, and have been deprived of the

21   honest services they are owed, because Defendants' unlawful conduct has precluded them from

22   doing business with a non-corrupt PTC controlled by Vivendi.

23       146.   The U.S. bondholders of Elektrim have also suffered substantial injury as a result

24   of Defendants' unlawful conduct.

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

147.    Given T-Mobile USA's presence in the district and the regular involvement of the other T-Mobile defendants in the affairs of T-Mobile, this is the proper forum for resolution of this dispute. Both Poland and Germany are also signatories to the Hague convention, thus facilitating efficient discovery. Moreover, Vivendi has been unable to enforce awards in all the other fora where litigation has taken place, and T-Mobile is now ignoring decisions from the Supreme Courts of two countries and an arbitral proceeding of a third county.

## PRAYER FOR RELIEF

WHEREFORE, Vivendi prays this Court to grant the following relief as appropriate:

a)  Order Defendant T-Mobile to return to Telco the PTC Shares that were stolen by Defendants;

b)  Award to Vivendi its actual and compensatory damages according to proof at trial;

c)  Award to Vivendi three times its damages in accordance with 18 U.S.C. §1964(c);

d)  Award to Vivendi pre- and post-judgment interest as permitted by law;

e)  Award Vivendi its reasonable attorneys' fees and costs of suit as allowed by law; and

f)  Award such other relief as the Court deems appropriate.

DATED this 20th day of February 2007

Respectfully submitted,

Of Counsel

ORRICK, HERRINGTON & SUTCLIFFE, LLP

ROHDE & VAN KAMPEN, PLLC

/s/ Lanny J. Davis
Lanny J. Davis
Washington Harbour
3050 K Street, Northwest

/s/ Robert E. Rohde
Robert E. Rohde, WSBA #12809
1001 Fourth Avenue, Suite 4050
Seattle, WA  98154-1000

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 53
OHS East:160157671.8

1 | Washington D.C. 20007-5135 | 206-386-7353
Attorneys for Plaintiff Vivendi S.A. | Attorneys for Plaintiff Vivendi S.A.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

COMPLAINT - 54
OHS East:160157671.8