The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIVENDI S.A.,<br><br>Plaintiff,<br><br>v.<br><br>T-MOBILE USA, INC.; T-MOBILE DEUTSCHLAND GMBH; T-MOBILE INTERNATIONAL AG; DEUTSCHE TELEKOM AG; and ZYGMUNT SOLORZ-ZAK,<br><br>Defendants. | No. CV6-1524 JLR<br><br>**DT DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>**Note on Motion Calendar: June 8, 2007**<br><br>***Oral Argument Requested*** |

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**TABLE OF CONTENTS**

I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................2

A. The Genesis of the Dispute over PTC. ....................2

B. The Second Vienna Arbitration. ....................3

C. The Third Vienna Arbitration. ....................4

D. Proceedings Initiated by Vivendi throughout Europe. ....................4

1. Poland. ....................4

2. Austria. ....................5

3. France. ....................6

4. United Kingdom. ....................6

5. Switzerland. ....................6

6. Germany. ....................7

E. This RICO Case. ....................7

III. ARGUMENT ....................7

A. The Court Should Dismiss the Complaint under the Doctrine of *Forum Non Conveniens*. ....................7

1. The Court Has Indicated That It Will Consider *Forum Non Conveniens* First. ....................7

2. The Relevant Considerations Support Dismissal under the Doctrine of *Forum Non Conveniens*. ....................8

a. Vivendi's Choice of Forum Is Entitled to Little Deference ....................8

b. Multiple Alternative Fora Can Adjudicate This Dispute. ....................9

c. The Private Interest Factors Strongly Favor the Alternative Fora. ....................10

d. The Public Interest Factors Also Favor Alternative Fora. ....................12

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

B. The Court Lacks Personal Jurisdiction over the German DT Defendants.......15

1. Vivendi Cannot Rely on Group Pleading to Establish Personal Jurisdiction over the German DT Defendants. ...................................15

2. No Statute Provides a Basis for Personal Jurisdiction over the German DT Defendants. ..........................................................15

a. Vivendi Cannot Establish Jurisdiction under Rule 4(k)(1)(A)..................................................................16

b. Vivendi Also Has Not Alleged Facts Sufficient to Establish Jurisdiction under Rule 4(k)(2)...............................................18

C. The Court Lacks Subject Matter Jurisdiction over Vivendi's Claims. ............19

1. The Alleged Conduct within the United States Does Not Support Subject Matter Jurisdiction. ..............................................................19

2. The Alleged Effects on the United States Do Not Support Subject Matter Jurisdiction. .................................................................20

D. The Complaint Fails to State a Claim upon which Relief Can Be Granted under RICO.......................................................................................21

1. Vivendi Lacks Standing to Bring a RICO Claim. ...............................21

a. Vivendi's Claims of RICO Injury Are Not Ripe. ....................22

b. Vivendi Has Failed Adequately to Allege That the Purported RICO Violations Proximately Caused Damages. ...23

2. The Complaint Fails to Allege a Pattern of Racketeering. ..................24

a. The 2004 Settlement Communications Do Not Form a Pattern of Racketeering.........................................................24

(1) The Alleged 2004 Settlement Communications Were Not Racketeering Acts. ................................................24

(2) The Alleged 2004 Settlement Communications Were Insufficiently Continuous. ...........................................25

b. The Post-2004 Allegations Do Not Remedy the Lack of a Pattern of Racketeering.........................................................27

(1) The Post-2004 Acts Were Not Wire Fraud...................27

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

(2) The Alleged Post-2004 Racketeering Acts Cannot Be Appended to the Alleged 2004 Acts to Form a Pattern Because They Are Unrelated. ..........................31

c. The Complaint Fails to Plead Each DT Defendant's Fraudulent Acts with Particularity. ........................................31

3. The Complaint Fails to State a Claim under § 1962(b). ......................32

4. The Complaint Fails to State a Claim under § 1962(c). ......................33

a. Vivendi Has Not Alleged That the DT Defendants Are Distinct from the T-Mobile Network. .....................................33

b. Plaintiff Has Not Alleged That the DT Defendants Conducted or Participated in the Conduct of Elektrim's Affairs. ......................................................................34

5. The Complaint Fails to State a Claim That the DT Defendants Violated § 1962(d). ................................................................35

6. The Claim for Injunctive Relief Should Be Dismissed. ......................35

IV. CONCLUSION.........................................................................................35

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143 (1987) .......... 24

*Am Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586 (9th Cir. 1996) .......... 16

*Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991 (2006) .......... 23

*Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669 (6th Cir. 2002) .......... 12

*Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102 (1984) .......... 18

*Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321 (3d Cir. 1999) .......... 30

*Bankers Trust Co. v. Rhoades*, 859 F.2d 1096 (2d Cir. 1988) .......... 22

*Batchelder v. Kawamoto*, 147 F.3d 915 (9th Cir. 1998) .......... 14

*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) .......... 35

*Blanco v. Blanco Indus. de Venez., S.A.*, 997 F.2d 974 (2d Cir. 1993) .......... 10

*Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989) .......... 15

*Butcher's Union Local No. 498 v. SDS Invs., Inc.*, 788 F.2d 535 (9th Cir. 1986) .......... 16

*Butte Mining PLC v. Smith*, 76 F.3d 287 (9th Cir. 1996) .......... 20

*Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839 (S.D.N.Y. 1991) .......... 24

*Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001) .......... 33

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Cent. States, S.E. & S.W. Areas Pension Fund*, 230 F.3d 934, 940-41 (7th Cir. 2000) ................16

*Chiarella v. United States*, 445 U.S. 222 (1980)..........................................................................................25

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)..........................................................................................15

*Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989) ..............................................................................20

*DeLorean v. Cork Gully*, 118 B.R. 932 (E.D. Mich. 1990)..........................................................................25

*DeMauro v. DeMauro*, 115 F.3d 94 (1st Cir. 1997)...............................................................................23

*Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc & per curiam) ...........................................................14

*Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998).......................34

*Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174 (C.D. Cal. 1998), *aff'd*, 248 F. 3d 915 (9th Cir. 2001).............. 16-17, 19

*Easter v. Am. W. Fin.*, 381 F.3d 948 (9th Cir. 2004) .............................................................................16

*Elektrim S.A. v. Vivendi Universal S.A.*, 2007 WL 763664, [2007]......................................................................................6

*First Nationwide Bank*, 27 F.3d at 769-70...................................................................................23

*Flag Co. v. Maynard*, 376 F. Supp. 2d 849 (N.D. Ill. 2005).......................................................................16

*Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406 (9th Cir. 1989) ...........................................................................16

*Goel v. Jain*, 259 F. Supp. 2d 1128 (W.D. Wash. 2003)...............................................................25

*Grow Group, Inc. v. Jandernoa*, No. 94 Civ. 5679 (RPP), 1996 WL 31848 (S.D.N.Y. Jan. 26, 1996).....................................15

*Grunenthal v. Hotz*, 712 F.2d 421 (9th Cir. 1983) .............................................................................19

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Gschwind v. Cessna Aircraft Co.*,
161 F.3d 602 (10th Cir. 1998) ....................................................................................8

*H.J. Inc. v. Nw. Bell Tel. Co.*,
492 U.S. 229 (1989)....................................................................................... 25-26, 31

*Holmes v. Secs. Investor Prot. Corp.*,
503 U.S. 258 (1992)...........................................................................................23

*Howard v. Am. Online Inc.*,
208 F.3d 741 (9th Cir. 2000) ................................................................. 26, 30-31, 35

*Imagineering, Inc. v. Kiewit Pac. Co.*,
976 F.2d 1303 (9th Cir. 1992) ..............................................................................23

*In re Auto. Refinishing Paint*,
229 F.R.D. 482 (E.D. Pa. 2005)...........................................................................12

*In re Royal Ahold N.V. Secs. & ERISA Litig.*,
351 F. Supp. 2d 334 (D. Md. 2004).......................................................................15

*In re Simon*,
153 F.3d 991 (9th Cir. 1998) ...............................................................................20

*Iragorri v. United Techs. Corp.*,
274 F.3d 65 (2d Cir. 2001) ....................................................................................8

*ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*,
No C05-2010Z, 2006 WL 1789029, at *8-9 (W.D. Wash. June 27, 2006)............................32

*Jarvis v. Regan*,
833 F.2d 149 (9th Cir. 1987) ...............................................................................26

*Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*,
940 F.2d 397 (9th Cir. 1991) ...............................................................................32

*Lee v. Gen. Nutrition Cos.*,
No. 00-13550LGB, 2001 WL 34032651 (C.D. Cal. Nov. 26, 2001) .....................................34

*Lincoln House, Inc. v. Dupre*,
903 F.2d 845 (1st Cir. 1990)................................................................................22

*Lipin Enters. Inc. v. Lee*,
803 F.2d 322 (7th Cir. 1986) ...............................................................................26

*Lockman Found. v. Evangelical Alliance Mission*,
930 F.2d 764 (9th Cir. 1991) ..................................................................................9

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137 (9th Cir. 2001) .................................................................... 9, 11-12, 14

*Moore v. Kayport Package Express, Inc.*,
885 F.2d 531 (9th Cir. 1989) ..........................................................................................32

*Motorola Credit Corp. v. Uzan*,
322 F.3d 130 (2d Cir. 2003) ...........................................................................................22

*Mujica v. Occidental Petroleum Corp.*,
381 F. Supp. 2d 1134 (C.D. Cal. 2005) ................................................................ 14-15

*N.S. Fin. Corp. v. Al-Turki*,
100 F.3d 1046 (2d Cir. 1996) .........................................................................................20

*Neder v. United States*,
527 U.S. 1 ..........................................................................................................................27

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*,
925 F.2d 1193 (9th Cir. 1991) ........................................................................................15

*Nix v. Hoke*,
62 F. Supp. 2d 110 (D.D.C. 1999).................................................................................24

*Norex Petroleum Ltd. v. Access Indus., Inc.*,
416 F.3d 146 (2d Cir. 2005) .............................................................................................8

*Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*,
185 F.3d 957 (9th Cir. 1999) ..........................................................................................35

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
96 F.3d 1151 (9th Cir. 1996) ..........................................................................................25

*Pebble Beach Co. v. Caddy*,
453 F.3d 1151 (9th Cir. 2006) ...................................................................................15, 19

*Perez v. McDonald's Corp.*,
No. Civ-S-97-0641, 1998 WL 59083 (E.D. Cal. Jan. 29, 1998) .................................33

*Piper Aircraft Co. v. Reyno*,
454 U.S. 235 (1981)............................................................................................ 8-9, 14

*Poulos v. Caesars World, Inc.*,
379 F.3d 654 (9th Cir. 2004) ..........................................................................................19

