# EXHIBIT A

File No. VII Co 1709/04

DECISION

February 2, 2005

Regional Court in Warsaw, VII Civil Division, Registration

Composed of:
Chief Regional Court Judge Anna Michalska-Proc (reporting judge.)

Judges:  Regional Court Judge Bozena Gorna

Regional Court Judge Krystyna Nowak

Court Reporter: Karolina Firlej

having heard, on January 26, 2005, in Warsaw

the case brought by Elektrim S.A., based in Warsaw

with participation of T. Mobile Deutschland GmbH (formerly DeTe
Mobil Deutsche Telekom Mobilnet GmbH ) based in Bonn
with the Regional Prosecutor Wanda Przybysz-Domalewska participating

for recognition of the November 26, 2004 decision of the Arbitration

Tribunal

decides:

I. To recognize the decision of the Arbitration Tribunal, Intemationales

Schiedsgericht der Wirtschaftskammer Osterreich, issued in Vienna (Austria)

on November 26, 2004 (file no. SCH- 4750), as effective on the territory

of Poland, as to the following:

1. the transfer of shares to Telco was not effective, and PTC shares in the

transaction have remained property of Elektrim;

2. the transfer of the PTC shares to Telco in itself did not constitute a

Material Default as defined in Art. 16.1 of the Shareholders Agreement – but it would, if Elektrim has not returned the shares to Elektrim within two months following receipt of the judgment.

3. TMD petition regarding the Economic Impairment is dismissed;

II. The final cost of the procedure is set at 2,500 (twenty five hundred) zlotys payable in full by the petitioner.

III. Elektrim SA is ordered to pay the amount of 2,300 (twenty three hundred) zlotys to the National Treasury (through the cashier of the Regional Court in Warsaw) as the remainder of the court costs.

[Seal:] The Regional Court in Warsaw

**This is a true and correct copy**
[signature]

[Stamp:]
The copy issued from the archives of the Regional Court in Warsaw, VII Civil Division, Registry, No. <u>VII Co 1709/04</u>, as ~~binding~~   non-binding

003

<u>TRANSLATOR'S CERTIFICATE</u>

I, ...TOMun POPLinsu..., declare under penalty of perjury that I am thoroughly competent in both Polish and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from Polish to English, on this ....2-2...... day of ..Moul.., 2007.

Translated document:

decision-t-mobile-regional

**004**

08/02 2005 18:25 FAX +49 228 936 12309    TMO
08/02 05  TUE 16:11 FAX 48 22 5738559                              ☒003
                                                                  ☒003

Sygn.akt VII Co 1709/04

P O S T A N O W I E N I E

Dnia 2 lutego 2005 r.

Sąd Okręgowy w Warszawie VII Wydział Cywilny , Rejestrowy

w składzie:

Przewodniczący: SSO Anna Michalska-Proć (spr.)
Sędziowie: SSO Bożena Górna. SSO Krystyna Nowak
Protokolant: Karolina Firlej

po rozpoznaniu w dniu 26 stycznia  2005 r. w Warszawie
na rozprawie
sprawy z wniosku Elektrim S.A z siedzibą w Warszawie
z udziałem T. Mobile Deutschland GmbH ( poprzednio DeTe Mobil Deutsche
Telekom Mobilnet GmbH )z siedzibą w Bonn
przy udziale prokuratora  okręgowego Wandy Przybysz-Domalewskiej
o uznanie orzeczenia Trybunału Arbitrażowego z 26 listopada 2004 r.

postanawia:

I.  uznać       skuteczność  na  obszarze  Polski  orzeczenia  Trybunału
Arbitrażowego-Internationales    Schiedsgericht    der    Wirtschaftskammer
Osterreich  wydanego  w  Wiedniu  (Austria)  w  dniu  26  listopada  2004  r.
(sygn.akt  SCH-4750 ) w następującym zakresie:
1.zbycie na  rzecz  Telco  jest  bezskuteczne  i  udziały  PTC.  które  były  jego
przedmiotem pozostały własnością Elektrimu  w każdym czasie:
2.zbycie udziałów PTC na rzecz Telco przez Elektrim nie stanowi jako takie
Istotnego  Naruszenia  (Material Default)  w  rozumieniu  art.16.1  Umowy
Wspólników (Shareholders Agreement) ale stanowiłoby gdyby Elektrim nie

08/02 05. TUE 16:11 FAX 48 22 5736559          TMO                                    ☒004
                                                                                     ☒004

2.

odzyskał udziałów od Telco w przeciągu dalej dwóch miesięcy od doręczenia wyroku:

3. żądanie DT odnośnie stwierdzenia Stanu Istotnego Pogorszenia (Economic Impairment) zostaje oddalone :

II. wpis ostateczny określić na kwotę 2500 (dwa tysiące pięćset ) złotych i obciążyć nim w całości wnioskodawcę:

III. nakazać pobranie na rzecz Skarbu Państwa (kasa Sądu Okręgowego w Warszawie) od Elektrim SA kwotę 2300 (dwa tysiące trzysta )złotych tytułem uzupełnienie wpisu sądowego.



Za zgodność z oryginałem
Z. Seliga

Odpis niniejszy wydano z akt Sądu
Okręgowego w Warszawie VII Wydział
Cywilny Rejestrowy sygn. VII.Ca 1708/04
Jako prawomocny (nieprawomocny)

006

# EXHIBIT B

**COPY**

**File No. I ACa 893/05**

# D E C I S I O N

**March 29, 2006**

**The Appellate Court in Warsaw 1st Civil Division,**

**composed of:**

**Chief Judge - Appellate Court Judge Maria Rodatus,**

**Appellate Court Judges Barbara Trebska, Anna**

**Kozlowska**

**Court Reporter . Ewelina Walczak**

**having heard on March 29, 2006**

**the case brought by Elektrim S.A., based in Warsaw,**

**with Sylwia Morawska, Prosecutor from the Regional Prosecutor's Office**

**in Warsaw participating,**

**with T- Mobile Deutschland GmbH, based in w Bonn (Germany), a party,**

**and a secondary intervenient Elektrim Telekomunikacja spólka z o.o. in Warsaw** for

recognition of the effectiveness of a foreign court judgment within the territory of Poland, due to

an appeal filed by the secondary intervenient and the prosecutor

**against the Regional Court in Warsaw decision**

**dated February 2, 2005, File No. VII Co 1709/04**

**decides :**

**I. to reject both appeals,**

**II. to order Elektrim Telekomunikacja spólka z o.o. located in Warsaw to pay Elektrim SA**

**based in Warsaw, and T- Mobile Deutschland GmbH based in Bonn (Germany ) to pay 180**

**(one hundred and eighty ) zloty each as reimbursement for attorneys' fees related to the appeal.**

File No. I ACa 893/05

G R O U N D S

In its petition dated December 17, 2004, the plaintiff Elektrim S.A., based in Warsaw, naming T- Mobile Deutschland GmbH based in Bonn as a party to the proceedings, petitioned for recognition of the decision issued by the Arbitration Tribunal - Internationales Schiedsgericht der Wirtschaftskammer Osterreich in Vienna – on November 26, 2004, file number SCH- 4750, as effective within the territory of Poland.  The decision, called the Second Partial Arbitration Decision, was issued in a dispute between the parties to the proceedings, formerly known as De Te Mobil Deutsche Telekom Mobilnet GmbH, plaintiff (called DT), and Elektrim S.A., based in Warsaw and Elektrim Telekomunikacja  (called Telco), a limited liability company based in Warsaw, the defendant in the proceedings.

The content of the Second Partial Decision of the Tribunal was as follows:

1.  The transfer of shares to Telco has not been effected, and PTC shares subject to the transaction have remained the property of Elektrim throughout the entire relevant period;

2.  Transfer of shares to Telco in itself did not constitute a Material Default as defined in Art. 16.1 of the Shareholders Agreement, but it would constitute such Material Default, if Telco did not return the shares to Elektrim within two months following receipt of the judgment;

3.  TMD petition regarding the Economic Impairment status is dismissed;

4.  The Arbitration Tribunal has no jurisdiction over Telco, and TMD claims against Telco may not be subject to this arbitration;

5.  DT claim for monetary damages was withdrawn;

3

6.      The issue of the arbitration cost in relation to these proceedings
        is being reserved to be decided in a separate ruling;

7.      All other claims and counterclaims between parties are dismissed.

The petition for recognition pertained only to parts of the Tribunal decision, i.e. clauses one, two, and three of the decision.

The Petitioner attached the decision, with its sworn translation, to the petition, along with the company agreement, containing in Art. 21 the arbitration clause; the petitioner argued that no adverse circumstances listed in the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, signed in New York on June 10, 1958, exist (Journal of Laws of 1962, No. 9, item 41), and pursuant to its provisions, the decision should be recognized.

Elektrim Telekomunikacja sp. z o.o., based in Warsaw, filed an appearance before the Regional Court, petitioning for standing in the proceedings as a party (participant), and when the Regional Court rejected the petition in its ruling of January 12, 2005 r. (k. 376, volume II), the company filed a secondary intervention on January 25, 2005 (k. 389, volume III), and also, on the same day, a primary intervention (k.434, volume III).

The Regional Court held a hearing on January 26, 2005, where the petitioner objected to the above, and in its decision dated January 26, 2005, the Court denied Elektrim Telekomunikacja standing in the case both as a primary, and a secondary intervenient (k. 523, volume III).

The Regional Court decided on the merits of the case on February 2, 2005, granting the petition in its entirety (k. 543 volume III).

In the grounds for its decision, the Regional Court described actions related to petitions by Elektrim Telekomunikacja sp. z o.o., and Carcom Warszawa sp. z o.o., a company that also undertook actions to obtain

4

a secondary intervenient standing, including actions undertaken in relation to that company's motion to exclude judge Beata Ładak; as to the merits of the case, the court made the following findings and legal assessments:

Elektrim S.A. and T - Mobile Deutschland GmbH (formerly DeTe Mobil Deutsche Telekom Mobilnet Gmbh) were shareholders in a limited liability company doing business as Polska Telefonia Cyfrowa (called PTC). Pursuant to Art. 21, section 2 of the company agreement dated December 21, 1995, any disputes arising from, or related to the agreements shall be resolved, if possible, through negotiations between the shareholders. Should such negotiations be unsuccessful, and if shareholders do not decide otherwise, all disputes among the shareholders, and between shareholders and the Company arising from this agreement, shall to be resolved finally, and be binding on all parties, by the Arbitration Court of the Federal Chamber of Commerce and Industry in Vienna, by three arbiters acting pursuant to the Rules of that Court.

On December 7, 2000, the Arbitration Tribunal received a petition filed by T-Mobile Deutschland GmbH (DT) to resolve a dispute involving Elektrim S.A. and Elektrim Telekomunikacja Sp. z o.o., related to transfer of PTC shares by Elektrim S.A. to Elektrim Telekomunikacja (Telco) (actually, the shares were to be provided as a non-cash contribution to cover the increased amount of Telco's initial capital). DT petitioned for adjudication whether or not the ownership of the shares was effectively transferred to Telco by Elektrim S.A., and for damages from Telco.

After hearing the case, the Tribunal issued the decision dated November 26, 2004, as quoted earlier; the decision is binding and enforceable within the territory of The Republic of Austria.

The Regional Court indicated that in the course of the proceedings the Petitioner submitted documents required under Art. IV of the Convention.

5

The party to the procedure and the prosecutor did not file any claims and did not present evidence indicating that recognition of the decision is unacceptable for reasons specified in Art. V of the Convention, and they joined the petition.

Elektrim Telekomunikacja sp. z o.o., acting as an intervenient until the decision to deny the company its standing became binding, motioned for denial of the petition. In its opinion, the arbitration decision consists of seven parts, and partial recognition would distort it, the decision violates public policy principles, and in particular Art. 8 of the Constitution of the Republic of Poland, the right to trial, and the right to own shares.

