# EXHIBIT D

# SALANS

Warsaw Financial Center, Emilii Plater 53, 22nd Floor, 00-113 Warsaw, Poland
Phone: 48 (22) 520 8300  Facsimile 18 (22) 520-6400
Warsaw@salans.com

Receipt Stamp: [illegible]

Warsaw, December 17, 2004

TO:
Regional Court in Warsaw
Commercial Court
Business Division No. 16
[street address] ul. Kredytowa 3
00-056 Warszawa

**Plaintiff:**
Elektrim Komunikacja Sp. z o.o.
[street address] ul. Armii Ludowej 26
00-609 Warszawa

**Represented by:**

Wojciech Jaworski, Attorney at Law

**Mailing address:**

Salans, D. Oleszczuk Kancelaria Prawnicza
Sp.k.
[street address] ul. Emilii Plater 53
00-113 Warszawa

**Defendant:**

Polska Telefonia Cyfrowa Sp. z o.o.
[street address] ul. Al. Jerozolimskie 181
02-222 Warszawa

File No. XVI GC 1984/04

## PETITION
## FOR SECURING OF THE CLAIM DURING THE COURSE OF THE PROCEEDINGS

Acting on behalf of the Plaintiff pursuant to Article 730 of the Civil Procedure Code and in connection with Article 755 of the Civil Procedure Code I hereby petition for:

1. securing the Claim of the Elektrim Telekomunikacja Sp. z o.o. Company with registered office in Warsaw, against Polska Telefonia Cyfrowa Sp. z o.o. Company with registered office in Warsaw, and for
   (i) determination that the Plaintiff is a stakeholder in the Polska Telefonia Cyfrowa Sp. z o.o. with registered office in Warsaw, and that the Plaintiff owns 226,079 shares with the nominal value of PLN 1,000.00 each and the

**SALANS**

total nominal value of PLN 226,079,000 in the nominal capital of Polska Telefonia Cyfrowa Sp. z o.o., and

(ii) determination that transfer of 226,079 shares of the nominal capital of the Polska Telefonia Cyfrowa Sp. z o.o. with registered office in Warsaw by the Elektrim S.A. Company with registered office in Warsaw to Elektrim Telekomunikacja Sp. z o.o. with registered office in Warsaw, completed on December 8, 1999 as an acquisition by Elektrim S.A. of the newly issued shares of the nominal capital of Elektrim Telekomunikacja Sp. z o.o. is valid and effective with respect to Polska Telefonia Cyfrowa Sp. z o.o.

by issuance of a ruling securing the claim through:

prohibitting Polska Telefonia Cyfrowa Sp. z o.o. with registered office in Warsaw and its Board from introducing any changes in the Polska Telefonia Cyfrowa Sp. z o.o. Company Shares Ledger with respect to shares belonging to Elektrim Komunikacja Sp. z o.o., as specified in the December 16, 2004 entry into the Ledger and, in particular, to prohibiting removal of the entry related to Elektrim Telekomunikacja Sp. z o.o. Company being a stakeholder in the Polska Telefonia Cyfrowa Sp. z o.o. with respect to any of the shares – before the final resolution of the current proceedings.

2.      admission of evidence listed in the Petition or this brief in accordance to circumstances indicated in them;

3.      issuance of a decision about securement of the claim in a closed session.

Additionally I kindly request that you give this Petition your prompt consideration due to the fact the Plaintiff's rights are seriously endangered through the action undertaken by the Defendant and a third party – Elektrim S.A., which may lead to irreversible results.

**RATIONALE**

1.      Introductory comments – cause for Petition for securing of the claim

This petition is a consequence and a necessary reaction of the Plaintiff to a threat presented to the Plaintiff by the Defendant in a letter of November 29, 2004 concerning removing the Plaintiff from the Shares Ledger of Polska Telefonia Cyfrowa Sp. z o.o. with registered office in Warsaw (further referred to herein as PTC or Defendant), which would lead to the Plaintiff's inability to exercise its rights to the shares in PTC the Plaintiff owns.

**Exhibit:**              The Defendant's letter of November 29, 2004 enclosed herewith

Additionally, on December 10, 2004, a third party – Elektrim S.A. – sent a letter to four members of the PTC Board of Directors informing them they were dismissed from their positions. On the same day Elektrim S.A. also sent out a letter informing about appointment of four new members of the PTC Board of Directors.

**SALANS**

**Exhibit:**      Certified copies of the Elektrim S.A. letters of December 10, 2004 enclosed herewith.

The content of these letters implies that Elektrim S.A. considers itself as a partner of PTC.

2.      Actual status

The case actual status has been discussed in detail in the Petition. For the purposes of the petition concerned herewith, "it should be noted that the Plaintiff is a stakeholder in PTC and that the Plaintiff owns 226,079 (two hundred twenty six thousand seventy nine) shares with the nominal value of PLN 1,000.00 each, the total nominal value of PLN 226,079,000 (two hundred twenty six million seventy nine thousand) of the PTC nominal capital.

**Exhibit:**      A certified copy of PTC Shares Ledger enclosed herewith.

On November 29, 2004, the Plaintiff received from the Defendant a letter contesting the fact the Plaintiff had bought shares in PTC. The letter also contains information concerning a possibility of having the Plaintiff removed from the PTC Shares Ledger.

**Exhibit:**      The Defendant's letter enclosed herewith.

On December 10, 2004 the Plaintiff filed a Petition against the Defendant for determination that [the Plaintiff] is a stakeholder in PTC and that the Plaintiff owns 226,079 shares in the PTC nominal capital, and that the transfer of 226,079 shares of the PTC nominal capital by the Elektrim S.A. with registered office in Warsaw to the Plaintiff as a result of acquiring on December 8, 1999 by Elektrim S.A. the newly created shares in the Plaintiff's nominal capital is valid and binding on the Defendant.

As indicated by the documents provided, five years after Elektrim S.A. brought in an effective and valid manner PTC shares to the Plaintiff's nominal capital, Elektrim S.A considers itself a stakeholder of PTC.

3.      Premise and manner for securing the claim

This Petition is made pursuant to Article 730, Paragraph 1 of the Civil Procedure Code, and Article 755, Paragraphs 1 and 2 of the Civil Procedure Code, in connection with Article 189 of the Civil Procedure Code. The premises for securing the claim are as follows: (i) claim credibility*, and (ii) risk that a lack of securement may deprive the creditor of the satisfaction of its claim. However, the Plaintiff's claim is non-monetary. It is a claim for a legal determination and a legal relationship, and as such is not subject to execution in the case of adjudication.

Securing of these types of claims takes place based on Article 755, paragraph 1 of the Civil Procedure Code and as a novation. In the case of novation being used for securing claims for non monetary benefits – such as a petition for determination – the premise for securement is not the need to secure executability of a future ruling, but legal interest in securement (compare A. Jakubecki *"Provisional Proceedings in Cases Related to Intellectual Property"*, Zakamycze 2000, page 308). The Plaintiff's legal interest lies in the fact that the protection obtained through the court's finding may be delayed and therefore the interested party is subjected to a number of adverse effects (compare F. Zedler *"Legal Interest as the Basis for Securing Claims in Civil Proceedings,*

**115**

# SALANS

*Studies in Civil Proceedings (to the Memory of Professor Reisch)",* Warszawa 1985, page 329). As indicated above, the effects of absence of securement will be irreversible for both the Plaintiff and the Defendant.

### 3.1    Claim Credibility

In the Petition, the Plaintiff proved the credibility of its claim. It provided evidence (Protocol from the Extraordinary Shareholders Meeting, Shares Ledger, and registration documentation) to evidence the purchase of shares in PTC, and proved erroneous character of legal arguments used by the Defendant to dispute the purchase of shares by the Plaintiff.

Pursuant to the September 22, 2993 decision of the Supreme Court (III CZP 118/93) "the Court shall refuse to accept a new list of shareholders for entry into the registry of a limited liability company, if the reported change is based on an invalid agreement of share sale."

With respect to the case herein, the Registration Court studied the documentation related to transfer of PTC shares by Elektrim S.A. to the Plaintiff's share capital on two separate occasions. The first such review was completed upon registration of the increase in the Plaintiff's share capital.

**Exhibit:**    A certified copy of the decision to increase the Plaintiff's nominal capital enclosed herewith.

The second review took place before the Plaintiff was entered into the Defendant's Shares Ledger as a stakeholder with 226,079 shares in PTC.

**Exhibit:**    A certified copy of an extract from the National Court Register enclosed herewith.

If the Registration Court had any doubts as to the validity/enforceability of the shares transfer for the benefit of the Plaintiff, it should have rejected the entry and refuted the revised list of shareholders.

It should also be noted that for the last 5 years Elektrim S.A. has never disputed having completed the transfer of shares. It issued a letter indicating that [the company] considers itself a stakeholder in PTC only on December 10, 2004.

### 3.2    Plaintiff's Legal Interest in securing the claim

Adverse effects of the Plaintiff's being deprived of security for its claim stem from the fact that the Plaintiff's rights as a shareholder may only be executed in relation to PTC – provided that PTC recognizes those rights.

Only the PTC Board is entitled to make changes in the PTC Shares Ledger. In the case the Board should remove the Plaintiff from the Shares Ledger, it would become a basis for filing of a new list of shareholders along with an application to update the Business Register with respect to disclosure of alleged changes in the part related to disclosure of shareholders with 10% or over 10% of shares (the Plaintiff owns 48% of PTC shares). Only the Defendant's Board is authorized to file such application.

**SALANS**

During registration proceedings, the Registration Court should examine basis for entry. However, in the case the Board reached a unanimous decision supported by documentation which raises no doubts, there is a serious risk the Court may authorize an entry. The Plaintiff, as a stakeholder, will not be a party to the registration proceedings. Consequently, it will be deprived of any legal means to protect its rights in this type of proceedings. Additionally, upon removal of the Plaintiff from the Shares Ledger and registration of this type of a change, the Plaintiff's rights with respect to the company will by executed by an entity entered as a stakeholder based on the Defendant's, e.g. Elektrim S.A., petition.

From the time of entry of the shares into the Ledger and the Court Register an alleged stakeholder may make corporate decisions with irreversible effects binding on PTC (voting, changes in the composition of bodies, changes to the association agreement, dividend collection, entering into agreements, and such). What it means is that, if the claim was recognized after a few years of proceedings, it would no longer be the same Company in which the Plaintiff was a stakeholder.

### 3.3     Manner of Providing Collateral

Pursuant to Article 755, Paragraph 1 of the Civil Procedure Code, the Court may use such manner of providing security for the claim as it sees fit. In particular, the Court is entitled to regulate the relationship in the course of the proceedings. The circumstance which speaks for securing the claim by issuing a decision prohibiting any changes in the PTC Shares Ledger with respect to the shares owned by the Plaintiff is that the Defendant threatened the Plaintiff with removing the Plaintiff as a stakeholder in PTC. As indicated above, such removal combined with registration proceedings would deprive the Plaintiff of an opportunity to defend its rights until the court's decision becomes enforceable. Additionally, the steps undertaken by Elektrim S.A. indicate that there is a need for the court to step in to maintain the *status quo* during the course of the proceedings.

Pursuant to Article 755, Paragraph 2 of the Civil Procedure Code, the Court considers interest of both parties as to provide the creditor with proper safeguards for its rights and not to unduly burden the debtor. In this case, the adjudication of the requested prohibition constitutes the only way of protecting the Plaintiff's rights as only such prohibition may prevent a chain of events leading to disclosure of changes in the Businesses Register which the Plaintiff has no abilities to prevent. This type of prohibition does not place any burden on the Defendant. In particular, it does not prevent the Defendant from conducting its normal business or functioning of its bodies. The Defendant may not derive any legal consequences from the fact that a given entity is or is not recognized as its stakeholder.

Under such circumstances, the Petition is necessary and well justified.

[illegible signature]

Wojciech Jaworski
Attorney at Law


Attachments:
1.      Certified copies of December 10, 2004 letters by Elektrim S.A., and
2.      Certified copy of the petition and attachments.

## TRANSLATOR'S CERTIFICATE

*Lucas H. Meoz* ............ declare under penalty of perjury that I am thoroughly competent in both Polish and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from Polish to English, on this ............ day of ............, 2007.

*Lucas H. Meoz*

Translated document:

Petition for Claim Collateral

118

18/01 2005 12:05 FAX +49 228 936 12309    TMO
17/01 05  MON 19:51 FAX 48 22 5736559                                    ☑015
                                                                          ☑001

# SALANS

Warsaw Financial Center, Emilii Plater 53, 22nd Floor, 00-113 Warsaw. Poland
Tel 48 (22) 520 8300  Fax 48 (22) 520 6400
warsaw@salans.com  www.salans.com



Warszawa, dnia 17 grudnia 2004 r.

**Do**
Sądu Okręgowego w Warszawie
Sądu Gospodarczego
XVI Wydział Gospodarczy
ul. Kredytowa 3
00-056 Warszawa

<u>Powód:</u>
Elektrim Telekomunikacja Sp. z o.o.
ul. Al, Armii Ludowej 26
00-609 Warszawa

<u>reprezentowany przez:</u>
adw. Wojciecha Jaworskiego

<u>adres do doręczeń:</u>
Salans, D. Oleszczuk Kancelaria Prawnicza Sp.k.
ul. Emilii Plater 53
00-113 Warszawa

<u>Pozwany:</u>
Polska Telefonia Cyfrowa Sp. z o.o.
ul. Al. Jerozolimskie 181
02-222 Warszawa

Sygn. akt XVI GC 1984/04

## WNIOSEK
## O ZABEZPIECZENIE POWÓDZTWA W TRAKCIE PROCESU

Działając w imieniu Powoda na zasadzie art. 730 k.p.c. w zw. z art. 755 k.p.c. wnoszę o:

I.     zabezpieczenie powództwa spółki Elektrim Telekomunikacja Sp. z o.o. z siedzibą w
       Warszawie przeciwko spółce Polska Telefonia Cyfrowa Sp. z o.o. z siedzibą w
       Warszawie o

       (i)     ustalenie, że Powód jest wspólnikiem w spółce Polska Telefonia Cyfrowa Sp.
               z o.o. z siedzibą w Warszawie, oraz że do Powoda należy 226.079 udziałów o wartości
Salans D. Oleszczuk Kancelaria Prawnicza Sp. k.

ALMATY  BAKU  BRATISLAVA  BUCHAREST  ISTANBUL  KYIV  LONDON  MOSCOW  NEW YORK
PARIS  PRAGUE  SHANGHAI  ST.PETERSBURG  WARSAW

119

# SALANS

2

nominalnej 1.000 zł. każdy udział, o łącznej wartości nominalnej 226.079.000 złotych w kapitale zakładowym spółki Polska Telefonia Cyfrowa Sp. z o.o. oraz

(ii)     ustalenie, że przeniesienie przez spółkę Elektrim S.A. z siedzibą w Warszawie 226.079 udziałów w kapitale zakładowym spółki Polska Telefonia Cyfrowa Sp. z o.o. z siedzibą w Warszawie na spółkę Elektrim Telekomunikacja Sp. z o.o. z siedzibą w Warszawie, dokonane w wyniku pokrycia przez spółkę Elektrim S.A. nowopowstałych udziałów objętych przez nią w kapitale zakładowym spółki Elektrim Telekomunikacja Sp. z o.o. w dniu 8 grudnia 1999 roku, jest ważne oraz jest skuteczne wobec spółki Polska Telefonia Cyfrowa Sp. z o.o.

poprzez wydanie postanowienia zabezpieczającego powództwo przez:

zakazanie spółce Polska Telefonia Cyfrowa Sp. z o.o. z siedzibą w Warszawie i jej Zarządowi dokonywania jakichkolwiek zmian w księdze udziałów spółki Polska Telefonia Cyfrowa Sp. z o.o. w stosunku do udziałów należących, według wpisu do tej księgi na dzień 16 grudnia 2004 roku, do spółki Elektrim Telekomunikacja Sp. z o.o., a w szczególności zakazanie wykreślania wpisu spółki Elektrim Telekomunikacja Sp. z o.o. jako wspólnika spółki Polska Telefonia Cyfrowa Sp. z o.o. w stosunku do jakiegokolwiek udziału - do czasu prawomocnego zakończenia niniejszego postępowania.

2.    dopuszczenie dowodów powołanych w pozwie lub niniejszym piśmie na wskazane w nim okoliczności;

3.    wydania postanowienia o zabezpieczeniu na posiedzeniu niejawnym;

Nadto uprzejmie proszę o pilne rozpoznanie niniejszego wniosku z uwagi na fakt istotnego zagrożenia praw Powoda przez działania podjęte przez Pozwanego oraz podmiot trzeci - Elektrim S.A., które prowadzą do nieodwracalnych skutków.

