The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIVENDI S.A., <br><br> Plaintiff, <br><br> v. <br><br> T-MOBILE USA, INC., T-MOBILE DEUTSCHLAND GMBH, T-MOBILE INTERNATIONAL AG, DEUTSCHE TELEKOM AG, and ZYGMUNT SOLORZ-ZAK, <br><br> Defendants. | No. CV6-1524 JLR <br><br> **DECLARATION OF PROFESSOR PAUL OBERHAMMER IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

I, PROFESSOR PAUL OBERHAMMER, hereby declare as follows:

**INTRODUCTION**

1. I have been asked by counsel for Deutsche Telekom AG (hereinafter referred to as "DT") to provide an expert opinion on certain legal issues that have arisen out of the RICO litigation pending before the United States District Court, Western District of Washington at Seattle (hereinafter referred to as "RICO litigation").

2. I am Professor Ordinarius (Full Professor) of Swiss and International Civil Procedure, Enforcement and Insolvency Law, Private and Business Law at Zurich University, Switzerland. I have completed my legal education in Austria (Magister iuris, Vienna University 1991, Dr. iuris, Vienna University 1992). From 1992 to 1997, I was Lecturer in

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)                                  1

Law at the Department of Civil Procedure, Vienna University. Besides that, I acted as a law clerk for a number of Viennese courts in 1993. In 1997 I obtained the qualification to be a professor ("Habilitation") with a thesis on issues of procedural law and corporate law at Vienna University. In 1997 I was appointed as an Associate Professor at the Department of Civil Procedure, Vienna University. From 1997 to 1999 I also acted as a counsel for a prominent Viennese law firm. I was appointed to be a Full Professor at Halle-Wittenberg University, Germany, in 2001 (Chair of Civil Law, Civil Procedure and Commercial Law). I obtained the Chair set forth above at Zurich University, Switzerland in 2003. I was chairman of the commission that drafted the new Austrian law of arbitration which was enacted in 2006. I am the author of about 175 legal publications, among them studies on international litigation, arbitration and corporate law.

3.   I have to point out that my expertise is limited to Austrian, German, Swiss and European law. I have no qualification to opine on French, Polish or U.S. law. Therefore, the legal opinion at hand does not deal with French or Polish law.

4.   I understand that Vivendi S.A. (hereinafter referred to as "Vivendi") brought an action under the Racketeer Influenced and Corrupt Organizations Act (the "RICO act") against DT, its T-Mobile subsidiaries and Zygmunt Solorz-Zak. DT is a company domiciled in Bonn, Germany. Vivendi is a company which is headquartered in Paris, France. I am informed that there is a dispute between companies controlled by Vivendi and DT about the ownership of certain shares of Polska Telefonia Cyfrowa sp.zo.o., a leading Polish wireless telephone company. This dispute led to a variety of legal proceedings, including, but not limited to arbitration in Austria and court proceedings in Austria and Poland.

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)    2

## SUBJECT MATTER OF THE CLAIM

5.    Vivendi alleges that it has claims under the RICO act against the defendants of the litigation at hand. In the following, I will discuss issues relating to these claims under European, German and Austrian law. Therefore, I will discuss the relevant issues under the assumption that Vivendi would bring an action based on the same set of facts and including the identical prayers for relief under the respective European laws.

6.    In this context, I assume the following: I have reviewed Vivendi's RICO action. In this action, Vivendi does not at all allege claims under contractual relations with DT and its subsidiaries. At para.16 of its RICO action, Vivendi points out the following:

> *The remedy and justice that this action seeks are simple: Vivendi asks this court to order defendants to either pay Vivendi the fair market value of the assets that they stole or return to Vivendi its rightful control of PTC – one or the other, the money or the shares.*

Therefore, I assume that Vivendi's RICO action is based on the allegation that the defendants of this action are liable for fraudulent behavior and that Vivendi's claim is aiming at the recovery of the shares or of the losses caused by such behavior.

## JURISDICTION OF GERMAN AND AUSTRIAN COURTS

**General**

7. I have been asked to opine on the question whether German or Austrian courts have jurisdiction for the case at hand. Based on the factual assumptions set forth above, Vivendi's claim – if brought before the courts of an EU member state – clearly qualifies as a "civil and commercial matter" under art. 1 para. 1 of the Brussels Regulation (Council Regulation [EC] No. 44/2001 of 22 December 2000 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters, attached as exhibit A). This regulation provides for jurisdiction (and the recognition and enforcement of judgments) for said civil and commercial matters in all EU member countries (except Denmark). This regulation has priority over national law; this means that within its scope of application, international jurisdiction of a member state's court is subject to said regulation only – there are no additional or different venues under the national laws of the member states. In the scope of this regulation, the national laws of the member states can only provide for domestic venues in cases where the Brussels Regulation only provides for international jurisdiction of a state's courts, but not for a specific forum within this country.

