# EXHIBIT A

Case 2:06-cv-01524-JLR    Document 46-2    Filed 05/17/07    Page 2 of 48

I

*(Acts whose publication is obligatory)*

## COUNCIL REGULATION (EC) No 44/2001

### of 22 December 2000

**on jurisdiction and the recognition and enforcement of judgments in civil and commercial matters**

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 61(c) and Article 67(1) thereof,

Having regard to the proposal from the Commission ([1]),

Having regard to the opinion of the European Parliament ([2]),

Having regard to the opinion of the Economic and Social Committee ([3]),

Whereas:

(1) The Community has set itself the objective of maintaining and developing an area of freedom, security and justice, in which the free movement of persons is ensured. In order to establish progressively such an area, the Community should adopt, amongst other things, the measures relating to judicial cooperation in civil matters which are necessary for the sound operation of the internal market.

(2) Certain differences between national rules governing jurisdiction and recognition of judgments hamper the sound operation of the internal market. Provisions to unify the rules of conflict of jurisdiction in civil and commercial matters and to simplify the formalities with a view to rapid and simple recognition and enforcement of judgments from Member States bound by this Regulation are essential.

(3) This area is within the field of judicial cooperation in civil matters within the meaning of Article 65 of the Treaty.

(4) In accordance with the principles of subsidiarity and proportionality as set out in Article 5 of the Treaty, the objectives of this Regulation cannot be sufficiently achieved by the Member States and can therefore be better achieved by the Community. This Regulation confines itself to the minimum required in order to achieve those objectives and does not go beyond what is necessary for that purpose.

(5) On 27 September 1968 the Member States, acting under Article 293, fourth indent, of the Treaty, concluded the Brussels Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by Conventions on the Accession of the New Member States to that Convention (hereinafter referred to as the 'Brussels Convention') ([4]). On 16 September 1988 Member States and EFTA States concluded the Lugano Convention on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, which is a parallel Convention to the 1968 Brussels Convention. Work has been undertaken for the revision of those Conventions, and the Council has approved the content of the revised texts. Continuity in the results achieved in that revision should be ensured.

(6) In order to attain the objective of free movement of judgments in civil and commercial matters, it is necessary and appropriate that the rules governing jurisdiction and the recognition and enforcement of judgments be governed by a Community legal instrument which is binding and directly applicable.

(7) The scope of this Regulation must cover all the main civil and commercial matters apart from certain well-defined matters.

([1]) OJ C 376, 28.12.1999, p. 1.
([2]) Opinion delivered on 21 September 2000 (not yet published in the Official Journal).
([3]) OJ C 117, 26.4.2000, p. 6.

([4]) OJ L 299, 31.12.1972, p. 32.
      OJ L 304, 30.10.1978, p. 1.
      OJ L 388, 31.12.1982, p. 1.
      OJ L 285, 3.10.1989, p. 1.
      OJ C 15, 15.1.1997, p. 1.
      For a consolidated text, see OJ C 27, 26.1.1998, p. 1.

(8) There must be a link between proceedings to which this Regulation applies and the territory of the Member States bound by this Regulation. Accordingly common rules on jurisdiction should, in principle, apply when the defendant is domiciled in one of those Member States.

(9) A defendant not domiciled in a Member State is in general subject to national rules of jurisdiction applicable in the territory of the Member State of the court seised, and a defendant domiciled in a Member State not bound by this Regulation must remain subject to the Brussels Convention.

(10) For the purposes of the free movement of judgments, judgments given in a Member State bound by this Regulation should be recognised and enforced in another Member State bound by this Regulation, even if the judgment debtor is domiciled in a third State.

(11) The rules of jurisdiction must be highly predictable and founded on the principle that jurisdiction is generally based on the defendant's domicile and jurisdiction must always be available on this ground save in a few well-defined situations in which the subject-matter of the litigation or the autonomy of the parties warrants a different linking factor. The domicile of a legal person must be defined autonomously so as to make the common rules more transparent and avoid conflicts of jurisdiction.

(12) In addition to the defendant's domicile, there should be alternative grounds of jurisdiction based on a close link between the court and the action or in order to facilitate the sound administration of justice.

(13) In relation to insurance, consumer contracts and employment, the weaker party should be protected by rules of jurisdiction more favourable to his interests than the general rules provide for.

(14) The autonomy of the parties to a contract, other than an insurance, consumer or employment contract, where only limited autonomy to determine the courts having jurisdiction is allowed, must be respected subject to the exclusive grounds of jurisdiction laid down in this Regulation.

(15) In the interests of the harmonious administration of justice it is necessary to minimise the possibility of concurrent proceedings and to ensure that irreconcilable judgments will not be given in two Member States. There must be a clear and effective mechanism for resolving cases of *lis pendens* and related actions and for obviating problems flowing from national differences as to the determination of the time when a case is regarded as pending. For the purposes of this Regulation that time should be defined autonomously.

(16) Mutual trust in the administration of justice in the Community justifies judgments given in a Member State being recognised automatically without the need for any procedure except in cases of dispute.

(17) By virtue of the same principle of mutual trust, the procedure for making enforceable in one Member State a judgment given in another must be efficient and rapid. To that end, the declaration that a judgment is enforceable should be issued virtually automatically after purely formal checks of the documents supplied, without there being any possibility for the court to raise of its own motion any of the grounds for non-enforcement provided for by this Regulation.

(18) However, respect for the rights of the defence means that the defendant should be able to appeal in an adversarial procedure, against the declaration of enforceability, if he considers one of the grounds for non-enforcement to be present. Redress procedures should also be available to the claimant where his application for a declaration of enforceability has been rejected.

(19) Continuity between the Brussels Convention and this Regulation should be ensured, and transitional provisions should be laid down to that end. The same need for continuity applies as regards the interpretation of the Brussels Convention by the Court of Justice of the European Communities and the 1971 Protocol ([1]) should remain applicable also to cases already pending when this Regulation enters into force.

(20) The United Kingdom and Ireland, in accordance with Article 3 of the Protocol on the position of the United Kingdom and Ireland annexed to the Treaty on European Union and to the Treaty establishing the European Community, have given notice of their wish to take part in the adoption and application of this Regulation.

(21) Denmark, in accordance with Articles 1 and 2 of the Protocol on the position of Denmark annexed to the Treaty on European Union and to the Treaty

---

([1]) OJ L 204, 2.8.1975, p. 28.
OJ L 304, 30.10.1978, p. 1.
OJ L 388, 31.12.1982, p. 1.
OJ L 285, 3.10.1989, p. 1.
OJ C 15, 15.1.1997, p. 1.
For a consolidated text see OJ C 27, 26.1.1998, p. 28.

establishing the European Community, is not participating in the adoption of this Regulation, and is therefore not bound by it nor subject to its application.

(22)  Since the Brussels Convention remains in force in relations between Denmark and the Member States that are bound by this Regulation, both the Convention and the 1971 Protocol continue to apply between Denmark and the Member States bound by this Regulation.

(23)  The Brussels Convention also continues to apply to the territories of the Member States which fall within the territorial scope of that Convention and which are excluded from this Regulation pursuant to Article 299 of the Treaty.

(24)  Likewise for the sake of consistency, this Regulation should not affect rules governing jurisdiction and the recognition of judgments contained in specific Community instruments.

(25)  Respect for international commitments entered into by the Member States means that this Regulation should not affect conventions relating to specific matters to which the Member States are parties.

(26)  The necessary flexibility should be provided for in the basic rules of this Regulation in order to take account of the specific procedural rules of certain Member States. Certain provisions of the Protocol annexed to the Brussels Convention should accordingly be incorporated in this Regulation.

(27)  In order to allow a harmonious transition in certain areas which were the subject of special provisions in the Protocol annexed to the Brussels Convention, this Regulation lays down, for a transitional period, provisions taking into consideration the specific situation in certain Member States.

(28)  No later than five years after entry into force of this Regulation the Commission will present a report on its application and, if need be, submit proposals for adaptations.

(29)  The Commission will have to adjust Annexes I to IV on the rules of national jurisdiction, the courts or competent authorities and redress procedures available on the basis of the amendments forwarded by the Member State concerned; amendments made to Annexes V and VI should be adopted in accordance with Council Decision 1999/468/EC of 28 June 1999 laying down the procedures for the exercise of implementing powers conferred on the Commission ([1]),

---

([1])  OJ L 184, 17.7.1999, p. 23.

HAS ADOPTED THIS REGULATION:

## CHAPTER I

### SCOPE

*Article 1*

1.    This Regulation shall apply in civil and commercial matters whatever the nature of the court or tribunal. It shall not extend, in particular, to revenue, customs or administrative matters.

2.    The Regulation shall not apply to:

(a)  the status or legal capacity of natural persons, rights in property arising out of a matrimonial relationship, wills and succession;

(b)  bankruptcy, proceedings relating to the winding-up of insolvent companies or other legal persons, judicial arrangements, compositions and analogous proceedings;

(c)  social security;

(d)  arbitration.

3.    In this Regulation, the term 'Member State' shall mean Member States with the exception of Denmark.

## CHAPTER II

### JURISDICTION

Section 1

### General provisions

*Article 2*

1.    Subject to this Regulation, persons domiciled in a Member State shall, whatever their nationality, be sued in the courts of that Member State.

2.    Persons who are not nationals of the Member State in which they are domiciled shall be governed by the rules of jurisdiction applicable to nationals of that State.

*Article 3*

1.    Persons domiciled in a Member State may be sued in the courts of another Member State only by virtue of the rules set out in Sections 2 to 7 of this Chapter.

2.    In particular the rules of national jurisdiction set out in Annex I shall not be applicable as against them.

*Article 4*

1.    If the defendant is not domiciled in a Member State, the jurisdiction of the courts of each Member State shall, subject to Articles 22 and 23, be determined by the law of that Member State.

2.    As against such a defendant, any person domiciled in a Member State may, whatever his nationality, avail himself in that State of the rules of jurisdiction there in force, and in particular those specified in Annex I, in the same way as the nationals of that State.

Section 2

**Special jurisdiction**

*Article 5*

A person domiciled in a Member State may, in another Member State, be sued:

1.  (a) in matters relating to a contract, in the courts for the place of performance of the obligation in question;

    (b) for the purpose of this provision and unless otherwise agreed, the place of performance of the obligation in question shall be:

    — in the case of the sale of goods, the place in a Member State where, under the contract, the goods were delivered or should have been delivered,

    — in the case of the provision of services, the place in a Member State where, under the contract, the services were provided or should have been provided,

    (c) if subparagraph (b) does not apply then subparagraph (a) applies;

2.  in matters relating to maintenance, in the courts for the place where the maintenance creditor is domiciled or habitually resident or, if the matter is ancillary to proceedings concerning the status of a person, in the court which, according to its own law, has jurisdiction to entertain those proceedings, unless that jurisdiction is based solely on the nationality of one of the parties;

3.  in matters relating to tort, *delict* or *quasi-delict*, in the courts for the place where the harmful event occurred or may occur;

4.  as regards a civil claim for damages or restitution which is based on an act giving rise to criminal proceedings, in the court seised of those proceedings, to the extent that that court has jurisdiction under its own law to entertain civil proceedings;

5.  as regards a dispute arising out of the operations of a branch, agency or other establishment, in the courts for the place in which the branch, agency or other establishment is situated;

6.  as settlor, trustee or beneficiary of a trust created by the operation of a statute, or by a written instrument, or created orally and evidenced in writing, in the courts of the Member State in which the trust is domiciled;

7.  as regards a dispute concerning the payment of remuneration claimed in respect of the salvage of a cargo or freight, in the court under the authority of which the cargo or freight in question:

    (a) has been arrested to secure such payment, or

    (b) could have been so arrested, but bail or other security has been given;

    provided that this provision shall apply only if it is claimed that the defendant has an interest in the cargo or freight or had such an interest at the time of salvage.

