# EXHIBIT E

[2004] ECR I-6009                                                                 Page 1

EU: Case C-168/02
Celex No. 602J0168

## European Union Case Law

### Court of Justice

Judgment of the Court (Second Chamber) of 10 June 2004. Rudolf Kronhofer v Marianne Maier and Others. Reference for a preliminary ruling: Oberster Gerichtshof - Austria. Brussels Convention - Article 5(3) - Jurisdiction in matters relating to tort, delict or quasi-delict - Place where the harmful event occurred - Financial loss arising from capital investments in another Contracting State. Case C-168/02.

European Court Reports 2004 page I-06009

© ELLIS Publications.

© European Communities.

Text outline

Text

Index

Year (Dates)

References

Bibliographic Information

### Text

Convention on Jurisdiction and the Enforcement of Judgments - Special jurisdiction - Jurisdiction in matters relating to tort, delict or quasi-delict' - Place where the harmful event occurred - Definition - Place of domicile of claimant who has suffered financial loss arising from capital investments in another Contracting State - Excluded

(Convention of 27 September 1968, Art. 5(3))

## SUMMARY

Article 5(3) of the Convention of 27 September 1968 on Jurisdiction and the Enforcements of Judgments in Civil and Commercial Matters, as amended by the Convention of Accession of 9 October 1978 of the Kingdom of Denmark, of Ireland and of the United Kingdom of Great Britain and Northern Ireland, by the Convention of 25 October 1982 on the Accession of the Hellenic Republic, by the Convention of 26 May 1989 on the Accession of the Kingdom of Spain and the Republic of Portugal, and by the Convention of 29 November 1996 on the Accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden, must be interpreted as meaning that the expression place where the harmful event occurred' does not refer to the place where the claimant

Copr. © West 2007 No Claim to Orig. Govt. Works

**050**

EU: Case C-168/02
Celex No. 602J0168

is domiciled or where his assets are concentrated' by reason only of the fact that he has suffered financial damage there resulting from the loss of part of his assets which arose and was incurred in another Contracting State.

The term place where the harmful event occurred' cannot be construed so extensively as to encompass any place where the adverse consequences can be felt of an event which has already caused damage actually arising elsewhere. First, such an interpretation would mean that the determination of the court having jurisdiction would depend on matters that were uncertain and would thus run counter to the strengthening of the legal protection of persons established in the Community which, by enabling the claimant to identify easily the court in which he may sue and the defendant reasonably to foresee in which court he may be sued, is one of the objectives of the Convention. Second, it would be liable in most cases to give jurisdiction to the courts of the place in which the claimant was domiciled. The Convention does not favour that solution except in cases where it expressly so provides.

(see paras 19-21, operative part)

## ISSUE 1

In Case C-168/02

REFERENCE to the Court under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters by the Oberster Gerichtshof (Austria) for a preliminary ruling in the proceedings pending before that court between

Rudolf Kronhofer

and

Marianne Maier,

Christian Moller,

Wirich Hofius,

Zeki Karan,

on the interpretation of Article 5(3) of the abovementioned Convention of 27 September 1968 (OJ 1978 L 304, p. 36), as amended by the Convention of Accession of 9 October 1978 of the Kingdom of Denmark, of Ireland and of the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L 304, p. 1, and amended text p. 77), by the Convention of 25 October 1982 on the accession of the Hellenic Republic (OJ 1982 L 388, p. 1), by the Convention of 26 May 1989 on the accession of the Kingdom of Spain and the Republic of Portugal (OJ 1989 L 285, p. 1), and by the Convention of 29 November 1996 on the accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden (OJ 1997 C 15, p. 1),

THE COURT (Second Chamber),

composed of: C.W.A. Timmermans, President of the Chamber, J.-P. Puissochet, J.N. Cunha Rodrigues (Rapporteur), R. Schintgen and N. Colneric, Judges,

Advocate General: P. Leger,

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case C-168/02
Celex No. 602J0168

Registrar: H. von Holstein, Deputy Registrar,

after considering the written observations submitted on behalf of:

- Mr Kronhofer, by M. Brandauer, Rechtsanwalt,

- Ms Maier, by M. Scherbantie, Rechtsanwaltin,

- Mr Karan, by C. Ender, Rechtsanwalt,

- the Austrian Government, by C. Pesendorfer, acting as Agent,

- the German Government, by R. Wagner, acting as Agent,

- the United Kingdom Government, by K. Manji, acting as Agent, and T. Ward, Barrister,

- the Commission of the European Communities, by A.-M. Rouchaud and W. Bogensberger, acting as Agents,

having regard to the Report for the Hearing,

after hearing the oral observations of Mr Kronhofer, represented by M. Brandauer and R. Bickel, Rechtsanwalte, of Mr Karan, represented by C. Ender, and of the Commission, represented by A.-M. Rouchaud and W. Bogensberger, at the hearing on 20 November 2003,

after hearing the Opinion of the Advocate General at the sitting on

15 January 2004,

gives the following

Judgment

## GROUNDS

1. By order of 9 April 2002, received at the Court on 6 May 2002, the Oberster Gerichtshof (Supreme Court) referred to the Court for a preliminary ruling under the Protocol of 3 June 1971 on the interpretation by the Court of Justice of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters a question on the interpretation of Article 5(3) of that Convention (OJ 1978 L 304, p. 36), as amended by the Convention of Accession of 9 October 1978 of the Kingdom of Denmark, of Ireland and of the United Kingdom of Great Britain and Northern Ireland (OJ 1978 L 304, p. 1, and amended text p. 77), by the Convention of 25 October 1982 on the accession of the Hellenic Republic (OJ 1982 L 388, p. 1), by the Convention of 26 May 1989 on the accession of the Kingdom of Spain and the Republic of Portugal (OJ 1989 L 285, p. 1), and by the Convention of 29 November 1996 on the accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden (OJ 1997 C 15, p. 1) (hereinafter the Convention').

2. That question was raised in proceedings brought by Mr Kronhofer, domiciled in Austria, against Ms Maier, Mr Moller, Mr Hofius and Mr Karan (hereinafter the defendants in the main proceedings'), each domiciled in Germany, in which Mr Kronhofer seeks to recover damages for financial loss which he claims to have suffered as a result of the wrongful conduct of the defendants in the main proceedings as directors or investment consultants of the company Protectas Vermogensverwaltungs GmbH (hereinafter Protectas'), which also has its registered office

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case C-168/02
Celex No. 602J0168

in Germany.

   Legal framework

3. The first paragraph of Article 2 of the Convention states:

   Subject to the provisions of this Convention, persons domiciled in a Contracting State shall, whatever their nationality, be sued in the courts of that State.'

4. Under Article 5(3) of the Convention:

   A person domiciled in a Contracting State may, in another Contracting State, be sued:

   ...

   (3) in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred.'

   The main proceedings and the question referred

5. Mr Kronhofer brought proceedings against the defendants in the main proceedings before the Landesgericht Feldkirch (Feldkirch Regional Court) (Austria),, , seeking to recover damages for financial loss which he claims to have suffered as a result of their wrongful conduct.

6. The defendants in the main proceedings persuaded him, by telephone, to enter into a call option contract relating to shares. However, they failed to warn him of the risks involved in the transaction. As a result, Mr Kronhofer transferred a total amount of USD 82 500 in November and December 1997 to an investment account with Protectas in Germany which was then used to subscribe for highly speculative call options on the London Stock Exchange. The transaction in question resulted in the loss of part of the sum transferred and Mr Kronhofer was repaid only part of the capital invested by him.

7. The jurisdiction of the Landesgericht Feldkirch was founded on Article 5(3) of the Convention as the court for the place where the harmful event occurred, in this case Mr Kronhofer's domicile.

8. When that action was dismissed, Mr Kronhofer appealed to the Oberlandesgericht Innsbruck (Innsbruck Higher Regional Court) (Austria), which declined jurisdiction on the ground that the court of domicile was not the place where the harmful event occurred', as neither the place where the event which resulted in damage occurred nor the place where the resulting damage was sustained was in Austria.

9. An application for review on a point of law was brought before the Oberster Gerichtshof, which took the view that the Court of Justice had not yet ruled on the question whether the expression the place where the harmful event occurred' is to be so widely interpreted that, in cases of purely financial damage affecting part of the victim's assets invested in another Member State, it also encompasses the place of the victim's domicile and thus the place where his assets are concentrated.

10. As it considered that a decision on the interpretation of the Convention was necessary to enable it to give judgment, the Oberster Gerichtshof decided to stay the proceedings and to refer the following question to the Court of Justice for a preliminary ruling:

   Is the expression place where the harmful event occurred contained in Article 5(3) of the Convention... to be construed in such a way that, in the case of purely financial damage arising on the investment of part of the injured

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case C-168/02
Celex No. 602J0168

party's assets, it also encompasses in any event the place where the injured party is domiciled if the investment was made in another Member State of the Community?'

   The question referred

11. By its question, the national court is essentially asking whether Article 5(3) of the Convention should be interpreted as meaning that the expression place where the harmful event occurred' may cover the place where the claimant is domiciled and where his assets are concentrated' by reason only of the fact that the claimant has suffered financial damage there resulting in the loss of part of his assets which arose and was incurred in another Contracting State.

12. It should be noted at the outset that the system of common rules of conferment of jurisdiction laid down in Title II of the Convention is based on the general rule, set out in the first paragraph of Article 2, that persons domiciled in a Contracting State are to be sued in the courts of that State, irrespective of the nationality of the parties.

13. It is only by way of derogation from that fundamental principle attributing jurisdiction to the courts of the defendant's domicile that Section 2 of Title II of the Convention makes provision for certain special jurisdictional rules, such as that laid down in Article 5(3) of the Convention.

14. Those special jurisdictional rules must be restrictively interpreted and cannot give rise to an interpretation going beyond the cases expressly envisaged by the Convention (see Case 189/87 Kalfelis [1988] ECR 5565, paragraph 19, and Case C-433/01 Blijdenstein [2004] ECR I0000, paragraph 25).

