HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| VIVENDI S.A., | ) | NO.  CV6-1524 JLR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | OPPOSITION TO T-MOBILE |
| | ) | DEFENDANTS' MOTION TO |
| DEUTSCHLAND GMBH, T-MOBILE | ) | DISMISS |
| INTERNATIONAL AG, DEUTSCHE TELEKOM | ) | |
| AG, AND ZYGMUNT SOLORZ-ZAK, | ) | Jury Trial Demanded |
| Defendants. | ) | |
| | ) | |

OPPOSITION TO MOTION TO DISMISS
OHS East:160270142.1
604816-20085 AMH/AMH

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................1

FACTS .........................................................................................................................2

ARGUMENT...................................................................................................................4

I.    This Is a Convenient and Appropriate Forum for This Case..............................................4

    A.    T-Mobile Has Failed to Meet Its "Heavy Burden" to Show That an Adequate Alternative Forum Exists ...............................................5

    B.    Plaintiff's Choice of Forum Is Entitled to Deference..............................................6

    C.    T-Mobile Has Not Met its Burden of Showing that Litigating in This District Would Be Oppressive or Vexatious ...............................................8

    D.    The Private and Public Factors Do Not Tilt Strongly in Favor of a Foreign Forum........................................................................................10

        1.    The Private Interest Factors Do Not Tilt Strongly in Favor of a Foreign Forum ...............................................................10

        2.    The Public Interest Factors Do Not Tilt Strongly in Favor of a Foreign Forum ...............................................................12

II.    This Court Has Personal Jurisdiction Over the German T-Mobile Defendants..............15

    A.    Personal Jurisdiction Is Proper Over DT Pursuant to RICO's Nationwide Service of Process Provision ...............................................15

    B.    This Court Has Personal Jurisdiction Over Defendant T-Mobile International AG Through the Agency Theory of Personal Jurisdiction.............17

    C.    This Court Has Personal Jurisdiction Over T-Mobile Deutschland GmbH Under the Conspiracy Theory of Personal Jurisdiction.........................................20

III.    This Court Has Subject Matter Jurisdiction ...............................................................21

    A.    Vivendi Satisfies the Conduct Test. ...............................................................22

    B.    Vivendi Satisfies the Effects Test.................................................................23

IV.    The Complaint Properly States RICO Claims.............................................................25

    A.    The Facts Alleged in the Complaint Must Be Accepted as True .........................25

    B.    Vivendi Has Standing to Bring RICO Claims.................................................26

        1.    Vivendi's Claims Are Ripe.......................................................................26

        2.    Vivendi Has Adequately Alleged Proximate Cause....................................27

    C.    The Complaint Adequately Alleges a Pattern of Racketeering............................28

        1.    The 2004 Communications Were Continuous, Predicate Acts of Wire Fraud ...............................................................29

OPPOSITION TO MOTION TO DISMISS - i
OHS East:160270142.1
604816-20085 AMH/AMH

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF CONTENTS
(continued)

Page

(a) The 2004 Communications Constitute Predicate Acts. ...............29

(b) The 2004 Communications Meet the Continuity Requirement.................................................................................30

2. T-Mobile's Post-2004 Communications Were Predicate Acts................31

(a) T-Mobile's False Statement of March 7, 2006............................31

(b) T-Mobile's Press Releases of September 5 and October 4, 2006 ........................................................................................31

(c) The January 28, 2007 Press Release...............................................33

3. The Wire Fraud is Pled with Adequate Specificity .................................33

D. The Complaint States a Claim Under § 1962(b) ...................................34

E. Vivendi Has Stated a Claim Under § 1962(c) .........................................35

F. Vivendi Has Adequately Stated a Claim under Section 1962(d). ........................36

CONCLUSION .........................................................................................................36

OPPOSITION TO MOTION TO DISMISS - ii
OHS East:160270142.1
604816-20085 AMH/AMH

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) .................................................................16

*Ahmed Alhanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cr. 1997) ......................................................................15

*Allstate Life Ins. Co. v. Linter Group, Ltd.*,
   782 F. Supp. 215 (D.N.Y. 1992), *aff'd*, 994 F.2d 996 (2d. Cir. 1993) ............11, 29

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523 (9th Cir. 1995) ...................................................................29

*Anglo American Ins. Group v. Calfed Inc.*,
   940 F. Supp. 554 (S.D.N.Y. 1996) ...........................................................11

*Armco, Inc. v. United Steelworkers of Am*,
   280 F.3d 669 (6th Cir. 2002) ...................................................................15

*Asahi Metal Ind. Co.*,
   480 U.S. 102 (1987) ...............................................................................17

*Baden Sports, Inc. v. Kabushiki Kaisha Molten*
   2007 U.S. Dist. Lexis 3881 (W.D. Wash. Jan. 18, 2007).............................19

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ...............................................................9, 15

*Bankers Trust Co. v. Rhodes*,
   859 F.2d 1096 (2d Cir. 1988) ..................................................................27

*Bigio v. Coca-Cola Co.*,
   448 F.3d 176 (2d Cir. 2006) ....................................................................12

*Burger v. Kuimelis*,
   325 F. Supp. 2d 1026 (D. Cal. 2004)........................................................27

*Butcher's Union Local 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ...................................................................16

*Butte Mining PLC v. Smith*,
   76 F.3d 287 (9th Cir. 1996) ...............................................................22, 23

OPPOSITION TO MOTION TO DISMISS - i
OHS East:160270142.1
604816-20085 AMH/AMH

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

**TABLE OF AUTHORITIES**
(continued)

Page

*C.A. Westel de Venez. v. American Tel. & Tel. Co.,*
    1992 U.S. Dist. LEXIS 12301 (S.D.N.Y. 1992) ..................................................23

*Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,*
    230 F.3d 934 (7th Cir. 2000) ..........................................................................17

*Chan v. Soc'y Expeditions, Inc.,*
    39 F.3d 1398 (9th Cir. 1994) .....................................................................18, 19

*Cheng v. Boeing Co.,*
    708 F.2d 1406 (9th Cir. 1983) ...................................................................5, 10

*Chirila v. Conforte,*
    47 Fed. Appx. 838 (9th Cir. 2002) ...................................................................21

*Colorado Rivers Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ...........................................................................................5

*Conley v. Gibson,*
    355 U.S. 41 (1957) ......................................................................................26, 34

*Consol. Gold Fields PLC v. Minorco, S.A.,*
    871 F.2d 252 (2d Cir. 1989) ......................................................................23, 25

*Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.,*
    592 F.2d 409 (8th Cir. 1979) ..........................................................................22

*Crowe v. Henry,*
    43 F.3d 198 (5th Cir. 1995) .............................................................................35

*Data Disc Inc. v. Sys. Tech. Assoc.,*
    557 F.2d 1280 (9th Cir. 1977) ........................................................................15

*DeMauro v. DeMauro,*
    115 F.3d 94 (1st Cir. 1997) .............................................................................28

*Doe v. Unocal Corp.,*
    248 F.3d 915 (9th Cir. 2001) ........................................................16, 17, 18, 19

*Dole Food Co., v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) .....................................................................5, 13

*Flag Co. v. Maynard,*
    376 F. Supp. 2d 849 (N.D. Ill. 2005) ..............................................................17

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

**TABLE OF AUTHORITIES**
(continued)

Page

*Fleet Nat'l Bank v. Boyle*,
    Docket No. 04-CV-1277-LDD, 2005 U.S. Dist. LEXIS 44036 (E.D. Pa. Sept. 12,
    2005) ............................................................................................................................ 32

*General Environmental Science Corp. v. Horsfall*,
    753 F. Supp. 664 (N.D. Ohio 1990) ...................................................................... 13-14

*Go-Video, Inc. v. Akai Electric Co., Ltd.*,
    885 F.2d 1406 (9th Cir. 1989) ............................................................................... 15, 17

*Grimmett v. Brown*,
    75 F.3d 506 (9th Cir. 1995) ........................................................................................ 26

*Guidi v. Inter-Continental Hotels*,
    224 F.3d 142 (2d Cir. 2000) ....................................................................................... 14

*Gulf Oil Corp. v. Gilbert*,
    330 U.S. 501 (1947) ...................................................................................... 7, 9, 10, 13

*Hagans v. Lavine*,
    415 U.S. 528 ........................................................................................................ 21, 25

*Harris Rutsky & Co. Ins. Svcs. Inc. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) .................................................................................. 9, 19

*H. J. Inc. v. Northwestern Bell*,
    492 U. S. 229 ............................................................................................................... 30

*Holmes v. Securities Investor Protection Corp*,
    503 U.S. 258 (1992) .................................................................................................... 27

*Howard v. America Online*,
    208 F.3d 741 (9th Cir. 2000) ..................................................................................... 21

*Ikuno v. Yip*,
    912 F.2d 306 (9th Cir. 1990) ..................................................................................... 29

*Imagineering, Inc. v. Kiewit Pac. Co.*,
    976 F.2d 1303 (9th Cir. 1992) ................................................................................... 28

*Iragorri v. United Tech. Corp.*,
    274 F.3d 65 (2d Cir. 2001) ....................................................................................... 5, 7

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

**TABLE OF AUTHORITIES**
(continued)

Page

*Jason v. Unite Here,*
2005 U.S. Dist. LEXIS 35982 (W.D. Wash. Dec. 2, 2005) ........................................ 19

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,*
98 F. Supp. 2d 480 (S.D.N.Y. 2000) ......................................................................... 22

*Krish v. Balasubramaniam,*
2007 U.S. Dist. LEXIS 33859 (E. D. Ca. Apr. 25, 2007) ................................... 5, 13

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,*
26 F. Supp. 2d 593 (S.D.N.Y. 1998) ......................................................................... 17

*Lehman v. Humphrey Cayman, Ltd.,*
713 F.2d 339 (8th Cir.1983), *cert. denied*, 464 U.S. 1042 (1984) ........................ 11

*Lexington Ins. Co. v. Forrest,*
263 F. Supp. 2d 986 (E.D. Pa. 2003)......................................................................... 13

*Lincoln House, Inc. v. Dulpre,*
903 F.2d 845 (1st Cir. 1990).................................................................................... 26

*In re Livent, Inc. Sec. Litig.,*
78 F. Supp. 2d 194 (S.D.N.Y. 1999) ........................................................................... 9

*Lolavar v. de Santibanes,*
430 F.3d 221 (4th Cir. 2005) ................................................................................... 21

*Lony v. E.I. DuPont de Nemours & Co.,*
935 F.2d 604 (3d Cir. 1991) ....................................................................................... 7

*Lueck v. Sundstrand Corp.,*
236 F.3d 1137 (9th Cir. 2001) ...................................................................... 10, 13, 14

*M2 Software Inc. v. M2 Commc'ns, L.L.C.,*
149 Fed. Appx. 612 (9th Cir. 2005) ........................................................................ 20

*Manu, Int'l S.A., v. Avon Prods.,*
641 F.2d 62 (2d Cir. 1981) ............................................................................. 6, 9, 19

*Medesto City Schools v. Riso Kagaku Corp.,*
157 F. Supp. 2d 1228 (E.D. Cal.) ............................................................................ 19

*Mendoza v. Zirkle Fruit Co.,*
301 F.3d 1163 (9th Cir. 2002) ................................................................................. 27

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

TABLE OF AUTHORITIES
(continued)

**Page**

*Metropolitan Life Ins. Co. v. Neaves,*
   912 F.2d 1062 (9th Cir. 1990) ........................................................................15

*Mujica v. Occidental Petroleum Corp.,*
   381 F. Supp. 2d 1134 (C.D. Cal. 2005) ...........................................................5

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.,*
   86 F. Supp. 2d 137 (E.D.N.Y. 2000) .............................................................17

*Neo Sack, Ltd. v. Vinmar Impex, Inc.,*
   810 F. Supp. 829 (S.D. Tex. 1993) ................................................................13

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,*
   925 F.2d 1193 (9th Cir. 1991) ..........................................................................5

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
   416 F.3d 146 (2d Cir. 2005) .............................................................................6

*Odem v. Microsoft Corp.,*
   486 F.3d 541 (9th Cir. 2007) ..........................................................................35

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n,*
   298 F.3d 768 (9th Cir 2002) ..........................................................................27

*Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt,*
   684 F.2d 232 (2d Cir. 1982) ...........................................................................12

*Peloza v. Capistrano Unified School Dist.,*
   37 F.3d 517 (9th Cir. 1994), *cert. denied*, 515 U.S. 1173 (1995) ..........................26

*Peregrine Myanmar v. Segal,*
   89 F.3d 41 (2d Cir. 1996) ...............................................................................14

*Pereira v. United States,*
   347 U.S. 1 (1954) ...........................................................................................31

*In re Phenylpropanolamine Prods. Liability Litig.,*
   344 F. Supp. 2d 686 (W.D. Wash. 2004) ..................................................18, 19

*Piper Aircraft Co. v. Reyno,*
   454 U.S. 235 (1981) ......................................................................6, 10, 14, 15

*Poulos v. Caesars World, Inc.,*

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

TABLE OF AUTHORITIES
(continued)

Page

379 F.3d 654 (9th Cir. 2004) .................................................................21, 22, 23

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.,*
942 F.2d 164 (2d Cir. 1991) ....................................................................... 10

*Rahl v. Bande,*
328 B.R. 387 (S.D.N.Y. 2004) ...................................................................... 6

*Ravelo Monegro v. Rosa,*
211 F.3d 509 (9th Cir. 2000) ...........................................................4, 5, 7, 10

*Reebok Int'l Ltd. v. McLaughlin,*
49 F.3d 1387 (9th Cir. 1995) ..................................................................... 14

*Reid-Walen v. Hansen,*
933 F.2d 1390 (8th Cir. 1991) ................................................................... 10

*Republic of Argentina v. Weltover, Inc.,*
504 U.S. 607 (1992) ................................................................................ 17

*Republic of Philippines v. Marcos,*
818 F.2d 1473 (9th Cir. 1987) .........................................................20, 21, 22, 23

*Republic of Philippines v. Marcos,*
862 F.2d 1355 (9th Cir. 1988), *cert. denied*, 490 U.S. 1035 (1989) ...............24, 29

*Reves v. Ernst & Young,*
507 U.S. 170 (U.S. 1993) .......................................................................... 36

*In Re Royal Ahold N.V. Sec. ERISA Litig.,*
351 F.2d 334 (D.MD. 2004) ...................................................................... 16

*Second Amendment Foundation v. U.S. Conference of Mayors,*
274 F.3d 521 (D.C. Cir. 2001) .................................................................... 21

*Securities Inv. Prot. Corp. v. Vigman,*
764 F.2d 1309 (9th Cir. 1985) ................................................................ 16-17

*Sedima v.Imerx, Co.,*
473 U.S. 479 1965 ..............................................................................29, 35

*Shalit v. Coppe,*
182 F.3d 1124 (9th Cir. 1999) .................................................................... 14

OPPOSITION TO MOTION TO DISMISS - vi
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

TABLE OF AUTHORITIES
(continued)

Page

*Sher v. Johnson,*
911 F.2d 1357 (9th Cir. 1990) ........................................................................15

*Silver Valley Partners v. Demotte,*
400 F. Supp 2d 1262 (W. D. Wash. 2005) ......................................................21

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
127 S. Ct. 1194 (2007).................................................................................5, 14

*Sonneberg v. United States,*
Docket No. 01-2067, 2003 U.S. App. LEXIS 6503 (3d Cir. Apr. 4, 2003) ...........30

*Stauffacher v. Bennett,*
969 F.2d 455 (7th Cir. 1992) ..........................................................................20

*Sun Savings and Loan Assoc. v. Dierdorff,*
825 F.2d 187 (9th Cir. 1987) ..........................................................................30

*Supermicro Computer, Inc. v. Digitechnic, S.A.,*
145 F. Supp. 2d 1147 (N.D. Cal. 2001)............................................................5

*Swierkiewicz v. Sorema,*
534 U.S. 506 2002 ...........................................................................................28

*Textor v. Bd. of Regents of Northern Illinois Univ.,*
711 F.2d 1387 (7th Cir. 1983) ...................................................................20, 21

