# EXHIBIT A

**Exhibit A-1**

SHAREHOLDERS AGREEMENT

between and among

1.  Elektrim S.A., a joint stock company duly organized under
    the laws of the Republic of Poland, having its business
    seat at Chalubinskiego 8, 00-950 Warsaw, Poland,

    - hereinafter referred to as "Elektrim" -

2.  Polpager Sp. z o.o., a limited liability company duly
    organized under the laws of the Republic of Poland,
    having its business seat at Zurawia 24/4, 00-515 Warsaw,
    Poland,

    - hereinafter referred to as "Polpager" -

3.  U S WEST International B.V., a limited liability company
    duly organized under the laws of the Netherlands, with
    registered place of office at Foppingadreef 20-22, 1102
    BS Amsterdam, The Netherlands,

    - hereinafter referred to as "U S WEST" -

4.  DeTeMobil Deutsche Telekom MobilNet GmbH, a limited
    liability company duly organized under the laws of the
    Federal Republic of Germany, having its business seat at
    Oberkasseler Strasse 2, 53227 Bonn, Germany,

    - hereinafter referred to as "DeTeMobil" -.

5.  Elektrim-Autoinvest S.A., a joint stock company duly
    organized under the laws of the Republic of Poland,
    having

C-2

**Exhibit A-2**

2

its business seat at ul. Panska 85, 00-834 Warsaw, Poland,

- hereinafter referred to as "Elektrim Autoinvest",

6.    Kulczyk Holding S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Dziadoszynska 10, 61-248 Poznan, Poland,

- hereinafter referred to as "Kulczyk".

(U S WEST and DeTeMobil are hereinafter also referred to individually as "Foreign Party" or collectively as "Foreign Parties". The Foreign Parties together with Elektrim are hereinafter also referred to individually as an "Operational Party" and collectively as "Operational Parties". The Operational Parties and Polpager are hereinafter also referred to individually as a "Party" and collectively as "Parties".)

PREAMBLE

WHEREAS, the Polish Government has made public its intention to award in 1996 and after a public bid process up to two licenses to construct, own, and operate a 900 MHz GSM cellular telephony business in Poland (the "Business"); and

WHEREAS, the Parties are convinced that an international consortium consisting of experienced foreign cellular operators and strong local partners will best be capable of submitting a bid (the "Tender") that will most fully meet the objectives of the Polish Government and, upon receiving a license to operate a 900 MHz GSM cellular network in Poland (the "License"),

**Exhibit A-3**

3

developing and implementing such network and operating the Business together (the "Project"); and

WHEREAS, certain of the Parties together with other Polish investors are in the process of forming a limited liability company under Polish law (the "Company")(such certain Parties and the Polish investors the „Founding Members");

WHEREAS, U S WEST is a subsidiary of U S WEST, Inc. with its principal place of business in Denver, Colorado, United States of America, and DeTeMobil is a subsidiary of Deutsche Telekom AG with its principal place of business in Bonn, Federal Republic of Germany;

NOW, THEREFORE, the Parties agree with regard to the future cooperation as joint shareholders of the Company as follows:

CHAPTER A

Joint Action of the Parties regarding the Company

Article 1

Shareholding of the Company

1.1    It is the intention of the Parties that, except by operation of the provisions of this Agreement, each of the Parties shall own a number of shares of the Company which shall provide to such Party the percentage of the total share capital of the Company indicated for such Party below:

| | |
|---|---|
| (i) | Elektrim, 32.5%; |
| (ii) | DeTeMobil, 22.5%; |
| (iii) | U S WEST, 22.5%; |
| (iv) | Polpager, 4%; |

**Exhibit A-4**

4

(v)        Elektrim Autoinvest, 4.6%; and
(vi)       Kulczyk, 4.8%.

1.2    The Parties agree to exercise their voting rights as
       shareholders and will procure that their appointees on
       the Supervisory Board and the Management Board will
       exercise their votes to the effect that each provision of
       this Agreement will be implemented and maintained while
       this Agreement is in force, provided that no such action
       shall be in violation of provisions of mandatory Polish
       law. Subject to the obligation under Article 10.2 and
       except for any procedure in which a Party requests an
       amendment to this Agreement in accordance with Article
       10.2 the Parties agree that they will not assert in any
       litigation, arbitration, administrative proceeding or
       other forum that any provision of this Agreement is
       contrary to Polish law.

1.3    The Parties shall assure that the Company shall have the
       Articles of Association of the Company (the "Articles")
       an English language translation of which is attached
       hereto as Exhibit I.

       If (i) pursuant to a final decision of a court of
       competent jurisdiction any one or more of the provisions
       of the Articles is held or becomes invalid, or (ii) the
       court order required to give effect to the Articles is
       not granted, each Party shall take all action within its
       power, including, without limitation, voting any and all
       shares held by it in favor of amendments to the Articles,
       to provide each Party with the benefit of the rights and
       protections granted, or purported to be granted, in the
       Articles and to ascertain the proper compliance with the

procedures prescribed or purported to be prescribed in the Articles.

1.4 As the Founding Members have formed the Company without US WEST participating, DeTeMobil shall, following the execution of this Agreement by Elektrim, DeTeMobil and US WEST sell to US WEST 22.5% of the shares in the Company subject to the terms and conditions set out in the sales agreement appended hereto as Exhibit III. The Parties hereby consent to such transfer and agree that they shall procure that immediately following the transfer becoming effective Dr. Guenter Pfeiffer and Dr. Klaus Engelen are replaced as the members of the Supervisory Board by Mr. Krzysztof Zakrzewski and Mr. Joel Wachtler and that as soon as practical the current Managing Director Strategy, Marketing and Sales, Mr. Paul A. Wolters, shall be replaced by Mr. Wladyslaw Bawiec.

1.5 Each Party will use its best efforts to cause the Company not to take any Important Action (as listed in Exhibit II) unless such Important Action has been approved by the Shareholders' Meeting or the Supervisory Board in accordance with this Agreement.

## Article 2
### The Activities of the Company

2.1 The Company shall in particular engage in the following activities:

(a) prepare and submit the Tender;

(b) design, develop, construct and put into operation in the territory of Poland the GSM-network;

6

(c)  render cellular telecommunication services in Poland
on the basis of the GSM-standard in accordance with
the License;

(d)  buy and sell GSM-telecommunication devices adjunct
to the rendering of cellular telecommunications
services on the basis of the GSM-standard in
accordance with the License;

(e)  cooperate with national and international network
operators to obtain interconnection arrangements;

(f)  market GSM-telecommunication services and devices to
customers in Poland.

2.2  After obtaining the License, the Company shall pursue a
business strategy to seek a mass market penetration.


Article 3

Shareholders' Meeting


3.1  The Shareholders' Meeting shall have the responsibilities
as set forth in Article 10 of the Articles.

3.2  The Parties shall cause the Shareholders' Meeting not to
take or approve any Important Action unless all
Operational Parties have voted at such Shareholders'
Meeting in favor of such Important Action, or have
consented thereto in writing.

**Exhibit A-7**

7

Article 4
Supervisory Board

4.1  To the extent permitted under Polish law, the Supervisory Board shall assume the responsibilities and powers of the Shareholders' Meeting, in particular including the responsibility to supervise the Management Board of the Company and the powers associated therewith. The Supervisory Board shall actively monitor the Company's business.

4.2  The Supervisory Board shall have nine members (at least five of which shall be Polish nationals domiciled in Poland). Two of the members shall be appointed by Elektrim, two by U S WEST, and two by DeTeMobil. The members appointed by Elektrim shall be Polish citizens domiciled in Poland as required under Polish Telecommunications Law and the terms of the License ("Polish Citizen"). The Foreign Parties may appoint persons who are not Polish Citizens to serve as members of the Supervisory Board. The remaining three members shall be appointed by the Shareholders' Meeting and shall be Polish Citizens. Should any of the Operational Parties wish to replace a member of the Supervisory Board which it appointed, the Parties shall cause the Shareholder's Meeting to revoke the appointment of such Supervisory Board member to be replaced.

4.3  The members of the Supervisory Board shall be appointed in each case for a period ending at the end of the ordinary Shareholders' Meeting at which a resolution is adopted discharging them from responsibility for their activities during the preceding full business year since their appointment. They may be appointed for further terms of office. If a member of the Supervisory Board

8

hands in his resignation, or for some other reason
retires from office, a new member shall without undue
delay be appointed to the Supervisory Board by the Party,
or the Shareholders' Meeting, as the case may be, which
appointed the member who is resigning or retiring.

4.4   The Supervisory Board shall elect one of its Polish
members as Chairman of the Supervisory Board.

4.5   Except for decisions to take Important Actions, decisions
by the Supervisory Board shall be made by simple majority
vote. A quorum requires that at least one member
appointed by each of the Operational Parties is present
at and votes in the meeting. Important Actions may be
approved only if all members of the Supervisory Board who
are present at the meeting and who were appointed by an
Operational Party voted for or consented in writing to
such Important Action.

4.6   Meetings of the Supervisory Board shall be held on a
quarterly basis or more often if so required by two
members of the Supervisory Board. The Parties expect that
it will be necessary for the Supervisory Board to meet
monthly during the implementation phase of the Project.

