The Honorable James L. Robart

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIVENDI S.A. and<br>VIVENDI HOLDING I CORP.,<br><br>Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC., T-MOBILE DEUTSCHLAND GMBH, T-MOBILE INTERNATIONAL AG, DEUTSCHE TELEKOM AG, and ZYGMUNT SOLORZ-ZAK,<br><br>Defendants. | No. CV6-1524 JLR<br><br>**DECLARATION OF PROFESSOR PAUL OBERHAMMER IN SUPPORT OF MOTION TO DISMISS THE THIRD AMENDED COMPLAINT** |

I, PROFESSOR PAUL OBERHAMMER, hereby declare as follows:

**INTRODUCTION**

1.      I have been asked by counsel for Deutsche Telekom AG, T-Mobile Deutschland GmbH, T-Mobile International AG and T-Mobile USA, Inc. (hereinafter referred to as the "DT defendants") to provide an expert opinion on certain legal issues that have arisen out of the litigation pending before the United States District Court, Western District of Washington at Seattle.

2.      I am Professor Ordinarius (Full Professor) of Swiss and International Civil Procedure, Enforcement and Insolvency Law, Private and Business Law at Zurich University, Switzerland. I completed my legal education in Austria (Magister iuris, Vienna

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)                                          1

University 1991, Dr. iuris, Vienna University 1992). I am admitted to the bar in Hamburg, Germany. From 1992 to 1997, I was Lecturer in Law at the Department of Civil Procedure, Vienna University. Besides that, I acted as a law clerk for a number of Viennese courts in 1993. In 1997 I obtained the qualification to be a professor ("Habilitation") with a thesis on issues of procedural law and corporate law at Vienna University. In 1997 I was appointed as an Associate Professor at the Department of Civil Procedure, Vienna University. From 1997 to 1999 I also acted as a counsel for a prominent Viennese law firm. I was appointed to be a Full Professor at Halle-Wittenberg University, Germany, in 2001 (Chair of Civil Law, Civil Procedure and Commercial Law). I obtained the Chair set forth above at Zurich University, Switzerland in 2003. I was chairman of the commission that drafted the new Austrian law of arbitration which was enacted in 2006. I am the author of about 175 legal publications, among them studies on international litigation, arbitration and corporate law.

3.   I have to point out that my expertise is limited to Austrian, German, Swiss and European law. I have no qualification to opine on French, Polish or U.S. law. Therefore, the legal opinion at hand does not deal with French, Polish or U.S. law.

4.   I understand that Vivendi S.A. (hereinafter referred to as "Vivendi") and Vivendi Holding I Corp. (hereinafter referred to as "Vivendi Holding") brought an action ("Third Amended Complaint") under the Racketeer Influenced and Corrupt Organizations Act (the "RICO act") against Deutsche Telekom AG (hereinafter referred to as "DT"), certain of its T-Mobile subsidiaries and Zygmunt Solorz-Zak. Vivendi Holding's claim is additionally based on common law fraud. DT, T-Mobile Deutschland GmbH and T-Mobile International AG (hereinafter referred to as the "German DT defendants") are companies domiciled in

Germany. Vivendi is a company which is headquartered in Paris, France. Vivendi Holding is a Delaware company based in New York. Mr. Solorz-Zak is a businessman domiciled in Poland. I am informed that there is a dispute between companies controlled by Vivendi and DT about the ownership of certain shares of Polska Telefonia Cyfrowa sp.zo.o., a leading Polish wireless telephone company. This dispute led to a variety of legal proceedings, including, but not limited to arbitration in Austria and court proceedings in Austria, Poland and elsewhere.

**SUBJECT MATTER OF THE CLAIM**

5.      In this declaration, I will discuss issues relating to the claims alleged by Vivendi and Vivendi Holding under European, German and Austrian law. Therefore, I will discuss the relevant issues under the assumption that Vivendi and Vivendi Holding would bring an action based on the same set of facts and including the identical prayers for relief under the respective European laws.

