The Honorable James L. Robart

1

2

3

4

5

6

7

8  ## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
9  ## AT SEATTLE

10

| VIVENDI S.A. and VIVENDI HOLDING I CORP., as the Assignee of a U.S. Elektrim Bondholder, | ) Case No. CV6-1524 JLR |
|---|---|
| Plaintiffs, | ) **NON-PARTY EDWARD EUROF LLOYD-LEWIS' DECLARATION IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT** |
| vs. | ) |
| T-MOBILE USA, INC.; T-MOBILE DEUTSCHLAND GMBH; T-MOBILE INTERNATIONAL AG; DEUTSCHE TELEKOM AG; and ZYGMUNT SOLORZ-ZAK , | ) |
| Defendants. | ) |

I, EDWARD EUROF LLOYD-LEWIS, hereby declare as follows:

1.      I am a solicitor of the Supreme Court of England and Wales and an associate in the law firm of Barlow Lyde & Gilbert LLP ("Barlow Lyde & Gilbert"). I work at Barlow Lyde & Gilbert's London office. Since December 2004, Barlow Lyde & Gilbert has acted as counsel for Elektrim S.A. in connection with various legal proceedings, including the proceedings presently pending in English High Court of Justice, Chancery Division ("English High Court") captioned "The Law Debenture Trust Corporation PLC, Claimant, and (1) Concord Trust, (2) Acciona SA, (3) Elektrim SA (In Bankruptcy), (4) Vivendi Holding I Corp., Defendants" (Case No. HC07C00763), and "Elektrim SA (In Bankruptcy), Claimant, and Vivendi Holdings I Corp., Defendant" (Case No. HC07C1505). I have personal knowledge of the matters set forth herein, and if called to testify, I could and would

KYL_SF457819  BLG/5822713                                      - 1 -
NON-PARTY EDWARD EUROF LLOYD-LEWIS' DECLARATION
IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED
COMPLAINT - Case No. CV6-1524 JLR                    KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WA 98101
(206)622-3790

1   competently testify to the matters set forth below.

2       2.      This Declaration is submitted in support of Defendant Zygmunt Solorz-Zak's ("Mr.

3   Solorz") Motion to Dismiss Plaintiff VIVENDI S.A. ("Vivendi") and VIVNEDI HOLDING I

4   CORP.'s ("VHI") (collectively, "Plaintiffs") Third Amended Complaint ("Motion to Dismiss")

5   pending in the United States District Court, Western District of Washington at Seattle (the "Seattle

6   Action").

7       3.      Attached hereto as <u>Exhibits 3 - 12</u> are true and correct copies of documents pertaining

8   to court proceedings in the United Kingdom and in the United States with which I am familiar.

9       4.      Attached hereto as <u>Exhibit 3</u> is a true and correct copy of the June 1, 2007 Complaint in

10  Case No. 07-21431-CIV-KING/Garber, captioned, "Vivendi Holding I Corp. v. The Law Debenture

11  Trust Corporation, PLC and Elektrim S.A.," filed in the United States District Court for the Southern

12  District of Florida ("The Miami Action").

13      5.      Attached hereto as <u>Exhibit 4</u> is a true and correct copy of the June 7, 2007 Amended

14  Complaint in the Miami Action.

15      6.      Attached hereto as <u>Exhibit 5</u> is a true and correct copy of the English High Court's June

16  8, 2007 Judgment issued in Case No. HC07C1505 (incorrectly identified as Case No. HC07C00763)

17  that pertains to the Miami Action.

18      7.      Attached hereto as <u>Exhibit 6</u> is a true and correct copy of the English High Court's June

19  29, 2007 Judgment in Case No. HC07C01505 that pertains to the Miami and Seattle Actions.

20      8.      Attached hereto as <u>Exhibit 7</u> is a true and correct copy of the transcript of the

21  September 28, 2007 proceedings before the English High Court in Case Nos. HC07C00763 and

22  HC07C01505 that pertains to the Miami Action.

23      9.      Attached hereto as <u>Exhibit 8</u> is a true and correct copy of the English High Court's

24  October 12, 2007 Judgment in Case Nos. HC07C00763 and HC07C1505 that pertains to the Miami

25  Action.

26      10.     Attached hereto as <u>Exhibit 9</u> is a true and correct copy of the transcript of the October

27  12, 2007 proceedings before the English High Court in Case Nos. HC07C00763 and HC07C1505 that

28

KYL_SF457929                                    - 2 -

**NON-PARTY EDWARD EUROF LLOYD-LEWIS' DECLARATION**                  KEESAL, YOUNG & LOGAN
**IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED**                    1301 FIFTH AVENUE, SUITE 1515
**COMPLAINT - Case No. CV6-1524 JLR**                               SEATTLE, WA 98101
                                                                    (206) 622-3790

1    pertains to the Miami Action.

