**EXHIBIT 5**

IN THE HIGH COURT OF JUSTICE     No. HC07C00763

CHANCERY DIVISION

**[2007] EWHC 1604 (Ch)**

Royal Courts of Justice

Friday, 8th June 2007

Before:

MR. JUSTICE LEWISON

B E T W E E N :

THE LAW DEBENTURE TRUST CORPORATION PLC     Claimant

- and -

CONCORD TRUST & Ors.     Defendants

*Transcribed by BEVERLEY F. NUNNERY & CO*
*Official Shorthand Writers and Tape Transcribers*
*Quality House, Quality Court, Chancery Lane, London WC2A 1HP*
*Tel: 020 7831 5627    Fax: 020 7831 7737*

MR. R. MILES QC and MR. A. CLUTTERBUCK (instructed by Simmons & Simmons) appeared on behalf of the Claimant.

MS. S. PREVEZER QC and MR. E. KING (instructed by Bingham McCutchen) appeared on behalf of the First and Second Defendants.

MR. R. MILLETT QC (instructed by Barlow Lyde & Gilbert) appeared on behalf of the Third Defendant.

# JUDGMENT

(As approved by the Judge)

MR. JUSTICE LEWISON:

1. By an amended complaint of 7th June 2007 Vivendi Holdings 1 Corporation as the assignee of an Elektrim bondholder has brought a complaint against the Law Debenture Trust Corporation and Elektrim SA. That complaint has been brought in the United District Court for the Southern District of Florida, Miami Division. Vivendi Holdings 1 Corporation is a subsidiary of Vivendi, the French media company, which has already made claims against Elektrim and the trustee which I considered in a judgment I gave on 1st May this year in which I decided that the claims as then formulated had no reasonable foundation.

2. In essence the claims now put forward in the United States District Court traverse much of the same ground so far as the factual basis of the claims is concerned, although, according to the pleader of the amended complaint, the precise legal clothing in which those claims are dressed has to some extent changed.

3. Elektrim apply by original process for an anti-suit injunction restraining the continuation of those proceedings, and Law Debenture apply by an application in the current proceedings before me for an order joining Vivendi Holdings 1 Corporation to those existing proceedings and for a similar anti-suit injunction.

4. The bases underlying the applications for the anti-suit injunction are two-fold. First, certain provisions of the trust deed pursuant to which the bonds were issued and which are now held by Vivendi Holdings 1 Corporation and, secondly, allegations that the proceedings are vexatious and oppressive, not least because they include a collateral attack on the judgment which I gave on 1st May 2007.

5. The terms of the trust deed under which the bonds were issued include an obligation on the part of Elektrim in clause 15.1(A) "at all times to carry on and conduct its affairs and procure that its subsidiaries carry on and conduct their respective affairs in a proper and efficient manner". One of the subsidiaries was a company called PCT, and one of the allegations that has been made is that shares in PCT were sold to Deutsche Telecom at a considerable undervalue. I have already related a lot of the history in the judgment which I gave on 1st May. Suffice it to say that Elektrim had not paid monies due under the deed of trust, it was pursued by way of bankruptcy proceedings and those bankruptcy proceedings were withdrawn on the basis that it paid over to the trustee €525 million, which represented part of the proceeds of sale of the PCT shares. In my judgment, I held that the trustee at

BEVERLEY F NUNNERY & CO
OFFICIAL SHORTHAND WRITERS

any rate received those monies as a bona fide purchaser for value without notice of any proprietary claim by Vivendi against those monies.

6  I should say that under the terms of the documents, Elektrim - this time as principal rather than as guarantor - is potentially liable to make what the documents describe as a contingent payment. The contingent payment is linked to Elektrim's asset value. That same contingent payment is described in the amended complaint in Florida as an equity kicker. It is one of allegations which the trustee makes against Elektrim that it has stripped out some of its assets, thereby reducing the prospect of the contingent payment ever being made. It has begun proceedings in this jurisdiction seeking damages for breach of clause 15.1(A) of the deed of trust, based upon the loss of a chance to recover the contingent payment.

7  Clause 10 of the deed of trust provides that only the trustee may enforce the provisions of the trust deed and continues that:

> "No Bondholder shall be entitled to proceed directly against the Issuer or the Guarantor to enforce the performance of any of the provisions of these presents unless the Trustee having become bound as aforesaid to take proceedings fails to do so within a reasonable period and such failure is continuing."

8  Having read the amended complaint, I am satisfied that it covers the same ground as the ground that is covered in the trustee's existing proceedings for damages for breach of clause 15.1, with the consequence that a bondholder is contractually prohibited from bringing proceedings. Vivendi Holdings 1 Corporation is such a bondholder and consequently its proceedings in the District Court in Florida are a breach of the deed of trust by which in its capacity as bondholder it is bound.