*PT United Can Co. v. Crown Cork & Seal Co.*,
138 F.3d 65 (2d Cir. 1998) .............................................................................................10

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*R.R. Brittingham v. Mobil Corp.*,
943 F.2d 297 (3d Cir. 1991) ....................34

*Religious Tech. Ctr. v. Wollersheim*,
971 F.2d 364 (9th Cir. 1992) .................... 26-27

*Republic of Philippines v. Marcos*,
818 F.2d 1473 (9th Cir. 1987) ....................19

*Reves v. Ernst & Young*,
507 U.S. 170 (1993).................... 33-34

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
30 F.3d 339 (2d Cir. 1994) ....................34

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) ....................21

*Saturn Biomed. Sys., Inc. v. Aircraft Med. Ltd.*,
No. C06-020RSL, 2006 WL 1705895 (W.D. Wash. June 14, 2006) ....................19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ....................26

*SEC v. Zandford*,
535 U.S. 813 (2002)....................30

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)....................22, 31

*Sever v. Alaska Pulp Corp.*,
978 F.2d 1529 (9th Cir. 1992) .................... 26-27

*Simon v. Value Behavioral Health, Inc.*,
208 F.3d 1073 (9th Cir. 2000) ....................35

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
__ U.S. __, 127 S. Ct. 1184 (2007)....................8, 13

*Swartz v. KPMG, LLC*,
401 F. Supp. 2d 1146 (W.D. Wash. 2004), *aff'd* ....................30, 32, 35

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) ....................9-10, 17-18

*Tuscano v. Tuscano*,
403 F. Supp. 2d 214 (E.D.N.Y. 2005) ....................33

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*U.S. Vestor, LLC v. Biodata Info. Tech. AG*,
290 F. Supp. 2d 1057 (N.D. Cal. 2003) .......... 4

*United States v. Bestfoods*,
524 U.S. 1 (1998) .......... 17

*United States v. Goodman*,
984 F.2d 235 (8th Cir. 1993) .......... 28

*United States v. Shryock*,
342 F.3d 948 (9th Cir. 2003) .......... 34

*United States v. Tarallo*,
380 F.3d 1174 (9th Cir. 2004) .......... 29

*Wagh v. Metris Direct, Inc.*,
348 F.3d 1102 (9th Cir. 2003) .......... 32, 35

*Yahoo! Inc. v. La Ligue Contre le Racisme et L'antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) (en banc & per curiam) .......... 17

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
126 F.3d 15, 22 (2d Cir. 1997) .......... 13

**FEDERAL STATUTES**

15 U.S.C. § 78j(b) .......... 30

18 U.S.C. § 1961(1)(B) .......... 24

18 U.S.C. § 1962(b) .......... 7, 32, 35

18 U.S.C. § 1962(b), (c) .......... 24

18 U.S.C. § 1962(c) .......... 7, 33-34

18 U.S.C. § 1962(d) .......... 35

18 U.S.C. § 1964(c) .......... 23, 29

Organized Crime Control Act of 1970 ("RICO") .......... Passim

**RULES**

Fed. R. Civ. P. 4(k)(1)(A) .......... 16

Fed. R. of Civ. P. 4(k)(2) .......... 18-19

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Fed. R. Civ. P. 9(b) .......... 31-32

Fed. R. Civ. P. 26(a) .......... 11

**REGULATIONS**

17 C.F.R. § 240.10b-5.......... 30

**CONSTITUTIONAL PROVISIONS**

U.S. CONST. art. V .......... 16

**NON-PERIODICAL PUBLICATIONS**

Restatement (Third) of the Foreign Relations Law of the United States § 402(2).......... 13

**OTHER AUTHORITIES**

H.R. Conf. Rep. No. 104-369 (1995).......... 30

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Defendants Deutsche Telekom AG ("DT"), T-Mobile International AG ("T-Mobile International"), T-Mobile Deutschland GmbH ("TMD"), and T-Mobile USA, Inc. ("T-Mobile USA") (collectively, the "DT Defendants") respectfully submit this motion to dismiss the Second Amended Complaint ("SAC" or "Complaint") of Plaintiff Vivendi S.A. ("Vivendi").

## I. INTRODUCTION

This Court now joins dozens of tribunals in six European countries that have been asked to consider (or are currently considering) this dispute among German, French, and Polish competitors in the European telecommunications market over control of a Polish telecommunications company, Polska Telefonia Cyfrowa Sp. z o.o. ("PTC"). Arbitral tribunals sited in Austria have concluded that the attempted transfer of PTC shares by Elektrim to a corporate vehicle owned in part and controlled by Vivendi constituted a material default under PTC's joint-venture agreements and that the attempted transfer was ineffective as a matter of governing Polish law. Vivendi has attacked these adverse rulings, resisted their enforcement, and filed multiple new proceedings against DT, TMD, and others in Poland, Austria, France, the United Kingdom, Switzerland, and Germany. None of these proceedings has resulted in a finding that the DT Defendants committed any wrongdoing.

Now, Vivendi has come over 5,000 miles to the Western District of Washington and attempted to manufacture a basis to litigate here. In this action, Vivendi alleges that the DT Defendants violated the Racketeer Influenced and Corrupt Organizations provisions of the Organized Crime Control Act of 1970 ("RICO") through purportedly misleading statements made during alleged settlement negotiations conducted in Europe and in press releases about the rulings of foreign arbitral tribunals and courts. Tellingly, this suit marks the ***first time*** in eight years that Vivendi has suggested that T-Mobile USA had any involvement in the dispute over PTC, or that there was any connection ***at all*** between that dispute and the United States.

For the following reasons, the Court should dismiss the Complaint with prejudice.

***First***, the Western District of Washington is an inappropriate forum under the doctrine

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

of *forum non conveniens*. In its Order of April 18, 2007, the Court indicated that it intends to address this issue before reaching any alternative ground for dismissal.

***Second***, the Court lacks personal jurisdiction over Defendants DT, T-Mobile International, and TMD (the "German DT Defendants"). Vivendi has not alleged (and cannot allege) that the German DT Defendants engaged in conduct in Washington sufficient to create general or specific jurisdiction over them.

***Third***, the Court lacks subject matter jurisdiction. The conduct at issue did not occur in the United States and did not have any material effect on the United States. Thus, United States courts do not have subject matter jurisdiction over the dispute.

***Fourth***, the Complaint fails to state a RICO claim. The RICO claims revolve around settlement discussions that did not lead to a final settlement and indisputably accurate press releases. The allegations concerning these actions do not meet several of the fundamental elements of a RICO claim, including the requirement of a pattern of racketeering activity.

## II. FACTUAL BACKGROUND

The facts relevant to this motion to dismiss may be taken largely from the allegations in Vivendi's Complaint.

### A. The Genesis of the Dispute over PTC.

In 1995, TMD, a German company; Elektrim S.A. ("Elektrim"), a Polish company; and other investors founded PTC. (SAC ¶¶ 28, 30.) Initially, Elektrim owned 37.1% of PTC and TMD owned 22.5%. (*Id.* ¶ 30.) The remainder of the stock was held by US West International B.V. (22.5%), a Dutch company; Polpager, a Polish company (4%); and a group of Polish investors (13.9%). (*Id.*) PTC's original joint venture partners entered into a Shareholders Agreement and Deed of Formation that (a) prohibited any transfer of PTC shares without the unanimous consent of certain PTC shareholders, including TMD; and (b) gave each shareholder a Call Option that could be exercised over another shareholder's

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

PTC shares in the event that the second shareholder committed a serious breach of the agreements. (*See id.* ¶ 29.)

In 1999, Elektrim acquired the shares of other investors, bringing its total to 48%; and Elektrim and Vivendi established a joint-venture vehicle called Telco, which, according to their plan, would ultimately hold Elektrim's 48% shareholding in PTC. (*Id.* ¶¶ 33, 36.) Vivendi and Telco paid Elektrim to transfer its 48% direct PTC shareholding to Telco. (*See id*. ¶ 36.) As the Complaint implies, Vivendi and Telco entered into this transaction ***without*** obtaining approval from PTC's corporate bodies, which they knew was required. (*See id*.)

**B. The Second Vienna Arbitration.**

Because it believed that Elektrim's attempted transfer of PTC shares was invalid, TMD pursued claims against Telco and Elektrim in arbitration in Vienna, Austria ("Second Vienna Arbitration"),[1] pursuant to arbitration clauses in the PTC Shareholders Agreement and Deed of Formation. (*See id.* ¶ 44.) TMD sought declarations that the purported share transfer to Telco was ineffective, that Elektrim accordingly continued to own the 48% PTC shareholding, and that Elektrim had committed a material default, entitling TMD to exercise its Call Option over Elektrim's PTC shares. In accordance with the terms of the Shareholders Agreement, the dispute was decided under Polish law. (*See* PTC Shareholders Agreement, Art. 20, attached as Ex. A to Declaration of Stephen M. Rummage ("Rummage Decl.").)

In November 2004, the Second Vienna Arbitration tribunal unanimously issued an award declaring that: the purported transfer of Elektrim's PTC shares to Telco pursuant to Elektrim's agreements with Vivendi was deliberately wrongful and ineffective as a matter of Polish law; Elektrim materially breached its joint venture obligations to TMD; and that, if Elektrim failed to restore the status quo within two months, Elektrim would be in material default under the Shareholders Agreement. (*See* SAC ¶ 57.)

---

[1] The "First Vienna Arbitration" (SAC ¶¶ 38-43) has little relevance to the Complaint, and Vivendi does not allege that any acts of racketeering occurred in relation to that proceeding.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**C. The Third Vienna Arbitration.**

When Elektrim failed to restore the status quo ante within two months, TMD exercised the Call Option on February 15, 2005, and initiated a third arbitration in Vienna against Elektrim ("Third Vienna Arbitration"), seeking a declaration that it was entitled to exercise its Call Option. (*Id.* ¶ 77.) In the First Partial Award, issued on June 6, 2006, the tribunal ruled that TMD had the right to exercise its Call Option. (*Id.* ¶ 87.) In the Second Partial Award, issued on October 2, 2006, the tribunal again upheld TMD's right to exercise its Call Option, held that legal title to the shares would transfer to TMD effective February 15, 2005, and held that factual control would transfer immediately upon payment of approximately €600 million to Elektrim along with an undertaking to pay a potential further adjusted amount to be determined by the tribunal. (*See id.* ¶ 110, 115.) In compliance with the Second Partial Award, TMD paid over €600 million to Elektrim for the PTC shares and provided the undertaking. (*See id.* ¶ 115.)