Court's ex officio actions undertaken under Art. V, section 2, clause a) and b) of the Convention did not result in findings that the recognition should be denied. The dispute in point before the Tribunal could have been decided by an arbitration court; under Art. 697 §1 of the Code of Civil Procedure; only child support and labor law issues are excluded from the jurisdiction of arbitration courts. The decision submitted for recognition is not contrary to the public policy of Poland. The purpose of the public policy clause is to protect the Polish legal system from violations through findings of effectiveness and enforceability of decisions that are not compatible with fundamental standards of the Republic of Poland. The decision covered in the petition did not have that characteristic.

The Regional Court indicated that Telco had been a party to the proceedings until the arbitration court decided on the effectiveness of the share transfer. As a result of the findings that the transfer was not effective, the court decided it had no jurisdiction in the case for damages against Telco, because Telco has never been a shareholder in the company, and is not covered by the arbitration clause. Such findings, in the Regional Court's opinion, did not indicate an internal inconsistency of the decision:

regarding a lack of jurisdiction in the case for damages is a logical consequence of findings that Telco at no time has owned the shares.

Also, in the Regional Court's opinion, recognition of only some findings in the Tribunal decision does not violate provisions of the Convention; it is allowed when such findings constitute a coherent whole, and do not distort the content of the decision. Other findings in the decision related to other entities, pertained to procedural issues, or were not subject to recognition. In the light of the above, the petition was granted.

The Regional Court decision was appealed by the Regional Prosecutor, by Carcom Warszawa sp. z o.o. (k. 1628 vol. VIII), and by Elektrim Telekomunikacja sp. z o.o., as: a party (k. 981 vol. V and k. 1259 vol. VII), a primary intervenient (k: 584 vol. III), and a secondary intervenient (k. 959 vol. V)

The appeal filed by Elektrim Telekomunikacja as a party and the primary intervenient was rejected by the decision of the Regional Court dated May 17, 2005, (k.1135 vol. VI), and the decision of the Appellate Court dated March 29, 2006 (k.  vol.) The appeal filed by Carcom Warszawa sp. z o.o. was rejected by the decision of the Appellate Court dated December 20, 2005 (k. 1849 vol. X).

In the appeal filed by Elektrim Telekomunikacja sp. z o.o. as a secondary intervenient, (k. 959 vol. V), the Company-Appellant demanded that the appealed decision be reversed, and the petition be denied, or the appealed decision be overturned, and the case be remanded to the Regional Court for reconsideration, claiming:

1)     Violation of Art. 233 § 1 of the Code of Civil Procedure, in reference to Art. 316 of the Code of Civil Procedure, by neglecting to consider the evidence comprehensively, and as a result, issuing the decision on the basis on an erroneous reading of the Arbitration Tribunal judgment,

2)      Violation of Art. 379 clause 5 of the Code of Civil Procedure by denying the company an opportunity to defend its rights, and as a result, causing the proceedings to be invalid,

3)      Violation of Art. 72 § 2 and Art. 73 of the Code of Civil Procedure by erroneously deciding that the Appellant was not a necessary and uniform participant where the company was a defendant in the proceedings before the Arbitration Court,

4)      Violation of Art. 1147 § 1 of the Code of Civil Procedure by depriving the company standing and opportunity to defend its rights in the proceedings for recognition of a decision even though the company was a defendant in the proceedings before the Arbitration Court, and filed a motion for standing as a party,5)      Violation of Art. 51 of the Code of Civil Procedure by the fact that a judge did not excuse herself from the case where there was a basis for such exclusion,

6)      Violation of Art. 224 § 1 of the Code of Civil Procedure by closing the case when a) all rulings denying the Appellant standing in the case were being appealed, and, therefore, the parties in the proceedings had not been yet finally formed, b) during the hearing, due to the motion to exclude a judge, the composition of the judicial panel changed, and the new judge had at most 40 minutes to become familiar with the case file;

7)      Violation of Art. 316 §1 of the Code of Civil Procedure by neglecting to consider the evidence comprehensively by the entire court, including the new judge, and by issuing the final decision when, due to the above referenced errors, the case could not have been finally decided,

8)      Violation of Art. III of the Convention by deciding the judgment may be recognized partially, without its part four, limiting

the subjective scope of the decision, and, by the same token, distorting its legal meaning,

9)    Violation of Art. V section 2, clause b) of the Convention by deciding the judgment does not violate the basic public policy principles of the Republic of Poland;

10)    Violation of Art. V section 1, clause b) of the Convention by deciding the judgment does not go beyond the limits of the arbitration clause, and does not contain findings that go beyond the limits of the arbitration clause.

The Regional Prosecutor Office (k. 616 vol. IV) claimed in its appeal:

1. violation of the trial procedure, in particular of Art. 1147 § 1 of the Code of Civil Procedure, by denying Elektrim Telekomunikacja sp. z o.o. standing of a party, and an opportunity to defend its right in the proceedings for recognition of the Vienna Arbitration Tribunal judgment,

2. violation of Art. V section 1 clause d) of the Convention in issuing the decision and granting the petition without review and analysis of the law on which the Arbitration Tribunal decision was based.

In the Appellant opinion, a foreign court decision, based on foreign law, may be recognized in Poland only when that foreign law is not substantially different from the Polish law.

The Appellant, claiming as above, petitioned for overturning the appealed decision and remanding the case to the lower court for reconsideration.

The Appellate Court found that::

The appeals are unfounded.

Referring to the appeal filed by Elektrim Telekomunikacja spółka z o. o. – its claims may be classified into two groups, the first pertaining to errors in the proceedings before the lower court, which, in the Appellants' opinion,

9

resulted in invalidity of the proceedings, and the second related to violation of the Convention provisions.

As to the first group of claims:

There is no doubt that the Appellant was granted standing of the secondary intervenient. That is because the Appellate Court in its decision dated May 11, 2005 (k. 1120 vol. VI) overturned the part of the Regional Court ruling dated January 26, 2005 (k. 523 vol. III) pertaining to denying the Appellant standing in the case as a secondary intervenient; the court indicated that the Company's appeal was really an appeal against denying the Company standing of the intervenient by sustaining an objection against it (Art. 394 §1 clause 3 of the Code of Civil Procedure). The decision denying the standing was overturned as erroneous and that means that the Appellant was granted standing as a secondary (independent) intervenient effective on the day it filed the appeal.

The opinion of the Appellate Court expressed in that ruling is also binding on the panel deciding on the case.

It should be mentioned that there was no disagreement in the case that proceedings for recognition of foreign court decisions are not non-trial type proceedings but special proceedings, where procedural provisions should be applied for the lack of different regulations. Provisions of the Code of Civil Procedure do not specify what entities may or should participate in such proceedings, do not specify procedural standing of such entities in these proceedings, and do not specify reasons to justify participation in such proceedings. Art. 1147 of the Code of Civil Procedure referred to in the appeal applies to standing for initiation of proceedings for recognition of a foreign court decision, not to participation in such proceedings. But the position that the legal interest should decide standing of a participant in such proceedings is reasonable.

Correct application of the procedural rules means that some interventions are not applicable, some are, with modifications, and some directly. In this Appellate Court's opinion,

there are no obstacles to grant secondary interventions in proceedings for recognition of foreign court decisions, which, as has been showed, certainly are not non-trial proceedings. An intervention is understood as means to protect one's subjective right before the court, therefore, if an entity having legal interests in being a party to proceedings was not a participant (party) to the proceedings for recognition of a foreign court decision, the entity may make an attempt to defend its rights by filing a secondary intervention.

The Appellate Court does not agree with the Appellant's opinion that provisions of Art. 72 and Art. 73 of the Code of Civil Procedure regarding necessary and uniform participation apply to proceedings for recognition of foreign court decisions. Allowing such application would mean the possibility of participation not only by the defendant, or parties to the proceedings, but also by the entities initiating the proceedings. But if in such proceedings as these, the standing, and not just active standing, is determined by legal interest (and not by bonds created by a legal relationship or law providing a connection between the parties), the participation of particular entities in proceedings is related to whether or not they have a legal interest in a particular outcome – then it becomes clear that provisions of Art. 72 and 73 of the Code of Civil Procedure do not apply, not even proportionally. It is because in such situation it cannot be asserted that two (or more) entities are eligible to participate, but that they can only participate jointly .

On January 25, 2005, the Appellant filed a brief as a secondary intervenient (k. 389 vol. III), where it objected against the petition and presented its position (not different from the claims raised in the appeal). It maintained its position during the hearing on January 26, 2005, and the situation obtained, when the Regional Court issued its decision.

Under Art. 78 § 3 of the Code of Civil Procedure, the third party obtains standing of a secondary intervenient as soon as the party files a brief with the court. Therefore, the Appellant obtained such standing on January 25, 2005, and, pursuant to the decision

of the Appellate Court dated May 11, 2005 r, it had maintained that standing until the conclusion of proceedings before the Appellate Court.

The Appellant is right in that there is a difference between the standing of a party and that of a secondary intervenient in a case, as procedural rights of a party are certainly broader. However, in order to decide whether or not the Appellant was denied an opportunity to defend its rights (by not being granted the standing of a party but as that of an independent secondary intervenient), it would be necessary to decide whether, if granted a different standing in the proceedings, the Appellant would have undertaken different procedural actions, which would have better protected its legal interests. In the Appellate Court's opinion, the Appellant would not have been able to undertake more effective actions in the proceedings. The Appellant presented its opinions in briefs and at the hearing, filed an appeal, and it would have undertaken the same procedural actions also as a party. It should be noted that the content of the appeal filed by the Appellant as a party to the proceedings (k. 981 vol. V and k. 1259 vol. VII) is identical to its appeal filed as an intervenient. Because the Appellant undertook all the procedural actions that would also be available to a party at any given stage of the case, the difference in standing was purely formal.

Therefore, while not denying that the correct standing of the Appellant in these proceedings should be that of a party to the proceedings as the judgment referenced in the petition related to the Apellant's property rights, we do not find that the Appellant, while acting as a secondary independent intervenient, was denied an opportunity to defend its right, causing the proceedings to be invalid. As to the participation in the case of judge Beata Ladak against whom a motion for exclusion was filed: the motion was based on Art. 49 of the Code of Civil Procedure. The motion included a claim that there is a relation between the judge and the petitioner that may raise doubt as to impartiality of the judge (Case file No. I Co 95 /05). Art. 51 of the Code of Civil Procedure

that requires a judge to excuse him/herself from hearing a case in a situation where the judge him/herself requests to be excused due to a personal relation with one of the parties that may raise doubt as to impartiality of the judge, or due to existence of one of the circumstances specified in Art. 48 of the Code of Civil Procedure, i.e. where statutory grounds exist for exclusion of a judge. Therefore, when it is the party's opinion that there are grounds for the exclusion, and the party files an appropriate motion, the judge's duty to refrain from hearing the case arises at the moment when he/she is notified about such motion being filed.

The protocol of the January 26, 2005 hearing indicates that the court session began at 13.45, and the motion to exclude judge Beata Ladak was filed at the registry office at 12.00; however, the court was informed about that not at the beginning of the session but during the session, only after the ruling denying Elektrim Telekomunikacja standing as a secondary intervenient and as a primary intervenient was issued (k.519). Also, the protocol of the hearing indicates that after judge Beata Ladak was notified about the motion for her exclusion, she ceased her participation in the case and a change in the judicial panel followed. Therefore, the Appellant is not correct claiming that Art. 51 of the Code of Civil Procedure was violated.

On the basis of the change in the judicial panel composition, the Appellant draws the conclusion that the new panel was not sufficiently prepared to decide on the case. The insufficient preparation of the judicial panel in itself is not a sufficient or effective claim on appeal. It would matter only if it resulted in an erroneous decision, and the Appellate Court ultimately did not find such outcome in this case.

We also find the claim of violation of Art. 224, and Art. 316 of the Code of Civil Procedure ineffective. The Regional Court closed the session after hearing arguments of the parties, that is, pursuant to Art. 224 of the Code of Civil Procedure; the fact that the decision denying the Appellant standing of a secondary intervenient in the case

would not be an obstacle to closing the case under provision of Art. 78 §3 Code of Civil Procedure, in reference to Art. 76 of the Code of Civil Procedure (see the Supreme Court decision dated November 15, 2000, case IV CKN 1328/00, OSNC, 5/2001, item 73); the ruling to deny the appellant standing of a party in the case was not eligible for appeal. Therefore, it cannot be reasonably argued that the case was closed before the final list of entities participating in the case emerged, regardless of what the significance and effect could be of such early closing in the Appellant's opinion..