## UZASADNIENIE

1.    Uwagi wstępne – przyczyna wniosku o zabezpieczenie

Niniejszy wniosek stanowi konsekwencję i konieczną reakcję Powoda na sformułowaną w piśmie Pozwanego do Powoda dnia 29 listopada 2004 roku groźbę wykreślenia Powoda z księgi udziałów w spółce Polska Telefonia Cyfrowa Sp. z o.o. z siedzibą w Warszawie (dalej: „PTC" lub „Pozwany") PTC prowadzącą do uniemożliwienia Powodowi wykonywania praw z należących do Powoda udziałów w PTC.

<u>Dowód</u>:    Pismo Pozwanego z dnia 29 listopada 2004 roku, dołączone do pozwu.

Nadto, w dniu 10 grudnia 2004 roku, podmiot trzeci – spółka Elektrim S.A. - przesłał pisma do czterech członków Rady Nadzorczej PTC informując ich, że zostali odwołani ze swoich funkcji. W tym samym dniu Elektrim S.A. wysłał także pismo informujące o powołaniu do Rady Nadzorczej PTC czterech nowych członków.

**120**

# SALANS

3

**Dowód:**      Odpisy pism Elektrim S.A. z dnia 10 grudnia 2004 roku, które załączam.

Z treści pism wynika, że Elektrim S.A. uznaje, że jest wspólnikiem PTC.

## 2.    Stan faktyczny

Stan faktyczny sprawy został szczegółowo omówiony w pozwie. Dla potrzeb niniejszego wniosku wymaga podkreślenia, że Powód jest wspólnikiem w PTC i do Powoda należy 226.079 (słownie: dwieście dwadzieścia sześć tysięcy siedemdziesiąt dziewięć) udziałów o wartości nominalnej 1.000. zł. każdy udział, o łącznej wartości nominalnej 226.079.000 (słownie: dwieście dwadzieścia sześć milionów siedemdziesiąt dziewięć tysięcy) złotych w kapitale zakładowym PTC.

**Dowód:**      Księga udziałów w PTC, z której odpis załączono do pozwu.

W dniu 29 listopada 2004 roku Powód otrzymał od Pozwanego pismo kwestionujące fakt nabycia przez Powoda udziałów w PTC. Pismo zawiera także informację o możliwości wykreślenia Powoda z księgi udziałów PTC.

**Dowód:**      Pismo Pozwanego, którego odpis załączono do pozwu.

W dniu 10 grudnia 2004 roku Powód złożył przeciwko Pozwanemu pozew o ustalenie, że Powód jest wspólnikiem w PTC, oraz że do Powoda należy 226.079 udziałów w kapitale zakładowym PTC oraz o ustalenie, że przeniesienie przez spółkę Elektrim S.A. z siedzibą w Warszawie 226.079 udziałów w kapitale zakładowym PTC na Powoda dokonane w wyniku pokrycia przez spółkę Elektrim S.A. nowopowstałych udziałów objętych przez nią w kapitale zakładowym Powoda w dniu 8 grudnia 1999 roku, jest ważne oraz jest skuteczne wobec Pozwanego.

Jak wynika z wyżej załączonych pism, po 5 latach od skutecznego i ważnego wniesienia przez Elektrim S.A. udziałów PTC do kapitału zakładowego Powoda, Elektrim S.A. dzisiaj uznaje się za wspólnika PTC.

## 3.    Przesłanki i sposób zabezpieczenia powództwa

Wniosek niniejszy zostaje złożony na podstawie art. 730 § 1 k.p.c. i art. 755 § 1 i 2 k.p.c. - w zw. z art. 189 k.p.c.  Przesłankami zabezpieczenia powództwa są: (i) wiarygodność roszczenia oraz (ii) obawa, że brak zabezpieczenia może pozbawić wierzyciela zaspokojenia. Roszczenie powoda ma jednak charakter niepieniężny. Jest to roszczenie o ustalenie prawa i stosunku prawnego, a zatem z istoty swojej nie podlega egzekucji w razie zasądzenia.

Zabezpieczenia tego typu roszczeń odbywa się na zasadzie art. 755 § 1 k.p.c. i ma charakter nowacyjny.   W przypadku nowacyjnego zabezpieczenia roszczenia o świadczenia niepieniężne – takiego jak m. in. roszczenie o ustalenie – przesłanką zabezpieczenia nie jest potrzeba zabezpieczenia wykonalności przyszłego wyroku lecz istnienie interesu prawnego w uzyskaniu zabezpieczenia (por. A. Jakubecki, *„Postępowanie zabezpieczające w sprawach z zakresu prawa własności intelektualnej"*, Zakamycze 2000, str. 308).  Interes prawny Powoda wyraża się w tym, że ochrona przyznana w wyroku udzielona zostaje zbyt późno i w związku z tym zainteresowany podmiot ponosi szereg niekorzystnych skutków (por. F. Zedler, *„Interes prawny jako podstawa zabezpieczenia roszczeń w postępowaniu cywilnym.*

18/01 2005 12:06 FAX +49 228 936 12309          TMO
17/01 05  MON 18:53 FAX 48 22 S736859                                        ☒018
                                                                             ☒01

# SALANS

4

*Studia z prawa postępowania cywilnego (księga pamiątkowa ku czci prof. Resicha)",* Warszawa 1985, str. 329). Jak podkreślono powyżej, skutki braku zabezpieczenia będą nieodwracalne zarówno dla Powoda jak i Pozwanego.

### 3.1    Wiarygodność roszczenia

Powód wykazał w pozwie wiarygodność swojego roszczenia. Przedstawił dowody (protokół nadzwyczajnego zgromadzenia wspólników, księga udziałów, dokumenty rejestrowe) na okoliczność nabycia udziałów w PTC oraz wykazał nietrafność argumentacji prawnej, za pomocą której Pozwany kwestionuje nabycie udziałów przez Powoda.

Zgodnie z orzeczeniem Sądu Najwyższego z dnia 22 września 1993 roku (III CZP 118/93) „sąd odmówi przyjęcia do rejestru spółki z ograniczoną odpowiedzialnością nowej listy wspólników, jeżeli zgłoszona w tym przedmiocie zmiana opiera się na nieważnej umowie zbycia udziałów".

W niniejszej sprawie sąd rejestrowy aż dwukrotnie badał dokumenty stwierdzające przeniesienie udziałów PTC przez Elektrim S.A. na pokrycie kapitału Powoda. Pierwsze badanie miało miejsce w momencie rejestrowania podwyższenia kapitału zakładowego Powoda.

__Dowód:__        odpis postanowienia o wpisaniu podwyższenia kapitału zakładowego Powoda, załączony do pozwu.

Drugie badanie, nastąpiło przed wpisaniem Powoda do rejestru Pozwanego jako wspólnika posiadającego 226.079 udziałów w PTC.

__Dowód:__        odpis pełnego odpisu z krajowego rejestru sądowego, załączony do pozwu.

Jeżeli sąd rejestrowy miałby jakiekolwiek wątpliwości co do ważności/skuteczności przeniesienia udziałów na Powoda to winien odmówić wpisu i przyjęcia listy wspólników.

Podkreślić przy tym należy, że Elektrim S.A. przez ostatnie 5 lat nie kwestionował dokonanego przeniesienia udziałów. Dopiero w dniu 10 grudnia 2004 roku wysłał pismo z którego wynika, że uznaje się za wspólnika PTC.

### 3.2    Interes prawny Powoda w zabezpieczeniu

Niekorzystne dla Powoda skutki braku zabezpieczenia polegają na tym, że prawa Powoda jako wspólnika PTC mogą być wykonywane tylko względem PTC – przy założeniu, że PTC prawa te uznaje.

Wyłącznie Zarząd PTC jest uprawniony do dokonywania zmian w księdze udziałów PTC. Jeżeli Zarząd wykreśli Powoda z księgi udziałów, stanie się to podstawą do złożenia w sądzie rejestrowym nowej listy wspólników wraz z wnioskiem o dokonanie zmiany w rejestrze przedsiębiorców w zakresie ujawnienia w nim rzekomych zmian w części d/t ujawnienia wspólników posiadających 10% lub ponad 10% udziałów (do Powoda należy 48% udziałów PTC). Wyłącznie Zarząd Pozwanego jest uprawniony do złożenia wniosku.

122

18/01 2005 12:07 FAX +49 228 936 12309    TMO
17/01 05 MON 19:53 FAX 48 22 5736559

# SALANS

5

W trakcie postępowania rejestrowego sąd rejestrowy powinien bądać podstawy wpisu. Jednakże, jeżeli jest zgody wniosek Zarządu poparty dokumentami nie budzącymi wątpliwości, istnieje poważne niebezpieczeństwo, że sąd dokona wpisu. Powód jako wspólnik nie będzie stroną postępowania rejestrowego. W konsekwencji, nie będą mu przysługiwać żadne środki prawne za pomocą, których mógłby bronić swoich praw w takim postępowaniu. Nadto, po wykreśleniu Powoda z księgi udziałów i zarejestrowaniu takiej zmiany, prawa Powoda będzie wobec spółki wykonywać osoba wpisana na wniosek Pozwanego jako wspólnik – tj. Elektrim S.A.

Od momentu wpisu do księgi udziałów i rejestru sądowego rzekomy wspólnik może pójmować wiążące dla PTC czynności korporacyjne o nieodwracalnym charakterze (głosowania, zmiany w składzie organów, zmiany umowy spółki, pobór dywidendy, wpływ na zawieranie umów etc.). Oznacza to, że w przypadku uwzględnienia powództwa po kilku latach procesu, to nie będzie już ta sama spółka, której Powód był i jest wspólnikiem.

## 3.3    Sposób zabezpieczenia

Zgodnie z art. 755 § 1 k.p.c. sąd może stosować sposób zabezpieczenia, który uzna za odpowiedni. W szczególność sąd jest uprawniony do uregulowania stosunków na czas trwania postępowania. Za zabezpieczeniem poprzez orzeczenie wnioskowanego zakazu dokonywania jakichkolwiek zmian w księdze udziałów PTC w stosunku do udziałów należących do Powoda przemawia okoliczność, że Pozwany zagroził Powodowi dokonaniem wykreślenia Powoda jako wspólnika PTC. Jak wskazano wyżej, wykreślenie takie wraz z czynnościami rejestrowymi spowoduje, iż do momentu uprawomocnienia się wyroku w sprawie niniejszej Powód jest pozbawiony możliwość obrony swoich praw. Nadto, działania podjęte przez Elektrim S.A. potwierdzają konieczność interwencji sądu w utrzymania *status quo* na czas procesu.

W myśl art. 755 § 2 k.p.c. sąd uwzględnia interesy stron w takiej mierze aby wierzycielowi zapewnić należytą ochronę jego praw, a dłużnika nie obciążać ponad potrzebę. W sprawie niniejszej orzeczenie wnioskowanego zakazu stanowi jedyny sposób ochrony praw Powoda gdyż jedynie taki zakaz zapobiega rozpoczęciu łańcucha czynności prowadzących do ujawnienia zmian w rejestrze przedsiębiorców, przed którymi Powód nie może się bronić. Zakaz taki nie stanowi natomiast żadnego obciążenia dla Pozwanego. W szczególności, nie zakłóca działalności gospodarczej Pozwanego ani funkcjonowania jego organów. Pozwany nie może wywodzić żadnych skutków prawnych z okoliczności, że określoną osobę uznaje lub nie uznaje za swojego wspólnika.

W tym stanie rzeczy wniosek jest konieczny i uzasadniony.

Wojciech Jaworski
adwokat

Zał.:
1.    Odpisy pism Elektrim S.A. z dnia 10 grudnia 2004 roku; oraz
2.    Odpis wniosku i załączników.

# EXHIBIT E

Docket No. I ACz 628/06

RULING

Dated June 20, 2006

The Appellate Court in Warsaw, Division I Civil, composed of the following:

| Presiding | Appellate Court Judge | Zbigniew Cendrowski |
| | Appellate Court Judge | Izabella Fick-Brzeska |
| | Appellate Court Judge | Bogdan Swierczakowski – Recorder |

having examined, on June 20, 2006, in Warsaw

in closed session

the case brought by Elektrim Telekomunikacja sp. z o.o. [LLC] of Warsaw

against Polska Telefonia Cyfrowa sp. z o.o. of Warsaw

with participation of secondary interveners for the Defendant: Elektrim S.A. [Inc.] of Warsaw and

T-Mobile Deutschland GmBH of Bonn

for a finding

with regard to the request of the secondary interveners

for a review of the Ruling of the Regional Court in Warsaw

issued on December 30, 2004

Docket No. XVI GC 1984/04

has ruled as follows:

to overturn the appealed ruling and to dismiss the petition for injunction.

[stamp]
**KUBAS KOS GAERTNER**
**Filed: 6/28/06 in Warsaw**
original copy    action    received
**SBB**    [signature illegible]

**125**

I ACz 628/06

## Grounds

In the appealed ruling, the Regional Court in Warsaw issued an injunction in reference to the Petition of Elektrim Telekomunikacja sp. z o.o. of Warsaw (hereinafter referred to as Telco) for findings that it is a shareholder of the Defendant – Polska Telefonia Cyfrowa sp. z o.o. (hereinafter referred to as PTC), and that it owns 226,079 shares with a total face value of PLN 1,000.00 per share. Furthermore, the transfer of said shares by Elektrim S.A. to the Plaintiff is valid and binding on the Defendant, by barring the Defendant, PTC, from making any changes in the share ledger of said Company with respect to the shares in the initial capital, belonging to the Plaintiff, pursuant to the ledger entry of December 16, 2004, and purchased from Elektrim S.A. of Warsaw, as specified in the PTC Board of Directors' Resolution No. 161 of October 21, 1999. The Court has dismissed the Petition with respect to the remaining part.

The Court of First Instance found that the Plaintiff purchased the disputed 226,079 shares of the Defendant's initial capital from Elektrim S.A., itself not a party to the litigation. In its Resolution dated October 21, 1999, the Board of Directors of PTC sp. z o.o. agreed to transfer said shares to the Plaintiff, in result of which the Plaintiff was entered into the share ledger of PTC sp. z o.o.

The Defendant is contesting the validity of the Board of Directors' resolution, claiming that the purchase of the disputed shares by the Plaintiff was not effective. The Plaintiff, on the other hand, claims that said resolution is valid, because the provisions of the Board of Directors' Bylaws on which the Defendant has based its position are invalid under the Commercial Companies Code currently in effect. In the Regional Court's assessment, the Plaintiff has proved probable cause for its legal interest, and the manner of the injunction would not constitute an undue burden on the Defendant, as it does not prevent normal business operations.

In its request for review, the secondary intervener, Elektrim S.A., petitioned for overturning the ruling by dismissal of the petition for injunction. The secondary intervener claimed that Articles 730, § 1 of the Code of Civil Procedure, 739, § 1 of the Code of Civil Procedure, and 755, § 2 of the

2

I ACz 628/06

Code of Civil Procedure had been violated, and, in particular, it contested the credibility of the claim. The Intervener argued that the injunction ruling was based on the factual and legal status presented by the Plaintiff, who alleged that at a certain point the Defendant Company had, begun to question the Plaintiff's ownership rights to the shares without any apparent reason. Yet said shares, which were the object of the transaction between Elektrim S.A. and the Plaintiff, were subject to a final Arbitration Court ruling issued in proceedings to which the Plaintiff was also a party. One of the Vienna Arbitration Tribunal's findings was that the sale by Elektrim of 48% of the shares in PTC to Telco is ineffective and that the shares in PTC which were the object of sale "remained the property of Elektrim at all relevant times." Thus the Intervener's position is that there already exists a ruling on the issue of the validity of sale of the disputed shares, which should lead to the conclusion that the Plaintiff's claim is unfounded.

Irrespective of the above, in the Intervener's opinion, the appealed ruling does not comply with the requirement that temporary injunctions be worded precisely.

In its request for review, the secondary intervener, T-Mobile Deutschland GmbH, is also requesting that the ruling be overturned by dismissal of the petition. In the Intervener's opinion, the Plaintiff's claim is unfounded as the Plaintiff does not have the material standing to petition for a finding, because the Defendant has no standing in the matter of validity and effectiveness of the agreement and, additionally, there is a discrepancy between the claim and the legal status, as there is no legal relation of shareholders between the Plaintiff and PTC, due to the fact the agreement transferring said shares between the Plaintiff and Elektrim S.A is ineffective.

Additionally, the Intervener has argued that there is no danger in the case that without an injunction the claim may not be satisfied; nor is there any need to secure the enforceability of the ruling. In the Intervener's opinion, the manner of injunction aims toward satisfaction of the claim, and even goes beyond injunction of the claim. The Intervener also cited the judgment of the Vienna Arbitration Tribunal.