**Jurisdiction of German Courts**

8. As I will show below, Vivendi can bring its claim against DT before German courts, because DT's domicile is situated in Germany.

9. Under art. 2 of the Brussels Regulation, persons domiciled in a member state may, whatever their nationality, be sued in the courts of that member state. For the purposes of the

Brussels regulation, a company is domiciled at the place where it has its statutory seat or its central administration or its principal place of business (art. 60 para. 1 Brussels Regulation).

10. Therefore, DT can be sued at its statutory seat or its central administration or its principal place of business within the EU. According to my information, this place is Bonn, Germany. Therefore, I can draw the interim conclusion that DT could be sued before a German court. The same is true for the DT subsidiary companies at their respective domiciles.

**Jurisdiction of Austrian Courts**

11. As I will show below, Vivendi can bring its claim against DT before Austrian courts, because according to Vivendi's allegations, DT caused Vivendi's loss by its fraudulent behavior in proceedings in Austria.

12. Art. 5 through 23 of the Brussels Regulation provide for special bases of jurisdiction. In some cases, the courts of a member state have exclusive jurisdiction according to art. 22 Brussels regulation. Nothing in the case at hand indicates that such exclusive jurisdiction could apply. In addition, there are no allegations whatsoever that the parties of the litigation at hand concluded a forum selection agreement according to art. 23 of the Brussels Regulation. Therefore, one has to examine more closely the special bases for jurisdiction provided for under art. 5 to 7 of the Brussels Regulation.

13. According to art. 5 para. 3 Brussels regulation, a person domiciled in a member state may, in another member state, be sued in matters relating to tort, delict or quasi-delict, in the

courts for the place where the harmful event occurred or may occur. The European court of justice and the prevailing opinion in the member states developed a broad notion of the terms "tort, delict, or quasi-delict" (see ECJ, case 189/87, Kalfelis v. Schroeder, attached as exhibit B). As a principle, every civil liability for wrongful behavior different from breach of contract is a matter relating to "tort, delict or quasi-delict" and everybody who directly suffered a damage or loss as a result from such behavior can therefore sue for compensation in a venue according to art. 5 para. 3 Brussels Regulation. (see European Court of Justice, case 220/88, Dumez v. Hessische Landesbank, attached as exhibit C).

14. It almost goes without saying that a claim based on the allegation that the defendant committed a fraud qualifies as a matter relating to a "delict" in this context. Therefore, I can draw the interim conclusion that the subject matter of the case at hand would qualify as a "delict" under the Brussels regulation. Therefore, Vivendi could sue DT before the courts for the place where the harmful event occurred.

15. According to art. 5 para. 3 Brussels Regulation the defendant may be sued in the courts for "the place where the harmful event occurred". In the case 21/76, Bier v. Mines de potasse d'Alsace (attached as exhibit D), the European Court of Justice came to the conclusion that both the place where the delict was committed and where the loss or damages came into effect are venues under said art. 5 para. 3 Brussels Regulation. There is no ECJ case law specifically dealing with a case exactly like the one at hand, where the fraud allegedly took place in the course of a joint venture; see, however, case C-168/02 Kronhofer v. Maier et al (liability for wrongful conduct of foreign investment consultants, attached as exhibit E).

16. In its complaint, Vivendi alleges that DT committed its fraudulent behaviour (not only, but also) in Austria, as allegedly the conduct of arbitral proceedings in Austria was part of the fraudulent behaviour of DT against Vivendi. Based on this factual assumption, I can draw the interim conclusion that Vivendi could possibly sue DT before Austrian courts based on art. 5 para. 3 Brussels Regulation. Note that this paragraph does not provide for exclusive jurisdiction. Therefore, both the venues under art. 2 (domicile) and art. 5 para. 3 Brussels Regulation apply.

17. Therefore, I can draw the following conclusion with respect to jurisdiction of German and Austrian courts: In any event, Vivendi can sue DT before German courts (art. 2 Brussels Regulation). As Vivendi's claim is based on the allegation of a delict, art. 5 para. 3 Brussels regulation could apply as well. Accordingly, Vivendi could sue DT "at the place where the harmful event occurred"; according to Vivendi's allegations, Vivendi directly suffered a loss from DT's wrongful behavior in Austrian proceedings. Therfore, there could be a venue in Austria as well.

**CLAIMS UNDER GERMAN AND AUSTRIAN LAW**

18. As I will show below, both German and Austrian law provide for a liability for damages and losses caused by fraudulent behaviour. Note, again, that this liability is part of the more general concept of the liability for "delict" in these civil law countries.