*Article 6*

A person domiciled in a Member State may also be sued:

1.  where he is one of a number of defendants, in the courts for the place where any one of them is domiciled,

provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings;

2. as a third party in an action on a warranty or guarantee or in any other third party proceedings, in the court seised of the original proceedings, unless these were instituted solely with the object of removing him from the jurisdiction of the court which would be competent in his case;

3. on a counter-claim arising from the same contract or facts on which the original claim was based, in the court in which the original claim is pending;

4. in matters relating to a contract, if the action may be combined with an action against the same defendant in matters relating to rights *in rem* in immovable property, in the court of the Member State in which the property is situated.

### Article 7

Where by virtue of this Regulation a court of a Member State has jurisdiction in actions relating to liability from the use or operation of a ship, that court, or any other court substituted for this purpose by the internal law of that Member State, shall also have jurisdiction over claims for limitation of such liability.

### Section 3

**Jurisdiction in matters relating to insurance**

### Article 8

In matters relating to insurance, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.

### Article 9

1. An insurer domiciled in a Member State may be sued:

(a) in the courts of the Member State where he is domiciled, or

(b) in another Member State, in the case of actions brought by the policyholder, the insured or a beneficiary, in the courts for the place where the plaintiff is domiciled,

(c) if he is a co-insurer, in the courts of a Member State in which proceedings are brought against the leading insurer.

2. An insurer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.

### Article 10

In respect of liability insurance or insurance of immovable property, the insurer may in addition be sued in the courts for the place where the harmful event occurred. The same applies if movable and immovable property are covered by the same insurance policy and both are adversely affected by the same contingency.

### Article 11

1. In respect of liability insurance, the insurer may also, if the law of the court permits it, be joined in proceedings which the injured party has brought against the insured.

2. Articles 8, 9 and 10 shall apply to actions brought by the injured party directly against the insurer, where such direct actions are permitted.

3. If the law governing such direct actions provides that the policyholder or the insured may be joined as a party to the action, the same court shall have jurisdiction over them.

### Article 12

1. Without prejudice to Article 11(3), an insurer may bring proceedings only in the courts of the Member State in which the defendant is domiciled, irrespective of whether he is the policyholder, the insured or a beneficiary.

2. The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

### Article 13

The provisions of this Section may be departed from only by an agreement:

1. which is entered into after the dispute has arisen, or

L 12/6          EN          Official Journal of the European Communities          16.1.2001

2. which allows the policyholder, the insured or a beneficiary to bring proceedings in courts other than those indicated in this Section, or

3. which is concluded between a policyholder and an insurer, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Member State, and which has the effect of conferring jurisdiction on the courts of that State even if the harmful event were to occur abroad, provided that such an agreement is not contrary to the law of that State, or

4. which is concluded with a policyholder who is not domiciled in a Member State, except in so far as the insurance is compulsory or relates to immovable property in a Member State, or

5. which relates to a contract of insurance in so far as it covers one or more of the risks set out in Article 14.

*Article 14*

The following are the risks referred to in Article 13(5):

1. any loss of or damage to:

   (a) seagoing ships, installations situated offshore or on the high seas, or aircraft, arising from perils which relate to their use for commercial purposes;

   (b) goods in transit other than passengers' baggage where the transit consists of or includes carriage by such ships or aircraft;

2. any liability, other than for bodily injury to passengers or loss of or damage to their baggage:

   (a) arising out of the use or operation of ships, installations or aircraft as referred to in point 1(a) in so far as, in respect of the latter, the law of the Member State in which such aircraft are registered does not prohibit agreements on jurisdiction regarding insurance of such risks;

   (b) for loss or damage caused by goods in transit as described in point 1(b);

3. any financial loss connected with the use or operation of ships, installations or aircraft as referred to in point 1(a), in particular loss of freight or charter-hire;

4. any risk or interest connected with any of those referred to in points 1 to 3;

5. notwithstanding points 1 to 4, all 'large risks' as defined in Council Directive 73/239/EEC ([1]), as amended by Council Directives 88/357/EEC ([2]) and 90/618/EEC ([3]), as they may be amended.

Section 4

**Jurisdiction over consumer contracts**

*Article 15*

1. In matters relating to a contract concluded by a person, the consumer, for a purpose which can be regarded as being outside his trade or profession, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5, if:

   (a) it is a contract for the sale of goods on instalment credit terms; or

   (b) it is a contract for a loan repayable by instalments, or for any other form of credit, made to finance the sale of goods; or

   (c) in all other cases, the contract has been concluded with a person who pursues commercial or professional activities in the Member State of the consumer's domicile or, by any means, directs such activities to that Member State or to several States including that Member State, and the contract falls within the scope of such activities.

2. Where a consumer enters into a contract with a party who is not domiciled in the Member State but has a branch, agency or other establishment in one of the Member States, that party shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that State.

3. This Section shall not apply to a contract of transport other than a contract which, for an inclusive price, provides for a combination of travel and accommodation.

([1]) OJ L 228, 16.8.1973, p. 3. Directive as last amended by Directive 2000/26/EC of the European Parliament and of the Council (OJ L 181, 20.7.2000, p. 65).

([2]) OJ L 172, 4.7.1988, p. 1. Directive as last amended by Directive 2000/26/EC.

([3]) OJ L 330, 29.11.1990, p. 44.

## Article 16

1. A consumer may bring proceedings against the other party to a contract either in the courts of the Member State in which that party is domiciled or in the courts for the place where the consumer is domiciled.

2. Proceedings may be brought against a consumer by the other party to the contract only in the courts of the Member State in which the consumer is domiciled.

3. This Article shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

## Article 17

The provisions of this Section may be departed from only by an agreement:

1. which is entered into after the dispute has arisen; or

2. which allows the consumer to bring proceedings in courts other than those indicated in this Section; or

3. which is entered into by the consumer and the other party to the contract, both of whom are at the time of conclusion of the contract domiciled or habitually resident in the same Member State, and which confers jurisdiction on the courts of that Member State, provided that such an agreement is not contrary to the law of that Member State.

## Section 5

## Jurisdiction over individual contracts of employment

## Article 18

1. In matters relating to individual contracts of employment, jurisdiction shall be determined by this Section, without prejudice to Article 4 and point 5 of Article 5.

2. Where an employee enters into an individual contract of employment with an employer who is not domiciled in a Member State but has a branch, agency or other establishment in one of the Member States, the employer shall, in disputes arising out of the operations of the branch, agency or establishment, be deemed to be domiciled in that Member State.

## Article 19

An employer domiciled in a Member State may be sued:

1. in the courts of the Member State where he is domiciled; or

2. in another Member State:

   (a) in the courts for the place where the employee habitually carries out his work or in the courts for the last place where he did so, or

   (b) if the employee does not or did not habitually carry out his work in any one country, in the courts for the place where the business which engaged the employee is or was situated.

## Article 20

1. An employer may bring proceedings only in the courts of the Member State in which the employee is domiciled.

2. The provisions of this Section shall not affect the right to bring a counter-claim in the court in which, in accordance with this Section, the original claim is pending.

## Article 21

The provisions of this Section may be departed from only by an agreement on jurisdiction:

1. which is entered into after the dispute has arisen; or

2. which allows the employee to bring proceedings in courts other than those indicated in this Section.

## Section 6

## Exclusive jurisdiction

## Article 22

The following courts shall have exclusive jurisdiction, regardless of domicile:

1. in proceedings which have as their object rights *in rem* in immovable property or tenancies of immovable property, the courts of the Member State in which the property is situated.

However, in proceedings which have as their object tenancies of immovable property concluded for temporary private use for a maximum period of six consecutive months, the courts of the Member State in which the defendant is domiciled shall also have jurisdiction, provided that the tenant is a natural person and that the landlord and the tenant are domiciled in the same Member State;

2.  in proceedings which have as their object the validity of the constitution, the nullity or the dissolution of companies or other legal persons or associations of natural or legal persons, or of the validity of the decisions of their organs, the courts of the Member State in which the company, legal person or association has its seat. In order to determine that seat, the court shall apply its rules of private international law;

3.  in proceedings which have as their object the validity of entries in public registers, the courts of the Member State in which the register is kept;

4.  in proceedings concerned with the registration or validity of patents, trade marks, designs, or other similar rights required to be deposited or registered, the courts of the Member State in which the deposit or registration has been applied for, has taken place or is under the terms of a Community instrument or an international convention deemed to have taken place.

Without prejudice to the jurisdiction of the European Patent Office under the Convention on the Grant of European Patents, signed at Munich on 5 October 1973, the courts of each Member State shall have exclusive jurisdiction, regardless of domicile, in proceedings concerned with the registration or validity of any European patent granted for that State;

5.  in proceedings concerned with the enforcement of judgments, the courts of the Member State in which the judgment has been or is to be enforced.

Section 7

**Prorogation of jurisdiction**

*Article 23*

1.    If the parties, one or more of whom is domiciled in a Member State, have agreed that a court or the courts of a Member State are to have jurisdiction to settle any disputes which have arisen or which may arise in connection with a particular legal relationship, that court or those courts shall

have jurisdiction. Such jurisdiction shall be exclusive unless the parties have agreed otherwise. Such an agreement conferring jurisdiction shall be either:

(a)  in writing or evidenced in writing; or

(b)  in a form which accords with practices which the parties have established between themselves; or

(c)  in international trade or commerce, in a form which accords with a usage of which the parties are or ought to have been aware and which in such trade or commerce is widely known to, and regularly observed by, parties to contracts of the type involved in the particular trade or commerce concerned.

2.    Any communication by electronic means which provides a durable record of the agreement shall be equivalent to 'writing'.

3.    Where such an agreement is concluded by parties, none of whom is domiciled in a Member State, the courts of other Member States shall have no jurisdiction over their disputes unless the court or courts chosen have declined jurisdiction.

4.    The court or courts of a Member State on which a trust instrument has conferred jurisdiction shall have exclusive jurisdiction in any proceedings brought against a settlor, trustee or beneficiary, if relations between these persons or their rights or obligations under the trust are involved.

5.    Agreements or provisions of a trust instrument conferring jurisdiction shall have no legal force if they are contrary to Articles 13, 17 or 21, or if the courts whose jurisdiction they purport to exclude have exclusive jurisdiction by virtue of Article 22.

*Article 24*

Apart from jurisdiction derived from other provisions of this Regulation, a court of a Member State before which a defendant enters an appearance shall have jurisdiction. This rule shall not apply where appearance was entered to contest the jurisdiction, or where another court has exclusive jurisdiction by virtue of Article 22.

Section 8

**Examination as to jurisdiction and admissibility**

*Article 25*

Where a court of a Member State is seised of a claim which is principally concerned with a matter over which the courts of another Member State have exclusive jurisdiction by virtue of Article 22, it shall declare of its own motion that it has no jurisdiction.

*Article 26*

1.    Where a defendant domiciled in one Member State is sued in a court of another Member State and does not enter an appearance, the court shall declare of its own motion that it has no jurisdiction unless its jurisdiction is derived from the provisions of this Regulation.

2.    The court shall stay the proceedings so long as it is not shown that the defendant has been able to receive the document instituting the proceedings or an equivalent document in sufficient time to enable him to arrange for his defence, or that all necessary steps have been taken to this end.

3.    Article 19 of Council Regulation (EC) No 1348/2000 of 29 May 2000 on the service in the Member States of judicial and extrajudicial documents in civil or commercial matters ([1]) shall apply instead of the provisions of paragraph 2 if the document instituting the proceedings or an equivalent document had to be transmitted from one Member State to another pursuant to this Regulation.