15. According to settled case-law, the rule laid down in Article 5(3) of the Convention is based on the existence of a particularly close connecting factor between a dispute and courts other than those for the place where the defendant is domiciled, which justifies the attribution of jurisdiction to those courts for reasons relating to the sound administration of justice and the efficacious conduct of proceedings (see, inter alia, Case 21/76 Bier (Mines de Potasse d'Alsace ') [1976] ECR 1735, paragraph 11, and Case C-167/00 Henkel [2002] ECR I8111, paragraph 46).

16. The Court has also held that where the place in which the event which may give rise to liability in tort, delict or quasi-delict occurs and the place where that event results in damage are not identical, the expression place where the harmful event occurred' in Article 5(3) of the Convention must be understood as being intended to cover both the place where the damage occurred and the place of the event giving rise to it, so that the defendant may be sued, at the option of the claimant, in the courts for either of those places (see, inter alia, Mines de potasse d'Alsace, paragraphs 24 and 25, and Case C-18/02 DFDS Torline [2004] ECR I-0000, paragraph 40).

17. It is clear from the order for reference that the Oberster Gerichtshof takes the view that, in the case in the main proceedings, the place where the damage occurred and the place of the event giving rise to it were both in Germany. The distinguishing feature of this case lies in the fact that the financial damage allegedly suffered by the claimant in another Contracting State is said to have affected the whole of his assets simultaneously.

18. As the Advocate General rightly noted at point 46 of his Opinion, there is nothing in such a situation to justify conferring jurisdiction to the courts of a Contracting State other than that on whose territory the event which resulted in the damage occurred and the damage was sustained, that is to say all of the elements which give rise to liability. To confer jurisdiction in that way would not meet any objective need as regards evidence or the conduct of the proceedings.

19. As the Court has held, the term place where the harmful event occurred' cannot be construed so extensively as

Copr. © West 2007 No Claim to Orig. Govt. Works

EU: Case C-168/02
Celex No. 602J0168

to encompass any place where the adverse consequences can be felt of an event which has already caused damage actually arising elsewhere (see Case C-364/93 Marinari [1995] ECR I-2719, paragraph 14).

20. In a situation such as that in the main proceedings, such an interpretation would mean that the determination of the court having jurisdiction would depend on matters that were uncertain, such as the place where the victim's assets are concentrated' and would thus run counter to the strengthening of the legal protection of persons established in the Community which, by enabling the claimant to identify easily the court in which he may sue and the defendant reasonably to foresee in which court he may be sued, is one of the objectives of the Convention (see Case C-256/00 Besix [2002] ECR I-1699, paragraphs 25 and 26, and DFDS Torline, paragraph 36). Furthermore, it would be liable in most cases to give jurisdiction to the courts of the place in which the claimant was domiciled. As the Court found at paragraph 14 of this judgment, the Convention does not favour that solution except in cases where it expressly so provides.

21. In view of the foregoing considerations, the answer to the question referred must be that Article 5(3) of the Convention must be interpreted as meaning that the expression place where the harmful event occurred' does not refer to the place where the claimant is domiciled or where his assets are concentrated' by reason only of the fact that he has suffered financial damage there resulting from the loss of part of his assets which arose and was incurred in another Contracting State.

## COSTS

Costs

22. The costs incurred by the Austrian, German and United Kingdom Governments and by the Commission, which have submitted observations to the Court, are not recoverable. Since these proceedings are, for the parties to the main proceedings, a step in the proceedings pending before the national court, the decision on costs is a matter for that court.

## RULING

On those grounds,

THE COURT (Second Chamber),

0 in answer to the question referred to it by the Oberster Gerichtshof by order of 9 April 2002, hereby rules:

Article 5(3) of the Convention of 27 September 1968 on Jurisdiction and the Enforcement of Judgments in Civil and Commercial Matters, as amended by the Convention of Accession of 9 October 1978 of the Kingdom of Denmark, of Ireland and of the United Kingdom of Great Britain and Northern Ireland, by the Convention of 25 October 1982 on the accession of the Hellenic Republic, by the Convention of 26 May 1989 on the accession of the Kingdom of Spain and the Republic of Portugal, and by the Convention of 29 November 1996 on the accession of the Republic of Austria, the Republic of Finland and the Kingdom of Sweden must be interpreted as meaning that the expression place where the harmful event occurred' does not refer to the place where the claimant is domiciled or where his assets are concentrated' by reason only of the fact that he has suffered financial damage there resulting from the loss of part of his assets which arose and was incurred in another Contracting State.

Index

Subject

Copr. © West 2007 No Claim to Orig. Govt. Works

# EXHIBIT F

## Section 40
## Tortious Act

(1) Claims from tortious acts are subject to the law of the state in which the Party Liable committed his acts. The Injured Party may demand that the law of the state in which the act occurred be applied instead of this law. The option may only be exercised in the first instance, by the end of the early first date or at the end of the written preliminary proceedings.

(2) If the Party Liable and the Injured Party had their habitual residence in the same state at the time the liability event occurred, the law of that state is to be applied. If corporations, associations or legal persons are concerned, the habitual residence shall be equivalent to the location where the head office is, or, in the case of a subsidiary, where the location of the subsidiary is.

(3) Claims that are subject to the law of a different state may not be asserted, if they

    1. go considerably beyond what is required to adequately compensate the Injured Party;

    2. clearly serve purposes other than the adequate compensation of the Injured Party; or

    3. contradict liability provisions of a treaty by which the Federal Republic of Germany is bound.

(4) The Injured Party may assert his claim directly against an insurance provider of the Party Liable, if allowed for by the law applicable to the tortious act, or by the law that governs the insurance contract.


## Section 41
## Considerably Closer Ties

(1) If the ties to the law of a state are considerably closer than to the law that would prevail under sections 38 through 40, subsection 2, the former law shall be applied.

(2) In particular, considerably closer ties may arise

1. from a particular legal or actual relationship between the parties involved in connection with the contractual obligation; or

2. in the cases of section 38, subsections 2 and 3 and section 39, from the habitual residence of the parties involved in the same state at the time of the material event; section 40, subsection 2 sentence 2 shall apply accordingly.

## Section 42
## Choice of Law

After the event occurred that resulted in the non-contractual obligation, the parties may choose the law to which such event is to be subjected. Third-party rights shall remain unaffected.

## TRANSLATOR'S CERTIFICATE

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

Document:
3 Provisions

## Art 40
## Unerlaubte Handlung

(1) Ansprüche aus unerlaubter Handlung unterliegen dem Recht des Staates, in dem der Ersatzpflichtige gehandelt hat. Der Verletzte kann verlangen, daß anstelle dieses Rechts das Recht des Staates angewandt wird, in dem der Erfolg eingetreten ist. Das Bestimmungsrecht kann nur im ersten Rechtszug bis zum Ende des frühen ersten Termins oder dem Ende des schriftlichen Vorverfahrens ausgeübt werden.

(2) Hatten der Ersatzpflichtige und der Verletzte zur Zeit des Haftungsereignisses ihren gewöhnlichen Aufenthalt in demselben Staat, so ist das Recht dieses Staates anzuwenden. Handelt es sich um Gesellschaften, Vereine oder juristische Personen, so steht dem gewöhnlichen Aufenthalt der Ort gleich, an dem sich die Hauptverwaltung oder, wenn eine Niederlassung beteiligt ist, an dem sich diese befindet.

(3) Ansprüche, die dem Recht eines anderen Staates unterliegen, können nicht geltend gemacht werden, soweit sie

    1. wesentlich weiter gehen als zur angemessenen Entschädigung des Verletzten erforderlich,

    2. offensichtlich anderen Zwecken als einer angemessenen Entschädigung des Verletzten dienen oder

    3. haftungsrechtlichen Regelungen eines für die Bundesrepublik Deutschland verbindlichen Übereinkommens widersprechen.

(4) Der Verletzte kann seinen Anspruch unmittelbar gegen einen Versicherer des Ersatzpflichtigen geltend machen, wenn das auf die unerlaubte Handlung anzuwendende Recht oder das Recht, dem der Versicherungsvertrag unterliegt, dies vorsieht.

## Art 41
## Wesentlich engere Verbindung

(1) Besteht mit dem Recht eines Staates eine wesentlich engere Verbindung als mit dem Recht, das nach den Artikeln 38 bis 40 Abs. 2 maßgebend wäre, so ist jenes Recht anzuwenden.

(2) Eine wesentlich engere Verbindung kann sich insbesondere ergeben

1. aus einer besonderen rechtlichen oder tatsächlichen Beziehung zwischen den Beteiligten im Zusammenhang mit dem Schuldverhältnis oder

2. in den Fällen des Artikels 38 Abs. 2 und 3 und des Artikels 39 aus dem gewöhnlichen Aufenthalt der Beteiligten in demselben Staat im Zeitpunkt des rechtserheblichen Geschehens; Artikel 40 Abs. 2 Satz 2 gilt entsprechend.

### Art 42
### Rechtswahl

Nach Eintritt des Ereignisses, durch das ein außervertragliches Schuldverhältnis entstanden ist, können die Parteien das Recht wählen, dem es unterliegen soll. Rechte Dritter bleiben unberührt.

061

# EXHIBIT G

Non-Contractual Damage Claims

Section 48. (1) Non-contractual damage claims must be assessed pursuant to the law of the state in which the action that caused the damage occurred. If, however, the parties involved have stronger ties to the law of one and the same different state, such law shall prevail.

(2) Damage claims and other such claims arising from unfair competition must be assessed pursuant to the law of the state whose market is affected by the competition.

Note

The Hague Convention on Road Traffic, BGBl. [*Bundesgesetzblatt* / Federal Law Gazette] number 387/1975 shall prevail for damage claims arising from traffic accidents (pursuant to section 53, interstate treaties shall remain unaffected thereby).

Keywords

Offense statute, location of activity, location of perpetration

## TRANSLATOR'S CERTIFICATE

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

*Peter Niederlöhner*

Document:
IPR Gesetz

064

Kurztitel

IPR - Gesetz

Fundstelle

BGBl.Nr. 304/1978

| Typ | §/Artikel/Anlage | Inkrafttretedatum | Außerkrafttretedatum |
|-----|------------------|-------------------|----------------------|
| BG  | § 48             | 19790101          | 99999999             |

Abkürzung

IPRG

Index

20/09 Internationales Privatrecht

Text

  Außervertragliche Schadenersatzansprüche


  § 48. (1) Außervertragliche Schadenersatzansprüche sind nach dem
Recht des Staates zu beurteilen, in dem das den Schaden verursachende
Verhalten gesetzt worden ist. Besteht jedoch für die Beteiligten eine
stärkere Beziehung zum Recht ein und desselben anderen Staates, so
ist dieses Recht maßgebend.