*Thai Airways Int'l LTD v. United Aviation Leasing B.V.,*
842 F. Supp. 1567 (S.D.N.Y. 1994) *aff'd* 59 F.3d 20 (2d Cir. 1995).....................23

*Thompson v. Davis,*
295 F.3d 890 (9th Cir. 2002) ..........................................................................26

*Tonnemacher v. Sasak,*
859 F. Supp. 1273 (D. Ariz. 1995) ..................................................................36

*Tuazon v. RJ. Reynolds Tobacco Co.,*
433 F.3d  at 1163 (9th Cir. 2006) ....................................................8, 11, 13, 14

*Underwager v. Channel 9 Australia,*
69 F.3d 361 (9th Cir. 1995) ............................................................................21

*In re Union Carbide Corp. Gas Plant Disaster,*
634 F. Supp. 842 (S.D.N.Y. 1986) ..................................................................15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

TABLE OF AUTHORITIES
(continued)

Page

*United States v. Brooklier,*
   685 F.2d 1208 (9th Cir. 1982), *cert. denied*, 459 U.S. 1206, 75 L. Ed. 2d 439, 103 S.
   Ct. 1194, 103 S. Ct. 1195 (1983)........................................................................36

*United States v. City of Redwood City,*
   640 F.2d 963 (9th Cir. 1981)...............................................................................26

*United States v. Colton,*
   231 F.3d 890 (4th Cir. 2000)...............................................................................30

*United States v. Conte,*
   349 F.2d 304 (6th Cir. 1965)...............................................................................31

*United States v. Ebersole,*
   411 F.3d 517 (4th Cir. 2005)...............................................................................22

*United States v. Ervasti,*
   201 F.3d 1029 (8th Cir. 2000).............................................................................24

*United States v. Halbert,*
   640 F.2d 1000 (9th Cir. 1981).............................................................................33

*United States v. Keplinger,*
   776 F.2d 678 (7th Cir. 1985)...............................................................................30

*United States v. Philip Morris USA, Inc.,*
   449 F. Supp. 2d 1 (D.D.C. 2006)........................................................................25

*United States v. Rybicki,*
   354 F.3d 124 (2d Cir. 2003) ...............................................................................24

*United States v. Williams,*
   441 F.3d 716 (9th Cir. 2006)...............................................................................24

*United States v. Wood,*
   335 F.3d 993 (9th Cir. 2003)...............................................................................33

*Universe Sales Co. v. Silver Castle, Ltd.,*
   182 F.3d 1036 (9th Cir. 1999).............................................................................14

*Wiwa v. Royal Dutch Petroleum Co.,*
   226 F.3d 88 (2d Cir. 2000) ...........................................................................8, 15

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

TABLE OF AUTHORITIES
(continued)

Page

**STATE CASES**

*Astor Holdings, Inc. v. Roski,*
  No. 01 Civ. 1905 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002)................................12

*Grow Group, Inc. v. Jandernoa,*
  1996 WL 31848 (S.D. N.Y. 1996) ......................................................................16

**FEDERAL STATUTES**

18 U.S.C. 1343 ......................................................................................................29

18 U.S.C. § 1964(c)...............................................................................................30

18 U.S.C. § 1965(b)...........................................................................................16-17

Fed. R. Civ. P. 44.1...............................................................................................14

Fed. R. Civ. P. 4(2)(K) .........................................................................................17

**MISCELLANEOUS**

2 *Business Transactions in Germany* § 22.02 (Bernd Ruster et al. eds., 2006) ..........................18

RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED
  STATES § 402(1)(a) ............................................................................................23

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1
## INTRODUCTION

2     Vivendi S.A. invested $2.5 billion to acquire a controlling interest in Polska Telefonia

3   Cyfrowa Sp. z o.o. ("PTC").  Deutsche Telekom AG ("DT"), T-Mobile USA, Inc., T-Mobile

4   International AG, and T-Mobile Deutschland GmbH (collectively, "T-Mobile") conspired with

5   Zygmunt Solorz-Zak ("Solorz") to seize from Plaintiff 48% of PTC's shares (the "PTC Shares")

6   through a pattern of racketeering, including U.S. wire fraud.  Time and again, Vivendi S.A.

7   ("Vivendi") has obtained injunctions and orders from three different countries that should have

8   protected it, but T-Mobile has simply disregarded them.

9     Contrary to T-Mobile's assertion, no court or arbitral order exists directing Vivendi to

10  give up the PTC Shares, and even now the official Polish share registry refuses to recognize

11  T-Mobile as PTC's owner even though T-Mobile continues to control the company.  Plaintiff has

12  not lost abroad.  Rather, T-Mobile has taken control of the PTC Shares in defiance of injunctions

13  and arbitral orders.

14    This is why Plaintiff has come to this Court, in the hometown of T-Mobile USA, Inc.

15  ("T-Mobile USA"), the chief beneficiary of Defendants' conspiracy and the centerpiece of the

16  T-Mobile Global Wireless Network Enterprise that Defendants corruptly operate.  Here, Plaintiff

17  can get a full hearing, with all the involved parties, with proper discovery, and with an ability to

18  enforce its judgment -- all under a statute that squarely addresses all the aspects of Defendants'

19  complex, multi-year racketeering.  Indeed, this is the *only* case relating to the PTC Shares that

20  fully and completely addresses all the issues surrounding Defendants' racketeering.

21    As much as T-Mobile tries to restate and improperly contest Plaintiff's specific factual

22  allegations, T-Mobile's arguments cannot change the core fact that Defendants seized control of

23  PTC from Vivendi without paying Vivendi any compensation.  Equally important, T-Mobile

24  cannot avoid the following stubborn facts that establish jurisdiction and venue:

25    •   T-Mobile used U.S. wires to deceive Plaintiff as a necessary part of the theft
26        (Second Amended Complaint (the "Complaint" or "SAC") ¶¶ 8, 50-51, 81);

27

OPPOSITION TO MOTION TO DISMISS - 1
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

- T-Mobile also used U.S. wires to deceive U.S. bondholders as a necessary part of the theft (SAC ¶ 17, 99);

- T-Mobile USA officers and directors participated in the conspiracy (SAC ¶ 23);[1]

- T-Mobile USA benefited from the theft by integrating its network with the PTC network and by using the proceeds of the racketeering to put itself in a position to acquire U.S. spectrum (SAC ¶ 23); and

- T-Mobile's racketeering and related misconduct have had significant commercial effects in the United States, harming U.S. bondholders, depriving U.S. consumers of honest services, and charging U.S. consumers who place calls to Poland over the T-Mobile network higher prices than they otherwise would pay (SAC ¶ 4; Declaration of Richard Torres ¶ 17).

Given the foregoing, this Court has jurisdiction, and this District is a proper venue for hearing Plaintiff's claims.

T-Mobile submits a Declaration from Brian Kirkpatrick, asserting that T-Mobile USA has had no role in the conspiracy, but this declaration is noticeably deficient. Specifically, it comes from T-Mobile USA's current CFO, who is not alleged to have participated in the scheme on T-Mobile USA's behalf, and it is expressly limited (in relevant part) to Mr. Kirkpatrick's "knowledge." Significantly, T-Mobile does not submit a declaration from any of the T-Mobile USA officers or directors who the Complaint alleges participated in the theft – e.g., Robert Dotson, Kai Uwe-Ricke, or Rene Obermann. The silence of Mssrs. Dotson, Uwe-Ricke, and Obermann says much more than the conclusory assertions in Mr. Kirkpatrick's Declaration, which even fails to dispute that the T-Mobile Defendants conspired with Solorz.

## FACTS

Starting in 1999, over time Vivendi invested $2.5 billion to indirectly acquire the PTC Shares through Elektrim Telkomunikacja Sp. z o.o ("Telco"), a joint venture company that Vivendi formed with Elektrim S.A. ("Elektrim"). (SAC ¶ 36)  By 2003, four years after Vivendi first invested in PTC and began acquiring the shares that T-Mobile coveted, T-Mobile had already lost one arbitration against Elektrim (the "First Vienna Arbitration") in an effort to

---

[1] With the Court's permission, Vivendi served document requests seeking documents relating to this issue. T-Mobile objected to fully complying with the document request. A motion to compel is now before the Court.

1  gain control of PTC, and was in the midst of losing another arbitration against Telco (the

2  "Second Vienna Arbitration"). (SAC ¶¶ 46, 47)   T-Mobile's prospects brightened, however,

3  when Defendant Solorz gained control of Elektrim and began operating it corruptly. (SAC ¶¶

4  46, 47) T-Mobile, already committed to acquiring PTC using any means,[2] found a willing

5  partner in Solorz, and the two agreed on a plan whereby (i) T-Mobile would take over PTC, (ii)

6  Solorz (through Elektrim) would be unjustly enriched by being paid twice for the PTC Shares

7  that properly belonged to Vivendi (first by Vivendi and then by T-Mobile), and (iii) Solorz

8  would be helped to launch his own wireless phone company (not PTC) that would be integrated

9  into the T-Mobile global network, solidifying the then-nascent T-Mobile Global Wireless

10  Network Enterprise. (SAC ¶ 47)

11        In pursuing Defendants' conspiracy, T-Mobile has committed a pattern of predicate acts

12  in the United States that has thus far spanned four years:

13    (1)    In 2004, T-Mobile used U.S. wires to mislead Vivendi into believing that
              T-Mobile was actually negotiating over the PTC Shares when, in fact, it was
14            merely pretending to do so, causing Vivendi not to take actions that would have
              prevented the theft. (SAC ¶¶ 8, 50-51);
15
16    (2)    On March 7, 2006, DT's then-CEO and Deputy CEO made false and misleading
              statements over U.S. wires to Vivendi's CEO in order to disguise the T-Mobile
              Global Wireless Network Enterprise during negotiations, again causing Vivendi
17            not to take actions that would have prevented the theft. (SAC ¶ 81);

18    (3)    On September 5, 2006, DT issued a materially misleading press release, the
              substance of which was carried over U.S. wires and upon which U.S. bondholders
19            of Elektrim relied in supporting withdrawal of an Elektrim bankruptcy
              proceeding. (SAC ¶ 99) This had the intended effect of removing the last
20            impediment to Defendants' theft of the PTC Shares. (Decl. of Torres ¶ 17);

21    (4)    On October 4, 2006, DT issued another press release falsely stating that "the
              Arbitral Tribunal in Vienna conferred the ownership title to the disputable 48% of
22            the shares in PTC to Deutsche Telecom [sic]." (SAC ¶ 111). The substance of
              this release was carried on U.S. wires, which U.S. bondholders also relied on to
23            their detriment. (Decl. of Torres ¶ 11); and

24
25    (5)    On January 28, 2007, DT issued a press release announcing the incorporation of
              PTC's assets into DT's consolidated earnings. (SAC ¶122) This consolidation

26  ─────────────────────
    [2] T-Mobile misrepresented its stock holding at the First Vienna Arbitration, a falsehood eventually uncovered by the
27  arbitrators. (SAC ¶¶ 39, 41)

OPPOSITION TO MOTION TO DISMISS - 3
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1  was part of the corrupt operation of the T-Mobile Global Wireless Network
   Enterprise, and further misled regulators and investors that T-Mobile is PTC's
2  lawful owner, further precluding them from taking appropriate regulatory and
   corporate governance action.

3       In addition to their U.S. racketeering, Defendants also violated numerous court and

4  arbitral orders when they stole the PTC Shares and seized control of PTC using brute force.

5  (SAC ¶ 69)  Specifically, Defendants defied the following rulings:

6       (1)    The Second Vienna Arbitration Award, which held that the panel had no
7              jurisdiction over Telco (SAC ¶ 57);

8       (2)    A December 30, 2004 injunction from the Warsaw Regional Court (SAC ¶ 62);

9       (3)    A June 27, 2006 Warsaw District Court order (SAC ¶ 92);

10      (4)    A July 18, 2006 Bailiff Court of the District Court of Poland order (SAC ¶ 94);

11      (5)    An August 2, 2006 London Court of International Arbitration order (SAC ¶ 95);

12      (6)    The June 6, 2006 Third Vienna Arbitration panel's First Partial Award
               (SAC ¶¶ 87-88);
13
        (7)    The October 2, 2006 Third Vienna Arbitration panel's Second Partial Award
14             (SAC ¶ 110);

15      (8)    A December 18, 2006 Austrian Supreme Court order (SAC ¶118); and, finally,

16      (9)    A January 18, 2007 Polish Supreme Court decision (SAC ¶118).

17      Furthermore, as the Complaint alleges, Defendants committed other acts of misconduct

18 crucial to their plan.  For example, as part of his conspiracy with T-Mobile, Solorz has stripped

19 Elektrim's assets, thereby reducing its value and making it effectively judgment proof.  (SAC ¶¶

20 73, 74; Decl. of Torres ¶ 6)  As identified below, the Complaint alleges each of these facts with

21 specificity.

22                                    **ARGUMENT**

23 **I.    This Is a Convenient and Appropriate Forum for This Case.**

24      *Forum non conveniens* is an "exceptional tool" that  must be "employed sparingly."

25 *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).  Thus, T-Mobile's motion should be

26 denied unless T-Mobile proves that it would be oppressive and vexatious for it to litigate in the

27 United States. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1410 (9th Cir. 1983).  To prevail, T-Mobile

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1  bears the burden of making "a clear showing of facts . . . which establish such oppression and

2  vexation" that they are "out of proportion to plaintiff's convenience." *Rosa,* 211 F.3d at 514.

3  *See also Dole Food Co., v. Watts,* 303 F.3d 1104, 1118 (9th Cir. 2002); *Krish v.*

4  *Balasubramaniam,* 1:06-CV-01030, 2007 U.S. Dist. Lexis 33859 (E.D. Ca. Apr. 25, 2007).

5  T-Mobile bears a "heavy burden" which it has not satisfied. *Sinochem Int'l Co. v. Malaysia Int'l*

6  *Shipping Corp.,* 127 S. Ct. 1194 (2007). As a preliminary matter, however, T-Mobile has not

7  shown that an adequate alternative forum exists.[3]

8      **A.    T-Mobile Has Failed to Meet Its "Heavy Burden" to Show That an Adequate Alternative Forum Exists.**

9

10       *Forum non conveniens* analysis begins with the essential prerequisite that an adequate

11  alternative forum must exist. *Iragorri v. United Technologies Corp.,* 274 F.3d 65 (2d Cir. 2001).