4.7   The Shareholders' Meeting shall establish internal rules
of procedure for the Supervisory Board which will
implement, inter alia, the following: The Supervisory
Board shall be empowered to pass its resolutions in
writing if all members consent to such procedure. Seven
days prior to any meeting of the Supervisory Board, the
Chairman shall send by fax a written notice to each
member of the Supervisory Board advising such member of
the date set for the meeting and setting forth an agenda
of the business to be conducted at such meeting. No

Exhibit A-9

9

business shall be conducted at such meeting unless it has been referred to in such notice. The Supervisory Board shall be authorized to form committees comprised exclusively of members of the Supervisory Board to which it may delegate such responsibilities as it sees fit. Each Operational Party shall be represented on each such committee by at least one representative.

4.8    The Supervisory Board shall appoint the members of the Management Board and shall establish internal rules of procedure for the Management Board which shall, inter alia, incorporate the provisions dealing with the operation of the Management Board contained in this Agreement and, in particular, shall require the Management Board to obtain approval of the Supervisory Board before taking up any Important Action.

## Article 5
### Management Board

5.1    The function of the Management Board shall be to manage all aspects of the Company. Except as otherwise specified in this Agreement or Polish law, the management and control of the Company shall be vested in the Management Board or such of its members to whom it shall delegate that power.

5.2    The Management Board shall consist of five members, three of which are required to be Polish Citizens. The five members shall have the following responsibilities and shall be nominated by the Parties as indicated below:

**Exhibit A-10**

| Title | Nominating Party |
|---|---|
| Director General | Elektrim |
| Director of Strategy, Marketing and Sales | U S WEST |
| Director of Network Operations | DeTeMobil |
| Director of Finance | Elektrim |
| Director of Administration | Elektrim |

5.2.1 The Director General will be responsible for the development of the Company's overall direction and the long-term goals of the Company as well as the implementation of the business plan, the Company's budget and the policies of the Company. The Director General is, moreover, responsible for establishing the reporting structure and a management information system and representing the Company vis-a-vis governmental authorities and the public in general on matters of public relations, public policy and regulatory affairs. In establishing a management information system, the Director General shall be supported by a manager who shall regularly attend the meetings of the Management Board and who will be responsible for developing and operating a management information system on a Company-wide basis. Such manager shall be nominated by DeTeMobil. The Director General will also be responsible for establishing the legal services supporting the Company.

5.2.2 The Director of Strategy, Marketing and Sales will be responsible for the formulation and preparation of the annual revision to the Company's five-year business plan. To carry out this function, the Director of Strategy, Marketing and Sales shall appoint a Chief Strategist, who will also support the Company's efforts in public policy, regulatory affairs and interconnection negotiations.

11

Moreover, the Director of Strategy, Marketing and Sales (i) will be responsible for all aspects of marketing and sales, including product development / launch, pricing, marketing, communications and all customer contact, including sales and distribution operations, sales channel management and customer service / administration, call center management (front office) and billing services and inquiries (back office), (ii) will, in coordination with the Director Network Operation and the Director Finance, be responsible for the procurement of terminals and SIM cards, and (iii) will be responsible for the local selection and training, in cooperation with the human resources function, of sales and marketing staff, brand building and service quality in the marketing and selling of the Company's GSM services.

5.2.3 The Director of Network Operations will be responsible for network design, network build, and network operations (including the billing system), as well as repair and service quality implementation and will also be responsible for (i) the selection and training, in cooperation with the human resources function, of staff of the network operation division, (ii) participating in the development of the Company's strategy and the Company's budget, and (iii) procurement, in coordination with the Director Strategy, Marketing and Sales and the Director Finance, of network infrastructure and equipment, and civil works.

5.2.4 The Director of Finance will be responsible for tax, the accounting (including electronic data processing), treasury, and controlling functions and shall prepare the annual budget in accordance with Article 5.8. The treasury and controller positions under the Director of Finance will be shared by persons nominated by DeTeMobil

Exhibit A-12

12

and/or U S WEST. Unless DeTeMobil and U S WEST agree otherwise, DeTeMobil will nominate a person for the position of treasurer and U S WEST will nominate a person for the position of controller. For the avoidance of doubt, each such person shall report to the Director of Finance.

5.2.5 The Director of Administration will be responsible for the major support functions for the Company, including human resources, and business offices including the negotiation of site rental agreements, and will act as interface with local and regional authorities. The Director Administration will provide these functions in coordination with and the assistance of and pursuant to the specifications developed by the other members of the Management Board.

5.3 All persons nominated by Elektrim to fill positions on the Management Board shall be Polish Citizens. The Foreign Parties may nominate foreigners to fill the positions on the Management Board for which they are entitled to nominate candidates. Each of the Operational Parties agree that they will support the nomination of a person nominated by another Operational Party, unless there is a reasonable basis for opposing the appointment of such nominee. The fact that any director or manager to be nominated by one of the Foreign Parties does not speak and understand the Polish language does not constitute a reasonable basis for opposing the appointment. If any Operational Party requests the removal of a member of the Management Board nominated by such Operational Party, the other Operational Parties shall take all action necessary to give effect to such removal at the next meeting of the Supervisory Board or at such earlier time as the members

**Exhibit A-13**

13

of the Supervisory Board shall unanimously agree in writing.

5.4   Meetings of the Management Board must include a director nominated by each of the Operational Parties. Except for decisions with respect to Important Actions or taken pursuant to Article 5.7, the Management Board shall make all of its decisions by majority vote of those present. If the members of the Management Board disagree about a decision requiring its unanimous consent, the matter may be brought before the Supervisory Board.

5.5   Each member of the Management Board nominated by Elektrim shall be authorized to represent and bind the Company jointly with a member of the Management Board nominated by a Foreign Party and vice versa.

5.6   Meetings of the Management Board shall be called by the Director General by written notice and unless otherwise agreed will be held on a regular basis.

5.7   The following acts and transactions by members of the Management Board shall require the unanimous prior approval of the Management Board, unless such act or transaction has already been properly approved by the Supervisory Board:

(a)   filing of lawsuits, out-of-court settlement of lawsuits or any other claims brought or threatened to be brought against the Company where the amount in dispute exceeds PLN 100,000 or equivalent;

(b)   employment and dismissal of employees receiving remuneration of whatever kind in excess of PLN 5,000

**Exhibit A-14**

14

per month and the granting or vesting of any pension rights and/or retirement benefits;

(c)   acquisition or sale of real estate;

(d)   except as specifically provided in an annual budget, the rent, acquisition, or disposition of any asset having a value or an annual cost in excess of PLN 50,000, in a transaction or series of related transactions;

(e)   the incurrence by the Company of any debt, financing, capital lease, or similar obligation except in the ordinary course of business in amounts not exceeding PLN 100,000 annually;

(f)   recommendations regarding calls for capital from the shareholders of the Company; and

(g)   execution of a contract or entering into a commitment having a scheduled term of more than one year (other than rent or leases of vehicles or equipment in the ordinary course of business) or, except as specifically provided in an annual budget, a value in excess of PLN 50,000 in a transaction or a series of related transactions;

The Supervisory Board may amend the foregoing list.

5.8   The Company shall conduct the Business pursuant to a five-year business plan which shall be revised and restated annually. The Director of Strategy, Marketing and Sales, in consultation with the members of the Management Board, shall propose to the Director General annual revisions to the five-year business plan. The

15

Director of Finance, in consultation with the other members of the Management Board, shall propose an annual budget, which proposal shall be prepared and presented to the Director General together with the proposed annual revisions to the Company's five-year business plan. Upon review and approval of the annual revisions to the business plan and the budget by the Director General, the Director General shall present such proposed annual revisions to the business plan and the budget to the Management Board. Such annual revision and annual budget shall be prepared in accordance with a schedule to be determined by the Management Board.

5.9   At least 45 days before the last regularly scheduled meeting of the Supervisory Board during each fiscal year of the Company, the Director General shall present to the Supervisory Board for approval the annual revision to the five-year business plan and the budget for the next fiscal year. Until such revision is approved by the Supervisory Board, the Company shall conduct the Business pursuant to the five-year business plan in effect.

5.10   Promptly, but, unless otherwise decided by the Supervisory Board, within ninety days after the close of each fiscal year of the Company, the Management Board shall prepare financial statements and deliver to the Supervisory Board a copy of the audit report prepared by the auditors setting forth, as of the end of such fiscal year, a balance sheet, a profit and loss statement, and a statement of cash flows and changes in financial position (each of which shall be audited).

5.11   Promptly, but in any event not more than thirty days after the close of each quarter of each fiscal year of the Company, the Management Board shall cause to b

**Exhibit A-16**

16

delivered to the Supervisory Board a balance sheet, a profit and loss statement and a statement of cash flows and changes in financial position (each of which need not be audited). Promptly, but in no event less than fifteen days after the close of each month, the Management Board shall cause the Supervisory Board to receive a statement of the prior month's operations, which shall include sales, expenses, extraordinary gains or losses, and net income.