6.      In this context, I assume the following: I have reviewed the Third Amended Complaint. I understand that the plaintiffs do not allege claims regarding contractual relations with DT and its subsidiaries. At para.15 of the Third Amended Complaint, the plaintiffs point out the following:

> *The remedy and justice that this action seeks are simple: Vivendi*
> *S.A. asks this court to order Defendants to pay Vivendi S.A. the*
> *fair market value of the assets that they stole if they do not return*
> *to Vivendi S.A. its rightful control of PTC. Vivendi Holding asks*

> *this Court to order Defendants to compensate it for the harm they caused.*

I assume that the action is based on the allegation that the defendants are liable for fraudulent behavior which deprived Vivendi of its control of PTC and that Vivendi's and Vivendi Holding's claim is aiming at the recovery of losses caused by such behavior.

## JURISDICTION OF GERMAN AND AUSTRIAN COURTS

**General**

7.      I have been asked to opine on the question of whether German or Austrian courts have jurisdiction over the case at hand. Based on the factual assumptions set forth above, the plaintiffs' claims – if brought before the courts of an EU member state – clearly qualify as "civil and commercial matters" under art. 1 para. 1 of the Brussels Regulation (Council Regulation [EC] No. 44/2001 of 22 December 2000 on Jurisdiction and the Recognition and Enforcement of Judgments in Civil and Commercial Matters, attached as exhibit A). This regulation provides for jurisdiction (and the recognition and enforcement of judgments) for said civil and commercial matters in all EU member countries (except Denmark). This regulation has priority over national law; this means that within its scope of application, international jurisdiction of a member state's court is subject to said regulation only – there are no additional or different venues under the national laws of the member states. In the scope of this regulation, the national laws of the member states can only provide for domestic venue in cases where the Brussels Regulation only provides for international jurisdiction of a state's courts, but not for a specific forum within the country.

**Jurisdiction of German Courts**

8. As I will show below, the plaintiffs can bring their claim against the German DT defendants before German courts, because the German DT defendants are domiciled in Germany.

9. Under art. 2 of the Brussels Regulation, persons domiciled in a member state may, whatever their nationality, be sued in the courts of that member state. For the purposes of the Brussels Regulation, a company is domiciled at the place where it has its statutory seat or its central administration or its principal place of business (art. 60 para. 1 of the Brussels Regulation).

10. Therefore, the German DT defendants can be sued at their statutory seat or their place of central administration or their principal place of business within the EU. According to my information, this place is Germany. Therefore, I can draw the conclusion that the German DT defendants could be sued before a German court.

11. I understand that Mr. Solorz-Zak has his domicile in Poland. According to art. 2 et seq. of the Brussels Regulation, this regulation's venues apply in all cases where the defendant is domiciled in a member state, such as Poland. Therefore, Mr. Solorz-Zak can of course be sued in Poland according to art. 2 of the Brussels Regulation. As I will show below, Vivendi and Vivendi Holding can, however, also sue him in Germany.

12. Articles 5 through 23 of the Brussels Regulation provide for special bases of jurisdiction. In some cases, the courts of a member state have exclusive jurisdiction

according to art. 22 of the Brussels Regulation. Nothing in the case at hand indicates that such exclusive jurisdiction could apply. In addition, there are no allegations that the parties to the litigation at hand concluded a forum selection agreement according to art. 23 of the Brussels Regulation. Therefore, one has to examine more closely the special bases for jurisdiction provided for under articles 5 to 7 of the Brussels Regulation.

13. According to Art. 6 para. 1 of the Brussels Regulation, a person domiciled in a member state may also be sued, where he is one of a number of defendants, in the courts for the place where any one of them is domiciled, provided the claims are so closely connected that it is expedient to hear and determine them together to avoid the risk of irreconcilable judgments resulting from separate proceedings. As the plaintiffs allege that the German DT defendants and Mr. Solorz-Zak jointly committed a fraud against them, there is no doubt that the claims against the German DT defendants and Mr. Solorz-Zak are "closely connected" in that sense. Therefore, I conclude that Vivendi and Vivendi Holding could sue Mr. Solorz-Zak together with the German DT defendants in Germany.