2         11.    Attached hereto as <u>Exhibit 10</u> is a true and correct copy of the English High Court's

3    October 12, 2007 Judgment for Costs in Case Nos. HC07C00763 and HC07C1505 that pertains to the

4    Miami Action.

5         12.    Attached hereto as <u>Exhibit 11</u> is a true and correct copy of VH1's October 23, 2007

6    Notice of Voluntary Dismissal of the Miami Action.

7         13.    Attached hereto as <u>Exhibit 12</u> is a true and correct copy of Orrick, Herrington &

8    Sutcliffe's November 7, 2007 transmittal letter enclosing VH1's November 2, 2007 Appellant's

9    Notice in regard to the English High Court's October 12, 2007 Judgments in Case Nos. HC07C00763

10   and HC07C1505 that are attached hereto as <u>Exhibits 8 & 10</u>.

11

12        I declare under penalty of perjury under the laws of the United States that the foregoing is true

13   and correct and that this Declaration was executed in London, United Kingdom this $8th$ day of

14   November 2007.

15

16   _____
     EDWARD EUROF LLOYD-LEWIS

17

18

19

20

21

22

23

24

25

26

27

28

KYL_SF457819

**NON-PARTY EDWARD EUROF LLOYD-LEWIS' DECLARATION
IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED
COMPLAINT - Case No. CV6-1524 JLR**

KEESAL, YOUNG & LOGAN
1301 FIFTH AVENUE, SUITE 1515
SEATTLE, WA 98101
(206) 622-3790

**EXHIBIT 3**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**



FILED by _____ D.C.
DKTG

JUN - 1 2007

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

CASE NO._____

VIVENDI HOLDINGS 1 CORP., as the assignee
of an Elektrim Bondholder,

      Plaintiff,

v.

LAW DEBENTURE TRUST CORPORATION, PLC,
and ELEKTRIM S.A.,

      Defendants.

_____/

**07 - 21431**

**CIV-KING**

MAGISTRATE JUDGE
GARBER

## COMPLAINT

1. Plaintiff Vivendi Holdings 1 Corp. ("Vivendi"), as the assignee of claims held by

General Motors Corp. ("GM") with respect to bonds issued by Elektrim Finance BV and

guaranteed by its parent Defendant Elektrim SA (collectively "Elektrim"), brings this action

against Law Debenture Trust Corporation ("LDTC"), the Trustee for the Elektrim bondholders,

for breach of its fiduciary duty to Plaintiff and failure to exercise the reasonable degree of care

and diligence that it was required to provide by the Second Supplemental Trust Deed. In

particular, LDTC failed to disclose material information to Plaintiff and failed to exercise due

care prior to dismissing the bankruptcy petition that the Elektrim bondholders had filed against

Elektrim. As a result of that dismissal, the bondholders lost the right to recover the entire value

of substantial assets that Elektrim had fraudulently transferred, including shares of Polska

Telfonia Cyfrowa Sp. z o.o. ("PTC").

2. Plaintiff also brings this action against Elektrim, as Plaintiff was injured by

Elektrim's failure to comply with its obligations to bondholders under a restructuring agreement

that provided, among other things, that Elektrim would pay the bondholders a significant portion

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 1

of the increase in value of Elektrim (the "equity kicker"), representing 25% of the net asset value of Elektrim in excess of 160 million Euros, in return for the bondholders accepting a lower interest rate and extended payment terms. Elektrim breached that agreement by participating in the stripping of its assets by Solorz and Deutsche Telekom thereby substantially reducing the value of the equity kicker. In addition, Elektrim fraudulently induced Plaintiff, acting through its Miami-based investment advisor Everest Capital Inc. ("Everest"), to purchase the bonds in reliance on the equity kicker and on the representation that Elektrim possessed substantial assets including shares of PTC and would preserve those assets. Plaintiff was also injured by still other misrepresentations that caused Plaintiff to support the withdrawal of the bankruptcy petition.

## JURISDICTION

3.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

4.    Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(a)(3).

## PARTIES

5.    Plaintiff Vivendi is a Delaware corporation with its principal place of business in New York City. Vivendi brings this action as an assignee of GM, pursuant to an assignment agreement executed on May 29, 2007 as a result of a business transaction that conveyed all claims held by GM against the Defendants to Vivendi. GM is a Delaware corporation with its principal place of business in Detroit, Michigan. GM does business in this District through its agent Everest Capital Inc. ("Everest"), and Defendants misled Everest in this District.

6.    Defendant LDTC is a U.K. corporation with its principal place of business in London, England. It maintains U.S. offices in New York and Delaware. It conducts business in this judicial district by among other things doing business with Everest as agent for GM and other bondholders.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

7.    Defendant Elektrim SA is a Polish company based in Warsaw. It does business in this District by among other things guaranteeing bonds issued to GM by Elektrim SA's affiliate, Elektrim Finance BV.