9  The amended complaint seeks to circumvent the judgment which I gave on 1st May by alleging that the judgment was given in ignorance of facts which ought to have been disclosed to the court by Elektrim and/or Law Debenture Trust Corporation. That, in my judgment, is plainly a collateral attack on a judgment of the English court. It follows, in my judgment, that on the basis of the material I have seen the proceedings begun by Vivendi Holdings 1 Corporation in Florida are both a breach of contract and also designed as a collateral attack on a judgment of mine.

10  Mr. Millett QC, on behalf of Elektrim, also submits that they are oppressive in the sense that his client, Elektrim, is exposed to double jeopardy for the same

underlying facts, once at the suit of the trustee and, secondly, at the suit of individual bondholders. I agree with that too.

11  In addition, because the first two defendants to the existing proceedings have been appointed as representatives of all the bondholders, that is to say Concord Trust and Axiona(?) SA, the judgment which I gave on 1st May 2007 binds them as parties to the proceedings in which they are represented. That provides another reason why Vivendi Holding 1 Corporation, which is a successor in title to one of the bondholders subject to that representation order, ought not to be allowed to maintain its Florida proceedings.

12  So far as the question of service out of the jurisdiction is concerned, I am satisfied that the claim by Elektrim was made in respect of a contract governed by English law and consequently falls within rule 6.20(5)(c) of the Civil Procedure Rules. In addition, the claim relates to money which is located within this jurisdiction, that is to say the fund in the hands of the trustee. Consequently, it also falls within 6.20(10).

13  So far as the trustee's claim is concerned, it also falls within those two paragraphs and, in addition, the trustee applies - rightly, in my judgment - to join Vivendi Holdings 1 Corporation as an additional party to the existing action under rule 19.2 of the Civil Procedure Rules, as being a person with whom there is an issue which is already the subject of proceedings pending in this jurisdiction.

14  In terms of the discretion to permit service out of the jurisdiction, the proceedings in essence involve a trust which is domiciled in this jurisdiction, which is administered in this jurisdiction, where the trustee is resident in this jurisdiction, where the principal trust assets are located within this jurisdiction and which is expressly stated to be subject to English law. The pleaded connections with Florida are, in my judgment, tenuous in the extreme.

15  The question that has troubled me is whether I should make an order without having heard what Vivendi Holdings 1 Corporation has to say. Although this is, strictly speaking, an application without notice, in fact short notice has been given to Vivendi Holdings 1 Corporation and I have received and read a letter from Mr. Angueira, the Florida attorney representing Vivendi Holding 1 Corporation. The arguments which he advanced in support of the contention that the claims have nothing to do with the trust deed are, in my judgment, tenuous arguments and it is, in my judgment, the case that the substance of the complaint exactly mirrors the substance of the trustee's proceedings for breach of clause 15.1.

BEVERLEY F NUNNERY & CO
OFFICIAL SHORTHAND WRITERS

16    I consider therefore that there has been, albeit limited, an opportunity for Vivendi Holdings 1 Corporation to make the points that it wishes to make. It is, I accept, desirable that the proceedings in Florida should not be allowed to gather momentum and it may well be, although Mr. Millett does not concede this, that Elektrim is liable to pay interest on the amount of money in the hands of the trustee at a rate of approximately €100,000 per day. Delay is therefore expensive.

17    For those reasons I will make the anti-suit orders at the behest both of Elektrim and of the trustee and I will give permission to serve those orders and the accompanying claim forms and application notices out of the jurisdiction. I will also make an order joining Vivendi Holdings 1 Corporation to the current Part 8 proceedings.

MR. MILLETT: My Lord, could I just clarify one point? In relation to service out, I am not sure in your Lordship's judgment you expressly dealt with 6.20.3, which is the necessary and proper party claim. Your Lordship dealt with the question of joinder but it would be helpful if your Lordship would perhaps rule on that point too.

MR. JUSTICE LEWISON:

18    There is plainly a dispute about what, if anything, the trustee should do with the sum of money which is currently in its hands. The representative bondholders urge the trustee to distribute. It appears from the amended complaint that Vivendi Holding 1 Corporation requires the money to be kept in the trustee's hands and not distributed. That dispute must be resolved and it follows, in my judgment, that Vivendi Holdings 1 Corporation is a necessary and proper party to the existing proceedings.

**EXHIBIT 6**

IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

[2007] EWHC 1605 (CH)

No. HC07C01505

Royal Courts of Justice

Friday, 29th June 2007

Before:

MR. JUSTICE LEWISON

BETWEEN:

ELEKTRIM SA     Claimant

- and -

VIVENDI HOLDINGS 1 CORPORATION     Defendant

*Transcribed by BEVERLEY F. NUNNERY & CO*
*Official Shorthand Writers and Tape Transcribers*
*Quality House, Quality Court, Chancery Lane, London WC2A 1HP*
*Tel: 020 7831 5627   Fax: 020 7831 7737*

MR. R. MILLETT QC and MR. P. McGRATH (instructed by Barlow Lyde & Gilbert) appeared on behalf of the Claimant.