**D. Proceedings Initiated by Vivendi throughout Europe.**

During and after the Second and Third Vienna Arbitrations, Vivendi initiated litigation across Europe in an attempt to challenge or undo the consequences of the Vienna awards. Although the Complaint mentions only a few of these proceedings, it nevertheless reveals that courts and arbitral tribunals abroad have been heavily involved in addressing this dispute. (*See* SAC ¶¶ 38, 44, 59, 63, 77, 79, 85, 87, 90, 95, 110, 118, 119.) In addition, Vivendi's public filings and the DT Defendants' declarations in support of this motion to dismiss further detail Vivendi's efforts, in diverse European tribunals, to obtain relief comparable to that sought in this Court.[2]

**1. Poland.**

More than a dozen actions have been filed in Polish courts relating to the PTC dispute. (Declaration of Uli Kuehbacher ("Kuehbacher Decl.") ¶¶ 20-23.) Many are ongoing. (*Id.*

---

[2] "The court may accept declarations outside the pleadings to decide *forum non conveniens* or personal jurisdiction." *U.S. Vestor, LLC v. Biodata Info. Tech. AG*, 290 F. Supp. 2d 1057, 1062 n.1 (N.D. Cal. 2003).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

¶¶ 22-23) Elektrim and TMD filed proceedings in the Warsaw Regional Court seeking recognition of the Second Vienna Award. (SAC ¶ 59.) The court of first instance recognized the Award. (*Id.* ¶ 63.) Although that decision was upheld on appeal, on January 18, 2007, the Supreme Court of Poland reversed the appellate court's decision, on procedural grounds, and remanded the case to the Warsaw Regional Court for further proceedings. (*Id.* ¶ 119.) According to Vivendi, "[a]s a result [of the Polish Supreme Court's decision,] the Vienna Award has no effect in Poland and according to Polish law *Telco is the owner of 48% of PTC*." (Vivendi Press Release, dated January 18, 2007, attached as Ex. B to Rummage Decl.) Thus, Vivendi brings an action here to recover shares that it claims to own already.

Meanwhile, Vivendi (through Telco) has filed additional proceedings in Poland: to declare invalid TMD's acquisition of the PTC shares; to list Telco as the owner of the disputed PTC shares in the National Court Register, the official Polish registry of shareholders; to prohibit PTC from distributing profits; to prohibit Elektrim's representatives on the PTC Management and Supervisory Boards from acting on behalf of PTC; to prohibit TMD and Elektrim from exercising shareholder rights with regard to the disputed PTC shares; to restrain Elektrim from transferring or taking any action with regard to the disputed shares; to order Elektrim to return the PTC shares or their value to Telco; for damages against PTC Supervisory Board and Management Board members and PTC shareholders; and to prohibit Elektrim from transferring funds to its creditors. (SAC ¶¶ 66-68, 79, 93-94; Kuehbacher Decl. ¶¶ 20-23; Vivendi Management Board's Operating and Financial Review and Prospects, at 65 ("Vivendi Report"), attached as Ex. C to Rummage Decl.) In addition, Vivendi has initiated arbitral proceedings against the Republic of Poland, pursuant to the bilateral investment treaty between France and Poland. (SAC ¶ 70; Vivendi Report at 66.)

**2. Austria.**

Vivendi, through Telco, filed suit in Austria to vacate the Second Vienna Award. (Kuehbacher Decl. ¶¶ 24-25.) On December 18, 2006, the Austrian Supreme Court upheld

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

the lower courts' rejection of Telco's challenge to the award. (SAC ¶ 118; Kuehbacher Decl. ¶ 25; Vivendi Report at 66.) Telco was ordered to pay TMD's and other defendants' attorneys' fees and costs. (Kuehbacher Decl. ¶ 25.)

**3. France.**

In April 2005, Vivendi filed suit in the Commercial Court of Paris alleging that DT and T-Mobile International AG & Co. KG violated French law by breaking off settlement talks in 2003 and 2004 in bad faith and colluding with Elektrim ("French Action"). As explained below, *see infra* Part III.A.2.b, Vivendi seeks damages in the French Action in the amount of its investment in Telco. (*See* Commercial Court of Paris Summons, *Vivendi Universal v. T-Mobile International AG & Co. KG* ("Paris Summons"), attached as Ex. H to Kuehbacher Decl.; Vivendi Report at 66.) The French Action is currently pending.

**4. United Kingdom.**

Vivendi initiated arbitration against Elektrim before the London Court of International Arbitration pursuant to the investment agreements between the two companies. (*See* SAC ¶¶ 90-96; Vivendi Report at 66.) There, Vivendi again seeks damages in the amount of its investment in PTC or the value of the PTC shares. *See Elektrim S.A. v. Vivendi Universal S.A.*, 2007 WL 763664, [2007] EWHC 571 at ¶ 19 (Q.B.) (noting that Vivendi initiated arbitration against Elektrim for damages for, among other things, the loss of Vivendi's "original Euros 1.7 billion investment" in PTC (emphasis and internal quotation marks omitted)).

**5. Switzerland.**

In April 2006, Vivendi commenced arbitration proceedings in Geneva, Switzerland in which Vivendi claims to be the owner of the disputed PTC shares based on a purported oral agreement with TMD, DT, T-Mobile International AG & Co. KG, and other companies. Vivendi again seeks to regain the disputed PTC shares or to be awarded the value of its lost investment. (*See* Vivendi Report at 66-67; Kuehbacher Decl. ¶ 29.)

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**6. Germany.**

Vivendi sued DT in Hamburg, requesting that the court prohibit DT from making any statements to the effect that it owns the disputed PTC shares. In a decision dated November 7, 2006, the Hamburg District Court dismissed Vivendi's claim. (*See* Kuehbacher Decl. ¶ 28.)

**E. This RICO Case.**

Vivendi has now initiated, of all things, a RICO claim in this Court. The Complaint alleges that through purported acts of wire fraud the DT Defendants illegally seized PTC and operated two enterprises—the so-called "T-Mobile global network," which Vivendi never defines, and Elektrim. (*See* SAC ¶ 123.) The Complaint alleges two counts, the first for violation of, and conspiracy to violate, 18 U.S.C. § 1962(b), based on the alleged acquisition of control over PTC through a pattern of racketeering; the second for violation of, and conspiracy to violate, 18 U.S.C. § 1962(c), based on the alleged conduct of the affairs of Elektrim and the "T-Mobile global wireless network" through a pattern of racketeering. (*See id.* ¶¶ 129-47.) The relief sought is comparable to the relief Vivendi is seeking in pending European proceedings, that is, "the money or the [PTC] shares." (*Id.* ¶ 16.)

## III. ARGUMENT

**A. The Court Should Dismiss the Complaint under the Doctrine of *Forum Non Conveniens.***

**1. The Court Has Indicated That It Will Consider *Forum Non Conveniens* First.**

In its April 18, 2007 Order, the Court indicated that, "[b]ecause it may be dispositive in this case," the Court intends to address the issue of *forum non conveniens* before reaching any alternative ground for dismissal. Order of Apr. 18, 2007, at 4. Given the lack of any genuine connection between this controversy and the United States; the presence of adequate alternative fora; the inconvenience of a trial here, more than 5,000 miles away from virtually all of the relevant documents and witnesses; and the fact that similar proceedings seeking comparable relief are currently pending in Europe, this is a "textbook case for immediate

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*forum non conveniens* dismissal." *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, __ U.S. __, 127 S. Ct. 1184, 1189, 1194 (2007).

**2. The Relevant Considerations Support Dismissal under the Doctrine of *Forum Non Conveniens.***

**a. Vivendi's Choice of Forum Is Entitled to Little Deference.**

Vivendi's choice of a U.S. forum deserves little, if any, deference. Although a defendant invoking the doctrine of *forum non conveniens* "ordinarily bears a heavy burden in opposing the plaintiff's chosen forum," the "presumption in the plaintiff's favor 'applies with less force'" where the forum is not the plaintiff's home forum. *Id.* at 1191. Where a foreign plaintiff selects a U.S. forum, "the private and public interest factors need not so heavily favor the alternate forum," *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602, 606 (10th Cir. 1998), and "dismissal will ordinarily be appropriate where . . . the plaintiff is unable to offer any specific reasons of convenience supporting his choice," *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Furthermore, "the more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands and, consequently, the easier it becomes for the defendant to succeed on a *forum non conveniens* motion by showing that convenience would be better served by litigating in another country's courts." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71-72 (2d Cir. 2001).

Here, Vivendi has brought suit half-way around the world from its "home forum" in a naked effort to forum shop: (1) the purported connection between this RICO suit and the dispute is, at best, attenuated; (2) Vivendi seeks a treble-damages windfall under RICO, which is unavailable abroad, (*see* SAC, Prayer for Relief); *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 155 (2d Cir. 2005) (noting the forum-shopping engendered by RICO treble damages); (3) Vivendi seeks to use proceedings in this Court to pursue discovery under broader U.S. discovery rules: "In a U.S. court, if this case is allowed to proceed, we will . . . ask a court to issue a subpoena or to allow us to seek documents under the court's

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

supervisions as provided for by United States rules of civil proceedings" (Final Transcript, Vivendi to announce new development in continuing dispute with T-Mobile and Elektrim over Polish telecommunications at 9 (Oct. 24, 2006), attached as Ex. D to Rummage Decl.); and (4) Vivendi is seeking comparable remedies, at the same time, before this and other tribunals.

**b. Multiple Alternative Fora Can Adjudicate This Dispute.**

Any one of the many alternative fora in which Vivendi already has sought relief are adequate to adjudicate this dispute. In particular, Poland, Germany, France and Austria would all be adequate alternative fora. An alternative forum is "adequate" if: (1) the defendant is amenable to service of process there, and (2) the forum provides "some remedy" for the wrong at issue. *Lueck v. Sundstrand Corp*., 236 F.3d 1137, 1143 (9th Cir. 2001). "This test is easy to pass; typically, a forum will be inadequate only where the remedy provided is 'so clearly inadequate or unsatisfactory, that it is no remedy at all.'" *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006) (quoting *Piper Aircraft*, 454 U.S. at 254)).[3]

As for the first prong of the test, the relevant DT Defendants are already parties in the European proceedings. As to the second, not only are these alternative fora capable of providing "some remedy" (*see* Declaration of Professor Paul Oberhammer ("Oberhammer Decl.") ¶¶ 8-22), the remedy Vivendi seeks here substantially tracks the remedy it has sought (and is seeking) in proceedings in Europe—that is, either the "return" to Vivendi of the disputed PTC shares or their "fair market value."