As to the claims of alleged violation by the Regional Court, in the Appellant's opinion, of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, signed in New York on June 10, 1958 (Journal of Laws, 62/9, item 41), under which the decision on the petition was made – in Appellate Court's opinion, no violation of the Convention provisions occurred.

The Convention does not prohibit a partial recognition of an arbitration court's decision. Art. III does not require recognition of the entire decision, and such prohibition may not be derived from provisions of Art. V section 1 clause c). The latter provision does not pertain to the issue whether or not it is acceptable to petition for only a partial recognition of the decision but indicates the course of action in a situation, where the recognition and execution must be denied but the necessity to deny it applies only to a part of the decision. That provision indicates that a partial recognition is certainly possible under the Convention.

A party may request recognition and enforcement of a partial decision within the limits of the party's legal interest, if that can be accomplished without detriment to the decision in question.

If a decision pertained to an indivisible benefit, petition for partial recognition and enforcement (which is difficult to imagine from the procedural standpoint anyway) would be unacceptable. If a benefit is divisible, it is up to the party whether to demand its partial or

complete recognition. The situation would be similar if a decision dealt with several claims that would not constitute an indivisible whole.

The Arbitration Tribunal judgment does not pertain to an indivisible benefit; the benefit is subjectively divisible, and therefore the petitioner need not have been limited to requesting recognition for the first clauses of the sentence. In reference to clause four: the previous decisions and the literature on the topic indicate that formal decisions, not pertaining to the subject matter of the case, are not eligible for recognition, and that is the character of clause four, its content equivalent to rejection of a petition due to the unacceptability of the court venue (see: K. Piasecki „Skuteczność i wykonalność w Polsce zagranicznych cywilnych orzeczeń sądowych" Wydawnictwa Prawnicze , Warsaw 1990, page 35).

The judgment is nor internally inconsistent. The Appellate Court does not share the Appellant's opinion that there is a contradiction between clause one and four, regarding lack of jurisdiction over Telco, (not included in the petition); the Court also does not share the Appellant's opinion that leaving the clause four out distorts the intent of the judgment. We cannot help but recognize that the Appellant's position expressed in the trial briefs leads to an unequivocal conclusion that the Appellant fully accepts the decision contained in clause four, regarding lack of Tribunal jurisdiction over the Appellant, and turns that clause into a weapon in its fight for the outcome of the case.

The lack of jurisdiction finding is a logical result of reviewing by the Tribunal the validity (effectiveness) of the PTC share transfer from Elektrim S.A. to the Appellant. The Tribunal in its partial opinion dated May 30, 2002 ( k . 2574-2616 vol. XIV) indicated that the arbitration provision of the company agreement (and the shareholders agreement) may only be binding on Telco as a shareholder. That role, the Tribunal found, is in question, as is

the validity of the share transfer itself – and the Tribunal made a decision to rule on the jurisdiction at the same time when ruling on the subject matter of the case (k.2616). The subject matter here is Plaintiff's (DT) petition for findings that . transfer of PTC shares to Telco by Elektrim S.A was invalid. It should be added that according to clause 64 of the decision Telco petitioned the Tribunal for issuing the findings on the jurisdiction simultaneously with deciding on the matter of the case (k. 2615). In its second partial decision in the matter, dated November 26, 2004, the Tribunal stated in clause 265 (k. 292 vol. 11): „the transfer to Telco was not effective due to lack of approval from the PTC Board of Directors." It meant that Telco could not be considered a shareholder at any pertinent time. The Arbitration Tribunal determines its jurisdiction under arbitration clauses contained in Art. 21 of the shareholder agreement and the company agreement. As the transfer to Telco was not effective, Telco could not effectively assume Elektrim's duties specified in the shareholders agreement. Also, it never assumed the duties of Carom and Autoinvest as shareholders.  In the light of the above, the Arbitration Tribunal found it had no jurisdiction over Telco.

A valid transfer of shares would make the Appellant a PTC's shareholder and subject to  the PTC company agreement, including  Art. 21 of the agreement, the arbitration clause. The finding that the share transfer agreement was invalid (ineffective) results in Appellant's (called Telco) lack of  PTC shareholder status. The Appellant, not being PTC shareholder, is not bound by the arbitration clause in that company agreement. The result is that the court has no jurisdiction over it, and therefore it may not rule on claims directed against it.

Even more important than the finding on the decision being non-contradictory – which is quite obvious – is the issue whether the finding contained in clause 1of the decision about the sale of PTC shares by Elektrim S.A.

for the benefit of the Appellant (called Telco) was ineffective is also binding on the Appellant (as it does not fall under the Arbitration Court's jurisdiction), or whether that clause of the decision has a legal effect only on Elektrim S.A. and DT, i.e. PTC shareholders bound by the arbitration clause. In the Appellant's opinion, the decision related to that clause is only binding on Elektrim S.A. and DT (because of the finding of lack of jurisdiction over the Appellant), so recognition of the judgment would extend its effect on the Apellant, which would be unacceptable. That stems from the claim raised in the appeal that the clause one of the Tribunal's decision goes beyond the limits of the arbitration clause and exceeds that clause; if that was the case, then, under Art. V of the Convention, the recognition should be denied.

In the Appellate Court opinion, the decision does not go beyond the arbitration clause, and the clause one of the Arbitration Tribunal decision is binding on the Appellant Company.

The Appellant claimed in the proceedings before the Arbitration Tribunal that pursuant to the agreement entered into with Elektrim S.A., the Appellant is a PTC shareholder. Art. 21 of the PTC company agreement stated: "all disputes among the shareholders, and between the shareholders and the company arising from other agreements entered into by the company, or related to other agreements pertaining to the company agreement, were to be resolved finally, and be binding on all parties, by the Arbitration Court of the Federal Chamber of Commerce and Industry in Vienna..."    (k. 97 vol. I) . As a shareholder, the Appellant was bound by this arbitration clause. At the time the proceedings were initiated, prior to the review of the petition for the invalidity of the share transfer on its merit, Telco could not be seen as anything other than a PTC shareholder for the purposes of the arbitration court jurisdiction and its standing in the procedure, which determined the binding character of the arbitration. The arbitration court therefore decided on the case both subjectively, and objectively within the arbitration clause. Telco was an active participant of the arbitration court proceedings, and even filed a counter petition; additionally, as already mentioned above,

the Appellant petitioned the Tribunal for both issuing the ruling on the jurisdiction and the merit of the case simultaneously (k. 2615). Appellant's waiting for the decision on the merit of the case (i.e. any decision, either positive, or negative from its standpoint) could not have meant that once the arbitration decision has been reached it would not be binding on the Appellant.

The decision, issued after hearing the evidence, that the transfer of shares was invalid (ineffective), which, as a consequence, meant the finding that the Appellant did not have the status of the shareholder, could not retroactively deprive the Tribunal of its jurisdiction over the case. Contrary reasoning would lead to the conclusion that lack of jurisdiction extends retroactively to that court's inability to issue a binding decision regarding the transfer of the shares. Such conclusion must be found erroneous.

It seems that a similar position on jurisdiction of an arbitration court deciding on its own jurisdiction in order to decide on the validity of a contract that includes an arbitration clause, with the effect of being binding to (all) parties to an arbitration proceedings to decide on the validity of that contact, stems from Art. V section 3 of the European Convention of the International Commercial Arbitration, signed in Geneva on April 21, 1961. (Journal of Laws, No. 40/1964, item 270); Poland is its signatory.

Art. V of the New York Convention lists only reasons for refusal to recognize an arbitration decision.

We find that the Appellant under the referenced provision and in the light of the previous arguments, did not show any evidence that the decision presented for recognition is related to any dispute not covered under the arbitration provision does not fall under that provision, or that the decision goes beyond the arbitration provision, and therefore that there exists an impediment under section 1 c) of the Article.

Pursuant to Art. II of the Convention and Art. 698 § 2 of the Code of Civil Procedure, "disputes pertaining to legal relationship" may be submitted for arbitration. Therefore

Provision of clause 1 c) Art. V of the Convention makes it necessary to examine whether or not the decision submitted for recognition is compatible with terms of the arbitration provision, i.e. whether it rules "on a dispute over a legal relationship." In the matter under consideration, the arbitration court made a ruling on a dispute pertaining to relationships of PTC company. Therefore the finding that the Appellant did not participate in the relationship with the company was compatible with the provision.

Also, there were no grounds for finding that the recognition of the decision would be contrary to the public policy of the Republic of Poland (section. 2 b) Art. V of the Convention. The Tribunal judgment was issued in proceedings pursuant to a petition for findings on rights of ownership (Art. 189 of the Code of Civil Procedure) and the proceedings were directed against both parties of the appealed action. The judgment is not internally inconsistent, or ambivalent. Clause one addresses the Appellant not as a third party but as a party to the proceedings before the arbitration court and it binds the Appellant, as already discussed above, making an effective finding that the Appellant is not a PTC shareholder due to a defective character of company shares transfer. The fact that such findings made by the arbitration court resulted in a decision on the right to shares does not mean that an unlawful depravation of property occurred. We find it incomprehensible that the Appellant accepts lack of jurisdiction while objecting against the premises on which that lack of jurisdiction was based, or the fact the Appellant objects to legal effects of events that resulted in the ruling regarding lack of jurisdiction.

The Appellate Court agrees with the position of the lower court that the Arbitration Court judgment does not include any findings that could be seen as inconsistent with the legal standard of the Republic of Poland, or that their effects could be inconsistent with the Constitution, and in particular, the protection of property, and the right to trial.

As to the charge of the decision being internally inconsistent, it should be mentioned that the decision on the ineffectiveness of the transfer is not inconsistent with the issue of „recovery of the shares", decided

in clause two of the judgment; in the particular situation that could be, for example, entering Elektrim S.A. as a PTC shareholder into the company articles of association. Invalidity or ineffectiveness of a legal procedure pertaining to disposition of rights means the ownership title is preserved, but it requires little argument that any change resulting from the procedure,  for example in the ownership (possession), may  need to be reversed to the previous status through actual, legal, or procedural actions. Additionally, clause two does not pertain to the Appellant; it rules on obligations of Elektrim's S.A. and results of the transfer on DT.

In regard to the action that took place in the course of the appellate proceedings, i.e. the judgment of the Commercial Court in Vienna, overturning clause one of the Arbitrational Tribunal judgment  (k.22b5-2330 vol. XII and k: 2505 -2537 vol. XIII): Art. V section. 1 e) of the Convention states that the recognition would also be denied when the decision was overturned by a relevant authority of the country where or under  whose laws a decision was issued. The Appellant did not invoke the Commercial Court judgment as grounds for refusal to recognize the decision (k. 2422 vol. XIII), and the petitioner and the participant asserted that this could constitute grounds only if the reversal of the decision was final. The opinion that overturning the decision must first become final dominates the literature on the topic, and the Appellate Court shares that opinion (see: T. Ereciński "Uchylenie przez sąd państwowy orzeczenia wydanego w międzynarodowym arbitrażu handlowym,, in: "Księga pamiątkowa ku czci profesora Jerzego Jodłowskiego. Proces i prawo. Rozprawy prawnicze" Ossolineum 1989, p. 81). Considering the fact the Commercial Court decision was appealed by Elektrim S.A. and DT (vol. XV), it is not legally binding, and therefore the overturning of clause one of the Arbitration Tribunal judgment is legally immaterial as grounds for a refusal to recognize.

Considering the above, the Appellate Court denies the appeal filed by Elektrim Telekomunikacja sp. z o.o. (Telco) as unfounded (Art. 385 of the Code of Civil Procedure).

The Regional Prosecutor Office (k. 616 -620 vol. IV) appeal is also unfounded. Its claim that Telco was deprived an opportunity to defend its rights is identical to the appeal filed by the Company. The Appellate Court already addressed that part of Telco's appeal and there is no need to analyze again whether the errors that definitely were made in the proceedings before the Regional Court led to invalidity of the procedures. The Appellate Court found that Telco was not deprived an opportunity to defend its rights, and we maintain that position.