**127**

I ACz 628/06

The Plaintiff filed a response to both requests for review which, among other issues, questioned the effectiveness of the Arbitration Tribunal's finding with respect to the Plaintiff. In the Plaintiff's opinion, that Court did not have jurisdiction over disputes with Telco's participation, because Telco was not a party to the arbitration clause.

In their subsequent pleadings, the Interveners cited the fact that the finality of the Vienna Arbitration Tribunal's judgment of November 26, 2004, had been recognized in Poland. The Plaintiff, on the other hand, argued that the Court of First Instance had issued a ruling rescinding Item 1 of said judgment, and that proceedings in higher courts are pending as a result of the appeal filed against the finding of the Commercial Court in Vienna by Elektrim and T-Mobile. Because of the hearing date of the Higher Regional Court in Vienna (scheduled for July 11, 2006) [the Plaintiff] has filed for the stay of the proceedings.

**The Appellate Court has considered the following:**

The requests for review should be granted.

To start with, it should be noted that these proceedings for injunction have been initiated prior to the Act of July 2, 2004, regarding amendments the Code of Civil Procedure and certain other regulations (Dz.U.04.172.1804 [Legislative Register 04.172.1804]), and are therefore taking place pursuant to the law previously in effect (Article 7). Pursuant to Article 730, § 1, of the Code of Civil Procedure (prior to amendment), one of the premises for the issue of a temporary injunction is credibility of the claim.

In the Appellate Court's view, this claim is not credible due to the final finding that the judgment of the Arbitration Tribunal is effective in Poland – Internationales Schiedsgericht der Wirtschaftskammer Osterreich in Vienna dated November 26, 2004, Docket No. SCH – 4750 (the March 29, 2006, ruling by the Appellate Court in Warsaw, Docket No. I ACa 893/05, dismissing the appeal of the February 2, 2005, ruling of the Regional Court in Warsaw, Docket No. VII Co 1709/04). The recognition finding is final and must therefore be respected in the Republic of Poland.

The arbitration ruling was issued in proceedings including such parties as Elektrim Telekomunikacja Sp. z o.o., for the Defendant, also participating as Plaintiff in the disputed matter.

**128**

4

I ACz 628/06

Both proceedings pertain to the same legal transaction: the sale of 226,079 shares in Polska Telefonia Cyfrowa Sp. z o.o. (as a non-cash contribution to cover the acquired newly-issued shares in Telco) by Elektrim S.A. to Elektrim Telekomunikacja Spolka z o.o. It is obvious that granting the Petition for a finding that said transaction was valid and effective and, consequently, also a finding that Telco is a shareholder of PTC Sp. z o.o. and the owner of said shares, would contradict the Tribunal's finding, which states that: "The sale of the shares to Telco is not effective and the shares of PTC in the sale have remained the property of Elektrim at all relevant times". It should be added that the Tribunal's judgment of November 26, 2004, is binding and enforceable in its country of issue: "This judgment is binding and enforceable pursuant to Article 594, paragraph 2 of the Austrian Code of Civil Procedure." (*Zivilprozessordnung*) (k.363).

The Plaintiff claims that the Vienna Arbitration Tribunal did not have jurisdiction over Telco, which said Court indicated in Item 4 of the judgment: "The Arbitration Tribunal has no jurisdiction over Telco and DT's claims against Telco may not be the object of these arbitration proceedings." As noted by the Appellate Court in the Grounds for the March 29, 2006, ruling, Docket No. 1 ACa 893/05, said Item corresponds in essence to the dismissal of the petition due to improper venue; therefore the ruling does not pertain to the subject matter of the case, and as such is not subject to recognition (page 14 of the Grounds). The refusal to examine DT's petition against Telco for damages does not conflict with the findings contained in Item 1.

The detailed argument for this position, shared by the Court examining this request for review, is contained in the previously quoted grounds for the ruling by the Appellate Court in Warsaw dated March 29, 2006. Therefore "the finding that there is no jurisdiction is the result and logical consequence of the Tribunal's examination of the validity (effectiveness) of Elektrim S.A.'s sale of the PTC shares to the Appellant." (page 14), "In consequence of finding that the share sale agreement was invalid (ineffective), (...) Telco does not have PTC shareholder status. Because it is not a PTC

**129**

I ACz 628/06

shareholder, it is not bound by the arbitration clause of the company's Articles of Incorporation. Therefore it is not under the jurisdiction of this court, and this court may not make rulings on claims directed against it." (Page 15).

Referenced in the Grounds of its ruling, the arbitration court also addresses the issue brought up by the Plaintiff as to whether the finding in Item 1 of the November 26, 2004, judgment is binding on Telco, as it is on Elektrim S.A. and TMD. The Court hearing this request for review also fully accepts the argument related to this issue (in the cited text, the term "Intervener" refers to Telco): "In the Appellate Court's opinion, the ruling does not go beyond the Arbitration Clause, and the Arbitration Tribunal's finding in Item 1 is also binding on the Appellant Company. The Appellant claimed in the proceedings before the Arbitration Tribunal that pursuant to the agreement with Elektrim S.A., the Appellant is a PTC shareholder. Art. 21 of the PTC Articles of Incorporation stated: "any disputes among the shareholders, or between shareholders and the company, ensuing from these Articles or in connection with other agreements related to these Articles, shall be resolved finally, and be binding on all parties, by the Arbitration Court at the Federal Chamber of Commerce and Industry in Vienna...". As a shareholder, the Appellant was bound by this arbitration clause. At the time the proceedings were initiated, before examination of the petition for a finding that the share sale had been invalid, Telco could not have been treated other than a PTC shareholder for the purposes of the arbitration court's jurisdiction and procedural legitimacy, and that is what determined the binding character of the arbitration. The arbitration court therefore examined the case, which subjectively and objectively fitted within the arbitration clause. Telco was an active participant in the arbitration court proceedings, and even filed a counter-petition, and besides, as already mentioned above, the Appellant petitioned the Tribunal for a judgment on jurisdiction that simultaneously resolved the issues in the case. (...) The Appellant surely did not wait for a judgment on the merits of the case (i.e., any judgment, either positive or negative, from its standpoint), only to find, after the waiting period, that the said judgment was not binding on the Appellant.

**130**

6

I ACz 628/06

The judgment, issued after hearing the evidence, that the purchase of shares was invalid (ineffective), which, in consequence, means that the Appellant did not have shareholder status, does not retroactively deprive the Tribunal of its jurisdiction over the case. A different path of reasoning would lead to the conclusion that a lack of jurisdiction retroactively extends to the ability to issue a binding decision regarding the purchase of the shares. Such conclusion must be found to be erroneous.

Similarly, it seems, the issue of the jurisdiction of an arbitration court examining its own jurisdiction in order to make a judgment on the validity of a contract that includes an arbitration clause, i.e. a finding that (all) parties to the arbitration proceedings are bound by the ruling on the validity of that contract, is governed by Article V, Section 3, of the European Convention on International Commercial Arbitration, signed in Geneva on April 21, 1961 (Legislative Register No. 40/1964, Item 270), to which Poland is a signatory (...) Pursuant to Article II of the (New York) Convention and Article 698, § 2, of the Code of Civil Procedure, "disputes pertaining to legal relations" may be submitted for arbitration. (...) In the matter under consideration, the arbitration court was presented with a dispute pertaining to the relations of the PTC company. Therefore the judgment that the Appellant was not included in the relations of the company was compatible with said provision (...). The Tribunal's judgment was issued in proceedings related to the petition for findings regarding rights (Article 189 of the Code of Civil Procedure), and the proceedings were against both parties of the action being appealed. The judgment is not internally inconsistent or ambivalent. Item 1 does not address the Appellant as a third party, but as a party to proceedings before the arbitration court, and it is binding on the Appellant, as has been already discussed above; it effectively resolves the issue that the Appellant is not a PTC shareholder due to the defective nature of the purchase of shares in said company (Pages 16 - 18 of the Grounds in Case I ACa 893/05). Neither the ABGB regulations referred to by the Plaintiff in the pleading of May 31, 2006, nor a reading of the doctrine or case law provide any basis for questioning the Appellate Court's reasoning, which can also be useful as grounds for a decision in these related proceedings.

**131**

I ACz 628/06

On December 20, 2005, the Commercial Court in Vienna issued a judgment in which it overturned the first part of the November 26, 2004, Arbitration Tribunal judgment ("The transfer of shares to Telco is ineffective, and the relevant PTC shares had been the property of Elektrim at all relevant times.") The judgment is not yet final, and therefore it does not affect an assessment of whether the recognized Vienna Arbitration Tribunal judgment is relevant. However, it should be noted at this point that the Appellate Court shares the view that a ruling granting a petition for recognition of a foreign arbitration court judgment is not an independent ruling, and the judgment in favor of recognition plays a fundamental role. Together they constitute "one compound legal act" (K. Weitz in "Effectiveness of Recognition of a Foreign Court Judgment," Przegląd Sadowy [Court Review] for 1998, No. 9, page 54).

In the pleading dated May 31, 2006, addressed to the Appellate Court, the Plaintiff filed a petition for a "stay of proceedings" pursuant to Article 177, § 1, Item 1 of the Code of Civil Procedure, based on the fact the Higher Regional Court in Vienna scheduled a hearing for July 11, 2006, for the purpose of examining Elektrim and T-Mobile's appeal of the Commercial Court judgment of December 20, 2005. It has not been specified which of the related proceedings the petition refers to (I ACz: 628/06, 629/06, 630/06, or 631/06). The grounds for the petition indicate a critical issue with respect to assessing the credibility of the claim (the extent to which Telco is bound by the Arbitration Tribunal's judgment), which is subject to examination within the scope of requests for review regarding injunctions. Nevertheless, the referenced law states that the Court may stay proceedings *ex officio* (not on the basis of a petition); therefore the filing of a petition has no significance (as opposed to the situations referred to in Articles 176 and 178 of the Code of Civil Procedure).

The premise for the possible application of Article 177, § 1, Item 1 of the Code of Civil Procedure is the finding that a decision in a case is contingent upon the result of another pending civil matter. Pursuant to Article 391, § 1, of the Code of Civil Procedure, this rule applies in appellate proceedings. However, in appellate proceedings consequent to a request for review

**132**

I ACz 628/06

regarding an injunction of a claim, the situation referred to in Article 177, § 1, Item 1 of the Code of Civil Procedure does not apply. A judgment on a related issue is not a ruling in a case (construed as a whole). It should also be indicated that a stay of proceedings has no impact on actions for an injunction of a petition (Article 179, § 3 of the Code of Civil Procedure). An injunction may be stopped or amended during a stay (see the Supreme Court resolution of October 16, 1972, III CZP 67/72, OSP 1973/5/87). Therefore, in fact the legislation does not provide at all for any stay of related proceedings regarding the injunction of a claim.

In consideration of the foregoing arguments in favor of overturning the ruling and dismissing the petition for injunction, the court has found it unnecessary to refer to the other allegations and arguments referenced by the Interveners.

The legal basis for decision is Article 386, § 1 of the Code of Civil Procedure, in conjunction with Article 397, § 2, of the Code of Civil Procedure.

|  |  |
|---|---|
| [Rectangular Stamp] | Proper signatures on the original.<br>True copy:<br>Senior Clerk of Court<br>Monika Skrzypczynska<br>[illegible signature]<br>Senior Court Secretary |
| [Round Seal] | Appellate Court in Warsaw, 9<br>[national emblem in the middle of the seal] |

**133**

9

<u>TRANSLATOR'S CERTIFICATE</u>

I, .Tomasz Poplawski, declare under penalty of perjury that I am thoroughly competent in both Polish and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from Polish to English, on this .10th day of ..May, 2007.


Translated Document:

Warsaw Appellate Court Decision

134

Sygn. akt I ACz 628/06

# P O S T A N O W I E N I E

Dnia 20 czerwca 2006 r.

Sąd Apelacyjny w Warszawie I Wydział Cywilny

w składzie następującym :

| | |
|---|---|
| Przewodniczący Sędzia SA | Zbigniew Cendrowski |
| Sędzia SA | Izabella Fick - Brzeska |
| Sędzia SA | Bogdan Świerczakowski – spr. |

po rozpoznaniu w dniu 20 czerwca 2006 r. w Warszawie

na posiedzeniu niejawnym

sprawy z powództwa Elektrim Telekomunikacja sp. z o.o. z siedzibą w Warszawie

przeciwko Polskiej Telefonii Cyfrowej sp. z o.o. z siedzibą w Warszawie

z udziałem interwenientów ubocznych po stronie pozwanej: Elektrim S.A. z

siedzibą w Warszawie i T – Mobile Deutschland GmbH z siedzibą w Bonn

o ustalenie

na skutek zażalenia interwenientów ubocznych

na postanowienie Sądu Okręgowego w Warszawie

dnia 30 grudnia 2004 r.

sygnatura akt XVI GC 1984/04

p o s t a n a w i a :

zmienić zaskarżone postanowienie i wniosek o zabezpieczenie oddalić.

<table>
<tr><td colspan="3">KUŚAG<br>KOŚ<br>GAERTNER</td><td>wpłynęło:</td></tr>
<tr><td colspan="4">2 8. 06. 2006</td></tr>
<tr><td>oryginał</td><td>akcja</td><td>przyjął</td></tr>
<tr><td>SBB</td><td>.</td><td>ARz</td></tr>
</table>

135

I ACz 628/06

## Uzasadnienie

Zaskarżonym postanowieniem Sąd Okręgowy w Warszawie zabezpieczył powództwo Elektrim Telekomunikacja sp. z o.o. w Warszawie (dalej Telco) o ustalenie, iż jest wspólnikiem pozwanego – Polskiej Telefonii Cyfrowej sp. z o.o. w Warszawie (dalej : PTC) i że należy do niego 226.079 udziałów o łącznej wartości nominalnej 1.000 zł za każdy udział, oraz, że przeniesienie przez Elektrim S.A. na powoda tychże udziałów jest ważne i skuteczne wobec pozwanego, poprzez zakazanie pozwanemu – PTC dokonywania zmian w księdze udziałów tej spółki w stosunku do udziałów w kapitale zakładowym, należących według wpisu do tej księgi na dzień 16 grudnia 2004 r. do powoda, a nabytych od Elektrim S.A. w Warszawie, którego to nabycia udziałów dotyczyła uchwała Rady Nadzorczej PTC nr 161 z 21 października 1999 r. Oddalił wniosek w pozostałej części.

Sąd I Instancji stwierdził, że powód nabył stanowiące przedmiot sporu 226.079 udziałów w kapitale zakładowym pozwanego od nieuczestniczącego w sporze Elektrim S.A. Uchwałą z dnia 21 października 1999 r. Rada Nadzorcza PTC sp. z o.o. wyraziła zgodę na przeniesienie tychże udziałów na powoda, wobec czego ten został wpisany do księgi udziałów PTC sp. z o.o.

Kwestionując ważność uchwały Rady Nadzorczej pozwany wywodzi nieskuteczność nabycia przez powoda spornych udziałów. Powód zaś twierdzi, iż uchwała ta jest ważna, gdyż w świetle obowiązujących przepisów Kodeksu spółek handlowych postanowienia Regulaminu Rady Nadzorczej z których pozwany wywodzi swe stanowisko - są nieważne. W ocenie Sądu Okręgowego powód uprawdopodobnił istnienie interesu prawnego, a sposób zabezpieczenia nie obciąży nadmiernie pozwanego, nie uniemożliwia bowiem prowadzenia spraw firmy.

W zażaleniu interwenient uboczny Elektrim S.A. wniósł o zmianę postanowienia poprzez oddalenie wniosku o zabezpieczenie. Zarzucił naruszenie art. 730 § 1 k.p.c., 739 § 1 k.p.c. i art. 755 § 2 k.p.c., w szczególności

2

136

zakwestionował wiarygodność roszczenia. Skarżący wskazał, ze postanowienie o zabezpieczeniu roszczenia oparte zostało na podstawie przedstawionego przez powoda stanu faktycznego i prawnego, z którego wynikało, iż pozwana Spółka w pewnym momencie zaczęła bez widocznej przyczyny kwestionować prawa udziałowe powoda. Tymczasem w sprawie rzeczonych udziałów, które były przedmiotem transakcji pomiędzy Elektrim S.A. i powodem, wydane zostało prawomocne orzeczenie sądowe Sądu Arbitrażowego w postępowaniu przed którym uczestniczył również powód. Trybunał Arbitrażowy w Wiedniu stwierdził między innymi, że zbycie 48% udziałów w PTC na rzecz Telco przez Elektrim jest bezskuteczne i udziały w PTC, które były jego przedmiotem „pozostawały własnością Elektrimu w każdym właściwym czasie". Tym samym w ocenie skarżącego istnieje już rozstrzygnięcie w przedmiocie skuteczności zbycia spornych udziałów co prowadzić powinno do wniosku, że roszczenie powoda jest niewiarygodne.