19. Under the German and Austrian provisions on the law of conflicts, claims based on delictual liability are primarily subject to the law of the state where the alleged wrongdoer

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)                                         7

committed the delict (see for Germany art. 40 Introductory Statute to the Code of Civil Law, attached as exhibit F; for Austria sec. 48 of the Federal Statute on Private International Law, attached as exhibit G). According to Vivendi's RICO action, DT allegedly committed a fraud by acting (among others) in Germany (where it has its headquarters) and Austria (where it commenced and conducted arbitral proceedings). Therefore it is possible that German or Austrian law will be applied on the case at hand before German or Austrian courts.

20. German law provides for delictual liability in cases of fraud. On the one hand, fraud is a delict under criminal law and therefore, it is also a basis for delictual liability under sec. 823 para. 2 of the German Code of Civil Civil Law (hereinafter referred to as "BGB"), attached as exhibit H. In addition, sec. 826 BGB (attached as exhibit I) provides for a special claim against a party who intentionally damages somebody in violation of good faith. In both cases the actual loss or damage of the victim of such actions can be awarded. The relief is not restricted to financial compensation, but can also contain the actual restitution of the status quo ante in kind according to sec. 249 para. 1 BGB (attached as exhibit J).

21. The situation in Austria is almost identical with the German one. The Austrian General Code of Civil Law (hereinafter referred to as "ABGB") also provides for delictual liability in cases of fraud (see sec. 1311, attached as exhibit K, and sec. 1295 para. 2 ABGB, attached as exhibit L). As is the case under German law, Austrian law does provide for financial compensation and restitution in kind, but not for damages exceeding the actual economic loss of the damaged party in such cases.

22. Therefore, I can draw the following conclusion: Both German and Austrian law of

conflicts allow the application of the law of the place where the fraudulent behaviour was committed. It is therefore possible that German or Austrian could apply in the case at hand before German or Austrian courts. (I do however not exclude the possibility that a plaintiff could successfully argue that the law of a third country could apply in this case.) Both German and Austrian law provide for compensation for damages in cases of fraud. This liability is not restricted to financial compensation, but also includes claims for the restitution of the status quo ante in kind.

## INTERNATIONAL LEGAL ASSISTANCE BETWEEN MEMBER STATES OF THE EUROPEAN UNION

23.   If Vivendi brought its claim for damages before European courts, evidence situated in a foreign member state of the Union could be of relevance. E.g., a German court could have to deal with business activities in Poland where Polish witnesses are relevant. Note in this context that the Council Regulation [EC] no. 1206/2001 of 28 May 2001 on Cooperation between the Courts of the Member States in the Taking of Evidence in Civil or Commercial Matters (hereinafter referred to as "Evidence Regulation", attached as exhibit M) would apply here. As already set forth above, a delictual claim would qualify as a "civil or commercial matter" under European law of civil procedure (see para. 7 of this legal opinion).

24.   The Evidence Regulation contains a number of similarities with the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters (hereinafter referred to as "Hague Convention", attached as exhibit N). As most of the member states of the European Union are parties to said Hague Convention, this convention served as a starting point for the European legislature. (Note that Austria is not a

party to the Hague Convention.) In the process of the drafting the Evidence Regulation, the legislature strived to improve the system of the Hague Convention in order to facilitate the taking of evidence within the European Union.

25. It is generally accepted among European practitioners that the Evidence Regulation made the transnational taking of evidence in civil litigation within the European Union less burdensome. The Evidence Regulation provides for a direct communication of requests for legal assistance between the courts of the member states (see art. 2 Evidence Regulation) and provides for effective procedures for legal assistance with respect to the taking of evidence. In case the requested court in the country where the evidence is situated is taking the evidence, both the parties and representatives of the requesting court have the right to actively participate in the foreign proceedings rendering legal assistance (see art. 11 and 12 Evidence Regulation).

26. The Evidence Regulation, however, goes far beyond traditional means of legal assistance, including the Hague Convention. According to art. 17 of the Evidence Regulation, direct cross-border taking of evidence by the requesting court is admissible as well. Where a court requests to take evidence directly in another member state, it can directly approach the foreign authorities for a permission to do so. Therefore, within the European Union (including all states relevant in the case at hand: Germany, Poland, Austria, France) a judge can e.g. travel to another member state in order to take witness testimony there himself or herself. There are, however, some limits to this right: The authorities of the state where the foreign judge wants to take evidence have the right to designate a national court that can take part in the performance of the taking of the evidence in order to insure the proper application

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)   10

1  of the Evidence Regulation; in addition, the direct taking of evidence may only take place if
2  it can be performed on a voluntary basis without the need for coercive measures (see art. 17
3  para. 2 and 4 of said regulation). If coercive measures turn out to be necessary, these
4  measures can only be ordered by domestic courts.

8  I declare under penalty of perjury under the laws of the United States that the foregoing is
9  true and correct.
10  EXECUTED this 16th day of May, 2007.

_____
Prof. Paul Oberhammer