4.    Where the provisions of Regulation (EC) No 1348/2000 are not applicable, Article 15 of the Hague Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters shall apply if the document instituting the proceedings or an equivalent document had to be transmitted pursuant to that Convention.

Section 9

***Lis pendens* — related actions**

*Article 27*

1.    Where proceedings involving the same cause of action and between the same parties are brought in the courts of

different Member States, any court other than the court first seised shall of its own motion stay its proceedings until such time as the jurisdiction of the court first seised is established.

2.    Where the jurisdiction of the court first seised is established, any court other than the court first seised shall decline jurisdiction in favour of that court.

*Article 28*

1.    Where related actions are pending in the courts of different Member States, any court other than the court first seised may stay its proceedings.

2.    Where these actions are pending at first instance, any court other than the court first seised may also, on the application of one of the parties, decline jurisdiction if the court first seised has jurisdiction over the actions in question and its law permits the consolidation thereof.

3.    For the purposes of this Article, actions are deemed to be related where they are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings.

*Article 29*

Where actions come within the exclusive jurisdiction of several courts, any court other than the court first seised shall decline jurisdiction in favour of that court.

*Article 30*

For the purposes of this Section, a court shall be deemed to be seised:

1.    at the time when the document instituting the proceedings or an equivalent document is lodged with the court, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have service effected on the defendant, or

2.    if the document has to be served before being lodged with the court, at the time when it is received by the authority responsible for service, provided that the plaintiff has not subsequently failed to take the steps he was required to take to have the document lodged with the court.

---

([1])  OJ L 160, 30.6.2000, p. 37.

Section 10

**Provisional, including protective, measures**

*Article 31*

Application may be made to the courts of a Member State for such provisional, including protective, measures as may be available under the law of that State, even if, under this Regulation, the courts of another Member State have jurisdiction as to the substance of the matter.

CHAPTER III

**RECOGNITION AND ENFORCEMENT**

*Article 32*

For the purposes of this Regulation, 'judgment' means any judgment given by a court or tribunal of a Member State, whatever the judgment may be called, including a decree, order, decision or writ of execution, as well as the determination of costs or expenses by an officer of the court.

Section 1

**Recognition**

*Article 33*

1.    A judgment given in a Member State shall be recognised in the other Member States without any special procedure being required.

2.    Any interested party who raises the recognition of a judgment as the principal issue in a dispute may, in accordance with the procedures provided for in Sections 2 and 3 of this Chapter, apply for a decision that the judgment be recognised.

3.    If the outcome of proceedings in a court of a Member State depends on the determination of an incidental question of recognition that court shall have jurisdiction over that question.

*Article 34*

A judgment shall not be recognised:

1.    if such recognition is manifestly contrary to public policy in the Member State in which recognition is sought;

2.    where it was given in default of appearance, if the defendant was not served with the document which instituted the proceedings or with an equivalent document in sufficient time and in such a way as to enable him to arrange for his defence, unless the defendant failed to commence proceedings to challenge the judgment when it was possible for him to do so;

3.    if it is irreconcilable with a judgment given in a dispute between the same parties in the Member State in which recognition is sought;

4.    if it is irreconcilable with an earlier judgment given in another Member State or in a third State involving the same cause of action and between the same parties, provided that the earlier judgment fulfils the conditions necessary for its recognition in the Member State addressed.

*Article 35*

1.    Moreover, a judgment shall not be recognised if it conflicts with Sections 3, 4 or 6 of Chapter II, or in a case provided for in Article 72.

2.    In its examination of the grounds of jurisdiction referred to in the foregoing paragraph, the court or authority applied to shall be bound by the findings of fact on which the court of the Member State of origin based its jurisdiction.

3.    Subject to the paragraph 1, the jurisdiction of the court of the Member State of origin may not be reviewed. The test of public policy referred to in point 1 of Article 34 may not be applied to the rules relating to jurisdiction.

*Article 36*

Under no circumstances may a foreign judgment be reviewed as to its substance.

*Article 37*

1.    A court of a Member State in which recognition is sought of a judgment given in another Member State may stay the proceedings if an ordinary appeal against the judgment has been lodged.

2.    A court of a Member State in which recognition is sought of a judgment given in Ireland or the United Kingdom may stay the proceedings if enforcement is suspended in the State of origin, by reason of an appeal.

## Section 2

## Enforcement

### Article 38

1.    A judgment given in a Member State and enforceable in that State shall be enforced in another Member State when, on the application of any interested party, it has been declared enforceable there.

2.    However, in the United Kingdom, such a judgment shall be enforced in England and Wales, in Scotland, or in Northern Ireland when, on the application of any interested party, it has been registered for enforcement in that part of the United Kingdom.

### Article 39

1.    The application shall be submitted to the court or competent authority indicated in the list in Annex II.

2.    The local jurisdiction shall be determined by reference to the place of domicile of the party against whom enforcement is sought, or to the place of enforcement.

### Article 40

1.    The procedure for making the application shall be governed by the law of the Member State in which enforcement is sought.

2.    The applicant must give an address for service of process within the area of jurisdiction of the court applied to. However, if the law of the Member State in which enforcement is sought does not provide for the furnishing of such an address, the applicant shall appoint a representative *ad litem*.

3.    The documents referred to in Article 53 shall be attached to the application.

### Article 41

The judgment shall be declared enforceable immediately on completion of the formalities in Article 53 without any review under Articles 34 and 35. The party against whom enforcement is sought shall not at this stage of the proceedings be entitled to make any submissions on the application.

### Article 42

1.    The decision on the application for a declaration of enforceability shall forthwith be brought to the notice of the applicant in accordance with the procedure laid down by the law of the Member State in which enforcement is sought.

2.    The declaration of enforceability shall be served on the party against whom enforcement is sought, accompanied by the judgment, if not already served on that party.

### Article 43

1.    The decision on the application for a declaration of enforceability may be appealed against by either party.

2.    The appeal is to be lodged with the court indicated in the list in Annex III.

3.    The appeal shall be dealt with in accordance with the rules governing procedure in contradictory matters.

4.    If the party against whom enforcement is sought fails to appear before the appellate court in proceedings concerning an appeal brought by the applicant, Article 26(2) to (4) shall apply even where the party against whom enforcement is sought is not domiciled in any of the Member States.

5.    An appeal against the declaration of enforceability is to be lodged within one month of service thereof. If the party against whom enforcement is sought is domiciled in a Member State other than that in which the declaration of enforceability was given, the time for appealing shall be two months and shall run from the date of service, either on him in person or at his residence. No extension of time may be granted on account of distance.

### Article 44

The judgment given on the appeal may be contested only by the appeal referred to in Annex IV.

### Article 45

1.    The court with which an appeal is lodged under Article 43 or Article 44 shall refuse or revoke a declaration of enforceability only on one of the grounds specified in Articles 34 and 35. It shall give its decision without delay.

2.    Under no circumstances may the foreign judgment be reviewed as to its substance.

### Article 46

1.    The court with which an appeal is lodged under Article 43 or Article 44 may, on the application of the party against whom enforcement is sought, stay the proceedings if an ordinary appeal has been lodged against the judgment in the Member State of origin or if the time for such an appeal has not yet expired; in the latter case, the court may specify the time within which such an appeal is to be lodged.

2.    Where the judgment was given in Ireland or the United Kingdom, any form of appeal available in the Member State of origin shall be treated as an ordinary appeal for the purposes of paragraph 1.

L 12/12    EN    Official Journal of the European Communities    16.1.2001

3.    The court may also make enforcement conditional on the provision of such security as it shall determine.

### Article 47

1.    When a judgment must be recognised in accordance with this Regulation, nothing shall prevent the applicant from availing himself of provisional, including protective, measures in accordance with the law of the Member State requested without a declaration of enforceability under Article 41 being required.

2.    The declaration of enforceability shall carry with it the power to proceed to any protective measures.

3.    During the time specified for an appeal pursuant to Article 43(5) against the declaration of enforceability and until any such appeal has been determined, no measures of enforcement may be taken other than protective measures against the property of the party against whom enforcement is sought.

### Article 48

1.    Where a foreign judgment has been given in respect of several matters and the declaration of enforceability cannot be given for all of them, the court or competent authority shall give it for one or more of them.

2.    An applicant may request a declaration of enforceability limited to parts of a judgment.

### Article 49

A foreign judgment which orders a periodic payment by way of a penalty shall be enforceable in the Member State in which enforcement is sought only if the amount of the payment has been finally determined by the courts of the Member State of origin.

### Article 50

An applicant who, in the Member State of origin has benefited from complete or partial legal aid or exemption from costs or expenses, shall be entitled, in the procedure provided for in this Section, to benefit from the most favourable legal aid or the most extensive exemption from costs or expenses provided for by the law of the Member State addressed.

### Article 51

No security, bond or deposit, however described, shall be required of a party who in one Member State applies for enforcement of a judgment given in another Member State on the ground that he is a foreign national or that he is not domiciled or resident in the State in which enforcement is sought.

### Article 52

In proceedings for the issue of a declaration of enforceability, no charge, duty or fee calculated by reference to the value of the matter at issue may be levied in the Member State in which enforcement is sought.

### Section 3

**Common provisions**

### Article 53

1.    A party seeking recognition or applying for a declaration of enforceability shall produce a copy of the judgment which satisfies the conditions necessary to establish its authenticity.

2.    A party applying for a declaration of enforceability shall also produce the certificate referred to in Article 54, without prejudice to Article 55.

### Article 54

The court or competent authority of a Member State where a judgment was given shall issue, at the request of any interested party, a certificate using the standard form in Annex V to this Regulation.

### Article 55

1.    If the certificate referred to in Article 54 is not produced, the court or competent authority may specify a time for its production or accept an equivalent document or, if it considers that it has sufficient information before it, dispense with its production.

2.    If the court or competent authority so requires, a translation of the documents shall be produced. The translation shall be certified by a person qualified to do so in one of the Member States.

### Article 56

No legalisation or other similar formality shall be required in respect of the documents referred to in Article 53 or Article 55(2), or in respect of a document appointing a representative *ad litem*.

## CHAPTER IV

### AUTHENTIC INSTRUMENTS AND COURT SETTLEMENTS

#### Article 57

1.   A document which has been formally drawn up or registered as an authentic instrument and is enforceable in one Member State shall, in another Member State, be declared enforceable there, on application made in accordance with the procedures provided for in Articles 38, et seq. The court with which an appeal is lodged under Article 43 or Article 44 shall refuse or revoke a declaration of enforceability only if enforcement of the instrument is manifestly contrary to public policy in the Member State addressed.

2.   Arrangements relating to maintenance obligations concluded with administrative authorities or authenticated by them shall also be regarded as authentic instruments within the meaning of paragraph 1.

3.   The instrument produced must satisfy the conditions necessary to establish its authenticity in the Member State of origin.

4.   Section 3 of Chapter III shall apply as appropriate. The competent authority of a Member State where an authentic instrument was drawn up or registered shall issue, at the request of any interested party, a certificate using the standard form in Annex VI to this Regulation.

#### Article 58

A settlement which has been approved by a court in the course of proceedings and is enforceable in the Member State in which it was concluded shall be enforceable in the State addressed under the same conditions as authentic instruments. The court or competent authority of a Member State where a court settlement was approved shall issue, at the request of any interested party, a certificate using the standard form in Annex V to this Regulation.

## CHAPTER V

### GENERAL PROVISIONS

#### Article 59

1.   In order to determine whether a party is domiciled in the Member State whose courts are seised of a matter, the court shall apply its internal law.