  (2) Schadenersatz- und andere Ansprüche aus unlauterem Wettbewerb
sind nach dem Recht des Staates zu beurteilen, auf dessen Markt sich
der Wettbewerb auswirkt.

Anmerkung

Für Schadenersatzansprüche aus Straßenverkehrsunfällen ist das Haager
Straßenverkehrsübereinkommen, BGBl. Nr. 387/1975, maßgebend
(zwischenstaatliche Vereinbarungen bleiben gemäß § 53 unberührt).

Schlagworte

Deliktsstatut, Handlungsort, Begehungsort

| Gesetzesnummer | Dokumentnummer | Alte DokNr |
|----------------|----------------|------------|
| 10002426       | NOR12031334    | N2197817161R |

# EXHIBIT H

**Section 823 Liability to Pay Damages**

(1) Any person who intentionally or negligently causes damage to another person's life, limb, health, liberty, or property or infringes upon any other right in an unlawful way shall be liable to pay damages to the other person.

(2) The same obligation shall apply to the person who violates a law that is intended to protect another person. If, pursuant to the content of the law, it is also possible to violate such law without fault, the liability to pay damages exists only in case of fault.

<u>TRANSLATOR'S CERTIFICATE</u>

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

......................................................

Document:
823 Schadensersatzpflicht

 **Bundesministerium der Justiz**

**juris**

Nichtamtliches Inhaltsverzeichnis

## § 823 Schadensersatzpflicht

(1) Wer vorsätzlich oder fahrlässig das Leben, den Körper, die Gesundheit, die Freiheit, das Eigentum oder ein sonstiges Recht eines anderen widerrechtlich verletzt, ist dem anderen zum Ersatz des daraus entstehenden Schadens verpflichtet.

(2) Die gleiche Verpflichtung trifft denjenigen, welcher gegen ein den Schutz eines anderen bezweckendes Gesetz verstößt. Ist nach dem Inhalt des Gesetzes ein Verstoß gegen dieses auch ohne Verschulden möglich, so tritt die Ersatzpflicht nur im Falle des Verschuldens ein.

---

zum Seitenanfang                                    Datenschutz                                    Seite ausdrucken

---

# EXHIBIT I

**Section 826 Immoral Deliberate Damage**

Someone who deliberately inflicts damage on another person contra bonos mores shall be liable to pay damages to the other person.

TRANSLATOR'S CERTIFICATE

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

Peter Niederlöhner

Document:
826 Sittenwidrige

 **Bundesministerium der Justiz**

**juris**

<u>Nichtamtliches Inhaltsverzeichnis</u>

## § 826 Sittenwidrige vorsätzliche Schädigung

Wer in einer gegen die guten Sitten verstoßenden Weise einem anderen vorsätzlich Schaden zufügt, ist dem anderen zum Ersatz des Schadens verpflichtet.

<u>zum Seitenanfang</u>                    <u>Datenschutz</u>                    <u>Seite ausdrucken</u>

# EXHIBIT J

**Section 249 Type and Scope of the Liability to Pay Damages**

(1) Someone who is liable to pay damages must restore the condition that would exist had the circumstance not occurred that led to the obligation to pay damages.

(2) If, as a result of personal injury or property damage, damages must be paid, the creditor, instead of restoration, may request the amount necessary for such restoration. In the case of property damage, the amount necessary pursuant to sentence 1 shall include sales tax only if and to the extent it actually accrued.

## TRANSLATOR'S CERTIFICATE

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

*Peter Niederlöhner*

Document:
249 Art

076

 **Bundesministerium der Justiz**

**juris**

<u>Nichtamtliches Inhaltsverzeichnis</u>

## § 249 Art und Umfang des Schadensersatzes

(1) Wer zum Schadensersatz verpflichtet ist, hat den Zustand herzustellen, der bestehen würde, wenn der zum Ersatz verpflichtende Umstand nicht eingetreten wäre.

(2) Ist wegen Verletzung einer Person oder wegen Beschädigung einer Sache Schadensersatz zu leisten, so kann der Gläubiger statt der Herstellung den dazu erforderlichen Geldbetrag verlangen. Bei der Beschädigung einer Sache schließt der nach Satz 1 erforderliche Geldbetrag die Umsatzsteuer nur mit ein, wenn und soweit sie tatsächlich angefallen ist.

---

<u>zum Seitenanfang</u>                    <u>Datenschutz</u>                    <u>Seite ausdrucken</u>

# EXHIBIT K

4) by accident.

Section 1311. Mere accident affects those persons in whose assets or person it occurs. However, if someone negligently caused the accident, violated a law that seeks to prevent accidental damages, or interferes in other people's business without necessity, that person shall be liable for all disadvantages that would not have occurred without [such interference].

Keywords

Mixed accident, protective law, illegality connection, agency of necessity

<u>TRANSLATOR'S CERTIFICATE</u>

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

.......................................................

Document:
Fundstelle

Kurztitel

Allgemeines bürgerliches Gesetzbuch

Fundstelle

JGS Nr. 946/1811

| Typ | §/Artikel/Anlage | Inkrafttretedatum | Außerkrafttretedatum |
|-----|------------------|-------------------|----------------------|
| BG  | § 1311           | 18120101          | 99999999             |

Abkürzung

ABGB

Index

20/01 Allgemeines bürgerliches Gesetzbuch (ABGB)

Text

          4) durch Zufall.

  § 1311. Der bloße Zufall trifft denjenigen, in dessen Vermögen oder Person er sich ereignet. Hat aber jemand den Zufall durch ein Verschulden veranlaßt; hat er ein Gesetz, das den zufälligen Beschädigungen vorzubeugen sucht, übertreten; oder, sich ohne Noth in fremde Geschäfte gemengt; so haftet er für allen Nachtheil, welcher außer dem nicht erfolgt wäre.

Schlagworte

gemischter Zufall, Schutzgesetz, Rechtswidrigkeitszusammenhang, Geschäftsführung ohne Auftrag

| Gesetzesnummer | Dokumentnummer | Alte DokNr |
|----------------|----------------|------------|
| 10001622       | NOR12019053    | N2181111535Z |

# EXHIBIT L

Concerning the Obligation to Pay Damages:

1) due to damage arising from fault,

Section 1295. (1) Anyone is entitled to claim damages from a person who is responsible for causing such damages; the damage may have been caused as a result of violating a contractual obligation or without a connection to a contract.

(2) Also, someone who deliberately causes damage contra bonos mores shall be responsible; if, however, this occurred in the process of exercising a right, [the person shall be liable] only, if exercising such right apparently served the purpose of causing damage to the other person.

Keywords

Breach of contract, offense, harassment

<u>TRANSLATOR'S CERTIFICATE</u>

I, Peter Niederlöhner, declare under penalty of perjury that I am thoroughly competent in both German and English, and that the foregoing document is a true and correct translation of the attached document, which I translated from German to English, on this 18th day of April, 2007.

_Peter Niederlöhner_

Document:
Kurztitel

Kurztitel

Allgemeines bürgerliches Gesetzbuch

Fundstelle

JGS Nr. 946/1811 zuletzt geändert durch RGBl.Nr. 69/1916

| Typ | §/Artikel/Anlage | Inkrafttretedatum | Außerkrafttretedatum |
|-----|------------------|-------------------|----------------------|
| BG  | § 1295           | 19170101          | 99999999             |

Abkürzung

ABGB

Index

20/01 Allgemeines bürgerliches Gesetzbuch (ABGB)

Text

Von der Verbindlichkeit zum Schadenersatze:

1) von dem Schaden aus Verschulden,

§ 1295. (1) Jedermann ist berechtigt, von dem Beschädiger den Ersatz des Schadens, welchen dieser ihm aus Verschulden zugefügt hat, zu fordern; der Schade mag durch Übertretung einer Vertragspflicht oder ohne Beziehung auf einen Vertrag verursacht worden sein.

(2) Auch wer in einer gegen die guten Sitten verstoßenden Weise absichtlich Schaden zufügt, ist dafür verantwortlich, jedoch falls dies in Ausübung eines Rechtes geschah, nur dann, wenn die Ausübung des Rechtes offenbar den Zweck hatte, den anderen zu schädigen.

Schlagworte

Vertragsverletzung, Delikt, Schikane

| Gesetzesnummer | Dokumentnummer | Alte DokNr    |
|----------------|----------------|---------------|
| 10001622       | NOR12019037    | N2181111519Z  |

# EXHIBIT M

27.6.2001      EN      Official Journal of the European Communities      L 174/1

# I

*(Acts whose publication is obligatory)*

## COUNCIL REGULATION (EC) No 1206/2001

### of 28 May 2001

### on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty establishing the European Community, and in particular Article 61(c) and Article 67(1) thereof,

Having regard to the initiative of the Federal Republic of Germany [1],

Having regard to the opinion of the European Parliament [2],

Having regard to the opinion of the Economic and Social Committee [3],

Whereas:

(1) The European Union has set itself the objective of maintaining and developing the European Union as an area of freedom, security and justice in which the free movement of persons is ensured. For the gradual establishment of such an area, the Community is to adopt, among others, the measures relating to judicial cooperation in civil matters needed for the proper functioning of the internal market.

(2) For the purpose of the proper functioning of the internal market, cooperation between courts in the taking of evidence should be improved, and in particular simplified and accelerated.

(3) At its meeting in Tampere on 15 and 16 October 1999, the European Council recalled that new procedural legislation in cross-border cases, in particular on the taking of evidence, should be prepared.

(4) This area falls within the scope of Article 65 of the Treaty.

(5) The objectives of the proposed action, namely the improvement of cooperation between the courts on the taking of evidence in civil or commercial matters, cannot be sufficiently achieved by the Member States and can therefore be better achieved at Community level. The Community may adopt measures in accordance with the principle of subsidiarity as set out in Article 5 of the Treaty. In accordance with the principle of proportionality, as set out in that Article, this Regulation does not go beyond what is necessary to achieve those objectives.