12  To surmount this hurdle, T-Mobile must show that *all* Defendants, including Solorz and

13  T-Mobile USA, are amenable to jurisdiction elsewhere. "A foreign forum is available only when

14  the entire case and all parties can come within the jurisdiction of that forum." *Dole Food Co.,*

15  303 F.3d at 1118. Here, T-Mobile has failed to make such a showing. In particular, T-Mobile

16  has conspicuously avoided proffering that T-Mobile USA is amenable to the jurisdiction of

17  T-Mobile's alternative fora. T-Mobile has also not shown that Solorz, who was served in this

18  case pursuant to the Hague Convention and whose counsel has now accepted service, would be

19  subject to jurisdiction in any of its proposed fora. (*See* Decl. of Syed ¶ 10)

---

20  [3] T-Mobile urges this Court to apply the doctrine of international abstention. (Def. Mot. at 14, n.8) As T-Mobile's

21  cited cases establish, however, the international-abstention doctrine should only be applied in exceptional circumstances that are not present here. *See Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,* 925 F.2d 1193, 1194-95 (9th Cir. 1991) (finding no exceptional circumstances warranting a refusal of jurisdiction and rejecting the

22  notion that a federal court owes greater deference to foreign courts than to domestic courts); *Mujica v. Occidental Petroleum Corp.,* 381 F. Supp. 2d 1134, 1157 (C.D. Cal. 2005) (upholding jurisdiction despite the existence of a

23  foreign parallel proceeding); *Supermicro Computer, Inc. v. Digitechnic, S.A.,* 145 F. Supp. 2d 1147, 1149 (N.D. Cal. 2001) (determining that international abstention does not apply to the facts at hand). No exceptional circumstances,

24  such as federal legislation evincing a policy to avoid concurrent litigation in Europe and the United States, the potential for inconsistent judgments affecting important real property rights, or a vastly more comprehensive

25  proceeding in another forum, justify invoking the abstention doctrine. *See Colorado Rivers Water Conservation Dist. v. United States,* 424 U.S. 800, 819 (1976); *see also Neuchatel,* 925 F.2d at 1195. In addition, abstention is

26  inappropriate because this action represents the only time Vivendi has been able to assert claims in a single proceeding against the German T-Mobile Defendants, T-Mobile USA, and Solorz; thus, this court is uniquely

27  positioned to conclusively and comprehensively adjudge the merits of Vivendi's claims against all Defendants. *See Mujica,* 381 F. Supp. 2d at 1158.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   In addition, as the attached Declarations of Judge Kodek, Prof. Jelinek, Woijciech

2   Kozlowski, and Christof Siefard demonstrate, the alternative fora proposed by Defendants do not

3   have a statute comparable to RICO.  Moreover, the general tort law of the European countries, as

4   well as the limited discovery, is ill-suited for complex conspiracy cases.  Due to the complex

5   nature and international scope of Defendants' conspiracy to wrest control of PTC from Vivendi

6   through a pattern of racketeering activity, Vivendi has been unable to assert a claim against all

7   co-conspirators in a single European forum at the same time. (Decl. of Syed ¶ 5)  Instead,

8   Vivendi has been forced to seek relief before European courts and arbitral tribunals through a

9   series of fragmented, piecemeal claims brought against discrete defendants related to discrete

10  aspects of T-Mobile's overall conspiracy. (*Id.*)  This is the only case relating to the PTC Shares

11  that brings all of the Defendants together in a single action that encompasses all aspects of

12  Defendants' conspiracy.[4] (*Id.* ¶ 6)

13      **B.    Plaintiff's Choice of Forum Is Entitled to Deference.**

14      When evaluating whether litigating in a forum would be oppressive or vexatious, the

15  *forum non conveniens* inquiry starts with a strong presumption in favor of the plaintiff's choice

16  of forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981); *See also Norex Petroleum*

17  *Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 154 (2d Cir. 2005) (vacating dismissal where district

18  court failed to afford proper deference to foreign plaintiff's choice of forum). *See Manu Int'l*

19  *S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981) ("[e]mphasis on the district court's

20  discretion . . . must not overshadow the central principle of the *Gilbert* doctrine that 'unless the

21  balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be

22  disturbed.'")

23      Vivendi's choice of this forum is entitled to deference even though it is a French

24  corporation because it chose this forum for convenience.[5]  "[S]ubstantial deference" applies

25  _____

26  [4] To be sure, Elektrim is not a party to this action, but Solorz is, and Solorz is the individual who controlled and corrupted Elektrim.  (SAC ¶¶46, 47)
    [5] If Vivendi's motion to file the Third Amended Complaint is granted, there would be a United States plaintiff.

27  Vivendi Holding I Corp. is a U.S. corporation as is its assignor, General Motors Corp. ("GM") (Third Amended
                                                                                              (continued...)

OPPOSITION TO MOTION TO DISMISS - 6
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   notwithstanding a plaintiff's foreign nationality when, as now, the choice of forum is based on

2   considerations of convenience (e.g., the location of T-Mobile USA, Vivendi's significant U.S.

3   presence (*see* SAC ¶ 20), and the ability to enforce a judgment).  *See Lony v. E.I. DuPont de*

4   *Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) (in cases involving foreign plaintiffs,

5   defendants must still establish a "strong preponderance" in favor of dismissal for *forum non*

6   *conveniens*).  *Iragorri, supra* (applying a sliding-scale analysis to determine the degree of

7   deference to a foreign plaintiff's choice).  "The greater the plaintiff's or the lawsuit's bona fide

8   connection to the United States and to the forum of choice and the more it appears that a

9   domestic *or foreign* plaintiff's choice of forum has been dictated by reasons that the law

10  recognizes as valid, the greater the deference will be given to the plaintiff's forum choice."

11  *Iragorri,* 274 F.3d at 71-72 (emphasis added).[6]

12          This forum is convenient for Plaintiff, and this lawsuit has a bona-fide connection with

13  the United States and this District, for several reasons.  First, it is T-Mobile USA's home and, as

14  the Ninth Circuit noted in *Rosa*, a defendant's home forum is the "quintessentially convenient

15  forum."[7]  *Rosa*, 211 F.3d at 514.  *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 510 (1947)

16  (referring to party who objected to suit in his home community as making a "strange argument");

17  *Lony*, 935 F.2d at 609 (situation is "puzzling" when a local defendant seeks to move to a

18  different forum).  Second, Vivendi has offices in the United States, and it has thousands of U.S.

19  employees.  (SAC ¶ 20).  And, third, Plaintiff is confident that it could enforce a judgment here.

20          Of great importance, a foreign plaintiff is entitled to deference simply if the forum is

21  convenient, even if it is not the most convenient.  As the court in *Tuazon v. R.J. Reynolds*

22  *Tobacco Co.* stated, "[a] plaintiff need not select the optimal forum, but only a forum that is not

23

24  _____

25  (...continued)
    Complaint ¶¶ 17 ,20)  "It is well-settled that an assignee such as plaintiff stands in the shoes of its assignor." *Rahl v.*
    *Bande,* 328 B.R. 387, 404 (S.D.N.Y. 2004).

26  [6] T-Mobile misleadingly cites only half of the *Iragorri* sliding-scale analysis. (Mot. to Dismiss at 8).
    [7] Contrary to T-Mobile's assertions, "it is not a correct understanding of the rule to accord deference only when the

27  suit is brought in the plaintiff's home district." *Iragorri,* 274 F.3d at 73.

1  so oppressive and vexatious to the defendant 'as to be out of proportion to plaintiff's

2  convenience.'" 433 F.3d 1163, 1180 (9th Cir. 2006) (citing *Rosa*, 211 F.3d at 514).

3      Finally, "even where the degree of deference is reduced, 'the action should be dismissed

4  only if the chosen forum is shown to be *genuinely inconvenient* and the selected forum

5  *significantly preferable.*'" *Bigio v. Coca-Cola* Co., 448 F.3d 176, 179 (2d Cir. 2006) (quoting

6  *Iragorri*, 274 F.3d at 74-75) (finding that foreign plaintiff had "legitimate and substantial

7  reasons" for choosing U.S. forum after efforts to seek relief in foreign forum failed). Here,

8  Defendants have not, and cannot, make such a showing.

9  **C.    T-Mobile Has Not Met its Burden of Showing that Litigating in This District
       Would Be Oppressive or Vexatious**

10     Even if T-Mobile could show that there was an adequate alternative forum and even if no

11  deference were given to Vivendi's choice of forum, T-Mobile's motion to dismiss must still be

12  denied because T-Mobile has not and cannot establish that trying this case in Seattle would be

13  oppressive or vexatious. T-Mobile's substantial resources, its business in the United States, its

14  officers and directors' frequent business travel (including to the United States), the marginal

15  difference in travel time and expense between coming to Seattle and going to other potential

16  jurisdictions, and the nature of present-day discovery all doom T-Mobile's motion.

17     First, the T-Mobile Defendants have tremendous resources and invest substantially in this

18  District and elsewhere in the United States. (SAC ¶¶ 21-22, 24; Decl. of Syed ¶ 19). *See Wiwa v.*

19  *Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000) (although disputed events did not

20  occur in the forum state, defendant foreign corporations would not be subject to great

21  inconvenience in litigating there given the defendants' wealth and far-flung business empire).

22     Second, this District is the home of T-Mobile USA – DT's financial engine, the

23  centerpiece of the international wireless network of which PTC is now a part, and a participant in

24  the racketeering conspiracy. (SAC ¶ 23) Moreover, DT's American Depository Receipt shares

25  trade on the New York Stock Exchange. (SAC ¶ 21)

26

27

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

Third, executives of the German T-Mobile Defendants travel to this District and other parts of the United States, and there would be only a marginal difference in traveling to this District versus another potential forum for this case. Discovery would certainly uncover many trips to the United States and other countries by T-Mobile's officers and directors, and T-Mobile has not submitted any declaration to the contrary. *See* Decl. of Syed ¶20 (as to travel of T-Mobile officers and directors); *see also* SAC ¶ 51.

Fourth, "[m]odern advances in communications and transportation," such as electronic communications and low international airfares, have "significantly reduced the burden of litigating in another country." *Harris Rutsky & Co. Ins. Svcs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1132-33 (9th Cir. 2003) (observing that litigating in California posed only a limited burden to a London-based company when its employees traveled there regularly for business); *see also Ballard v. Savage*, 65 F.3d 1495, 1501 (9th Cir. 1995) ("the advent of 'modern transportation' certainly has made the burden of defending in a foreign forum more palatable"). As the Second Circuit has noted, "there has been much recent sentiment in this Circuit for evaluating the *forum non conveniens* factors in light of the increased speed and ease of travel and communication." *Manu, Int'l S.A., v. Avon Prods.* 641 F.2d 62, 65 (2d Cir. 1981) (transportation of witnesses from Taiwan to New York was not unacceptable inconvenience).

Fifth, in an era of DHL, FedEx, electronic discovery, and documents delivered on discs, T-Mobile fails to explain how trying a case in this District will be oppressive. "[D]ocuments can be scanned and placed on a secure website for viewing by counsel for the parties and by the court," making the location of documentary evidence "far less important than it might have been in the past." *In re Livent, Inc. Sec. Litig.*, 78 F. Supp. 2d 194, 211 (S.D.N.Y. 1999). Indeed, T-Mobile has already delivered some discovery on discs in this case.

Sixth, some of the parties will have to travel outside their home countries regardless of where this case is tried, as will the material witnesses from six different countries. This is a wholly international case with international effects. It is not confined to any single country. While the flight-time between Germany and Poland, France, or England might be a few hours

1  less than the flight-time between Germany and the United States, the difference is certainly not

2  sufficient to render travel to the United States "oppressive or vexatious."

3      **D.**    **The Private and Public Factors Do Not Tilt Strongly in Favor of a Foreign**

4            **Forum.**

        The Supreme Court in *Gilbert* set forth private and public interest factors that courts

5  should assess in considering *forum non conveniens* motions. These factors must "tilt strongly" in

6  favor of a foreign forum in order for a motion to be granted. *R. Maganlal & Co. v. M.G. Chem.*

7  *Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991) (citing *Gilbert*, 330 U.S. at 508.) While T-Mobile

8  goes to great pains to restate the facts and impermissibly draw all inferences in its favor, these

9  factors do *not* tilt strongly in favor of a foreign forum. But even if they did, this Court would

10  still have discretion to keep the case. *Piper Aircraft Co.*, 454 U.S. at 257. (Ultimately, "[t]he

11  forum non conveniens determination is committed to the sound discretion of the trial court.")

12  The overall standard is whether litigating in this District is oppressive or vexatious, and these

13  factors are merely data points available to help this Court exercise its discretion. *Cheng*, 708

14  F.2d at 1411; *Rosa*, 211 F.3d at 514.

15      **1.**    **The Private Interest Factors Do Not Tilt Strongly in Favor of a**

16            **Foreign Forum.**

17          The "private interest" factors are: "(1) the residence of the parties and witnesses, (2) the

18  forum's convenience to the litigants, (3) access to physical evidence and other sources of proof,

19  (4) whether unwilling witnesses can be compelled to testify, (5) the cost of bringing witnesses to

20  trial, (6) the enforceability of the judgment, and (7) 'all other practical problems that make trial

21  of a case easy, expeditious and inexpensive." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145

22  (9th Cir. 2001)

23          In applying these factors, courts must, as discussed above, consider changes in

24  transportation and technology that have significantly reduced the burden on a party of trying a

25  case outside of one's own country. *See Anglo American Ins. Group v. Calfed Inc.*, 940 F. Supp.

26  554, 564 (S.D.N.Y. 1996) (finding that the "development of worldwide travel … means that

27  mere distance alone is not a sufficient basis on which to conclude that a forum is inconvenient");

1  *Reid-Walen v. Hansen*, 933 F.2d 1390, 1396 (8th Cir. 1991); *Lehman v. Humphrey Cayman,*

2  *Ltd.*, 713 F.2d 339 (8th Cir.1983), *cert. denied*, 464 U.S. 1042 (1984); ("[T]he time and expense

3  of obtaining the presence or testimony of foreign witnesses is greatly reduced by commonplace

4  modes of communication and travel."); *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 782 F. Supp.

5  215, 225 (S.D.N.Y. 1992), *aff'd*, 994 F.2d 996 (2d. Cir. 1993) ("[I]n light of the advances in

6  transportation and communication since 1947, the year Gulf Oil was decided, [the ease of access

7  to sources of proof] will be accorded less weight in this Court's calculus.").

8       Here, the first factor – the residence of parties and witnesses -- favors this District.

9  T-Mobile USA is a resident of this District. In comparison, only one party resides in Poland,

10  only one resides in France, and only the German T-Mobile Defendants reside in Germany.

11  While there may well be more witnesses outside the United States than within, the material

12  foreign witnesses are spread across six different countries, necessitating witness travel no matter

13  what the forum. Moreover, there will be at least two material witnesses from this jurisdiction

14  (Robert Dotson and Sue Swenson) and several more, such as Richard Torres, from other parts of

15  the United States.[8]

16       T-Mobile has also failed to meet its burden with respect to the second and third factors –

17  convenience to litigants and access to proof. As the Ninth Circuit stated in "[a]ny court, whether

18  in the United States or in the [the alternative European fora], will necessarily face some difficulty

19  in securing evidence from abroad." *Tuazon*, 433 F.3d at 1182. But, for the reasons explained

20  above, that difficulty is neither oppressive nor vexatious in this case. *See Astor Holdings, Inc. v.*

21  *Roski*, 2002 WL 72936, at *12 (S.D.N.Y. Jan. 17, 2002) (the location of records is "not a

22  compelling consideration when records are easily portable").

23       T-Mobile similarly fails to meet its burden with respect to the fourth and fifth factors –

24  the ability to compel testimony and the cost of bringing witnesses to trial. The testimony of

25

26  [8] T-Mobile's Motion to Dismiss references Plaintiff's initial disclosures to argue that there are no U.S. witnesses to
the racketeering conduct. Plaintiff intends to amend such disclosures as it is clear that T-Mobile USA officers and
27  directors would have substantial knowledge of Defendants' racketeering and conspiracy.

OPPOSITION TO MOTION TO DISMISS - 11
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1  foreign witnesses can readily be secured in this District. Poland, France, Germany, the United

2  Kingdom, and Austria are all signatories to the Hague Convention, facilitating efficient

3  discovery. Moreover, "to the extent there are witnesses abroad who are beyond the court's

4  subpoena power, their testimony can be provided by depositions taken pursuant to letters

5  rogatory." *Bigio*, 448 F.3d at 179; *See also Overseas Programming Cos., Ltd. v.*

6  *Cinematographische Commerz-Anstalt*, 684 F.2d 232, 235 (2d Cir. 1982) (availability of letters

7  rogatory is relevant in deciding whether choice of forum is inconvenient). Further, the cost of

8  traveling to the United States is not materially more than traveling to one of the other

9  jurisdictions given the parties' substantial resources.

10       The sixth factor -- enforceability of the judgment -- favors the United States. While there

11  is no doubt that Plaintiff could enforce a judgment against T-Mobile in this District, there is

12  considerable doubt about Vivendi's ability to enforce foreign orders courts as evidenced by

13  T-Mobile's flagrant disregard of Polish injunctions and of Austrian and U.K. arbitral orders.

14       Finally, T-Mobile does not meet the seventh factor's burden. There is no practical

15  problem with trying the case in this District. T-Mobile claims that "the cost of translating and

16  bringing documents and witnesses to Seattle would far outweigh the cost of litigating this dispute

17  in one of the alternative European fora," but fails to explain why this is so. (Mot. to Dismiss

18  at 11) Were this case in Poland, for example, French, German, and English documents would

19  have to be translated into Polish, and so on for every jurisdiction T-Mobile proposes.