## Article 6
### Liquidation in Event of Non-Award to Company

6.1   Should the Company decide not to make a Tender for a License or not be successful in obtaining the License on terms satisfactory to the Company, after such appeals as the Company shall deem appropriate, the Company shall be liquidated.

6.2   Notwithstanding the foregoing, all Parties shall be obliged to make any outstanding cash contributions to the Company and on a pro rata basis prior to the liquidation make all such additional cash contributions necessary to enable the Company to satisfy its obligations vis-a-vis all shareholders and third parties prior to the liquidation or sale of the shares.

## Article 7
### Initial Financing of the Company

7.1   To meet the requirements of the invitation for Tender, it is expected that the Company requires an initial equity of approximately PLN 3,000,000 (three million zlotys).

**Exhibit A-17**

17

The Parties will contribute to the Company their respective pro-rata share of the funds needed to meet these initial financing requirements.

7.2    Each Party shall sell to the Company its work product prepared with respect to the proposed bid for the License. The Company shall pay for such work product a price which takes into account the reasonable direct costs incurred after 29 September 1995 by such Party in connection with the preparation of such work product excluding traveling expenses and subsistence for its own employees.

Article 8
Transfer of the Shares; Right of First Offer

The transfer, pledge and any other disposal of a share in the Company or a part thereof or other interest therein (herein-after referred to as the "Transfer") by a shareholder shall require the prior consent of the Supervisory Board. Such consent shall be given for the sale and transfer of the interest if (i) the person or entity intending to acquire the interest assumes any and all of the rights and obligations to the Company and the Parties of the Party transferring the interest, and if (ii) such Transfer is permitted under the terms of the License and all other applicable laws, and if (iii) no Party has been able to establish by clear evidence that the proposed Transfer to the particular transferee in question would result in material commercial injury to the Company. The approval shall be given only for the sale of the entire interest of a Party to another party. The Supervisory Board shall approve a transfer of shares to an existing shareholder of the Company (a) by Elektrim as long as Elektrim

18

maintains at least 26% of the outstanding shares of the Company, and (b) by Elektrim Autoinvest.

The Supervisory Board may establish procedures which require the Party intending to transfer the interest to first offer the interest to the remaining Parties. If such procedures have been established, the Supervisory Board may require the Party intending to transfer the interest to first comply with such procedure before granting the consent.

## CHAPTER C
### General Obligations and Covenants

### Article 9
### Industrial Property Rights and Know-How

9.1    The rights to inventions, production prototypes, trademarks and other industrial property rights and secret know-how produced and owned by the parties/shareholders before the beginning of the cooperation provided for under this Agreement and licensed to the Company under this Agreement and related agreements shall continue to be owned by the respective party/shareholder and shall only be used by the Company in accordance with the terms of the applicable license agreements.

9.2    All scientific and technological results achieved by the Company in the course of the Company's activities shall be considered as corporate property belonging to the Company which shall undertake all measures necessary to effectively protect such intellectual property.

**Exhibit A-19**

19

9.3 The Operational Parties will support the Company during the first three years of its operation in the following manner:

(a) DeTeMobil will effect the transfer to the Company and its employees of know-how with respect to the technical aspects of establishing, roll-out and operating of GSM networks;

(b) U S WEST will effect the transfer to the Company and its employees of know-how with respect to the marketing and sales aspects of establishing, developing and operating GSM services;

(c) Elektrim will provide the Company with commercial support services in the procurement of goods and services from third parties.

All of the above services shall be provided promptly by the Operational Parties subject to prior entering into service agreements between the Company and each of the Parties or their affiliates. The remuneration terms will be agreed to be on an at-cost basis.

Article 10
Obligation to Adapt

10.1 The Parties are obliged to act and in particular vote in accordance with this Agreement. They shall use their best efforts to assure that the Company will act in accordance with the provisions of this Agreement.

10.2 In the event that the terms of the Tender or the License or Polish law are in contradiction to or otherwise

Exhibit A-20

20

require changes of or amendments to this Agreement, the Articles, or related agreements, the Parties will negotiate in good faith to execute such changes or amendments to the respective agreements to comply with all applicable mandatory rules and provisions of Polish law, and to provide each Party, to the extent possible, with the benefit of the rights and protections granted, or purported to be granted, in this Agreement and to ascertain the proper compliance with the procedures prescribed or purported to be prescribed in this Agreement.

10.3 From and after the date of execution and delivery of this Agreement, the Parties shall execute and deliver such further documents and instruments and shall do such other acts and things as may reasonably be requested by any other Party in order to implement this Agreement. The Parties shall cooperate and assist one another in the performance of the provisions of this Agreement and shall take such steps as are reasonably necessary to allow another Party to discharge its obligations under this Agreement.

## Article 11
### Confidentiality

11.1 Each Party shall hold in strict confidence technological, financial, commercial and other information it shall receive from other Parties or the Company and shall undertake all reasonable measures to protect such information from disclosure to third parties. Such information shall not be considered confidential for the purposes of this Agreement if:

21

(a)  at the time of the transfer thereof, such information
     is already in the possession of the receiving Party
     free from any obligation of confidentiality;

(b)  such information is in public domain or later becomes
     part of the public domain without any fault of one or
     more of the Parties;

(c)  such information was obtained without any obligation
     of confidentiality from a third party owing no duty
     to the other Party to keep this information
     confidential.

11.2  All information relating to the Company and its
      activities shall be treated as confidential unless it is
      obvious from the circumstances that such information is
      not of a confidential nature.

11.3  Nothing in this Article shall prevent any of the Parties
      from disclosing confidential information if and to the
      extent it is required by Polish law or the laws of other
      jurisdictions that such information be disclosed. The
      above notwithstanding any Party required to disclose
      confidential information shall inform the other Parties
      and, if possible, coordinate any such disclosure with the
      Operational Parties. Any Party required to disclose
      confidential information to another person shall take all
      reasonable measures to assure that such information is
      protected from further disclosure, including asserting in
      judicial or administrative proceedings any right
      available to it under law to protect the confidentiality
      of such information.

11.4  The provisions of this Article shall apply mutatis
      mutandis to the Company and the information it shall

Exhibit A-22

22

receive from the Parties, provided, however, that the Company may make such disclosures in connection with submitting a bid for the License as are required by the Tender or useful to improve the prospects of obtaining a License.

### Article 12
### Covenant not to Compete

12.1 Unless expressly approved by the Supervisory Board which approval shall not unreasonably be withheld, no Party shall

(i)     compete directly or indirectly with the Company in

(a)     providing cellular telecommunication service in Poland on the basis of the GSM-standard (including DCS 1800 and similar technology) or

(b)     bidding for a license to provide such services

(ii)    nor support competing activities of third parties in providing cellular telecommunication service in Poland on the basis of the GSM-standard other than in the ordinary course of business of such shareholder as at the time this Agreement has been executed by all Parties. The Parties acknowledge that each of them retains the right to provide non-GSM telecommunications services in Poland and all types of telecommunications services outside of Poland.

12.2 Each of the Parties assures that it does not have any arrangements or possible cooperation with third parties

23

in connection with the planning and operation of a mobile telephone network in Poland and that except for the discussions contemplated by Article 1.4 hereof, the Parties shall not commence any discussions with third parties relating to a possible cooperation in connection with the planning and operation of a mobile telephone network in Poland.

12.3   This Article 12 shall not prevent the Company and/or the Parties as a whole from cooperating in any form with another group of contenders for the License.

12.4   The provisions of this Article 12 shall terminate on the earlier of (i) the date on which all Parties agree not to pursue the Project any longer or (ii) the 90 days following the date on which both Licenses have been finally awarded to and accepted by a third party.

Article 13
Access to Books and Accounts

The Company (i) will maintain accurate financial records in reasonable detail to accurately reflect its transactions and the disposition of their assets and (ii) will implement a system of internal accounting controls to ensure that transactions are executed in accordance with the authorization of the Company's management and are reflected in the financial statements of the Company in conformity with Polish and, so long as it is beneficial to the Company, internationally accepted accounting principles. The Company shall appoint an internationally recognized firm of accountants to audit, on an annual basis, the financial statements prepared by the Company in accordance with Polish accepted accounting principles. Such

24

financial statements shall be presented to the Parties not later than the 90th day after the end of the fiscal year.

Each Party is entitled to access to all relevant data and information to be able to compile, at the Party's expense and responsibility, books and financial statements of the Company because the Parties may need for their own purposes that the books and the financial statements are kept and prepared by the respective Party in accordance with generally accepted accounting principles in its respective home country. Any Party shall have the right to request the Company's auditors to prepare such books and financial statements. Any Party making such request, shall bear the incremental costs resulting from such preparation.

## Article 14
### Representations and Warranties

Elektrim hereby represents and warrants that it currently qualifies as a Polish legal entity which does not qualify as foreign company within the meaning of Articles 3 and 7 of the Act on Companies with Foreign Shareholders of 14 June 1991 with later amendments as well as all relevant Polish telecommunications laws.