14. As I will show below, Vivendi and Vivendi Holding can, however, also sue Mr. Solorz-Zak separately in Germany to the extent they allege (as I understand them to do) that he is liable for a "delict or tort" and the "place where the harmful event occurred" is situated in Germany.

15. According to art. 5 para. 3 of the Brussels Regulation, a person domiciled in a member state may, in another member state, be sued in matters relating to tort, delict or quasi-delict, in the courts for the place where the harmful event occurred or may occur. The

European Court of Justice and the prevailing opinion in the member states developed a broad notion of the terms "tort, delict, or quasi-delict" (see ECJ, case 189/87, Kalfelis v. Schroeder, attached as exhibit B). As a principle, every civil liability for wrongful behavior different from breach of contract is a matter relating to "tort, delict or quasi-delict" and everybody who directly suffered a damage or loss as a result from such behavior can therefore sue for compensation in a venue according to art. 5 para. 3 of the Brussels Regulation (see European Court of Justice, case 220/88, Dumez v. Hessische Landesbank, attached as exhibit C).

16.     It almost goes without saying that a claim based on the allegation that the defendant committed a fraud qualifies as a matter relating to a "delict" in this context. Therefore, I can draw the conclusion that the subject matter of the case at hand would qualify as a "delict" under the Brussels Regulation. Therefore, under art. 5 para. 3 of the Brussels Regulation, the plaintiffs could sue Mr. Solorz-Zak before the courts of the place where the harmful event occurred.

17.     In the case 21/76, Bier v. Mines de potasse d'Alsace (attached as exhibit D), the European Court of Justice came to the conclusion that both the place where the delict was committed and where the loss or damages came into effect are venues under said art. 5 para. 3 of the Brussels Regulation. There is no ECJ case law specifically dealing with a case exactly like the one at hand, where the fraud allegedly took place in the course of a joint venture; see, however, case C-168/02 Kronhofer v. Maier et al (liability for wrongful conduct of foreign investment consultants, attached as exhibit E).

18.     To the extent Vivendi and Vivendi Holding allege that Mr. Solorz-Zak, in conspiring

with the DT defendants, committed his fraudulent behavior (at least in part) in Germany, I can draw the conclusion that Vivendi and Vivendi Holding could sue Mr. Solorz-Zak before German courts based on art. 5 para. 3 of the Brussels Regulation. Note that this paragraph does not provide for exclusive jurisdiction. Therefore, both the venues under art. 2 (domicile) and art. 5 para. 3 of the Brussels Regulation apply. In addition, these venues do not exclude the application of art. 6 para 1 of the Brussels Regulation discussed above.

19.   T-Mobile USA, Inc. is not domiciled in the European Union. Therefore, as a general rule, jurisdiction of German courts over T-Mobile USA is not governed by the Brussels Regulation, but by national German law. The relevant provisions are contained in the German Code of Civil Procedure ("Zivilprozessordnung", hereinafter referred to as "ZPO").

20.   According to a number of leading commentators in Germany, however, art. 6 para. 1 of the Brussels Regulation can be applied analogously in cases where both defendants from member states and from third countries, such as the U.S., are involved (see *Leible* in *Rauscher* (ed.), Europäisches Zivilprozessrecht, 2nd ed. (2006) art. 6 Brussels Regulation, marginal. no. 7 with further references, attached as exhibit F). According to this opinion, T-Mobile USA could therefore be sued before German courts jointly with DT, its European subsidiaries and Mr. Solorz-Zak based on art. 6 para. 1 of the Brussels Regulation. I do agree with this opinion. Note, however, that this aspect is disputed and that there is no clear case law in this respect.