## FACTS

8.    Starting in February 2005 and continuing through June 2006, Everest Capital Inc. ("Everest") purchased for both itself and for its clients, including GM, Elektrim Finance BV 2% bonds due 12/15/2005 (the "Elektrim Bonds").

9.    Everest purchased the bonds for GM in reliance on representations by Elektrim that it owned substantial assets, including (a) shares of PTC now worth more than $3 billion, (b) shares in Zespół Elektrowni Pątnów-Adamów-Konin S.A. (hereinafter "ZE PAK") (one of Poland's leading power generation companies), (c) shares in Port Praski sp. z o.o., a company which owns a significant real estate asset known as Port Praski, and (d) a controlling stake in Rafako, a company producing energy plant equipment.

10.    Everest also purchased the bonds for GM in reliance on a Restructuring Agreement that Elektrim had entered into with the bondholders that granted the bondholders an equity kicker in exchange for extending the payment terms and reducing the interest rate on the bonds.

11.    Shortly after Elektrim entered into the Restructuring Agreement, and he took control of Elektrim, Elektrim's controlling shareholder, Zygmunt Solorz –Zak ("Solorz"), a Polish oligarch and two-time convicted criminal, began stripping assets from Elektrim, thereby undermining the value of the equity kicker.

12.    On March 3, 2005, after Elektrim Finance BV failed to make required principal and interest payments, a group of bondholders of Elektrim Finance BV filed a petition in Polish court (a) to put Elektrim S.A., the guarantor of the bonds, into bankruptcy, (b) to put an end to

3

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 3

the stripping of Elektrim's assets, (c) to recover assets that had been fraudulently transferred from Elektrim, and (d) to liquidate Elektrim.S.A. and use its assets to repay the Elektrim bondholders and to enable them to recover the full value of the equity kicker.

13.     Knowing that Elektrim's liquidation could frustrate its plan to illegally transfer the PTC shares to Deutsche Telekom AG ("DT") at below fair market value and be paid twice for the same shares that it had earlier sold to Vivendi SA (through Elektrim Telekomunikacja Sp. z o.o), Mr. Solorz, upon information and belief, used his influence in Poland to delay consideration of the bankruptcy petition with the hope that Elektrim would be able to transfer the PTC shares to DT before the bankruptcy while at the same time keeping DT's payment out of Elektrim, thereby enriching Solorz.

14.     In an effort to provide a patina of legitimacy for the illegal transfer of the PTC shares to DT prior to the liquidation of Elektrim by the bankruptcy court and prior to judicial rulings that Vivendi was the actual owner of the PTC shares, DT initiated on May 3, 2005, an arbitration in Vienna against Elektrim S.A. (the "Vienna Arbitration"). In that proceeding, DT sought a formal, declaratory judgment that DT was entitled to exercise a call option on the PTC shares, i.e., the right to purchase an asset worth more than $3 billion at a fraction of its value, as a result of an alleged breach by Elektrim S.A. of a shareholder agreement that involved Elektrim.

15.     This Vienna Arbitration was in part a set-up, since DT and Elektrim, upon information and belief, had secretly agreed to transfer the PTC shares to DT in return for at least the book value of the shares, which was only a fraction of their true value. DT, Elektrim and Solorz also had agreed that, if the arbitration panel ruled that the call had been validly exercised, then the call option would be retroactively deemed exercised as of February 15, 2005 in order to avoid the fraudulent-conveyance period applicable to Elektrim's bankruptcy. Elektrim was

4

willing to transfer the PTC shares at less than fair value because Elektrim had previously been paid by Vivendi for the same shares. Also, upon information and belief, Solorz, who controlled Elektrim, would receive other benefits from DT. To achieve these mutual benefits, DT and Elektrim jointly sought to accelerate the arbitration proceeding.

16.    On June 6, 2006, at the joint request of DT and Elektrim, the Vienna Arbitration panel issued its First Partial Award, ruling that DT had lawfully exercised its call option on February 15, 2005 and that T-Mobile "*will* acquire the shares that Elektrim owned in PTC and *will* be their owner." (Emphasis added.) (The arbitration panel did not rule on the number of shares subject to the call option.) However, the First Partial Award *did not authorize or permit Elektrim to transfer the PTC shares to T-Mobile*. Rather, the Arbitration Panel *explicitly* stated that the transfer could occur only *in the future* after the Panel resolved additional issues. The Panel stated that "the Arbitral Panel expects the Parties to file the necessary documentation and to expose the issues relating to the mechanism of transfer of ownership . . . *in preparation for the next substantive award* in the present arbitral proceeding." (Emphasis added.) In particular, the award provided that "it is important to state in the Operative Part of the present award that as a matter of principle the full transfer of ownership of the shares to DT *will* occur only when the price of those shares is paid to Respondent" and that the price of the shares "*would* be left to a subsequent award" and would be "established by the Arbitral Tribunal." (Emphasis added.) As is clear, the highlighted words from the First Partial Award show that *no* transfer of title may presently occur until a subsequent decision by an arbitral panel explicitly authorizes it.