MR. A. MALEK QC and MR. D. QUEST (instructed by Orrick) appeared on behalf of the Defendant.

# JUDGMENT

(As approved by the Judge)

BEVERLEY F NUNNERY & CO
OFFICIAL SHORTHAND WRITERS

LLOYD-LEWIS DEC.
EXHIBIT 6, PAGE 1

6   Mr. Millett QC says that, in effect, the complaint as sought to be amended treats Mr. Solorz as the *alter ego* of Elektrim and, therefore, what I am in effect being asked to do is to declare that my order made earlier this month extends to a person, who in legal terms is the same as Elektrim SA, and that would include Mr. Solorz in circumstances where he is being sued as the *alter ego* of Elektrim.

7   There is, in my judgment, considerable force in that submission. If it were the case that Vivendi Holdings 1 Corporation simply sidestepped the order which I granted by suing Mr. Solorz as the *alter ego* of Elektrim, that would, in my view, justify the extension of the injunction. But whether that is the case is essentially, as it seems to me, a matter for the Seattle court to determine by an examination of the amended complaint sought to be put before it. As it seems to me, on what I have to accept is a relatively cursory examination of the third amended complaint, there are allegations made against Mr. Solorz which do not seem to me to rely on the proposition that he is to be treated simply as the *alter ego* of Elektrim.

8   Paragraph 2 of the amendment alleges that T-Mobile conspired with Solorz and Elektrim under Solorz's control to do various things. Mr. Solorz and Elektrim are pleaded in that paragraph as two separate conspirators. In para.77 there is an allegation that the asset stripping alleged was done to allow Mr. Solorz to enrich himself without fear of being held accountable.

9   Count two in para.149 alleges a claim against Mr. Solorz for operating Elektrim as a corrupt enterprise and para.169 pleads a specific statement by Mr. Solorz himself, which is later in the complaint alleged to have been false. Paragraph 169 also makes allegations against Mr. Solorz of causing Elektrim to be stripped of his shares and, as I understood Mr. Millett in his last remarks, he accepts that that is a separate standalone obligation which would not be caught by the injunction anyway.

10  This not being a case in which there is a legal right not to be sued, this is a case in which the principles of comity have a much greater weight than in cases where this court is simply being asked to enforce a contract. I do not consider that this is an appropriate case to take the extraordinary step of interfering with the process of a foreign court. In my judgment, it will be for the Seattle court to decide whether or not these proceedings are in breach of the injunction which I granted. I am, however, prepared to say that when I referred to the claimant in my order I would have included anyone who is equivalent to the claimant and who is sued simply as the *alter ego* of the claimant, Elektrim.

BEVERLEY F NUNNERY & CO
OFFICIAL SHORTHAND WRITERS

LLOYD-LEWIS DEC.
EXHIBIT 6, PAGE 2

MR. JUSTICE LEWISON:

1. This is an application to extend the scope of an anti-suit injunction, which I granted in early June and which was continued by undertakings on, I think, 15th June. The order was granted to restrain Vivendi Holdings 1 Corporation from continuing proceedings in Miami against Elektrim AS and the Law Debenture Trust.

2. The basis on which I granted that injunction was that Vivendi Holdings 1 Corporation as a bond holder was bound by the terms of the trust deed, which required claims against Elektrim for breaches of the terms of the trust deed and the bonds to be brought by the trustee rather than by the bond holders, and also precluded proprietary claims being made against the trustee as a result of a judgment which I gave on 1st May.

3. The current application concerns a proposal to join Vivendi Holdings 1 Corporation as an additional plaintiff to a complaint which has been made in the United States District Court for the Western District of Washington at Seattle. The matters sought to be pleaded in the third amended complaint do not, in my view, amount to a collateral attack on my judgment of 1st May. That judgment dealt only with the possibility that Vivendi SA might be able to pursue a proprietary claim against the trustee.

4. The question for decision is whether Vivendi's claim was a bar to the trustee distributing monies which it had received towards the redemption of the bonds. I held that the claims were no such bar on the grounds that the claims were fanciful claims, but I reached that conclusion partly because of an order made by an arbitral tribunal releasing the money for payment of the bonds, and partly also on the ground that the trustee was a *bona fide* purchaser for value without notice of the proprietary claim.

5. In the present case, the application to extend the anti-suit injunction is made by Elektrim SA. But one of the unusual features of the application is that the proceedings which it seeks to restrain are not proceedings brought against it, but are proceedings brought against Mr. Solorz, who is I understand a shareholder and director of Elektrim. It is common ground that Mr. Solorz is not a party to any contract which gives him a legal right not to be sued in a particular jurisdiction. The application, therefore, is based on the proposition that the proposed amendments to the complaint before the Seattle court would amount to oppressive and vexatious proceedings.

BEVERLEY F NUNNERY & CO
OFFICIAL SHORTHAND WRITERS