In France, for example, Vivendi has filed a lawsuit against T-Mobile International AG & Co. KG and DT that is pending before the Commercial Court of Paris. In the French Action, Vivendi seeks substantially the same remedy as it seeks here based on substantially the same allegations. As in this case, the French Action rests largely on Vivendi's allegation

[3] It does not matter whether an alternative forum offers the treble-damages windfall that may be obtained through RICO: "[T]he inability to assert a RICO claim in a foreign forum does not preclude a *forum non conveniens* dismissal." <SoftRt>*Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 769 (9th Cir. 1991).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

that the DT Defendants colluded with Elektrim in an effort to induce Vivendi into fraudulent settlement discussions. (*See* Paris Summons ¶ 17 (alleging that DT "lulled" Vivendi into settlement talks with the purpose of seizing, in "collusion" with Elektrim, the PTC shares).) Vivendi also seeks the lost value of the PTC shares both here and in France. (*Compare* Paris Summons ¶¶ 24(2)-25, Prayer for Relief, *with* SAC ¶¶ 16, 18.) Vivendi continues to seek that remedy in Poland (*see* Kuehbacher Decl. ¶¶ 20-23) and could seek that remedy in Austria and Germany (*see* Oberhammer Decl. ¶¶ 8-22).

The SAC casually impugns the judicial systems of Austria, France, Germany, and Poland. (*See, e.g.*, SAC ¶¶ 15, 127.) But "[a] litigant asserting inadequacy . . . must make a powerful showing." *Tuazon*, 433 F.3d at 1179. Accepting Vivendi's allegation would require this Court to condemn the judicial systems of at least four developed European nations, something considerations of comity prohibit absent a much stronger showing than Vivendi has made here. *See PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 73 (2d Cir. 1998) ("[C]onsiderations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards, so such a finding is rare." (internal citation omitted)); *Blanco v. Blanco Indus. de Venez., S.A.*, 997 F.2d 974, 982 (2d Cir. 1993) ("[I]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation." (internal citation omitted)). Indeed, it would surely be news to the Commercial Court of Paris that Vivendi believes its home country to be an inadequate forum to adjudicate the very claims that Vivendi has brought against DT and is prosecuting in that court.

#### c. The Private Interest Factors Strongly Favor the Alternative Fora.

The private interest factors weigh strongly in favor of litigating this dispute in the alternative fora. Those factors include: (1) the residence of the parties and the witnesses, (2) access to sources of proof, (3) the cost of obtaining willing witnesses, (4) the availability

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

of compulsory process for unwilling witnesses, and (5) the policy favoring an expeditious trial. *See Lueck*, 236 F.3d at 1145.

First, all parties other than T-Mobile USA reside outside of the United States. Vivendi is French; DT, T-Mobile International, and TMD are German; and Solorz-Zak is Polish. (*See* SAC ¶ 20-22, 24, 27.) Second, all of the potentially relevant witnesses and documents are located outside the United States. (*See* Kuehbacher Decl. ¶¶ 30-38; Kirkpatrick Decl. ¶¶ 15-17.) Indeed, in its Rule 26(a) disclosures, Vivendi identified twenty-two persons or groups of persons with discoverable information—of which nine reside in France, seven in Poland, and one in the United Kingdom. (Pl.'s Initial Disclosures at 1-7, attached as Ex. E to Rummage Decl.) Of the DT Defendant employees Vivendi has identified, only one—Robert Dotson—resides in the United States. (*See id.* at 7; Kuehbacher Decl. ¶¶ 37-38.)[4] But Vivendi claims Mr. Dotson will have information only about "the relationship between T-Mobile International AG to T-Mobile USA" (Pl.'s Initial Disclosures at 7), an issue that has no bearing on the merits, but speaks to whether the case can be brought here at all. Vivendi also claims that a Vivendi representative in New York, George E. Bushnell III, has knowledge about a letter that Vivendi sent to DT on January 23, 2007. But Vivendi sent that letter ***well after*** this suit had been filed (*see id.* at 6; SAC ¶ 120), making it utterly irrelevant to Vivendi's allegations.[5] Likewise, the documents on which Vivendi intends to rely are overwhelmingly located in Europe. (Pl.'s Initial Disclosures at 11.) The cost of translating and bringing documents and witnesses to Seattle would far outweigh the cost of litigating this dispute in one of the alternative European fora the DT Defendants have identified.[6]

---

[4] Peter Golob, who allegedly communicated five of the purportedly fraudulent statements (SAC ¶ 51), is not and was never an employee of any of the DT Defendants (Kuehbacher Decl. ¶ 37). Golob resides in London. (*Id.*)

[5] Vivendi also speculates that certain unnamed and unquantified "U.S. bondholders of Elektrim" may be potential witnesses. (Pl. Initial Disclosures at 6.) According to Vivendi, these unidentified bondholders may have knowledge of the alleged effort to deceive them into withdrawing a bankruptcy petition *in Poland*. (*See id.*) Any such bondholders have already been parties to aspects of this dispute in Poland (*see* SAC ¶ 76), and their purported knowledge would be irrelevant to Vivendi's claimed injuries.

[6] While Vivendi claims that discovery will be facilitated by Poland's and Germany's status as parties to the Hague Convention on the Taking of Evidence Abroad (SAC ¶¶ 139, 147), Poland, Germany, France, and Austria are all members of the European Union and are accordingly bound by European Commission Regulation

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**d. The Public Interest Factors Also Favor Alternative Fora.**

The public interest factors weigh equally strongly in favor of dismissal. Those public factors include: (1) local interest in the lawsuit, (2) the court's familiarity with governing law, (3) the burden on local courts and juries (including considerations of court congestion and the cost of resolving a dispute unrelated to this forum), (4) the interest of alternative fora in deciding local disputes, and (5) the interest in issues of foreign law being decided by foreign tribunals. *See Lueck*, 236 F.3d at 1147.

It is difficult to imagine any interest this District may have in deciding the dispute, but whatever it may be, it pales in comparison to that of Poland (the home jurisdiction of PTC and Elektrim, the allegedly corrupted enterprises), Austria (the situs of the arbitration proceedings at the heart of the dispute), Germany (the home jurisdiction of the German DT Defendants), and France (the home jurisdiction of the alleged victim).

Poland has a strong interest in resolving issues of Polish law, determining what company ultimately controls one of Poland's largest wireless telecommunications providers, and deciding whether its courts should recognize the Second and Third Vienna Awards. The Polish government also has a heightened interest in the subject matter of this suit because, as discussed, Vivendi has commenced arbitral proceedings against it under a bilateral investment treaty on reciprocal encouragement and protection of investments. (*See* SAC ¶ 70.) Further, Vivendi's allegations that the DT Defendants have violated Polish court orders and misrepresented the Polish Supreme Court's decision should be addressed in Poland, not the United States. *Cf. Armco, Inc. v. United Steelworkers of Am.*, 280 F.3d 669, 682 (6th Cir.

---

1206/2001, which provides for a much more efficient regime of evidence-taking in European proceedings than the Hague Convention. *See* Commission Regulation 1206/2001, 2001 O.J. (L174) 1 (attached as Ex. M to Oberhammer Decl.); (Oberhammer Decl. ¶¶ 23-26). While the E.U. regime for evidence-taking in European proceedings aims for "[s]peed in transmission of requests for the performance of taking of evidence," Commission Regulation 1206/2001 ¶ 9, U.S. courts have described the Hague Convention as "time-consuming and cumbersome," *see, e.g., In re Auto. Refinishing Paint*, 229 F.R.D. 482, 493 (E.D. Pa. 2005) (internal citations omitted).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

2002) (holding that a federal court should abstain in favor of a state proceeding because a "state has important interests . . . in enforcing the orders and judgments of its courts").

Austria too has a strong interest because the object of the alleged conspiracy was the supposed corruption of two arbitral proceedings that took place in its territory under the auspices of an Austrian arbitral institution. *See Sinochem*, 127 S. Ct. at 1194 (holding that a claim based on misrepresentations to a Chinese court is best left for courts in China); *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d Cir. 1997) (noting, with regard to reviewing an arbitral award, the "paramount importance" of courts where award was rendered).

Similarly, France has an interest in ensuring effective relief for its own citizen, Vivendi, particularly where French courts are actively considering one of the central claims that Vivendi asserts here. *See* Restatement (Third) of the Foreign Relations Law of the United States § 402(2) (noting a state's interest in regulating "the activities, interests, status, or relations of its nationals outside as well as within its territory"). Germany likewise has a strong interest in regulating the conduct of its nationals. *See id.*

By comparison, neither the State of Washington nor the United States has ***any*** genuine interest in whether TMD or Vivendi controls a leading Polish telecommunications company. Although Vivendi has named T-Mobile USA as a defendant, it has done so for the obvious purpose of attempting to fashion a link to the United States. Indeed, until it decided to file this lawsuit, Vivendi had never once, in the eight years that this dispute has been litigated and arbitrated in Europe, implicated T-Mobile USA in any way. (*See* Kirkpatrick Decl ¶¶ 12-14; Kuehbacher Decl. ¶¶ 31-33.) Similarly, Vivendi has not made a single particularized allegation against T-Mobile USA in connection with any alleged racketeering conduct.[7] In

[7] Although Vivendi speculates that the acquisition of PTC and inclusion of PTC on the DT Defendants' financial reports facilitated T-Mobile USA's acquisition of wireless spectrum during a Federal Communications Commission ("FCC") auction (SAC ¶¶ 3, 23), Vivendi does not explain how T-Mobile USA supposedly used PTC to assist it in purchasing the U.S. spectrum and no financial reports were submitted in connection with the bid (Kirkpatrick Decl. ¶ 18).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

these circumstances, the citizens of Washington and this Court should not be forced to "bear the burden of this dispute." *See Lueck*, 236 F.3d at 1147 (dismissing suit brought by foreign plaintiffs alleging that Arizona manufacturer had built defective part that led to airline crash in New Zealand because the interest of Arizona citizens paled in comparison to those of New Zealand, where various related legal proceedings were pending); *see also Piper Aircraft*, 454 U.S. at 256 ("The American interest in [this suit] is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here.").