In reference to other assertions and arguments of that appeal, it has to be said that the Appellant's reference to the alleged violation of Art. 1147 § 1 of the Code of Civil Procedure, made in order to support the claim that the Company was denied an opportunity to defend its rights, is a misunderstanding. As mentioned above, the provision regulates the issue of standing in initiating the proceedings for recognition of a foreign court decision, and has nothing to do with the need for Telco to be a party to the proceedings. We have to add that the decision to deny someone standing of a party in a case is not eligible for an appeal, as discussed above, and therefore the claim that Art. 395 par. 1 or par. 2 of the Code of Civil Procedure, were violated, as stated in the appeal, is incorrect.

The Appellant is also not correct stating that Art. V section .1 d) of the Convention was violated. Under that provision, the recognition is denied only when a party shows evidence that "the composition of the arbitration court, or the arbitration proceedings, were inconsistent with an agreement between parties, or, if no such agreement exists, were inconsistent with the law of the country where the arbitration proceedings were held". During the proceedings, neither the petitioner, nor the party, nor the secondary intervenient, nor the court had any doubt that Art. V of the Convention it itself exhaustively lists situations where recognition of a foreign court decision may be denied, and these grounds for denial must be

proven by the interested party. The secondary intervenient did not even mention such grounds for refusal of recognition. Under such circumstances, in the Appellate Court opinion, if one were to assume the Prosecutor had the right to raise different grounds for a refusal of recognition than the party (in this case: the secondary intervenient), he was required to present an argument in support of his assertion. Neither the Convention, nor provisions of the Code of Civil Procedure provide basis for the court to argue ex officio. Therefore the claim that the decision was issued prematurely, i.e. before the correctness of the Tribunal's proceedings was reviewed, is missing the mark.

Neither can we agree with the Appellant that a decision based on foreign law may be recognized in Poland only if found that the foreign law is not substantially different from the Polish law – which would require for the Polish court to examine foreign law. It seemed that the language was taken from the provision of Art. 1146 § 1 clause 6 of the Code of Civil Procedure. Regardless of the fact that the provision relates to the substantive law ( grounds given by the Tribunal suggest that elements of the Polish substantive law were applied), it should be stressed that the provisions of the Code of Civil Procedure are only applicable to countries that are not signatories of the Convention. It should be repeated once again that the Convention lists reasons for refusal of recognition but contains no criteria on which the recognition would depend.  Under Art. III of the Convention, the decision must be recognized if conditions listed in Art. IV of the Convention are met and grounds for refusal from Art. V are not proven.  Conditions under Art. IV were met, and in the Appellate Court opinion, grounds for refusal have not been proven.

For the reasons stated above, Prosecutor's appeal could not be granted (Art. 385 of the Code of Civil Procedure).

In the brief dated December 15, 2005 ( k . 1733 vol. X), the Appellant petitioned the Appellate Court pursuant to Art. 380 of the Code of Civil Procedure, for a review of the Regional Court decisions dated January 12, 2005

regarding rejection of the motion by Elektrim Telekomunikacja, sp. z o.o. for standing of a party to the case (k. 376 vol. III), and dated January 26, 2005, regarding not granting the Company standing of the primary intervenient in the case (k. 523 vol. III).

The referenced provision allows for higher court reviews of the lower court decisions that were not eligible for appeal but influenced the outcome of a case; in the Appellate Court opinion it does not refer to any motion filed by a party at any stage of the appellate procedure but only to motions filed as part of the appellate documents, in this case, the appeal. That's' because the Appellant specifies the scope of the appeal there. The Appellant filed such motion eight months after filing the appeal. Therefore, the motion is late.

And finally, it has to be stressed that the Appellate Court admitted evidence in response to motions of the primary and the secondary intervenient (k.3 k.3187 vol. X I V . In the presented evidence, i.e. the finding of the Regional Court in Warsaw dated March 1, 2006, File No. VII Co 1061/05, confirming enforceability in Poland of the Tribunal judgment in regard to the cost of the procedure dated November 26, 2004 (k. 3044 vol. XVI), issued under the same arbitration clause and protocol of the hearing preceding issuance of the decision confirming the enforceability (k. 3045 vol. XVI), the petitioner showed that in other proceedings the secondary intervenient does not question the Tribunal's jurisdiction for ruling in regard to intervenient's rights under the same arbitration clause. By submitting a copy of the petition in case  XXGC 594/05, dated July 4, 2005, (k. 2666 vol XIV) the petitioner proved that the secondary intervenient admits (by filing a case for supplementing the value of the capital) that it did not effectively acquire shares of the initial PTC capital from Elektrim S.A..

And as the secondary intervenient proved through copies of grounds for the Regional Court decisions issued on: 6.6.2005 (File No. XVI GC 1984/04), 5.17.2005 (File No. XVI GCo 94 /05), 07.22. 2005 (File No. XVI GC 1984/04) i 24.02. 2005 r. File No. WA.XIX.NS-REJ. KRS /4404/05/307),  the Arbitration Tribunal decision has legal consequences as to the intervenient's rights, even though in clause four of the judgment, the Tribunal found it had no jurisdiction over Telco (k. 2435- 2446). Also, the intervenient argued that the petitioner, by referring to clause one of the Tribunal judgment, has effected disposition of  PTC shares – to prove that the judgment violated the petitioner's property rights.

The briefs presenting evidence were considered to the extent indicated; the presented evidence pertained to events that occurred after the Regional Court decision had been issued, when nothing prevented the participants to the proceedings from supporting their positions with that evidence during the appeal proceedings.  Their positions did not change also at the appellate proceedings stage – the Appellate Court evaluated the participant positions, and did not find any grounds for granting the appeal.

Therefore, pursuant to Art. 385 of the Code of Civil Procedure, the Court found as above. The cost of the appeal proceedings were decided under Art.  98 of the Code of Civil Procedure, and § 11 clause 6) in reference to §13 section 1 clause 2) of the Minister of Justice directive dated September 28, 2002 regarding attorney fees and cost of unpaid legal help provided ex officio covered by the National Treasury (Journal of Laws, No. 97 /2003, item  97 with amendments.).


[Seal] THE APPELLATE COURT IN WARSAW *6*

[Stamp]
The original bears appropriate signatures
This is a true and correct copy
Clerk of the Court
[illegible signature]

[blank page in original]

## TRANSLATOR'S CERTIFICATE

I, _Lucas H. Meoz_ declare under penalty of perjury that I am thoroughly competent in both Polish and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from Polish to English, on this ........ day of ... April, 2002.

Translated document:

Warsaw Appellate Court Decision

Sygn. akt I ACa 893 /05

P O S T A N O W I E N I E

Dnia 29 marca 2006 r.

Sąd Apelacyjny w Warszawie I Wydział Cywilny
w następującym składzie:
Przewodniczący - Sędzia SA Maria Rodatus
Sędziowie SA Barbara Trębska, Anna Kozłowska
Protokolant ref. staż. Ewelina Walczuk

po rozpoznaniu na rozprawie w dniu 29 marca 2006 r.
przy udziale Prokuratora Prokuratury Okręgowej w Warszawie
Sylwii Morawskiej
sprawy z wniosku Elektrim SA z siedzibą w Warszawie
z udziałem T- Mobile Deutschland GmbH z siedzibą w Bonn ( Niemcy )
i interwenienta ubocznego Elektrim Telekomunikacja spółki z o.o.
w Warszawie
o uznanie za skuteczny na obszarze Polski wyroku sądu zagranicznego
na skutek apelacji interwenienta ubocznego i prokuratora
od postanowienia Sądu Okręgowego w Warszawie
z dnia 2 lutego 2005 r. sygn. akt VII Co 1709/04

postanawia :
I. oddalić obie apelacje,
II. zasądzić od Elektrim Telekomunikacja spółki z o.o. z siedzibą
w Warszawie na rzecz Elektrim SA z siedzibą w Warszawie i T- Mobile
Deutschland GmbH z siedzibą w Bonn (Niemcy) po 180 (sto osiemdziesiąt)
zł tytułem zwrotu kosztów zastępstwa procesowego w postępowaniu
apelacyjnym.

2

Sygn. akt I ACa 893/05

U Z A S A D N I E N I E

We wniosku z dnia 17 grudnia 2004 r. wnioskodawca Elektrim S.A. z siedzibą w Warszawie , wskazując jako uczestnika postępowania T- Mobile Deutschland GmbH z siedzibą w Bonn wnosił o uznanie za skuteczny na obszarze Polski orzeczenia Trybunału Arbitrażowego - Internationales Schiedsgericht der Wirtschaftskammer Osterreich w Wiedniu z dnia 26 listopada 2004 r., sygn akt SCH- 4750 . Orzeczenie to zwane drugim częściowym orzeczeniem arbitrażowym zostało wydane w sporze pomiędzy uczestnikiem postępowania , dawniej De Te Mobil Deutsche Telekom Mobilnet GmbH jako powodem ( zwanym DT ), a Elektrim S.A. z siedzibą w Warszawie i Elektrim Telekomunikacja spółką z ograniczoną odpowiedzialnością z siedzibą w Warszawie ( zwaną Telco) , pozwanymi w tym postępowaniu .

Drugie częściowe orzeczenie Trybunału miało treść :

1. zbycie udziałów na rzecz Telco jest bezskuteczne i udziały w PTC, które były jego przedmiotem pozostawały własnością Elektrimu w każdym właściwym czasie;

2. zbycie udziałów w PTC przez Elektrim nie stanowi jako takie Istotnego Naruszenia (Material Default) w rozumieniu Art. 16.1 Umowy Wspólników (Shareholders Agreement), ale stanowiłoby takie Istotne Naruszenie, gdyby Elektrim nie odzyskał udziałów od Telco w przeciągu najdalej dwóch miesięcy od doręczenia wyroku ,

3. żądanie DT odnośnie stwierdzenia Stanu Istotnego Pogorszenia (Economic Impairment) zostaje oddalone;

4. Trybunał Arbitrażowy nie ma jurysdykcji nad Telco i roszczenia DT względem Telco nie mogą być przedmiotem tego arbitrażu;

5. roszczenie DT o odszkodowanie pieniężne zostało wycofane;

6. kwestia kosztów arbitrażu w odniesieniu do niniejszego postępowania zostaje zastrzeżona do rozstrzygnięcia w odrębnym orzeczeniu;

7. wszelkie inne roszczenia lub roszczenia wzajemne stron zostają oddalone.

Żądanie wniosku , uznania skuteczności ,dotyczyło tylko części orzeczenia Trybunału to jest punktów pierwszego , drugiego i trzeciego tego orzeczenia .

Do wniosku wnioskodawca dołączył to orzeczenie z tłumaczeniem przysięgłym i umowę spółki zawierającą w art. 21 klauzulę arbitrażową i wskazywał ,że nie zachodzi żadna z negatywnych przesłanek uznania o jakich stanowi Konwencja o uznaniu i wykonywaniu zagranicznych orzeczeń arbitrażowych sporządzona w Nowym Jorku dnia 10 czerwca 1958 r. ( Dz. U. Nr 9/1962 r. ,poz. 41 ) , na podstawie której przepisów orzeczenie winno być uznane .

Udział w postępowaniu przed Sądem Okręgowym zgłosiła spółka Elektrim Telekomunikacja sp. z o.o. z siedzibą w Warszawie składając wniosek o dopuszczenie do udziału w postępowaniu w charakterze strony ( uczestnika ) , a po odrzuceniu tego wniosku przez Sąd Okręgowy postanowieniem z dnia 12 stycznia 2005 r. ( k. 376 tom II ), w dniu 25 stycznia 2005 r. złożyła interwencję uboczną ( k.389 tom III ) , a także w tym samym dniu interwencje główną ( k. 434 tom III ) .

Sąd Okręgowy, po przeprowadzeniu w dniu 26 stycznia 2005 r. rozprawy , w toku której wnioskodawca zgłosił opozycję , postanowieniem z dnia 26 stycznia 2005 r. postanowił nie dopuścić spółki Elektrim Telekomunikacja do udziału w sprawie w charakterze interwenienta głównego i ubocznego (k. 523 tom III ) .