Niezależnie od powyższego, zdaniem skarżącego zaskarżone postanowienie nie odpowiada wymogowi precyzyjnego formułowania zarządzeń tymczasowych.

Zażalenie interwenienta ubocznego T – Mobile Deustland Gmbh również zmierza do zmiany postanowienia poprzez oddalenie wniosku. W ocenie skarżącego roszczenie powoda nie jest wiarygodne bowiem powód nie posiada legitymacji materialnej do wystąpienia z powództwem o ustalenie, brak jest legitymacji pozwanego w sprawie o ustalenie ważności i skuteczności umowy, a nadto zachodzi niezgodność żądania ze stanem prawnym wobec nieistnienia stosunku prawnego spółki pomiędzy powodem a PTC wobec bezskuteczności umowy przeniesienia tychże udziałów pomiędzy powodem a Elektrim S.A.

Ponadto skarżący wskazał, że w sprawie nie zachodzi obawa, iż brak zabezpieczenia uniemożliwi zaspokojenie roszczenia, nie zachodzi również konieczność zabezpieczenia wykonalności orzeczenia. Sposób zabezpieczenia, zdaniem skarżącego, zmierza do zaspokojenia roszczenia, a nawet wykracza ponad zabezpieczane roszczenie. Także ten skarżący powołał się na wyrok Trybunału Arbitrażowego w Wiedniu.

3

**137**

Powód złożył odpowiedź na oba zażalenia w których m.in. kwestionuje skuteczność wobec siebie wyroku Trybunału Arbitrażowego. Sąd ten, zdaniem powoda nie miał kompetencji do rozstrzygania sporów z udziałem Telco, bowiem nie był on stroną zapisu na sąd polubowny.

W kolejnych pismach procesowych skarżący powołali się na fakt prawomocnego uznania skuteczności na obszarze Polski orzeczenia Trybunału Arbitrażowego w Wiedniu z dnia 26 listopada 2004r. Powód zaś m.in. podniósł, że zapadło w I instancji orzeczenie uchylające punkt pierwszy tego orzeczenia i toczy się postępowanie międzyinstancyjne wywołane zaskarżeniem wyroku Sądu Handlowego w Wiedniu przez Elektrim oraz T-Mobile. W związku z wyznaczeniem terminu rozprawy przed Wyższym Sądem Krajowym w Wiedniu (na dzień 11 lipca 2006 r.), wniósł o zawieszenie postępowania.

**Sąd Apelacyjny zważył, co następuje:**

Zażalenia zasługują na uwzględnienie.

Na wstępie należy zaznaczyć, że niniejsze postępowanie zabezpieczające z racji wszczęcia przed dniem wejścia w życie ustawy z dnia 2 lipca 2004 r. o zmianie ustawy - Kodeks postępowania cywilnego oraz niektórych innych ustaw (Dz.U.04.172.1804), toczy się według przepisów dotychczasowych (art. 7). Jedną z przesłanek umożliwiających wydanie zarządzenia tymczasowego na podstawie art. 730 § 1 k.p.c. (przed zmianą) jest wiarygodność roszczenia.

Zdaniem Sądu Apelacyjnego niniejsze powództwo nie jest wiarygodne, wobec prawomocnego uznania skuteczności na obszarze Polski orzeczenia Trybunału Arbitrażowego – Internationales Schiedsgericht der Wirtschaftskammer Osterreich w Wiedniu z dnia 26 listopada 2004 r., sygn. akt SCH – 4750 (postanowienie Sądu Apelacyjnego w Warszawie z dnia 29 marca 2006 r., sygn. akt I ACa 893/05 oddalające apelacje od postanowienia Sądu Okręgowego w Warszawie z dnia 2 lutego 2005 r., sygn. akt VII Co 1709/04). Prawomocne uznanie zrodziło obowiązek respektowania tegoż orzeczenia na terytorium RP.

Orzeczenie arbitrażowe zapadło w postępowaniu z udziałem po stronie pozwanej m.in. Elektrim Telekomunikacja Sp. z o.o. - powoda w przedmiotowym

4

sporze o ustalenie. Obydwa postępowania dotyczą tej samej czynności prawnej – zbycia przez Elektrim S.A. na rzecz Elektrim Telekomunikacja Spółka z o.o. 226.079 udziałów w Polskiej Telefonii Cyfrowej Sp. z o.o. (tytułem wkładu niepieniężnego na pokrycie objętych, nowopowstałych udziałów w Telco). Jest oczywiste, że uwzględnienie powództwa o ustalenie, iż owa czynność jest ważna i skuteczna, a w konsekwencji także stwierdzenie, iż Telco jest wspólnikiem w PTC Sp. z o.o. i właścicielem rzeczonych udziałów, pozostawałoby w sprzeczności z zapadłym werdyktem Trybunału o treści : „Zbycie na rzecz Telco jest bezskuteczne i udziały w PTC, które były jego przedmiotem pozostawały własnością Elektrimu w każdym właściwym czasie". Dodać należy, że orzeczenie Trybunału z 26 listopada 2004 r. jest wiążące i wykonalne w kraju jego wydania : „Niniejsze orzeczenie jest wiążące i wykonalne zgodnie z Art. 594 par. 2 austriackiego kodeksu postępowania cywilnego (*Zivilprozessordnung*) (k.363).

Powód twierdzi, że Trybunał Arbitrażowy w Wiedniu nie posiadał jurysdykcji wobec Telco, czemu dał wyraz w punkcie czwartym orzeczenia : „Trybunał Arbitrażowy nie ma jurysdykcji nad Telco i roszczenia DT względem Telco nie mogą być przedmiotem tego arbitrażu." Jak zauważył Sąd Apelacyjny w uzasadnieniu postanowienia z dnia 29 marca 2006 r., sygn. akt I ACa 893/05, treściowo punkt ten odpowiada postanowieniu o odrzuceniu pozwu z powodu niedopuszczalności drogi sądowej i jako orzeczenie niemerytoryczne, nie podlega uznaniu (str. 14 uzasadnienia). Odmowa rozpoznania pozwu DT przeciwko Telco o odszkodowanie nie koliduje z rozstrzygnięciem zawartym w punkcie pierwszym.

Szczegółową argumentację takiego stanowiska, podzielaną przez Sąd w składzie rozpoznającym niniejsze zażalenie, zawiera cytowane już uzasadnienie postanowienia Sądu Apelacyjnego w Warszawie z 29 marca 2006 r. A zatem, „stwierdzenie braku jurysdykcji jest wynikiem, logicznym następstwem merytorycznego zbadania przez Trybunał ważności (skuteczności) zbycia przez Elektrim S.A. udziałów w PTC na rzecz skarżącej." (str. 14), „Ustalenie nieważności (bezskuteczności) umowy zbycia udziałów powoduje, że (...) Telco nie ma statusu wspólnika w PTC. Nie będąc wspólnikiem PTC, nie jest objęta

zapisem na sąd polubowny zawartym w umowie tej spółki. Powoduje to, że nie podlega jurysdykcji tego sądu, zatem sąd ten nie może orzekać o kierowanych przeciwko niej roszczeniach." (str. 15).

Cytowane uzasadnienie postanowienia SA odnosi się także do eksponowanego przez powoda zagadnienia, czy rozstrzygnięcie z punktu pierwszego orzeczenia z 26 listopada 2004 r. wiąże, poza Elektrimem S.A. i TMD, także Telco. Również wywód dotyczący tej kwestii Sąd rozpoznający zażalenie w pełni akceptuje (w cytowanym tekście określenie „skarżący" oznacza „Telco") : „Zdaniem Sądu Apelacyjnego nie mamy do czynienia z orzeczeniem wykraczającym poza klauzulę arbitrażową i rozstrzygnięcie Trybunału Arbitrażowego zawarte w punkcie pierwszym wiąże skarżącą spółkę. Skarżąca w postępowaniu przed Trybunałem Arbitrażowym twierdziła, że w wyniku umowy zawartej z Elektrim S.A. jest wspólnikiem PTC. Art. 21 umowy spółki PTC stanowił, że „wszelkie spory pomiędzy wspólnikami oraz pomiędzy nimi a spółką powstałe na podstawie niniejszej umowy albo w związku z innymi umowami odnoszącymi się do niniejszej umowy będą ostatecznie i wiążąco rozstrzygane przez Sąd Arbitrażowy przy Federalnej Izbie Handlowo – Przemysłowej w Wiedniu…" (…). Jako wspólnik była więc związana tymże zapisem na sąd polubowny. W chwili wszczęcia postępowania, przed badaniem merytorycznym żądania pozwu ustalenia nieważności zbycia udziałów, z punktu widzenia jurysdykcji arbitrażowej i legitymacji procesowej, Telco nie mogła być traktowana inaczej niż jako wspólnik PTC, co przesądzało o kompetencji arbitrażu. Sąd polubowny rozstrzygał zatem sprawę, która przedmiotowo i podmiotowo mieściła się w klauzuli arbitrażowej. Telco aktywnie uczestniczyła w postępowaniu przed sądem polubownym wnosząc nawet powództwo wzajemne a nadto, jak już wyżej wskazano wnioskowała, aby Trybunał wydał swoje orzeczenie na temat właściwości jednocześnie z rozstrzygnięciem kwestii merytorycznych (…). Oczekiwanie na orzeczenie merytoryczne (a więc każde, pozytywne i negatywne dla niej) nie zmierzało chyba do tego by, po okresie oczekiwania, móc stwierdzić, że orzeczenie to nie jest dla niej wiążące.

6

140

Orzeczenie, po przeprowadzeniu postępowania dowodowego, o nieważności nabycia udziałów (bezskuteczności) – co w konsekwencji oznacza stwierdzenie braku statusu wspólnika – nie uchyla ze skutkiem wstecznym kompetencji Trybunału do orzekania w sprawie. Odmienne wnioskowanie nakazywałoby przyjęcie, że brak kompetencji rozciąga się wstecznie na możność wiążącego badania ważności nabycia udziałów. Wnioskowanie takie musi być uznane za wadliwe.

Podobnie, jak się wydaje, zagadnienie kompetencji sądu arbitrażowego badającego swoją właściwość, do oceny ważności kontraktu, w którym zawarty jest zapis na sąd polubowny – w duchu związania uczestników (wszystkich) postępowania arbitrażowego orzeczeniem o ważności tego kontraktu – rozstrzyga art. V ust. 3 Konwencji Europejskiej o międzynarodowym Arbitrażu Handlowym, sporządzonej w Genewie dnia 21 kwietnia 1961 r. (Dz.U. Nr 40/1964 r., poz. 270), której Polska jest stroną (…). Zgodnie z art. II Konwencji (nowojorskiej) i art. 698 § 2 k.p.c. rozstrzygnięciu sądu polubownego poddaje się „spory z oznaczonego stosunku prawnego". (…). W sprawie, o którą chodzi, rozstrzygnięciu sądu arbitrażowego poddano spór ze stosunku spółki PTC. Zatem orzeczenie, że w stosunek spółki nie została związana skarżąca było orzekaniem zgodnie z warunkiem zapisu (…). Wyrok Trybunału został wydany w postępowaniu, którego przedmiotem było żądanie ustalenia prawa (art. 189 k.p.c.), postępowanie toczyło się przeciwko obu stronom kwestionowanej czynności. Wyrok nie jest sprzeczny wewnętrznie i nie jest wieloznaczny. Punkt pierwszy nie odnosi się do skarżącej jako osoby trzeciej lecz skarżącej jako strony postępowania przed sądem polubownym i wiąże skarżącą, o czym była mowa; skutecznie względem niej rozstrzyga, że nie jest wspólnikiem PTC z powodu wadliwości czynności nabycia udziałów w tej spółce" (str. 16-18 uzasadnienia w sprawie I ACa 893/05). Przytoczone przez powoda w piśmie procesowym z 31 maja 2006 r. przepisy ABGB oraz poglądy doktryny i orzecznictwa nie dają podstaw do zweryfikowania przytoczonego wywodu Sądu Apelacyjnego, przydatnego także dla umotywowania rozstrzygnięcia w niniejszym postępowaniu incydentalnym.

7

141

W dniu 20 grudnia 2005 r. Sąd Handlowy w Wiedniu wydał orzeczenie, w którym uchylił pierwszą część orzeczenia Trybunału Arbitrażowego z dnia 26 listopada 2004 r. („Wniesienie udziałów do Telco jest nieskuteczne, a udziały PTC będące przedmiotem tego wniesienia stanowiły własność Elektrim przez cały istotny okres"). Jest to orzeczenie nieprawomocne i tym samym nie wpływa na ocenę znaczenia uznanego orzeczenia Trybunału Arbitrażowego w Wiedniu. W tym miejscu należy wszakże zaznaczyć, że Sąd Apelacyjny podziela pogląd, iż postanowienie uwzględniające wniosek o uznanie zagranicznego orzeczenia arbitrażowego nie jest postanowieniem samoistnym i zasadniczą rolę odgrywa orzeczenie podlegające uznaniu. Oba tworzą „jeden akt prawny złożony" (K. Weitz w : „Skuteczność uznania zagranicznego orzeczenia", Przegląd Sądowy z 1998 r., Nr 9, str. 54).

W piśmie procesowym z dnia 31 maja 2006 r. adresowanym do Sądu Apelacyjnego, powód złożył wniosek o „zawieszenie postępowania" na podstawie art. 177 § 1 pkt 1 k.p.c., powołując się na fakt wyznaczenia przez Wyższy Sąd Krajowy w Wiedniu na dzień 11 lipca 2006 r. rozprawy w przedmiocie rozpoznania apelacji Elektrim oraz T-Mobile od wyroku Sądu Handlowego z 20 grudnia 2005 r. Nie zostało sprecyzowane, którego z postępowań incydentalnych ów wniosek dotyczy (I ACz : 628/06, 629/06, 630/06 czy 631/06). Motywy wniosku wskazują na kwestię istotną dla oceny wiarygodności roszczenia (zakres związania Telco wyrokiem Trybunału Arbitrażowego), co podlega badaniu w ramach rozpoznawania zażaleń w przedmiocie zabezpieczenia. Niemniej, wskazany przepis stanowi, że sąd może zawiesić postępowanie z urzędu (nie na wniosek), a więc złożenie wniosku nie ma doniosłego znaczenia (inaczej niż w sytuacjach przewidzianych w art. 176 i 178 k.p.c.).

Przesłanką ewentualnego zastosowania art. 177 § 1 pkt 1 k.p.c. jest stwierdzenie, że rozstrzygnięcie sprawy zależy od wyniku innego toczącego się postępowania cywilnego. Ów przepis ma - z mocy art. 391 § 1 k.p.c. – zastosowanie w postępowaniu apelacyjnym. W postępowaniu zażaleniowym wszakże,    wywołanym    zaskarżeniem    postanowienia    w    przedmiocie

8

142

zabezpieczenia roszczenia, nie zachodzi sytuacja opisana w art. 177 § 1 pkt 1 k.p.c. Orzeczenie w kwestii incydentalnej nie jest rozstrzygnięciem sprawy (rozumianej jako całość). Dodać należy, iż zawieszenie postępowania nie wywołuje skutków dla czynności mających na celu zabezpieczenie powództwa (art. 179 § 3 k.p.c.). Podczas zawieszenia dopuszczalne jest uchylenie lub zmiana zabezpieczenia (por. uchwałę Sądu Najwyższego z dnia 16 października 1972 r., III CZP 67/72, OSP 1973/5/87). Zatem de facto ustawa w ogóle nie przewiduje zawieszenia postępowania wpadkowego, toczącego się w przedmiocie zabezpieczenia roszczenia.

Wobec przytoczonej argumentacji przemawiającej za zmianą postanowienia i oddaleniem wniosku o zabezpieczenie, za zbędne należało uznać odnoszenie się do pozostałych zarzutów i argumentów przytoczonych przez skarżących.

Podstawę prawną rozstrzygnięcia stanowi art. 386 § 1 k.p.c. w zw. z art. 397 § 2 k.p.c.

Na oryginale właściwe podpisy
Za zgodność:
st. sekretarz sądowy
Monika Skrzypczyńska
st. sekretarz sądowy

# EXHIBIT F

2 R 49/06z



REPUBLIC OF AUSTRIA
**Higher Regional Court Vienna**

### In the Name of the Republic

The Higher Regional Court of Vienna as the appellate court, following public appellate proceedings, has rendered the following justified sentence, by the President of the Senate of the Higher Regional Court, Dr. Bauer (Chairperson), the Higher Regional Court Justice Dr. Dallinger, and Mr. Pretsch, Kreisrat, in the matter of plaintiff **Elektrim Telekomunikacja Sp. z o.o.**, Al. Jana Pawla II 77/79, 00-828 Warsaw, Poland, represented by Graf, Maxl & Pitkowitz Rechtsanwälte GmbH in Vienna, versus defendants **1) T-Mobile Deutschland GmbH,** Landgrabenweg 51, D-53227 Bonn, Germany, represented by Hausmaninger Kletter Rechtsanwälte-Gesellschaft mbH in Vienna and Wolf Theiss Rechtsanwälte-Gesellschaft mbH in Vienna, and **2) Elektrim S.A.**, ul. Panska 77/79, 00-834 Warsaw, Poland, represented by Baier Böhm Rechtsanwälte OEG in Vienna, regarding dismissal of an arbitration judgment (amount in controversy: US$ 1 million; amount in controversy according to Legal Fees Act: € 102 million), appeal by the defendants, and cost recourse by plaintiff [inserted:] against the sentence by the Commercial Court of Vienna of 12/20/2005, Case No. 14 Cg 17/05t-62:

Both appeals shall be upheld.