2.   If a party is not domiciled in the Member State whose courts are seised of the matter, then, in order to determine whether the party is domiciled in another Member State, the court shall apply the law of that Member State.

#### Article 60

1.   For the purposes of this Regulation, a company or other legal person or association of natural or legal persons is domiciled at the place where it has its:

(a)  statutory seat, or

(b)  central administration, or

(c)  principal place of business.

2.   For the purposes of the United Kingdom and Ireland 'statutory seat' means the registered office or, where there is no such office anywhere, the place of incorporation or, where there is no such place anywhere, the place under the law of which the formation took place.

3.   In order to determine whether a trust is domiciled in the Member State whose courts are seised of the matter, the court shall apply its rules of private international law.

#### Article 61

Without prejudice to any more favourable provisions of national laws, persons domiciled in a Member State who are being prosecuted in the criminal courts of another Member State of which they are not nationals for an offence which was not intentionally committed may be defended by persons qualified to do so, even if they do not appear in person. However, the court seised of the matter may order appearance in person; in the case of failure to appear, a judgment given in the civil action without the person concerned having had the opportunity to arrange for his defence need not be recognised or enforced in the other Member States.

#### Article 62

In Sweden, in summary proceedings concerning orders to pay (betalningsföreläggande) and assistance (handräckning), the expression 'court' includes the 'Swedish enforcement service' (kronofogdemyndighet).

#### Article 63

1.   A person domiciled in the territory of the Grand Duchy of Luxembourg and sued in the court of another Member State pursuant to Article 5(1) may refuse to submit to the jurisdiction of that court if the final place of delivery of the goods or provision of the services is in Luxembourg.

2. Where, under paragraph 1, the final place of delivery of the goods or provision of the services is in Luxembourg, any agreement conferring jurisdiction must, in order to be valid, be accepted in writing or evidenced in writing within the meaning of Article 23(1)(a).

3. The provisions of this Article shall not apply to contracts for the provision of financial services.

4. The provisions of this Article shall apply for a period of six years from entry into force of this Regulation.

### Article 64

1. In proceedings involving a dispute between the master and a member of the crew of a seagoing ship registered in Greece or in Portugal, concerning remuneration or other conditions of service, a court in a Member State shall establish whether the diplomatic or consular officer responsible for the ship has been notified of the dispute. It may act as soon as that officer has been notified.

2. The provisions of this Article shall apply for a period of six years from entry into force of this Regulation.

### Article 65

1. The jurisdiction specified in Article 6(2), and Article 11 in actions on a warranty of guarantee or in any other third party proceedings may not be resorted to in Germany and Austria. Any person domiciled in another Member State may be sued in the courts:

(a) of Germany, pursuant to Articles 68 and 72 to 74 of the Code of Civil Procedure (*Zivilprozessordnung*) concerning third-party notices,

(b) of Austria, pursuant to Article 21 of the Code of Civil Procedure (*Zivilprozessordnung*) concerning third-party notices.

2. Judgments given in other Member States by virtue of Article 6(2), or Article 11 shall be recognised and enforced in Germany and Austria in accordance with Chapter III. Any effects which judgments given in these States may have on third parties by application of the provisions in paragraph 1 shall also be recognised in the other Member States.

### CHAPTER VI

### TRANSITIONAL PROVISIONS

### Article 66

1. This Regulation shall apply only to legal proceedings instituted and to documents formally drawn up or registered as authentic instruments after the entry into force thereof.

2. However, if the proceedings in the Member State of origin were instituted before the entry into force of this Regulation, judgments given after that date shall be recognised and enforced in accordance with Chapter III,

(a) if the proceedings in the Member State of origin were instituted after the entry into force of the Brussels or the Lugano Convention both in the Member State or origin and in the Member State addressed;

(b) in all other cases, if jurisdiction was founded upon rules which accorded with those provided for either in Chapter II or in a convention concluded between the Member State of origin and the Member State addressed which was in force when the proceedings were instituted.

### CHAPTER VII

### RELATIONS WITH OTHER INSTRUMENTS

### Article 67

This Regulation shall not prejudice the application of provisions governing jurisdiction and the recognition and enforcement of judgments in specific matters which are contained in Community instruments or in national legislation harmonised pursuant to such instruments.

### Article 68

1. This Regulation shall, as between the Member States, supersede the Brussels Convention, except as regards the territories of the Member States which fall within the territorial scope of that Convention and which are excluded from this Regulation pursuant to Article 299 of the Treaty.

2. In so far as this Regulation replaces the provisions of the Brussels Convention between Member States, any reference to the Convention shall be understood as a reference to this Regulation.

### Article 69

Subject to Article 66(2) and Article 70, this Regulation shall, as between Member States, supersede the following conventions and treaty concluded between two or more of them:

— the Convention between Belgium and France on Jurisdiction and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Paris on 8 July 1899,

— the Convention between Belgium and the Netherlands on Jurisdiction, Bankruptcy, and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Brussels on 28 March 1925,

— the Convention between France and Italy on the Enforcement of Judgments in Civil and Commercial Matters, signed at Rome on 3 June 1930,

— the Convention between Germany and Italy on the Recognition and Enforcement of Judgments in Civil and Commercial Matters, signed at Rome on 9 March 1936,

— the Convention between Belgium and Austria on the Reciprocal Recognition and Enforcement of Judgments and Authentic Instruments relating to Maintenance Obligations, signed at Vienna on 25 October 1957,

— the Convention between Germany and Belgium on the Mutual Recognition and Enforcement of Judgments, Arbitration Awards and Authentic Instruments in Civil and Commercial Matters, signed at Bonn on 30 June 1958,

— the Convention between the Netherlands and Italy on the Recognition and Enforcement of Judgments in Civil and Commercial Matters, signed at Rome on 17 April 1959,

— the Convention between Germany and Austria on the Reciprocal Recognition and Enforcement of Judgments, Settlements and Authentic Instruments in Civil and Commercial Matters, signed at Vienna on 6 June 1959,

— the Convention between Belgium and Austria on the Reciprocal Recognition and Enforcement of Judgments, Arbitral Awards and Authentic Instruments in Civil and Commercial Matters, signed at Vienna on 16 June 1959,

— the Convention between Greece and Germany for the Reciprocal Recognition and Enforcement of Judgments, Settlements and Authentic Instruments in Civil and Commercial Matters, signed in Athens on 4 November 1961,

— the Convention between Belgium and Italy on the Recognition and Enforcement of Judgments and other Enforceable Instruments in Civil and Commercial Matters, signed at Rome on 6 April 1962,

— the Convention between the Netherlands and Germany on the Mutual Recognition and Enforcement of Judgments and Other Enforceable Instruments in Civil and Commercial Matters, signed at The Hague on 30 August 1962,

— the Convention between the Netherlands and Austria on the Reciprocal Recognition and Enforcement of Judgments and Authentic Instruments in Civil and Commercial Matters, signed at The Hague on 6 February 1963,

— the Convention between France and Austria on the Recognition and Enforcement of Judgments and Authentic Instruments in Civil and Commercial Matters, signed at Vienna on 15 July 1966,

— the Convention between Spain and France on the Recognition and Enforcement of Judgment Arbitration Awards in Civil and Commercial Matters, signed at Paris on 28 May 1969,

— the Convention between Luxembourg and Austria on the Recognition and Enforcement of Judgments and Authentic Instruments in Civil and Commercial Matters, signed at Luxembourg on 29 July 1971,

— the Convention between Italy and Austria on the Recognition and Enforcement of Judgments in Civil and Commercial Matters, of Judicial Settlements and of Authentic Instruments, signed at Rome on 16 November 1971,

— the Convention between Spain and Italy regarding Legal Aid and the Recognition and Enforcement of Judgments in Civil and Commercial Matters, signed at Madrid on 22 May 1973,

— the Convention between Finland, Iceland, Norway, Sweden and Denmark on the Recognition and Enforcement of Judgments in Civil Matters, signed at Copenhagen on 11 October 1977,

— the Convention between Austria and Sweden on the Recognition and Enforcement of Judgments in Civil Matters, signed at Stockholm on 16 September 1982,

— the Convention between Spain and the Federal Republic of Germany on the Recognition and Enforcement of Judgments, Settlements and Enforceable Authentic Instruments in Civil and Commercial Matters, signed at Bonn on 14 November 1983,

— the Convention between Austria and Spain on the Recognition and Enforcement of Judgments, Settlements and Enforceable Authentic Instruments in Civil and Commercial Matters, signed at Vienna on 17 February 1984,

— the Convention between Finland and Austria on the Recognition and Enforcement of Judgments in Civil Matters, signed at Vienna on 17 November 1986, and

— the Treaty between Belgium, the Netherlands and Luxembourg in Jurisdiction, Bankruptcy, and the Validity and Enforcement of Judgments, Arbitration Awards and Authentic Instruments, signed at Brussels on 24 November 1961, in so far as it is in force.

### Article 70

1.    The Treaty and the Conventions referred to in Article 69 shall continue to have effect in relation to matters to which this Regulation does not apply.

2.    They shall continue to have effect in respect of judgments given and documents formally drawn up or registered as authentic instruments before the entry into force of this Regulation.

### Article 71

1.    This Regulation shall not affect any conventions to which the Member States are parties and which in relation to particular matters, govern jurisdiction or the recognition or enforcement of judgments.

2.    With a view to its uniform interpretation, paragraph 1 shall be applied in the following manner:

(a) this Regulation shall not prevent a court of a Member State, which is a party to a convention on a particular matter, from assuming jurisdiction in accordance with that convention, even where the defendant is domiciled in another Member State which is not a party to that convention. The court hearing the action shall, in any event, apply Article 26 of this Regulation;

(b) judgments given in a Member State by a court in the exercise of jurisdiction provided for in a convention on a particular matter shall be recognised and enforced in the other Member States in accordance with this Regulation.

Where a convention on a particular matter to which both the Member State of origin and the Member State addressed are parties lays down conditions for the recognition or enforcement of judgments, those conditions shall apply. In any event, the provisions of this Regulation which concern the procedure for recognition and enforcement of judgments may be applied.

### Article 72

This Regulation shall not affect agreements by which Member States undertook, prior to the entry into force of this Regulation pursuant to Article 59 of the Brussels Convention, not to recognise judgments given, in particular in other Contracting States to that Convention, against defendants domiciled or habitually resident in a third country where, in cases provided for in Article 4 of that Convention, the judgment could only be founded on a ground of jurisdiction specified in the second paragraph of Article 3 of that Convention.

## CHAPTER VIII

## FINAL PROVISIONS

### Article 73

No later than five years after the entry into force of this Regulation, the Commission shall present to the European Parliament, the Council and the Economic and Social Committee a report on the application of this Regulation. The report shall be accompanied, if need be, by proposals for adaptations to this Regulation.

### Article 74

1.    The Member States shall notify the Commission of the texts amending the lists set out in Annexes I to IV. The Commission shall adapt the Annexes concerned accordingly.

2.    The updating or technical adjustment of the forms, specimens of which appear in Annexes V and VI, shall be adopted in accordance with the advisory procedure referred to in Article 75(2).

### Article 75

1.    The Commission shall be assisted by a committee.

2.    Where reference is made to this paragraph, Articles 3 and 7 of Decision 1999/468/EC shall apply.

3.    The Committee shall adopt its rules of procedure.

### Article 76

This Regulation shall enter into force on 1 March 2002.

This Regulation is binding in its entirety and directly applicable in the Member States in accordance with the Treaty establishing the European Community.

Done at Brussels, 22 December 2000.