(6) To date, there is no binding instrument between all the Member States concerning the taking of evidence. The Hague Convention of 18 March 1970 on the taking of evidence abroad in civil or commercial matters applies between only 11 Member States of the European Union.

(7) As it is often essential for a decision in a civil or commercial matter pending before a court in a Member State to take evidence in another Member State, the Community's activity cannot be limited to the field of transmission of judicial and extrajudicial documents in civil or commercial matters which falls within the scope of Council Regulation (EC) No 1348/2000 of 29 May 2000 on the serving in the Member States of judicial and extrajudicial documents in civil or commercial matters [4]. It is therefore necessary to continue the improvement of cooperation between courts of Member States in the field of taking of evidence.

(8) The efficiency of judicial procedures in civil or commercial matters requires that the transmission and execution of requests for the performance of taking of evidence is to be made directly and by the most rapid means possible between Member States' courts.

---

[1] OJ C 314, 3.11.2000, p. 2.
[2] Opinion delivered on 14 March 2001 (not yet published in the Official Journal).
[3] Opinion delivered on 28 February 2001 (not yet published in the Official Journal).

[4] OJ L 160, 30.6.2000, p. 37.

L 174/2 ⬚ EN ⬚    Official Journal of the European Communities    27.6.2001

(9)  Speed in transmission of requests for the performance of taking of evidence warrants the use of all appropriate means, provided that certain conditions as to the legibility and reliability of the document received are observed. So as to ensure the utmost clarity and legal certainty the request for the performance of taking of evidence must be transmitted on a form to be completed in the language of the Member State of the requested court or in another language accepted by that State. For the same reasons, forms should also be used as far as possible for further communication between the relevant courts.

(10)  A request for the performance of the taking of evidence should be executed expeditiously. If it is not possible for the request to be executed within 90 days of receipt by the requested court, the latter should inform the requesting court accordingly, stating the reasons which prevent the request from being executed swiftly.

(11)  To secure the effectiveness of this Regulation, the possibility of refusing to execute the request for the performance of taking of evidence should be confined to strictly limited exceptional situations.

(12)  The requested court should execute the request in accordance with the law of its Member State.

(13)  The parties and, if any, their representatives, should be able to be present at the performance of the taking of evidence, if that is provided for by the law of the Member State of the requesting court, in order to be able to follow the proceedings in a comparable way as if evidence were taken in the Member State of the requesting court. They should also have the right to request to participate in order to have a more active role in the performance of the taking of evidence. However, the conditions under which they may participate should be determined by the requested court in accordance with the law of its Member State.

(14)  The representatives of the requesting court should be able to be present at the performance of the taking of evidence, if that is compatible with the law of the Member State of the requesting court, in order to have an improved possibility of evaluation of evidence. They should also have the right to request to participate, under the conditions laid down by the requested court in accordance with the law of its Member State, in order to have a more active role in the performance of the taking of evidence.

(15)  In order to facilitate the taking of evidence it should be possible for a court in a Member State, in accordance with the law of its Member State, to take evidence directly in another Member State, if accepted by the latter, and under the conditions determined by the central body or competent authority of the requested Member State.

(16)  The execution of the request, according to Article 10, should not give rise to a claim for any reimbursement of taxes or costs. Nevertheless, if the requested court requires reimbursement, the fees paid to experts and interpreters, as well as the costs occasioned by the application of Article 10(3) and (4), should not be borne by that court. In such a case, the requesting court is to take the necessary measures to ensure reimbursement without delay. Where the opinion of an expert is required, the requested court may, before executing the request, ask the requesting court for an adequate deposit or advance towards the costs.

(17)  This Regulation should prevail over the provisions applying to its field of application, contained in international conventions concluded by the Member States. Member States should be free to adopt agreements or arrangements to further facilitate cooperation in the taking of evidence.

(18)  The information transmitted pursuant to this Regulation should enjoy protection. Since Directive 95/46/EC of the European Parliament and of the Council of 24 October 1995 on the protection of individuals with regard to the processing of personal data and on the free movement of such data([1]), and Directive 97/66/EC of the European Parliament and of the Council of 15 December 1997 concerning the processing of personal data and the protection of privacy in the telecommunications sector([2]), are applicable, there is no need for specific provisions on data protection in this Regulation.

(19)  The measures necessary for the implementation of this Regulation should be adopted in accordance with Council Decision 1999/468/EC of 28 June 1999([3]) laying down the procedures for the exercise of implementing powers conferred on the Commission.

(20)  For the proper functioning of this Regulation, the Commission should review its application and propose such amendments as may appear necessary.

(21)  The United Kingdom and Ireland, in accordance with Article 3 of the Protocol on the position of the United Kingdom and Ireland annexed to the Treaty on the European Union and to the Treaty establishing the European Community, have given notice of their wish to take part in the adoption and application of this Regulation.

---

([1]) OJ L 281, 23.11.1995, p. 31.
([2]) OJ L 24, 30.1.1998, p. 1.
([3]) OJ L 184, 17.7.1999, p. 23.

(22) Denmark, in accordance with Articles 1 and 2 of the Protocol on the position of Denmark annexed to the Treaty on European Union and to the Treaty establishing the European Community, is not participating in the adoption of this Regulation, and is therefore not bound by it nor subject to its application,

HAS ADOPTED THIS REGULATION:

# CHAPTER I

## GENERAL PROVISIONS

### Article 1

### Scope

1.    This Regulation shall apply in civil or commercial matters where the court of a Member State, in accordance with the provisions of the law of that State, requests:

(a)    the competent court of another Member State to take evidence; or

(b)    to take evidence directly in another Member State.

2.    A request shall not be made to obtain evidence which is not intended for use in judicial proceedings, commenced or contemplated.

3.    In this Regulation, the term 'Member State' shall mean Member States with the exception of Denmark.

### Article 2

### Direct transmission between the courts

1.    Requests pursuant to Article 1(1)(a), hereinafter referred to as 'requests', shall be transmitted by the court before which the proceedings are commenced or contemplated, hereinafter referred to as the 'requesting court', directly to the competent court of another Member State, hereinafter referred to as the 'requested court', for the performance of the taking of evidence.

2.    Each Member State shall draw up a list of the courts competent for the performance of taking of evidence according to this Regulation. The list shall also indicate the territorial and, where appropriate, the special jurisdiction of those courts.

### Article 3

### Central body

1.    Each Member State shall designate a central body responsible for:

(a)    supplying information to the courts;

(b)    seeking solutions to any difficulties which may arise in respect of a request;

(c)    forwarding, in exceptional cases, at the request of a requesting court, a request to the competent court.

2.    A federal State, a State in which several legal systems apply or a State with autonomous territorial entities shall be free to designate more than one central body.

3.    Each Member State shall also designate the central body referred to in paragraph 1 or one or several competent authority(ies) to be responsible for taking decisions on requests pursuant to Article 17.

# CHAPTER II

## TRANSMISSION AND EXECUTION OF REQUESTS

### Section 1

### Transmission of the request

### Article 4

### Form and content of the request

1.    The request shall be made using form A or, where appropriate, form I in the Annex. It shall contain the following details:

(a)    the requesting and, where appropriate, the requested court;

(b)    the names and addresses of the parties to the proceedings and their representatives, if any;

(c)    the nature and subject matter of the case and a brief statement of the facts;

(d)    a description of the taking of evidence to be performed;

(e)    where the request is for the examination of a person:

— the name(s) and address(es) of the person(s) to be examined,

— the questions to be put to the person(s) to be examined or a statement of the facts about which he is (they are) to be examined,

— where appropriate, a reference to a right to refuse to testify under the law of the Member State of the requesting court,

L 174/4    EN    ·    Official Journal of the European Communities    27.6.2001

— any requirement that the examination is to be carried out under oath or affirmation in lieu thereof, and any special form to be used,

— where appropriate, any other information that the requesting court deems necessary;

(f) where the request is for any other form of taking of evidence, the documents or other objects to be inspected;

(g) where appropriate, any request pursuant to Article 10(3) and (4), and Articles 11 and 12 and any information necessary for the application thereof.

2. The request and all documents accompanying the request shall be exempted from authentication or any equivalent formality.

3. Documents which the requesting court deems it necessary to enclose for the execution of the request shall be accompanied by a translation into the language in which the request was written.

### Article 5

### Language

The request and communications pursuant to this Regulation shall be drawn up in the official language of the requested Member State or, if there are several official languages in that Member State, in the official language or one of the official languages of the place where the requested taking of evidence is to be performed, or in another language which the requested Member State has indicated it can accept. Each Member State shall indicate the official language or languages of the institutions of the European Community other than its own which is or are acceptable to it for completion of the forms.

### Article 6

### Transmission of requests and other communications

Requests and communications pursuant to this Regulation shall be transmitted by the swiftest possible means, which the requested Member State has indicated it can accept. The transmission may be carried out by any appropriate means, provided that the document received accurately reflects the content of the document forwarded and that all information in it is legible.

### Section 2

### Receipt of request

### Article 7

### Receipt of request

1. Within seven days of receipt of the request, the requested competent court shall send an acknowledgement of receipt to the requesting court using form B in the Annex. Where the request does not comply with the conditions laid down in Articles 5 and 6, the requested court shall enter a note to that effect in the acknowledgement of receipt.

2. Where the execution of a request made using form A in the Annex, which complies with the conditions laid down in Article 5, does not fall within the jurisdiction of the court to which it was transmitted, the latter shall forward the request to the competent court of its Member State and shall inform the requesting court thereof using form A in the Annex.

### Article 8

### Incomplete request

1. If a request cannot be executed because it does not contain all of the necessary information pursuant to Article 4, the requested court shall inform the requesting court thereof without delay and, at the latest, within 30 days of receipt of the request using form C in the Annex, and shall request it to send the missing information, which should be indicated as precisely as possible.

2. If a request cannot be executed because a deposit or advance is necessary in accordance with Article 18(3), the requested court shall inform the requesting court thereof without delay and, at the latest, within 30 days of receipt of the request using form C in the Annex and inform the requesting court how the deposit or advance should be made. The requested Court shall acknowledge receipt of the deposit or advance without delay, at the latest within 10 days of receipt of the deposit or the advance using form D.