20  Furthermore, any such costs are insignificant relative to T-Mobile's resources.

21       In sum, T-Mobile has failed to establish that the private interest factors "tilt strongly"

22  toward a foreign forum. This is so, in significant part, because every argument that T-Mobile

23  makes regarding the inconvenience of trying this case in Seattle applies equally to every

24  alternative fora proposed by T-Mobile.

25

26

27

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

### 2. The Public Interest Factors Do Not Tilt Strongly in Favor of a Foreign Forum.

The public interest factors are "(1) the local interest of lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck,* [236 F.3d at 1147] (quoting *Gilbert,* 330 U.S. at 508-09.

With respect to the first factor, "we ask *only* if there is a local interest in the controversy, *not whether another forum also has an interest.*" *Tuazon,* 433 F.3d at 1182 (emphasis added) (rejecting *forum non conveniens* argument notwithstanding the Philippines' interest in the case). *See also Krish,* 2007 U.S. Dist. LEXIS 33859, at 24-27 (rejecting *forum non conveniens* motion notwithstanding India's strong interest, and forgoing balancing of fora's comparative interests).

This District has a strong local interest because, among other factors, (i) T-Mobile used U.S. wires to deceive Plaintiff and U.S. bondholders as a necessary part of the theft (SAC ¶¶ 55-56, 80-86), (ii) T-Mobile USA benefited from the theft by integrating its network with the PTC network and by using the proceeds of the racketeering to put itself in a position to acquire U.S. spectrum (SAC ¶¶ 23, 98, 120), (iii) T-Mobile USA's officers and directors are alleged to have participated in the conspiracy, (iv) DT relies on the U.S. financial markets to raise capital, such as trading on the New York Stock Exchange, (v) Vivendi employs thousands of U.S. citizens in the United States, and (vi) T-Mobile's racketeering and related misconduct have had significant commercial effects in the United States.[9] (SAC ¶¶ 4, 13-14) *See Dole Food Co., Inc.* 303 F.3d at 1119 (noting California's strong interest in the lawsuit because one of the parties was a California-based corporation).

The second factor – governing law -- also favors this forum because RICO is a federal statute construed in accordance with U.S. law. "Public interest ordinarily favors the enforcement of the federal law, such as the RICO statutes, in the United States courts." *Gen. Envtl. Sci. Corp.*

---

[9] *See infra* Section III.B. In addition, because the forum non conveniens issue here presents a choice between a foreign forum and United States forum, the appropriate inquiry is whether the United States as a whole – not just the Western District of Washington – has an interest in adjudicating the dispute. *Lexington Ins. Co. v. Forrest,* 263 F. Supp. 2d 986, 1002 (E.D. Pa. 2003); *Neo Sack, Ltd. v. Vinmar Impex, Inc.,* 810 F. Supp. 829 (S.D. Tex. 1993).

1  *v. Horsfall*, 753 F. Supp. 664, 674 (N.D. Ohio 1990) (holding that RICO claims should not be

2  dismissed on *forum non conveniens grounds*, *inter alia*, because, "of the various conflicting

3  interests involved, one of the most weighty is the interest of the United States in a uniform

4  application of RICO.")  To be sure, some issues in this case will require the application of

5  foreign law, but that "is not in itself a reason to apply the doctrine of *forum non conveniens*, and

6  we must guard against an excessive reluctance to undertake the task of deciding foreign law, a

7  chore federal courts must often perform."[10]  *Manu Int'l, S.A.*, 641 F.2d at 67-68.  Indeed, courts

8  in this Circuit regularly interpret foreign law. [11]

9  　　　The third factor is "not implicated" when, as here, the local forum has "strong interest in

10  this litigation." *See, e.g., Peregrine Myanmar v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996).  The fourth

11  factor – court congestion – is not as relevant here because there are relatively few judicial

12  vacancies. *See Guidi v. Inter-Continental Hotels*, 224 F.3d 142, 147 n. 5 (2d Cir. 2000).  Finally,

13  T-Mobile fails to meet its burden for the fifth factor.  As discussed above, this case is related to

14  this District.  In sum, the public interest factors do not "tilt strongly" in favor of a foreign forum,

15  but rather weigh in this forum's favor, particularly when balanced against the deference due

16  Plaintiff's choice.

17  　　　T-Mobile wrongly relies on *Lueck* and *Piper*, both of which are inapposite.  First, *Tuazon*

18  made clear the Ninth Circuit's view that what matters is whether this District has a sufficient

19  interest, not whether another district has a greater one. *Tuazon*, 433 F.3d at 1182.  Second, while

20  *Lueck* (which preceded *Tuazon*) compared the U.S. interest with that of New Zealand, the facts

21  were far different.  In *Lueck*, witnesses were concentrated in only one other potential alternative's

22  forum from the United States (New Zealand), whose interest was in the death of New Zealand's

---

[10] Contrary to T-Mobile's assertion (Def. Mot. at 14), this Court will not have to determine whether the Second and Third Vienna arbitration awards would have come out differently but for T-Mobile's wrong-doing.  Vivendi's principal injury – loss of the PTC Shares – resulted in material part from Defendants' flagrant violation of arbitration rulings and injunctions.

[11] *E.g., Shalit v. Coppe*, 182 F.3d 1124, 31 (9th Cir. 1999) (Israeli law); *Universe Sales Co. v. Silver Castle, Ltd.*, 182 F.3d 1036, 1037-39 (9th Cir. 1999) (Japanese law); *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1392-93 (9th Cir. 1995) (Mexican law); *see also* Fed. R. Civ. P. 44.1 (allowing consideration of questions of foreign law provided adequate notice by pleadings or other reasonable written notice).

1  citizens, while here the parties span four jurisdictions and the material witnesses span six, all of

2  which have their own interests.[12]

3       Similarly, this case does not involve a single physical act such as a plane crash or an

4  environmental disaster, in which physical evidence and relevant witnesses are likely to be

5  located in one circumscribed area. *See Piper*, 454 U.S. at 238-39 (plane crash in Scotland); *In re*

6  *Union Carbide Corp. Gas Plant Disaster*, 634 F. Supp. 842 (S.D.N.Y. 1986) (gas leak in India).

7  Nor does this case involve "substantial physical evidence that is difficult or expensive to

8  transport." *Wiwa*, 226 F.3d at 107 (distinguishing sources of proof for claim under Alien Tort

9  Claims Act from sources of proof involved in *Piper Aircraft* and *Union Carbide*). Contrary to T-

10 Mobile's assertion, the central issue in this case is not whether T-Mobile made

11 misrepresentations to a Vienna arbitration panel nor whether it misrepresented a Polish Supreme

12 Court decision. Rather, the issue is whether T-Mobile engaged in a pattern of racketeering

13 lasting several years and spanning several countries to steal Vivendi's interest in its PTC Shares.

14 **II.     This Court Has Personal Jurisdiction Over the German T-Mobile Defendants.**

15      At the pleading stage, Vivendi need only make a *prima facie* showing of jurisdictional

16 facts.[13] *See Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *see also Data Disc. Inc. v.*

17 *Sys. Tech. Assoc.*, 557 F. 2d 1280, 1285 (9th Cir. 1977), 557 F.2d at 1285.  In other words,

18 Plaintiff need only demonstrate facts that, if true, would support personal jurisdiction over the

19 defendant. *See Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995).  Vivendi has made that

20 showing, pleading sufficient facts with respect to each German T-Mobile Defendant. (SAC ¶¶

21 21, 22, 24)  As discussed below, personal jurisdiction exists (i) over DT pursuant to RICO's

22

23 [12] The cases cited by T-Mobile at pages 12 -13 of its Motion are inapposite. The Supreme Court in *Sinochem Int'l*
24 *Co. v. Malaysia Int'l Shipping Corp.*, 127 S. Ct. 1184, 1194 (2007), did not make any ruling concerning the merits
   of defendant's *forum non conveniens* motion, but rather remanded the case after holding that a court can consider
   *forum non conveniens* before determining jurisdictional issue. *Armco, Inc. v. United Steelworkers of Am*, 280 F.3d
25 669, 682 (6th Cir. 2002) involved federalism concerns, which are not present here. *Ahmed Alhanim & Sons v. Toys*
   *"R" Us, Inc.*, 126 F.3d 15, 22 (2d Cr. 1997), concerned the construction of the Convention on the Recognition and
26 Enforcement of Foreign Arbitral Awards.
   [13] Facts submitted in support of personal jurisdiction "are construed in the light most favorable to the plaintiff and all
27 doubts are resolved in his favor," *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1064 n.1 (9th Cir. 1990).

OPPOSITION TO MOTION TO DISMISS - 15
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    nationwide service of process provision, (ii) over T-Mobile International AG under the agency

2    theory of personal jurisdiction, and (iii) over T-Mobile Deutschland GmbH (as well as all the

3    other German T-Mobile Defendants) under the conspiracy theory of personal jurisdiction.

4        Contrary to T-Mobile's suggestion (Def. Mot. at 15), Vivendi is not relying on "group

5    pleading" for the purpose of personal jurisdiction.  Vivendi specifically alleges participation in

6    the conspiracy by officers and directors of Deutsch Telekom AG (SAC ¶ 81) and T-Mobile

7    International AG (SAC ¶¶ 23, 106).  Moreover, there is no dispute that T-Mobile Deutschland

8    GMBH has possession of the PTC Shares, as is alleged in the proposed Third Amended

9    Complaint.[14]

10   **A.    Personal Jurisdiction Is Proper Over DT Pursuant to RICO's Nationwide**
         **Service of Process Provision.**

11       RICO provides for nationwide service of process. 18 U.S.C. § 1965(b) (West 2006).

12   Since Plaintiff properly served DT in the United States,[15] Section 1965(b) applies, and this Court

13   has personal jurisdiction over DT.  The statutory prerequisites are met because (i) the Court has

14   personal jurisdiction over at least one of the conspirators, T-Mobile USA, (ii) there is no other

15   single district with which all Defendants have minimum contacts, and (iii) DT has sufficient

16   minimum contacts with the United States.  *Butcher's Union Local 498 v. SDC Inv., Inc.*, 788

17   F.2d 535, 539 (9th Cir. 1986).

18       When a "statute provid[es] for nationwide service of process, the inquiry to determine

19   'minimum contacts' is ... 'whether the defendant has acted within any district of the United

20   States or sufficiently caused foreseeable consequences in this country.'"  *Action Embroidery*

21   *Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) (citing *Securities Inv.*

22   *Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985)).  *Accord Go-Video, Inc. v. Akai*

---

24   [14] The cases cited by T-Mobile Defendants in support of the contention that Vivendi failed to properly plead
     personal jurisdiction as to each of the T-Mobile Defendants are inapposite.  In both *In Re Royal Ahold N.V. Sec. &*
25   *ERISA Litig.*, 351 Supp.2d 334 (D. Md. 2004) and *Grow Group, Inc. v. Jandernoa*, 1996 WL 31848 (S.D.N.Y.
     1996), the plaintiff had abusively named passive corporate officers and directors as defendants in addition to the
26   corporate defendants without basis.
     [15] Vivendi served process on the registered agent of T-Mobile USA, whose counsel then accepted service for all the
27   other T-Mobile Defendants. (Syed Dec. ¶ 22 )

1  *Electric Co., Ltd.*, 885 F.2d 1406, 1414 (9th Cir. 1989). DT has sufficient minimum contacts

2  with the United States.[16] DT maintains offices in the United States, its American Depository

3  Receipt shares are traded on the New York Stock Exchange, it has made substantial investments

4  in the United States, and it otherwise conducts business in the United States. (SAC ¶ 21). *See*

5  *Asahi Metal Ind. Co. v. Superior Court*, 480 U.S. 102, 109 (1987); *Republic of Argentina v.*

6  *Weltover, Inc.*, 504 U.S. 607, 619-20 (1992). DT even has a U.S. registered agent in New York

7  for purposes of accepting service of process, and Plaintiff could easily have served that agent had

8  T-Mobile's counsel not accepted service on DT's behalf. (*See* Decl. of Syed ¶ 13)

9       T-Mobile's assertion that RICO's nationwide service provision does not apply to foreign

10 defendants is mistaken. (Def. Mot. at 16). Many courts permit RICO jurisdiction over foreign

11 entities and individuals. *See, e.g., Go-Video, Inc.* 885 F.2d 1406 (exercising jurisdiction over

12 four Japanese defendants and one Korean defendant based on a similar nationwide service

13 provision); *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 86 F. Supp. 2d 137, 140

14 (E.D.N.Y. 2000). *See also Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 26

15 F. Supp. 2d 593, 601 (S.D.N.Y. 1998). The cases T-Mobile wrongly cites for its proposition

16 merely hold that RICO's nationwide service does not apply when a foreign defendant is served

17 *outside of* the United States – which is not the case here.[17]

18  **B.    This Court Has Personal Jurisdiction Over Defendant T-Mobile**
    **International AG Through the Agency Theory of Personal Jurisdiction.**

19       This court has personal jurisdiction over T-Mobile International AG ("TMI") because it

20 has a subsidiary in the United States – T-Mobile USA – that acts as its agent for personal

21 jurisdiction.[18] When a subsidiary (whether direct or indirect) "acts as an agent" of its foreign

22

---

23 [16] Prior to discovery, Vivendi is unaware of the U.S. contacts of T-Mobile International AG and T-Mobile
   Deutschland GmbH. To the extent that the Court finds an insufficient basis for personal jurisdiction against these
24 two defendants under the agency and conspiracy theories respectively as discussed below, Vivendi should be
   afforded an opportunity to take discovery on their U.S. contacts. Even minimal contacts can provide a basis for
25 personal jurisdiction under both 18 U.S.C. § 1965(b) and Fed. R. Civ. P  4(2)(k).
   [17] *See Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940-41
26 (7th Cir. 2000); *Doe*, 27 F. Supp. 2d at 1184; *Flag Co. v. Maynard*, 376 F. Supp. 2d 849, 852 (N.D. Ill. 2005).
   [18] T-Mobile USA is TMI's indirect subsidiary. TMI is the general partner in the limited partnership T-Mobile
27 International AG & Co. KG that wholly owns T-Mobile Global Holding GmbH. (Decl. of Uli Kuehbacher in Supp.
                                                                                           (continued...)

RHODE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   parent corporation, "the local subsidiary's contacts with the forum may be imputed to the foreign

2   parent corporation." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (per curiam); *see In*

3   *re Phenylpropanolamine Prods. Liab. Litig.*, 344 F. Supp. 2d 686, 692, 695 (W.D. Wash. 2004)

4   (imputing the contacts of an entity that was "several layers of ownership removed from [the

5   parent]" because it acted as the parent's agent). This can be the case even when the parent

6   denominates itself as a "holding company." *See In re Phenylpropanolamine*, 344 F. Supp. 2d at

7   695.[19] "As the international economy becomes more interdependent, the formal but artificial

8   separation between a foreign parent corporation and its domestic subsidiary becomes less

9   compelling for purposes of determining personal jurisdiction." *Id.* at 695 n.12 (internal quotes

10  omitted).

11      Here T-Mobile USA acts as an agent of TMI because it "performs services that are

12  'sufficiently important to [TMI] that if it did not have a representative to perform them, the

13  [TMI's] own officials would undertake to perform substantially similar services." *Unocal Corp.*,

14  248 F.3d at 928 (quoting *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)).

15  T-Mobile USA performs a core function for TMI, providing mobile communications services

16  and products to TMI's customers in a market that is vitally important to TMI because the United

17  States is T-Mobile's growth driver. (*See* Decl. of Syed Exh. H.)

18      Indeed, TMI itself publicly decrees that T-Mobile USA is TMI's U.S. "operation." For

19  example, in a 2003 press release, TMI stated that Robert Dotson is the "President and Chief

20  Executive Officer of the U.S. operations of T-Mobile," in which T-Mobile refers to T-Mobile

21

22  _____

    (...continued)

23  of Mot. To Dismiss the Second Am. Compl. ¶¶ 5, 7.) Under German law, TMI thus owns T-Mobile Global Holding GmbH, which, in turn, wholly owns T-Mobile USA 2 *Business Transactions in Germany* §§ 22.02–22.03 (Bernd

24  Ruster et al. eds., 2006); (Decl. of Uli Kuehbacher ¶ 8.) T-Mobile USA is therefore an indirect subsidiary of TMI.
    [19] As the managing partner of T-Mobile International AG & Co. KG., TMI prescribes purchasing requirements,

25  technology architecture, marketing and communications strategy, and customer service standards for T-Mobile USA and other operating subsidiaries. (Decl. of Syed, Exh. A) In addition, TMI advertises in the United States. (*Id.* Exh.