## CHAPTER D
### Term and Termination

## Article 15
### Entering in Force; Term

This Agreement will enter into force for an unlimited period of time (unless the Company is terminated pursuant to the

25

procedures set out in this Agreement or the Articles) with immediate effect upon execution by Elektrim, US WEST and DeTeMobil. Should U S WEST not obtain board approval in accordance with and until the date provided for in Article 22.5, all rights and obligations to be assumed by U S WEST herein shall be assumed by DeTeMobil. In particular, in this case DeTeMobil shall subscribe to 45% of the shares in the Company. In this case and unless the transfer of the shares to a third party violates the terms of the License (if any), DeTeMobil is entitled to transfer all or parts of its shares in the Company to a third party at terms and conditions to be determined by DeTeMobil. The Supervisory Board shall consent to such Transfer of an interest by DeTeMobil, subject to the conditions contained in (ii) and (iii) of Sentence 2 of Article 8. Sentence 2 (i) and 3 of Article 8 do not apply. As part of such transaction, DeTeMobil is entitled to offer to such third party to become an Operational Party to this Agreement if it acquires more than 20% of the outstanding shares of the Company. In addition, DeTeMobil is entitled to assign such rights and arising out of or in connection with this Agreement to such new Operational Party as it determines to be in the best interest of the Company. The Agreement may be terminated only in accordance with Article 16 hereof.

## Article 16
### Call Option, Material Default, Damages

16.1 Each Party (each a "Grantor") hereby irrevocably offers to the Operational Parties the right to purchase the shares in the Company owned by the Grantor (the "Option Shares") at the price determined in accordance with Article 16.(3) hereof (the "Call Option"). The foregoing offer shall be subject to the condition that one of the following events has occurred:

(a)  A Grantor admits in writing, that it has materially defaulted, or

(b)  an arbitration court issues a declaratory award finding that such Grantor is in material default.

16.2  For the purpose of Article 16.1, a material default shall exist under the following circumstances:

(a)  a material violation of a material obligation of a Party provided for under this Agreement or related agreements vis-a-vis the Company or the other Parties which continues for a period of twenty business days after the defaulting Party has been notified in writing of such default;

(b)  if a Party defaults in making a payment of contributions for new shares subscribed to by such Party in writing, and such default continues for a period of more than thirty days after such Party has been notified of the default;

(c)  if the Grantor becomes and as long as the Grantor remains Economically Impaired as defined in Art. 19.4 (3);

(d)  if a Party breaches any obligation or violates or causes the Company to be in violation of any law which warrants a rescission or material amendment of any license granted to the Company for the purpose or in connection with providing cellular telephony services, in particular including a violation based on the fact that a party which

27

qualified as a Polish Party as of the formation of this Company no longer qualifies as such;

(e)     if such Party acts in a manner which materially adversely affects the business of the Company; or.

(f)     the knowing and willful violation or breach by such Party or any of its affiliates (including any such breach by any affiliate of such Party where such Party has prior awareness of (i) the intention of such affiliate to take the action constituting the breach and (ii) the fact that such action would constitute a breach hereof) of any of the covenants made by, or requirements imposed on, the Company or such Party by the terms and conditions of any license obtained by the Company or of any other agreement which the Company may be required to enter into with any governmental or regulatory authority in connection with such license; and provided that such violation or breach shall not give rise to a termination of this Agreement with respect to the Party if such violation or breach is fully cured by such Party to the reasonable satisfaction of the other Parties within any applicable cure period set forth in such license or agreement. For the purpose of the foregoing clause, a Party is deemed to be affiliated with another person if (a) it controls such person, is controlled by such person or is under common control with such person or (b) a close family member of such Party controls, is controlled by or is under common control with such person.

16.3  The price to be paid to a Party for the Option Shares shall be (i) such Party's proportional share in the net

28

asset value of the Company (assets minus liabilities including loans granted by any of its shareholders but not including the share capital and any profit or loss carry forwards) as determined in the audited financial statements of the Company for the last completed fiscal year plus (ii) all of such Party's capital contributions made after the date of such financial statements and not reflected therein. Payment becomes due 30 days after the Option Shares have been transferred.

16.4    The Call Option can be exercised by each Operational Party as the case may be (i) either until 60 days after the defaulting Party has admitted to each of the Operational Parties in writing that it is in material default and requested each of the Operational Parties to state whether such Operational Party wishes to exercise its Call Option or (ii) 60 days after the arbitration award referred to under Article 16(1)(b) has been provided to all Operational Parties.

16.5    If more than one Operational Party accepts the Option Shares, each such Operational Party shall be entitled to its pro rata share of the Option Shares based on their proportional shareholding in the Company vis-a-vis the other Operational Parties that did exercise the Call Option. Each Operational Party is entitled to specify that its part of the Option Shares shall be transferred to a third party designee.

16.6    The Option Shares shall transfer to the Operational Party exercising the Call Option or its designee once the Supervisory Board approved such transfer. Each Party shall use its best efforts to assure that the Supervisory Board approves of the transfer made in accordance with this Article 16.

**Exhibit A-29**

29

16.7  Any claims for damages arising out of or in connection
with the violation of this Agreement and arising prior to
the final award of the two Licenses shall be limited to
50,000,000 new zlotys for each Party. Damage claims
raised with regard to any default which occurred after
the final award of the two Licenses (i) shall be limited
to US $ 8,000,000 or its Polish zloty equivalent in each
case for each Party, and (ii) without limiting the rights
of the Parties to seek declaratory or injunctive relief,
no Party may bring an action for damages unless the
aggregate amount in dispute is at least U.S.$.2,000,000
Polish zloty equivalent.


Article 17
Permits and Approvals from Cartel Authorities

17.1  The Parties are aware that the Foreign Parties may need
antitrust approval from the respective authority in their
own countries and from the European Union in order to
consummate the transactions contemplated by this
Agreement. The parties will cooperate to obtain such
permits and approvals as quickly as possible, and agree
that the Company shall not commence operating the
Business before such approval has been obtained.


17.2  The Parties are also aware that they will require
antitrust approval from the Polish anti-monopoly
commission. The Parties will also cooperate to obtain
such approval as quickly as possible.


Article 18
Legal Constraints on the Foreign Parties

30

18.1 Notwithstanding anything to the contrary in this Agreement or any relevant document (including the Articles), the Parties hereby acknowledge that U S WEST cannot (i) provide interchange telecommunications services (i.e. transport voice or data information from a point located in an exchange area to a point outside an exchange area) in the United States; and (ii) manufacture telecommunications and customer premises equipment (i.e. telephones, fax machines, etc.) in the United States or manufacture telecommunications equipment and/or customer premises equipment outside the United States for import into the United States. Further, the Parties acknowledge that U S WEST cannot discriminate in the procurement of telecommunications products and services and the pricing and dissemination of its services in or outside of the United States.

18.2 In consideration of U S WEST becoming a Party to this Agreement, the Parties hereby undertake that neither they, acting jointly and within the scope of this Agreement, nor the Company will (a) provide long distance telephony services (i.e. carrying calls to and from the United States) over any equipment in the United States owned or operated by any affiliate of U S WEST nor own telecommunications facilities in the United States; (b) provide telephony services to and from the United States other than through an intermediary carrier on an arm's length basis; or (c) in the case of (b) influence the intermediary carrier's choice of the US correspondent carriers.

18.3 The Parties hereby undertake that neither they nor the Company has given or promised or will give or promise anything to officials (including officers or employees of

a government, regulatory agency, or operating enterprise
like government-owned telephone companies, as well as
political parties and candidates) with an intent to
induce such officials to misuse their authority to help
the Parties or the Company to obtain or retain the
License, business or other favors.

Without the express approval of the Supervisory Board,
the Company will not employ or retain any current or
former governmental official or confer any benefit upon
such person, if such employment or conferring of benefits
is intended or can reasonably be expected to be
interpreted as being directed at influencing governmental
authorities or regulatory agencies in making any
decisions which would benefit the Company.

The Company will adopt appropriate procedures to
ascertain that the employees of the Company will act in
compliance with the foregoing provisions and will not
violate Polish law, in particular as it relates to
influencing or trying to influence governmental official
in exercising their authority. Each Party may, at its
expense, review and audit the operations and activities
of the Company to ensure that the Company is in
compliance with the above requirements.

18.4 Notwithstanding the provisions of Article 8, the Parties
agree that, in connection with obtaining political risk
or similar insurance, (a) U S WEST may grant to the
Overseas Private Insurance Corporation ("OPIC") a lien on
its shares in the Company which would allow OPIC to
acquire all of U S WEST's rights to such shares in
certain claim situations and (b) DeTeMobil may grant to
an equivalent insurance organization in Germany a lien on
its shares in the Company which would allow such

32

organization to acquire of the DeTeMobil's rights to such shares in certain claim situations.

CHAPTER·E
Miscellaneous

Article 19
Force Majeure and Economic Impairment

19.1  No Party shall be held liable for partial or full non-performance of its obligations under this Agreement should such non-performance be the consequence of force majeure occurring after this Agreement has become effective.

19.2  Force Majeure circumstances are deemed as those being beyond the control of a Party. Such circumstances may comprise earthquake, flood, fire and other natural phenomena as well as war, revolt, blockade, strike and governmental actions directly affecting the ability of a Party to perform.