21.   Sec. 32 of the German ZPO (attached as exhibit G) is similar to art. 5 para. 3 of the Brussels Regulation. Here the German Code of Civil Procedure provides for a forum for

cases of "unerlaubte Handlung", which can be translated with "tort" or "delict"; note, however, that the underlying legal concept of tort differs from the U.S. (or U.K.) notions. It is, however, clear that the fraudulent behavior alleged in the case at hand would come into the scope of this provision. Therefore, a person alleged to be liable for such behavior, such as T-Mobile USA can be sued before the German courts where the fraud was committed.

22. For cases where there is no other venue in Germany, German law also provides for jurisdiction of the courts where the defendant has property (sec. 23 ZPO, attached as exhibit H). I am not aware whether T-Mobile USA has property located in Germany; such property could be an account with a German bank or a claim against a German debtor, e.g. against a German company belonging to the DT group.

**Jurisdiction of Austrian Courts**

23. As I will show below, the plaintiffs can bring their claim against the German DT defendants and Mr. Solorz-Zak before Austrian courts, because according to the plaintiffs' allegations, the defendants caused Vivendi's loss by their fraudulent behavior in connection with proceedings in Austria.

24. None of the defendants is domiciled in Austria. I have already addressed the special venues under Art. 5 et seq. of the Brussels Regulation above. The situation with respect to jurisdiction is similar to the one in Germany: Defendants having their domicile in an EU member state come into the scope of the Brussels Regulation, while the jurisdiction of Austrian courts with respect to T-Mobile USA is governed by national Austrian law. The respective provisions are codified in the Austrian Act on Jurisdiction ("Jurisdiktionsnorm",

hereinafter referred to as "JN").

25.　In their complaint, the plaintiffs allege that the defendants committed their fraudulent behavior (at least in part) in connection with arbitral proceedings in Austria. Based on this factual assumption, I can draw the conclusion that the plaintiffs could sue the defendants domiciled in the European Union before Austrian courts based on art. 5 para. 3 of the Brussels Regulation. Note that this paragraph does not provide for exclusive jurisdiction. Therefore, both the venues under art. 2 (domicile) and art. 5 para. 3 of the Brussels Regulation apply. This means that, e.g., the plaintiffs can choose whether to sue the European defendants at their domicile or in Austria (being "the place where the harmful event occurred") according to art. 5 para. 3 of the Brussels Regulation.

26.　As already mentioned above, as a general rule (save for some exceptions) the Brussels Regulation does not apply where the defendant, such as T-Mobile USA, is not domiciled in a member state. Austrian law provides for a venue where a tort was committed in sec. 92a JN; this venue, however, only applies where persons were killed or injured or deprived of their liberty or where assets were damaged. I understand that the plaintiffs do not allege that such acts were committed in Austria. Similar to German law, Austrian law however also provides for a venue in case the defendant has property in Austria under sec. 99 JN (attached as exhibit I).

**Conclusions on Jurisdiction**

27.　I draw the following conclusion with respect to the jurisdiction of the German courts: The plaintiffs could sue the German DT defendants before German courts (art. 2 of the

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)　　　10

Brussels Regulation). Plaintiffs could also sue Mr. Solorz-Zak in Germany according to art. 6 para. 1 and art. 5 para. 3 of the Brussels Regulation. As for T-Mobile USA, leading commentators are of the opinion that art. 6 para. 1 of the Brussels Regulation applies to defendants, such as T-Mobile USA, domiciled outside the European Union. As the claim is based on the allegation of a delict, sec. 32 of the German Code of Civil Procedure would also apply as a basis for jurisdiction over T-Mobile USA. Accordingly, to the extent that the plaintiffs allege that the defendants are liable for a fraud or conspiracy in Germany, they could sue in German courts all defendants in the litigation at hand including T-Mobile USA. T-Mobile USA could also be sued in Germany to the extent it has property in Germany.