17.    The June 6, 2006 First Partial Award was not public and neither Vivendi, Everest, nor GM had access to it until much later.

5

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

18.     At the time the Vienna Arbitration Panel issued its First Partial Award, Elektrim was subject to an Order of the London Court of International Arbitration ("LCIA") issued on April 28, 2005 and then extended on September 9, 2005, which enjoined Elektrim from "voluntarily seeking to sell, agree to sell, transfer, encumber, or otherwise dispose of or create any interest in the PTC shares." In addition, Elektrim was subject to an injunction issued on November 23, 2005 by the Commercial Court of Warsaw in the bankruptcy proceeding to secure all PTC shares held by Elektrim.

19.     Faced with these injunctions and their failure to obtain an arbitral award authorizing an immediate transfer of the title and full ownership rights relating to the PTC shares and faced with the looming prospect that the bankruptcy court would liquidate Elektrim and/or that Vivendi would recover the PTC shares that rightfully belonged to it, DT and Elektrim simply ignored the injunctions and proceeded with their scheme to illegally transfer the PTC shares out of Elektrim and DT and then fraudulently induce the bondholders to dismiss their bankruptcy proceeding.

20.     On June 23, 2006, Elektrim sent a letter addressed to the Management Board at PTC falsely stating that "title to these [PTC shares] has passed to TMD [DT]," contradicting the plain language of the First Partial Award of the Vienna Arbitration Panel. This letter was not public, and neither Everest nor GM learned of it until much later.

21.     On June 27, 2006, the Warsaw District Court issued yet another order attaching Elektrim's PTC shares as security for Vivendi's claims in the LCIA and, like the other injunctions, prohibiting Elektrim from transferring any of its assets. The Court ordered to "grant interim relief to secure the claim pursued by Vivendi . . . by attaching . . . shares possessed by

6

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 6

Elektrim in PTC, National Court Register [NCR] registration number 0000029159." LDTC
either knew or should have known of these injunctions.

     22.     On July 3, 2006, Everest indirectly received a letter from Elektrim Finance that
stated that Elektrim Finance had not, since the execution of the Second Supplemental Trust Deed
dated 15 November 2002, dissipated or otherwise conveyed its assets, including the inter-
company indebtedness between Elektrim Finance BV and Elektrim SA under the Trust Deed.
This letter created the misleading impression that Elektrim's assets were not being stripped.

     23.     On July 18, 2006, the Bailiff Court of the District Court of Poland issued an order
attaching Elektrim's property rights in the PTC shares.

     24.     On August 2, 2006, LCIA ordered further interim relief, confirming its original
injunction and enjoining Elektrim from transferring the disputed PTC shares. The LCIA noted
that "the dispute [between Vivendi and Elektrim] regarding title to the PTC shares has not yet
been entirely resolved" and recognized the real "risk of impending injury and irreparable harm"
to Vivendi if such a transfer took place. The LCIA reiterated that "it is the Arbitral Tribunal's
duty to ensure that Elektrim does not appropriate the PTC shares without consideration in breach
of the TIA [the Third Investment Agreement between Elektrim and Vivendi]."

     25.     On August 28, 2006, violating the outstanding injunctions and the order of the
LCIA, PTC's sham Management Board (at the direction of T-Mobile and Elektrim) secretly
created a "Shareholders List" for PTC showing that Elektrim had transferred the PTC shares to
DT and that DT held title to the PTC Shares. This purported to constitute an illegal transfer of
the PTC shares to DT for no consideration.

     26.     On September 5, 2006, DT illegally asserted full ownership rights over the PTC
shares and appointed two new members of PTC's Supervisory Board. Among the new members

7

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 7

was Thomas Winkler, who upon information and belief conducted business in the United States

at T-Mobile USA, Inc.'s Seattle, Washington headquarters to, among other things, integrate both

T-Mobile USA and PTC into the same T-Mobile global wireless network.

27.    On September 5, 2006, DT, acting in collusion with Elektrim, issued a materially

misleading press release which was carried over U.S. wires and upon which Everest relied.  In

the release, DT represented that DT had *lawfully* acquired PTC and was exercising control over it

*pursuant to an award of the Vienna arbitration panel* (which award was not public and which

neither Vivendi, Everest, nor GM had seen), when in fact, DT and Elektrim were acting in a

manner that *contradicted* the award rendered by the panel at that time.  The First Partial Award

expressly stated title could *not* be transferred until subsequent future decisions were made

regarding the quantity of the shares to which the call option applied and the value of those

shares.