In addition, this case will require application of foreign law. Under RICO, Vivendi must prove it has suffered harm to a specific business or property interest. *See Diaz v. Gates*, 420 F.3d 897, 900 (9th Cir. 2005) (en banc & per curiam) (RICO plaintiff must establish harm to a property interest, normally determined according to state law). To do so, Vivendi would need to show that, in the absence of the purported fraud, the results of the arbitral proceedings would have been different. Vivendi's ability to meet this burden would depend on an analysis of Polish law, which governs the rights and responsibilities of the parties to the PTC Shareholders Agreement and regulates PTC itself. (*See* PTC Shareholders Agreement, Art. 20); *Batchelder v. Kawamoto*, 147 F.3d 915, 920 (9th Cir. 1998) ("the rights of shareholders in a foreign company . . . are determined by the law of the place where the company is incorporated"). Indeed, if this case were to go forward, the Court would need to put itself in the place of the arbitral tribunals in the Second and Third Vienna Arbitrations and decide, under Polish law, whether Elektrim's transfer to Telco of the shares was valid and whether Vivendi had any right to the shares that was frustrated by the alleged racketeering. Courts in Poland are better suited to apply Polish law to such questions.[8]

---

[8] Under the related doctrine of international abstention, the Court also may and should exercise its discretion to abstain from jurisdiction because the pending proceedings already raise the issue whether Vivendi was wrongfully deprived of the PTC shares and is entitled to their return. *See Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1157 (C.D. Cal. 2005) ("The international abstention doctrine 'allows a court to abstain from hearing an action if there is a first-filed foreign proceeding elsewhere.'" (quoting *Supermicro Computer, Inc. v. Digitechnic, S.A.*, 145 F. Supp. 2d 1147, 1149 (N.D. Cal. 2001))). Because there are currently pending

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**B. The Court Lacks Personal Jurisdiction over the German DT Defendants.**

The German DT Defendants are all organized under the laws of Germany with their principal places of business in that country. (Kuehbacher Decl. ¶ 3.) The claims against the German DT Defendants should be dismissed because none has sufficient contacts with Washington State to support the exercise of this Court's personal jurisdiction.

**1. Vivendi Cannot Rely on Group Pleading to Establish Personal Jurisdiction over the German DT Defendants.**

Vivendi bears the burden of pleading sufficient jurisdictional facts as to each defendant to avoid dismissal. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). "Personal jurisdiction over each defendant must be analyzed individually." *Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1258 (9th Cir. 1989). Because Vivendi's defective group pleading, under which it lumps all the DT Defendants together as "T-Mobile," makes it impossible for the Court to undertake this analysis, the Court should dismiss the Complaint as against the German DT Defendants. *See In re Royal Ahold N.V. Secs. & ERISA Litig.*, 351 F. Supp. 2d 334, 354 (D. Md. 2004) (finding lack of personal jurisdiction where plaintiffs merely included a foreign defendant in their "broad group pleadings" of fraud without alleging "a single specific act" by the defendant directed at the forum); *Grow Group, Inc. v. Jandernoa*, No. 94 Civ. 5679 (RPP), 1996 WL 31848, at *5 (S.D.N.Y. Jan. 26, 1996) (holding that considering foreign defendants as a group for personal-jurisdiction purposes would be unconstitutional).

**2. No Statute Provides a Basis for Personal Jurisdiction over the German DT Defendants.**

"To exercise personal jurisdiction over a non-resident defendant in a federal question case, the district court ha[s] to determine that a rule or statute potentially confers jurisdiction over the defendant and then conclude that asserting jurisdiction does not offend the principles

---

parallel proceedings abroad, the Court should apply the factors articulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), which are similar to the *forum non conveniens* factors, and dismiss this suit based on abstention principles. *See Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1194-95 (9th Cir. 1991); *Mujica*, 381 F. Supp. 2d at 1159.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

of Fifth Amendment due process." *Go-Video, Inc. v. Akai Elec. Co.*, 885 F.2d 1406, 1413 (9th Cir. 1989). Although Congress provided a statutory source of personal jurisdiction in RICO through nationwide service of process, *see Butcher's Union Local No. 498 v. SDS Invs., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986), that provision does not apply to service on foreign defendants, *see Cent. States, S.E. & S.W. Areas Pension Fund*, 230 F.3d 934, 940-41 (7th Cir. 2000); *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 852 (N.D. Ill. 2005); *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1183-84 (C.D. Cal. 1998), *aff'd*, 248 F. 3d 915 (9th Cir. 2001). Therefore, Vivendi cannot rely on RICO as the basis for jurisdiction and must instead attempt to base jurisdiction on Federal Rule of Civil Procedure 4(k)(1)(A) or 4(k)(2). Neither Rule provides a basis for jurisdiction here.

#### a. Vivendi Cannot Establish Jurisdiction under Rule 4(k)(1)(A).

For the Court to exercise personal jurisdiction over the German DT Defendants under Rule 4(k)(1)(A), the German DT Defendants must be subject to suit in the State of Washington. *See* Fed. R. Civ. P. 4(k)(1)(A). This means that Washington's long-arm statute must permit jurisdiction, and the exercise of such jurisdiction must not offend the Due Process Clause. *See Am Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590 (9th Cir. 1996). Because Washington permits the exercise of jurisdiction to the full extent of the Due Process Clause, the statutory and constitutional analyses merge. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004). Due process requires that the German DT Defendants have purposefully availed themselves of Washington's protections through minimum contacts with the State and that the exercise of jurisdiction in Washington would be reasonable. *Doe v. Unocal Corp.*, 248 F. 3d 915, 923-925 (9th Cir. 2001). Vivendi must establish that each of the German DT Defendants is subject to either specific or general jurisdiction in Washington.

Specific jurisdiction requires a showing that Vivendi's claims arise out of each of the German DT Defendants' conduct in Washington. *See id.* In assessing specific jurisdiction, the Ninth Circuit considers "the extent of the defendant's contacts with the forum and the

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

degree to which the plaintiff's suit is related to those contacts. A strong showing on one axis will permit a lesser showing on the other." *Yahoo! Inc. v. La Ligue Contre le Racisme et L'antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (en banc & per curiam). The only purported racketeering activity to have taken place even in part in Washington is an alleged text message sent from Seattle by Thomas Winkler, a former T-Mobile International executive, "regarding settlement negotiations." (SAC ¶ 51.) That single act, unattributed to any particular DT Defendant, cannot give rise to specific jurisdiction over any German DT Defendant, none of which is registered to do business in Washington, owns or leases property in Washington, or markets, advertises, or sells their telecommunications products or services here. (*See* Kuehbacher Decl. ¶¶ 11-14.)

Vivendi also has not alleged a sufficient basis for general jurisdiction over the German DT Defendants. For the Court to exercise general jurisdiction, each of the German DT Defendants' contacts with Washington must be "continuous and systematic." *See Tuazon*, 433 F.3d at 1171. Vivendi apparently attempts to predicate general jurisdiction over DT and T-Mobile International by attributing to those entities T-Mobile USA's Washington contacts.[9] (SAC ¶ 23.) Vivendi rests this claim on the fact that T-Mobile USA's CEO sits on T-Mobile International's board, T-Mobile USA's website refers to the companies as "One Company," and senior T-Mobile International officials sat on the PTC board and ("upon information and belief") conducted business at T-Mobile USA's Seattle headquarters. (*Id.*) These allegations, even if taken as true, are hallmarks of a normal parent-subsidiary relationship and do not support jurisdiction on an agency or instrumentality theory. *See Doe* 248 F.3d at 927-28 (holding that a parent's formulation of policies and strategies of its subsidiaries, overlapping directors and officers, and blurring of corporate separateness in annual reports do not support piercing the corporate veil for jurisdictional purposes); *see also United States v. Bestfoods*, 524 U.S. 1, 51, 69 (1998) ("[I]t is entirely appropriate for directors of a parent corporation to

[9] The Complaint makes no allegations concerning T-Mobile USA's connections with TMD; accordingly, Vivendi cannot impute T-Mobile USA's contacts to TMD.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

serve as directors of its subsidiary, that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts . . . . [D]irectors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership . . . ."). Moreover, T-Mobile USA is a separate corporate entity that does not sell the German DT Defendants' products or services in the United States, and conducts its own day-to-day affairs. (Kirkpatrick Decl. ¶ 9.)

Even if Vivendi could establish that the German DT Defendants, on their own or by virtue of their relationship with T-Mobile USA, have minimum contacts with Washington, the exercise of jurisdiction would be unreasonable. To determine reasonableness, courts look to: (1) the burden on the defendant, (2) the forum's interest in the dispute, (3) the importance of the chosen forum to the plaintiff's interest in obtaining relief, (4) the most efficient forum for judicial resolution of the dispute, and (5) the "shared interest of the several States in furthering fundamental social policies." *Tuazon*, 433 F.3d at 1175. These factors overwhelmingly weigh against the exercise of jurisdiction.

First, the German DT Defendants are based 5,000 miles from Seattle and would face the "unique burdens placed upon one who must defend oneself in a foreign legal system." *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 114 (1984). Second and third, Washington has little interest in deciding a dispute among European corporations over control of a Polish company, and the Washington forum has no special importance to Vivendi's interest in obtaining relief. Fourth, Washington is a more remote and much less efficient forum for this suit than the many European jurisdictions in which the claims have been and could have been brought. Fifth, this suit has no bearing on any U.S. social policies.

**b. Vivendi Also Has Not Alleged Facts Sufficient to Establish Jurisdiction under Rule 4(k)(2).**

To establish personal jurisdiction under Rule 4(k)(2), Vivendi would have to demonstrate that: (1) its claim arises under federal law, (2) the German DT Defendants are not subject to personal jurisdiction in any state, and (3) the exercise of personal jurisdiction in

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Washington would comport with due process. *Pebble Beach Co.*, 453 F.3d at 1159. Vivendi has the burden to show that the German DT Defendants are ***not*** subject to personal jurisdiction in any state. *Saturn Biomed. Sys., Inc. v. Aircraft Med. Ltd.*, No. C06-020RSL, 2006 WL 1705895, at *3 (W.D. Wash. June 14, 2006). Because it argues that T-Mobile USA's contacts with Washington can be imputed to DT and T-Mobile International AG, Vivendi has negated its ability to assert jurisdiction under Rule 4(k)(2). *See Doe*, 248 F.3d at 922-23 (noting that plaintiffs could not rely on Rule 4(k)(2) because they argued that the foreign parent corporation was subject to personal jurisdiction through the contacts of its U.S. subsidiaries).

Even if it could show that all states lack jurisdiction over the German DT Defendants, Vivendi still could not establish that the German DT Defendants could constitutionally be subject to the specific or general jurisdiction of the United States for the same reasons they are not subject to personal jurisdiction in the State of Washington.

**C. The Court Lacks Subject Matter Jurisdiction over Vivendi's Claims.**

Where, as here, a plaintiff's RICO claims rely on transactions that take place partly or entirely outside the United States, the Court must assess whether it has subject matter jurisdiction over such claims by asking "whether our law was meant to reach the conduct in question insofar as it is extraterritorial in nature." *Republic of Philippines v. Marcos*, 818 F.2d 1473, 1478 (9th Cir. 1987). To make this determination, the Ninth Circuit has looked to the alleged "conduct" within the United States, and the alleged "effects" of the alleged RICO violation on U.S. commerce. *See Poulos v. Caesars World, Inc.*, 379 F.3d 654, 663 (9th Cir. 2004). The allegations in the Complaint fail as a matter of law to satisfy either test.