O istocie sprawy Sąd Okręgowy rozstrzygnął w dniu 2 lutego 2005 r. uwzględniając wniosek w całości ( k. 543 tom III ) .

W uzasadnieniu tego rozstrzygnięcia Sąd Okręgowy opisał czynności związane z wnioskami Elektrim Telekomunikacja sp. z o.o. oraz spółki Carcom Warszawa sp. z o.o. również podejmującej działania zmierzające do uzyskania

4

statusu     interwenienta ubocznego , w tym czynności podjęte w związku z wnioskiem tej Spółki o wyłączenie sędziego Beaty Ładak , a odnośnie meritum sprawy dokonał następujących ustaleń i ocen prawnych:

Elektrim S.A. i T – Mobile Deutschland GmbH ( dawniej DeTe Mobil Deutsche Telekom Mobilnet Gmbh) byli wspólnikami spółki z o.o. działającej pod firmą „ Polska Telefonia Cyfrowa" ( zwana PTC). Zgodnie z art. 21 ust .2 umowy spółki z dnia 21 grudnia 1995 r. „ w przypadku powstania jakichkolwiek sporów powstałych na podstawie lub w związku z niniejszą umową spór taki zostanie rozwiązany , w miarę możliwości drogą negocjacji pomiędzy wspólnikami . W przypadku gdy negocjacje takie zakończą się niepowodzeniem oraz o ile wspólnicy nie postanowią inaczej wszelkie spory pomiędzy wspólnikami oraz pomiędzy nimi a Spółką powstałe na podstawie niniejszej umowy będą ostatecznie i wiążąco rozstrzygane przez Sąd Arbitrażowy przy Federalnej Izbie Handlowo – Przemysłowej w Wiedniu , w składzie trzech arbitrów , z zastosowaniem Regulaminu tego Sądu ... " .

W dniu 7 grudnia 2000 r. Trybunałowi Arbitrażowemu przedstawiony został przez T- Mobile Deutschland GmbH ( DT ) do rozstrzygnięcia spór z udziałem Elektrim S.A. i Elektrim Telekomunikacja Sp. z o.o. związany ze zbyciem przez Elektrim S.A. spółce Elektrim Telekomunikacja ( Telco ) udziałów w PTC ( w istocie chodziło o wniesienie tych udziałów jako aportu na pokrycie podwyższonego kapitału zakładowego Telco) . DT domagał się m. in. rozstrzygnięcia czy własność udziałów została skutecznie przeniesiona przez Elektrim S.A. na Telco oraz odszkodowania od Telco .

W wyniku rozpoznania sprawy Trybunał w dniu 26 listopada 2004 r. wydał orzeczenie o treści przytoczonej na wstępie i orzeczenie to jest wiążące i wykonalne na terenie Republiki Austrii .

Sąd Okręgowy wskazał ,że wnioskodawca złożył w postępowaniu wymagane art. IV Konwencji dokumenty .

Uczestnik postępowania i prokurator nie zgłosili żadnych zarzutów ani nie przedstawili dowodów zmierzających do wykazania niedopuszczalności uznania orzeczenia z przyczyn wskazanych w art. V Konwencji i przyłączyli się do wniosku .

Działający w charakterze interwenienta , do czasu uprawomocnienia się postanowienia o odmowie dopuszczenia , Elektrim Telekomunikacja sp. z o.o. wnosiła o oddalenie wniosku . Jej zdaniem rozstrzygnięcie arbitrażowe składa się z siedmiu części , uznanie częściowe deformuje je , narusza ono zasady porządku publicznego w szczególności art. 8 Konstytucji , prawo do sądu i prawo własności udziałów .

Działanie Sądu z urzędu podjęte na podstawie art. V ust. 2 pkt a) i b) Konwencji nie doprowadziły do stwierdzenia ,że powinna nastąpić odmowa uznania . Spór , o który chodziło w sprawie toczonej przed Trybunałem , mógł być według prawa polskiego rozstrzygany przez sąd polubowny , przepis art. 697 §1 k.p.c. spod rozstrzygnięcia sądu polubownego wyłącza bowiem tylko spory o alimenty i ze stosunku pracy . Przedstawione do uznania orzeczenie nie pozostaje też w sprzeczności z porządkiem publicznym obowiązującym w Polsce . Funkcja klauzuli porządku publicznego polega na ochronie krajowego porządku prawnego przed przypadkami jego naruszenia przez nadanie skuteczności i wykonalności orzeczeniom nie odpowiadającym fundamentalnym standardom Rzeczypospolitej Polskiej . Tej cechy objęte wnioskiem orzeczenie nie miało.

Sąd Okręgowy wskazał ,że do czasu rozstrzygnięcia przez sąd arbitrażowy czy doszło skutecznie do zbycia udziałów , w postępowaniu na prawach strony uczestniczył nabywca , Telco . Konsekwencją stwierdzenia bezskuteczności zbycia było zaś stwierdzenie ,że sąd ten nie ma kognicji w sprawie o odszkodowanie od Telco albowiem Telco nie było i nie jest wspólnikiem spółki i nie obejmuje jej klauzula arbitrażowa . Takie orzeczenie nie oznaczało , zdaniem Sądu Okręgowego, wewnętrznej sprzeczności orzeczenia lecz

6

orzeczenie o braku kognicji w sprawie o odszkodowanie jest logiczną konsekwencją ,że Telco w żadnym czasie nie było właścicielem udziałów.

Ponadto , zdaniem Sądu Okręgowego , nie pozostawało również w sprzeczności z postanowieniami Konwencji uznanie tylko niektórych rozstrzygnięć zawartych w orzeczeniu Trybunału ; jest to możliwe jeżeli stanowią one spójną całość i nie wypaczają jego treści . Pozostałe rozstrzygnięcia zawarte w orzeczeniu odnosiły się do innych podmiotów, dotyczyły kwestii proceduralnych lub nie podlegały uznaniu . Powyższe przeto zadecydowało o uwzględnieniu wniosku.

Postanowienie Sądu Okręgowego zostało zaskarżone apelacjami złożonymi przez Prokuratora Okręgowego oraz przez Carcom Warszawa sp. z o.o. ( k. 1628 tom VIII ) i przez Elektrim Telekomunikację sp. z o.o. działającą w charakterze : uczestnika ( k. 981 tom V i k. 1259 tom VII ) , interwenienta głównego ( k. 584 tom III ) i interwenienta ubocznego ( k. 959 tom V ) . Apelacje wywiedzione przez Elektrim Telekomunikacja w charakterze uczestnika i interwenienta głównego zostały odrzucone postanowieniami Sądu Okręgowego z dnia 17 maja 2005 r. (k.1135 tom VI ) i Sądu Apelacyjnego z dnia 29 marca 2006 r. ( k. tom ) . Apelacja Carcom Warszawa sp. z o.o. została odrzucona postanowieniem Sądu Apelacyjnego z dnia 20 grudnia 2005 r. ( k. 1849 tom X ) .

W apelacji wniesionej przez Elektrim Telekomunikacja sp. z o.o. jako interwenienta ubocznego ( k. 959 tom V ) skarżąca Spółka domagając się zmiany zaskarżonego postanowienia i oddalenia wniosku lub uchylenia zaskarżonego postanowienia i przekazania sprawy do ponownego rozpoznania Sądowi Okręgowemu zarzuciła :

1)    naruszenie art. 233 §1 k.p.c. w związku z art. 316 § 1 kp.c. przez zaniechanie wszechstronnego rozważenia materiału dowodowego i , będące tego skutkiem , orzekanie w oparciu o błędnie ustaloną treść wyroku Trybunału Arbitrażowego ,

7

2) naruszenie art. 379 pkt 5 k.p.c. przez pozbawienie jej  możności obrony  swoich praw co skutkuje nieważnością  postępowania ,

3) naruszenie art. 72 § 2 i art. 73 k.p.c. przez błędne uznanie ,że w postępowaniu  o uznanie wyroku  nie zachodzi współuczestnictwo konieczne i jednolite  w stosunku do skarżącej  w sytuacji  gdy była pozwaną w postępowaniu przed sądem polubownym  ,

4) naruszenie art. 1147 § 1 k.p.c. przez pozbawienie jej możności uczestniczenia i obrony  swoich praw  w  postępowaniu  o uznanie wyroku , mimo  że  była pozwaną w postępowaniu przed sądem polubownym i złożyła wniosek  o dopuszczenie  do udziału  w postępowaniu w charakterze uczestnika ,

5) naruszenie art. 51 k.p.c. przez nie wstrzymanie  się od udziału w sprawie  przez sędziego  ,wobec  którego zachodziła podstawa do wstrzymania się od udziału w sprawie ,

6) naruszenie art. 224 § 1k.p.c.  przez zamknięcie rozprawy w sytuacji gdy  a) wszystkie  postanowienia odmawiające     skarżącej uczestnictwa w postępowaniu były zaskarżone  i w konsekwencji nie nastąpiło ostateczne ukształtowanie stron postępowania , b) w trakcie rozprawy , na skutek  wniosku o wyłączenie sędziego , zmienił się skład orzekający  i nowy sędzia miał co najwyżej 40 minut na zapoznanie się z aktami sprawy ,

7) naruszenie art. 316 §1 k.p.c. przez zaniechanie wszechstronnego rozważenia  materiału dowodowego  przez cały skład sądu , w tym nowego  sędziego  i  wydanie  postanowienia  kończącego postępowanie  w sytuacji gdy  z uwagi na  wskazane uchybienia sprawa nie nadawała się do  stanowczego rozstrzygnięcia,

8) naruszenie art. III konwencji przez uznanie ,że  wyrok może być uznany w części  z pominięciem części czwartej  ograniczającej

8

zakres podmiotowy rozstrzygnięcia co zdeformowało jego znaczenie prawne ,

9) naruszenie art. V ust. 2 lit. b) Konwencji przez uznanie ,że wyrok nie narusza podstawowych zasad porządku prawnego RP ,

10) naruszenie art. V ust. 1 lit. c) Konwencji przez uznanie ,że wyrok nie wykracza poza zakres klauzuli arbitrażowej i ,że nie zawiera rozstrzygnięć przekraczających klauzulę arbitrażową .

W apelacji Prokuratora Prokuratury Okręgowej ( k. 616 tom IV ) zarzucono :

1. naruszenie przepisów prawa procesowego w szczególności art. 1147 §1 k.p.c. przez pozbawienie Elektrim Telekomunikacja sp. z o.o. uczestnictwa i obrony jej praw w postępowaniu o uznaniu wyroku Trybunału Arbitrażowego w Wiedniu ,

2. naruszenie art. V ust. 1 lit. d) Konwencji przez wydanie orzeczenia uwzględniającego wniosek bez zapoznania się i analizy prawa, wedle którego orzeczenie Trybunału Arbitrażowego zostało wydane .

Zdaniem skarżącego, w przypadku ustalenia ,że orzeczenie sądu zagranicznego zostało oparte na prawie obcym może być ono uznane w Polsce tylko wówczas, gdy prawo obce nie różni się w istotny sposób od prawa polskiego .

Zarzucając powyższe skarżący wnosił o uchylenie zaskarżonego postanowienia i przekazanie sprawy Sądowi I instancji do ponownego rozpoznania .

Sąd Apelacyjny zważył :

Apelacje są nieuzasadnione .

W odniesieniu do apelacji Elektrim Telekomunikacja spółki z o. o. - jej zarzuty dają się wyodrębnić w dwie grupy , pierwsza dotyczy nieprawidłowości w postępowaniu przed Sądem I instancji prowadzących , w

ocenie skarżącego ,do nieważności postępowania , druga grupa związana jest z naruszeniem przepisów Konwencji.