The sentence under dispute shall be changed in its Sections 1., 2., and 4., so that it now reads:

"1. The Petition for Relief in regard to

**145**

**2 R 49/06z**

dismissing, in its entirety, the arbitration judgment of the Austrian Chamber of Commerce's International Court of Arbitration of November 26, 2004, Case No. SCH 4750, rendered between DeTe Mobil Deutsche Telekom Mobilnet GmbH, Elektrim S.A., and Elektrim Telekomunikacja Sp. z o.o., shall be rejected.

2. (deleted)

4. Plaintiff shall be responsible for remitting court costs to the first defendant, in the amount of € 172,729.88 (which includes € 28,787.78 sales tax and € 3.20 cash expenditures), and to the second defendant in the amount of € 112,267.62 (which includes € 18,711.27 sales tax) within 14 days."

Plaintiff's cost recourse motion is hereby referred to the above sentence.

Plaintiff shall be responsible for remitting the costs of the appeals proceeding to the first defendant, in the amount of € 512,015.00 (which includes € 8,466.00 sales tax and € 461,219.00 cash expenditures), and to the second defendant in the amount of € 512,015.00 (which includes € 8,466.00 sales tax and € 461,219.00 cash expenditures) within 14 days.

The amount in controversy exceeds € 20,000.00.

Ordinary appeal shall not be permissible.

### J u s t i f i c a t i o n :

In a complaint filed on 3/9/2005, plaintiff (herein: Telco) moved to have an arbitration judgment by the International Court of

Arbitration of the Austrian Chamber of Commerce of 11/26/2004 (following a partial judgment on 5/30/2002) rescinded.

Parties in the arbitration case were plaintiff and counter-defendant DeTe Mobil Deutsche Telekom Mobilnet GmbH (later: T-Mobile Deutschland GmbH; herein: "**DT**"), and defendants and counter-complaintants Elektrim S.A. (herein: "**Elektrim**") and Elektrim Telekomunikacja Sp. z. o.o. (herein: "**Telco**").

The facts from which the arbitration arose were that DT, Elektrim, and other companies, in view of the fact that the Polish government had publicly announced its intention to award licenses for building and operating a 900 MHz GSM mobile telephone enterprise in Poland by means of a public auction, had concluded a Shareholders' Agreement, which set forth the rights and obligations of the parties as shareholders in Polska Telefonia Cyfrowa (herein: "**PTC**"), which had been founded on 12/20/1995.

In particular, the Shareholders' Agreement stipulated that important measures could only be resolved when all members of the board of directors that are present at a meeting and who were nominated by an appropriate party to the agreement, vote for such important measures or agree to such in writing, and that important measures include specifically consent to the transfer of any shares in the

**2 R 49/06z**

company. Any transfer, pledge, and any other disposal of shares in the company or even part of the shares, or of any other interest in it by any of the shareholders requires the prior approval of the board of directors.

In case of severe contract violations, the Shareholders' Agreement stipulated the following: "Each party … hereby irrevocably offers to the appropriate parties to this Agreement the right to purchase their shares in the company (the "options") at the price that follows from the terms set forth in Article 16 (3) (the "call option"), whereby the offer as per Article 16 shall be conditional on one of the following events:

a) …

b) a court of arbitration passes declaratory arbitration declaring severe contract violation by the cessor.

It is a severe contract violation pursuant to Article 16.1, according to Article 16.2, when a major violation of one of the parties' material obligations under this Agreement or under associated agreements in regard to the company or to other parties to the Agreement, continues for longer than 20 business days, beginning from the notification of the party in violation of its contract violation in writing;

2 R 49/06z

or when and as long as the cessor is financially inconvenienced in the sense of Article 19.4 (3).

The Shareholders' Agreement contains the following arbitration clause in Article 21: "If any disputes or controversies arise from or in connection with this Agreement, then such disputes or controversies shall be resolved, if possible, by negotiation among the parties.

If such negotiations fail, then all disputes between the parties and between them and the company pursuant to this Agreement, or in connection with it, or in connection with other agreements that are related to this Shareholders' Agreement, shall be resolved finally and bindingly by the Arbitration Court of the Federal Chamber of Commerce in Vienna, Austria, by three arbitrators according to that Arbitration Court's rules. …"

The articles of incorporation agreed upon at the time of the foundation of PTC include the following stipulation, among others, in Article 21: "If any disputes or controversies arise from or in connection with this Agreement, then such disputes or controversies shall be resolved, if possible, by negotiation among the parties.

If such negotiations fail, then

all disputes between the parties and between them and the company pursuant to this Agreement, or in connection with it, or in connection with other agreements that are related to this Shareholders' Agreement, shall be resolved finally and bindingly by the Arbitration Court of the Federal Chamber of Commerce in Vienna, Austria, by three arbitrators according to that Arbitration Court's rules. …"

DT filed a complaint on 12/7/2000 pursuant to the Shareholders' Agreement and Article 21.2 of the Articles of Incorporation, against Telco and Elektrim, requesting:

1)       a) Declaration of the invalidity of the alleged transfer of 48% of PTC shares from Elektrim to Telco;

b) Declaration of the complete or partial invalidity of the alleged transfer of 48% of PTC shares from Elektrim to Telco in regard to plaintiff pursuant to Art. 59 of the Polish Civil Code;

c) *in eventu* sentence to transfer 48% of PTC shares from Telco to Elektrim;

2)       a) further, or *in eventu*, declaration of major contract violation by Elektrim in regard to Article 8 and/or 1.5 and/or 10.1 of the Shareholders' Agreement;

b) Sentence pursuant to Article 16.1 of the Shareholders' Agreement regarding plaintiff's right

to exercise its call option on the PTC shares held by Elektrim and/or Telco;

3) further, or *in eventu*, reimbursement of all losses incurred by plaintiff due to the contract violations by Elektrim and/or Telco set forth above by imposing damages on Elektrim and/or Telco, particularly the losses caused by Telco's unlawful interference in the contractual relationship between plaintiff and Elektrim:

4) Interest, and

5) Cost of the arbitration.

With a partial arbitration judgment on 5/30/2002, the Court of Arbitration decided as follows:

"Judgment regarding the Arbitration Court's jurisdiction over Telco shall remain reserved until sentence is passed *in rem*,

DT's non-contractual claims fall under the purview of the arbitration clause, and the Court of Arbitration thus has jurisdiction over these claims;

Sentence regarding the costs of this proceeding shall be passed as part of the legal arbitration judgment."

In the question of whether the Arbitration Court's jurisdiction includes Telco, the Court based its justification of this judgment on the argument that Telco could only be subject to the arbitration clause in the

**151**

2 R 49/06z

Articles of Incorporation and the Shareholders' Agreement in its role as PTC shareholder, but that this role was being disputed, because the validity of the transfer was itself being disputed. That is why judgment *in rem* would also include a judgment regarding jurisdiction over Telco.

In the arbitration judgment now being challenged, the Court of Arbitration decided as follows:

"– The Telco transfer was legally void, and the PTC-shares that were the subject of this transfer therefore remained Elektrim's property at all relevant times;

– The transfer of the PTC-shares from Elektrim to Telco alone does not constitute a major contract violation according to Article 16.1 of the Shareholders' Agreement, but will constitute such violation if Elektrim has not claimed the shares from Telco within two months of notification of this arbitration judgment at the latest;

– DT's claims due to financial inconvenience are rejected;

– The Arbitration Court has no jurisdiction over Telco, and DT's claims against Telco can not be a subject of this arbitration;

– DT's damages demands are withdrawn;

– The determination of responsibility for costs of the arbitration proceeding shall be reserved

**2 R 49/06z**

for a later arbitration judgment;

– any other complaints or counter-complaints by the parties are rejected."

In its **Complaint**, plaintiff desires dismissal of the arbitration judgment in its entirety.

Plaintiff alleges that the arbitration judgment is not consistent with the basic values of Austrian principles of law (§595, Para. 1, No. 6, Rules of Civil Procedure, ZPO [*Zivilprozessordnung*]).

Plaintiff alleges that the judgment is contradictory in regard to the rights to the PTC shares, because the Arbitration Court declared on the one hand that the transfer to Telco was void, but also maintains on the other hand that a severe contract violation exists only if Elektrim does not claim the shares from Telco within two months (which would presuppose that Telco's ownership of the shares is recognized).

It is further alleged that the judgment is contradictory in regard to the Court's jurisdiction over Telco, because the Court said in Para. 4. that it has no jurisdiction over Telco, but in Para. 2 of the sentence Elektrim is required to claim the PTC shares from Telco, which represents interfering with Telco's position as owner of the shares.

Therefore, the Arbitration Court's determination is allegedly deficient or lacking in justification.

Also, the judgment is allegedly perplexing and unenforceable, because it depends, in regard to the

re-transfer of shares, on the actions of a third party, namely Telco, which, according to the Court's own judgment, is not subject to the Court's jurisdiction.

Allegedly, the arbitration judgment causes "an external force at least similar to legal force" in regard to Telco, even though the Court had declared it made no claim to having jurisdiction of Telco.

This arbitration judgment could allegedly result in Polish courts registering Elektrim instead of Telco as the owner of the PTC shares, which would be tantamount to forced expropriation without legal basis.

In addition, allegedly the principle of deciding civil law cases on the basis of the facts at the end of the verbal proceedings in lower court was being violated, because according to the arbitration judgment, a severe contract violation would not exist unless Elektrim did not reclaim the shares that had been transferred to Telco.

Allegedly, the judgment effectively states that the transfer of the PTC shares to Telco was void, that Elektrim was in violation of the Shareholders' Agreement in the sense of its Article 16.1 unless Elektrim claimed the PTC shares from Telco within two months, and directly interferes with Telco's basic rights, and thus violates basic values of Austrian law as well as cogent material rights.

11                                        2 R 49/06z

Further, plaintiff alleges that the Arbitration Court exceeded its calling (§595, No. 1, No. 5 ZPO), because it went beyond the Arbitration Clause. Telco allegedly was never a shareholder of PTC, therefore the Arbitration Court's judgment should have stated only that it had no jurisdiction over Telco. Instead, the Arbitration Court rendered judgments that affect Telco directly and materially. Also, any judgments regarding future events allegedly are not covered by the Arbitration Clause.

The Petition for Relief was allegedly exceeded by the Arbitration Court by rendering a conditional judgment about the legal effects of future actions (in regard to a severe contract violation).

In addition, the arbitration is allegedly not legal (§595, Para. 1, No. 1 ZPO), because the judgment applied to Telco's affairs, even though Telco had not become a PTC shareholder and was thus not bound by the arbitration clause.

Allegedly, the principle of fair procedure (§595, Para. 1, No. 3 ZPO) was breached, because Telco was not heard in regard to certain issues identified in the Complaint.

Also, the Arbitration Court's composition was allegedly deficient (§595, Para. 1, No. 3 ZPO), which is being noted in the course of attorney's due diligence. Arbiter Rajski is allegedly a Polish national, and there is no indication in the judgment as to his function, so that it is impossible to exclude the possibility of

**2 R 49/06z**

his having been assigned the function of chairperson internally, which would be in breach of the arbitration agreement, under which no Polish national shall be chairperson.

**Defendants** denied each of the causes for dismissal.

The issue of whether Elektrim could transfer shares to Telco even though the shares' transferability was restricted according to the PTC bylaws is allegedly subject to the classic range of applicability of arbitration clauses, so that the Court of Arbitration had jurisdiction over the validity of the transfer of shares. Further, Telco allegedly recognized the Arbitration Court's jurisdiction in explicit pleadings and filed a counter-complaint.

Telco allegedly had ample opportunity to comment on all representations of fact and evidence and to make declarations of anything it deemed relevant.

Further, the Arbitration Court's judgment was allegedly not contradictory, because it stated unequivocally that the transfer of the PTC shares to Elektrim was void. The recovery of factual control over these shares and the exercising of shareholder's rights by Elektrim is allegedly a separate issue, and dependent on its outcome is, in the view of the Court of Arbitration, the determination of whether a severe contract violation according to the Shareholders' Agreement

**2 R 49/06z**

exists.

The remaining alleged causes for dismissal allegedly do not exist.

In its sentence, currently under appeal, the **Lower Court** (to the extent relevant to the appeals process) noted in regard to Item 1., that "the first semi-colon of the second partial arbitration judgment," which stated that the Telco-transfer was legally void, and the PTC-shares that were the subject of this transfer therefore remained Elektrim's property at all relevant times, was now revoked. In regard to Item 2., the additional Petition for Relief to also dismiss the other "semi-colons" of this arbitration, was rejected.

In regard to Item 4., defendants were found responsible to pay one half of the fixed court fees (among others), in the amount of € 612,686.65, to plaintiff.

The **Appeals by both defendants** appeal the portion of this judgment granting rights, due to deficiencies in procedure and incorrect legal interpretation (and, in the case of the first defendant, also due to incorrect interpretation of evidence), as well as appealing the cost award with motions to change the judgment to reject the complaint in its entirety, to revoke Para. 1. and 4. of the judgment *in eventu* and to re-refer the matter to the lower court for retrial and sentencing, to change the cost award *in eventu* to find plaintiff responsible for

reimbursing defendants' costs in the amount of € 31,185.45, and to find defendants responsible for reimbursing plaintiff for only a quarter of the fixed fee.

Plaintiff's motion is to reject both appeals – including in regard to costs.

Plaintiff's **Cost Recourse** was filed against the lower court's cost determinations, with a motion to change the cost determination such that one half of the fixed fee payable by defendants pursuant to Item 4. of the judgment should not be € 612,686.65, but rather € 674,030.00.

Both appeals are legal according to the motions.

The objections raised against the legal interpretation warrant review of all aspects of that interpretation, with the result that there is no cause for dismissal, including in regard to the first item of the arbitration judgment, in which the Arbitration Court stated that the Telco transfer was void and the PTC-shares that were the subject of this transfer remained Elektrim's property at all relevant times.

While all the other causes for dismissal alleged by plaintiff were rejected (legally) by the lower court, this first item of the arbitration judgment (itself uncontested in its content and thus indubitably the basis for any determination) of 11/26/2004 (Exhibit A), was dismissed by the lower court with the justification

158

**2 R 49/06z**

that "the Arbitration Court went beyond the Arbitration Clause in this regard and/or violated public order by directly interfering with Telco's rights, even though the Court had declared it had no jurisdiction here" (UA, p. 50).

The lower court here presupposed that the Arbitration Court's judgment was contradictory in stating it had no jurisdiction over Telco while at the same time determining that the Telco transfer was invalid in the partial judgment—later vacated by the lower court—in a proceeding that involved three parties, including Telco. Therefore this judgment should not have been rendered in regard to all three parties, because the Arbitration Court had no jurisdiction over Telco. Yet the legal effectiveness and binding force of the partial judgment had a direct effect on Telco. Therefore there was a violation of the basic values of Austrian principles of law, because Telco had lost its position as shareholder in the corporate list of shareholders (in Poland) due to execution of the first item of the arbitration judgment, even though the Court had declared it had no jurisdiction over Telco. This binding force of the sentence *in rem* (which resulted even though the Court had declared it had no jurisdiction over Telco) contradicts the basic structure of the Austrian legal system, under which the prerequisite for passing judgment

2 R 49/06z

*in rem* is jurisdiction, which was denied by the Arbitration Court in regard to Telco.

The following considerations apply here:

The lower court correctly determined, in principle, that an arbitration judgment pursuant to §594, Para. 1 ZPO has the effect of a legally binding court sentence <u>among the parties</u> and that an arbitration judgment therefore should be interpreted in the same way as a sentence (see basic discussion in Rechberger, *Die Widersprüchlichkeit eines Schiedsspruches als Aufhebungsgrund nach österreichischem Recht* ["Contradictory Sentence as Basis for Annulment under Austrian Law"] SchiedsVZ 2006, 169).

Thus, the judgment represents the first basis for interpretation. If necessary, the justifications relevant to the judgment are also to be included for the purpose of interpretation (exhibits in Rechberger, s.a., FN 6).

All valid methods for interpretation that may be used in regard to laws are acceptable.