*For the Council*
*The President*
C. PIERRET

———

*ANNEX I*

**Rules of jurisdiction referred to in Article 3(2) and Article 4(2)**

The rules of jurisdiction referred to in Article 3(2) and Article 4(2) are the following:

— in Belgium: Article 15 of the Civil Code (*Code civil/Burgerlijk Wetboek*) and Article 638 of the Judicial Code (*Code judiciaire/Gerechtelijk Wetboek*);

— in Germany: Article 23 of the Code of Civil Procedure (*Zivilprozessordnung*),

— in Greece, Article 40 of the Code of Civil Procedure (*Κώδικας Πολιτικής Δικονομίας*);

— in France: Articles 14 and 15 of the Civil Code (*Code civil*),

— in Ireland: the rules which enable jurisdiction to be founded on the document instituting the proceedings having been served on the defendant during his temporary presence in Ireland,

— in Italy: Articles 3 and 4 of Act 218 of 31 May 1995,

— in Luxembourg: Articles 14 and 15 of the Civil Code (*Code civil*),

— in the Netherlands: Articles 126(3) and 127 of the Code of Civil Procedure (*Wetboek van Burgerlijke Rechtsvordering*),

— in Austria: Article 99 of the Court Jurisdiction Act (*Jurisdiktionsnorm*),

— in Portugal: Articles 65 and 65A of the Code of Civil Procedure (*Código de Processo Civil*) and Article 11 of the Code of Labour Procedure (*Código de Processo de Trabalho*),

— in Finland: the second, third and fourth sentences of the first paragraph of Section 1 of Chapter 10 of the Code of Judicial Procedure (*oikeudenkäymiskaari/rättegångsbalken*),

— in Sweden: the first sentence of the first paragraph of Section 3 of Chapter 10 of the Code of Judicial Procedure (*rättegångsbalken*),

— in the United Kingdom: rules which enable jurisdiction to be founded on:

   (a) the document instituting the proceedings having been served on the defendant during his temporary presence in the United Kingdom; or

   (b) the presence within the United Kingdom of property belonging to the defendant; or

   (c) the seizure by the plaintiff of property situated in the United Kingdom.

———

*ANNEX II*

The courts or competent authorities to which the application referred to in Article 39 may be submitted are the following:

— in Belgium, the '*tribunal de première instance*' or '*rechtbank van eerste aanleg*' or '*erstinstanzliches Gericht*',

— in Germany, the presiding judge of a chamber of the '*Landgericht*',

— in Greece, the '*Μονομελές Πρωτοδικείο*',

— in Spain, the '*Juzgado de Primera Instancia*',

— in France, the presiding judge of the '*tribunal de grande instance*',

— in Ireland, the High Court,

— in Italy, the '*Corte d'appello*',

— in Luxembourg, the presiding judge of the '*tribunal d'arrondissement*',

— in the Netherlands, the presiding judge of the '*arrondissementsrechtbank*';

— in Austria, the '*Bezirksgericht*',

— in Portugal, the '*Tribunal de Comarca*',

— in Finland, the '*käräjäoikeus/tingsrätt*',

— in Sweden, the '*Svea hovrätt*',

— in the United Kingdom:

   (a) in England and Wales, the High Court of Justice, or in the case of a maintenance judgment, the Magistrate's Court on transmission by the Secretary of State;

   (b) in Scotland, the Court of Session, or in the case of a maintenance judgment, the Sheriff Court on transmission by the Secretary of State;

   (c) in Northern Ireland, the High Court of Justice, or in the case of a maintenance judgment, the Magistrate's Court on transmission by the Secretary of State;

   (d) in Gibraltar, the Supreme Court of Gibraltar, or in the case of a maintenance judgment, the Magistrates' Court on transmission by the Attorney General of Gibraltar.

———

*ANNEX III*

The courts with which appeals referred to in Article 43(2) may be lodged are the following:

— in Belgium,

    (a) as regards appeal by the defendant: the *'tribunal de première instance'* or *'rechtbank van eerste aanleg'* or *'erstinstanzliches Gericht'*,

    (b) as regards appeal by the applicant: the *'Cour d'appel'* or *'hof van beroep'*,

— in the Federal Republic of Germany, the *'Oberlandesgericht'*,

— in Greece, the *'Εφετείο'*,

— in Spain, the *'Audiencia Provincial'*,

— in France, the *'cour d'appel'*,

— in Ireland, the High Court,

— in Italy, the *'corte d'appello'*,

— in Luxembourg, the *'Cour supérieure de Justice'* sitting as a court of civil appeal,

— in the Netherlands:

    (a) for the defendant: the *'arrondissementsrechtbank'*,

    (b) for the applicant: the *'gerechtshof'*,

— in Austria, the *'Bezirksgericht'*,

— in Portugal, the *'Tribunal de Relação'*,

— in Finland, the *'hovioikeus/hovrätt'*,

— in Sweden, the *'Svea hovrätt'*,

— in the United Kingdom:

    (a) in England and Wales, the High Court of Justice, or in the case of a maintenance judgment, the Magistrate's Court;

    (b) in Scotland, the Court of Session, or in the case of a maintenance judgment, the Sheriff Court;

    (c) in Northern Ireland, the High Court of Justice, or in the case of a maintenance judgment, the Magistrate's Court;

    (d) in Gibraltar, the Supreme Court of Gibraltar, or in the case of a maintenance judgment, the Magistrates' Court.

―――――

Case 2:06-cv-01524-JLR    Document 46-2    Filed 05/17/07    Page 22 of 48

*ANNEX IV*

The appeals which may be lodged pursuant to Article 44 are the following

— in Belgium, Greece, Spain, France, Italy, Luxembourg and the Netherlands, an appeal in cassation,

— in Germany, a '*Rechtsbeschwerde*',

— in Ireland, an appeal on a point of law to the Supreme Court,

— in Austria, a '*Revisionsrekurs*',

— in Portugal, an appeal on a point of law,

— in Finland, an appeal to the '*korkein oikeus/högsta domstolen*',

— in Sweden, an appeal to the '*Högsta domstolen*',

— in the United Kingdom, a single further appeal on a point of law.

———

*ANNEX V*

**Certificate referred to in Articles 54 and 58 of the Regulation on judgments and court settlements**

(English, inglés, anglais, inglese, ...)

1. Member State of origin

2. Court or competent authority issuing the certificate

    2.1. Name

    2.2. Address

    2.3. Tel./fax/e-mail

3. Court which delivered the judgment/approved the court settlement (*)

    3.1. Type of court

    3.2. Place of court

4. Judgment/court settlement (*)

    4.1. Date

    4.2. Reference number

    4.3. The parties to the judgment/court settlement (*)

        4.3.1. Name(s) of plaintiff(s)

        4.3.2. Name(s) of defendant(s)

        4.3.3. Name(s) of other party(ies), if any

    4.4. Date of service of the document instituting the proceedings where judgment was given in default of appearance

    4.5. Text of the judgment/court settlement (*) as annexed to this certificate

5. Names of parties to whom legal aid has been granted

The judgment/court settlement (*) is enforceable in the Member State of origin (Articles 38 and 58 of the Regulation) against:

Name:

Done at  . . . . . . . . . . . . . . . . . . . . . . . . . . . , date  . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Signature and/or stamp  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

―――――

(*) Delete as appropriate.

*ANNEX VI*

**Certificate referred to in Article 57(4) of the Regulation on authentic instruments**

(English, inglés, anglais, inglese ............)

1. Member State of origin

2. Competent authority issuing the certificate

    2.1. Name

    2.2. Address

    2.3. Tel./fax/e-mail

3. Authority which has given authenticity to the instrument

    3.1. Authority involved in the drawing up of the authentic instrument (if applicable)

        3.1.1. Name and designation of authority

        3.1.2. Place of authority

    3.2. Authority which has registered the authentic instrument (if applicable)

        3.2.1. Type of authority

        3.2.2. Place of authority

4. Authentic instrument

    4.1. Description of the instrument

    4.2. Date

        4.2.1. on which the instrument was drawn up

        4.2.2. if different: on which the instrument was registered

    4.3. Reference number

    4.4. Parties to the instrument

        4.4.1. Name of the creditor

        4.4.2. Name of the debtor

5. Text of the enforceable obligation as annexed to this certificate

The authentic instrument is enforceable against the debtor in the Member State of origin (Article 57(1) of the Regulation)

Done at  . . . . . . . . . . . . . . . . . . . . . . . . ,    date  . . . . . . . . . . . . . . . . . . . . . . . . .

Signature and/or stamp  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

_____

# EXHIBIT B

Westlaw.

OJ 1988 C281/18                                                      Page 1

EU: Case **189/87**

### European Union Case Law

COURT OF JUSTICE

Judgment of the Court (Fifth Chamber) of 27 September 1988 in Case **189/87** (reference for a preliminary ruling made by the Bundesgerichtshof): Athanasios **Kalfelis** v. Bankhaus Schroder, Munchmeyer, Hengst und Co., trading under the corporate name of HEMA Beteiligungsgesellschaft mbH KG, and Others (Articles 5 (3) and 6 (1) of the Brussels Convention - Plurality of defendants - Concept of tort, delict and quasi-delict)

Official Journal C 281, 04/11/1988 p. 18

© ELLIS Publications.

© European Communities.

Text

Index

Year (Dates)

Bibliographic Information

                                    Text

Reference for a preliminary ruling

Articles 5 (3) and 6 (1) of the Brussels Convention

More than one defendant

Concept of tort, delict and quasi-delict

SUMMARY FROM THE COURT'S INFORMATION SERVICE BULLETIN:

The Bundesgerichtshof referred two questions relating to the interpretation of Articles 5 (3) and 6 (1) of the Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters (hereinafter referred to as 'the Convention').

Those questions were raised in proceedings between Mr Athanasios **Kalfelis** on the one hand and the Banque Schroer, Muchmeyer, Hengst & Cie, having its registered office at Frankfurt am Main, Banque Schroer, Muchmeyer, Hengst International S.A. a subsidiary of the first defendant, having its registered office in Luxembourg and, finally, Mr Ernst Markgraf, an authorized signatory of the first defendant, on the other hand.

In the period from March 1980 to July 1981 Mr **Kalfelis** concluded with the Luxembourg bank, by the

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case **189/87**

intermediary of the Frankfurt bank and its authorized signatory, spot and futures transactions in silver and paid the Luxembourg bank DM 344 858.52 in respect of those transactions. The futures transactions resulted in a total loss. In his action Mr **Kalfelis** claims from the defendants as joint debtors the sum of DM 463 019.08 together with interest. The plaintiff bases his action on contractual claims for breach of the duty to provide information, on tort, pursuant to the German criminal code, and on unjustified enrichment.

At all stages of the proceedings Banque Schroer, Muchmeyer, Hengst International S.A. contested the jurisdiction of the German courts.

The first question

The first question asked by the Bundesgerichtshof is in substance whether for the application of 6 (1) of the Convention there must be a connexion between the actions brought by the same plaintiff against different defendants and, if so, what is the nature of that connexion.

It must be borne in mind that the principle laid down by the Convention is that the courts of the State in which the defendant is domiciled are to have jurisdiction and that the jurisdiction provided for in Article 6 (1) constitutes an exception to that principle. It follows that such an exception must be developed in such a way that the principle itself cannot be called in question.

That might be the case if it was open to a plaintiff to bring an action against several defendants with the sole object of ousting the jurisdiction of the courts of the State in which one of those defendants is domiciled.

Since that possibility must be excluded, it is necessary in this respect for there to be a connexion between the actions brought against each of the defendants.

The rule laid down in Article 6 (1) therefore applies when the actions brought against the different defendants are connected at the time of their commencement, that is to say when it is expedient to hear and determine them together in order to avoid the risk of irreconcilable judgments resulting from separate proceedings. It is for the national court to determine in each specific case whether that condition is satisfied.