### Article 9

### Completion of the request

1. If the requested court has noted on the acknowledgement of receipt pursuant to Article 7(1) that the request does not comply with the conditions laid down in Articles 5 and 6 or has informed the requesting court pursuant to Article 8 that the request cannot be executed because it does not contain all of the necessary information pursuant to Article 4, the time limit pursuant to Article 10 shall begin to run when the requested court received the request duly completed.

2.    Where the requested court has asked for a deposit or advance in accordance with Article 18(3), this time limit shall begin to run when the deposit or the advance is made.

## S e c t i o n   3

### *Taking of evidence by the requested court*

### *Article 10*

#### General provisions on the execution of the request

1.    The requested court shall execute the request without delay and, at the latest, within 90 days of receipt of the request.

2.    The requested court shall execute the request in accordance with the law of its Member State.

3.    The requesting court may call for the request to be executed in accordance with a special procedure provided for by the law of its Member State, using form A in the Annex. The requested court shall comply with such a requirement unless this procedure is incompatible with the law of the Member State of the requested court or by reason of major practical difficulties. If the requested court does not comply with the requirement for one of these reasons it shall inform the requesting court using form E in the Annex.

4.    The requesting court may ask the requested court to use communications technology at the performance of the taking of evidence, in particular by using videoconference and teleconference.

The requested court shall comply with such a requirement unless this is incompatible with the law of the Member State of the requested court or by reason of major practical difficulties.

If the requested court does not comply with the requirement for one of these reasons, it shall inform the requesting court, using form E in the Annex.

If there is no access to the technical means referred to above in the requesting or in the requested court, such means may be made available by the courts by mutual agreement.

### *Article 11*

#### Performance with the presence and participation of the parties

1.    If it is provided for by the law of the Member State of the requesting court, the parties and, if any, their representatives, have the right to be present at the performance of the taking of evidence by the requested court.

2.    The requesting court shall, in its request, inform the requested court that the parties and, if any, their representatives, will be present and, where appropriate, that their participation is requested, using form A in the Annex. This information may also be given at any other appropriate time.

3.    If the participation of the parties and, if any, their representatives, is requested at the performance of the taking of evidence, the requested court shall determine, in accordance with Article 10, the conditions under which they may participate.

4.    The requested court shall notify the parties and, if any, their representatives, of the time when, the place where, the proceedings will take place, and, where appropriate, the conditions under which they may participate, using form F in the Annex.

5.    Paragraphs 1 to 4 shall not affect the possibility for the requested court of asking the parties and, if any their representatives, to be present at or to participate in the performance of the taking of evidence if that possibility is provided for by the law of its Member State.

### *Article 12*

#### Performance with the presence and participation of representatives of the requesting court

1.    If it is compatible with the law of the Member State of the requesting court, representatives of the requesting court have the right to be present in the performance of the taking of evidence by the requested court.

2.    For the purpose of this Article, the term 'representative' shall include members of the judicial personnel designated by the requesting court, in accordance with the law of its Member State. The requesting court may also designate, in accordance with the law of its Member State, any other person, such as an expert.

3.    The requesting court shall, in its request, inform the requested court that its representatives will be present and, where appropriate, that their participation is requested, using form A in the Annex. This information may also be given at any other appropriate time.

4. If the participation of the representatives of the requesting court is requested in the performance of the taking of evidence, the requested court shall determine, in accordance with Article 10, the conditions under which they may participate.

5. The requested court shall notify the requesting court, of the time when, and the place where, the proceedings will take place, and, where appropriate, the conditions under which the representatives may participate, using form F in the Annex.

### Article 13

#### Coercive measures

Where necessary, in executing a request the requested court shall apply the appropriate coercive measures in the instances and to the extent as are provided for by the law of the Member State of the requested court for the execution of a request made for the same purpose by its national authorities or one of the parties concerned.

### Article 14

#### Refusal to execute

1. A request for the hearing of a person shall not be executed when the person concerned claims the right to refuse to give evidence or to be prohibited from giving evidence,

(a) under the law of the Member State of the requested court; or

(b) under the law of the Member State of the requesting court, and such right has been specified in the request, or, if need be, at the instance of the requested court, has been confirmed by the requesting court.

2. In addition to the grounds referred to in paragraph 1, the execution of a request may be refused only if:

(a) the request does not fall within the scope of this Regulation as set out in Article 1; or

(b) the execution of the request under the law of the Member State of the requested court does not fall within the functions of the judiciary; or

(c) the requesting court does not comply with the request of the requested court to complete the request pursuant to Article 8 within 30 days after the requested court asked it to do so; or

(d) a deposit or advance asked for in accordance with Article 18(3) is not made within 60 days after the requested court asked for such a deposit or advance.

3. Execution may not be refused by the requested court solely on the ground that under the law of its Member State a court of that Member State has exclusive jurisdiction over the subject matter of the action or that the law of that Member State would not admit the right of action on it.

4. If execution of the request is refused on one of the grounds referred to in paragraph 2, the requested court shall notify the requesting court thereof within 60 days of receipt of the request by the requested court using form H in the Annex.

### Article 15

#### Notification of delay

If the requested court is not in a position to execute the request within 90 days of receipt, it shall inform the requesting court thereof, using form G in the Annex. When it does so, the grounds for the delay shall be given as well as the estimated time that the requested court expects it will need to execute the request.

### Article 16

#### Procedure after execution of the request

The requested court shall send without delay to the requesting court the documents establishing the execution of the request and, where appropriate, return the documents received from the requesting court. The documents shall be accompanied by a confirmation of execution using form H in the Annex.

### Section 4

#### *Direct taking of evidence by the requesting court*

### Article 17

1. Where a court requests to take evidence directly in another Member State, it shall submit a request to the central body or the competent authority referred to in Article 3(3) in that State, using form I in the Annex.

2. Direct taking of evidence may only take place if it can be performed on a voluntary basis without the need for coercive measures.

Where the direct taking of evidence implies that a person shall be heard, the requesting court shall inform that person that the performance shall take place on a voluntary basis.

27.6.2001    EN    Official Journal of the European Communities    L 174/7

3.    The taking of evidence shall be performed by a member of the judicial personnel or by any other person such as an expert, who will be designated, in accordance with the law of the Member State of the requesting court.

4.    Within 30 days of receiving the request, the central body or the competent authority of the requested Member State shall inform the requesting court if the request is accepted and, if necessary, under what conditions according to the law of its Member State such performance is to be carried out, using form J.

In particular, the central body or the competent authority may assign a court of its Member State to take part in the performance of the taking of evidence in order to ensure the proper application of this Article and the conditions that have been set out.

The central body or the competent authority shall encourage the use of communications technology, such as videoconferences and teleconferences.

5.    The central body or the competent authority may refuse direct taking of evidence only if:

(a)    the request does not fall within the scope of this Regulation as set out in Article 1;

(b)    the request does not contain all of the necessary information pursuant to Article 4; or

(c)    the direct taking of evidence requested is contrary to fundamental principles of law in its Member State.

6.    Without prejudice to the conditions laid down in accordance with paragraph 4, the requesting court shall execute the request in accordance with the law of its Member State.

Section 5

*Costs*

*Article 18*

1.    The execution of the request, in accordance with Article 10, shall not give rise to a claim for any reimbursement of taxes or costs.

2.    Nevertheless, if the requested court so requires, the requesting court shall ensure the reimbursement, without delay, of:

— the fees paid to experts and interpreters, and

— the costs occasioned by the application of Article 10(3) and(4).

The duty for the parties to bear these fees or costs shall be governed by the law of the Member State of the requesting court.

3.    Where the opinion of an expert is required, the requested court may, before executing the request, ask the requesting court for an adequate deposit or advance towards the requested costs. In all other cases, a deposit or advance shall not be a condition for the execution of a request.

The deposit or advance shall be made by the parties if that is provided for by the law of the Member State of the requesting court.

CHAPTER III

**FINAL PROVISIONS**

*Article 19*

**Implementing rules**

1.    The Commission shall draw up and regularly update a manual, which shall also be available electronically, containing the information provided by the Member States in accordance with Article 22 and the agreements or arrangements in force, according to Article 21.

2.    The updating or making of technical amendments to the standard forms set out in the Annex shall be carried out in accordance with the advisory procedure set out in Article 20(2).

*Article 20*

**Committee**

1.    The Commission shall be assisted by a Committee.

2.    Where reference is made to this paragraph, Articles 3 and 7 of Decision 1999/468/EC shall apply.

3.    The Committee shall adopt its Rules of Procedure.

*Article 21*

**Relationship with existing or future agreements or arrangements between Member States**

1.    This Regulation shall, in relation to matters to which it applies, prevail over other provisions contained in bilateral or multilateral agreements or arrangements concluded by the Member States and in particular the Hague Convention of 1 March 1954 on Civil Procedure and the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, in relations between the Member States party thereto.

2.    This Regulation shall not preclude Member States from maintaining or concluding agreements or arrangements between two or more of them to further facilitate the taking of evidence, provided that they are compatible with this Regulation.

3.    Member States shall send to the Commission:

(a)    by 1 July 2003, a copy of the agreements or arrangements maintained between the Member States referred to in paragraph 2;

(b)    a copy of the agreements or arrangements concluded between the Member States referred to in paragraph 2 as well as drafts of such agreements or arrangements which they intend to adopt; and

(c)    any denunciation of, or amendments to, these agreements or arrangements.

### Article 22

### Communication

By 1 July 2003 each Member State shall communicate to the Commission the following:

(a)    the list pursuant to Article 2(2) indicating the territorial and, where appropriate, the special jurisdiction of the courts;

(b)    the names and addresses of the central bodies and competent authorities pursuant to Article 3, indicating their territorial jurisdiction;

(c)    the technical means for the receipt of requests available to the courts on the list pursuant to Article 2(2);

(d)    the languages accepted for the requests as referred to in Article 5.

Member States shall inform the Commission of any subsequent changes to this information.

### Article 23

### Review

No later than 1 January 2007, and every five years thereafter, the Commission shall present to the European Parliament, the Council and the Economic and Social Committee a report on the application of this Regulation, paying special attention to the practical application of Article 3(1)(c) and 3, and Articles 17 and 18.

### Article 24

### Entry into force

1.    This Regulation shall enter into force on 1 July 2001.

2.    This Regulation shall apply from 1 January 2004, except for Articles 19, 21 and 22, which shall apply from 1 July 2001.