26  F). TMI is therefore much more than a mere investment mechanism. *See In re Phenylpropanolamine*, 344 F. Supp. 2d at 692–95 (finding that the parent was "more than a simple investment mechanism" despite "[t]he fact that [the

27  parent] denominate[d] itself a mere holding company and ha[d] no direct employees") (internal citation omitted).

International AG & Co. KG (TMI's partnership). (*See* Decl. of Syed Exh. G)  Similarly in a

2007 press release, it stated that "T-Mobile USA is the U.S. operation of T-Mobile International

AG & Co. KG." (*See* Decl. of Syed Exh. H.) And TMI further removed any doubt that T-Mobile

USA (and even PTC) serves TMI's customers, by recently explaining that:

> In the first quarter of 2007, T-Mobile International raised *its* customer number to
> over 109 million, an increase of nearly 25 percent compared to the same period
> the previous year. *T-Mobile USA* provided the highest customer growth. In
> addition, the *Polish operator PTC* with more than 12 million customers . . . were
> included in the year-on-year comparison for the first time.

(Decl. of Syed , Exh. B.)

Although, T-Mobile asserts in conclusory form that T-Mobile USA does not market or

sell any TMI products or services (*Kirkpatrick Decl.* ¶ 19), the foregoing facts demonstrate that

this assertion is contradicted by T-Mobile's own words, and that if T-Mobile USA did not exist,

TMI and its partners would inevitably participate in the U.S. market otherwise, as further

evidenced by the international scope of its other operations. *See Baden Sports, Inc. v. Kabushiki*

*Kaisha Molten*, No C06-0210P, 2007 U.S. Dist. LEXIS 3881, at *9 (W.D. Wash. Jan. 18, 2007)

("As the 'world's largest ball and sports equipment manufacturer,' it is reasonable to believe that

if [the subsidiary] never existed, [the parent company] would have distributed its goods to the

United States market itself.")

Finally, Despite TMI's assertion that agency cannot be found in this case because

T-Mobile "conducts its own day-to-day operations"(Def.'s Mot. at 18), day-to-day control is not

a requirement of the agency theory of personal jurisdiction. *Modesto City Sch. v. Riso Kagaku*

*Corp.*, 157 F. Supp. 2d 1128, 1134 (E.D. Cal. 2001).[20]

[20] The *Unocal Corp.* court did not hold otherwise. Only in the "Alter Ego" subsection of its opinion did the court examine whether the parent company had day-to-day control over the subsidiary. *Unocal Corp.*, 248 F.3d at 926–28. And despite its finding in that subsection that day-to-day control had not been established, the court nevertheless proceeded to conduct a full agency analysis in the subsequent subsection entitled "Agency," clearly implying that it was still possible to establish this basis of jurisdiction. *Id.* at 928–931. Further, the court's agency analysis proceed to focus not on control but on "the subsidiaries' functions and their importance to the foreign corporation." *Modesto City Sch. v. Riso Kagako Corp.*, 157 F. Supp. 2d 1228, 1133 (E.D. Cal. 2001). While toward the end of the "Agency" subsection, the court referenced the concept of day-to-day control, it did so only in refuting the plaintiffs' factual contention that the parent company had directly controlled the subsidiaries. *Unocal Corp.*, 248 F.3d at 930. "In doing so, the court did not...hold that a showing of day-to-day control is required in order to satisfy the general
(continued...)

1

**C.    This Court Has Personal Jurisdiction Over T-Mobile Deutschland GmbH Under the Conspiracy Theory of Personal Jurisdiction.**

2

T-Mobile Deutschland GmbH participated in the conspiracy to steal the PTC Shares.

3

(SAC ¶ 24).  Indeed, it currently possesses the PTC Shares that Defendants stole from Vivendi,

4

and it is one of the operators of the T-Mobile Global Wireless Network Enterprise. *Id.*  (*See also*

5

proposed Third Amended Complaint ¶ 25)  Thus, this Court has personal jurisdiction over

6

T-Mobile Deutschland GmbH under the conspiracy theory of personal jurisdiction.

7

The conspiracy theory is "based on the time honored notion that the acts of [a]

8

conspirator in furtherance of a conspiracy may be attributed to the other members of the

9

conspiracy." *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983). "If

10

through one of its members a conspiracy inflicts an actionable wrong in one jurisdiction, the

11

other members should not be allowed to escape being sued there by hiding in another

12

jurisdiction." *Stauffacher v. Bennett*, 969 F.2d 455, 459 (7th Cir. 1992). *Accord Olson v. Jen*

13

*Kens & Gilchrist*, 461 F. Supp. 2d 710 (N.D. IW. 2006) 724.  This reasoning is especially

14

pertinent when the defendants are involved in a RICO enterprise. *Id.*  Moreover, the doctrine is

15

fully consistent with due process.  Since the co-conspirator must foresee the possibility of being

16

held accountable in a jurisdiction where its conspiracy's effects are felt, it is entirely reasonable

17

to hale that co-conspirator into that jurisdiction's court. *Id.*

18

The Ninth Circuit has left open the question of whether the conspiracy theory applies in

19

this Circuit. *Chirila v. Conforte*, 47 Fed. Appx. 838, 843 (9th Cir. 2002); *Underwager v.*

20

*Channel 9 Australia*, 69 F.3d 361, 364-65 (9th Cir. 1995).  However, both the D.C. Circuit and

21

the Fourth Circuit have adopted the conspiracy basis for jurisdiction. *See Second Amendment*

22

23

24

25

(...continued)

agency test." *Modesto City Sch.*, 157 F. Supp. 2d at 1134.  And in subsequent recitations of the agency standard

26

articulated in *Unocal Corp.*, the Ninth Circuit has conspicuously omitted any reference to day-to-day control. *See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1134–35 (9th Cir. 2003).

27

1  *Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524-25 (D.C. Cir. 2001); *Lolavar v. de*

2  *Santibanes*, 430 F.3d 221, 228-30 (4th Cir. 2005); *Textor*, 711 F.2d at 1392-93.[21]

3      To be a conspirator under RICO's conspiracy provision, § 1962(d), a defendant must

4  merely agree to further an endeavor that, if completed, would satisfy all of the elements of a

5  substantive criminal offense. *Howard v. America Online*, 208 F.3d 741, 751 (9th Cir. 2000).

6  The RICO conspiracy provision does not require proof of an overt act to effect the object of the

7  conspiracy. *Salinas*, 522 U.S. at 63 (finding that the RICO conspiracy provision is "even more

8  comprehensive than the general conspiracy offense.). Here, not only did T-Mobile Deutschland

9  GmbH agree to participate in the conspiracy, it committed an overt act by taking possession of

10  the PTC Shares.

11  **III.    This Court Has Subject Matter Jurisdiction**

12      The Ninth Circuit "view[s] jurisdictional claims under an exceedingly generous standard

13  at this stage of the proceedings." *Republic of Philippines v. Marcos*, 818 F.2d 1473, 1478 (9th

14  Cir. 1987). A plaintiff seeking to survive a motion to dismiss must merely "satisf[y] the

15  jurisdictional minimum by stating cause of action under our law that is neither wholly

16  insubstantial nor frivolous." *Poulos v. Caesars World, Inc.* 379 F.3d 654, 662 (9th Cir. 2004)

17  (citations omitted); *see also Republic of Philippines*, 818 F.2d. at 1478; *Hagans v. Lavine*, 415

18  U.S. 528, 543 (1974) (affirming that a claim may be dismissed for lack of subject matter

19  jurisdiction only where it is "so insubstantial, implausible, foreclosed by prior decisions of this

20  Court or otherwise completely devoid of merit as not to involve a federal controversy within the

21  jurisdiction of the District Court.") Moreover, the Ninth Circuit will "deem claims insubstantial

22  only where the law is clear or where a plaintiff has persistently failed to allege an essential

23  element." *Republic of Philippines*, 818 F.2d at 1478. If the law is unclear, the complaint must

24

25

26  [21] Recently, the District Court in *Silver Valley Partners, LLC v. DeMotte*, 400 F.2d 1262 (W.D. Wash. 2005),
    declined to apply this theory in a breach of contract and fraud matter. That case, however, did not involve the

27  broader protections afforded by the RICO statute and does not apply to the facts here.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    be "patently and irremediably defective" before the Ninth Circuit "can say with confidence that

2    plaintiff has failed to establish a colorable basis for jurisdiction . . . ." *Id.*

3         With respect to RICO, the Ninth Circuit has adopted two alternative tests for determining

4    whether subject matter jurisdiction exists when RICO is applied extraterritorially: a conduct test

5    and an effects test. *See Poulos* 379 F.3d at 663.  If a plaintiff satisfies *either* test, the plaintiff has

6    established subject matter jurisdiction, and the RICO claim must survive a motion to dismiss.

7    *Butte Mining PLC v. Smith*, 76 F.3d 287, 290 (9th Cir. 1996).  As set forth below, Plaintiff's

8    factual allegations more than suffice to establish that RICO subject matter jurisdiction exists.[22]

9         **A.    Vivendi Satisfies the Conduct Test.**

10        Vivendi has alleged multiple communications over U.S. wires, from 2004 until today, in

11   which T-Mobile caused Vivendi to wrongly believe that T-Mobile was negotiating in good faith

12   to resolve the dispute over the PTC Shares when in fact it was proceeding with its plan to steal

13   the PTC Shares, and that otherwise proximately caused Vivendi's injuries. (SAC ¶¶ 8, 15, 17, 50-

14   51, 99, 111, 122).  These communications constitute conduct in the United States even when the

15   communications originated in Europe because each transmission is deemed to occur "both where

16   it was sent and where it was received." *United States v. Ebersole*, 411 F.3d 517, 527 (4th Cir.

17   2005).  And, under the conduct test, the occurrence of conduct within the United States is

18   sufficient to confer subject matter jurisdiction. *See Johnson Elec. N. Am. Inc. v. Mabuchi Motor*

19   *Am. Corp.*, 98 F. Supp. 2d 480, 486 (S.D.N.Y. 2000).

20        T-Mobile argues that its fraudulent 2004 communications are insufficient because "the

21   only act for which Vivendi is seeking redress is the alleged 'theft' of its interest in PTC – an act

22   that Vivendi concedes occurred outside of the United States." (Def. Mot. at 20.)   However,

23   because that theft was perpetrated in part through U.S. predicate acts, subject matter jurisdiction

24   exists. *Poulos,* 379 F.3d at 663-64 (affirming the district court's decision to grant jurisdiction

25   _____

26   [22]    T-Mobile's cited cases regarding the "conduct" and "effects" tests are of limited precedential value.  Issues of
     federal jurisdiction in transactional securities and RICO actions are highly fact specific and the presence or absence
     of any particular factor considered significant in another case is not dispositive here.   *See, e.g., Con. Grain*

27   *(Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.*, 592 F.2d 409, 414 (8th Cir. 1979).

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   where part of the alleged fraudulent acts "appear to be sufficient predicate acts under RICO");

2   *Republic of Philippines*, 818 F.2d at 1479 ("at this early stage of the proceedings, where

3   predicate acts are alleged to have been committed within the United States, we cannot say that

4   the district court was without jurisdiction to entertain plaintiff's RICO claims.").[23]

5       **B.**    **Vivendi Satisfies the Effects Test.**

6       The effects test provides an independent basis for this Court's subject matter jurisdiction.

7   *Butte Mining*, 76 F. 3d 287. The Ninth Circuit liberally construes the RICO effects test as

8   requiring simply that "the transactions in question adversely affected the economy of the United

9   States." *Republic of Philippines*, 818 F.2d at 1491; *see also Poulos*, 379 F.3d at 663-64

10  (affirming district court's finding of RICO subject matter jurisdiction).[24]

11      T-Mobile's racketeering conspiracy has had substantial adverse effects on the U.S.

12  economy. First, it has harmed a major U.S. company, GM. (Decl. of Torres ¶ 17) Second, it put

13  T-Mobile in a financial position that allowed T-Mobile USA to bid for (and DT to substantially

14  pay for) the $4.182 billion of U.S. spectrum in competition with other U.S. bidders. (SAC ¶ 3)

15  To be sure, T-Mobile provides a declaration from Mr. Kirkpatrick that states that T-Mobile USA

16  did not submit any financial statements in support of its $4 billion bid for U.S. spectrum. What

17  is relevant, however, is whether adding a multi-billion-dollar asset (PTC) strengthened DT's

18  balance sheet and facilitated DT's borrowing of funds for DT to pay for the U.S. spectrum. The

19  Complaint specifically alleges that it did. (SAC ¶ 4)

20

21  [23] *See also C.A. Westel de Venez. v. American Tel. & Tel. Co.,* No. 90CIV6665, 1992 U.S. Dist. LEXIS 12301 at 56
    (S.D.N.Y. August 17, 1992) ("even if [plaintiff's] injury to its business or property by reason of defendants' RICO
22  violations occurred primarily or exclusively in Venezuela, the Court has subject matter jurisdiction with respect to
    [plaintiff's] RICO claim because [plaintiff] has alleged a pattern of racketeering activity in the United States) (*citing*
23  *Republic of Philippines*, 862 F.2d at 1358-59 (citations omitted); *Thai Airways Int'l LTD v. United Aviation Leasing*
    *B.V.*, 842 F. Supp. 1567, 1570 (S.D.N.Y. 1994) *aff'd* 59 F.3d 20 (2d Cir. 1995)) (finding subject matter jurisdiction
24  over RICO claims because, *inter alia*, plaintiffs alleged that "defendants have conducted their fraudulent scheme and
    their racketeering enterprise through the use of the U.S. wires and mail, including the sending or receipt
25  of...communications from or to the United States."); *See* RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW
    OF THE UNITED STATES § 402(1)(a).
26  [24] T-Mobile wrongly relies on a narrow standard from the Second Circuit in which "alleged U.S. effects must be
    direct and foreseeable results of the unlawful conduct." (Mot. to Dismiss at 20) (citing *Consol. Gold Fields PLC v.*
27  *Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir. 1989).

RODHE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

Third, users of T-Mobile's network in the United States are paying higher roaming rates than they otherwise would have paid but for the corruption of the T-Mobile Global Wireless Network Enterprise -- the functional equivalent of a "corruption tax." (SAC ¶ 4)  T-Mobile argues that it has not increased its rates, and thus it has not harmed U.S. consumers.  Plaintiff, however, asserts that the rates would otherwise be lower (*Id.*) and T-Mobile's declaration of Mr. Kirkpatrick is silent on this point.

Fourth, T-Mobile's U.S. customers have been deprived of honest services. (SAC ¶ 26) Numerous courts have held that a scheme or artifice to defraud under the wire fraud statute includes the deprivation of another's right to honest services, particularly where the defendant owes the victim a duty. *See United States v. Williams,* 441 F.3d 716, 722 (9th Cir. 2006); *United States v. Rybicki,* 354 F.3d 124, 127 (2d Cir. 2003) (en banc); *United States v. Ervasti,* 201 F.3d 1029, 1035-6 (8th Cir. 2000).  As a cellular telephone company serving as a *de facto* public utility using public spectrum, T-Mobile USA's wireless license imposes sufficient duties to make the honest-services doctrine applicable. (*See* Decl. of Syed, Ex. D)

Notably, the Ninth Circuit has found RICO subject matter jurisdiction when the alleged scheme had far less impact on the U.S. economy than is the case here.  In *Republic of Philippines,* the Ninth Circuit deemed a scheme in which the defendants allegedly stole money in the Philippines to have sufficient effects in the United States simply because fruits of the scheme were used in the United States where some of the stolen money was invested. *Republic of Philippines,* 862 F.2d at 1358-59.  Similarly, here the T-Mobile Defendants have used the fruits of its racketeering conduct to strengthen T-Mobile USA, both by integrating it with PTC and by putting T-Mobile USA in a stronger position to bid for new U.S. spectrum and DT to pay for most of it.  If the Marcos's investment of the poisonous fruits of RICO conduct in the Philippines constituted sufficient effects on U.S. commerce to satisfy the Ninth Circuit effects test, then surely the strengthening of T-Mobile's single biggest generator of revenue – T-Mobile USA -- by conduct that included U.S. wire fraud is sufficient.