19.3  If a Party is prevented from performing certain of its obligations under this Agreement, such Party shall use all reasonable efforts to make all possible partial performances or such substitute performances as may be appropriate to compensate for its inability to fully perform its obligations under this Agreement.

.19.4.1 If and when any Operational Party is Economically Impaired (as defined in Article 19.4.3 below) (an "Impaired Party"), then:

**Exhibit A-33**

33

(i)  the Impaired Party shall, upon the request of any of
the other Operational Parties, cause to resign (A)
the members of the Supervisory Board appointed by it
and (B) the managers which it is entitled to
nominate pursuant to Article 5 hereof;

(ii) if permitted by the terms of the License and Polish
law, the remaining Operational Parties jointly,
otherwise the Shareholders' Meeting, shall designate
replacements for each of the persons expected to
resign as a result of clause (i) above;

(iii) except as provided in clause (iv) below, the
remaining Operational Parties may jointly take, or
cause the Company to take, as the case may be, any
Important Action without first obtaining the
consent of the Impaired Party and, upon the request
of the remaining Operational Parties, the Impaired
Party shall take any action reasonably requested by
the remaining Operational Parties (such as voting
at a shareholders meeting or the appointment of
members of the Supervisory Board) which is
necessary to enable the taking of such Important
Action;

(iv) without first obtaining the written consent of the
Impaired Party, the remaining Operational Parties
shall not take, or permit the Company to take, any
of the Important Actions referred to in the
following clauses of the definition of Important
Action: (6) only to the extent that the disposition
of assets are concerned, (10), (13) (other than the
provision of subordinated debt on terms previously
agreed among the Operational Parties), (14), (19)
(other than those amendments necessary in connection

34

with a change in the capital structure), (20), (23), (24), (25), (26) and (30); and

(v) for all other purposes of this Agreement, the Impaired Party shall not be deemed to be an Operational Party but shall have the same rights and obligations as a Party to this Agreement.

19.4.2 If an Impaired Party ceases to be Economically Impaired, then it may so notify the remaining Operational Parties and it shall upon such notice and as of that time again be deemed to be an Operational Party.

19.4.3 An Operational Party shall be deemed to be Economically Impaired if and when it (a) is subject to commencement by an appropriate court of any liquidation or bankruptcy or settlement proceedings or similar proceeding, including without limitation, bank settlement (bankowe postepowanie ugodowe) under Polish law or law of any other jurisdiction, and such proceedings remain unresolved and pending for a period of 30 days or upon an issuance of a binding court order entered in such proceedings, except for any order of dismissal, or (b) files a petition or answer seeking reorganization of debts, adjustment of debts, protection from creditors generally or similar relief under any appropriate bankruptcy laws or similar laws or (c) admits in writing its inability to pay its debts generally as they become due.

Article 20

Governing Law

This Agreement shall be governed by Polish law.

35

## Article 21
## Arbitration

21.1  Should any disputes or discords arise in the course of this Agreement or in connection therewith, such disputes and discords shall be settled, if possible, through negotiations between the Parties.

21.2  Should such negotiations fail, all disputes between the Parties and between them and the Company under this Agreement or in connection with it or with other agreements related to this Agreement shall be decided finally and conclusively by the Arbitration Court at the Bundeskammer der gewerblichen Wirtschaft in Vienna, Austria by three arbitrators in accordance with the Rules of said Court. The language of the proceedings shall be English. The presiding arbitrator (umpire) in any such arbitration shall not be a citizen of the United States, Great Britain, Germany or Poland.

21.3  The costs of an arbitration including reasonable attorneys' fees incurred by the other Party shall be borne by the Party that loses. In case a Party succeeds only partially, the costs are to be borne proportionally to the extent that such Party has lost.

## Article 22
## Miscellaneous

22.1  This Agreement together with all other agreements executed as of the date hereof shall supersede all previous negotiations, agreements and arrangements between the Parties with respect to this transaction.

**Exhibit A-36**

36

22.2    All amendments and changes to this Agreement shall only
be valid when made in writing and signed by a duly
authorized representative of the Parties.

22.3    If any provision of this Agreement is or becomes invalid
or unenforceable the validity of the remaining provisions
shall not in any way be affected or impaired. The invalid
or unenforceable provision shall be replaced by valid or
enforceable provisions which allow to achieve the
intended economic results as far as possible.

22.4    All notices and messages to be sent by the Company or one
of the Parties to another Party shall be made in writing
and considered to be duly made if mailed as a registered
letter or transmitted by telex, telefax, telegraph or
delivered by hand to the following addresses and
authorized recipients of the Parties:

If to Elektrim:     Elektrim S.A.
Chalubinskiego 8
00-950 Warsaw
Poland

If to Polpager:     Polpager Sp. z o.o.
Zurawia 24/4
00-515 Warsaw
Poland

If to Elektrim
Autoinvest:         Elektrim-Autoinvest S.A.
ul. Panska 85
00-515 Warsaw
Poland

**Exhibit A-37**

37

```
If to U S WEST:      U S WEST International B.V.,
                     Lansdowne House
                     Berkeley Square
                     London W1X 6HJ
                     England
          Attention: International Counsel
          Fax:       +44 171 333 8871


If to DeTeMobil:     DeTeMobil Deutsche Telekom MobilNet
                     GmbH Oberkasseler Strasse 2
                     53227 Bonn
                     Germany


If to Kulczyk:       Kulczyk Holding S.A.
                     ul. Dziadoszynska 10
                     61-248 Poznan
                     Poland
```

22.5  The Parties acknowledge that the effectiveness of this Agreement is subject to the board of directors of US WEST, Inc. ratifying this Agreement on or before December 22, 1995.

22.6  Except as otherwise expressly provided herein, the provisions set out below shall survive with respect to any Party for the time periods indicated below:

(a) Article 11:  two years from the termination of this Agreement or, if the Agreement remains in effect, five years from the date on which such Party ceases to be, directly or indirectly, a shareholder of the Company.

**Exhibit A-38**

38

(b) Article 12: five years from the termination of this Agreement or such Party ceasing to be, directly or indirectly, a shareholder of the Company.

This 21day of December, 1995

Elektrim S.A.
by:

(Tadeusz Kubiak)

Polpager Sp. z o.o.
by:

US WEST International B.V
by:

(Joel Wachtler)

DeTeMobil Deutsche Telekom
MobilNet GmbH by:

(Dr. Guenter Pfeiffer)

Elekrim-Autoinvest S.A.
by:

Kulczyk Holding S.A.
by:

**Exhibit A-39**

Exhibit II

IMPORTANT ACTIONS

The following shall be deemed Important Actions:

(1)  acquisition of shares or any other interest in any corporation or legal entity, or the creation of any partnership, consortium, or other legal entity of which the Company will be a party, member, or similar participant or entering into any merger, consolidation or similar transaction;

(2)  extension of any existing line of business into a geographical area outside Poland;

(3)  entry into any business other than the provision of GSM 900 cellular service inside Poland;

(4)  surrender, abrogation, abandonment, or transfer of any material license, concession, or authority to conduct business;

(5)  adoption or material amendment of the Company's five-year business plan and annual budget and other such plans, in particular, including the initial five-year business plan and strategic plans;

(6)  except as specifically provided in the annual budget or five-year business plan, the lease, acquisition, or disposition of any assets having a value in excess of PLN 500,000 in a transaction or series of related transactions;

**Exhibit A-40**

(7) subjection of the property or assets of the Company to any mortgage, lien, pledge, claim, or judgment, except in the ordinary course of business;

(8) appointment of commercial proxies;

(9) filing of lawsuits, out-of-court settlement of lawsuits or any other claims brought or threatened to be brought against the Company where the amount in dispute exceeds PLN 500,000 or equivalent;

(10) extension of loans or guarantees to or on behalf of third parties, except those which (i) are made in the ordinary course of business and (ii) do not exceed the amount of PLN 100,000 annually in the aggregate or PLN 10,000 individually;

(11) the decision to accept any terms and conditions necessary to obtain and/or renew a License other than those proposed in the Tender;

(12) the incurrence by the Company of any debt, financing, capital lease or similar obligation, except those which (i) are made in the ordinary course of business and (ii) do not to exceed PLN 500,000 annually;

(13) agreements between the Company and (i) a shareholder of the Company or an affiliate of any such shareholder or (ii) any other person in which a shareholder or an affiliate of a shareholder has, directly or indirectly, any economic interest with respect to such agreement ;

(14) remuneration of members of the Supervisory Board or the Management Board by the Company;

**Exhibit A-41**

41

(15)  execution of contract or entering into a commitment
      having (i) a scheduled term of more than one year (other
      than a lease in the ordinary course of business of
      equipment or vehicles) or (ii) a value in excess of PLN
      500,000;

(16)  any restructuring of the management of the Company;

(17)  the revision of the Company's overall strategy of a mass
      market approach to wireless telecommunications;

(18)  calls for capital from the shareholders of the Company;

(19)  any amendment of the Articles of Association of the
      Company;

(20)  the establishment or change in the dividend policy of the
      Company;

(21)  approval of actions under Article 18(3) of the
      Shareholders Agreement;

(22)  appointing the members of the Management Board;

(23)  amending the list of transactions which require either
      Supervisory Board approval or an unanimous decision by
      the Management Board;

(24)  establishing or amending the internal rules of procedure
      for the Management Board and/or the Supervisory Board;

(25)  establishing, defining the competence or disestablishing
      committees of the Supervisory Board;

(26)  approving the Transfer of any shares in the Company;

**Exhibit A-42**

42

(27)  permitting anybody to subscribe to new shares in the Company other than a pro rata subscription by existing shareholders;

(28)  establishing and amending the accounting principles applied by the Company within the choices available under Polish law;

(29)  waive any rights under a covenant not to compete;

(30)  establishing a procedure for the transfer of shares in accordance with Article 8 of the Shareholders Agreement; and

(31)  all other legal acts or transactions going beyond the Company's ordinary course of business.