28.     I draw the following conclusion with respect to the jurisdiction of the Austrian courts: According to the plaintiffs' allegations, they suffered a loss from the defendants' wrongful behavior in connection with Austrian arbitral proceedings. Therefore, there is a venue in Austria under art. 5 para. 3 of the Brussels Regulation for an action based on such allegations. Austrian courts would have jurisdiction over the German DT defendants and Mr. Solorz-Zak under art. 5 para. 3 of the Brussels Regulation. T-Mobile USA can also be sued before Austrian courts to the extent it has property in Austria.

**CLAIMS UNDER GERMAN AND AUSTRIAN LAW**

29.     Both Germany and Austria are civil law countries. Therefore neither the exact concepts of U.S. law with respect to "fraud" and "conspiracy" nor the U.S. RICO Act are part of German or Austrian law. The term "fraud" is translated to "Betrug" in German. "Betrug" is both a civil and a criminal wrong in these countries. There is no term that is exactly equal to "conspiracy" in German and Austrian law, as the literal translation

("Verschwörung") is not a specific legal category there. I understand that under U.S. law, conspiracy can be described as a fraudulent behavior jointly committed by a group of offenders. Under German and Austrian law there is no special term for such behavior, but taking part in a scheme of fraudulent behavior is regarded as a case of fraud and does constitute a criminal and civil wrong.

30. If any of the severe wrongs alleged in the action at hand turned out to be true, the wrongdoer would be liable for such behavior, although the exact notions of "fraud", "conspiracy" and a "RICO claim" do not exist in German and Austrian law. As I will show below, both German and Austrian law provide for a liability for damages and losses caused by such fraudulent behavior. Note that this liability is part of the more general concept of the liability for "delict" in these civil law countries.

31. Under the German and Austrian provisions on the law of conflicts, claims based on delictual liability are primarily subject to the law of the state where the alleged wrongdoer committed the delict (see for Germany art. 40 Introductory Statute to the Code of Civil Law, attached as exhibit J; for Austria sec. 48 of the Federal Statute on Private International Law, attached as exhibit K). According to the complaint, the defendants allegedly committed a fraud by acting (at least in part) in Germany (where DT has its headquarters) and Austria (where arbitral proceedings were conducted). Therefore it is possible that German or Austrian law would be applied to the case at hand before German or Austrian courts.

32. German law provides for delictual liability in cases of fraud. On the one hand, fraud is a delict under criminal law and, therefore, it is also a basis for delictual liability under sec.

823 para. 2 of the German Code of Civil Civil Law (hereinafter referred to as "BGB"), attached as exhibit L. In addition, sec. 826 BGB (attached as exhibit M) provides for a special claim against a party who intentionally damages somebody in violation of good faith. In both cases the actual loss or damage to the victim as a result of such actions can be awarded. The relief is not restricted to financial compensation, but can also contain the actual restitution of the status quo ante in kind according to sec. 249 para. 1 BGB (attached as exhibit N).

33.   The situation in Austria is almost identical with the German one. The Austrian General Code of Civil Law (hereinafter referred to as "ABGB") also provides for delictual liability in cases of fraud (see sec. 1311, attached as exhibit O, and sec. 1295 para. 2 ABGB, attached as exhibit P). As is the case under German law, Austrian law does provide for financial compensation and restitution in kind, but not for damages exceeding the actual economic loss of the damaged party in such cases.

34.   Both German and Austrian law provide for joint and several liability in cases like the one at hand. The exact translation of and technical term for joint and several liability under German and Austrian law is "Gesamtschuld", meaning that in a case where there are numerous debtors, every single debtor is liable for the payment of the whole debt vis-à-vis the creditor.

35.   According to sec. 830 of the German BGB (attached as exhibit Q), in cases where a number of wrongdoers committed a delict, every offender is liable for the whole damage. This also applies to a person who has only acted as aider or abetter. In such cases, all debtors

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)                                    13

are jointly and severally liable for the damages (sec. 840 para. 1 BGB, attached as exhibit R). The same is true under Austrian law: According to sec. 1301 and 1302 of the Austrian ABGB (attached as exhibit S), every offender is jointly and severally liable for the damages caused by a number of wrongdoers in case such persons acted jointly by abetting, threatening, ordering, aiding or concealing or by merely refraining to prevent the wrong. In both countries this joint and several liability applies unless the offenders acted absolutely independent from each other, which is obviously not alleged by the plaintiffs in this case. Even in such cases, however, the joint and several liability applies in case one cannot determine what part of the damage was caused by exactly which offender.