28.    Upon information and belief, the press release was intended to falsely convey to

the U.S. bondholders of Elektrim (among others) that DT lawfully owned the PTC Shares.  As a

result, Elektrim and DT hoped and expected, upon information and belief, that the U.S.

bondholders would regard a forthcoming offer from DT and Elektrim to be the only opportunity

for repayment of the Elektrim bonds and thus withdraw their bankruptcy petition despite a

below-market-value payment by DT for the PTC shares.

29.    At approximately the same time, DT and Elektrim jointly requested the Vienna

Arbitration Panel to accelerate the proceeding in order to obtain an award before the October 4,

bankruptcy hearing in order to attempt a *post-facto* justification of the August 28 consensual

transfer.  Significantly, neither DT or Elektrim disclosed to the Arbitration panel that Elektrim

already had transferred the PTC shares to DT.

8

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

30.     On October 2, 2006, the Vienna Arbitration Panel issued its Second Partial Award. While the Panel recognized that DT had properly exercised the call option and that the price for the shares would be based on PTC's net asset value, the Panel did *not* authorize the transfer of the PTC shares from Elektrim to DT before payment. The Second Partial Award noted that DT "acknowledges that both as a matter of fact and company law, full transfer of ownership of the PTC Option Shares will require further steps," including, but not limited to, payment for the stock and determination of the number of shares to which the call option applied. With respect to the determination of a price, the Panel stated as follows in the Second Partial Award:

> [I]t is not possible to conclude that a share purchase agreement has been validly concluded on 15 February 2005 with the effect of transferring the full legal title to the Option Shares. Rather the exercise by Claimant of the call option under Article 16(1) of the Shareholders Agreement should be deemed the fulfillment of a necessary legal requirement to bring about the transfer of the shares once the determination of their precise number and of their price will have been undertaken in the present arbitral proceeding. . . . *In sum, the exercise of the call option was a necessary but not a sufficient step in the conclusion of the share transfer agreement. The payment of the price, although it had been foreseen to occur 30 days after the formal transfer, is indispensable for the transfer to take place.* [Emphasis added.]

31.     With respect to the number of shares covered by the call option, the Second Partial award stated as follows:

> Claimant [DT] has appropriately declared that the present title to the Shares is uncertain, and was uncertain at this time of the exercise of the call option. It points out that "it remains unclear whether DT has acquired 226,080 PTC shares (i.e., over 48 percent of the PTC shares), on the one hand, or only a single PTC share, on the other."

32.     On October 4, 2006, without disclosing the full content of the Second Partial Award, DT (in conspiracy with Elektrim) issued another misleading statement to the press, which upon information and belief, they knew would be carried on U.S. wires and would mislead the Elektrim bondholders. The press release stated:

9

In yet another award of October 2, 2006, the Arbitral Tribunal in Vienna conferred the ownership title to the disputable 48% of the shares in PTC to Deutsche Telecom [sic] (with effect as of February 15, 2005, which remains in concord with the joint stand of Elektrim S.A. and Deutsche Telecom presented to date. For this reason Deutsche Telekom has paid an amount of more than EUR 600 million, which surely covers the current book value of the shares in PTC. [Emphasis added.]

33.    Everest relied on this release, which deceived Everest, acting on behalf of GM, about the content and effect of the Second Partial Award (which was not publicly available). In fact, the Award had not "conferred ownership title" of the PTC shares to DT. Nor had DT paid for the shares at that time. Nor were the shares properly registered.

34.    Once again, by issuing the release, DT, upon information and belief, intended to mislead the Elektrim bondholders into believing that a forthcoming inadequate offer from DT and Elektrim would be the bondholders' only hope of payment, and that the payment was the result of a legal transaction. The release was also noteworthy because it publicly acknowledges that DT and Elektrim had a "common position" to hand over ownership of the PTC shares to DT for a fraction of their value, confirming the on-going collusion between Elektrim and T-Mobile.

35.    On October 4, 2006, the Polish bankruptcy court held a hearing to determine whether to liquidate Elektrim. At the hearing, Elektrim's lawyer asked for an adjournment to study what it called new evidence. In fact, upon information and belief, Elektrim wanted more time so that it could continue discussions with Defendants LDTC and DT, which had not yet paid for the PTC shares it had taken possession of several weeks earlier. At the hearing, neither Elektrim's attorneys nor DT's attorneys disclosed to the court that the PTC shares had already been transferred to DT without any compensation. Indeed, in its written submission to the court filed on September 28, 2006, Elektrim had affirmatively misrepresented that it still had possession of the PTC shares. The bondholders' representative remained silent because they had been fraudulently induced into supporting the dismissal of the bankruptcy petition.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 10

36.    On October 23, 2006, in response to Elektrim's request that the LCIA modify its prior order and allow Elektrim to pay to the Elektrim bondholders the proceeds from Elektrim's transfer of the PTC shares to DT, the LCIA ruled that it was for a Polish court to decide whether such a payment could be lawfully made. Accordingly, the LCIA modified its prior order so as not to stand in the way of a Polish court.