**1. The Alleged Conduct within the United States Does Not Support Subject Matter Jurisdiction.**

Vivendi does not allege conduct in the United States that was "significant" to the alleged violations or that "furthered the fraudulent scheme." *Grunenthal v. Hotz*, 712 F.2d 421, 425 (9th Cir. 1983). Vivendi's claim that Thomas Winkler "integrated" PTC and T-

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Mobile USA (SAC ¶¶ 3, 51) is insufficient. The Complaint avers in conclusory fashion that Winkler performed this "integration" and, "upon information and belief," was in the United States on one occasion to discuss the alleged integration. (*Id.*) These allegations do not give the Court any reason to believe that Winkler engaged in conduct in the United States that furthered any fraud. Indeed, based on Vivendi's allegations, the integration in which Winkler allegedly participated could well have occurred after the alleged fraud was complete.

Similarly, the supposed uses of the U.S. wires in connection with an alleged fraud during the 2004 settlement negotiations also does not support subject matter jurisdiction. (*Id.* ¶ 3.) The ***only*** act for which Vivendi is seeking redress is the alleged "theft" of its interest in PTC—an act that Vivendi concedes occurred outside of the United States. (*Id.* ¶¶ 2, 6, 14, 16, 36, 97.) The various alleged uses of the U.S. wires Vivendi identifies were, at best, peripheral or preparatory to the alleged foreign fraud—which does not confer subject matter jurisdiction. *See Butte Mining PLC v. Smith*, 76 F.3d 287, 291 (9th Cir. 1996) ("There is no reason to extend the jurisdictional scope of RICO to make criminal the use of the mail and wire[s] in the United States as part of an alleged fraud outside the United States. *We do not suppose that Congress in enacting RICO had the purpose of punishing frauds by aliens abroad even if peripheral preparations were undertaken by them here*." (emphasis added)).

**2. The Alleged Effects on the United States Do Not Support Subject Matter Jurisdiction.**

The Complaint also fails to allege the requisite "substantial effects" on the United States to confer subject matter jurisdiction. *See In re Simon*, 153 F.3d 991, 997 (9th Cir. 1998); *Butte Mining PLC v. Smith*, 876 F. Supp. 1153, 1162 (D. Mont. 1995), *aff'd*, 76 F.3d 287 (9th Cir. 1996). "Transactions with only remote and indirect effects in the United States do not qualify as substantial." *N.S. Fin. Corp. v. Al-Turki*, 100 F.3d 1046, 1051 (2d Cir. 1996). Instead, the alleged U.S. effects must be direct and foreseeable results of the unlawful conduct. *See Consol. Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir. 1989).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

The alleged loss of "honest services" and the "corruption tax" on U.S. consumers (SAC ¶ 26) are indirect and remote from Vivendi's core claim that it was wrongfully deprived of the disputed PTC shares.[10] Nor do the alleged "effects" on Elektrim bondholders and DT ADR-holders support jurisdiction. The effects of any purported misrepresentations to Elektrim bondholders were in Poland, where the bondholders' bankruptcy petition was pending. (*Id.* ¶¶ 1, 76, 90, 114-16.) To the extent that the alleged misconduct caused any "effects" on Elektrim bondholders or DT ADR-holders in the United States, those effects are exceptionally remote from the alleged "theft." And T-Mobile USA's purchase of the FCC spectrum is even more remote and speculative: Vivendi suggests that statements regarding the settlement and status of European legal proceedings led to alleged misstatements on the DT Defendants' "consolidated balance sheet," which in turn somehow increased T-Mobile USA's ability to win a bid for a spectrum at an FCC auction. (*Id.* ¶¶ 98, 143.) (*But see* Kirkpatrick Decl. ¶ 18 (no financial reports submitted in connection with spectrum auction).)

**D. The Complaint Fails to State a Claim upon which Relief Can Be Granted under RICO.**

Finally, the Complaint should be dismissed for failure to state a claim. According to Vivendi, the DT Defendants allegedly committed wire fraud because: (a) they misled Vivendi into believing that the dispute was certain to settle thereby inducing Vivendi not to take action in the pending legal proceedings, and (b) they issued press releases describing the results of foreign legal proceedings. In propounding this theory, Vivendi fails to attribute a single alleged act of racketeering to any specific defendant.

**1. Vivendi Lacks Standing to Bring a RICO Claim.**

Under RICO, a "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."

[10] The allegation of a "corruption tax" through higher roaming rates is both facially and factually insufficient to sustain jurisdiction. T-Mobile USA customers are paying the same roaming rate on calls made from Poland as they were in 2001. (Kirkpatrick Decl. ¶ 19.) The claim that T-Mobile USA customers face an increase in roaming rates is "made solely for the purpose of obtaining federal jurisdiction" and is "wholly insubstantial and frivolous." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1040 (9th Cir. 2004).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Vivendi lacks RICO standing because its claim that it has been injured through loss of the PTC shares is not ripe, and it has failed to plead that its alleged injury was caused "by reason of" the alleged pattern of racketeering.

**a. Vivendi's Claims of RICO Injury Are Not Ripe.**

According to the Complaint, Vivendi, through Telco, either continues to own the disputed PTC shares or may recover "the money or the shares" in European proceedings. Vivendi alleges that the Polish Supreme Court's decision has left ownership of the PTC shares to Telco, pending reconsideration in the lower courts. (*See* SAC ¶ 119.) Vivendi has also brought the French Action and Swiss arbitration in which it seeks relief that is substantially similar to the relief it seeks here, and has pending claims against the Republic of Poland and before a London arbitral tribunal that could reduce or eliminate the loss it alleges here. (*See id.* ¶¶ 70, 90-96.)

Because Vivendi alleges that it has already obtained, or has the ability to obtain, what it seeks in proceedings abroad, its claims are not ripe, and it lacks standing under RICO. *See Motorola Credit Corp. v. Uzan*, 322 F.3d 130, 135-37 (2d Cir. 2003) (holding that RICO injury was not ripe when plaintiffs' RICO damages might be abated through favorable rulings in pending arbitration). As in *Motorola*, until the foreign proceedings are over, Vivendi's claim is only for losses that may occur, not that have actually occurred. *See id.*; *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (rejecting RICO claim that was "contingent on events that may not occur as anticipated or may not occur at all," namely the plaintiff's "success in a separate case in another court"); *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1106 (2d Cir. 1988) (holding that RICO claim should be dismissed when plaintiff could recover some or all of the damages it sought in a pending bankruptcy proceeding).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

**b. Vivendi Has Failed Adequately to Allege That the Purported RICO Violations Proximately Caused Damages.**

To have RICO standing, Vivendi must show that it was injured in its business or property "by reason of" the alleged RICO violations. *See* 18 U.S.C. § 1964(c). This standard requires proximate causation, or a "*direct* relation between the injury asserted and the injurious conduct alleged." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992) (emphasis added); *see also Anza v. Ideal Steel Supply Corp.*, 126 S. Ct. 1991, 1997 (2006) (finding lack of continuity because the alleged loss "could have resulted from factors other than [the] alleged acts of fraud"); *First Nationwide Bank*, 27 F.3d at 769-70 (holding that RICO proximate causation requires a plaintiff to show that the alleged fraud was "the reason the transaction turned out to be a losing one" and that the loss was foreseeable, not due to intervening causes, and factually direct).

If, despite Vivendi's claims to the contrary, Telco no longer owns the PTC shares in question, that loss resulted from repeated rulings of European tribunals that the transfer of Elektrim's shares was ineffective under Polish law. If that transfer was invalid, as the tribunals have ruled, Vivendi had no property right to the shares in the first place that could have been proximately harmed by the alleged racketeering. In these circumstances, Vivendi can only speculate that, absent the supposed racketeering: it would have decisively intervened in the Second and Third Vienna Arbitrations; the tribunals would have ruled in favor of Elektrim/Telco and upheld the transfer of shares; Telco would have retained ownership of the shares in the face of other legal proceedings; and Vivendi, as a shareholder of Telco, would have profited from its interest in PTC. Thus, Vivendi has failed to allege that it suffered any injury by reason of the alleged RICO violations. *See DeMauro v. DeMauro*, 115 F.3d 94, 97-98 (1st Cir. 1997) (holding that alleged loss of specific property, entitlement to which depended on the result of pending state-court litigation, was too speculative to satisfy RICO standing); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992) (holding that plaintiff who cannot establish a clear and definite right to the "lost" property

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

under applicable law lacks standing under RICO); *Nix v. Hoke*, 62 F. Supp. 2d 110, 116 (D.D.C. 1999) (holding that judgment sought in litigation is not "property" for RICO purposes); *Capasso v. CIGNA Ins. Co.*, 765 F. Supp. 839, 842 (S.D.N.Y. 1991) (holding that mere expectation of a favorable decision in a separate suit was insufficient to establish RICO standing).

**2. The Complaint Fails to Allege a Pattern of Racketeering.**

Both counts of the Complaint require Vivendi to plead a pattern of racketeering activity. *See* 18 U.S.C. § 1962(b), (c). Indeed, "the heart of any RICO complaint is the allegation of a pattern of racketeering." *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 154 (1987). The Complaint fails to allege any pattern of racketeering.

**a. The 2004 Settlement Communications Do Not Form a Pattern of Racketeering.**

**(1) The Alleged 2004 Settlement Communications Were Not Racketeering Acts.**

To state a RICO claim, Vivendi must allege that the DT Defendants engaged in two or more acts that could subject each of them to indictment for wire fraud. *See* 18 U.S.C. § 1961(1)(B). Vivendi's core racketeering allegations relate to settlement negotiations between the DT Defendants and Vivendi over a four-month period in 2004. (SAC ¶ 51.) Vivendi claims that the DT Defendants engaged in wire fraud during the settlement negotiations by failing to disclose their purported collusion with Elektrim, which would have caused Vivendi to take steps to attempt to change the outcome of the Second Vienna Arbitration. (*Id.* ¶ 55.) Those steps consist of enforcing its purported right to control Elektrim's defense, calling the alleged collusion between the DT Defendants and Elektrim to the tribunal's attention, filing various actions in Poland, and purchasing more stock in Elektrim. (*Id.*)

This theory lacks merit on its face and is not pled with the required particularity. Vivendi has not alleged that Elektrim's defense in the Second Vienna Arbitration was in any

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

way deficient or that Elektrim influenced the tribunal during the Second Vienna Arbitration in TMD's favor. Vivendi has not, therefore, alleged any "scheme to defraud" that was furthered by the alleged omissions or misrepresentations in the purported settlement communications.