W związku z zarzutami grupy pierwszej:

nie budzi wątpliwości ,że skarżąca w postępowaniu uzyskała status interwenienta ubocznego. Sąd Apelacyjny postanowieniem z dnia 11 maja 2005 r. ( k. 1120 tom VI ) uchylił bowiem postanowienie Sądu Okręgowego z dnia 26 stycznia 2005 ( k. 523 tom III ) w części odmawiającej dopuszczenia skarżącej do udziału w sprawie w charakterze interwenienta ubocznego wskazując ,że zażalenie złożone przez Spółkę jest w istocie zażaleniem na niedopuszczenie interwenienta do udziału w sprawie wskutek uwzględnienia opozycji ( art. 394 §1 pkt . 3 k.p.c. ). To niedopuszczenie zostało uchylone jako nieprawidłowe co oznacza ,że skarżąca ,ze skutkiem od dnia złożenia pisma zawierającego interwencję, uzyskała status interwenienta ubocznego (samoistnego ) . Wyrażone w tym postanowieniu stanowisko Sądu Apelacyjnego wiąże również skład orzekający w sprawie .

Można dodać ,że nie było sporu w sprawie co do tego ,że postępowanie o uznanie orzeczeń sądów zagranicznych nie ma charakteru postępowania nieprocesowego , że jest to postępowanie szczególne , do którego należy , w braku odmiennych uregulowań ,ٌstosować przepisy o procesie . Przepisy k.p.c nie regulują kręgu osób , które mogą czy powinny uczestniczyć w takim postępowaniu , nie określają roli procesowej tych osób , nie wskazują przyczyn usprawiedliwiających udział w takim postępowaniu . Powołany w apelacji przepis art. 1147 k.p.c. dotyczy legitymacji do wszczęcia postępowania delibacyjnego a nie uczestnictwa w takim postępowaniu. Zasadnie można jednak przyjąć ,że i o uczestnictwie w takim postępowaniu decyduje interes prawny .

Odpowiednie stosowanie przepisów o procesie oznacza ,że niektóre instytucje nie znajdą zastosowania , inne - z pewnymi modyfikacjami , kolejne zaś – wprost . W ocenie Sądu Apelacyjnego orzekającego w sprawie

10

nie ma przeszkód , aby w postępowaniu delibacyjnym , które, jak wskazano, niewątpliwie nie jest postępowaniem nieprocesowym , przyjąć dopuszczalność interwencji ubocznej. Interwencja jest traktowana jako środek ochrony praw podmiotowych realizowany przed sądem   .Jeżeli zatem   nie doszło w postępowaniu  delibacyjnym do udziału  w charakterze uczestnika ( strony ) podmiotu mającego interes prawny w takim uczestnictwie ,może on podjąć próbę ochrony swych praw przez zgłoszenie interwencji ubocznej .

Sąd Apelacyjny  nie podziela poglądu skarżącej ,że  do postępowania delibacyjnego  mają zastosowania  przepisy art. 72  i art.  73 k.p.c.  o współuczestnictwie koniecznym , jednolitym . Przyjęcie takiej dopuszczalności oznaczałoby możliwość takiego  współuczestnictwa  nie tylko po stronie pozwanej  czyli uczestników postępowania  ale również po stronie podmiotów wszczynających postępowanie. Skoro jednak w takim postępowaniu jak niniejsze , legitymacja , nie tylko czynna ,  jest  wyznaczana przez  interes prawny ( a nie przez więź  w postaci łączącego strony  stosunku prawnego lub prawa )  , a więc  udział  oznaczonych podmiotów w  postępowaniu  związany jest z tym czy mają interes prawny  w uzyskaniu oznaczonego rozstrzygnięcia - to jasne staje się ,że konstrukcja z art. 72 i 73 k.p.c. nie znajdzie zastosowania , nawet odpowiednio. .   W takiej bowiem sytuacji nie można przyjąć ,że legitymacja przysługuje  dwom  ( lub więcej podmiotom ) tylko łącznie.

Skarżący złożył w dniu   25 stycznia 2005 r.   pismo zawierające interwencję uboczną ( k. 389 tom III), w której  , sprzeciwiając się wnioskowi , przedstawił swoje  stanowisko  ( nie odbiegające od zarzutów apelacji ) . Stanowisko to  zostało podtrzymane w toku rozprawy w dniu 26 stycznia 2005 r.- i stan taki istniał w chwili wyrokowania przez  Sąd Okręgowy .

Z art. 78  §  3 k.p.c.   wynika,  że osoba trzecia   uzyskuje status interwenienta  ubocznego  już z chwilą  wniesienia do sądu pisma .  Zatem skarżący  status taki uzyskał w dniu 25 stycznia 2005 r. i  uwzględniając  treść

·11

postanowienia Sądu Apelacyjnego z dnia 11 maja 2005 r. , status ten zachował
do zakończenia postępowania w II instancji .

Skarżąca ma rację ,że status strony i status interwenienta ubocznego
różnią się , inne są bowiem ich uprawnienia procesowe , uprawnienia
procesowe strony są niewątpliwie szersze . Dla stwierdzenia jednak czy
skarżąca została pozbawiona możności obrony swoich praw ( przez
nieuzyskanie statusu strony a uzyskanie statusu interwenienta ubocznego
samoistnego ) niezbędne byłoby stwierdzenie ,że w innym niż osiągnięty
przez nią status dokonałaby innych czynności procesowych , czynności lepiej
chroniących jej interes prawny . W ocenie Sądu Apelacyjnego skarżąca nie
mogłaby podjąć , bardziej niż dokonane , skutecznych czynności procesowych.
Skarżąca wypowiadała się w pismach procesowych i na rozprawie , wniosła
środek odwoławczy — i wszystkich tych czynności procesowych dokonałby
także jako uczestnik . Dodać też należy ,że treść apelacji wniesionej przez
skarżącą jako uczestnika postępowania ( k. 981 tom V i k. 1259 tom VII ) ma
treść tożsamą z treścią apelacji wniesionej w charakterze interwenienta .
Różnica w statusie miała charakter formalny skoro materialnie skarżąca
dokonała wszystkich czynności procesowych, możliwych również dla strony ,
według stanu sprawy .

Zatem nie negując ,że statusem właściwym dla skarżącej w niniejszym
postępowaniu był status uczestnika postępowania, ponieważ objęty wnioskiem
wyrok dotyczył jej praw majątkowych , nie można jednak przyjąć ,że
działając w charakterze interwenienta ubocznego samoistnego skarżąca została
pozbawiona możności obrony jej praw ze skutkiem nieważności postępowania.

W odniesieniu do udziału w sprawie sędziego Beaty Ładak , której
dotyczył wniosek o wyłączenie sędziego : wniosek był oparty na podstawie z
art. 49 k.p.c. . We wniosku zawarto twierdzenie ,że między sędzią , a
wnioskodawcą zachodzi tego rodzaju stosunek ,że mógłby wywołać wątpliwości
co do bezstronności sędziego ( akta sprawy sygn. I Co 95 /05 ). Art. 51 k.p.c.

nakładający na sędziego obowiązek wstrzymania się od rozpoznania sprawy odnosi się do sytuacji gdy sam sędzia zgłasza żądanie wyłączenia ze względu na łączący go z jedną ze stron stosunek osobisty mogący wywołać wątpliwości co do jego bezstronności lub ze względu na wystąpienie jednej z przesłanek z art. 48 k.p.c. to jest przesłanek wyłączenia sędziego z mocy ustawy . W sytuacji przeto kiedy to strona uważa ,że istnieje podstawa do wyłączenia sędziego i składa właściwy wniosek , obowiązek sędziego wstrzymania się od rozpoznania sprawy aktualizuje się dopiero z chwilą powzięcia wiadomości o złożeniu wniosku .

Z protokołu rozprawy z dnia 26 stycznia 2005 r. wynika ,że rozprawa rozpoczęła się o godzinie 13 .45 ,zaś wniosek o wyłączenie sędziego Beaty Ładak został złożony w biurze podawczym w tym dniu o godz. 12 .00 o czym sąd został powiadomiony nie w chwili rozpoczęcia rozprawy lecz dopiero w jej toku , już po ogłoszeniu postanowienia o niedopuszczeniu do udziału w sprawie Elektrim Telekomunikacja w charakterze interwenienta ubocznego i interwenienta głównego ( k.519 ) . Z protokołu tej rozprawy wynika nadto ,że po powzięciu wiadomości o złożeniu wniosku o wyłączenie , sędzia Beata Ładak wstrzymała się od udziału w sprawie - nastąpiła bowiem zmiana składu orzekającego . Niesłusznie zatem skarżąca zarzuca naruszenie art. 51 k.p.c.

Ze zmiany składu orzekającego skarżąca wywodzi twierdzenie ,że nowy skład nie był należycie przygotowany do rozstrzygnięcia sprawy . Nienależyte przygotowanie składu orzekającego samo w sobie nie stanowi wystarczającego i skutecznego zarzutu apelacyjnego . Może mieć znaczenie jeżeli skutkiem tego będzie wadliwe orzeczenie – czego ostatecznie w sprawie niniejszej Sąd Apelacyjny nie stwierdził .

Za nieskuteczny należy też uznać zarzut naruszenia art. 224 k.p.c i art. 316 k.p.c. . Sąd Okręgowy zamknął rozprawę po wysłuchaniu głosów stron , zatem zgodnie z art. 224 k.p.c. , nieprawomocność zaś postanowienia o niedopuszczeniu skarżącej do udziału w sprawie w charakterze interwenienta

13

ubocznego , z uwagi na uregulowanie zawarte w art. 78 §3 k.p.c . i z w art. 76 k.p.c. , nie stała na przeszkodzie zamknięciu rozprawy (por. postanowienie SN z dnia 15 listopada 2000 r. IV CKN 1328/00 , OSNC z.5/2001 r. , poz.73 ) ; postanowienie , mocą którego odrzucono wniosek skarżącej o dopuszczenie do udziału w sprawie w charakterze uczestnika było niezaskarżalne . Nie można zatem zasadnie twierdzić ,że zamknięcie rozprawy nastąpiło przed ostatecznym ukształtowaniem kręgu podmiotów uczestniczących w sprawie , bez względu na to jakie, zdaniem skarżącej, miałoby to mieć znaczenie i skutek .

W odniesieniu do zarzutów związanych z naruszeniem przez Sąd Okręgowy , zdaniem skarżącego , Konwencji o uznawaniu i wykonywaniu zagranicznych orzeczeń arbitrażowych sporządzonej w Nowym Jorku dnia 10 czerwca 1958 r. ( Dz. U. Nr 9/62 r. ,poz. 41 ) ,której przepisy były podstawą rozstrzygania o wniosku - w ocenie Sądu Apelacyjnego nie doszło do naruszenia przepisów Konwencji .

Konwencja nie zabrania uznania części orzeczenia sądu polubownego. Z art. III nie wynika obowiązek uznania całego orzeczenia , zakazu takiego nie można wyprowadzić z uregulowania zawartego w art. V ust 1 pkt c) . Ten ostatni przepis dotyczy nie zagadnienia dopuszczalności domagania się uznania części orzeczenia lecz wskazuje sposób postępowania w sytuacji gdy musi nastąpić odmowa uznania i wykonania, przy czym konieczność odmowy dotyczy części orzeczenia . Przepis ten wskazuje ,że na gruncie Konwencji częściowe uznanie jest oczywiście możliwe .

Strona w granicach swego interesu prawnego może domagać się uznania i wykonania części orzeczenia jeżeli podzielenie orzeczenia może nastąpić bez szkody dla przedmiotu rozstrzygnięcia.

Jeżeli rozstrzygnięcie dotyczy świadczenia niepodzielnego domaganie się uznania i wykonania części orzeczenia ( trudne zresztą procesowo do wyobrażenia ) przedstawiać się będzie jako niedopuszczalne .Przy świadczeniu podzielnym od strony zależy czy zechce domagać się uznania części czy

14

całości. Podobnie   będzie wówczas   gdy   orzeczenie rozstrzyga o kilku roszczeniach , które nie przedstawiają się jako niepodzielna całość .

Wyrok   Trybunału   Arbitrażowego   nie zawiera rozstrzygnięcia o świadczeniu niepodzielnym , przedmiotowo jest podzielny , nie było zatem przeszkód , aby wnioskodawca wniosek ograniczył do żądania uznania   trzech pierwszych punktów tego wyroku .  W odniesieniu do punktu czwartego - w orzecznictwie i literaturze przedmiotu przyjmuje się , że uznaniu nie podlegają orzeczenia niemerytoryczne , o charakterze formalnym , taki zaś charakter nosi punkt czwarty , treściowo odpowiada on bowiem postanowieniu o odrzuceniu pozwu z powodu niedopuszczalności drogi sądowej  (' por. K. Piasecki „Skuteczność i wykonalność w Polsce   zagranicznych cywilnych orzeczeń sądowych ”, Wyd. Prawnicze , W –wa 1990 r. , str. 35 ) .