In particular, one applicable principle is that, when in doubt, a legal act must not entail illegal content. Therefore, in terms of systematic interpretation, a sentence must be interpreted— if the literal meaning of the judgment permits it—such that its content does not violate the law.

In its partial judgment of 5/30/2005, the Arbitration Court determined that Telco could be

**160**

**2 R 49/06z**

subject to the arbitration clause in the Articles of Incorporation and the Shareholders' Agreement only in its role as PTC shareholder, but that this role was being disputed, because the validity of the transfer was itself being disputed. Due to the double relevancy of the question of whether Telco became a PTC shareholder, the Arbitration Court decided to include a judgment regarding jurisdiction over Telco in the judgment *in rem* (items 63. and 64. and Page 29 of the partial arbitration judgment of 5/30/2005).

Following this logic, the Arbitration Court then stated in the arbitration judgment now being contested, that the Telco transfer was legally void and that the PTC shares that were the subject of this transfer had remained Elektrim's property at all relevant times, and further, that the Arbitration Court <u>had no jurisdiction over Telco</u>, and PC's [*sic*] claims <u>against Telco</u> could <u>not be a subject of this arbitration</u>.

In its justification, the Arbitration Court discusses its <u>competency in regard to Telco</u> in detail and justifies (Para. 265. et seq., Exhibit A) its decision regarding whether Telco violated its contractual or non-contractual obligations (Para. 249. et seq., Exhibit A) by stating that any transfer of corporate shares was invalid due to the lack of consent by the PTC board of directors, which meant that Telco could not be regarded as a PTC shareholder at any relevant time,

**2 R 49/06z**

which resulted in Telco being unable to legally assume Elektrim's obligations under the Shareholders' Agreement. Therefore, the Arbitration Court judged that it "has no jurisdiction over Telco" and that it could only be deemed to have jurisdiction in regard to contractual or even non-contractual claims against Telco if Telco had been a shareholder pursuant to the Shareholders' Agreement, which, however, was not the case (*quod non est*).

Therefore (on the basis of the above), "the Arbitration Court judges that it has no jurisdiction over Telco, and that this arbitration is therefore unable to determine DT's claims against that company" (Para. 266., Exhibit A).

In view of this justification, it cannot be seriously supposed that the Arbitration Court wanted to or did render a judgment *in rem* regarding plaintiff's claims against Telco in the arbitration, since it stated in a justification that can hardly be any clearer in its language, that its test of the effectiveness of the arbitration upon Telco in reference to the Arbitration Court's jurisdictional conflict resulted in the determination that such competency did not apply to Telco.

This decision of the Arbitration Court is in principle not subject to revision (Fasching IV, 806).

Even disregarding the unambiguous justification

**2 R 49/06z**

of the arbitration judgment, the language in the judgment itself, "**the Arbitration Court has no jurisdiction over Telco, and DT's claims against Telco can not be a subject of this arbitration**" (including their translation into English) is so unambiguous that it must not be supposed that the Arbitration Court still wanted to or did render judgment about such claims *in rem*, not only in regard to the remaining party in the proceeding, Elektrim, but also in regard to Telco, in the other items of the judgment.

Regardless of the sequence of judgment items (which follows the structure of the Arbitration Court's justification for the judgment), the tone of the arbitration alone makes it clear that the decision of the Arbitration court *in rem* applies only to those parties over which the Court has not denied that it has jurisdiction.

Thus, it is irrelevant whether an arbitration being contradictory could even represent a legal cause for dismissal. It would probably be more correct to cite §595, Para. 1, No. 5 ZPO as cause for dismissal, if the Arbitration Court has rendered a decision in a matter for which it lacked jurisdiction. However, this does not apply to the present case.

When presupposing, correctly, that the Arbitration Court denied its jurisdiction over Telco and thus

rendered no judgment *in rem* about claims against Telco, then this automatically excludes any effectiveness of the judgment on Telco. Current legal opinion does not accord any expanded, material legal force to the arbitration (Fasching IV, 811). "An external force similar to legal force" as asserted by plaintiff and cited as a cause for dismissal of the arbitration judgment is therefore not present.

In conclusion, the appeals are therefore legal according to the motions.

The judgment under contest was not deficient in terms of procedure. In particular, the verbal trial on 9/20/2005 specifically provided ample opportunity to discuss the causes for dismissal, which were necessarily already stated in the Complaint. As there is a preclusive period defined in §596, Para. 2 ZPO, neither an expansion of the Complaint, nor the addition of further causes, whose preclusive period had already passed, was possible, nor any "replacement" of those causes of complaint whose preclusive period had elapsed by way of amendment of the complaint (Fasching IV, 888).

Regardless of the above, defendants are making no attempt to state concretely which issues they were denied from raising during the proceedings that were material to the judgment *in rem*.

In regard to its cost recourse, plaintiff shall be referred to the amended cost determination.

**2 R 49/06z**

The determination of court costs is based on the costs listed by the parties, starting from the lower court's determination of € 102 million (AS 527) pursuant to §7, Para. 2 of the Legal Fees Act for the lower court proceeding based on §41 ZPO, and for the appeals proceeding based on §41, 50 ZPO, as well as §23 Para. 9 of the Legal Fees Act. The documents submitted during the appeals proceeding are not legally relevant. The submission of pleadings after the submission of appeals pleadings was not necessary for the appropriate prosecution or defense of the matter— regardless of the principle of the singularity of appeals—and costs are thus not to be reimbursed. In the opinion of the Appeals Court, plaintiff was successful regarding at most one quarter of its total claims in the lower court. Plaintiff's appeals claim, which determines costs, therefore amounts to € 25,500,000.00. This corresponds to the value defendants assigned to their appeals claim (§18, Para. 1, No. 3 of the Court Fees Act).

The judgment regarding the amount in controversy corresponds to the claim stated by plaintiff.

An ordinary appeal is not possible, because an evaluation of the material contents of an Arbitration Court's judgment does not constitute a legal matter

**165**

**2 R 49/06z**

of significant importance in the sense of §502, Para. 1 ZPO.


Higher Regional Court Vienna
1016 Vienna, Schmerlingplatz 11
Dep. 2, on October 10, 2006

[stamp]                                    [stamp:] **Dr. Brigitte Bauer**
                            This is to certify the accuracy of this copy
                            by the Director of the Business Department:
                                [signature: Kraft]

**166**

### TRANSLATOR'S CERTIFICATE

I, Ulrike Emigh, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 27th day of March, 2007.

Translated document:

Appellate Court Sentence

167

2 R 49/06z



REPUBLIK ÖSTERREICH
**Oberlandesgericht Wien**

# Im Namen der Republik

Das Oberlandesgericht Wien hat als Berufungsgericht durch die Senatspräsidentin des Oberlandesgerichtes Dr. Bauer (Vorsitzende), den Richter des Oberlandesgerichtes Dr. Dallinger und den KR Pretsch in der Rechtssache der klagenden Partei **Elektrim Telekomunikacja Sp. z o.o.** , Al. Jana Pawla II 77/79, 00-828 Warszawa, Polen, vertreten durch Graf, Maxl & Pitkowitz Rechtsanwälte GmbH in Wien, wider die beklagten Parteien **1) T-Mobile Deutschland GmbH**, Landgrabenweg 51, 53227 Bonn, Deutschland, vertreten durch Hausmaninger Kletter Rechtsanwälte-Gesellschaft mbH in Wien und Wolf Theiss Rechtsanwälte GmbH in Wien, und **2) Elektrim S.A.**, ul. Panska 77/79, 00-834 Warszawa, Polen, vertreten durch Baier Böhm Rechtsanwälte OEG in Wien, wegen Aufhebung eines Schiedsspruches (Streitwert: USD 1 Mio; Streitwert nach RATG: EUR 102 Mio), über die Berufungen der beklagten Parteien und den Kostenrekurs der klagenden Partei nach öffentlicher Berufungsverhandlung gegen das Urteil des Handelsgerichtes Wien vom 20.12.2005, 14 Cg 17/05t-62, beschlossen und zu Recht erkannt:

Beiden Berufungen wird Folge gegeben.

Das angefochtene Urteil wird in seinen Punkten 1., 2. und 4. dahingehend abgeändert, dass diese lauten:

„1. Das Klagebegehren, den Schiedsspruch des

2                  2 R 49/06z

internationalen Schiedsgerichtes der Wirtschaftskammer

Österreich vom 26. November 2004 mit der Zahl SCH-4750,

ergangen zwischen DeTe Mobil Deutsche Telekom Mobilnet

GmbH, Elektrim S.A. und Elektrim Telekomunikacja Sp. z

o.o., zur Gänze aufzuheben, wird abgewiesen.

2. (entfällt)

4. Die klagende Partei ist schuldig, binnen 14

Tagen der erstbeklagten Partei die mit EUR 172.729,88

(darin enthalten EUR 28.787,78 USt und EUR 3,20 Baraus-

lagen) und der zweitbeklagten Partei die mit EUR

112.267,62 (darin enthalten EUR 18.711,27 USt) bestimm-

ten Kosten des Verfahrens zu ersetzen."

Die klagende Partei wird mit ihrem Kostenrekurs

auf diese Entscheidung verwiesen.

Die klagende Partei ist schuldig, binnen 14 Tagen

der erstbeklagten Partei die mit EUR 512.015,00 (darin

enthalten EUR 8.466,-- USt und EUR 461.219,-- Barausla-

gen) und der zweitbeklagten Partei die mit EUR

512.015,00 (darin enthalten EUR 8.466,-- USt und EUR

461.219,-- Barauslagen) bestimmten Kosten des

Berufungsverfahrens zu ersetzen.

Der Wert des Entscheidungsgegenstandes übersteigt

EUR 20.000,--.

Die ordentliche Revision ist nicht zulässig.

**E n t s c h e i d u n g s g r ü n d e :**

Mit einer am 9.3.2005 eingebrachten Klage begehrt

die Klägerin (in der Folge: Telco) die Aufhebung eines

am 26.11.2004 vom Internationalen Schiedsgericht der

**169**

3                    2 R 49/06z

Wirtschaftskammer Österreich (nach einem Teilschieds-
spruch vom 30.5.2002) gefällten Schiedsspruches.

Am Schiedsverfahren waren die DeTe Mobil Deutsche
Telekom Mobilnet GmbH (später: T-Mobile Deutschland
GmbH; in der Folge: **DT**) als Klägerin und Widerbeklagte
einerseits sowie die Elektrim S.A. (in der Folge:
**Elektrim**) und die Elektrim Telekomunikacja Sp. z. o.o.
(in der Folge: **Telco**) als Beklagte und Widerkläger
andererseits beteiligt.

Dem Schiedsverfahren lag zugrunde, dass DT, Elekt-
rim und andere Gesellschaften in Anbetracht dessen,
dass die polnische Regierung ihre Absicht öffentlich
gemacht hatte, nach einem öffentlichen Auktionsverfah-
ren Lizenzen für die Errichtung und den Betrieb eines
900 MHz GSM Mobiltelefonieunternehmens in Polen zu
vergeben, ein „Shareholders Agreement" (eine Gesell-
schaftervereinbarung) geschlossen hatten, die die
Rechte und Pflichten der Vertragsparteien als Gesell-
schafter der am 20.12.1995 errichteten Polska Telefonia
Cyfrowa (in der Folge: **PTC**) regelte.

Diese Gesellschaftervereinbarung sah insbesondere
vor, dass wichtige Maßnahmen nur beschlossen werden
können, wenn alle Mitglieder des Aufsichtsrates, die in
der Sitzung anwesend sind und von einer operativen
Vertragspartei nominiert wurden, für eine solche
wichtige Maßnahme stimmen oder ihr schriftlich zustim-
men und dass als wichtige Maßnahme insbesondere die
Zustimmung zur Übertragung jeglicher Anteile an der

**170**

2 R 49/06z

Gesellschaft galt. Jede Übertragung, Verpfändung und jede andere Veräußerung eines Gesellschaftsanteiles an der Gesellschaft oder auch nur eines Teiles davon oder sonstigen Rechts daran durch einen Gesellschafter bedurfte der vorherigen Zustimmung durch den Aufsichtsrat.

Für den Fall einer wesentlichen Vertragsverletzung sah die Gesellschaftervereinbarung als Folge vor: „Jede Vertragspartei ... bietet hiermit den operativen Vertragsparteien unwiderruflich das Recht an, ihre Anteile an der Gesellschaft (die „Optionsanteile" zu jenem Preis zu erwerben, der sich gemäß den Bestimmungen des Artikel 16 (3) ergibt (die „Call Option"), wobei das Angebot gemäß Artikel 16 durch den Eintritt eines der folgenden Ereignisse bedigt war:

a) ...

b) ein Schiedsgericht erlässt einen feststellenden Schiedsspruch, in dem die wesentliche Vertragsverletzung des Überlassers festgestellt wird.

Eine wesentliche Vertragsverletzung gemäß Artikel 16.1 liegt nach Artikel 16.2 wiederum vor, wenn eine wesentliche Verletzung einer wesentlichen Verpflichtung einer Vertragspartei gemäß dieser Vereinbarung oder zusammenhängenden Vereinbarungen gegenüber der Gesellschaft oder anderen Vertragsparteien, die auch nach einer Zeitspanne von 20 Geschäftstagen - gerechnet ab schriftlicher Verständigung der vertragsbrüchigen Vertragspartei von der Vertragsverletzung - andauert;

oder wenn und so lange der Überlasser wirtschaftlich beeinträchtigt im Sinne von Artikel 19.4(3) ist.

Die Gesellschaftervereinbarung enthält in Artikel 21 folgende Schiedsklausel: „Sollten aufgrund oder im Zusammenhang mit dieser Vereinbarung irgendwelche Streitigkeiten oder Meinungsverschiedenheiten entstehen, so sind solche Streitigkeiten und Meinungsverschiedenheiten nach Möglichkeit durch Verhandlungen zwischen den Vertragsparteien beizulegen.

Sollten solche Verhandlungen scheitern, so sind alle Streitigkeiten zwischen den Vertragsparteien und zwischen ihnen und der Gesellschaft gemäß dieser Vereinbarung oder im Zusammenhang damit oder im Zusammenhang mit anderen Vereinbarungen, die sich auf diese Gesellschaftervereinbarung beziehen, vom Schiedsgericht der Bundeskammer der gewerblichen Wirtschaft in Wien, Österreich, durch drei Schiedsrichter gemäß den Regeln dieses Schiedsgerichtes endgültig und abschließend zu entscheiden. ...“

Die im Zusammenhang mit der Gründung der PTC vereinbarte Errichtungserklärung enthält u.a. in Artikel 21 die Bestimmung: „Sollten aufgrund oder im Zusammenhang mit dieser Vereinbarung irgendwelche Streitigkeiten oder Meinungsverschiedenheiten entstehen, so sind solche Streitigkeiten und Meinungsverschiedenheiten nach Möglichkeit durch Verhandlungen zwischen den Vertragsparteien beizulegen.

Sollten solche Verhandlungen scheitern, so sind

**172**

alle Streitigkeiten zwischen den Vertragsparteien und zwischen ihnen und der Gesellschaft gemäß dieser Vereinbarung oder im Zusammenhang damit oder im Zusammenhang mit anderen Vereinbarungen, die sich auf diese Gesellschaftervereinbarung beziehen, vom Schiedsgericht der Bundeskammer der gewerblichen Wirtschaft in Wien, Österreich, durch drei Schiedsrichter gemäß den Regeln dieses Schiedsgerichtes endgültig und abschließend zu entscheiden. ...``

Am 7.12.2000 erhob DT auf Grundlage der Gesellschaftervereinbarung und Artikel 21.2 der Errichtungsurkunde Klage gegen Telco und Elektrim und begehrte

1) a) die Feststellung der Unwirksamkeit der behaupteten Übertragung von 48 % der PTC Anteile durch Elektrim auf Telco

b) die Feststellung der gänzlichen oder teilweisen Unwirksamkeit der behaupteten Übertragung von 48 % der PTC-Anteile durch Elektrim auf Telco gegenüber der Klägerin gemäß Art 59 Polnisches Zivilgesetzbuch

c) in eventu einen Beschluss zur Übertragung von 48 % der PTC-Anteile von Telco auf Elektrim

2) a) des Weiteren oder in eventu die Feststellung einer wesentlichen Vertragsverletzung durch Elektrim in Bezug auf Artikel 8 und/oder 1.5 und/oder 10.1 der Gesellschaftervereinbarung

b) einen Beschluss gemäß Artikel 16.1 der Gesellschaftervereinbarung über die Berechtigung der

7                    2 R 49/06z

Klägerin zur Ausübung der Call Option auf die von
Elektrim und/oder Telco gehaltenen PTC-Anteile

   3) des Weiteren oder in eventu die Beglei-
chung aller der Klägerin durch die oben dargelegten von
Elektrim und/oder Telco begangenen Vertragsverletzungen
entstandenen Verluste im Wege des Schadenersatzes durch
Elektrim und/oder Telco, insbesondere der durch den
unrechtmäßigen Eingriff Telcos in die vertraglichen
Beziehungen zwischen der Klägerin und Elektrim entstan-
dernen Verluste

   4) Zinsen und

   5) Kosten des Schiedsverfahrens.