The second question

The second question asked by the Bundesgerichtshof is in substance whether the term 'tort, delict and quasi-delict' used in Article 5 (3) of the Brussels Convention must be construed independently of the Convention or according to the national law applicable and whether, in the case of an action based simultaneously on claims in tort and contract and for unjustified enrichment, a court which has jurisdiction under Article 5 (3) may entertain that action with regard to other matters not based on tort.

As the Court has held with regard to the concept of 'matters relating to contract' in Article 5 (1), it is important, having regard to the objectives and the general scheme of the Convention, that in order to ensure as far as possible the equality and uniformity of the rights and obligations arising out of the Convention for the Contracting States and the persons concerned that concept should not be interpreted simply as referring to the national law of one or other of the States concerned.

Therefore, the concept of matters relating to tort, delict and quasi-delict must be regarded as an independent concept which, for the purpose of the application of the Convention, must be interpreted by reference chiefly to the scheme and objectives of the Convention in order to ensure that it is fully effective.

In order to ensure a uniform solution in all the Member States, it must be assumed that the concept of matters relating to 'tort, delict and quasi-delict' relates to any action which seeks to establish a defendant's liability and

Copr. © West 2007 No Claim to Orig. Govt. Works

OJ 1988 C281/18                                                    Page 3

EU: Case **189/87**

which is not related to a 'contract' within the meaning of Article 5 (1).

As regards the second limb of the question, it must be observed that the instances of 'special jurisdiction' listed in Articles 5 and 6 of the Convention constitute derogations, to be interpreted strictly, from the principle that the courts of the State in which the defendant is domiciled are to have jurisdiction. It must therefore be assumed that a court which has jurisdiction under Article 5 (3) to entertain an action with regard to claims in tort does not have jurisdiction to entertain that action with regard to other matters not based on tort.

Although there are disadvantages in having different aspects of a case decided by different courts, it must be pointed out first of all that the plaintiff always has the possibility of bringing all of his action before the court of the defendant's domicile and secondly that in certain circumstances Article 22 of the Convention allows the court first seised to hear and determine the entire case if the actions brought before different courts are related.

The Court ruled:

'1. For the application of Article 6 (1) of the Convention there must exist between the different actions brought by the same plaintiff against different defendants a link such that it is expedient to determine those actions together in order to avoid the risk of irreconcilable judgments resulting from separate proceedings.

2. (a) The term 'tort, delict or quasi-delict' in Article 5 (3) of the Convention must be regarded as an independent concept covering any action which seeks to establish the liability of a defendant and which is not related to a 'contract' within the meaning of Article 5 (1).

(b) A court which has jurisdiction under Article 5 (3) to entertain an action with regard to claims in tort does not have jurisdiction to entertain that action with regard to other matters not based on tort.

Mr Advocate General Darmon delivered his Opinion at the sitting on 15 June 1988.

He proposed that the Court should rule that:

'- The application of Article 6 (1) of the Convention of 27 September 1968 requires that the actions should be related in such a way that it is expedient to hear and determine them at the same time in order to avoid the risk of irreconcilable judgments resulting from separate proceedings;

- The term 'tort, delict and quasi-delict' in Article 5 (3) of the Convention must be construed independently;

- An action based on tort and contract and on unjust enrichment is governed exclusively by the rules laid down for contractual matters in Article 5 (1) of the Convention'.

Index

**Keywords**

Bank; Jurisdiction of the courts; Commercial law; Trading operation; Interpretation of the law

Year (Dates)

**Date of Publication**

1988/11/04

Copr. © West 2007 No Claim to Orig. Govt. Works

**028**

OJ 1988 C281/18                                                              Page 4

EU: Case **189/87**

**Date of judgment**

1988/09/27

687Y0189

Bibliographic Information

**Authoring institution**

Court of Justice

ECJ

**Document type**

JUDGMENT

JUDGMENT

**Plaintiff**
ATHANASIOS **KALFELIS**

**Defendant**
BANKHAUS **SCHROEDER,** MUENCHMEYER, HENGST UND CO

**Publication reference**

Official Journal C 281, 04/11/1988 p. 18

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works

**029**

# EXHIBIT C

Westlaw.

[1990] ECR I-49                                                              Page 1

EU: Case C-220/88
Celex No. 688J0220

### European Union Case Law

Court of Justice

Judgment of the Court (Sixth Chamber) of 11 January 1990. Dumez France SA and Tracoba SARL v Hessische Landesbank and others. Reference for a preliminary ruling: Cour de cassation - France. Brussels Convention - Tort, delict or quasi-delict - Interpretation of Article 5 (3) - Indirect victim - Damage suffered by a parent company through financial losses sustained by a subsidiary. Case C-220/88.

European Court Reports 1990 page I-00049

© ELLIS Publications.

© European Communities.

Text outline

Text

Index

Year (Dates)

References

Bibliographic Information

Text

++++
Convention on jurisdiction and the enforcement of judgments - Special jurisdictions - Jurisdiction in tort, delict or quasi-delict - Place where the harmful event occurred - Place where the damage occurred - Concept - Place of occurrence of damage suffered by a third party through damage sustained by the immediate victim - Exclusion

(Convention of 27 September 1968, Article 5(3) )

**SUMMARY**

The expression 'place where the harmful event occurred' contained in Article 5(3) of the Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters may refer to the place where the damage occurred, but the latter concept can be understood only as indicating the place where the event giving rise to the damage, and causing tortious, delictual or quasi-delictual liability to be incurred, directly produced its harmful effects upon the person who is the victim of that event.

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                    Page 2

EU: Case C-220/88
Celex No. 688J0220

Accordingly, the rule on jurisdiction laid down in that article cannot be interpreted as permitting a plaintiff pleading damage which he claims to be the consequence of the harm suffered by other persons who were direct victims of the harmful act to bring proceedings against the perpetrator of that act before the courts in the place in which he himself ascertained the damage to his assets.

## ISSUE 1

In Case C-220/88

REFERENCE to the Court for a preliminary ruling under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters by the French Cour de cassation in the proceedings pending before that court between

(1) Dumez France, formerly Dumez Batiment, societe anonyme, whose registered office is at Nanterre, France,

(2) Tracoba, societe a responsabilite limitee, whose registered office is in Paris, France, whose rights are now held by Oth Infrastructure, of the same address,

and

(1) Hessische Landesbank (Helaba), whose registered office is in Frankfurt am Main, Federal Republic of Germany,

(2) Salvatorplatz-Grundstuecksgesellschaft mbH & Co. oHG Saarland, whose registered office is in Munich, Federal Republic of Germany, formerly Gebrueder Roechling Bank,

(3) Luebecker Hypotheken Bank, whose registered office is in Luebeck, Federal Republic of Germany,

on the interpretation of Article 5(3) of the Convention of 27 September 1968,

THE COURT (Sixth Chamber)

composed of: C. N. Kakouris and F. A. Schockweiler (Presidents of Chambers), T. Koopmans, G. F. Mancini and M. Diez de Velasco, Judges,

Advocate General: M. Darmon

Registrar: H. A. Ruehl, Principal Administrator

after considering the observations submitted on behalf of

Dumez France and Tracoba, the plaintiffs in the main proceedings, by Jean-Denys Barbey, of the Paris Bar,

Hessische Landesbank, defendant in the main proceedings, by Michel Wolfer, of the Paris Bar,

Salvatorplatz-Grundstuecksgesellschaft mbH & Co. oHG Saarland, defendant in the main proceedings, by Richard Neuer, of the Paris Bar,

the Government of the Federal Republic of Germany, by Dr Christof Boehmer, Ministerialrat im Bundesministerium der Justiz, in the written procedure only,

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                                              Page 3

EU: Case C-220/88
Celex No. 688J0220

the Government of the French Republic, by Edwige Belliard, sous-directeur, direction des affaires juridiques, ministere des Affaires etrangeres, assisted by Claude Chavance, attache principal d' administration centrale, direction des affaires juridiques, in the same Ministry, in the written procedure only,

the United Kingdom, by J. A. Gensmantel, Treasury Solicitor' s Department, Queen Anne' s Chambers, assisted by M. C. L. Carpenter of the Lord Chancellor' s Department, in the written procedure only,

the Commission of the European Communities by Georgios Kremlis, a member of its Legal Department, assisted by Giorgio Cherubini, an Italian official working in the Commission under the scheme for exchanges with national officials,

having regard to the Report for the Hearing and further to the hearing on 14 June 1989,

after hearing the Opinion of the Advocate General delivered at the sitting on 23 November 1989,

gives the following

Judgment

**GROUNDS**

1 By judgment of 21 June 1988, which was received at the Court on 4 August 1990, the French Cour de cassation referred to the Court for a preliminary ruling under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters (hereinafter referred to as 'the Convention ') a question on the interpretation of Article 5(3) of the Convention.

2 That question was raised in proceedings to establish quasi-delictual liability brought before the French courts by the French companies Sceper and Tracoba, whose rights are now held by the companies Dumez France and Oth Infrastructure (hereinafter referred to as 'Dumez and Oth '), against Hessische Landesbank, Salvatorplatz-Grundstuecksgesellschaft mbH & Co. oHG Saarland, and Luebecker Hypotheken Bank, whose registered offices are in the Federal Republic of Germany (hereinafter referred to as 'the German banks ').

3 Dumez and Oth seek compensation for the damage which they claim to have suffered owing to the insolvency of their subsidiaries established in the Federal Republic of Germany, which was brought about by the suspension of a property-development project in the Federal Republic of Germany for a German prime contractor, allegedly because of the cancellation by the German banks of the loans granted to the prime contractor.

4 By judgment of 14 May 1985 the tribunal de commerce (Commercial Court), Paris, upheld the objection of lack of jurisdiction raised by the German banks, on the ground that the initial damage was suffered by the subsidiaries of Dumez and Oth in the Federal Republic of Germany and that the French parent companies sustained a financial loss thereafter only indirectly.

5 By judgment of 13 December 1985, the cour d' appel, Paris, confirmed that judgment, taking the view that the financial repercussions which Dumez and Oth claimed to have experienced at their head offices in France were not of such a kind as to affect the location of the damage suffered initially by the subsidiaries in the Federal Republic of Germany.

6 In support of their appeal in cassation against that judgment, Dumez and Oth claimed that the decision of the Court in Case 21/76 G. J. Bier BV v Mines de potasse d' Alsace SA (( 1976)) ECR 1735, according to which the

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                                                          Page 4

EU: Case C-220/88
Celex No. 688J0220

expression 'place where the harmful event occurred' used in Article 5(3) of the Convention covered both the place where the damage occurred and the place of the event giving rise to the damage, with the result that the defendant may be sued, at the option of the plaintiff, in the courts for either of those places, was also applicable to cases of indirect damage. In those circumstances, the place where the harmful event occurred was, according to Dumez and Oth, for a victim who has sustained damage as a consequence of the loss suffered by the initial victim, the place where his interests were adversely affected the plaintiffs in this case being French companies, the place of the financial loss which they suffered following the insolvency of their subsidiaries in the Federal Republic of Germany was therefore the registered offices of Dumez and Oth in France.

7 Considering that the dispute raised a problem of interpretation of Community law, the French Cour de cassation stayed the proceedings and referred the following question to the Court of Justice for a preliminary ruling:

'Is the rule on jurisdiction which allows the plaintiff, under Article 5(3) of the Convention, to choose between the court for the place of the event giving rise to damage and the court for the place where that damage occurs to be extended to cases in which the damage alleged is merely the consequence of the harm suffered by persons who were the immediate victims of damage occurring at a different place, which would enable the indirect victim to bring proceedings before the court of the State in which he is domiciled?'