This Regulation shall be binding in its entirety and directly applicable in the Member States in accordance with the Treaty establishing the European Community.

Done at Brussels, 28 May 2001.

*For the Council*

*The President*

T. BODSTRÖM

*ANNEX*

**FORM A**

| |
|---|
| Request for the taking of evidence |
| (Article 4 of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1)) |

1.    Reference of the requesting court:

2.    Reference of the requested court:

3.    Requesting court:

    3.1.    Name:

    3.2.    Address:

        3.2.1.    Street and No/PO box:

        3.2.2.    Place and postcode:

        3.2.3.    Country:

    3.3.    Tel.

    3.4.    Fax

    3.5.    E-mail:

4.    Requested court:

    4.1.    Name:

    4.2.    Address:

        4.2.1.    Street and No/PO box:

        4.2.2.    Place and postcode:

        4.2.3.    Country:

    4.3.    Tel.

    4.4.    Fax

    4.5.    E-mail:

5.    In the case brought by the claimant/petitioner:

    5.1.    Name:

    5.2.    Address:

        5.2.1.    Street and No/PO box:

        5.2.2.    Place and postcode:

        5.2.3.    Country:

5.3.   Tel.

5.4.   Fax

5.5.   E-mail:

6.   Representatives of the claimant/petitioner:

6.1.   Name:

6.2.   Address:

6.2.1.   Street and No/PO box:

6.2.2.   Place and postcode:

6.2.3.   Country:

6.3.   Tel.

6.4.   Fax

6.5.   E-mail:

7.   Against the defendant/respondent:

7.1.   Name:

7.2.   Address:

7.2.1.   Street and No/PO box:

7.2.2.   Place and postcode:

7.2.3.   Country:

7.3.   Tel.

7.4.   Fax

7.5.   E-mail:

8.   Representatives of defendant/respondent:

8.1.   Name:

8.2.   Address:

8.2.1.   Street and No/PO box:

8.2.2.   Place and postcode:

8.2.3.   Country:

8.3.   Tel:

8.4.   Fax:

8.5.   E-mail:

9. Presence and participation of the parties:

   9.1. Parties and, if any, their representatives will be present at the taking of evidence: ☐

   9.2. Participation of the parties and, if any, their representatives is requested: ☐

10. Presence and participation of the representatives of the requesting court:

   10.1. Representatives will be present at the taking of evidence: ☐

   10.2. Participation of the representatives is requested: ☐

      10.2.1. Name:

      10.2.2. Title:

      10.2.3. Function:

      10.2.4. Task:

11. Nature and subject matter of the case and a brief statement of the facts (in annex, where appropriate):

12. Taking of evidence to be performed

   12.1. Description of the taking of evidence to be performed (in annex, where appropriate):

   12.2. Examination of witnesses:

      12.2.1. Name and surname:

      12.2.2. Address:

      12.2.3. Tel.

      12.2.4. Fax

      12.2.5. E-mail:

      12.2.6. Questions to be put to the witness or a statement of the facts about which they are to be examined (in annex, where appropriate):

      12.2.7. Right to refuse to testify under the law of the Member State of the requesting court (in annex, where appropriate):

      12.2.8. Please examine the witness:

         12.2.8.1. under oath: ☐

         12.2.8.2. on affirmation: ☐

      12.2.9. Any other information that the requesting court deems necessary (in annex, where appropriate):

   12.3. Other taking of evidence:

      12.3.1. Documents to be inspected and a description of the requested taking of evidence (in annex, where appropriate):

      12.3.2. Objects to be inspected and a description of the requested taking of evidence (in annex, where appropriate):

13.  Please execute the request

   13.1.  In accordance with a special procedure (Article 10(3)) provided for by the law of the Member State of the requesting court and/or by the use of communications technology (Article 10(4)) described in annex:

   13.2.  Following information is necessary for the application thereof:

Done at:

Date:

---

Notification of forwarding the request

Article 7(2) of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1).

---

14.  The request does not fall within the jurisdiction of the court indicated in point 4 above and was forwarded to

   14.1.  Name of the competent court:

   14.2.  Address:

      14.2.1.  Street and No/PO box:

      14.2.2.  Place and postcode:

      14.2.3.  Country:

   14.3.  Tel.

   14.4.  Fax

   14.5.  E-mail:

Done at:

Date:

**FORM B**

---

Acknowledgement of receipt of a request for the taking of evidence

(Article 7(1) of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

---

1.    Reference of the requesting court:

2.    Reference of the requested court:

3.    Name of the requesting court:

4.    Requested court:

    4.1.    Name:

    4.2.    Address:

        4.2.1.    Street and No/PO box:

        4.2.2.    Place and postcode:

        4.2.3.    Country:

    4.3.    Tel.

    4.4.    Fax

    4.5.    E-mail:

5.    The request was received on … (date of receipt) by the court indicated in point 4 above.

6.    The request cannot be dealt with because:

    6.1.    The language used to complete the form is not acceptable (Article 5):    ☐

        6.1.1.    Please use one the following languages:

    6.2.    The document is not legible (Article 6):    ☐

Done at:

Date:

**FORM C**

---

Request for additional information for the taking of evidence

(Article 8 of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

---

1.    Reference of the requested court:

2.    Reference of the requesting court:

3.    Name of the requesting court:

4.    Name of the requested court:

5.    The request cannot be executed without the following additional information:

6.    The request cannot be executed before a deposit or advance is made in accordance with Article 18(3). The deposit or advance should be made in the following way:

Done at:

Date:

**FORM D**

Acknowledgement of receipt of the deposit or advance

(Article 8(2) of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

1.   Reference of the requesting court:

2.   Reference of the requested court:

3.   Name of the requesting court:

4.   Name of the requested court:

5.   The deposit or advance was received on ... (date of receipt) by the court indicated in point 4 above.

Done at:

Date:

**FORM E**

> Notification concerning the request for special procedures and/or for the use of communications technologies
>
> (Article 10(3) and (4) of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

1.    Reference of the requested court:

2.    Reference of the requesting court:

3.    Name of the requesting court:

4.    Name of the requested court:

5.    The requirement for execution of the request according to the special procedure indicated in point 13.1 of the request (Form A) could not be complied with because:

    5.1.    the required procedure is incompatible with the law of the Member State of the requested court:    ☐

    5.2.    the performance of the requested procedure is not possible by reason of major practical difficulties:    ☐

6.    The requirement for execution of the request for the use of communications technologies indicated in point 13.1 of the request (Form A) could not be complied with because:

    6.1.    The use of communications technology is incompatible with the law of the Member State of the requested court    ☐

    6.2.    The use of the communications technology is not possible by reason of major practical difficulties    ☐

Done at:

Date:

**FORM F**

---

Notification of the date, time, place of performance of the taking of evidence and the conditions for participation

(Articles 11(4) and 12(5) of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

---

1.  Reference of the requesting court:

2.  Reference of the requested court:

3.  Requesting court

    3.1.  Name:

    3.2.  Address:

        3.2.1.  Street and No/PO box:

        3.2.2.  Place and postcode:

        3.2.3.  Country:

    3.3.  Tel.

    3.4.  Fax

    3.5.  E-mail:

4.  Requested court

    4.1.  Name:

    4.2.  Address:

        4.2.1.  Street and No/PO box:

        4.2.2.  Place and postcode:

        4.2.3.  Country:

    4.3.  Tel.

    4.4.  Fax

    4.5.  E-mail:

5.  Date and time of the performance of the taking of evidence:

6.  Place of the performance of the taking of evidence, if different from that referred to in point 4 above:

7.  Where appropriate, conditions under which the parties and, if any, their representatives may participate:

8.  Where appropriate, conditions under which the representatives of the requesting court may participate:

Done at:

Date:

**FORM G**

Notification of delay

(Article 15 of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

1.    Reference of the requested court:

2.    Reference of the requesting court:

3.    Name of the requesting court:

4.    Name of the requested court:

5.    The request can not be executed within 90 days of receipt for the following reasons:

6.    It is estimated that the request will be executed by ... (indicate an estimated date)

Done at:

Date:

L 174/20    EN    Official Journal of the European Communities    27.6.2001

**FORM H**

---

Information on the outcome of the request

(Articles 14 and 16 of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

---

1.  Reference of the requested court:

2.  Reference of the requesting court:

3.  Name of the requesting court:

4.  Name of the requested court:

5.  The request has been executed. ☐

    The documents establishing execution of the request are attached:

6.  Execution of the request has been refused because:

    6.1.  the person to be examined has claimed the right to refuse to give evidence or has claimed to be prohibited from giving evidence:

        6.1.1.  under the law of the Member State of the requested court: ☐

        6.1.2.  under the law of the Member State of the requesting court: ☐

    6.2.  The request does not fall within the scope of this Regulation ☐

    6.3.  Under the law of the Member State of the requested court, the execution of the request does not fall within the functions of the judiciary: ☐

    6.4.  The requesting court has not complied with the request for additional information from the requested court dated ... (date of the request): ☐

    6.5.  A deposit or advance asked for in accordance with Article 18(3) has not been made: ☐

Done at:

Date:

**FORM I**

---

Request for direct taking of evidence

(Article 17 of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

---

1.    Reference of the requesting court:

2.    Reference of the central body/competent authority:

3.    Requesting court:

    3.1.    Name:

    3.2.    Address:

        3.2.1.    Street and No/PO box:

        3.2.2.    Place and postcode:

        3.2.3.    Country:

    3.3.    Tel.

    3.4.    Fax

    3.5.    E-mail:

4.    Central body/competent authority of the requested State:

    4.1.    Name:

    4.2.    Address:

        4.2.1.    Street and No/PO box:

        4.2.2.    Place and postcode:

        4.2.3.    Country:

    4.3.    Tel.

    4.4.    Fax

    4.5.    E-mail:

5.    In the case brought by the claimant/petitioner:

    5.1.    Name:

    5.2.    Address:

        5.2.1.    Street and No/PO box:

        5.2.2.    Place and postcode:

        5.2.3.    Country:

L 174/22    EN    Official Journal of the European Communities    27.6.2001

5.3.  Tel.:

5.4.  Fax

5.5.  E-mail:

6.  Representatives of the claimant/petitioner:

6.1.  Name:

6.2.  Address:

6.2.1.  Street and No/PO box:

6.2.2.  Place and postcode:

6.2.3.  Country:

6.3.  Tel.

6.4.  Fax

6.5.  E-mail:

7.  Against the defendant/respondent:

7.1.  Name:

7.2.  Address:

7.2.1.  Street and No/PO box:

7.2.2.  Place and postcode:

7.2.3.  Country:

7.3.  Tel.

7.4.  Fax

7.5.  E-mail:

8.  Representatives of defendant/respondent:

8.1.  Name:

8.2.  Address:

8.2.1.  Street and No/PO box:

8.2.2.  Place and postcode:

8.2.3.  Country:

8.3.  Tel.

8.4.  Fax

8.5.  E-mail:

9.    The taking of evidence shall be performed by:

    9.1.    Name:

    9.2.    Title:

    9.3.    Function:

    9.4.    Task:

10.    Nature and subject matter of the case and a brief statement of the facts (in annex, where appropriate):

11.    Taking of evidence to be performed:

    11.1.    Description of the taking of evidence to be performed (in annex, where appropriate):

    11.2.    Examination of witnesses:

        11.2.1.    First names and surname:

        11.2.2.    Address:

        11.2.3.    Tel.

        11.2.4.    Fax

        11.2.5.    E-mail:

        11.2.6.    Questions to be put to the witness or a statement of the facts about which they are to be examined (in the annex, where appropriate):

        11.2.7.    Right to refuse to testify under the law of the Member State of the requesting court (in annex, where appropriate):

    11.3.    Other taking of evidence (in annex, where appropriate):

12.    The requesting court requests to take evidence directly by use of the following communications technology (in annex, where appropriate):

Done at:

Date:

**FORM J**

---

Information from the central body/competent authority

(Article 17 of Council Regulation (EC) No 1206/2001 of 28 May 2001 on cooperation between the courts of the Member States in the taking of evidence in civil or commercial matters (OJ L 174, 27.6.2001, p. 1))

---

1.  Reference of the requesting court:

2.  Reference of the central body/competent authority:

3.  Name of the requesting court:

4.  Central body/competent authority:

    4.1.  Name:

    4.2.  Address:

        4.2.1.  Street and No/PO box:

        4.2.2.  Place and postcode:

        4.2.3.  Country:

    4.3.  Tel.

    4.4.  Fax

    4.5.  E-mail:

5.  Information from the central body/competent authority:

    5.1.  Direct taking of evidence in accordance with the request is accepted:    ☐

    5.2.  Direct taking of evidence in accordance with the request is accepted under the following conditions (in annex, where appropriate):    ☐

    5.3.  Direct taking of evidence in accordance with the request is refused for the following reasons:

        5.3.1.  The request does not fall within the scope of this Regulation:    ☐

        5.3.2.  The request does not contain all of the necessary information pursuant to Article 4:    ☐

        5.3.3.  The direct taking of evidence requested for is contrary to fundamental principles of law of the Member State of the central body/competent authority:    ☐

Done at:

Date:

---

# EXHIBIT N

(In the relations between the Contracting States, this Convention replaces
Articles 8 to 16 of the Conventions on civil procedure of 1905 and 1954)

## CONVENTION ON THE TAKING OF EVIDENCE ABROAD IN CIVIL OR COMMERCIAL MATTERS

*(Concluded 18 March 1970)*
*(Entered into force 7 October 1972)*

The States signatory to the present Convention,
Desiring to facilitate the transmission and execution of Letters of Request and to further the accommodation of
the different methods which they use for this purpose,
Desiring to improve mutual judicial co-operation in civil or commercial matters,
Have resolved to conclude a Convention to this effect and have agreed upon the following provisions:

## CHAPTER I – LETTERS OF REQUEST

*Article 1*

In civil or commercial matters a judicial authority of a Contracting State may, in accordance with the provisions
of the law of that State, request the competent authority of another Contracting State, by means of a Letter of
Request, to obtain evidence, or to perform some other judicial act.
A Letter shall not be used to obtain evidence which is not intended for use in judicial proceedings, commenced or
contemplated.
The expression "other judicial act" does not cover the service of judicial documents or the issuance of any process
by which judgments or orders are executed or enforced, or orders for provisional or protective measures.

*Article 2*

A Contracting State shall designate a Central Authority which will undertake to receive Letters of Request
coming from a judicial authority of another Contracting State and to transmit them to the authority competent to
execute them. Each State shall organize the Central Authority in accordance with its own law.
Letters shall be sent to the Central Authority of the State of execution without being transmitted through any other
authority of that State.

*Article 3*

A Letter of Request shall specify-
*a)* the authority requesting its execution and the authority requested to execute it, if known to the requesting
authority;
*b)* the names and addresses of the parties to the proceedings and their representatives, if any;
*c)* the nature of the proceedings for which the evidence is required, giving all necessary information in regard
thereto;
*d)* the evidence to be obtained or other judicial act to be performed.
Where appropriate, the Letter shall specify, *inter alia* –
*e)* the names and addresses of the persons to be examined;
*f)* the questions to be put to the persons to be examined or a statement of the subject-matter about which they are

to be examined;

*g)* the documents or other property, real or personal, to be inspected;

*h)* any requirement that the evidence is to be given on oath or affirmation, and any special form to be used;

*i)* any special method or procedure to be followed under Article 9.

A Letter may also mention any information necessary for the application of Article 11.

No legalization or other like formality may be required.

*Article 4*

A Letter of Request shall be in the language of the authority requested to execute it or be accompanied by a translation into that language.

Nevertheless, a Contracting State shall accept a Letter in either English or French, or a translation into one of these languages, unless it has made the reservation authorized by Article 33.

A Contracting State which has more than one official language and cannot, for reasons of internal law, accept Letters in one of these languages for the whole of its territory, shall, by declaration, specify the language in which the Letter or translation thereof shall be expressed for execution in the specified parts of its territory. In case of failure to comply with this declaration, without justifiable excuse, the costs of translation into the required language shall be borne by the State of origin.

A Contracting State may, by declaration, specify the language or languages other than those referred to in the preceding paragraphs, in which a Letter may be sent to its Central Authority.

Any translation accompanying a Letter shall be certified as correct, either by a diplomatic officer or consular agent or by a sworn translator or by any other person so authorized in either State.

*Article 5*

If the Central Authority considers that the request does not comply with the provisions of the present Convention, it shall promptly inform the authority of the State of origin which transmitted the Letter of Request, specifying the objections to the Letter.

*Article 6*

If the authority to whom a Letter of Request has been transmitted is not competent to execute it, the Letter shall be sent forthwith to the authority in the same State which is competent to execute it in accordance with the provisions of its own law.

*Article 7*

The requesting authority shall, if it so desires, be informed of the time when, and the place where, the proceedings will take place, in order that the parties concerned, and their representatives, if any, may be present. This information shall be sent directly to the parties or their representatives when the authority of the State of origin so requests.

*Article 8*

A Contracting State may declare that members of the judicial personnel of the requesting authority of another Contracting State may be present at the execution of a Letter of Request. Prior authorization by the competent authority designated by the declaring State may be required.

*Article 9*

The judicial authority which executes a Letter of Request shall apply its own law as to the methods and procedures to be followed.

However, it will follow a request of the requesting authority that a special method or procedure be followed, unless this is incompatible with the internal law of the State of execution or is impossible of performance by reason of its internal practice and procedure or by reason of practical difficulties.

A Letter of Request shall be executed expeditiously.

*Article 10*
In executing a Letter of Request the requested authority shall apply the appropriate measures of compulsion in the instances and to the same extent as are provided by its internal law for the execution of orders issued by the authorities of its own country or of requests made by parties in internal proceedings.

*Article 11*
In the execution of a Letter of Request the person concerned may refuse to give evidence in so far as he has a privilege or duty to refuse to give the evidence –
*a)* under the law of the State of execution; or
*b)* under the law of the State of origin, and the privilege or duty has been specified in the Letter, or, at the instance of the requested authority, has been otherwise confirmed to that authority by the requesting authority.
A Contracting State may declare that, in addition, it will respect privileges and duties existing under the law of States other than the State of origin and the State of execution, to the extent specified in that declaration.

*Article 12*
The execution of a Letter of Request may be refused only to the extent that –
*a)* in the State of execution the execution of the Letter does not fall within the functions of the judiciary; or
*b)* the State addressed considers that its sovereignty or security would be prejudiced thereby.
Execution may not be refused solely on the ground that under its internal law the State of execution claims exclusive jurisdiction over the subject-matter of the action or that its internal law would not admit a right of action on it.

*Article 13*
The documents establishing the execution of the Letter of Request shall be sent by the requested authority to the requesting authority by the same channel which was used by the latter.
In every instance where the Letter is not executed in whole or in part, the requesting authority shall be informed immediately through the same channel and advised of the reasons.

*Article 14*
The execution of the Letter of Request shall not give rise to any reimbursement of taxes or costs of any nature. Nevertheless, the State of execution has the right to require the State of origin to reimburse the fees paid to experts and interpreters and the costs occasioned by the use of a special procedure requested by the State of origin under Article 9, paragraph 2.
The requested authority whose law obliges the parties themselves to secure evidence, and which is not able itself to execute the Letter, may, after having obtained the consent of the requesting authority, appoint a suitable person to do so. When seeking this consent the requested authority shall indicate the approximate costs which would result from this procedure. If the requesting authority gives its consent it shall reimburse any costs incurred; without such consent the requesting authority shall not be liable for the costs.

## CHAPTER II – TAKING OF EVIDENCE BY DIPLOMATIC OFFICERS, CONSULAR AGENTS AND COMMISSIONERS

*Article 15*
In civil or commercial matters, a diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, take the evidence without compulsion of nationals of a State which he represents in aid of proceedings commenced in the courts of a State which he represents.
A Contracting State may declare that evidence may be taken by a diplomatic officer or consular agent only if

114

permission to that effect is given upon application made by him or on his behalf to the appropriate authority designated by the declaring State.