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    Notwithstanding the foregoing, T-Mobile argues that the U.S. effects are "too indirect

2 and remote." (Def. Mot. at 20, 21). Far from being remote, however, these are direct effects in

3 the United States of Defendants' conspiracy and theft. Moreover, these effects were the entirely

4 foreseeable (if not intended) results of Defendants' misconduct. It was certainly foreseeable that

5 the takeover of PTC by corrupt means would deprive T-Mobile's U.S. customers of honest

6 services and lower rates. Similarly, it was equally foreseeable that operating Elektrim corruptly

7 and stripping its assets would cause U.S. investors such as GM to incur losses on their

8 investments, just as GM has lost. Thus, this conduct had a sufficiently direct and substantial

9 impact on the United States to confer subject matter jurisdiction. *See Consol. Gold Fields PLC v.*

10 *Minorco, S.A.*, 871 F.2d 252, 262 (2d Cir. 1989) (finding in securities fraud case that the

11 transmission of misleading tender offer documents to U.S. shareholders had sufficient effects on

12 the United States for jurisdiction); *United States v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 1,

13 873 (D.D.C. 2006) (finding in RICO case that statements made outside the United States and

14 transmitted over U.S. wires had substantial and direct effects on the United States because they

15 concerned potential litigation in the U.S. and furthered an overall scheme to defraud that

16 impacted the U.S.).

17    In sum, T-Mobile has failed to show that Vivendi's claims are "so insubstantial,

18 implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit

19 as not to involve a federal controversy within the jurisdiction of the District Court." *Hagans*,

20 415 U.S. at 543. Therefore, this Court has subject matter jurisdiction over Plaintiff's claims.

21 **IV.    The Complaint Properly States RICO Claims**

22    **A.    The Facts Alleged in the Complaint Must Be Accepted as True.**

23    In reviewing a 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and

24 construed in the light most favorable to the nonmoving party." *Thompson v. Davis*, 295 F.3d

25 890, 895 (9th Cir. 2002) (citations omitted). "[A] complaint should not be dismissed for failure

26 to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

27 support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46

OPPOSITION TO MOTION TO DISMISS - 25
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   (1957). *See also United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

2   Courts must also assume that all general allegations "embrace whatever specific facts might be

3   necessary to support them." *Peloza v. Capistrano Unified School Dist.*, 37 F.3d 517, 521

4   (9th Cir. 1994), *cert. denied*, 515 U.S. 1173 (1995). As set forth in the following sections, T-

5   Mobile allegations are more than sufficient, and T-Mobile's self-serving version of the facts must

6   be disregarded.

7      **B.    Vivendi Has Standing to Bring RICO Claims.**

8          **1.    Vivendi's Claims Are Ripe.**

9          T-Mobile argues that Vivendi's RICO claims are not ripe because Vivendi might be able

10  to secure complete redress for its RICO claims in other proceedings that are still on-going. As

11  the Ninth Circuit made clear in *Grimmett v. Brown*, however, a RICO claim is ripe even if the

12  relief may also be obtained in other proceedings. 75 F.3d 506 (9th Cir. 1995). To be sure, the

13  other proceedings might affect the amount of damages the plaintiff may recover, but the

14  existence of those proceedings does not render the RICO claims unripe. *Id.* at 516-17.

15         In *Grimmett*, the defendants conspired to deprive plaintiff of a security interest in a

16  medical practice through fraudulent reorganization. The court held the RICO claim ripe even

17  though plaintiff was also pursuing a bankruptcy action that could achieve full redress. The court

18  reasoned that the injury "has occurred and is known" even though the plaintiff's damages might

19  be reduced by alternative recovery efforts. *Id.* at 517. The Court noted that a ripeness issue

20  would only arise in cases where "it is not known whether it [the injury] will occur at all."

21         Here, Vivendi's injury has already occurred. Vivendi paid approximately $2.5 billion to

22  buy, through Telco, the PTC Shares and thus eventually control of PTC, and Vivendi has been

23  deprived of those shares and control as a result of Defendants' conduct without any

24  compensation. (SAC ¶36) Indeed, T-Mobile's, not Plaintiff's, representatives today sit in PTC's

25  offices. As in *Grimmett*, the open issue is whether other pending actions will reduce Vivendi's

26  damages.

27

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1    Notably, T-Mobile relies on a line of cases in the Second Circuit -- *Bankers Trust Co. v.*

2  *Rhodes*, 859 F.2d 1096 (2d Cir. 1988) and its progeny – that *Grimmett* expressly refused to

3  follow. *See Grimmett,* 75 F.3d at 516-17. Finally, T-Mobile's reliance on *Lincoln House, Inc. v.*

4  *Dulpre,* 903 F.2d 845 (1st Cir. 1990) is misplaced. There, the RICO claim was contingent on a

5  future event. Here, in contrast, Vivendi had a preexisting, non-contingent ownership interest in

6  the PTC Shares that Defendants stole.

7              **2.      Vivendi Has Adequately Alleged Proximate Cause.**

8    Proximate causation requires "some direct relation between the injury asserted and the

9  injurious conduct alleged." *Holmes v. Sec. Investor Pro. Corp*, 503 U.S. 258, 268 (1992). "But

10 the injurious conduct need not be the 'sole cause' of the injury; instead, the injurious conduct

11 need only be 'a substantial factor in the sequence of responsible causation.'" *Burger v. Kuimelis,*

12 325 F. Supp. 2d 1026, 1034 (N.D. Cal. 2004) (quoting *Oki Semiconductor Co. v. Wells Fargo*

13 *Bank, Nat'l Ass'n,* 298 F.3d 768, 773 (9th Cir 2002)). The Ninth Circuit considers the following

14 factors in assessing whether an injury is "too remote" to allow recovery:

15       (1) whether there are more direct victims of the alleged wrongful conduct who can be
         counted on to vindicate the law as private attorneys general; (2) whether it will be
16       difficult to ascertain the amount of the plaintiff's damages attributable to defendant's
         wrongful conduct; and (3) whether the courts will have to adopt complicated rules
17       apportioning damages to obviate the risk of multiple recoveries.

18 *Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163, 1168-69 (9th Cir. 2002) (quoting other Ninth

19 Circuit cases). Here, none of those factors precluding recovery is present: Vivendi has been the

20 conspiracy's primary victim; Vivendi's damages are easily calculated; and no apportionment of

21 damages is necessary.

22    T-Mobile asserts that Vivendi has not adequately pled proximate causation because,

23 according to the T-Mobile Defendants, Vivendi's loss of the PTC Shares resulted from "repeated

24 rulings of European tribunals." (Def. Mot. at 23) This argument fails for two reasons. First, no

25 court or arbitral order exists directing Vivendi or Telco to relinquish the PTC Shares. (SAC ¶

26 118-119) Moreover, T-Mobile ignores Vivendi's allegations that Defendants' racketeering

27 (i) caused Vivendi not to take defensive action that would have blocked the theft, (ii) caused U.S.

OPPOSITION TO MOTION TO DISMISS - 27
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1  bondholders to support bankruptcy withdrawal to their and Vivendi's ultimate, direct detriment,

2  and (iii) caused U.S. regulators and investors from taking enforcement and corporate governance

3  actions that would have blocked the theft. ( SAC ¶¶ 7, 18, 55).

4      Second, the cases on which T-Mobile relies all involve situations in which the plaintiffs

5  had *never* owned the stolen property, and with respect to which the plaintiffs only had *contingent*

6  claims. For example, in *DeMauro v. DeMauro*, the First Circuit held that a wife lacked standing

7  to assert a RICO claim against her husband concerning fraudulent concealment of *non*-marital

8  property because the state in which plaintiff lived "is not a community property state" and

9  plaintiff had no right to the property. 115 F.3d 94, 97-98 (1st Cir. 1997). Significantly, the court

10  held that the plaintiff would have standing with respect to property that was marital property. *Id.*

11  at 98. Here, Vivendi had an ownership interest analogous to marital property because Vivendi

12  had preexisting ownership of the PTC Shares.[25]  (SAC ¶¶ 36, 67)

13      In sum, Defendants have failed to meet their burden of showing that "there is 'no set of

14  facts that could be proved,' to satisfy these requirements." *Mendoza*, 301 F.3d at 1167 (quoting

15  *Swierkiewicz v. Sorema*, 534 U.S. 506 (2002)). Consequently, the Complaint adequately pleads

16  proximate cause.

17      **C.    The Complaint Adequately Alleges a Pattern of Racketeering.**

18      T-Mobile argues that the predicate acts Vivendi alleges either do not constitute wire fraud

19  or are insufficiently related to constitute a continuing pattern of racketeering. (Def. Mot. at 24)

20  With respect to the first point, each of the alleged predicate acts constitutes wire fraud because

21  each was made "for the purpose of executing [a] scheme or artifice [to defraud]" – the theft of

22  the PTC Shares - and carried over the U.S. wires.[26]  18 U.S.C. 1343. With respect to RICO's

23  _____

24  [25] T-Mobile's reliance on *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1310 (9th Cir. 1992) is similarly
misplaced. There, the plaintiffs' alleged injury was not being awarded contracts that plaintiffs thought they should

25  have been awarded. The court correctly held that those injuries were too speculative. Here, in contrast, Vivendi is
suing for damages it already has been suffering ever since Defendants stole its property.

26  [26] While the Complaint alleges that all the predicate acts involved false or misleading communications, a
communication does not itself have to contain an affirmative misrepresentation in order to constitute wire fraud. "If

27  a scheme is devised with intent to defraud, and the [wires] are used in executing that scheme, *the fact that there is no
misrepresentation of a single existing fact is immaterial. See United States v. Wood*, 335 F.3d 993, 998 (9th Cir.

(continued...)

pattern requirement, the predicate acts establish the required relatedness because they have "the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." *Sun Savings and Loan Assoc. v. Dierdorff*, 825 F.2d 187, 192 (9th Cir. 1987) (quoting *Sedima, v. S.P.R. L. Imerx Co. Inc.*, 473 U.S. 479, 497 n.14 (1985)). (*See* SAC ¶¶ 8, 12, 50-51, 81, 99, 111)  As in *Marcos*, they were "not isolated events" but "part of a plan and practice." 862 F. 2d at 1358.  Moreover, the predicate acts satisfy RICO's continuity requirement because they span a sufficient period of time – more than two years – to establish a "closed-ended continuity."[27]  In addition, they satisfy the alternative "open-ended continuity" because there is a prospect for repetition.[28] *See Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1528 (9th Cir. 1995) (predicate acts spanning 13 months would meet the "substantial period of time" test for closed-ended continuity); *Ikuno v. Yip*, 912 F.2d 306, 308 (9th Cir. 1990) (open-ended continuity found on basis of two false financial statements because no evidence company would have stopped filing false reports absent discovery).

### 1.     The 2004 Communications Were Continuous, Predicate Acts of Wire Fraud.

T-Mobile argues that the 2004 communications do not constitute wire fraud and were not sufficiently continuous to constitute a pattern. (Def. Mot. at 24-26)  T-Mobile is incorrect.

### (a)     The 2004 Communications Constitute Predicate Acts.

During the Spring and Summer of 2004, T-Mobile repeatedly used the U.S. wires to mislead Vivendi into believing that T-Mobile was negotiating in good faith when, in fact, T-Mobile was engaged in sham negotiations to lull Vivendi into a false sense of security so that

---

(...continued)
2003) (emphasis in original); *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981) ("A defendant's activities can be a scheme or artifice to defraud whether or not any specific misrepresentations are involved.").
[27] RICO requires at least two acts of racketeering activity that occur within ten years of each other. (18 U.S.C. § 1961(5)).
[28] Significantly, this is not the first time T-Mobile has engaged in racketeering to take over a wireless telephone company and add it to its network. In the late 1980's, DT engaged in corrupt practices to take over the Czech mobile phone company. (SAC ¶ 128)

1  Vivendi would not take counteractions, such as buying shares in Elektrim that would have

2  precluded Defendants from executing their fraudulent scheme.[29]  (SAC ¶¶ 8, 50-51)

3       Contrary to T-Mobile's assertion, Vivendi is not contending that T-Mobile had a duty to

4  disclose its fraudulent scheme to Vivendi. (Def. Mot. at 25)[30]  Rather, Vivendi claims that the

5  communications themselves were a fraudulent sham -- not negotiations at all, but merely a

6  façade intended to conceal wrongdoing and distract or lull Vivendi.  (SAC ¶¶ 12, 51, 56)

7  Moreover, Vivendi has alleged with specificity how these conversations directly harmed Vivendi

8  and furthered the conspiracy.  (SAC ¶¶ 55-56)

9             **(b)    The 2004 Communications Meet the Continuity Requirement**

10      T-Mobile argues that the 2004 communications "were insufficiently continuous."

11 (Def. Mot. at 25).  The 2004 communications, however, not only spanned approximately four

12 months on their own, but they also are directly related to Defendants' other predicate acts in the

13 United States – *i.e.*, the March 7, 2006 wire fraud, DT's September 5 and October 4, 2006 press

14 releases, and T-Mobile's 2007 statements relating to the consolidation of PTC into DT's

15 finances. (SAC ¶¶ 55-56, 80-86).  As such, they satisfy the closed-ended continuity requirement.

16 *See H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 242-3 (1989).  Each of these predicate acts is

17 related because each furthered T-Mobile's efforts to steal the PTC Shares and thus had "the same

18 or similar purposes, results, participants, victims, or methods of commission . . . ." *Sun Savings*,

19 825 F.2d at 192.

20        **2.    T-Mobile's Post-2004 Communications Were Predicate Acts.**

21      T-Mobile also argues that their post-2004 communications over U.S. wires do not

22 constitute actionable wire fraud.  (Def. Mot. at 27)  As discussed below, T-Mobile is wrong.

23 ─────────────────

24 [29] The SAC sets forth each misuse of U.S. wires with specificity. Mr. Golob, a T-Mobile agent, was involved in six
   conversations involving the use of U.S. wires in furtherance of the conspiracy that misled Vivendi. (SAC ¶ 51)
   Mr. Thomas Winkler of T-Mobile, who masterminded the combination of T-Mobile USA and PTC into the

25 T-Mobile network enterprise, also used the U.S. wires in 2004 in furtherance of the conspiracy. ( *Id.*)
   [30] Of course, a representation – or in this case conduct -- made with the intent to deceive is actionable regardless of

26 whether the defendant would, absent the fraudulent intent, have a disclosure duty to the plaintiff. *See United States
   v. Colton*, 231 F.3d 890, 901 (4th Cir. 2000); *Sonneberg v. United States*, Docket No. 01-2067, 2003 U.S. App.