**Exhibit A-43**

## AMENDMENT NO. 1 TO
## SHAREHOLDERS AGREEMENT

1. Elektrim S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at Chalubinskiego 8, 00-950 Warsaw, Poland,

   - hereinafter referred to as "Elektrim" -

2. Polpager Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at Zurawia 24/4, 00-515 Warsaw, Poland,

   - hereinafter referred to as "Polpager" -

3. U S WEST International B.V., a limited liability company duly organized under the laws of the Netherlands, with registered place of office at Vestdijk 18, 5611 CC Eindhoven, The Netherlands,

   - hereinafter referred to as "U S WEST" -

4. DeTeMobil Deutsche Telekom MobilNet GmbH, a limited liability company duly organized under the laws of the Federal Republic of Germany, having its business seat at Landgrabenweg 151, 53227 Bonn, Germany,

   - hereinafter referred to as "DeTeMobil" -

5. Elektrim-Autoinvest S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Panska 85, 00-834 Warsaw, Poland,

   - hereinafter referred to as "Elektrim Autoinvest" -

6. Kulczyk Holding S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Dziadoszynska 10, 61-248 Poznan, Poland,

   - hereinafter referred to as "Kulczyk".

(The above named parties are hereinafter also referred to individually as a "Party" and collectively as "Parties".)

## PREAMBLE

WHEREAS, each of the Parties has entered into that certain Shareholders Agreement, dated 21 December 1995 (the "Shareholders Agreement"), pursuant to which the Parties agreed to certain rules and procedures to govern their activities in respect of Polska Telefonia Cyfrowa Sp. z o.o., a Polish limited liability company ("PTC") in which each of the Parties owns an

G:\docs\uswest\amend-1.02
5:35 PM 03/09/97

**Exhibit A-44**

interest;

WHEREAS, DeTeMobil and U S WEST have arranged for certain financing to be provided to Elektrim pursuant to that certain Loan Agreement, dated 13 February 1996, between Citibank International PLC, certain banks named therein, Elektrim and DeTeMobil and U S WEST (the "Loan Agreement") and certain other documents executed in connection therewith (the Loan Agreement together with such other documents, collectively, the "Financing Documents");

WHEREAS, at the request of Elektrim, DeTeMobil and U S WEST have agreed to a restructuring of certain arrangements among them pursuant to the Financing Documents;

WHEREAS, in connection with such restructuring, the Parties have agreed to amend the Shareholders Agreement as set forth in this Amendment No. 1 to the Shareholders Agreement ("Amendment No. 1") and to amend the Articles of Association of PTC (the "Articles") as set forth in the form of Notarial Record attached hereto as Attachment 1 (the "Articles Amendment");

WHEREAS, capitalized terms defined in the Shareholders Agreement and used herein without definition are used herein as therein defined;

NOW, THEREFORE, the Parties agree to amend the Shareholders Agreement as follows:

Section 1.

The first sentence of Article 8 is deleted and replaced by the following:

> Except for a transfer to an Operational Party made pursuant to an arbitral award rendered pursuant to (i) Article 21 hereof, (ii) Article 21 of the Articles or (iii) one of the Financing Documents, the transfer, pledge or any other disposal of a share in the Company or a part thereof or other interest therein (such transfer, pledge or disposal, other than one pursuant to such an arbitral award, hereinafter referred to as a "Transfer") by a shareholder shall require the prior consent of the Supervisory Board.

Section 2.

The first paragraph of Article 8 is further amended to add the following new final sentence:

> Notwithstanding any other provision of this Shareholders Agreement, an Operational Party may transfer all or part of its interest to (a) OPIC, COFACE, MIGA, (b) any other governmentally-sponsored political risk insurer or (c) an internationally recognized political risk insurer of good repute in connection with the presentation of a bona fide claim under a political risk policy provided by such insurer.

k:\docs\uswest\amend-1.02

2

**Exhibit A-45**

**Section 3.**

It is the intention of the Parties, that, except as expressly set forth in Sections 1 and 2 above, each and every provision of the Shareholders Agreement shall continue in full force and effect, unaffected by this Amendment No. 1.

This 11th day of March, 1997.

Elektrim S.A.
by:

Polpager Sp. Z o.o.
by:

U.S. WEST International B.V.
by:

DeTeMobil Deutsche Telekom
MobilNet GmbH
by:

Elektrim-Autoinvest S.A.
by:

Kulczyk Holding S.A.
by:

g:\docs\uswest\amend-1.02

3

**Exhibit A-46**

# ASSUMPTION AGREEMENT AND AMENDMENT NO. 2 TO SHAREHOLDERS AGREEMENT

1. Elektrim S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at Chalubinskiego 8, 00-950 Warsaw, Poland,

   - hereinafter referred to as "Elektrim" -

2. Polpager Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at Zurawia 24/4, 00-515 Warsaw, Poland,

   - hereinafter referred to as "Polpager" -

3. U S WEST International B.V., a limited liability company duly organized under the laws of the Netherlands, with registered place of office at Vestdijk 18, 5611 CC Eindhoven, The Netherlands,

   - hereinafter referred to as "U S WEST" -

4. DeTeMobil Deutsche Telekom MobilNet GmbH, a limited liability company duly organized under the laws of the Federal Republic of Germany, having its business seat at Landgrabenweg 151, 53227 Bonn, Germany,

   - hereinafter referred to as "DeTeMobil" -

5. Elektrim-Autoinvest S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Panska 85, 00-834 Warsaw, Poland,

   - hereinafter referred to as "Elektrim Autoinvest" -

6. Kulczyk Holding S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Dziadoszynska 10, 61-248 Poznan, Poland,

   - hereinafter referred to as "Kulczyk".

(The above named parties are hereinafter also referred to individually as an "Original Party" and collectively as the "Original Parties".)

**Exhibit A-47**

7.    CARCOM Sp. z p.o., a limited liability company duly organized under the laws of the
Republic of Poland, having its business seat at CARCOM Ltd., ul. Krucza 16/22, 00-
526 Warsaw, Poland.

- hereinafter referred to as "CARCOM".

(The Original Parties together with CARCOM are hereinafter collectively referred to as the
"Parties")

## PREAMBLE

WHEREAS, each of the Original Parties has entered into that certain Shareholders
Agreement, dated 21 December 1995 (the "Original  Agreement), pursuant to which the
Parties agreed to certain rules and procedures to govern their activities in respect of Polska
Telefonia Cyfrowa Sp. z o.o., a Polish limited liability company ("PTC") in which each of the
Original Parties owns an interest;

WHEREAS, each of the Original Parties has entered into that certain Amendment No. 1 to
Shareholders Agreement, dated 11th March 1997, which amends certain provisions of the
Original Agreement (the Original Agreement, as so amended, the "Shareholders
Agreement");

WHEREAS, Elektrim Autoinvest wishes to sell to CARCOM certain of the shares of the
Company which it owns ("the Shares") and CARCOM wishes to purchase such Shares;

WHEREAS, the Shareholders Agreement requires, as a condition to the effectiveness of any
such Transfer, that CARCOM become a Party to the Shareholders Agreement and CARCOM
wishes to become a Party to the Shareholders Agreement;

WHEREAS, the Original Parties have agreed to amend the Shareholders Agreement to reflect
the assumption by CARCOM of the rights and obligations of a Party under the Shareholders
Agreement and to reflect the addition of CARCOM as a Party to the Shareholders Agreement;

WHEREAS, capitalized terms defined in the Shareholders Agreement and used herein
without definition are used herein as therein defined;

NOW, THEREFORE, the Parties agree as follows:

g:\docs\uswest\amend-2

2

Exhibit A-48

### Section 1.

Effective as of the date hereof, CARCOM hereby assumes all of the rights and duties of a Party under the Shareholders Agreement and CARCOM is hereby made a party to the Shareholders Agreement.

### Section 2.

The Original Parties hereby waive the requirement of Article 8 of the Shareholders Agreement , solely as it applies to the proposed sale of the Shares to CARCOM, that any sale of shares of Elektrim Autoinvest be of its entire interest in PTC.

### Section 3.

CARCOM hereby represents and warrants that:

(a) it currently qualifies as a Polish legal entity which does not qualify as a foreign company within the meaning of Articles 3 and 7 of the Act on Companies with Foreign Shareholders of 14 June 1991 with later amendments as well as all relevant Polish telecommunications laws;

(b) no notice to or consent or approval of the Minister of Telecommunications is or will be required in connection with or as a result of the acquisition by CARCOM of the Shares; and

(c) it has received from Elektrim Autoinvest a copy of the Shareholders Agreement.