36. Therefore, I can draw the following conclusion: Both German and Austrian law of conflicts allow the application of the law of the place where the fraudulent behavior was committed. It is therefore possible that German or Austrian law could apply in the case at hand before German or Austrian courts. (I do however not exclude the possibility that a plaintiff could successfully argue that the law of a third country could apply in this case.) Both German and Austrian law provide for compensation for damages in cases of fraud. This liability is not restricted to financial compensation, but also includes claims for the restitution of the status quo ante in kind. Both German and Austrian law provide for joint and several liability in cases where there are multiple wrongdoers.

## INTERNATIONAL LEGAL ASSISTANCE BETWEEN MEMBER STATES OF THE EUROPEAN UNION

37. If the plaintiffs brought their claim for damages before European courts, evidence situated in a foreign member state of the Union could be of relevance. E.g., a German court

DECLARATION OF PROFESSOR PAUL OBERHAMMER (CV6-1524 JLR)                                14

could have to deal with business activities in Poland where Polish witnesses are relevant. Note in this context that the Council Regulation [EC] no. 1206/2001 of 28 May 2001 on Cooperation between the Courts of the Member States in the Taking of Evidence in Civil or Commercial Matters (hereinafter referred to as "Evidence Regulation", attached as exhibit T) would apply here. As already set forth above, a delictual claim would qualify as a "civil or commercial matter" under European law of civil procedure (see para. 7 of this legal opinion).

38.     The Evidence Regulation contains a number of similarities with the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil and Commercial Matters (hereinafter referred to as "Hague Convention", attached as exhibit U). As most of the member states of the European Union are parties to said Hague Convention, this convention served as a starting point for the European legislature. (Note that Austria is not a party to the Hague Convention.) In the process of drafting the Evidence Regulation, the legislature strived to improve the system of the Hague Convention in order to facilitate the taking of evidence within the European Union.

39.     It is generally accepted among European practitioners that the Evidence Regulation made the transnational taking of evidence in civil litigation within the European Union less burdensome. The Evidence Regulation provides for a direct communication of requests for legal assistance between the courts of the member states (see art. 2 of the Evidence Regulation) and provides for effective procedures for legal assistance with respect to the taking of evidence. This direct communication between the courts of the member states in legal assistance proceedings is of specific practical relevance as it is much more effective than proceedings involving letters rogatory to central authorities. In case the requested court

in the country where the evidence is situated is taking the evidence, both the parties and representatives of the requesting court have the right to actively participate in the foreign proceedings rendering legal assistance (see art. 11 and 12 of the Evidence Regulation).

40. The Evidence Regulation goes far beyond traditional means of legal assistance, including the Hague Convention. According to art. 17 of the Evidence Regulation, direct cross-border taking of evidence by the requesting court is admissible. Where a court requests to take evidence directly in another member state, it can directly approach the foreign authorities for permission to do so. Therefore, within the European Union (including all states relevant in the case at hand: Germany, Poland, Austria, France) a judge can e.g. travel to another member state in order to take witness testimony there himself or herself. There are, however, some limits to this right: The authorities of the state where the foreign judge wants to take evidence have the right to designate a national court that can take part in the taking of the evidence in order to insure the proper application of the Evidence Regulation; in addition, the direct taking of evidence may only take place if it can be performed on a voluntary basis without the need for coercive measures (see art. 17 para. 2 and 4 of said regulation). If coercive measures turn out to be necessary, the Evidence Regulation provides that the domestic courts must order them.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

EXECUTED this 25th day of September, 2007.

_____
Prof. Paul Oberhammer