37.    On or about October 26, 2006, pursuant to an arrangement between Elektrim, DT, and LDTC, DT, either directly or through Elektrim, made a payment of €525 million to LDTC in its capacity as trustee of the Elektrim bondholders. Neither Everest nor GM was aware at the time that DT and Elektrim had acted in a manner inconsistent with the orders of the Vienna Arbitration Panel that were then in effect.

38.    On October 27, 2006, LDTC -- without disclosing to Everest or GM its knowledge that DT and Elektrim had engaged in a transaction that was contrary to the direction of the Vienna Arbitration Panel – withdrew the Elektrim bondholders' bankruptcy petition.

39.    Subsequently, Vivendi wrote to LDTC informing it that Vivendi had a proprietary claim to the proceeds of the sale of the PTC shares as a result of a September 2001 Agreement between Elektrim and Vivendi. In response, LDTC did not distribute the funds but instead filed an action in the English High Court, to which Vivendi was not a party, requesting guidance as to whether the LDTC could distribute the funds.

40.    On May 1, 2007, the English High Court – without having given Vivendi any prior opportunity to be heard – held that, although Vivendi might have a claim against Elektrim under a September 2001 shareholder agreement, Vivendi did not have a "proprietary" claim to the money that DT (either directly or through Elektrim) paid to LDTC as trustee for the Elektrim bondholders. The Court acknowledged that LDTC's attorneys were unwilling to advise LDTC

11

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 11

that it could lawfully distribute the money it had received to the bondholders.  LDTC did not disclose its attorneys' objections.

41.    LDTC still has not distributed the funds to the Elektrim bondholders.

42.    After the secret and illegal transfer of PTC Shares from Elektrim to T-Mobile on August 28, 2006, under Polish law, PTC was required to file for re-registration of the shares in the public court registry known as the "KRS" within seven days.  That means such filing should have occurred no later than September 4, 2006.  But, that would have necessarily exposed the illegality of the transfer prior to dismissal of the bankruptcy action, which as long as it continued prevented T-Mobile from taking free and clear title to the PTC Shares.  Therefore, Elektrim and T-Mobile caused PTC to illegally delay the filing for re-registration of the PTC Shares in T-Mobile's name for nearly two months beyond the legally established deadline.  Indeed, there was no such filing made at the KRS until November 2, 2006.

## COUNT ONE

### Breach of Fiduciary Duty

### (Against Defendant LDTC Only)

43.    Plaintiff incorporates by reference and realleges the allegations of each and every preceding paragraph.

44.    As the Trustee for the Elektrim bondholders, LDTC owed a fiduciary duty to GM, as an Elektrim bondholder.

45.    LDTC had a copy of the First Partial Award of the Vienna Arbitration proceeding prior to the decision of the Elektrim bondholders to withdraw their bankruptcy petition.

46.    LDTC failed to disclose the First Partial Award to GM or to its agent, Everest, prior to the Elektrim bondholders' decision to withdraw their bankruptcy petition.

12

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

47.    If Everest, acting on behalf of GM, had known the contents of the First Partial Award – *i.e.*, that the Award did not permit Elektrim to transfer the PTC shares to DT – Everest would have opposed the withdrawal of the bankruptcy petition.

48.    Had Everest opposed the withdrawal, and explained its reasons for doing so, the withdrawal would not have occurred. One reason is that the bondholders themselves typically required unanimity before making important decisions.

49.    GM was harmed by LDTC's failure to disclose the First Partial Award. If the Elektrim Bondholders had not withdrawn their petition for bankruptcy, GM would have been in a substantially better position than they are now because it would have been able use the bankruptcy proceeding to recapture fraudulently transferred assets, including the PTC shares, the value of which is much greater than the amount that DT paid (directly or through Elektrim) to LDTC. Even though the amount DT paid to LDTC was sufficient to cover principal and interest, it did not cover the amount that the bondholders should have recovered under the equity kicker.

50.    GM also has been harmed because LDTC has not released the proceeds it received from DT because the illegal transfer has subsequently come to light. Although the money held by LDTC is collecting interest, that interest is less than the return that Everest has been historically generating for GM.