Moreover, it is well-established that "one who fails to disclose material information prior to the consummation of a transaction commits fraud only when he is under a duty to [disclose] . . . . because of a fiduciary or other similar relation of trust and confidence between [the parties]." *Chiarella v. United States*, 445 U.S. 222, 228 (1980) (internal quotation marks omitted); *see also Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1157 (9th Cir. 1996) ("The parties to an impersonal market transaction owe no duty of disclosure to one another absent a fiduciary or agency relationship, prior dealings, or circumstances such that one party has placed trust and confidence in the other." (internal quotation marks omitted)). In the context of arms-length business negotiations, there is no such duty. *See Goel v. Jain*, 259 F. Supp. 2d 1128, 1137 (W.D. Wash. 2003) (rejecting claim that defendants committed fraud during negotiations of an employment agreement by failing to disclose facts bearing on the plaintiff's future employment). And there is certainly no such duty when those negotiations are between adversaries in legal proceedings. *See DeLorean v. Cork Gully*, 118 B.R. 932, 943 (E.D. Mich. 1990) (rejecting wire-fraud claim based on omissions because "[i]t is wholly unbelievable that plaintiffs would rely on statements by their adversaries or [their adversaries'] counsel"). Criminalizing alleged failures to engage in good faith settlement negotiations would dangerously expand the scope of the mail and wire-fraud statutes.

**(2) The Alleged 2004 Settlement Communications Were Insufficiently Continuous.**

To meet RICO's "pattern" requirement, Vivendi must allege that the DT Defendants committed at least two predicate acts that qualify as "racketeering," which are related and amount to or pose a threat of ***continued criminal activity***. *See H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis added). The "continuity" requirement may be met only

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

by alleging either "past conduct that by its nature projects into the future with a threat of repetition" ("open-ended continuity") or "a series of related predicates extending over a substantial period of time" ("closed-ended continuity"). *Id.* at 241-42. The Complaint does not allege either.

The purportedly misleading omissions during the settlement negotiations do not meet the requirement for open-ended continuity because nothing about this alleged conduct projects into the future with a threat of repetition. "[A] single episode with a single purpose which happen[s] to involve more than one act taken to achieve that purpose" cannot be a pattern of racketeering. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992); *see also Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992) (per curiam) (holding that predicate acts with the singular goal of winning a lawsuit do not pose a continued threat of racketeering activity once the suit is over and therefore do not constitute a pattern); *Jarvis v. Regan*, 833 F.2d 149, 153 (9th Cir. 1987) (holding that pattern requirement not satisfied by allegations that legal aid organizations committed predicate acts of mail and wire fraud to obtain one federal grant); *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1399 (9th Cir. 1986) (holding that pattern requirement not established by allegations that defendant fraudulently obtained single shipment of goods); *Lipin Enters. Inc. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986) (holding that fraud aimed at sale of company failed to satisfy continuity requirement).

This series of purported racketeering acts over a mere four-month period also fails to establish closed-ended continuity. RICO applies only to long-term criminal activity extending well beyond a few months. *See H.J. Inc.*, 492 U.S. at 242 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed-ended continuity] requirement: Congress was concerned in RICO with long-term criminal conduct."); *Howard v. Am. Online Inc.*, 208 F.3d 741, 750 (9th Cir. 2000) ("Activity that lasts only a few months is not sufficiently continuous"); *Religious Tech. Ctr.*,

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

971 F.2d at 367 ("A pattern of activity lasting only a few months does not reflect the 'long term criminal conduct' to which RICO was intended to apply.").

**b. The Post-2004 Allegations Do Not Remedy the Lack of a Pattern of Racketeering.**

Vivendi also has alleged a handful of isolated, unrelated communications by the DT Defendants two years later. These later alleged racketeering acts consist of (a) three press releases that the DT Defendants allegedly issued in September and October 2006 and January 2007, which supposedly misled Elektrim's bondholders and DT's ADR-holders as to the legal effect of decisions in the Third Vienna Arbitration (SAC ¶¶ 101, 104-05, 111-12, 122),[11] and (b) an unrelated March 7, 2006 phone call to Vivendi's CEO, in which "T-Mobile" representatives allegedly indicated that PTC would not provide a mobile network agreement to one of Solorz's companies (*id.* ¶ 81).

**(1) The Post-2004 Acts Were Not Wire Fraud.**

**(a) The March 7, 2006 Phone Call Was Not Wire Fraud.**

Vivendi alleges that in a phone call with Vivendi's CEO on March 7, 2006, employees of the DT Defendants made "misleading statements about T-Mobile's relationship with Solorz and Elektrim," because they indicated "T-Mobile had not agreed that PTC would provide Solorz (through PTC) with an agreement known as a Mobile Virtual Network Operator Agreement ('MVNO') . . . that would allow one of Solorz's companies to compete with PTC." (SAC ¶ 81.) But to constitute wire fraud, the scheme to defraud must involve falsehoods concerning material matters—those to which a reasonable person would attach importance in making a decision. *See Neder v. United States*, 527 U.S. 1, 22 & n.5, 25 (1999). Vivendi could not have attached any importance to the alleged MVNO

[11] For the same reasons that the alleged settlement negotiation communications lack continuity, the three press releases issued between September 2006 and January 2007 cannot themselves constitute a pattern of racketeering. *See, e.g., Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1535 (9th Cir. 1992); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366 (9th Cir. 1992).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

representation, which was made in 2006, when, according to the Complaint, Vivendi supposedly knew in ***December 2004*** that "it had been the victim of collusion between T-Mobile and Solorz." (SAC ¶ 60.). Vivendi does not even allege the relevance of the MVNO communication to the parties' purported settlement discussions.

Moreover, Vivendi fails to allege how the statement about the MVNO could have furthered the purported scheme to deprive Vivendi of an opportunity to change the decision of the tribunal in the Third Vienna arbitration, move to suspend a decision of the Polish Court of Appeal, or "join forces with Elektrim bondholders." (*Id.* ¶ 86.)

**(b) The Alleged Press Releases Cannot Constitute Wire Fraud Because, As Alleged, They Did Not Contain Material Misrepresentations.**

Vivendi does not allege that the press releases were false or misleading, and therefore does not allege wire fraud. *See United States v. Goodman*, 984 F.2d 235, 237-38 (8th Cir. 1993) (finding no scheme to defraud under the mail-fraud statute when the statements in the communications were literally true). The September 5, 2006 press release allegedly stated that the DT Defendants had legally acquired the PTC shares based on a Call Option awarded by the tribunal in the Third Vienna Arbitration. (SAC ¶ 99.) Based on Vivendi's own allegations, there was nothing false or misleading about that statement. (*See id.* ¶ 87.)

The second press release, issued on October 4, 2006, likewise does not contain any material falsehood. Vivendi alleges that the Second Partial Award in the Third Vienna Arbitration "recognized that T-Mobile had properly exercised the Call Option and that the price [of the PTC shares paid to Elektrim] would be based on PTC's net asset value." (*Id.* ¶ 110.) Thus, Vivendi concedes that the tribunal upheld the claim that TMD was entitled to the PTC shares. The October 4, 2006 press release merely reports this decision, stating that "the Arbitral Tribunal in Vienna conferred the ownership title" to the PTC shares. (*Id.* ¶ 111.) Based on Vivendi's own allegations, there was no false or misleading statement.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Finally, the January 28, 2007 press release, which allegedly announced the incorporation of PTC's assets into the DT Defendants' consolidated earnings, also was not, on the face of Vivendi's pleading, false or misleading. According to the Complaint, the tribunal in the Third Vienna Arbitration had ruled that the PTC shares were to be transferred to TMD. (*Id.* ¶ 87). That being the case, a press release announcing the consolidation of earnings could not mislead anyone.

If the press releases were false or misleading in any way, they were not materially so. To allege wire fraud, Vivendi must plead facts showing that the alleged misrepresentations had "a natural tendency to influence, or [were] capable of influencing, the addressee's decision." *United States v. Tarallo*, 380 F.3d 1174, 1182 (9th Cir. 2004). The "addressees" of the press releases allegedly were Elektrim's bondholders; Vivendi; U.S. investors, including DT's ADR-holders; and "the public." (*See* SAC ¶¶ 100-01, 104-05, 112-13, 122.) Given the acknowledged context of the press releases, it makes no sense to claim that the releases had a "natural tendency" to convince Elektrim's bondholders to give up a bankruptcy petition in Poland, Vivendi to cave-in and accept a low-ball settlement, or U.S. investors to trade DT ADRs simply because they did not include a caveat as to the timing of the share transfer. Further, as this suit demonstrates, none of the multiple arbitral and judicial decisions in favor of the DT Defendants influenced Vivendi to drop the claims it has now made in six European countries, over nearly eight years. It is preposterous for Vivendi to argue now that the DT Defendants' press releases were capable of producing that result.

**(c) The Press Releases Cannot Support a RICO Claim Because They Involve Alleged Conduct Actionable as Securities Fraud.**

Even if any of the press releases were materially false or misleading, Vivendi's claim pertaining to them would fall within RICO's securities-fraud exception. RICO provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c).

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

"The rule that a plaintiff cannot assert a RICO claim based on predicate acts that sound in securities fraud is applicable even if, as is the case here, the claim is pled as a matter of mail fraud or wire fraud." *Swartz v. KPMG, LLC*, 401 F. Supp. 2d 1146, 1151 (W.D. Wash. 2004), *aff'd & adopted*, 476 F.3d 756, 761 (9th Cir. 2007); *see also Bald Eagle Area Sch. Dist. v. Keystone Fin., Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (holding that RICO exception was meant to prevent plaintiffs from "'plead[ing] other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud'" (quoting H.R. Conf. Rep. No. 104-369, at 47 (1995))). The exception applies as long as ***anyone***, not necessarily the RICO plaintiff, would have had standing to bring a claim for securities fraud. *See Howard*, 208 F.3d at 749.

Section 10(b) of the Securities Exchange Act of 1934 makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security," a device, scheme, or artifice to defraud. 15 U.S.C. § 78j(b). Rule 10b-5, which implements section 10(b), similarly forbids the use, "in connection with the purchase or sale of any security," of "any act, practice, or course of business" that operates as a fraud or deceit. 17 C.F.R. § 240.10b-5. A device, scheme, or artifice to defraud is made "in connection with" the purchase or sale of a security if "the scheme to defraud and the sale of securities coincide." *SEC v. Zandford*, 535 U.S. 813, 822 (2002).