Wyrok nie jest   sprzeczny wewnętrznie . Sąd Apelacyjny nie podziela stanowiska skarżącego ,że   pomiędzy   punktami pierwszym i czwartym wyroku (nie objętym   wnioskiem ),orzekającym   o braku jurysdykcji   nad Telco , zachodzi sprzeczność   , i nie podziela stanowiska skarżącej ,że   pominięcie punktu czwartego wypacza sens wyroku .Nie sposób przy tym w tym miejscu nie zauważyć ,że   ze stanowiska   skarżącej   wyrażanego   w pismach procesowych   wynika   jednoznacznie ,że skarżąca w pełni   akceptuje rozstrzygnięcie zawarte w   punkcie   czwartym   , o braku   jurysdykcji Trybunału w odniesieniu do   siebie , i z brzmienia tego punktu czyni   oręż w walce o   wynik sprawy .

Stwierdzenie braku   jurysdykcji   jest wynikiem ,logicznym następstwem, merytorycznego zbadania przez Trybunał   ważności ( skuteczności ) zbycia przez Elektrim S.A. udziałów w PTC   na rzecz skarżącej . Trybunał   w orzeczeniu częściowym   z dnia 30 maja 2002 r. ( k. 2574-2616 tom XIV ) wskazywał ,że zapisy na sąd polubowny zawarte w umowie spółki   ( i w porozumieniu wspólników   ) mogą być wiążące wobec Telco   jedynie w roli wspólnika. Ta rola , jak stwierdził , jest kwestionowana   gdyż kwestionowana

15

jest ważność samego przeniesienia udziałów - i podjął decyzję ,że orzeczenie w sprawie właściwości zostanie    wydane    wraz z orzeczeniem w kwestii merytorycznej (k.2616). Ta kwestia merytoryczna to żądanie powoda , DT , ustalenia nieważności przeniesienia    przez Elektrim S.A. na rzecz Telco udziałów w PTC. Dodać należy ,że z punktu 64 tego orzeczenia wynika ,że Telco wnioskowała, aby Trybunał wydał swoje orzeczenie na temat właściwości jednocześnie z rozstrzygnięciem kwestii merytorycznych (k. 2615 ). Rozstrzygając o sprawie w    drugim częściowym orzeczeniu  , z dnia 26 listopada 2004 r. , w punkcie 265 tego  rozstrzygnięcia ( k. 292 tom II ) Trybunał wskazał , że „zbycie na rzecz Telco  nie było skuteczne z uwagi na brak zgody Rady Nadzorczej PTC. Oznacza to ,że Telco nie można uznać za wspólnika w żadnym istotnym czasie . Trybunał Arbitrażowy ustala swoją jurysdykcję na podstawie klauzul arbitrażowych określonych w art. 21 umowy wspólników i umowy spółki . Ponieważ zbycie na rzecz Telco było bezskuteczne Telco nie mogła w sposób ważny przejąć zobowiązań Elekrimu określonych w umowie wspólników . Ponadto nigdy nie przejęła zobowiązań Carcom i Autoinvest w ramach zobowiązań wspólników . W związku z powyższym Trybunał Arbitrażowy orzeka ,że nie ma jurysdykcji nad Telco " .

Ważne zbycie udziałów czyniło skarżącą wspólnikiem PTC i wwiązywało ją w umowę spółki PTC , z zamieszczonym w tej umowie , w art. 21, zapisem na sąd polubowny . Ustalenie nieważności (bezskuteczności ) umowy zbycia udziałów powoduje , że skarżąca ( zwana Telco ) nie ma statusu wspólnika PTC . Nie będąc wspólnikiem PTC , nie jest objęta zapisem na sąd polubowny zawartym w umowie tej spółki . Powoduje to ,że nie podlega jurysdykcji tego sądu ,zatem sąd ten nie może orzekać o kierowanych przeciwko niej roszczeniach .

Istotniejsze jednak - niż stwierdzenie, oczywistego wszak , braku sprzeczności wyroku - jest zagadnienie , czy rozstrzygnięcie  zawarte w punkcie 1 ) wyroku ,że zbycie udziałów w PTC  przez Elektrim  S.A. na

rzecz skarżącej ( zwanej Telco ) było bezskuteczne , wiąże również skarżącą ( skoro nie podlega jurysdykcji sądu polubownego ) , czy też ten punkt wyroku odnosi skutek prawny tylko do Elektrim S.A. i DT czyli wspólników PTC materialnie związanych zapisem na sąd polubowny . Zdaniem skarżącej związanie tym punktem rozstrzygnięcia obejmuje tylko Elektrim S.A. i DT ( wobec stwierdzenia braku jurysdykcji sądu wobec niej ) , a zatem uznanie wyroku rozszerzałoby , w sposób niedopuszczalny, jego skutki również na nią . Powyższe pozostaje w związku z zarzutem apelacji ,że orzeczenie Trybunału w zakresie punktu pierwszego wykracza poza zakres klauzuli arbitrażowej i przekracza tę klauzulę ; taki stan rzeczy nakazywałby , w myśl art. V Konwencji , odmowę uznania .

Zdaniem Sądu Apelacyjnego nie mamy do czynienia z orzeczeniem wykraczającym poza klauzulę arbitrażową i rozstrzygnięcie Trybunału Arbitrażowego zawarte w punkcie pierwszym wiąże skarżącą Spółkę .

Skarżąca w postępowanie przed Trybunałem Arbitrażowym twierdziła, że w wyniku umowy zawartej z Elektrim S.A. jest wspólnikiem PTC . Art. 21 umowy spółki PTC stanowił ,że ,, wszelkie spory pomiędzy wspólnikami oraz pomiędzy nimi a spółką powstałe na podstawie niniejszej umowy albo w związku z innymi umowami odnoszącymi się do niniejszej umowy będą ostatecznie i wiążąco rozstrzygane przez Sąd Arbitrażowy przy Federalnej Izbie Handlowo – Przemysłowej w Wiedniu ...” ( k. 97 tom I ) . Jako wspólnik była więc związana tymże zapisem na sąd polubowny . W chwili wszczęcia postępowania ,przed badaniem merytorycznym żądania pozwu ustalenia nieważności zbycia udziałów, z punktu widzenia jurysdykcji arbitrażowej i legitymacji procesowej , Telco nie mogła być traktowana inaczej niż jako wspólnik PTC , co przesądzało o kompetencji arbitrażu. Sąd polubowny rozstrzygał zatem sprawę , która przedmiotowo i podmiotowo mieściła się w klauzuli arbitrażowej . Telco aktywnie uczestniczyła w postępowaniu przed sądem polubownym wnosząc nawet powództwo wzajemne a nadto , jak już

17

wyżej wskazano  wnioskowała , aby Trybunał wydał swoje orzeczenie na temat
właściwości  jednocześnie  z  rozstrzygnięciem kwestii  merytorycznych ( k.
2615 ). Oczekiwanie na orzeczenie merytoryczne ( a więc każde , pozytywne i
negatywne dla niej ) nie  zmierzało chyba do tego by, po okresie oczekiwania ,
móc stwierdzić, że  orzeczenie to nie jest dla  niej wiążące.

Orzeczenie,  po przeprowadzeniu  postępowania  dowodowego  ,  o
nieważności nabycia  udziałów ( bezskuteczności) - co w konsekwencji oznacza
stwierdzenie  braku  statusu  wspólnika - nie uchyla ze  skutkiem wstecznym
kompetencji Trybunału do orzekania w sprawie  . Odmienne wnioskowanie
nakazywałoby przyjęcie ,że brak kompetencji rozciąga  się wstecznie  na
możność wiążącego badania  ważności nabycia udziałów. Wnioskowanie takie
musi być uznane za wadliwe .

Podobne, jak się wydaje,  zagadnienie kompetencji  sądu  arbitrażowego
badającego swoją właściwość , do oceny ważności kontraktu ,w którym zawarty
jest zapis na sąd polubowny - w duchu  związania uczestników ( wszystkich )
postępowania  arbitrażowego  orzeczeniem o ważności tego     kontraktu -
rozstrzyga art. V ust. 3 Konwencji Europejskiej o międzynarodowym Arbitrażu
Handlowym  , sporządzonej w Genewie  dnia 21 kwietnia 1961 r. ( Dz. U. Nr
40/1964 r. , poz. 270 )  , której Polska jest stroną .

Art. V Konwencji nowojorskiej  wskazuje wyłączne przyczyny odmowy
uznania  orzeczenia arbitrażowego.

Należy stwierdzić ,że skarżący , zgodnie  z brzmieniem powołanego
przepisu , w świetle tego co wyżej powiedziano , nie dostarczył dowodów , że
przedstawione do uznania orzeczenie  odnosi się do sporu nie wymienionego w
zapisie na sąd polubowny  , nie  podpada pod ten zapis czy wreszcie  jest
rozstrzygnięciem przekraczającym  granice zapisu , a zatem ,że zachodzi
przeszkoda do uznania przewidziana w ust. 1 c) tego artykułu .

Zgodnie z art. II Konwencji i art. 698 § 2 k.p.c rozstrzygnięciu sądu
polubownego poddaje się „ spory z oznaczonego  stosunku prawnego" .Zatem

049

18

uregulowanie z pkt 1c) art. V Konwencji  nakazuje zbadać ,czy przedstawione
do uznania  orzeczenie jest zgodne z warunkami umowy o arbitraż czyli czy
rozstrzyga  „spór z oznaczonego stosunku prawnego" . W  sprawie, o którą
chodzi, rozstrzygnięciu sądu  arbitrażowego poddano spór ze stosunku spółki
PTC . Zatem orzeczenie ,że  w stosunek spółki nie została wwiązana skarżąca
było orzekaniem  zgodnie z warunkami zapisu .

Nie  było też podstaw do przyjęcia ,że  uznanie byłoby sprzeczne z
porządkiem publicznym  RP   ( ust . 2 b) art. V Konwencji  ) . Wyrok
Trybunału  został wydany w postępowaniu ,którego przedmiotem było żądanie
ustalenia prawa ( art. 189 k.p.c. )  , postępowanie  toczyło się przeciwko obu
stronom kwestionowanej czynności .Wyrok  nie jest  sprzeczny wewnętrznie i
nie jest  wieloznaczny . Punkt pierwszy nie odnosi się do  skarżącej jako osoby
trzeciej lecz do  skarżącej jako strony postępowania przed sądem polubownym  i
wiąże skarżącą , o czym była mowa ;  skutecznie względem niej rozstrzyga ,że
nie jest wspólnikiem PTC  z powodu  wadliwości czynności  nabycia udziałów
w tej spółce . Okoliczność ,że  skutkiem takich ocen sądu arbitrażowego  jest
rozstrzygnięcie o prawie do udziałów  nie oznacza ,że mamy do czynienia z
bezprawnym odjęciem własności .  Nie jest zrozumiałe akceptowanie  przez
skarżącą stanu braku  jurysdykcji i jednoczesne negowanie przesłanek, które
spowodowały  brak jurysdykcji czy też negowanie skutków prawnych zdarzeń ,
które doprowadziły do stwierdzenia  braku jurysdykcji .

Sąd  Apelacyjny podziela stanowisko Sądu I instancji ,że   wyrok
Trybunału  Arbitrażowego  nie zawiera tego rodzaju rozstrzygnięć , które
skutkowałyby  oceną ,że  nie  odpowiada  on  standardom  prawnym
Rzeczypospolitej Polskiej  i że jego skutki są nie do pogodzenia  z zasadami
konstytucyjnymi ,w szczególności  ochrony własności i  prawa do sądu .