Mit einem Teilschiedsspruch vom 30.5.2002
entschied das Schiedsgericht wie folgt:

   „Die Entscheidung betreffend die Zuständigkeit des
Schiedsgerichts für Telco bleibt bis zur Sachentschei-
dung vorbehalten;

   die von DT geltend gemachten nicht-vertraglichen
Ansprüche sind vom Anwendungsbereich der Schiedsklau-
seln erfasst und die Zuständigkeit des Schiedsgerichtes
erstreckt sich auf diese Ansprüche;

   die Entscheidung über die Kosten dieses Verfahrens
erfolgt im rechtskräftigen Schiedsspruch."

   Zur Frage, ob sich die Zuständigkeit des Schieds-
gerichtes auf Telco erstreckt, ließ sich das Schiedsge-
richt in seiner Begründung dieser Entscheidung von der
Erwägung leiten, dass Telco nur in der Eigenschaft als
PTC-Gesellschafterin von den Schiedsklauseln in der

**174**

2 R 49/06z

Errichtungsurkunde und der Gesellschaftervereinbarung
~~erfasst sein könnte, diese Eigenschaft jedoch bestrit-~~
ten wurde, da die Gültigkeit der Übertragung selbst
bestritten wurde. Deshalb werde gemeinsam mit der
Sachentscheidung auch über die Zuständigkeit für Telco
entschieden werden.

Mit dem nun angefochtenen Schiedsspruch hat das
Schiedsgericht entschieden wie folgt:

„- Die Telco-Übertragung war rechtlich
wirkungslos, und die PTC-Anteile, die Gegenstand
dieser Übertragung waren, blieben zu allen
relevanten Zeiten im Eigentum von Elektrim;

- die Übertragung der PTC-Anteile von Elektrim an
Telco begründet für sich keine erhebliche
Vertragsverletzung gemäß Artikel 16.1 der Gesell-
schaftervereinbarung, würde aber eine solche
begründen, wenn Elektrim nicht spätestens binnen
zwei Monaten ab Benachrichtigung von diesem
Schiedsspruch die Anteile von Telco zurückverlan-
gen würde;

- DTs Ansprüche wegen wirtschaftlicher Beeinträch-
tigung werden abgewiesen;

- das Schiedsgericht hat keine Jurisdiktion über
Telco, und DTs Ansprüche gegen Telco können nicht
Gegenstand dieses Schiedsverfahrens sein;

- DTs Klage auf Schadenersatz wurde zurückgezogen;

- die Entscheidung über die Kosten dieses Schieds-
verfahrens bleibt der Entscheidung in einem

9                    2 R 49/06z

nachfolgenden Schiedsspruch vorbehalten;

~~jegliche andere Klagen oder Widerklagen der~~

Parteien werden abgewiesen."

Mit ihrer **Klage** begehrt die Klägerin die Aufhebung
dieses Schiedsspruches zur Gänze.

Der Schiedsspruch sei mit den Grundwerten der
österreichischen Rechtsordnung nicht vereinbar (§ 595
Abs 1 Z 6 ZPO).

Es liege eine widersprüchliche Entscheidung über
Rechte an den PTC-Aktien vor, weil das Schiedsgericht
einerseits erkläre, dass die Übertragung an Telco
unwirksam sei, andererseits aber auch ausspreche, dass
eine erhebliche Vertragsverletzung nur vorliege, wenn
Elektrim die Aktien von Telco nicht innerhalb von zwei
Monaten zurückerlange (was voraussetze, dass das Eigen-
tum Telcos daran anerkannt werde).

Es liege auch eine widersprüchliche Entscheidung
hinsichtlich der Jurisdiktion über Telco vor, weil das
Schiedsgericht in Punkt 4. entschieden habe, dass es
keine Jurisdiktion über Telco habe, Punkt 2. der
Entscheidung jedoch Elektrim verpflichte, PTC-Aktien
von Telco zurückzuerlangen, womit auch in die rechtli-
che Position Telcos als Eigentümer der Aktien einge-
griffen werde.

Damit liege auch eine unzureichende bzw fehlende
Begründung der Entscheidung des Schiedsgerichts vor.

Die Entscheidung sei auch perplex und nicht
vollstreckbar, weil sie hinsichtlich der

Rückübertragung der Aktien vom Verhalten eines Dritten, nämlich Telco, abhänge, über den das Schiedsgericht nach seiner eigenen Entscheidung keine Jurisdiktion habe.

Der Schiedsspruch entfalte eine „zumindest rechtskraftähnliche Außenwirkung" gegenüber Telco, obwohl das Schiedsgericht erklärt habe, eine Jurisdiktion über Telco nicht in Anspruch zu nehmen.

Der Schiedsspruch könne dazu führen, dass polnische Gerichte Elektrim anstelle von Telco als Eigentümer der PTC-Aktien registrieren, womit eine Zwangsenteignung Telcos ohne gesetzliche Grundlage verbunden wäre.

Überdies sei der Grundsatz verletzt, nach dem zivilrechtliche Fälle auf der Grundlage der Fakten bei Schluss der mündlichen Verhandlung erster Instanz zu entscheiden seien, weil nach dem Schiedsspruch eine erhebliche Vertragsverletzung nur dann vorliege, wenn Elektrim die Aktien, die an Telco übertragen worden seien, nicht wieder zurückerlange.

Die Entscheidung, nach deren Ergebnis die Übertragung der PTC-Aktien an Telco wirkungslos sei, Elektrim vertragsbrüchig im Sinne des Artikel 16.1 des Shareholders Agreements werde, wenn Elektrim nicht binnen zwei Monaten die PTC-Aktien von Telco zurückerlange und wonach direkt in grundlegende Rechte Telcos eingegriffen werde, verletze grundlegende Wertungen des österreichischen Rechts sowie zwingendes materielles Recht.

**177**

11                  2 R 49/06z

Das Schiedsgericht habe auch seine Aufgaben überschritten (§ 595 Z 1 Z 5 ZPO), weil die Schieds- klausel überschritten worden sei. Telco sei niemals Aktionär von PTC gewesen, sodass die Entscheidung des Schiedsgerichtes nur dahin gehen habe dürfen, dass es über Telco keine Jurisdiktion habe. Dennoch habe das Schiedsgericht Entscheidungen getroffen, die Telco direkt und grundlegend betreffen. Auch eine Entschei- dung über künftige Ereignisse sei von der Schiedsver- einbarung nicht umfasst.

Das Klagebegehren werde vom Schiedsgericht überschritten, wenn es ein bedingtes Urteil über recht- liche Wirkungen eines zukünftigen Verhaltens (bezüglich einer erheblichen Vertragsverletzung) fälle.

Es fehle auch an einer gültigen Schiedsvereinba- rung (§ 595 Abs 1 Z 1 ZPO), weil sich der Schiedsspruch auf Angelegenheiten Telcos beziehe und Telco kein Aktionär von PTC geworden sei und damit auch nicht durch die Schiedsklausel gebunden werde.

Der Grundsatz des fairen Verfahrens (§ 595 Abs 1 Z 2 ZPO) werde verletzt, weil Telco zu einzelnen in der Klage näher angeführten Themen nicht gehört worden sei.

Das Schiedsgericht sei auch fehlerhaft zusammenge- setzt (§ 595 Abs 1 Z 3 ZPO), was aus anwaltlicher Vorsicht geltend gemacht werde. Der Schiedsrichter Rajski sei polnischer Staatsbürger und es ergebe sich aus dem Schiedsspruch nicht, welche Funktion er inne gehabt habe, sodass nicht ausgeschlossen werden könne,

**178**

dass ihm im Innenverhältnis die Funktion eines Vorsit-
zenden übertragen worden sei, was gegen die Schiedsver-
einbarung verstoßen würde, weil danach ein Staatsbürger
Polens nicht Vorsitzender sein dürfe.

Die **Beklagten** bestritten sämtliche
Aufhebungsgründe.

Die Frage, ob Elektrim Gesellschaftsanteile an
Telco übertragen habe können, obwohl die Anteile nach
der PTC-Satzung vinkuliert gewesen seien, falle in den
klassischen Zuständigkeitsbereich einer satzungsmäßigen
Schiedsklausel, sodass das Schiedsgericht für die
Beurteilung der Wirksamkeit der Anteilsübertragung
zuständig gewesen sei. Telco habe diese Zuständigkeit
des Schiedsgerichtes auch durch ausdrückliche Prozess-
erklärungen anerkannt und eine Widerklage erhoben.

Telco habe ausreichend Gelegenheit gehabt, zu
allen Tatsachen- und Beweisanboten Stellung zu nehmen
und alles vorzubringen, was aus eigener Sicht von
Bedeutung gewesen sei.

Die Entscheidung des Schiedsgerichtes sei auch
nicht widersprüchlich, gehe daraus doch eindeutig
hervor, dass die Übertragung der PTC-Anteile an Elekt-
rim unwirksam gewesen sei. Davon zu unterscheiden sei
die Rückerlangung der faktischen Kontrolle über die
Gesellschaftsanteile und der Ausübung der Gesellschaf-
terrechte seitens Elektrim, von der es abhänge, ob eine
wesentliche Vertragsverletzung nach der Gesellschafter-
vereinbarung nach Ansicht des Schiedsgerichtes zu

**179**

13                    2 R 49/06z

bejahen sei.

Auch die übrigen behaupteten Aufhebungsgründe
liegen nicht vor.

Mit dem angefochtenen Urteil erkannte das **Erstge-
richt** (soweit für das Berufungsverfahren von Bedeutung)
zu Punkt 1., dass „der erste Strichpunkt des zweiten
Teilschiedsspruches", wonach die Telco-Übertragung
rechtlich wirkungslos gewesen sei und die PTC-Anteile,
die Gegenstand dieser Übertragung waren, zu allen
relevanten Zeiten im Eigentum von Elektrim blieben,
aufgehoben werde. Zu Punkt 2. wurde das Klagemehrbegeh-
ren, auch die übrigen „Strichpunkte" des Schiedspunktes
aufzuheben, abgewiesen.

Zu Punkt 4. wurden die Beklagten schuldig erkannt,
der Klägerin (unter anderem) die Hälfte der Pauschalge-
bühren in Höhe von EUR 612.686,65 zu ersetzen.

Gegen den stattgebenden Teil dieses Urteils
richten sich die **Berufungen der beiden Beklagten** aus
den Gründen der Mangelhaftigkeit des Verfahrens und der
unrichtigen rechtlichen Beurteilung (und im Fall der
Erstbeklagten auch der unrichtigen Beweiswürdigung)
sowie Berufungen im Kostenpunkt mit den Anträgen, das
Urteil in einem die Klage vollinhaltlich abweisenden
Sinn abzuändern, in eventu die Punkte 1. und 4. des
Urteilsspruchs aufzuheben und die Sache zur neuerlichen
Verhandlung und Entscheidung an das Erstgericht zurück-
zuverweisen, in eventu die Kostenentscheidung dahinge-
hend abzuändern, dass die Klägerin schuldig erkannt

**180**

14                    2 R 49/06z

werde, den Beklagten jeweils Kosten in Höhe von
EUR 31.185,45 zu ersetzen und die Beklagten bloß schul-
dig erkannt werden, der Klägerin ein Viertel der
Pauschalgebühr zu ersetzen.

Die Klägerin beantragt, den beiden Berufungen -
auch im Kostenpunkt - keine Folge zu geben.

Gegen die Kostenentscheidung des Erstgerichts
richtet sich der **Kostenrekurs der Klägerin** mit dem
Antrag, die Kostenentscheidung dahingehend abzuändern,
dass die Hälfte der gemäß Punkt 4. des Urteils von den
Beklagten zu ersetzenden Pauschalgebühr nicht EUR
612.686,65, sondern richtig EUR 674.030,00 betrage.

Beide Berufungen sind im Sinne des Abänderungsan-
trages berechtigt.

Die Rechtsrügen geben Anlass zu einer allseitigen
Überprüfung der rechtlichen Beurteilung, die zum Ergeb-
nis führt, dass auch bezüglich des ersten Punktes des
Schiedsspruches, mit dem das Schiedsgericht aussprach,
dass die Telco-Übertragung rechtlich wirkungslos war
und die PTC-Anteile, die Gegenstand dieser Übertragung
waren, zu allen relevanten Zeiten im Eigentum von
Elektrim blieben, kein Aufhebungsgrund vorliegt.

Während alle sonstigen von der Klägerin behaupte-
ten Aufhebungsgründe vom Erstgericht (rechtskräftig)
verneint wurden, wurde der erste Spruchpunkt des
(inhaltlich unbestrittenen und damit der Entscheidung
ohne weiteres zugrunde zu legenden) Schiedsspruchs vom
26.11.2004 (Beil./A) vom Erstgericht mit der Begründung

181

aufgehoben, „dass diesbezüglich die Schiedsklausel
überschritten ist bzw. dass der direkte Eingriff in die
Rechte Telços hinsichtlich deren sich das Schiedsge-
richt als unzuständig erkannt hat, gegen den ordre
public verstoße" (UA S 50).

Dabei ging das Erstgericht davon aus, dass es
einen Widerspruch in der Entscheidung des Schiedsge-
richts darstelle, wenn sich dieses bezüglich Telco für
unzuständig erklärt habe, gleichzeitig aber in dem -
vom Erstgericht aufgehobenen - Spruchteil in einem
Verfahren, welches drei Parteien und damit auch Telco
betreffe, ausgesprochen habe, dass der Telco-Transfer
unwirksam sei. Ein derartiger Ausspruch hätte nicht
betreffend alle drei Verfahrensparteien gefällt werden
dürfen, weil das Schiedsgericht für Telco nicht zustän-
dig gewesen sei. Die Rechtskraft und Bindungswirkung
des Spruchteils haben aber direkte Auswirkungen auf
Telco. Es liege ein Verstoß gegen die Grundwertungen
der österreichischen Rechtsordnung vor, weil Telco auf
Grund der Vollstreckbarkeit des ersten Spruchpunkts
seine Gesellschafterstellung im Firmenbuch (in Polen)
verloren habe, obwohl das Schiedsgericht seine
Unzuständigkeit hinsichtlich Telco ausgesprochen habe.
Eine derartige Bindungswirkung von Sachentscheidungen
(die eingetreten sei, obwohl sich das Schiedsgericht
bezüglich Telco für unzuständig erklärt habe), wider-
spreche dem Grundaufbau des österreichischen Rechtssys-
tems, nach dem Voraussetzung für die Fällung einer

Sachentscheidung das Vorliegen der Zuständigkeit sei, ~~die das Schiedsgericht für Telco verneint habe.~~

Dazu ist zu erwägen:

Richtig ist das Erstgericht grundsätzlich davon ausgegangen, dass ein Schiedsspruch gemäß § 594 Abs 1 ZPO unter den Parteien die Wirkung eines rechtskräftigen gerichtlichen Urteils entfaltet und dass ein Schiedsspruch dementsprechend auch in gleicher Weise wie ein Urteil auszulegen ist (dazu grundlegend Rechberger, Die Widersprüchlichkeit eines Schiedsspruches als Aufhebungsgrund nach österreichischem Recht, SchiedsVZ 2006, 169).

Damit ist für die Auslegung zunächst der Urteilsspruch maßgeblich. Erforderlichenfalls sind auch die die Entscheidung tragenden Entscheidungsgründe zur Auslegung heranzuziehen (Nachweise der Rsp Rechberger aaO, FN 6).

Zur Auslegung stehen alle Methoden zur Verfügung, die auch zur Auslegung von Gesetzen herangezogen werden können.

Insbesondere kann als Grundsatz gelten, dass einem Rechtsakt im Zweifel kein rechtswidriger Inhalt unterstellt werden darf. Im Wege der systematischen Interpretation ist ein Urteil also - wenn der Wortlaut des Spruchs dies zulässt - so auszulegen, dass sein Inhalt nicht gegen das Gesetz verstößt.

Das Schiedsgericht hat nun in seinem Teilschiedsspruch vom 30.5.2005 begründet, dass Telco nur in ihrer

Eigenschaft als PTC-Gesellschafterin von den Schieds-
klauseln in deren Errichtungsurkunde und der Gesell-
schaftervereinbarung erfasst sein könnte, diese
Eigenschaft aber bestritten wurde, weil die Gültigkeit
der Übertragung selbst bestritten wurde. Auf Grund der
Doppelrelevanz der Frage, ob Telco PTC-Gesellschafterin
wurde, hat das Schiedsgericht beschlossen, die
Entscheidung zur Zuständigkeit von Telco gemeinsam mit
der Sachentscheidung zu fällen (Punkte 63. und 64.
sowie Seite 29 des Teilschiedsspruches vom 30.5.2005).