8 Reference is made to the Report for the Hearing for a fuller account of the facts of the case, the course of the procedure and the written observations submitted to the Court, which are mentioned or discussed hereinafter only in so far as is necessary for the reasoning of the Court.

9 In order to answer the question submitted, it must first be borne in mind that, in the terms of Article 5 of the Convention,

'A person domiciled in a Contracting State may, in another Contracting State, be sued: ...

(3) in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred '.

10 It must then be pointed out that, in its judgment in Mines de potasse d' Alsace, cited above, the Court ruled that where the place of the happening of the event which may give rise to liability in tort, delict or quasi-delict and the place where that event results in damage are not identical, the expression 'place where the harmful event occurred' which appears in Article 5(3) of the Convention must be understood as being intended to cover both the place where the damage occurred and the place of the event giving rise to the damage, with the result that the defendant may be sued, at the option of the plaintiff, either in the courts for the place where the damage occurred or in the courts for the place of the event which gives rise to and is at the origin of that damage.

11 Dumez and Oth observe that in that judgment the Court interpreted Article 5(3) of the Convention without drawing any distinction between direct and indirect victims of damage. In their view, it follows that where an indirect victim claims to have suffered personal damage the court of competent jurisdiction is the court for the place where the victim sustained that damage.

12 It must first be stated in that connection that the judgment in Mines de potasse d' Alsace related to a situation in which the damage - to crops in the Netherlands - occurred at some distance from the event giving rise to the damage - the discharge of saline waste into the Rhine by an undertaking established in France - but by the direct effect of the causal agent, namely the saline waste which had moved physically from one place to another.

13 By contrast, in the present case, the damage allegedly suffered by Dumez and Oth through cancellation, by the German banks, of the loans granted for financing the works originated and produced its direct consequences in the same Member State, namely the one in which the lending banks, the prime contractor and the subsidiaries of

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                                                          Page 5

EU: Case C-220/88
Celex No. 688J0220

Dumez and Oth, which were responsible for the building work, were all established. The harm alleged by the parent companies, Dumez and Oth, is merely the indirect consequence of the financial losses initially suffered by their subsidiaries following cancellation of the loans and the subsequent suspension of the works.

14 It follows that, in a case such as this, the damage alleged is no more than the indirect consequence of the harm initially suffered by other legal persons who were the direct victims of damage which occurred at a place different from that where the indirect victim subsequently suffered harm.

15 It is therefore necessary to consider whether the expression 'place where the damage occurred' as used in the judgment in Mines de potasse d' Alsace may be interpreted as referring to the place where the indirect victims of the damage ascertain the repercussions on their own assets.

16 In that connection the Convention, in establishing the system for the attribution of jurisdiction, adopted the general rule that the courts of the defendant' s domicile would have jurisdiction (Title II, Article 2). Moreover, the hostility of the Convention towards the attribution of jurisdiction to the courts of the plaintiff' s domicile was demonstrated by the fact that the second paragraph of Article 3 precluded the application of national provisions attributing jurisdiction to such courts for proceedings against defendants domiciled in the territory of a Contracting State.

17 It is only by way of exception to the general rule whereby jurisdiction is attributed to the courts of the defendant' s domicile that Title II, Section 2, attributes special jurisdiction in certain cases, including the case envisaged by Article 5(3) of the Convention. As the Court has already held (Mines de potasse d' Alsace, paragraphs 10 and 11), those cases of special jurisdiction, the choice of which is a matter for the plaintiff, are based on the existence of a particularly close connecting factor between the dispute and courts other than those of the defendant' s domicile, which justifies the attribution of jurisdiction to those courts for reasons relating to the sound administration of justice and the efficacious conduct of proceedings.

18 In order to meet that objective, which is of fundamental importance in a convention which has essentially to promote the recognition and enforcement of judgments in States other than those in which they were delivered, it is necessary to avoid the multiplication of courts of competent jurisdiction which would heighten the risk of irreconcilable decisions, this being the reason for which recognition or an order for enforcement is withheld by virtue of Article 27(3) of the Convention.

19 Furthermore, that objective militates against any interpretation of the Convention which, otherwise than in the cases expressly provided for, might lead to recognition of the jurisdiction of the courts of the plaintiff' s domicile and would enable a plaintiff to determine the competent court by his choice of domicile.

20 It follows from the foregoing considerations that although, by virtue of a previous judgment of the Court (in Mines de potasse d' Alsace, cited above), the expression 'place where the harmful event occurred' contained in Article 5(3) of the Convention may refer to the place where the damage occurred, the latter concept can be understood only as indicating the place where the event giving rise to the damage, and entailing tortious, delictual or quasi-delictual liability, directly produced its harmful effects upon the person who is the immediate victim of that event.

21 Moreover, whilst the place where the initial damage manifested itself is usually closely related to the other components of the liability, in most cases the domicile of the indirect victim is not so related.

22 It must therefore be stated in reply to the question submitted by the national court that the rule on jurisdiction laid down in Article 5(3) of the Convention cannot be interpreted as permitting a plaintiff pleading damage which he claims to be the consequence of the harm suffered by other persons who were direct victims of the harmful act

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                         Page 6

EU: Case C-220/88
Celex No. 688J0220

to bring proceedings against the perpetrator of that act in the courts of the place in which he himself ascertained the damage to his assets.

## COSTS

Costs

23  The costs incurred by the Government of the Federal Republic of Germany, the Government of the French Republic and the United Kingdom, which have submitted observations to the Court, are not recoverable. As these proceedings are, in so far as the parties to the main proceedings are concerned, a step in the action pending before the national court, the decision on costs is a matter for that court.

## RULING

On those grounds,

THE COURT (Sixth Chamber),

in reply to the question submitted to it by judgment of the French Cour de cassation of 21 June 1988, hereby rules:

The rule on jurisdiction laid down in Article 5(3) of the Convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters cannot be interpreted as permitting a plaintiff pleading damage which he claims to be the consequence of the harm suffered by other persons who were direct victims of the harmful act to bring proceedings against the perpetrator of that act in the courts of the place in which he himself ascertained the damage to his assets.

Index

Subject

Brussels Convention of 27 September 1968; Jurisdiction

Year (Dates)

Date of judgment

1990/01/11

Date lodged

1988/08/04

Date overview

of document: 11/01/1990

of application: 04/08/1988

References

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                                    Page 7

EU: Case C-220/88
Celex No. 688J0220

**Celex number**
688J0220

**Case citations**

Agreement [468A0927(01)]-A02 N 16

Agreement [468A0927(01)]-A03L2 N 16

Agreement [468A0927(01)]-A05PT3 N 1 - 22

Case 21/76 [676J0021] N 6 10 - 12 15 17 20

**Acts cited in ruling**

Interprets Agreement [468A0927(01)]-A05PT3

Bibliographic Information

**Authoring institution**

Court of Justice

**Basic treaty**

European Economic Community

**Legal instrument**

Judgment

ECJ

**Document type**

Judgment

**Type of procedure**

Reference for a preliminary ruling

**Authentic language**

French
Dumez France SA and Tracoba SARL v Hessische Landesbank and others.
Reference for a preliminary ruling: Cour de cassation - France.
Brussels Convention - Tort, delict or quasi-delict - Interpretation of Article 5 (3) - Indirect victim - Damage
suffered by a parent company through financial losses sustained by a subsidiary.
Case C-220/88.

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49

EU: Case C-220/88
Celex No. 688J0220

**Plaintiff**
Dumez France SA and Tracoba SARL

**Defendant**
Hessische Landesbank

**Observations**

Federal Republic of Germany

France

United Kingdom

Commission

Member States

Institutions

**Judge**

Schockweiler

**Advocate-General**

Darmon

**National Court**

*A8* Cour d'appel de Paris, 5e chambre B, arret du 13/12/85 (M 10184)

*A9* Cour de cassation (France), 1re chambre civile, arret du 21/06/88 (86- 11.448 762)

- Bulletin des arrets de la Cour de Cassation - Chambres civiles 1988 I no 197

- La Semaine juridique - edition generale 1988 IV p.307 (resume)

- Recueil Dalloz Sirey 1988 IR. p.196 (resume)

- Revue critique de droit international prive 1988 p.795 (resume)

- European Commercial Cases 1989 p.188-190

*P1* Cour de cassation (France), 1re chambre civile, arret du 29/05/90 (658 86- 11.448)

- Bulletin des arrets de la Cour de Cassation - Chambres civiles 1990 I no 124

- La Semaine juridique - edition generale 1990 IV p.287 (resume)

Copr. © West 2007 No Claim to Orig. Govt. Works

**038**

[1990] ECR I-49                                                                    Page 9

EU: Case C-220/88
Celex No. 688J0220

- Recueil Dalloz Sirey 1990 IR. p.158 (resume)

- Gazette du Palais 1991 II Panor. p.15-16 (resume)

- Revue critique de droit international prive 1991 p.849-850 (resume)

- Revue critique de droit international prive 1992 p.806 (resume)

**Nationality**

France

**Commentary**

Huet, Andre: Journal du droit international 1990 p.497-503

Font I Segura, Albert: Noticias CEE 1990 no 66 p.131-136

Vlas, P.: TVVS ondernemingsrecht en rechtspersonen 1990 p.183-184

Gaudemet-Tallon, H.: Revue critique de droit international prive 1990 p.368-379

Borras Rodriguez, Alegria: Revista Juridica de Catalunya 1990 p.1135-1137

Koppenol-Laforce, M.E.: Netherlands International Law Review 1990 p.233-240

Tagaras, H.: Cahiers de droit europeen 1990 p.693-696

Kakouris, K.N.: Elliniki Epitheorisi Evropaikou Dikaiou 1990 p.595-611

Hartley, Trevor: European Law Review 1991 p.71-73

X: Il Foro italiano 1991 IV Col.58

Volken, Paul: Schweizerische Zeitschrift fur internationales und europaisches Recht 1991 p.109-115

Schultsz, J.C.: Nederlandse jurisprudentie

Uitspraken in burgerlijke en strafzaken 1991 no 573

Iannone, Celestina: Giustizia civile 1991 I p.1630-1633

Silvestri, Caterina: Il Foro italiano 1991 IV Col.429-436

Lupoi, Michele Angelo: Rivista trimestrale di diritto e procedura civile 1992 p.365-377

Matteini Chiari, Sergio: Il Foro italiano 1992 IV Col.114-120

Anton, A.E.

Copr. © West 2007 No Claim to Orig. Govt. Works

[1990] ECR I-49                                                              Page 10

EU: Case C-220/88
Celex No. 688J0220

Beaumont, P.R.: The Scots Law Times 1992 p.a3

Fuentes Camacho, Victor: La ley - Comunidades Europeas 1992 no 77 p.1-8

**Publication reference**

European Court reports 1990 Page I-00049

                                  Text outline
SUMMARY

ISSUE 1

GROUNDS

... Para 1

... Para 2

... Para 3

... Para 4

... Para 5

... Para 6

... Para 7

... Para 8

... Para 9

... Para 10

... Para 11

... Para 12

... Para 13

... Para 14

... Para 15

... Para 16

... Para 17

... Para 18

Copr. © West 2007 No Claim to Orig. Govt. Works

**040**

[1990] ECR I-49                                                        Page 11

EU: Case C-220/88
Celex No. 688J0220

... Para 19

... Para 20

... Para 21

... Para 22

COSTS

... Para 23

RULING

END OF DOCUMENT

Copr. © West 2007 No Claim to Orig. Govt. Works

**041**

# EXHIBIT D

Westlaw.