*Article 16*
A diplomatic officer or consular agent of a Contracting State may, in the territory of another Contracting State and within the area where he exercises his functions, also take the evidence, without compulsion, of nationals of the State in which he exercises his functions or of a third State, in aid of proceedings commenced in the courts of a State which he represents, if –
*a)* a competent authority designated by the State in which he exercises his functions has given its permission either generally or in the particular case, and
*b)* he complies with the conditions which the competent authority has specified in the permission.
A Contracting State may declare that evidence may be taken under this Article without its prior permission.

*Article 17*
In civil or commercial matters, a person duly appointed as a commissioner for the purpose may, without compulsion, take evidence in the territory of a Contracting State in aid of proceedings commenced in the courts of another Contracting State, if –
*a)* a competent authority designated by the State where the evidence is to be taken has given its permission either generally or in the particular case; and
*b)* he complies with the conditions which the competent authority has specified in the permission.
A Contracting State may declare that evidence may be taken under this Article without its prior permission.

*Article 18*
A Contracting State may declare that a diplomatic officer, consular agent or commissioner authorized to take evidence under Articles 15, 16 or 17, may apply to the competent authority designated by the declaring State for appropriate assistance to obtain the evidence by compulsion. The declaration may contain such conditions as the declaring State may see fit to impose.
If the authority grants the application it shall apply any measures of compulsion which are appropriate and are prescribed by its law for use in internal proceedings.

*Article 19*
The competent authority, in giving the permission referred to in Articles 15, 16 or 17, or in granting the application referred to in Article 18, may lay down such conditions as it deems fit, *inter alia*, as to the time and place of the taking of the evidence. Similarly it may require that it be given reasonable advance notice of the time, date and place of the taking of the evidence; in such a case a representative of the authority shall be entitled to be present at the taking of the evidence.

*Article 20*
In the taking of evidence under any Article of this Chapter persons concerned may be legally represented.

*Article 21*
Where a diplomatic officer, consular agent or commissioner is authorized under Articles 15, 16 or 17 to take evidence –
*a)* he may take all kinds of evidence which are not incompatible with the law of the State where the evidence is taken or contrary to any permission granted pursuant to the above Articles, and shall have power within such limits to administer an oath or take an affirmation;
*b)* a request to a person to appear or to give evidence shall, unless the recipient is a national of the State where the action is pending, be drawn up in the language of the place where the evidence is taken or be accompanied by a translation into such language;

*c)* the request shall inform the person that he may be legally represented and, in any State that has not filed a declaration under Article 18, shall also inform him that he is not compelled to appear or to give evidence;
*d)* the evidence may be taken in the manner provided by the law applicable to the court in which the action is pending provided that such manner is not forbidden by the law of the State where the evidence is taken;
*e)* a person requested to give evidence may invoke the privileges and duties to refuse to give the evidence contained in Article 11.

*Article 22*
The fact that an attempt to take evidence under the procedure laid down in this Chapter has failed, owing to the refusal of a person to give evidence, shall not prevent an application being subsequently made to take the evidence in accordance with Chapter I.

## CHAPTER III – GENERAL CLAUSES
*Article 23*
A Contracting State may at the time of signature, ratification or accession, declare that it will not execute Letters of Request issued for the purpose of obtaining pre-trial discovery of documents as known in Common Law countries.

*Article 24*
A Contracting State may designate other authorities in addition to the Central Authority and shall determine the extent of their competence. However, Letters of Request may in all cases be sent to the Central Authority. Federal States shall be free to designate more than one Central Authority.

*Article 25*
A Contracting State which has more than one legal system may designate the authorities of one of such systems, which shall have exclusive competence to execute Letters of Request pursuant to this Convention.

*Article 26*
A Contracting State, if required to do so because of constitutional limitations, may request the reimbursement by the State of origin of fees and costs, in connection with the execution of Letters of Request, for the service of process necessary to compel the appearance of a person to give evidence, the costs of attendance of such persons, and the cost of any transcript of the evidence.
Where a State has made a request pursuant to the above paragraph, any other Contracting State may request from that State the reimbursement of similar fees and costs.

*Article 27*
The provisions of the present Convention shall not prevent a Contracting State from –
*a)* declaring that Letters of Request may be transmitted to its judicial authorities through channels other than those provided for in Article 2;
*b)* permitting, by internal law or practice, any act provided for in this Convention to be performed upon less restrictive conditions;
*c)* permitting, by internal law or practice, methods of taking evidence other than those provided for in this Convention.

*Article 28*
The present Convention shall not prevent an agreement between any two or more Contracting States to derogate from –
*a)* the provisions of Article 2 with respect to methods of transmitting Letters of Request;
*b)* the provisions of Article 4 with respect to the languages which may be used;

*c)* the provisions of Article 8 with respect to the presence of judicial personnel at the execution of Letters;
*d)* the provisions of Article 11 with respect to the privileges and duties of witnesses to refuse to give evidence;
*e)* the provisions of Article 13 with respect to the methods of returning executed Letters to the requesting authority;
*f)* the provisions of Article 14 with respect to fees and costs;
*g)* the provisions of Chapter II.

*Article 29*

Between Parties to the present Convention who are also Parties to one or both of the Conventions on Civil Procedure signed at The Hague on the 17th of July 1905 and the 1st of March 1954, this Convention shall replace Articles 8-16 of the earlier Conventions.

*Article 30*

The present Convention shall not affect the application of Article 23 of the Convention of 1905, or of Article 24 of the Convention of 1954.

*Article 31*

Supplementary Agreements between Parties to the Conventions of 1905 and 1954 shall be considered as equally applicable to the present Convention unless the Parties have otherwise agreed.

*Article 32*

Without prejudice to the provisions of Articles 29 and 31, the present Convention shall not derogate from conventions containing provisions on the matters covered by this Convention to which the Contracting States are, or shall become Parties.

*Article 33*

A State may, at the time of signature, ratification or accession exclude, in whole or in part, the application of the provisions of paragraph 2 of Article 4 and of Chapter II. No other reservation shall be permitted.
Each Contracting State may at any time withdraw a reservation it has made; the reservation shall cease to have effect on the sixtieth day after notification of the withdrawal.
When a State has made a reservation, any other State affected thereby may apply the same rule against the reserving State.

*Article 34*

A State may at any time withdraw or modify a declaration.

*Article 35*

A Contracting State shall, at the time of the deposit of its instrument of ratification or accession, or at a later date, inform the Ministry of Foreign Affairs of the Netherlands of the designation of authorities, pursuant to Articles 2, 8, 24 and 25.
A Contracting State shall likewise inform the Ministry, where appropriate, of the following –
*a)* the designation of the authorities to whom notice must be given, whose permission may be required, and whose assistance may be invoked in the taking of evidence by diplomatic officers and consular agents, pursuant to Articles 15, 16 and 18 respectively;
*b)* the designation of the authorities whose permission may be required in the taking of evidence by commissioners pursuant to Article 17 and of those who may grant the assistance provided for in Article 18;
*c)* declarations pursuant to Articles 4, 8, 11, 15, 16, 17, 18, 23 and 27;
*d)* any withdrawal or modification of the above designations and declarations;
*e)* the withdrawal of any reservation.

*Article 36*

Any difficulties which may arise between Contracting States in connection with the operation of this Convention shall be settled through diplomatic channels.

*Article 37*

The present Convention shall be open for signature by the States represented at the Eleventh Session of the Hague Conference on Private International Law.

It shall be ratified, and the instruments of ratification shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

*Article 38*

The present Convention shall enter into force on the sixtieth day after the deposit of the third instrument of ratification referred to in the second paragraph of Article 37.

The Convention shall enter into force for each signatory State which ratifies subsequently on the sixtieth day after the deposit of its instrument of ratification.

*Article 39*

Any State not represented at the Eleventh Session of the Hague Conference on Private International Law which is a Member of this Conference or of the United Nations or of a specialized agency of that Organization, or a Party to the Statute of the International Court of Justice may accede to the present Convention after it has entered into force in accordance with the first paragraph of Article 38.

The instrument of accession shall be deposited with the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for a State acceding to it on the sixtieth day after the deposit of its instrument of accession.

The accession will have effect only as regards the relations between the acceding State and such Contracting States as will have declared their acceptance of the accession. Such declaration shall be deposited at the Ministry of Foreign Affairs of the Netherlands; this Ministry shall forward, through diplomatic channels, a certified copy to each of the Contracting States.

The Convention will enter into force as between the acceding State and the State that has declared its acceptance of the accession on the sixtieth day after the deposit of the declaration of acceptance.

*Article 40*

Any State may, at the time of signature, ratification or accession, declare that the present Convention shall extend to all the territories for the international relations of which it is responsible, or to one or more of them. Such a declaration shall take effect on the date of entry into force of the Convention for the State concerned.

At any time thereafter, such extensions shall be notified to the Ministry of Foreign Affairs of the Netherlands.

The Convention shall enter into force for the territories mentioned in such an extension on the sixtieth day after the notification indicated in the preceding paragraph.

*Article 41*

The present Convention shall remain in force for five years from the date of its entry into force in accordance with the first paragraph of Article 38, even for States which have ratified it or acceded to it subsequently.

If there has been no denunciation, it shall be renewed tacitly every five years.

Any denunciation shall be notified to the Ministry of Foreign Affairs of the Netherlands at least six months before the end of the five year period.

It may be limited to certain of the territories to which the Convention applies.

The denunciation shall have effect only as regards the State which has notified it. The Convention shall remain in force for the other Contracting States.

*Article 42*

The Ministry of Foreign Affairs of the Netherlands shall give notice to the States referred to in Article 37, and to the States which have acceded in accordance with Article 39, of the following –

*a)* the signatures and ratifications referred to in Article 37;

*b)* the date on which the present Convention enters into force in accordance with the first paragraph of Article 38;

*c)* the accessions referred to in Article 39 and the dates on which they take effect;

*d)* the extensions referred to in Article 40 and the dates on which they take effect;

*e)* the designations, reservations and declarations referred to in Articles 33 and 35;

*f)* the denunciations referred to in the third paragraph of Article 41.


In witness whereof the undersigned, being duly authorized thereto, have signed the present Convention.

Done at The Hague, on the 18th day of March, 1970, in the English and French languages, both texts being equally authentic, in a single copy which shall be deposited in the archives of the Government of the Netherlands, and of which a certified copy shall be sent, through the diplomatic channel, to each of the States represented at the Eleventh Session of the Hague Conference on Private International Law.