27 LEXIS 6503, at *8-13 (3d Cir. Apr. 4, 2003); *United States v. Keplinger*, 776 F.2d 678, 697-98 (7th Cir. 1985).

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1

(a)   **T-Mobile's False Statement of March 7, 2006**

2   In the midst of a subsequent round of settlement negotiations, on March 7, 2006,

3   Kai-Uwe Ricke and Dr. Karl Gerhard Eick, DT's then CEO and Deputy CEO, respectively,

4   spoke over U.S. wires to Jean-Bernard Levy, Vivendi's CEO, while Mr. Levy was in the United

5   States. (SAC ¶ 81) During this conversation, Messrs. Ricke and Eick falsely assured Mr. Levy

6   that T-Mobile had not agreed to provide Solorz with an agreement known as a Mobile Virtual

7   Network Operator Agreement ("MVNO") – an agreement that would allow one of Solorz's

8   companies to compete with PTC by using PTC's cellular network for its own customers. (*Id.*)

9   This false statement materially furthered the racketeering conspiracy because it concealed the

10   scope of the T-Mobile Global Wireless Network Enterprise and the compensation that T-Mobile

11   was paying to Solorz for conspiring with T-Mobile, thus lulling Vivendi into not taking actions

12   during the 2006 negotiations that could have stopped the theft. *(Id.)*

13

(b)   **T-Mobile's Press Releases of September 5 and October 4, 2006**

14   T-Mobile asserts that T-Mobile's September 5 and October 4, 2006 press releases do not

15   constitute wire fraud, arguing that the releases were both true and immaterial.[31]   (Def. Mot. At

16   28). In fact, as alleged, they were both false and material. The September 5, 2006 release

17   represented that T-Mobile had *lawfully* acquired PTC and was exercising control over it *pursuant*

18   *to an award of the Vienna arbitration panel* when, in fact, T-Mobile and Elektrim were acting in

19   a manner that *contradicted* the award's plain language. (SAC ¶ 99) Similarly, the October 4,

20   2006 T-Mobile press release falsely stated that "the Arbitral Tribunal in Vienna conferred the

21   ownership title to the disputable 48% of the shares in PTC to Deutsche Telecom [sic]."

22   (SAC ¶111). In fact, the award had not done so. *(Id.)*

23   Contrary to T-Mobile's assertion, these false press releases furthered Defendants' scheme

24   because they were instrumental in persuading GM (through its agent, Everest Capital Limited) to

---

25   [31] The false press releases constitute U.S. wire fraud even though they were issued abroad because it was reasonably

26   foreseeable (if not intended) that the press releases would be carried on U.S. wires, and they were. *United States v. Conte*, 349 F.2d 304, 306 (6th Cir. 1965); *see also Pereira v. United States*, 347 U.S. 1, 8–9 (1954) ("Where one does an act with knowledge that use of the mails will follow in the ordinary course of business, or where such use

27   can reasonably be foreseen, even though not actually intended, then he 'causes' the mails to be used.")

---

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1 | support the withdrawal of the bondholders' bankruptcy petition, thereby removing the last

2 | obstacle to Defendants' theft of the PTC Shares. (Decl. of Torres ¶¶ 10, 11, 13)

3 |       T-Mobile also asserts that DT's press releases of September 5, 2006, and October 4,

4 | 2006, cannot be predicate acts because they misled U.S. investors in addition to harming Vivendi

5 | and GM. (Def. Mem at 29). While it is true that Congress amended RICO to remove securities

6 | fraud as a predicate act, the amendment (codified as 18 U.S.C. § 1964(c)) only prohibits parties

7 | from converting their securities claims into RICO claims. *See Fleet Nat'l Bank v. Boyle*, Docket

8 | No. 04-CV-1277-LDD, 2005 U.S. Dist. LEXIS 44036 (E.D. Pa. Sept. 12, 2005). The

9 | amendment was not meant to deprive a non-purchaser/seller of a remedy for injuries suffered

10 | through a RICO conspiracy simply because the predicate acts might have been perpetrated

11 | through securities filings. *Id.*

12 |       While the press releases might form the basis of a securities claim by purchasers of the

13 | DT Defendants' securities after the 2006 or 2007 press releases, Vivendi's claim does not stem

14 | from the purchase or sale of a security on the basis of the misrepresentations in the 2006 press or

15 | 2007 releases. Rather, the harm Vivendi attributes to these releases is twofold. First, Everest

16 | Capital Limited (and thus GM) relied on the press releases when deciding to support withdrawal

17 | of Elektrim's bankruptcy. That bankruptcy was the last obstacle to Defendants completing their

18 | theft. Thus, these predicate acts, which operated on U.S. bondholders, proximately caused

19 | Vivendi's injury in the same manner as if person A pushed person B into person C in order to

20 | injure person C. Second, in the 2006 and 2007 press releases, DT misled regulators and

21 | investors to prevent them from taking corporate governance measures to assure T-Mobile

22 | complied with the law.

23 |       Finally, Defendants argue that the September 5 and October 4, 2006 press releases are

24 | unrelated to the other wire fraud. (Def. Mot. at 31) However, all the wire frauds are related

25 | because they all furthered Defendants' scheme to steal the PTC Shares and to operate the

26 | T-Mobile Global Wireless Network Enterprise in a corrupt manner, enriching both the T-Mobile

27 | Defendants and Solorz. All of the wire frauds involved "the same or similar purposes" (stealing

OPPOSITION TO MOTION TO DISMISS - 32
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   the PTC Shares), the "same results" (the theft of the PTC Shares), the "same participants" (the

2   T-Mobile Defendants), and the same victims (Vivendi and GM). *See Sun Savings*, 825 F.2d at

3   192. To be sure, Vivendi on the one hand, and GM on the other, were hurt in different ways by

4   the wire fraud, but both victims were injured by all the wire fraud. The false T-Mobile press

5   releases of September 5, 2006 and October 4, 2006 directly harmed GM by causing GM to

6   support withdrawal of the bankruptcy petition, and they intentionally and directly harmed

7   Vivendi by triggering removal of the remaining obstacle to Defendants' success (the bankruptcy

8   proceeding against Elektrim). (SAC ¶ 101).

9           (c)     **The January 28, 2007 Press Release**

10          Defendants assert that the January 28, 2007 press release, announcing the incorporation

11  of PTC's assets into DT's consolidated earnings, did not constitute wire fraud. (Def. Mot. at 29).

12  As Vivendi alleges, however, such consolidation was part of the corrupt operation of the

13  T-Mobile Global Wireless Network Enterprise. (SAC ¶122). To be sure, DT had actually

14  incorporated PTC's assets into DT's financial statements, but a predicate act does not have to be

15  false in order to constitute wire fraud. "If a scheme is devised with intent to defraud, and the

16  [wires] are used in executing that scheme, *the fact that there is no misrepresentation of a single*

17  *existing fact is immaterial.*" *See United States v. Wood*, 335 F.3d 993, 998 (9th Cir. 2003)

18  (emphasis in original); *United States v. Halbert*, 640 F.2d 1000, 1007 (9th Cir. 1981) ("A

19  defendant's activities can be a scheme or artifice to defraud whether or not any specific

20  misrepresentations are involved.") If nothing more, DT's consolidation of PTC into its financial

21  statements was an act further designed to mislead regulators and investors that T-Mobile is

22  PTC's lawful owner, further precluding them from taking appropriate regulatory and corporate

23  governance action.

24          **3.     The Wire Fraud is Pled with Adequate Specificity**

25          T-Mobile argues that the particularity requirement has not been met because allegations

26  lump all the T-Mobile Defendants together. (Def. Mot. at 31)  In fact, wherever possible,

27  Vivendi has specifically identified the individual agents of the T-Mobile Defendants (and of

OPPOSITION TO MOTION TO DISMISS - 33
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1   Solorz, their co-conspirator) who made the false or misleading communications, and it has

2   identified the misleading communications by date and time.  To the extent that Vivendi does not

3   specifically identify, in some instances, which of the T-Mobile Defendants employed a particular

4   individual, that is because either (i) the individual fills roles in multiple T-Mobile Defendants

5   (who are comprised of DT and several of its subsidiaries), or (ii) Vivendi cannot discern which

6   of the T-Mobile Defendants is, in fact, the individual agent's principal given T-Mobile's "One

7   Company" strategy.  Such omissions, however, do not prejudice T-Mobile in any respect because

8   T-Mobile is on notice of the precise communications that constitute the predicate acts.  *See*

9   *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) ("[A]ll the Rules require is 'a short and plain

10  statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and

11  the grounds upon which it rests...").

12      **D.      The Complaint States a Claim Under § 1962(b)**

13          T-Mobile argues that Vivendi has failed to state a claim under § 1962(b) relating to the

14  takeover of PTC through a pattern of racketeering. (Def. Mot. at 32).  T-Mobile argues that "this

15  claim fails because the allegations do not provide the requisite nexus between the alleged

16  racketeering activities and control over PTC" because, according to T-Mobile, any harm Vivendi

17  suffered resulted from "intervening determinations in various legal proceedings." (*Id.*) As

18  mentioned above, however, no court or arbitral order exists directing Vivendi to cede its

19  ownership interest in the PTC Shares. (Decl. of Syed ¶ 4)  To be sure, the Second Vienna

20  Arbitration panel ruled that Elektrim breached a shareholder agreement with T-Mobile when it

21  sold the shares to Vivendi.  The panel, however, also ruled that it had no jurisdiction over Telco.

22  Thus, that order merely exposed Elektrim to damages; it had no binding effect on Telco or

23  Vivendi, who began investing in the PTC Shares at a time when T-Mobile could not legally hold

24  them. (SAC ¶ 57)

25          T-Mobile also argues that Vivendi's § 1962(b) claim is defective because "Vivendi has

26  not alleged an injury from the DT Defendants' acquisition of control over PTC that is separate

27  from the purported harm stemming from the wire fraud." (Def. Mot. at 33).  The Supreme Court

OPPOSITION TO MOTION TO DISMISS - 34
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1  in *Sedima*, however, rejected the notion that there must be separate racketeering injury. *Sedima*,

2  473 U.S. at 494-95. In any event, when, as here, a RICO defendant converts the plaintiff's

3  business or business assets to its own use, that plaintiff suffers an injury under § 1962(b) by

4  definition. *Crowe v. Henry*, 43 F. 3d 198, 205 (5th Cir. 1995) (allegations of defendant's

5  acquisition of plaintiff's land and farming venture through predicate acts of fraud satisfied §

6  1962(b)'s injury requirement).

7        Even if the Court were to accept T-Mobile's argument that Vivendi must show an injury

8  beyond the loss of the shares and control themselves, Vivendi has clearly done so. In addition to

9  those losses (making Vivendi's $2.5 billion investment in Telco potentially worthless), Vivendi

10  has suffered a decrease in its own share value by reason of the cloud on the value of its

11  investment in Telco and PTC, and has therefore had its cost of raising capital increased.

12  (SAC ¶ 18) Vivendi has also lost the income and appreciation that it would have derived from

13  PTC. (SAC ¶ 18)

14        **E.        Vivendi Has Stated a Claim Under § 1962(c).**

15        T-Mobile argues that Vivendi has failed to properly allege a § 1962(c) violation because,

16  according to T-Mobile, Vivendi does not adequately allege (i) that the T-Mobile Defendants are

17  distinct from the T-Mobile Global Wireless Network Enterprise, or that (ii) that the T-Mobile

18  Defendants participated in the conduct of the Elektrim Enterprise. (Def. Mot. at 33). In fact, as

19  the proposed Third Amended Complaint makes explicit (but as is sufficiently described in the

20  SAC), the T-Mobile Global Wireless Network Enterprise includes a wireless company operated

21  by Solorz that is distinct from the T-Mobile Defendants. (SAC ¶ 1). *See Odom v. Microsoft*

22  *Corporation*, 486 F.3d 541, 551 (9th Cir. 2007) (holding that "an associated-in-fact enterprise

23  does not require any particular organizational structure, separate or otherwise"). Moreover, the

24  Complaint alleges that the T-Mobile Defendants conspired with Solorz to operate Elektrim in a

25  corrupt manner. (SAC ¶ 2) Section 1962(c) does not require that the defendant had direct control

26  over the alleged enterprise. As the Supreme Court noted in *Reves*, "[a]n enterprise also might be

27

OPPOSITION TO MOTION TO DISMISS - 35
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

1 | 'operated' or 'managed' by others 'associated with' the enterprise who exert control over it as,

2 | for example, by bribery." *Reves v. Ernst & Young*, 507 U.S. 170, 184 (U.S. 1993).

3 | **F.    Vivendi Has Adequately Stated a Claim under Section 1962(d).**

4 | Contrary to Defendants' assertion, liability under 1962(d) can extend to each of the

5 | T-Mobile Defendants even assuming arguendo that they are not liable for the underlying RICO

6 | claims. "In a conspiracy to violate RICO, a plaintiff need not show that each defendant actually

7 | committed the substantive offense." *Tonnemacher v. Sasak*, 859 F. Supp. 1273, 1277-78

8 | (D. Ariz. 1995) (citing *United States v. Brooklier*, 685 F.2d 1208, 1220 (9th Cir. 1982), *cert.*

9 | *denied*, 459 U.S. 1206 (1983)). "Generally, a person may conspire with others to commit an

10 | offense that the person alone is incapable of committing." *Id.* Finally, as discussed above, the

11 | Complaint alleges with specificity how the T-Mobile Defendants worked together with Solorz to

12 | strip Elektrim's assets, including the PTC Shares. (SAC ¶¶ 71-79)

13 | **CONCLUSION**

14 | For the foregoing reasons, T-Mobile's motion should be denied.

15 | DATED this 16th day of July 2007.

16 | Respectfully submitted,

17 | Of Counsel
ORRICK, HERRINGTON &    ROHDE & VAN KAMPEN, PLLC

18 | SUTCLIFFE, LLP

19 |

20 | _s/ Lanny Davis_____    _s/Robert E. Rohde_____
Lanny J. Davis    Robert E. Rohde, WSBA #12809

21 | Garret G. Rasmussen    Joanna Wexler
Washington Harbour    1001 Fourth Avenue, Suite 4050

22 | 3050 K Street, Northwest    Seattle, WA 98154-1000
Washington D.C. 20007-5135    206-386-7353

23 | Attorneys for Plaintiff Vivendi    Attorneys for Plaintiff Vivendi

24 |

25 |

26 |

27 |

OPPOSITION TO MOTION TO DISMISS - 36
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

# TABLE OF CONTENTS

|  |  |  | **Page** |
|---|---|---|---|

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 2

ARGUMENT ................................................................................................................... 4

I.    This Is a Convenient and Appropriate Forum for This Case ................................... 4

    A.    T-Mobile Has Not Met its Burden of Showing that Litigating in This District Would Be Oppressive or Vexatious ............................................ 5

    B.    Plaintiff's Choice of Forum Is Entitled to Deference ............................... 6

    C.    T-Mobile Has Failed to Meet Its "Heavy Burden" to Show That an Adequate Alternative Forum Exists ......................................................... 8

    D.    The Private and Public Factors Do Not Tilt Strongly in Favor of a Foreign Forum ........................................................................................ 9

        1.    The Private Interest Factors Do Not Tilt Strongly in Favor of a Foreign Forum ............................................................................ 9

        2.    The Public Interest Factors Do Not Tilt Strongly in Favor of a Foreign Forum .......................................................................... 12

II.    This Court Has Personal Jurisdiction Over the German T-Mobile Defendants ............ 14

    A.    Personal Jurisdiction Is Proper Over DT Pursuant to RICO's Nationwide Service of Process Provision ............................................. 15

    B.    This Court Has Personal Jurisdiction Over Defendant T-Mobile International AG Through the Agency Theory of Personal Jurisdiction ............. 16

    C.    This Court Has Personal Jurisdiction Over T-Mobile Deutschland GmbH Under the Conspiracy Theory of Personal Jurisdiction ............................ 18

III.    This Court Has Subject Matter Jurisdiction ...................................................... 20

    A.    Vivendi Satisfies the Conduct Test. ..................................................... 21

    B.    Vivendi Satisfies the Effects Test. ....................................................... 22

IV.    The Complaint Properly States RICO Claims .................................................... 24

    A.    The Facts Alleged in the Complaint Must Be Accepted as True ............... 24

    B.    Vivendi Has Standing to Bring RICO Claims. ...................................... 24

        1.    Vivendi's Claims Are Ripe. ....................................................... 24

        2.    Vivendi Has Adequately Alleged Proximate Cause ...................... 25

    C.    The Complaint Adequately Alleges a Pattern of Racketeering ................. 27

        1.    The 2004 Communications Were Continuous, Predicate Acts of Wire Fraud ............................................................................. 28

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF CONTENTS
### (continued)