### Section 4

Elektrim Autoinvest hereby represents and warrants that:

(a) the Transfer of the Shares to CARCOM will not (i) adversely affect the existence of any license under which PTC conducts its business or (ii) violate or cause PTC to violate any applicable laws;

(b) no notice to or consent or approval of the Minister of Telecommunications is or will be required in connection with or as a result of the acquisition by CARCOM of the Shares;

(c) it has complied with all of its obligations under the Articles of Association of PTC and the Shareholders Agreement; and

g:\docs\uswest\emend-2

3

Exhibit A-49

(d) it has previously provided to CARCOM a true and correct copy of the Shareholders Agreement.

## Section 5.

The paragraph immediately preceding the PREAMBLE of the Shareholders Agreement is amended to read in its entirety as follows:

"US WEST and DeTeMobil are hereinafter also referred to individually as a "Foreign Party" or collectively as "Foreign Parties". The Foreign Parties together with Elektrim are hereinafter also referred to individually as an "Operational Party" and collectively as the "Operational Parties". The Operational Parties and Polpager, CARCOM, Kulczyk and Elektrim Autovest are hereinafter also referred to individually as a "Party" and collectively as "Parties".

## Section 6.

Section 22.4 of the Shareholders Agreement is amended to add the following notice address information for CARCOM:

CARCOM Ltd.
ul. Krucza 16/22
00-526 Warsaw
Attn:  Ireneusz Czapski
Tel:  22 628 80 52 or 22 628 55 90
Fax:  22 628 48 00

## Section 7

This Agreement shall be executed in one or more counterparts, each of which shall be deemed to be an original, and all such counterparts together shall constitute one and the same legal document.

g:\docs\uswest\amend-2

**Exhibit A-50**

<u>**Section 8.**</u>

It is the intention of the Parties, that, except as expressly set forth above, each and every provision of the Shareholders Agreement shall continue in full force and effect, unaffected by this Assumption Agreement and Amendment No. 2 to Shareholders Agreement.

This ____ day of March, 1997.

Elektrim S.A.
by:

Polpager Sp. z. o.o.
by:

U S WEST International B.V.

by:

DeTeMobil Deutsche Telekom
MobilNet GmbH
by:

Elektrim-Autoinvest S.A.
by:

Kulczyk Holding S.A.
by:

CARCOM, Sp. z o.o.
by:

g:\docs\uswest\amend-2

5

## ASSUMPTION AGREEMENT AND AMENDMENT NO. 3
## TO THE SHAREHOLDERS AGREEMENT

1. Elektrim S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at Chałubińskiego 8, 00-950 Warsaw, Poland

   -hereinafter referred to as "Elektrim" -

2. Polpager Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at Żurawia 24/4, 00-515 Warsaw, Poland

   -hereinafter referred to as "Polpager" -

3. US WEST International B.V., a limited liability company duly organized under the laws of the Netherlands, with registered place of office at Vestdijk 18, 5611 CC Eindhoven, The Netherlands,

   -hereinafter referred to as "US WEST" -

4. DeTeMobil Deutsche Telekom MobilNet GmbH, a limited liability company duly organized under the laws of the Federal Republic of Germany, having its business seat at Landgrabenweg 151, 53227 Bonn, Germany

   -hereinafter referred to as "DeTeMobil" -

5. Elektrim - Autoinvest S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Pańska 85, 00-834 Warsaw, Poland

   -hereinafter referred to as "Elektrim Autoinvest" -

6. Kulczyk Holding S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Krucza 24/26, 00-526 Warsaw, Poland

   -hereinafter referred to as "Kulczyk" -

(The above named parties are hereinafter also referred to individually as an „Original Party" and collectively as the „Original Parties".)

7. CARCOM Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at ul. Bobrowiecka 16/224, 00-728 Warsaw, Poland

   -hereinafter referred to as "CARCOM" -

(The Original Parties together with CARCOM are hereinafter collectively referred to as the „Existing Parties")

8. CARCOM Warszawa Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at ul. Bobrowiecka 2, 00-728 Warszaw, Poland

1

Exhibit A-52

-hereinafter referred to as "CARCOM Warsaw" -

(The Existing Parties together with CARCOM Warsaw are hereinafter collectively referred to as the „ Parties")

PREAMBLE

WHEREAS, each of the Original Parties has entered into that certain Shareholders Agreement, dated 21 December 1995 (the „Original Agreement), pursuant to which the Parties agreed to certain rules and procedures to govern their activities in respect of Polska Telefonia Cyfrowa Sp. z o.o., a Polish limited liability company („PTC") in which each of the Original Parties owns an interest;

WHEREAS, each of the Original Parties has entered into that certain Amendment No. 1 to Shareholders Agreement, dated 11 March 1997, which amends certain provisions of the Original Agreement (the Original Agreement, as so amended, the „Amended Original Agreement"):

WHEREAS, each of the Existing Parties has entered into that certain Amendment No. 2 to Shareholders Agreement, executed in March, 1997, which amends certain provisions of the Amended Original Agreement (the Amended Original Agreement, as so amended, the "Shareholders Agreement")

WHEREAS, CARCOM has transferred to CARCOM Warsaw all shares of the PTC which it owns („the Shares") and CARCOM Warsaw has acquired such Shares ("the Transfer");

WHEREAS, the Shareholders Agreement requires, as a condition to the effectiveness of any such Transfer, that CARCOM Warsaw become a Party to the Shareholders Agreement and CARCOM Warsaw wishes to become a Party to the Shareholders Agreement;

WHEREAS, the Existing Parties have agreed to amend the Shareholders Agreement to reflect the assumption by CARCOM Warsaw of the rights and obligations of a Party under the Shareholders Agreement and to reflect the addition of CARCOM Warsaw as a Party to the Shareholders Agreement;

WHEREAS, capitalized terms defined in the Shareholders Agreement and used herein without definition are used herein as therein defined;

2

**Exhibit A-53**

NOW, THEREFORE, the Parties agree as follows:

### Section 1.

Effective as of the date hereof, CARCOM Warsaw hereby assumes all of the rights and duties of a Party under the Shareholders Agreement and CARCOM Warsaw is hereby made a party to the Shareholders Agreement.

### Section 2.

CARCOM Warsaw hereby represents and warrants that:

(a) it currently qualifies as a Polish legal entity which does not qualify as a foreign company within the meaning of Articles 3 and 7 of the Act on Companies with Foreign Shareholders of 14 June 1991 with later amendments as well as all relevant Polish telecommunications laws;

(b) no notice to or consent or approval of the Minister of Telecommunications is or will be required in connection with or as a result of the acquisition by CARCOM Warsaw of the Shares; and

(c) it has received from CARCOM a copy of the Shareholders Agreement.

### Section 3.

CARCOM hereby represents and warrants that:

(a) the Transfer of the Shares to CARCOM Warsaw will not (i) adversely affect the existence of any licence under which PTC conducts its business or (ii) violate or cause PTC to violate any applicable laws;

(b) no notice to or consent or approval of the Minister of Telecommunications is or will be required in connection with or as a result of the acquisition by CARCOM Warsaw of the Shares;

(c) it has complied with all of its obligations under the Articles of Association of PTC and the Shareholders Agreement; and

(d) it has previously provided to CARCOM Warsaw a true and correct copy of the Shareholders Agreement.

### Section 4.

The paragraph immediately preceding the PREAMBLE of the Shareholders Agreement is amended to read in its entirety as follows:

„US WEST and DeTeMobil are hereinafter also referred to individually as a „Foreign Party" or collectively as „Foreign Parties". The Foreign Parties together with Elektrim are hereinafter also referred to individually as an „Operational Party" and collectively as the „Operational Parties". The Operational Parties and Polpager, CARCOM Warsaw, Kulczyk and Elektrim Autoinvest are hereinafter also referred to individually as a „Party" and collectively as „Parties".

3

### Section 5.

Section 22.4 of the Shareholders Agreement is amended to add the following notice address information for CARCOM Warsaw:

> CARCOM Warszawa, Sp.z o.o.
> c/o Altheimer & Gray Polska Sp. zo.o.
> ul. Nowogrodzka 50
> 00-695 Warsaw
> Attn: Zbigniew Skórczyński
> Tel: 22 622 71 00
> Fax: 22 628 36 40

### Section 6.

Effective as of the date of the transfer of Shares from CARCOM to CARCOM Warsaw, CARCOM ceases to be the Party to the Shareholders Agreement. Notwithstanding the foregoing and anything herein to the contrary, all obligations of CARCOM arising from and in connection with Article 11 and Article 12 thereof remain in full force as provided in Article 22.6 of the Shareholders Agreement.

### Section 7.

Effective as of the date of the transfer of Shares from CARCOM to CARCOM Warsaw, the notice adders information relating to CARCOM in section 22.4 of the Shareholders Agreement shall be deleted.