51.    As a result of LDTC's breach of fiduciary duty, Plaintiff has suffered damages exceeding $75,000.

13

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

## COUNT TWO

### Breach of Trust Agreement

### (Against Defendant LDTC Only)

52.    Plaintiff incorporates by reference and realleges the allegations of each and every preceding paragraph.

53.    As a result of the conduct set forth above, LDTC failed to exercise the degree of care and diligence required by Section 18 of the Second Supplemental Trust Deed of which Plaintiff was an intended beneficiary.  That provision provides that "[n]othing in these presents shall in any case in which the Trustee has failed to show the degree of care and diligence required of it as trustee having regard to the provisions of these presents conferring on it any trusts, powers, authorities or discretions exempt the Trustee from or indemnify it against any liability for breach of trust."

54.    LDTC's conduct described above constitutes a breach of trust.

55.    As a result of LDTC's breach of fiduciary duty, Plaintiff has suffered damages exceeding $75,000.

## COUNT THREE

### Breach of Contract

### (Against Defendant Elektrim SA)

56.    Plaintiff incorporates by reference and realleges the allegations of each and every preceding paragraph.

57.    By condoning the stripping of assets from Elektrim, Elektrim frustrated its ability to pay an equity kicker and thereby materially breached the restructuring agreement.

58.    Plaintiff as an Elektrim bondholder is a beneficiary of the Restructuring Agreement and Elektrim has been harmed by Elektrim's breach.

14

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 14

59.    As a result of Elektrim's breach, Plaintiff has suffered damages exceeding $75,000.

## COUNT FOUR

### Fraud

### (Against Defendants Elektrim SA)

60.    Plaintiff incorporates by reference and realleges the allegations of each and every preceding paragraph.

61.    As set forth below, Elektrim engaged in a pattern of fraud that included (a) fraudulently inducing Plaintiff to purchase the Elektrim bonds based on false statements regarding Elektrim's assets, (b) fraudulently inducing Plaintiff to purchase the bonds by representing that it would pay an equity kicker when in fact it was allowing assets to be stripped from Elektrim that were material to the calculation of the equity kicker, (c) making false statements regarding the legality of its transfer of Elektrim's transfer of PTC shares to DT, and (d) failure to disclose its complicity in the stripping of its assets by Mr. Solorz and DT.

62.    Starting in February 2005 and continuing through June 2006, Everest purchased (on GM's behalf) bonds of Elektrim Finance that were guaranteed by Elektrim.  Everest made these purchases in reliance on representations by Elektrim that it was the lawful owner of PTC Shares, when in fact it was not, and in reliance on Elektrim's representations, express and implied, in the restructuring agreement that it had a good faith intent to honor the equity-kicker provisions.

63.    Everest, acting on behalf of GM, relied on this misrepresentation when it purchased Elektrim bonds on behalf of GM.  As a result, GM, acting through Everest, overpaid for the bonds and incurred much greater risk than it intended.

64.    Elektrim also engaged in fraud with respect to the transfer of PTC shares to DT.

15

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

65.    On or about October 26, 2006, an agreement was reached whereby DT, which was then in unlawful possession of the PTC shares, would pay €525 million to LDTC either directly or through Elektrim, and LDTC would then withdraw the bondholders' petition for bankruptcy.  Everest's support for this agreement was material to achieving the agreement.  In supporting this agreement, Everest relied upon statements of DT, made in conspiracy with Elektrim, that Elektrim's sale of the shares of PTC was lawful and had been authorized and permitted by a Vienna Arbitration panel.  In particular, Plaintiff, through its agent Everest, relied upon DT's press releases of September 5, 2006 and October 4, 2006, referred to above, which falsely stated that the transfer of PTC shares from Elektrim to DT was made pursuant to orders of the Vienna Arbitration Panel.

66.    All these false statements were made pursuant to a conspiracy between DT, T-Mobile USA, T-Mobile Deutschland GBH, T-Mobile International, Elektrim SA, Elektrim Finance BV, and Solorz to mislead the Elektrim bondholders so as to facilitate the unlawful transfer of PTC shares from Elektrim SA to DT.  As long as the bankruptcy proceeding remained pending, the PTC shares that Elektrim had illegally transferred to DT could have been recaptured as fraudulent conveyances to the benefit of Plaintiff.

67.    Neither Elektrim SA nor Elektrim Finance BV ever disclosed to Everest that Elektrim SA's transfer of the PTC shares from Elektrim SA to DT was not authorized by the June 6, 2006 First Partial Award of the Vienna Arbitration Panel.

68.    If Everest and GM had known that the money paid by DT to LDTC was the fruit of an illegal transaction of which both DT and LDTC were aware, Everest, acting for GM, would have opposed the withdrawal of the bondholders' bankruptcy petition because of concern about

16

the legality of the underlying transfer of the PTC shares to DT at a time when it violated injunctions and had not been authorized by the Vienna Arbitration Panel.