Vivendi alleges that the DT Defendants fraudulently included PTC as an asset on their balance sheet (*see* SAC ¶¶ 98, 143) and issued press releases that both misled their U.S. ADR-holders and caused an increase in the value of the ADRs (*see* SAC ¶¶ 99-104, 111-12, 122).[12] The Complaint also alleges that "U.S. investors who made investments in T-Mobile's ADRs . . . would not have made the same investment decisions if they had known that T-Mobile was engaged in racketeering." (*Id.* ¶ 105.) Taking Vivendi's allegations as true for

---

[12] Vivendi has expressly suggested that it believes that the DT Defendants' statements about European arbitral and court decisions "rais[e] serious concerns under U.S. securities laws." (*See* SAC ¶ 120.)

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

purposes of this motion,[13] the allegedly misleading press releases on which Vivendi relies fall within the securities-fraud exception and cannot constitute part of a pattern of racketeering.

**(2) The Alleged Post-2004 Racketeering Acts Cannot Be Appended to the Alleged 2004 Acts to Form a Pattern Because They Are Unrelated.**

The only connection between the settlement communications and the isolated communications by the DT Defendants two years later is that they involve the DT Defendants and concern PTC. They lack the requisite "relatedness" to constitute a pattern. *See H.J. Inc.*, 492 U.S. at 238-39.

The press releases lack "relatedness" to the alleged settlement communications because the two groups of acts bear no relationship "to each other or to some external organizing principle that renders them 'ordered' or 'arranged,'" and thus a "pattern." *Id.* at 238. Aside from the telling two-year hiatus, they lack relatedness because they were purportedly aimed at entirely different purposes and "victims"—the alleged settlement communications were purportedly calculated to induce Vivendi's forbearance regarding the Second Vienna Arbitration, and the press releases were allegedly aimed at misleading Elektrim's bondholders and DT's ADR-holders, in order to manipulate Elektrim's bankruptcy proceedings and DT's share price. *See Sedima*, 473 U.S. at 496 n.14; *Howard*, 208 F.3d at 749. In addition, the March 7, 2006, phone call had nothing to do with the alleged settlement communications or press releases, and did not even concern the disputed PTC shares. *See Howard*, 208 F.3d at 749 ("To hold that Plaintiffs have established relatedness solely because they implicate the same participants makes that requirement virtually meaningless.").

**c. The Complaint Fails to Plead Each DT Defendant's Fraudulent Acts with Particularity.**

Federal Rule of Civil Procedure 9(b) mandates that "circumstances constituting fraud . . . shall be stated with particularity." Rule 9(b) "requires a pleader of fraud to detail with

---

[13] Needless to say, the DT Defendants deny that any of the press releases was misleading in any way.

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme." *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405 (9th Cir. 1991). This requirement applies to RICO complaints based on alleged wire fraud. *See Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).

The Complaint, however, never specifies which DT Defendant allegedly committed which act of wire fraud. "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764-65 (internal quotation marks omitted); *see also Moore*, 885 F.2d at 541 (finding RICO claims based on fraud fatally deficient for failure to attribute specific conduct to individual defendants); *ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.*, No C05-2010Z, 2006 WL 1789029, at *8 (W.D. Wash. June 27, 2006) (dismissing RICO claims for failure to allege "the role or conduct of any particular Defendant"). For this reason, the Complaint should be dismissed.

**3. The Complaint Fails to State a Claim under § 1962(b).**

Vivendi also has failed to state a claim for a violation of § 1962(b) relating to the purported "take over" of PTC. That section provides: "It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise." 18 U.S.C. § 1962(b). To state a claim under § 1962(b), Vivendi must allege that: (1) each of the DT Defendants' racketeering activity led to their control over PTC, and (2) a sufficient injury to Vivendi's business or property resulted from the acquisition of control over PTC. *See Wagh v. Metris Direct, Inc.*, 348 F.3d 1102, 1111 (9th Cir. 2003). This claim fails because the allegations do not provide the required nexus between the alleged racketeering acts and control over PTC, which, if it occurred, resulted only after intervening determinations in various legal proceedings. *See supra* Part III.D.1.b. Furthermore, Vivendi has not alleged an injury from the DT Defendants'

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

acquisition of control over PTC that is separate from the purported harm stemming from the wire fraud. *See Tuscano v. Tuscano*, 403 F. Supp. 2d 214, 228 (E.D.N.Y. 2005) ("The 'acquisition or maintenance injury' must be separate and apart from the injury suffered as a result of the predicate acts of racketeering."); *Perez v. McDonald's Corp.*, No. Civ-S-97-0641, 1998 WL 59083, at *5 (E.D. Cal. Jan. 29, 1998) (same). The alleged loss of the PTC shares as a result of the purported racketeering cannot also be the claimed "acquisition injury."

**4. The Complaint Fails to State a Claim under § 1962(c).**

Section 1962(c) makes it unlawful for "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Here, the Complaint claims that the DT Defendants and Elektrim conducted the affairs of two enterprises—Elektrim and the so-called "T-Mobile global wireless network"—through a pattern of racketeering activity. But Vivendi does not adequately allege that the DT Defendants are distinct from the "T-Mobile global wireless network" or that any DT Defendant conducted or participated in the conduct of Elektrim's affairs.

**a. Vivendi Has Not Alleged That the DT Defendants Are Distinct from the T-Mobile Network.**

Under § 1962(c), it is unlawful for "any person . . . associated with any enterprise . . . to conduct . . . such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Vivendi's § 1962(c) claim fails because it has not alleged that the "persons" who allegedly violated § 1962(c) are distinct from the "enterprise" whose affairs the persons allegedly conducted. *See Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) ("[L]iability [under §1962(c)] depends on a showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.").

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Merely alleging that a RICO enterprise consists of a parent corporation and its subsidiaries, all of which are also alleged to be the RICO persons, does not satisfy this requirement. *See, e.g.*, *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) (holding a group of corporations within a "unified corporate structure" could not be both a RICO enterprise and the defendants), *vacated on other grounds*, 525 U.S. 128 (1998); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994) ("[B]y alleging a RICO enterprise that consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant, the distinctiveness requirement may not be circumvented."); *R.R. Brittingham v. Mobil Corp.*, 943 F.2d 297, 301 (3d Cir. 1991) ("[T]he [distinctiveness] rule would be eviscerated if a plaintiff could successfully plead that the enterprise consists of a defendant corporation in association with employees, agents, or affiliated entities acting on its behalf."); *Lee v. Gen. Nutrition Cos.*, No. 00-13550LGB, 2001 WL 34032651, at *14 (C.D. Cal. Nov. 26, 2001) (finding lack of person/enterprise distinction when enterprise consisted of corporate defendant, its affiliates, and two of its officers because "each of the persons pled operated within a unified corporate structure"). The Complaint does not identify any distinction between "T-Mobile," the term used by Vivendi to lump all of the DT Defendants together, and the purported "T-Mobile global wireless network" enterprise.

**b. Plaintiff Has Not Alleged That the DT Defendants Conducted or Participated in the Conduct of Elektrim's Affairs.**

"'[T]o conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs,' one must participate in the operation or management of the enterprise itself." *Reves*, 507 U.S. at 185 (alteration added) (quoting 18 U.S.C. § 1962(c)). This standard requires a "degree of direction" or "control" over the enterprise beyond mere aiding and abetting the acts of others within the enterprise. *See id.* at 178-79; *United States v. Shryock*, 342 F.3d 948, 985 (9th Cir. 2003). The Complaint does not allege any level of control or management of

Davis Wright Tremaine LLP
LAW OFFICES
2600 Century Square · 1501 Fourth Avenue
Seattle, Washington 98101-1688
(206) 622-3150 · Fax: (206) 628-7699

Elektrim by any of the DT Defendants. Indeed, Vivendi repeatedly claims that Solorz controls Elektrim. (*See, e.g.*, SAC ¶¶ 2, 18, 46-49, 67-69, 71-75, 109, 124.) That being the case, Vivendi has not properly alleged a RICO claim against the DT Defendants based on the supposed participation in Elektrim's operations.

**5. The Complaint Fails to State a Claim That the DT Defendants Violated § 1962(d).**

Where, as here, the allegations of a substantive violation of section 1962(b) or (c) are deficient, a section 1962(d) conspiracy claim cannot stand. *Wagh*, 348 F.3d at 1112; *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000); *Howard*, 208 F.3d at 751. Moreover, Vivendi cannot hold the DT Defendants liable for conspiracy to violate RICO through wire fraud without specifying how each of them participated in the conspiracy. Vivendi has not made any effort to satisfy that pleading obligation. *See Swartz*, 476 F.3d at 765; *Blake v. Dierdorff*, 856 F.2d 1365, 1371 (9th Cir. 1988).

**6. The Claim for Injunctive Relief Should Be Dismissed.**

Because "injunctive relief is not available to a private party in a civil RICO action," *Oregon Laborers-Employers Health & Welfare Trust Fund v. Philip Morris Inc.*, 185 F.3d 957, 967 (9th Cir. 1999) (internal quotation marks omitted), Vivendi's demand for return of the shares should also be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Vivendi's Complaint should be dismissed with prejudice.

RESPECTFULLY SUBMITTED this 17th day of May, 2007.

Davis Wright Tremaine LLP
Attorneys for the DT Defendants

By /s/ Stephen M. Rummage, WSBA #11168
Steven P. Caplow, WSBA #19843
Davis Wright Tremaine LLP
2600 Century Square
Seattle, WA 98101-1688
Telephone: (206) 628-7755
Fax: (206) 628-7699
E-mail: steverummage@dwt.com

*Of Counsel:*
Roger M. Witten
Andrew Weissman
John V.H. Pierce
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
Telephone: (212) 230-8800
Fax: (212) 230-8888

**CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2007, I filed this Motion to Dismiss the Second Amended Complaint on the CM/ECF system, which will send notification of such filing to the following persons:

Robert E. Rohde: brohde@rohdelaw.com

Lanny J. Davis: ldavis@orrick.com

Garrett Rasmussen: grasmussen@orrick.com

DATED this 17th day of May, 2007.

Davis Wright Tremaine LLP
Attorneys for Defendants T-Mobile USA, Inc, T-Mobile Deutschland GmbH, T-Mobile International AG, and Deutsche Telekom AG

By: *_/s/ Stephen M. Rummage_*
Stephen M. Rummage, WSBA #11168
Davis Wright Tremaine LLP
2600 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1688
Telephone: (206) 628-7513
Fax: (206) 628-7699
E-mail: steverummage@dwt.com