W odniesieniu do zarzutu  wewnętrznej sprzeczności wyroku   dodać
jeszcze   należy   ,że  orzeczenie o bezskuteczności zbycia nie pozostaje w
sprzeczności z  zagadnieniem  „odzyskania  udziałów "  o czym orzeczono w

19

punkcie drugim wyroku ; w konkretnej sytuacji mogłoby to bowiem polegać np. na uzyskaniu wpisu Elektrim S.A. jako wspólnika PTC w KRS . Nieważność czynności czy też bezskuteczność czynności prawnej rozporządzającej prawem oznacza zachowanie tytułu, ale nie wymaga szczególnego dowodzenia ,że jeżeli w następstwie tej czynności doszło do zmian np. w stanie posiadania ( władania) , może istnieć potrzeba przywrócenia stanu poprzedniego przez podjęcie czynności faktycznych , prawnych bądź procesowych . Ponadto punkt drugi wyroku nie dotyczy skarżącej , orzeka o obowiązkach Elektrim S.A. i skutkach zbycia w odniesieniu do DT .

W odniesieniu do zdarzenia ,które nastąpiło w toku postępowania apelacyjnego , a którym jest wyrok Sądu Handlowego w Wiedniu uchylający punkt pierwszy wyroku Trybunału Arbitrażowego ( k.2265-2330 tom XII i k. 2505 -2537 tom XIII ) : art. V ust. 1 e) Konwencji stanowi ,że odmowa uznania nastąpi m. in. wówczas gdy właściwa władza kraju , w którym lub według którego orzeczenie zostało wydane , uchyliła je . Skarżąca nie przywoływała wyroku sądu handlowego jako podstawy odmowy uznania ( k. 2422 tom XIII ) ,zaś wnioskodawca i uczestnik podnosili ,że o takiej podstawie można mówić wówczas gdy mamy do czynienia z uchyleniem prawomocnym . Pogląd o potrzebie uprawomocnienia się orzeczenia uchylającego jest dominujący w literaturze przedmiotu i Sąd Apelacyjny pogląd ten podziela ( por.T . Ereciński „ Uchylenie przez sąd państwowy orzeczenia wydanego w międzynarodowym arbitrażu handlowym ” w „ Księga pamiątkowa ku czci profesora Jerzego Jodłowskiego . Proces i prawo . Rozprawy prawnicze ” Ossolineum 1989 r., str .81 ). Zważywszy ,że orzeczenie Sądu Handlowego zostało zaskarżone przez Elektrim S.A. i DT ( tom XV ) , nie jest więc prawomocne, uchylenie punktu pierwszego wyroku Trybunału Arbitrażowego jest, z punktu widzenia przesłanek odmowy uznania i przy braku żądania , prawnie obojętne.

Uwzględniając przeto powyższe Sąd Apelacyjny oddalił apelację Elektrim Telekomunikacja sp. z o.o ( Telco ) jako nieuzasadnioną ( art. 385 k.p.c. )

Nieuzasadniona jest również apelacja Prokuratora ( k. 616 – 620 tom IV) . Jej zarzut pozbawienia Telco możności obrony praw pokrywa się z zarzutami apelacji tej Spółki . Do tej części apelacji Telco Sąd Apelacyjny już się odniósł i nie zachodzi potrzeba powtórnego analizowania czy niewątpliwe nieprawidłowości w postępowaniu przed Sądem Okręgowym doprowadziły do nieważności postępowania . Sąd Apelacyjny ocenił ,że Telco nie została pozbawiona możności obrony swoich praw i stanowisko to podtrzymuje .

Odnosząc się zaś do innych twierdzeń i argumentów z tej apelacji należy zauważyć ,że powołanie się przez skarżącego na naruszenie art. 1147 § 1 k.p.c , dla uzasadnienia stawianego zarzutu pozbawienia tej Spółki możności obrony praw, jest nieporozumieniem . Jak już była wyżej mowa przepis ten rozstrzyga o legitymacji do wszczęcia postępowania delibacyjnego i z potrzebą uczestnictwa Telco w postępowaniu w charakterze uczestnika nie ma związku . Dodać też należy ,że postanowienie o odmowie dopuszczenia do udziału w sprawie w charakterze uczestnika jest niezaskarżalne , o czym też już była mowa , zarzut zatem naruszenia „ art. 395 par. 1 lub par. 2 k.p.c . ” , jak to ujęto w apelacji , jest niesłuszny .

Nie ma też racji skarżący ,że doszło do naruszenia art. V ust .1 d) Konwencji . Z przepisu tego wynika ,że odmowa uznania nastąpi tylko wówczas gdy strona dostarczy dowodów , że „ skład sądu arbitrażowego bądź procedura arbitrażowa nie były zgodne z umową stron , lub – w razie braku takiej umowy – że nie były zgodne z prawem kraju , w którym odbył się arbitraż ”. W toku postępowania ani wnioskodawca, ani uczestnik, ani interwenient uboczny , ani też sąd nie mieli wątpliwości ,że art. V Konwencji samodzielnie i wyczerpująco określa wypadki , w których może nastąpić odmowa uznania orzeczenia zagranicznego sądu polubownego i ,że postawy odmowy muszą być

21

dowiedzione przez zainteresowaną stronę . Interwenient uboczny   na tę podstawę odmowy uznania w ogóle nie powoływał się. W takiej sytuacji , ocenie Sądu Apelacyjnego, Prokurator,   gdyby przyjąć ,że był uprawniony do powoływania się na inną podstawę odmowy uznania orzeczenia  niż czyniła to strona ( tu : interwenient uboczny ) , miał  obowiązek przeprowadzenia dowodu istnienia tej przesłanki . Ani Konwencja  ani też przepisy k.p.c . nie dają podstaw do prowadzenia dowodów przez sąd z urzędu .  Zatem zarzut ,że orzeczenie  zapadło  przedwcześnie  ,  bo  przed  dokonaniem     oceny prawidłowości  postępowania przeprowadzonego przez Trybunał jest chybiony .

Nie można też zgodzić się ze skarżącym ,że  orzeczenie jako  oparte na prawie obcym  mogło być uznane tylko wówczas  gdyby zostało stwierdzone, że prawo obce nie różni  się w sposób istotny od prawa polskiego  – co wymagało zbadania przez sąd prawa obcego .  Sformułowanie to zaczerpnięto , jak się wydaje , z uregulowania zawartego w art. 1146 §1 pkt. 6 k.p.c. Niezależnie od tego ,że przepis  ten dotyczy  prawa materialnego  ( z uzasadnienia wyroku Trybunału  wynika ,że stosował instytucje  z polskiego prawa materialnego  ), to  podkreślić należy ,że przepisy kodeksu  postępowania cywilnego  mają zastosowanie tylko w stosunku do państw , które nie są  stronami Konwencji. Jeszcze raz powtórzyć należy ,że Konwencja wymienia  przesłanki odmowy uznania , ale  w ogóle nie zawiera przesłanek ,od spełnienia których zależy uznanie . Zgodnie z art. III Konwencji istnieje obowiązek uznania orzeczenia , jeżeli zostaną spełnione warunki z art. IV Konwencji ,  a podstawy odmowy z art. V  nie zostaną dowiedzione.  Warunki z art. IV zostały spełnione a , w ocenie Sądu Apelacyjnego,   podstawy odmowy nie zostały dowiedzione .

Z  powyższych  przyczyn  apelacja  Prokuratora  nie  mogła  być uwzględniona ( art. 385 k.p.c. ) .

W piśmie procesowym z dnia 15 grudnia 2005 r. ( k. 1733 tom X ) skarżący domagał się poddania   przez Sąd Apelacyjny kontroli instancyjnej, w trybie art. 380 k.p.c. , postanowień Sądu Okręgowego  z dnia 12 stycznia 2005

22

r. o odrzuceniu wniosku Elektrim Telekomunikacja sp. z o.o. o dopuszczenie do udziału w sprawie w charakterze uczestnika ( k. 376 tom III ) i z dnia 26 stycznia 2005 r. o niedopuszczeniu tej Spółki do udziału w sprawie w charakterze interwenienta głównego (k. 523 tom III ).

Powołany przepis pozwala objąć kontrolą instancyjną te postanowienia sądu I instancji , które nie podlegały zaskarżeniu w drodze zażalenia a miały wpływ na rozstrzygnięcie sprawy - w ocenie Sądu Apelacyjnego ma to miejsce wówczas gdy wniosek taki strona złożyła nie kiedykolwiek w toku postępowania apelacyjnego ale wówczas gdy wniosek taki został złożony w środku odwoławczym , tu: w apelacji . W apelacji bowiem skarżący zakreśla granice zaskarżenia . Wskazany wniosek skarżąca złożyła po upływie ośmiu miesięcy od wniesienia apelacji . Jest to zatem wniosek spóźniony .

Wreszcie wskazać należy ,że Sąd Apelacyjny dopuścił wnioskowane przez interwenienta ubocznego i przez wnioskodawcę dowody ( k.3187 tom XIV ) . Wnioskodawca dowodami tymi w postaci postanowienia Sądu Okręgowego w Warszawie z dnia 1 marca 2006 r. sygn. akt VII Co 1061/05 stwierdzającego wykonalność na obszarze Polski wyroku Trybunału w zakresie kosztów tego postępowania w którym zapadło orzeczenie z dnia 26 listopada 2004 r. ( k. 3044 tom XVI ) wydanego na podstawie tej samej klauzuli arbitrażowej i protokołu rozprawy poprzedzającej wydanie postanowienia o stwierdzeniu wykonalności (k. 3045 tom XVI ) wykazywał ,że interwenient uboczny w innych postępowaniach nie podważa kompetencji trybunału do orzekania o jego uprawnieniach na podstawie tej samej klauzuli arbitrażowej . Dowodem w postaci odpisu pozwu z dnia w sprawie sygn. XXGC 594 /05 z dnia 4 lipca 2005 r. ( k. 2666 tom XIV ) wnioskodawca dowodził ,że interwenient uboczny przyznaje ( przez fakt wytoczenia powództwa o uzupełnienie wartości wkładu) ,że nie nabył skutecznie od Elektrim S.A. udziałów w kapitale zakładowym PTC .

23

Z kolei interwenient uboczny dowodami w postaci odpisów uzasadnień postanowień Sądu Okręgowego w Warszawie wydanych w dniach: 6. 06 .2005 r. ( sygn. akt XVI GC 1984/04 ) , 17.05.2005r. ( sygn. akt XVI GCo 94 /05 ) , 22.07 2005 r. ( sygn. akt XVI GC 1984/04 ) i 24.02. 2005 r. ( sygn. akt WA.XIX.NS-REJ. KRS /4404/05/307 ) wykazywał ,że wyrok Trybunału Arbitrażowego wywiera skutki prawne w sferze jego praw , mimo że w punkcie czwartym tego wyroku Trybunał orzekł ,że nie ma nad Telco jurysdykcji (k. 2435- 2446 ) . Nadto interwenient dowodził ,że wnioskodawca z powołaniem się na brzmienie punktu pierwszego wyroku Trybunału dokonuje czynności rozporządzających udziałami w PTC - dla wykazania ,że wyrok ingeruje w jego prawa podmiotowe.

We wskazanym zakresie wnioski dowodowe zostały uwzględnione , dowody , które zostały przeprowadzone dotyczyły zdarzeń zaistniałych już po wydaniu rozstrzygnięcia przez Sąd Okręgowy i nie było przeszkód , aby na etapie postępowania apelacyjnego dowodami tymi zainteresowani wsparli swoje stanowiska. Stanowiska te nie uległy zmianie również na etapie postępowania apelacyjnego- ich ocenę zaś Sąd Apelacyjny przeprowadził powyżej , nie znajdując podstaw do uwzględnienia apelacji .

Z tych też przyczyn na podstawie art. 385 k.p.c. orzeczono jak w sentencji . O kosztach postępowania apelacyjnego orzeczono na podstawie art. 98 k.p.c. i §11pkt 6) w związku z §13 ust. 1pkt 2) rozporządzenia Ministra Sprawiedliwości z dnia 28 września 2002 r. w sprawie opłat za czynności adwokackie oraz ponoszenia przez Skarb Państwa kosztów nieopłaconej pomocy prawnej udzielonej z urzędu ( Dz. U. Nr 97 /2003 r., poz. 97 ze zm . ).

Na oryginale właściwe podpisy
Za zgodność z oryginałem stwierdzam
Sekretarz Sądowy
z up. ...