Dieser Logik folgend hat das Schiedsgericht sodann
in dem nun angefochtenen Schiedsspruch zunächst
erkannt, dass die Telco-Übertragung rechtlich wirkungs-
los war und die PTC-Anteile, die Gegenstand dieser
Übertragung waren, zu allen relevanten Zeiten im Eigen-
tum von Elektrim blieben und weiter, dass das Schieds-
gericht keine Jurisdiktion über Telco hatte und PCs
Ansprüche gegen Telco nicht Gegenstand dieses Schieds-
verfahrens sein konnten.

In den Gründen hat sich das Schiedsgericht umfas-
send mit seiner Kompetenz betreffend Telco befasst und
zur Frage, ob Telco seine vertraglichen und außerver-
traglichen Verpflichtungen verletzt habe (249. ff
Beil./A) begründet (265. ff Beil./A), dass eine
Übertragung von Geschäftsanteilen auf Grund des Fehlens
der Zustimmung durch den PTC-Aufsichtsrat nicht wirksam
war, was bedeute, dass Telco nicht als PTC-Gesellschaf-
ter zu irgend einem erheblichen Zeitpunkt angesehen

werden konnte, woraus folge, dass Telco die Verpflich-
tungen von Elektrim gemäß der Gesellschaftervereinba-
rung nicht gültig übernehmen konnte. Daher entscheide
das Schiedsgericht, „dass es in Bezug auf Telco nicht
zuständig ist" und dass es für vertragliche und auch
außervertragliche Ansprüche betreffend Telco nur dann
zuständig wäre, wenn Telco ein Gesellschafter gemäß der
Gesellschaftervereinbarung gewesen wäre, was nicht der
Fall ist (quod non est).

Deshalb (auf Basis des Gesagten) „entscheidet das
Schiedsgericht, dass es in Bezug auf Telco nicht
zuständig ist und dementsprechend auf DTs Ansprüche
gegen diese Gesellschaft in diesem Schiedsverfahren
nicht eingegangen werden kann" (266. Beil./A).

Angesichts dieser Begründung kann dem Schiedsge-
richt nicht ernsthaft unterstellt werden, es habe in
der Sache über Ansprüche der Klägerin im Schiedsverfah-
ren gegenüber Telco entscheiden wollen oder
entschieden, hat es doch in einer an Klarheit kaum zu
überbietenden Begründung zum Ausdruck gebracht, dass
seine Prüfung der Wirksamkeit der Schiedsvereinbarung
für Telco im Rahmen der Kompetenz-Kompetenz des
Schiedsgerichtes zum Ergebnis hatte, dass eine solche
bezüglich Telco nicht vorlag.

Eine solche Entscheidung des Schiedsgerichtes
entzieht sich als Beschluss grundsätzlich einer
Überprüfung (Fasching IV, 806).

Selbst wenn man die unmissverständliche Begründung

19                    2 R 49/06z

des Schiedsspruches außer acht lässt, ist doch die Formulierung im Spruch selbst "das Schiedsgericht hat keine Jurisdiktion über Telco, und DTs-Ansprüche gegen Telco können nicht Gegenstand dieses Schiedsverfahrens sein" (und ebenso ihre englische Entsprechung) so unmissverständlich, dass bei den übrigen Spruchpunkten nicht unterstellt werden darf, das Schiedsgericht habe dennoch über derartige Ansprüche in der Sache nicht nur gegenüber der verbleibenden Verfahrenspartei Elektrim sondern auch gegenüber Telco entscheiden wollen oder entschieden.

Ungeachtet der Reihenfolge der Spruchpunkte (die dem gewählten Aufbau der Begründung der Entscheidung des Schiedsgerichtes folgt) wird doch schon allein aus dem Tenor des Schiedsspruches deutlich, dass sich die Entscheidung des Schiedsgerichtes in der Sache nur auf jene Parteien bezieht, für die das Schiedsgericht seine Zuständigkeit nicht verneint hat.

Damit kann dahinstehen, inwieweit eine Widersprüchlichkeit eines Schiedsspruches überhaupt einen gesetzlichen Aufhebungsgrund verwirklichen könnte. Richtigerweise läge wohl der Aufhebungsgrund des § 595 Abs 1 Z 5 ZPO vor, wenn das Schiedsgericht über eine Sache entschieden hat, für die ihm die Kompetenz fehlte. Doch trifft dies im gegenständlichen Fall nicht zu.

Legt man zutreffend zugrunde, dass das Schiedsgericht seine Kompetenz für Telco verneint und damit auch

186

nicht in der Sache über Ansprüche gegen Telco entschieden hat, kann auch keine Rede davon sein, dass die Rechtskraft der Entscheidung auf Telco wirkte. Eine erweiterte materielle Rechtskraftwirkung kommt dem Schiedsspruch nach herrschender zutreffender Auffassung nicht zu (Fasching IV, 811). "Rechtskraftähnliche Außenwirkungen", die die Klägerin dem Schiedsspruch beimisst und die einen Grund für seine Aufhebung darstellen müssten, sind nicht zu erkennen.

Im Ergebnis sind die Berufungen daher im Sinne des Abänderungsantrages berechtigt.

An Verfahrensmängeln leidet die angefochtene Entscheidung nicht. Insbesondere gab im konkreten Fall die mündliche Verhandlung vom 20.9.2005 genügend Raum zur Auseinandersetzung mit den notwendig schon in der Klage vorgebrachten Aufhebungsgründen. Da § 596 Abs 2 ZPO eine Präklusivfrist enthält, kam eine Ausdehnung der Klage oder ein Vorbringen weiterer Anfechtungsgründe, bezüglich deren die Frist bereits abgelaufen war, ebenso wie ein "Austauschen" der Klagegründe mit verfristeten Anfechtungsgründen im Wege der Klagsänderung nicht in Betracht (Fasching IV, 888).

Abgesehen davon unternehmen die Beklagten gar nicht den Versuch, konkret darzustellen, welches für eine Sachentscheidung erhebliche Vorbringen ihnen versagt geblieben wäre.

Die Klägerin ist mit ihrem Kostenrekurs auf die abgeänderte Kostenentscheidung zu verweisen.

**187**

21                    2 R 49/06z

Die Entscheidung über die Verfahrenskosten beruht
von der Bewertung des Erstgerichtes gemäß § 7 Abs 2
RATG mit EUR 102 Mio ausgehend (AS 527) nach Maßgabe
der von den Parteien verzeichneten Kosten betreffend
das Verfahren erster Instanz auf § 41 ZPO und für das
Berufungsverfahren auf §§ 41, 50 ZPO sowie § 23 Abs 9
RATG. Den im Berufungsverfahren vorgelegten Urkunden
fehlt die rechtliche Relevanz. Die Erstattung von
Schriftsätzen nach der Einbringung der Rechtsmittel-
schriften war - ungeachtet des Grundsatzes der Einma-
ligkeit des Rechtsmittels - zur zweckentsprechenden
Rechtsverfolgung oder -verteidigung nicht erforderlich
und daher auch nicht zu honorieren. Aus der Sicht des
Berufungsgerichtes war die Klägerin im Verfahren erster
Instanz höchstens mit einem Viertel ihres gesamten
Begehrens erfolgreich. Das für die Kostenbemessung
maßgebliche Berufungsinteresse der Beklagten beträgt
daher EUR 25,500.000,--. So haben die Beklagten ihr
Berufungsinteresse auch in den Berufungen auch bewertet
(§ 18 Abs 1 Z 3 GGG).

Der Ausspruch über den Wert des Entscheidungsge-
genstands folgt dem von der Klägerin angegebenen
Interesse.

Die ordentliche Revision ist nicht zulässig, weil
die Beurteilung des maßgeblichen Inhalts der Entschei-
dung eines Schiedsgerichts keine Rechtsfrage von erheb-

22                          2 R 49/06z

licher Bedeutung im Sinn des § 502 Abs 1 ZPO aufwirft.

Oberlandesgericht Wien
1016 Wien, Schmerlingplatz 11
Abt. 2, am 10. Oktober 2006

Dr. Brigitte Bauer
Für die Richtigkeit der Ausfertigung
der Leiter der Geschäftsabteilung:

189

# EXHIBIT G

8 Ob 159/06z

REPUBLIC OF AUSTRIA
**Supreme Court of Law**


The Supreme Court of Law as the appellate court, via the Vice President of the Supreme Court, Hon. Prof. Dr. Langer as the Chairperson; Dr. Spenling, court counselor and Dr. Kuras, court counselor of the Supreme Court, and Dr. Lovrek, court counselor and Dr. Glawischnig, court counselor as additional judges, in the matter of plaintiff Elektrim Telekomunikacja Sp. zo.o., Al. Jana Pawla II 15, Warsaw, Poland, represented by Maxl & Pitkowitz Rechtsanwälte GmbH in Vienna, versus defendants 1. T-Mobile Deutschland GmbH, Landgrabenweg 151, D-53227 Bonn, Germany, represented by Hausmaninger Kletter Rechtsanwälte GmbH in Vienna, and 2. Elektrim S.A., ul. Panska 77/79, Warsaw, Poland, represented by Baier Böhm Rechtsanwälte OEG in Vienna, regarding dismissal of an arbitration judgment (amount in controversy € 25.5 million) through extraordinary appeal by plaintiff against the sentence by the Higher Regional Court of Vienna as the appellate court of October 10, 2006, Case No. GZ 2 R 49/06z-80, has rendered the following

Court Order:

The extraordinary appeal shall be dismissed pursuant to §508a, Para. 2, Rules of Civil Procedure (*Zivilprozessordnung,* ZPO) due to lack of the prerequisites according to §502, Para. 1 ZPO (§510, Para. 3 ZPO).

**191**

Justification:

The Court of Appeals denied plaintiff's entitlement to file a complaint for dismissal of an arbitration judgment with the justification that the Arbitration Court's decision *in rem* did not apply to plaintiff. In the first defendant's complaint, the Court of Appeals found that the Arbitration Court judgment had legal force only in regard to the second defendant, in that the transfer of corporate shares in Polska Telefonia Cyfrowa (instituted in 1995) from the second defendant to plaintiff was legally void. In regard to plaintiff, the Arbitration Court allegedly determined it had no jurisdiction and explicitly stated that it could therefore make no judgment in regard to that first defendant's claims against plaintiff in the arbitration.

In its extraordinary appeal, plaintiff's stand can be summarized as stating that its entitlement to challenge this sentence results from the fact that the arbitration judgment is contradictory and interferes with plaintiff's legally protected rights, because there was a risk that the judgment could be misinterpreted "in this and/or in foreign countries." Other or more far-reaching consequences than are permitted by Austrian law could therefore be implied.

Pursuant to §594, Para. 1 ZPO in the version before SchiedsRÄG 2006, which is to be applied in this case, an arbitration judgment has the effect of a legally binding court sentence among the parties. This indubitably means that the consequences of a legally binding arbitration judgment—just as those of a court sentence—apply in principle only to the parties (RIS-Justiz

8 Ob 159/06z

RS0041572; *Fasching/Klicka* in Fasching /Konecny[2] III, §411 ZPO No. 102 through 105 mwN).

The Appeals Court's interpretation, that the Arbitration Court stated in a justification that can hardly be any clearer in its language that it had no jurisdiction for judging the present first defendant's claims against plaintiff, is not in contradiction to the Arbitration Court's judgment or its justification, and is thus at least admissible.

Whether the arbitration judgment could still be misinterpreted "in this or in foreign countries" need not be determined: Granting an entitlement to file a complaint for dismissal of an arbitration judgment is prerequisite upon the arbitration judgment interfering with the rights of the challenging party in its objective content. This is not the case here.


Supreme Court
Vienna, on December 18, 2006
D r .  L a n g e r
This is to certify the accuracy of this copy
by the Director of the Business Department:
[signature]


**193**

## TRANSLATOR'S CERTIFICATE

I, Ulrike Emigh, declare under penalty of purjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 27th day of March, 2007.

Translated document:

Supreme Court Order

194

8 Ob 159/06z





Der Oberste Gerichtshof hat als Revisionsgericht durch die Vizepräsidentin des Obersten Gerichtshofes Hon. Prof. Dr. Langer als Vorsitzende, die Hofräte des Obersten Gerichtshofes Dr. Spenling und Dr. Kuras und die Hofrätinnen des Obersten Gerichtshofes Dr. Lovrek und Dr. Glawischnig als weitere Richter in der Rechtssache der klagenden Partei Elektrim Telekomunikacja Sp. zo.o., Al. Jana Pawla II 15, Warschau, Polen, vertreten durch Maxl & Pitkowitz, Rechtsanwälte GmbH in Wien, wider die beklagten Parteien 1. T-Mobile Deutschland GmbH, Landgrabenweg 151, D-53227 Bonn, vertreten durch Hausmaninger Kletter Rechtsanwälte-GmbH in Wien, 2. Elektrim S.A., ul. Panska 77/79, Warschau, Polen, vertreten durch Baier Böhm Rechtsanwälte OEG in Wien, wegen Aufhebung eines Schiedspruchs (Revisionsinteresse 25,5 Mio EUR), über die außerordentliche Revision der Klägerin gegen das Urteil des Oberlandesgerichtes Wien als Berufungsgericht vom 10. Oktober 2006, GZ 2 R 49/06z-80, den

B e s c h l u s s

gefasst:

Die außerordentliche Revision wird gemäß 508a Abs 2 ZPO mangels der Voraussetzungen des § 502 Abs 1 ZPO zurückgewiesen (§ 510 Abs 3 ZPO).

195

2                    8 Ob 159/06z

B e g r ü n d u n g :

Das Berufungsgericht hat die Legitimation der Klägerin zur Erhebung der Klage auf Aufhebung des Schiedsspruchs mit der Begründung verneint, dass sich die Entscheidung des Schiedsgerichtes in der Sache nicht auf die Klägerin beziehe. Das Schiedsgericht habe über Klage der Erstbeklagten mit Rechtskraftwirkung nur gegenüber der Zweitbeklagten festgestellt, dass die Übertragung von Gesellschaftsanteilen an der 1995 errichteten Polska Telefonia Cyfrowa von der Zweitbeklagten an die Klägerin rechtlich wirkungslos sei. Bezüglich der Klägerin habe das Schiedsgericht eine Unzuständigkeitsentscheidung getroffen und ausdrücklich ausgesprochen, dass es dementsprechend auf behauptete Ansprüche der hier Erstbeklagten gegenüber der Klägerin im Schiedsverfahren nicht eingehen könne.

In ihrer außerordentlichen Revision vertritt die Klägerin dazu zusammengefasst die Auffassung, ihre Anfechtungslegitimation ergebe sich daraus, dass der widersprüchliche Schiedsspruch in ihre rechtlich geschützte Stellung eingreife, weil die Gefahr bestehe, dass er „im In- und/oder Ausland" falsch ausgelegt werde. Ihm könnten andere oder weitergehende Wirkungen zuerkannt werden, als es das österreichische Recht erlaube.

Gemäß § 594 Abs 1 ZPO in der hier noch anzuwendenden Fassung vor dem SchiedsRÄG 2006 hat der Schiedsspruch unter den Parteien die Wirkung eines rechtskräftigen gerichtlichen Urteiles. Daraus ergibt sich aber zweifelsfrei, dass die Wirkung eines rechtskräftigen Schiedsspruches - ebenso wie eines gerichtlichen Urteiles - grundsätzlich nur die Parteien erfasst (RIS-Justiz

196

3                                8 Ob 159/06z

RS0041572; *Fasching/Klicka* in Fasching/Konecny[2] III § 411
ZPO Rz 102 bis 105 mwN).

Die Auslegung des Berufungsgerichtes, dass das
Schiedsgericht mit einer an Klarheit kaum zu überbietenden
Begründung zum Ausdruck gebracht habe, dass es zur
Entscheidung von Ansprüchen der hier Erstbeklagten
gegenüber der Klägerin nicht zuständig sei, steht weder mit
dem Spruch des Schiedsspruches noch mit seiner Begründung
im Widerspruch und ist somit zumindest vertretbar.

Ob der Schiedsspruch dennoch „im In- oder
Ausland" falsch ausgelegt werden könnte, kann dahingestellt
bleiben: Die Bejahung einer Legitimation zur Erhebung einer
Klage auf Aufhebung eines Schiedsspruchs setzt voraus, dass
der Schiedsspruch nach seinem objektiven Inhalt in die
Rechte des Aufhebungsklägers eingreift. Das ist hier nicht der
Fall.

Oberster Gerichtshof,
Wien, am 18. Dezember 2006.
Dr. L a n g e r
Für die Richtigkeit der Ausfertigung
der Leiter der Geschäftsabteilung