[1976] ECR 1735

EU: Case 21/76
Celex No. 676J0021

### European Union Case Law

COURT OF JUSTICE

Judgment of the Court of 30 November 1976. Handelskwekerij G. J. **Bier** BV v Mines de potasse d'Alsace SA. Reference for a preliminary ruling: Gerechtshof ' s-Gravenhage - Netherlands. Brussels Convention on jurisdiction and the enforcement of Judgment, article 5 (3) (liability in tort, delict or quasi-delict). Case 21-76.

European Court Reports 1976 page 1735

© ELLIS Publications.

© European Communities.

Text outline

Text

Index

Year (Dates)

References

Bibliographic Information

Text

' CONVENTION ON JURISDICTION AND THE ENFORCEMENT OF JUDGMENT , ARTICLE 5 (3) (LIABILITY IN TORT , DELICT OR QUASI-DELICT ')

CONVENTION OF 27 SEPTEMBER 1968 ON JURISDICTION AND THE ENFORCEMENT OF JUDGMENTS - POLLUTION OF THE ATMOSPHERE OR OF WATER - DISPUTE OF AN INTERNATIONAL CHARACTER - MATTERS RELATING TO TORT , DELICT OR QUASI-DELICT - COURTS HAVING JURISDICTION - SPECIAL JURISDICTION - PLACE WHERE THE HARMFUL EVENT OCCURRED - PLACE OF THE EVENT GIVING RISE TO THE DAMAGE AND PLACE WHERE THE DAMAGE OCCURRED - CONNECTING FACTORS OF SIGNIFICANCE AS REGARDS JURISDICTION - RIGHT OF PLAINTIFF TO ELECT

(CONVENTION OF 27 SEPTEMBER 1968 , ARTICLE 5 (3 ))

**SUMMARY**

Where the place of the happening of the event which may give rise to liability in tort, delict or quasi-delict and

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case 21/76
Celex No. 676J0021

the place where that event results in damage are not identical, the expression ' place where the harmful event occurred ' , in Article 5 (3) of the convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters, must be understood as being intended to cover both the place where the damage occurred and the place of the event giving rise to it. The result is that the defendant may be sued, at the option of the plaintiff, either in the courts for the place where the damage occurred or in the courts for the place of the event which gives rise to and is at the origin of that damage.

## ISSUE 1

In case 21/76

Reference to the court pursuant to Article 1 of the protocol of 3 June 1971 on the interpretation by the Court of Justice of the convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters by the gerechtshof (appeal court) of the hague for a preliminary ruling in the action pending before that court between

Handelskwekerij g. J. **Bier** b.v., of nieuwerkerk aan den ijssel (the Netherlands), and the reinwater foundation, having its registered office at amsterdam,

And

Mines de potasse d ' alsace s.a., having its registered office at mulhouse,

## ISSUE 2

On the interpretation of the meaning of ' the place where the harmful event occurred ' in Article 5 (3) of the convention of 27 September 1968,

## GROUNDS

1 by judgment of 27 February 1976, which reached the court registry on the following 2 March, the gerechtshof (appeal court) of the hague has referred a question, pursuant to the protocol of 3 June 1971 on the interpretation of the convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters (hereinafter called ' the convention ' ), on the interpretation of Article 5 (3) of the said convention.

2 It appears from the judgment making the reference that at the present stage the main action, which has come before the gerechtshof by way of appeal, concerns the jurisdiction of the Court of First Instance at rotterdam, and in general, of the Netherlands courts, to entertain an action brought by an undertaking engaged in horticulture, established within the area for which the court before which the action was first brought has jurisdiction, and by the reinwater foundation, which exists to promote the improvement of the quality of the water in the rhine basin, against mines de potasse d ' alsace, established at mulhouse (France), concerning the pollution of the waters of the rhine by the discharge of saline waste from the operations of the defendant into that inland waterway.

3 It appears from the file that as regards irrigation the horticultural business of the first-named appellant depends mainly on the waters of the rhine, the high salt content of which, according to the said appellant, causes damage to its plantations and obliges it to take expensive measures in order to limit that damage.

4 The appellants consider that the excessive salinization of the rhine is due principally to the massive discharges carried out by mines de potasse d ' alsace and they declare that it is for that reason that they have chosen to bring an action for the purposes of establishing the liability of that undertaking.

Copr. © West 2007 No Claim to Orig. Govt. Works

Case 2:06-cv-01524-JLR    Document 46-2    Filed 05/17/07    Page 45 of 48

EU: Case 21/76
Celex No. 676J0021

5 By judgment delivered on 12 May 1975, the court at rotterdam held that it had no jurisdiction to entertain the action, taking the view that under Article 5 (3) of the convention the claim did not come within its jurisdiction but under that of the french court for the area in which the discharge at issue took place.

6 **Bier** and reinwater brought an appeal against that judgment before the gerechtshof, the hague, which subsequently referred the following question to the court:

' are the words '' the place where the harmful event occurred '' , appearing in the text of Article 5 (3) of the convention on jurisdiction and the enforcement of judgments in civil and commercial matters, concluded at Brussels on 27 September 1968, to be understood as meaning '' the place where the damage occurred (the place where the damage took place or became apparent) '' or rather '' the place where the event having the damage as its sequel occurred (the place where the act was or was not performed) '' ' ?

'

7 Article 5 of the convention provides: ' a person domiciled in a contracting state may, in another contracting state, be sued: . . . (3) in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred ' .

8 That provision must be interpreted in the context of the scheme of conferment of jurisdiction which forms the subject-matter of title II of the convention.

9 That scheme is based on a general rule, laid down by Article 2, that the courts of the state in which the defendant is domiciled shall have jurisdiction.

10 However, Article 5 makes provision in a number of cases for a special jurisdiction, which the plaintiff may opt to choose.

11 This freedom of choice was introduced having regard to the existence, in certain clearly defined situations, of a particularly close connecting factor between a dispute and the court which may be called upon to hear it, with a view to the efficacious conduct of the proceedings.

12 Thus in matters of tort, delict or quasi-delict Article 5 (3) allows the plaintiff to bring his case before the courts for ' the place where the harmful event occurred ' .

13 In the context of the convention, the meaning of that expression is unclear when the place of the event which is at the origin of the damage is situated in a state other than the one in which the place where the damage occurred is situated, as is the case inter inter alia with atmospheric or water pollution beyond the frontiers of a state.

14 The form of words ' place where the harmful event occurred ' , used in all the language versions of the convention, leaves open the question whether, in the situation described, it is necessary, in determining jurisdiction, to choose as the connecting factor the place of the event giving rise to the damage, or the place where the damage occurred, or to accept that the plaintiff has an option between the one and the other of those two connecting factors.

15 As regards this, it is well to point out that the place of the event giving rise to the damage no less than the place where the damage occurred can, depending on the case, constitute a significant connecting factor from the point of view of jurisdiction.

16 Liability in tort, delict or quasi-delict can only arise provided that a causal connexion can be established between the damage and the event in which that damage originates.

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case 21/76
Celex No. 676J0021

17 Taking into account the close connexion between the component parts of every sort of liability, it does not appear appropriate to opt for one of the two connecting factors mentioned to the exclusion of the other, since each of them can, depending on the circumstances, be particularly helpful from the point of view of the evidence and of the conduct of the proceedings.

18 To exclude one option appears all the more undesirable in that, by its comprehensive form of words, Article 5 (3) of the convention covers a wide diversity of kinds of liability.

19 Thus the meaning of the expression ' place where the harmful event occurred ' in Article 5 (3) must be established in such a way as to acknowledge that the plaintiff has an option to commence proceedings either at the place where the damage occurred or the place of the event giving rise to it.

20 This conclusion is supported by the consideration, first, that to decide in favour only of the place of the event giving rise to the damage would, in an appreciable number of cases, cause confusion between the heads of jurisdiction laid down by Articles 2 and 5 (3) of the convention, so that the latter provision would, to that extent, lose its effectiveness.

21 Secondly, a Decision in favour only of the place where the damage occurred would, in cases where the place of the event giving rise to the damage does not coincide with the domicile of the person liable, have the effect of excluding a helpful connecting factor with the jurisdiction of a court particularly near to the cause of the damage.

22 Moreover, it appears from a comparison of the national legislative provisions and national case-law on the distribution of jurisdiction - both as regards internal relationships, as between courts for different areas, and in international relationships - that, albeit by differing legal techniques, a place is found for both of the two connecting factors here considered and that in several states they are accepted concurrently.

23 In these circumstances, the interpretation stated above has the advantage of avoiding any upheaval in the solutions worked out in the various national systems of law, since it looks to unification, in conformity with Article 5 (3) of the convention, by way of a systematization of solutions which, as to their principle, have already been established in most of the states concerned.

24 Thus it should be answered that where the place of the happening of the event which may give rise to liablity in tort, delict or quasidelict and the place where that event results in damage are not identical, the expresson ' place where the harmful event occurred ' , in Article 5 (3) of the convention, must be understood as being intended to cover both the place where the damage occurred and the place of the event giving rise to it.

25 The result is that the defendant may be sued, at the option of the plaintiff, either in the courts for the place where the damage occurred or in the courts for the place of the event which gives rise to and is at the origin of that damage.

## COSTS

Costs

26 The costs incurred by the government of the French Republic, the government of the Kingdom of the Netherlands and the Commission of the European Communities, which have submitted observations to the court, are not recoverable.

27 As these proceedings are, so far as the parties to the main action are concerned, a step in the action pending before the gerechtshof, the hague, the Decision on costs is a matter for that court.

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case 21/76
Celex No. 676J0021

## RULING

On those grounds

The court

In answer to the question referred to it by the gerechtshof, the hague, by judgment of 27 February 1976, hereby rules:

Where the place of the happening of the event which may give rise to liability in tort, delict or quasidelict and the place where that event results in damage are not identical, the expression ' place where the harmful event occurred ' , in Article 5 (3) of the convention of 27 September 1968 on jurisdiction and the enforcement of judgments in civil and commercial matters, must be understood as being intended to cover both the place where the damage occurred and the place of the event giving rise to it.

The result is that the defendant may be sued, at the option of the plaintiff, either in the courts for the place where the damage occurred or in the courts for the place of the event which gives rise to and is at the origin of that damage.

Index

**Subject**

BRUSSELS CONVENTION OF 27 SEPTEMBER 1968; JURISDICTION

Year (Dates)

**Date of judgment**

1976/11/30

**Date lodged**

1976/03/02

**Date overview**

OF DOCUMENT.......: 30/11/1976

OF APPLICATION....: 02/03/1976

References

**Celex number**
676J0021

**Case citations**

Agreement [468A0927(01)]-A05PT3 N 1 5 - 7 12 18 - 20 23 24

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case 21/76
Celex No. 676J0021

Agreement [468A0927(01)]-A02 N 9 20

Agreement [468A0927(01)]-A05 N 10

**Acts cited in ruling**

I Agreement [468A0927(01)]-A05PT3

Bibliographic Information

**Authoring institution**

COURT OF JUSTICE

**Basic treaty**

European Economic Community

**Legal instrument**

JUDGMENT

ECJ

**Document type**

Judgment

**Type of procedure**

REFERENCE FOR A PRELIMINARY RULING

**Authentic language**

DUTCH
Handelskwekerij G. J. **Bier** BV v Mines de potasse d'Alsace SA.
Reference for a preliminary ruling: Gerechtshof 's-Gravenhage - Netherlands.
Brussels Convention on jurisdiction and the enforcement of Judgment, article 5 (3) (liability in tort, delict or quasi-delict).
Case 21-76.

**Plaintiff**
Handelskwekerij G. J. **Bier** BV

**Defendant**
Mines de potasse d'Alsace SA

**Observations**

Commission

Copr. © West 2007 No Claim to Orig. Govt. Works