Page

(a)  The 2004 Communications Constitute Predicate Acts. ................28

(b)  The 2004 Communications Meet the Continuity
     Requirement...................................................................................28

2.  T-Mobile's Post-2004 Communications Were Predicate Acts................29

(a)  T-Mobile's Press Releases of September 5 and October 4,
     2006 ....................................................................................................29

(b)  T-Mobile's False Statement of March 7, 2006...........................31

(c)  The January 28, 2007 Press Release..............................................31

3.  The Wire Fraud is Pled with Adequate Specificity ..................................32

D.  The Complaint States a Claim Under § 1962(b) ....................................................32

E.  Vivendi Has Stated a Claim Under § 1962(c) .......................................................33

F.  Vivendi Has Adequately Stated a Claim under Section 1962(d). .......................34

CONCLUSION ...........................................................................................................................34

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF AUTHORITIES

Page

### FEDERAL CASES

*Action Embroidery Corp. v. Atlantic Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ................................................................... 15

*Ahmed Alhanim & Sons v. Toys "R" Us, Inc.*,
   126 F.3d 15 (2d Cr. 1997) .......................................................................... 14

*Allstate Life Ins. Co. v. Linter Group, Ltd.*,
   782 F. Supp. 215 (D.N.Y. 1992), *aff'd*, 994 F.2d 996 (2d. Cir. 1993) ................................... 10

*Allwaste, Inc. v. Hecht*,
   65 F.3d 1523 (9th Cir. 1995) ..................................................................... 27

*Anglo American Ins. Group v. Calfed Inc.*,
   940 F. Supp. 554 (S.D.N.Y. 1996) ............................................................. 10

*Armco, Inc. v. United Steelworkers of Am*,
   280 F.3d 669 (6th Cir. 2002) ..................................................................... 14

*Asahi Metal Ind. Co.*,
   480 U.S. 102 (1987) .................................................................................. 15

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ................................................................ 6, 14

*Bankers Trust Co. v. Rhodes*,
   859 F.2d 1096 (2d Cir. 1988) .................................................................... 25

*Bigio v. Coca-Cola Co.*,
   448 F.3d 176 (2d Cir. 2006) ................................................................. 8, 11

*Burger v. Kuimelis*,
   325 F. Supp. 2d 1026 (D. Cal. 2004) ......................................................... 25

*Butcher's Union Local 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ..................................................................... 15

*Butte Mining PLC v. Smith*,
   76 F.3d 287 (9th Cir. 1996) ................................................................ 20, 22

*C.A. Westel de Venez. v. American Tel. & Tel. Co.*,
   1992 U.S. Dist. LEXIS 12301 (S.D.N.Y. 1992) ........................................... 21

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

# TABLE OF AUTHORITIES
(continued)

**Page**

*Central States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.,*
230 F.3d 934 (7th Cir. 2000) ............................................................................16

*Chan v. Soc'y Expeditions, Inc.,*
39 F.3d 1398 (9th Cir. 1994) ......................................................................16, 17

*Cheng v. Boeing Co.,*
708 F.2d 1406 (9th Cir. 1983) ........................................................................4, 9

*Chirila v. Conforte,*
47 Fed. Appx. 838 (9th Cir. 2002) ....................................................................19

*Colorado Rivers Water Conservation Dist. v. United States,*
424 U.S. 800 (1976) ............................................................................................8

*Conley v. Gibson,*
355 U.S. 41 (1957) ......................................................................................24, 32

*Consol. Gold Fields PLC v. Minorco, S.A.,*
871 F.2d 252 (2d Cir. 1989) ........................................................................22, 23

*Continental Grain (Australia) Pty. Ltd. v. Pacific Oilseeds, Inc.,*
592 F.2d 409 (8th Cir. 1979) ............................................................................20

*Crowe v. Henry,*
43 F.3d 198 (5th Cir. 1995) ..............................................................................33

*DeMauro v. DeMauro,*
115 F.3d 94 (1st Cir. 1997).........................................................................26, 27

*Doe v. Unocal Corp.,*
248 F.3d 915 (9th Cir. 2001) ......................................................................16, 17

*Dole Food Co., v. Watts,*
303 F.3d 1104 (9th Cir. 2002) ...................................................................4, 8, 12

*Flag Co. v. Maynard,*
376 F. Supp. 2d 849 (N.D. Ill. 2005)................................................................16

*Fleet Nat'l Bank v. Boyle,*
Docket No. 04-CV-1277-LDD, 2005 U.S. Dist. LEXIS 44036 (E.D. Pa. Sept. 12,
2005).............................................................................................................30

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF AUTHORITIES
(continued)

Page

*General Environmental Science Corp. v. Horsfall,*
   753 F. Supp. 664 (N.D. Ohio 1990) .................................................................... 13

*Go-Video, Inc. v. Akai Electric Co., Ltd.,*
   885 F.2d 1406 (9th Cir. 1989) ................................................................... 15, 16

*Grimmett v. Brown,*
   75 F.3d 506 (9th Cir. 1995) ...................................................................... 24, 25

*Guidi v. Inter-Continental Hotels,*
   224 F.3d 142 (2d Cir. 2000) ........................................................................... 13

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947) ............................................................................... 7, 9, 12

*Hagans v. Lavine,*
   415 U.S. 528 ...................................................................................... 20, 24

*Harris Rutsky & Co. Ins. Svcs. Inc. v. Bell & Clements Ltd.,*
   328 F.3d 1122 (9th Cir. 2003) ................................................................... 6, 17

*Holmes v. Securities Investor Protection Corp,*
   503 U.S. 258 (1992) ..................................................................................... 25

*Howard v. America Online,*
   208 F.3d 741 (9th Cir. 2000) .......................................................................... 19

*Ikuno v. Yip,*
   912 F.2d 306 (9th Cir. 1990) .......................................................................... 27

*Imagineering, Inc. v. Kiewit Pac. Co.,*
   976 F.2d 1303 (9th Cir. 1992) ....................................................................... 26

*Iragorri v. United Tech. Corp.,*
   274 F.3d 65 (2d Cir. 2001) .......................................................................... 7, 8

*Jason v. Unite Here,*
   2005 U.S. Dist. LEXIS 35982 (W.D. Wash. Dec. 2, 2005) ............................... 17

*Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.,*
   98 F. Supp. 2d 480 (S.D.N.Y. 2000) ............................................................... 21

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

**TABLE OF AUTHORITIES**
(continued)

Page

*Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*,
   26 F. Supp. 593 (S.D.N.Y. 1998) .................................................................. 16

*Lehman v. Humphrey Cayman, Ltd.*,
   713 F.2d 339 (8th Cir.1983), *cert. denied*, 464 U.S. 1042 (1984) ........................................ 10

*Lexington Ins. Co. v. Forrest*,
   263 F. Supp. 2d 986 (E.D. Pa. 2003) .......................................................... 12

*Lincoln House, Inc. v. Dulpre*,
   903 F.2d 845 (1st Cir. 1990) ...................................................................... 25

*In re Livent, Inc. Sec. Litig.*,
   78 F. Supp. 2d 194 (S.D.N.Y. 1999) ...................................................... 6, 11

*Lolavar v. de Santibanes*,
   430 F.3d 221 (4th Cir. 2005) ...................................................................... 19

*Lony v. E.I. DuPont de Nemours & Co.*,
   935 F.2d 604 (3d Cir. 1991) ......................................................................... 7

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) ............................................................. 10, 12

*M2 Software Inc. v. M2 Commc'ns, L.L.C.*,
   149 Fed. Appx. 612 (9th Cir. 2005) ........................................................... 17

*Manu, Int'l S.A., v. Avon Prods.*,
   641 F.2d 62 (2d Cir. 1981) ............................................................... 6, 7, 13

*Mendoza v. Zirkle Fruit Co.*,
   301 F.3d 1163 (9th Cir. 2002) .................................................................... 26

*Metropolitan Life Ins. Co. v. Neaves*,
   912 F.2d 1062 (9th Cir. 1990) .................................................................... 14

*Mujica v. Occidental Petroleum Corp.*,
   381 F. Supp. 2d 1134 (C.D. Cal. 2005) ....................................................... 9

*Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*,
   86 F. Supp. 2d 137 (E.D.N.Y. 2000) ......................................................... 16

*Neo Sack, Ltd. v. Vinmar Impex, Inc.*,
   810 F. Supp. 829 (S.D. Tex. 1993) ............................................................ 12

OPPOSITION TO MOTION TO DISMISS - vi
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF AUTHORITIES
(continued)

Page

*Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines,*
    925 F.2d 1193 (9th Cir. 1991) ..................................................................8, 9

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
    416 F.3d 146 (2d Cir. 2005) .........................................................................6

*Oki Semiconductor Co. v. Wells Fargo Bank, Nat'l Ass'n,*
    298 F.3d 768 (9th Cir 2002) .......................................................................25

*Overseas Programming Cos., Ltd. v. Cinematographische Commerz-Anstalt,*
    684 F.2d 232 (2d Cir. 1982) ........................................................................11

*Peloza v. Capistrano Unified School Dist.,*
    37 F.3d 517 (9th Cir. 1994), *cert. denied,* 515 U.S. 1173 (1995) .........................24

*Peregrine Myanmar v. Segal,*
    89 F.3d 41 (2d Cir. 1996) ...........................................................................13

*Pereira v. United States,*
    347 U.S. 1 (1954) ....................................................................................29

*In re Phenylpropanolamine Prods. Liability Litig.,*
    344 F. Supp. 2d 686 (W.D. Wash. 2004) ...................................................17, 18

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ............................................................................6, 9, 14

*Poulos v. Caesars World, Inc.,*
    379 F.3d 654 (9th Cir. 2004) .................................................................20, 21, 22

*R. Maganlal & Co. v. M.G. Chem. Co., Inc.,*
    942 F.2d 164 (2d Cir. 1991) .........................................................................9

*Rahl v. Bande,*
    328 B.R. 387 (S.D.N.Y. 2004) ......................................................................7

*Ravelo Monegro v. Rosa,*
    211 F.3d 509 (9th Cir. 2000) ..............................................................4, 7, 8, 9

*Reebok Int'l Ltd. v. McLaughlin,*
    49 F.3d 1387 (9th Cir. 1995) .......................................................................13

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF AUTHORITIES
(continued)

Page

*Reid-Walen v. Hansen,*
933 F.2d 1390 (8th Cir. 1991) ............................................................... 10

*Republic of Argentina v. Weltover, Inc.,*
504 U.S. 607 (1992) ............................................................................... 15

*Republic of Philippines v. Marcos,*
818 F.2d 1473 (9th Cir. 1987) ............................................... 20, 21, 22

*Republic of Philippines v. Marcos,*
862 F.2d 1355 (9th Cir. 1988), *cert. denied,* 490 U.S. 1035 (1989) ............... 21, 23

*Reves v. Ernst & Young,*
507 U.S. 170 (U.S. 1993) ....................................................................... 34

*Second Amendment Foundation v. U.S. Conference of Mayors,*
274 F.3d 521 (D.C. Cir. 2001) ............................................................... 19

*Securities Inv. Prot. Corp. v. Vigman,*
764 F.2d 1309 (9th Cir. 1985) .............................................................. 15

*Sedima v. _____,*
105 S. Ct. at 3285 (____). ( ................................................................... 27

*Shalit v. Coppe,*
182 F.3d 1124 (9th Cir. 1999) .............................................................. 13

*Sher v. Johnson,*
911 F.2d 1357 (9th Cir. 1990) .............................................................. 14

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,*
127 S. Ct. 1194 (2007) ........................................................................ 5, 14

*Sinri Krish v. G.R. Balasubramaniam,*
2007 U.S. Dist. LEXIS 33859 (April 25, 2007) .................................. 4, 12

*Sonneberg v. United States,*
Docket No. 01-2067, 2003 U.S. App. LEXIS 6503 (3d Cir. Apr. 4, 2003) ............ 28

*Stauffacher v. Bennett,*
969 F.2d 455 (7th Cir. 1992) ................................................................ 19

OPPOSITION TO MOTION TO DISMISS - viii
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

# TABLE OF AUTHORITIES
(continued)

**Page**

*Sun Savings and Loan Assoc. v. Dierdorff,*
   825 F.2d 187 (9th Cir. 1987) ................................................................27, 29, 30

*Supermicro Computer, Inc. v. Digitechnic, S.A.,*
   145 F. Supp. 2d 1147 (N.D. Cal. 2001)............................................................9

*Swierkiewicz v. ____,*
   122 S. Ct. ____ (____).....................................................................................27

*Textor v. Bd. of Regents of Northern Illinois Univ.,*
   711 F.2d 1387 (7th Cir. 1983) ........................................................................19

*Thai Airways Int'l LTD v. United Aviation Leasing B.V.,*
   842 F. Supp. 1567 (S.D.N.Y. 1994) aff'd 59 F.3d 20 (2d Cir. 1995)....................21

*Thompson v. Davis,*
   295 F.3d 890 (9th Cir. 2002) ..........................................................................24

*Tonnemacher v. Sasak,*
   859 F. Supp. 1273 (D. Ariz. 1995) ..................................................................34

*Tuazon v. RJ. Reynolds Tobacco Co.,*
   433 F.3d at 1163 (9th Cir. 2006) ...................................................8, 10, 12, 14

*Underwager v. Channel 9 Australia,*
   69 F.3d 361 (9th Cir. 1995) ............................................................................19

*In re Union Carbide Corp. Gas Plant Disaster,*
   634 F. Supp. 842 (S.D.N.Y. 1986) ..................................................................14

*United States v. Brooklier,*
   685 F.2d 1208 (9th Cir. 1982), *cert. denied*, 459 U.S. 1206, 75 L. Ed. 2d 439, 103 S.
   Ct. 1194, 103 S. Ct. 1195 (1983)......................................................................34

*United States v. City of Redwood City,*
   640 F.2d 963 (9th Cir. 1981) ..........................................................................24

*United States v. Colton,*
   231 F.3d 890 (4th Cir. 2000) ..........................................................................28

*United States v. Conte,*
   349 F.2d 304 (6th Cir. 1965) ..........................................................................29

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

## TABLE OF AUTHORITIES
(continued)

Page

*United States v. Ebersole,*
    411 F.3d 517 (4th Cir. 2005) ....................................................................21

*United States v. Ervasti,*
    201 F.3d 1029 (8th Cir. 2000) ..................................................................23

*United States v. Halbert,*
    640 F.2d 1000 (9th Cir. 1981) .............................................................27, 31

*United States v. Keplinger,*
    776 F.2d 678 (7th Cir. 1985) ....................................................................28

*United States v. Philip Morris USA, Inc.,*
    449 F. Supp. 2d 1 (D.D.C. 2006) ..............................................................23

*United States v. Rybicki,*
    354 F.3d 124 (2d Cir. 2003) .....................................................................23

*United States v. Williams,*
    441 F.3d 716 (9th Cir. 2006) ....................................................................22

*United States v. Wood,*
    335 F.3d 993 (9th Cir. 2003) .............................................................27, 31

*Universe Sales Co. v. Silver Castle, Ltd.,*
    182 F.3d 1036 (9th Cir. 1999) ..................................................................13

*Wiwa v. Royal Dutch Petroleum Co.,*
    226 F.3d 88 (2d Cir. 2000) ....................................................................5, 14

### STATE CASES

*Astor Holdings, Inc. v. Roski,*
    No. 01 Civ. 1905 2002 WL 72936 (S.D.N.Y. Jan. 17, 2002) ..................11

### FEDERAL STATUTES

18 U.S.C. 1343 ..............................................................................................27

18 U.S.C. § 1964(c) ......................................................................................30

18 U.S.C. § 1965(b) ......................................................................................15

OPPOSITION TO MOTION TO DISMISS - x
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

# TABLE OF AUTHORITIES
(continued)

**Page**

Fed. R. Civ. P. 44.1 ............................................................................................................... 13

## MISCELLANEOUS

2 *Business Transactions in Germany* § 22.02 (Bernd Ruster et al. eds., 2006) ......................... 16

RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 402(1)(a) ....................................................................................................... 21

OPPOSITION TO MOTION TO DISMISS - xi
OHS East:160269203.3

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353