### Section 8.

As soon as possible after this Assumption Agreement and Amendment no. 3 is executed, the Parties will schedule, attend and vote affirmatively at a Meeting of Shareholders to amend the Articles of Association (Formation Deed) by adding CARCOM Warszawa, Sp. z o.o. to the list of specified companies in Articles 21.4 and 21.5 of the Articles of Association that are and will remain Polish legal entities.

### Section 9.

This Agreement shall be executed in one or more counterparts, each of which shall be deemed to be an original, and all such counterparts together shall constitute one and the same legal document.

### Section 10.

It is the intention of the Parties, that, except as expressly set forth above, each and every provision of the Shareholders Agreement shall continue in full force and effect, unaffected by this Assumption Agreement and Amendment No. 3 to Shareholders Agreement.

4

**Exhibit A-55**

This 11 day of March, 1998.

Elektrim S.A.
by:

Polpager Sp. z o.o.
by:

US WEST International B.V.
by:

DeTeMobil Deutsche Telekom MobilNet GmbH
by:

Elektrim - Autoinvest S.A.
by:

Kulczyk Holding S.A.
by:

CARCOM Sp. z o.o.
by:

CARCOM Warsaw
by:

KA3442210001315051_02.DOC

5

**Exhibit A-56**

08 FEB '00 11:02   VON MAYER BROWN & PLATT    AN 3#00048228206199SEITE 004/007

## ASSUMPTION AGREEMENT AND AMENDMENT NO. 4
## TO THE SHAREHOLDERS AGREEMENT

1. Elektrim S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Pańska 77/79, 00-834 Warsaw, Poland
   - hereinafter referred to as „Elektrim"

2. Polpager Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at Żurawia 24/4, 00-515 Warsaw, Poland
   - hereinafter referred to as „Polpager"

3. MediaOne International B.V., a limited liability company duly organized under the laws of the Netherlands, with registered place of office at Verdijk 18, 5611 CC Eindhoven, The Netherlands,
   - hereinafter referred to as „MediaOne"

4. DeTeMobil Deutsche Telekom MobilNet GmbH, a limited liability company duly organized under the laws of the Federal Republic of Germany, having its business seat at Landgrabenweg 151, 53227 Bonn, Germany
   - hereinafter referred to as „DeTeMobil"

5. Elektrim – Autoinvest S.A., a joint stock company duly organized under the laws of the Republic of Poland, having its business seat at ul. Pańska-85, 00-834 Warsaw, Poland
   - hereinafter referred to as „Elektrim Autoinvest"

(The above named parties are hereinafter also referred to individually as an „Original Party" and collectively as the „Original Parties")

6. CARCOM Warszawa Sp. z o.o., a limited liability company duly organized under the laws of the Republic of Poland, having its business seat at ul. Pańska 77/79, 00-834 Warsaw, Poland
   - hereinafter referred to as „CARCOM"

(The Original Parties together with CARCOM are hereinafter collectively referred to as the „Existing Parties")

7. Elektrim Telekomunikacja Sp. z o.o., limited liability company duly organized under the laws of the Republic of Poland, having its business seat at Pańska 77/79, 00-834 Warsaw, Poland
   - hereinafter referred to as „Elektrim Telekomunikacja"

(The Existing Parties together with Elektrim Telekomunikacja are hereinafter collectively referred to as the „Parties")

## PREAMBLE

WHEREAS, each of the Original Parties has entered into that certain Shareholders Agreement, dated 21 December 1995 (the „Original Agreement"), pursuant to which the Parties agreed to certain rules and procedures to govern their activities in respect of Polska

**Exhibit A-57**

Telefonia Cyfrowa Sp. z o.o., a Polish limited liability company („PTC") in which each of the Original Parties owns an interest;

WHEREAS, each of the Original Parties has entered into that certain Amendment No. 1 to Shareholders Agreement, dated 11 March 1997, which amends certain provisions of the Original Agreement (the Original Agreement, as so amended, the „Amended Original Agreement");

WHEREAS, each of the Existing Parties has entered into that certain Amendment No. 2 to Shareholders Agreement, executed in March, 1997, which amends certain provisions of the Amended Original Agreement (the Amended Original Agreement, as so amended, the „Shareholders Agreement");

WHEREAS, each of the Existing Parties has entered into that certain Amendment No. 3 to Shareholders Agreement, executed on March 11, 1997, which amends certain provisions of the Amended Original Agreement (the Amended Original Agreement, as so amended, the „Shareholders Agreement");

WHEREAS, Elektrim has transferred to Elektrim Telekomunikacja its shares of PTC („the Shares") and Elektrim Telekomunikacja has acquired such Shares („the Transfer");

WHEREAS, the Shareholders Agreement requires that Elektrim Telekomunikacja become a Party to the Shareholders Agreement and Elektrim Telekomunikacja wishes to become a Party to the Shareholders Agreement;

WHEREAS, the Existing Parties have agreed to amend the Shareholders Agreement to reflect the assumption by Elektrim Telekomunikacja of the rights and obligations of a Party under the Shareholders Agreement and to reflect the addition of Elektrim Telekomunikacja as a Party to the Shareholders Agreement;

WHEREAS, capitalized terms defined in the Shareholders Agreement and used herein without definition are used herein as therein defined;

NOW, THEREFORE, the Parties agree as follows:

Section 1.

Effective as of the date hereof, Elektrim Telekomunikacja hereby assumes all of the rights and duties of Elektrim under the Shareholders Agreement in relation to the shares in PTC transferred by Elektrim to Elektrim Telekomunikacja and Elektrim Telekomunikacja is hereby made a party to the Shareholders Agreement. In particular, Elektrim Telekomunikacja hereby assumes all the rights and duties of Elektrim as the Operational Party as defined under the Shareholders Agreement. For the avoidance of doubt, Elektrim remains a party to the Shareholders Agreement as long as this Agreement is not executed by all Parties hereto.

Section 2.

Elektrim Telekomunikacja hereby represents and warrants that:

2

Exhibit A-58

(a) it currently qualifies as a Polish legal entity which does not qualify as a foreign company within the meaning of Articles 3 and 7 of the Act on Companies with Foreign Shareholders of 14 June 1991 with later amendments as well as relevant Polish telecommunications laws;

(b) no notice to or consent or approval of the Minister of Telecommunications is or will be required in connection with or as a result of the acquisition by Elektrim Telekomunikacja of the Shares;
and

(c) it has received from Elektrim a copy of the Shareholders Agreement.

### Section 3.

Elektrim hereby represents and warrants that:

(a) the Transfer of the Shares to Elektrim Telekomunikacja does not (i) adversely affect the existence of any license under which PTC conducts its business or (ii) violate or cause PTC to violate any applicable laws;

(b) no notice to or consent or approval of the Minister of Telecommunications is or will be required in connection with or as a result of the acquisition by Elektrim Telekomunikacja of the Shares;

(c) it has complied with all of its obligations under the Articles of Association of PTC and the Shareholders Agreement;

(d) it has previously provided to Elektrim Telekomunikacja a true and correct copy of the Shareholders Agreement; and

(e) as of the date of execution hereof, all the conditions required in connection with the Transfer are fulfilled.

### Section 4.

The paragraph immediately preceding the PREAMBLE of the Shareholders Agreement is amended to read in its entirety as follows:

„MediaOne und DeTeMobil are hereinafter also referred to individually as a „Foreign Party" or collectively as „Foreign Parties". The Foreign Parties together with Elektrim Telekomunikacja are hereinafter also referred to individually as an „Operational Party" and collectively as the „Operational Parties". The Operational Parties und Polpager, and Elektrim Autoinvest are hereinafter also referred to individually as a „Party" and collectively as „Parties".

### Section 5.

Section 22.4 of the Shareholders Agreement is amended to add the following notice address information for Elektrim Telekomunikacja:

Elektrim Telekomunikacja Sp. z o.o.
ul. Pańska 77/79
00-834 Warsaw
Attn:   Jacek Walczykowski
        President of the Management Board
Tel: (+48) 22 652 7197

3

Exhibit A-59

Fax: (+48) 22 652 8700

### Section 6.

As soon as possible after this Assumption Agreement and Amendment no. 4 is executed, the Parties will schedule, attend and vote affirmatively at a Meeting of Shareholders to amend the Articles of Association (Formation Deed) by adding Elektrim Telekomunikacja Sp. z o.o. to the list of specified companies in Articles 21.4 and 21.5 of the Articles of Association that are and will remain Polish legal entities.

### Section 7.

This Agreement shall be executed in one or more counterparts, each of which shall be deemed to be and original, and all such counterparts together shall constitute one and the same legal document.

### Section 8.

It is the intention of the Parties, that, except as expressly set forth above, each and every provision of the Shareholders Agreement shall continue in full force and effect, unaffected by this Assumption Agreement and Amendment No. 3 to Shareholders Agreement.

This 5ᵗʰ day of February , 2000.

Elektrim S.A.                                          Folpager Sp. z o.o.
by:                                                   by:

MediaOne International B.V.                            DeTeMobil Deutsche Telekom MobilNet
by:                                                   GmbH
                                                      by:

Elektrim – Autoinvest S.A.                             CARCOM Warsaw
by:                                                   by:

Elektrim Telekomunikacja Sp. z o.o.
by:

**Exhibit A-60**