69.    Had Everest opposed the withdrawal, and explained its reasons for doing so, the withdrawal would not have occurred. One reason is that the bondholders themselves typically required unanimity before making important decisions. It would have been Everest's judgment that the bondholders would have been better off if they had availed themselves of the bankruptcy court's procedures for reclaiming fraudulently conveyed assets and thereby received what they were entitled to under the equity kicker.

70.    GM was harmed by Defendants' fraudulent statements and material omissions. If the Elektrim Bondholders had not withdrawn their petition for bankruptcy, GM would have been in a substantially better position than it is now because it would have been able use the bankruptcy proceeding to recapture fraudulently transferred assets, including the PTC shares, the value of which is much greater than the amount that DT paid to LDTC. This would have benefited Plaintiff even after all outstanding principal and interest had been paid because Elektrim bondholders were also entitled to an equity kicker in which they share in any growth in value of Elektrim. Moreover, Elektrim would not have incurred legal expenses, which have devalued the equity kicker, which were the result of the improper transfer.

71.    GM also has been harmed because LDTC has not released the proceeds it received from DT because the illegal transfer has subsequently come to light. Although the money held by LDTC is collecting interest, that interest is less than the return that Everest has been historically generating for GM.

72.    Elektrim has also defrauded GM and the other bondholders by aiding and abetting the stripping of Elektrim assets that secured the bonds by Solorz. In particular, Solorz stripped

17

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 17

Elektrim of its shares in ZE PAK, a 50% State-owned company, by arranging for them to be transferred through an illegitimate transaction to one of his companies for little value. In this transaction, Solorz managed to seize for himself an asset worth many times more than his *de facto* purchase price. Solorz later engaged in a similar illegitimate transactions with respect to Port Praski and Rafako, positioning himself to be able to seize Port Praski illegitimately for one of his own companies for a fraction of its value and causing Rafako to incur a huge capital increase, potentially highly dilutive for Elektrim, without any precise purpose.

73.    Elektrim's transfer of PTC shares to DT at less than fair market value also constituted a stripping of Elektrim's assets, as did an earlier transaction in which Elektrim transferred PTC shares to Mega, another entity controlled by Solorz.

74.    As a result of Elektrim's failure to resist the asset stripping and its failure to disclose the full extent of the asset stripping to the bondholders, the bondholders were deprived of assets that could have been used to pay the full value that Elektrim owed to the bondholders, including the full value of the equity kicker.

75.    As a result of this pattern of fraudulent conduct, GM has suffered damages far exceeding $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Court to grant the following relief as appropriate:

a)    Order LDTC to hold the proceeds of the illegal transfer of PTC shares in escrow until such time as the unlawful transaction is unwound;

b)    Enjoin LDTC from taking any action, such as paying out the proceeds of the illegal transfer of PTC shares, that would waive its right to receive the full value of the equity kicker;

c)    Award to Plaintiff its actual and compensatory damages according to proof at trial;

18

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street ▪ Miami, FL 33130 ▪ 305-789-3200

d) Award to Plaintiff pre- and post-judgment interest as permitted by law; and
Award such other relief as the Court deems appropriate.

Dated: June 1, 2007                    Respectfully submitted,
       Miami, Florida

ALEXANDER ANGUEIRA (Florida Bar No. 0716091)
aangueira@swmwas.com
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Suite 2200, Museum Tower
150 West Flagler Street
Miami, Florida 33130
Telephone:   (305) 789-3200
Facsimile:   (305) 789-3395
**Attorneys for Plaintiff**

19

LLOYD-LEWIS DEC.
EXHIBIT 3, PAGE 19

Case 1:07-cv-21431-JLK    Document 1    Entered on FLSD Docket 06/01/2007    Page 20 of 20

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.

## I. (a) PLAINTIFFS

VIVIENDI HOLDINGS 1 CORP., as the assignee of General Motors Corp.

## DEFENDANTS

LAW DEBENTURE TRUST CORPORATION, PLC, and ELEKTRIM SA

**(b)** County of Residence of First Listed Plaintiff    Delaware Corp.
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Foreign Entity
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Alexander Angueira, Esq.
Stearns Weaver Miller, et al., 150 West Flagler Street,
Suite 2200 Miami, FL 33130, (305) 789-3200

Attorneys (If Known)

CIV-KING    MAGISTRATE JUDGE
GARBER

**(d)** Check County Where Action Arose: ☑ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE ☐ HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

1:2007CV 21431 / JLK / BLG

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☑ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | FILED by DKTG | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | JUN 1 2007 | |

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. of FLA — MIAMI

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 U.S.C. Section 1332

LENGTH OF TRIAL via  10  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ In excess of $75000.00

CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE    June 1, 2007

FOR OFFICE USE ONLY

AMOUNT $350.00    RECEIPT # 9L0670

06/01/07