HONORABLE JAMES L. ROBART

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| VIVENDI S.A. and VIVENDI HOLDING I CORP., <br><br> Plaintiffs, <br><br> v. <br><br> T-MOBILE USA, INC., T-MOBILE DEUTSCHLAND GMBH, T-MOBILE INTERNATIONAL AG, DEUTSCHE TELEKOM AG, AND ZYGMUNT SOLORZ-ZAK, <br><br> Defendants. | NO. CV6-1524 JLR <br><br> DECLARATION OF TOMASZ DABROWSKI |

I, Tomasz Dabrowski, depose and say upon my own personal knowledge as follows:

1. I am currently the Managing Partner of the Warsaw office of Salans law firm. I advise Vivendi S.A. ("Vivendi") and its affiliates on their investment in Polska Telefonia Cyfrowa Sp. z o.o. ("PTC"). In this capacity, I have represented Vivendi in its negotiations with Elektrim S.A. ("Elektrim") and its affiliates during 2004, 2005, and 2006.

2. In particular, I have had direct contact with the individual who has been in control of Elektrim since 2003, Zygmunt Solorz-Zak ("Solorz"). Through my involvement in these



ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

OHS East:160370771.4

negotiations and my representation of Vivendi, I have specific knowledge of Elektrim's corporate structure and the influence that Solorz exercises over Elektrim's activities. Solorz consistently represented to myself and Vivendi that he was the decision maker for Elektrim and its related entities.

3. As Polish press has reported, Solorz holds 85% of the shares in Polaris Finance B.V., which in turn holds 71,87% shares in PAI Media. Additionally, Solorz holds directly 23,91% shares in PAI Media. (*See* PAI Media declared a call for subscription of 66,94% of the shares in Elektrim, *Bankier.pl*, December 3, 2007, attached as exhibit A). Through PAI Media, Mr. Solorz owns approximately 35% of the share capital of Elektrim. As such, he controls the largest single stake in Elektrim.

4. Even though this is less than 50% of the Elektrim shares, it is sufficient to allow Solorz to exert de facto control over Elektrim because the majority of the other shareholders in Elektrim owned stakes of less than 5%. Indeed, this 35% stake enabled Solorz to control a majority of votes at Elektrim's shareholders' meetings. (According to Elektrim's bylaws, unless qualified majorities are required by law, a simple majority of shares is sufficient to adopt valid resolutions, including the appointment of Supervisory Board Members.) For example, at the shareholders' meeting on July 12, 2006, PAI Media represented 57% of the total number of votes. The year before, at the July 7, 2005 shareholders' meeting, PAI Media represented 56.96% of the votes. Thus, Solorz's 35% stake gave him decisive influence in (and thus control over) Elektrim.

5.  Solorz determines the composition of the Supervisory Board and, in turn, the Management Board (which was appointed by the Supervisory Board). From 2004 to 2007, the Elektrim Supervisory Board was composed of persons proposed by and/or connected with PAI Media, and thus with Solorz.

6.  Additionally, Solorz's control over Elektrim is illustrated by the numerous admissions he has made in the Polish media. Solorz has repeatedly represented himself to the Polish media as the "owner" of Elektrim and as its decision-maker.

7.  Solorz frequently speaks in press interviews about his strategic and operational plans for Elektrim, and the Elektrim Management Board followed Solorz's instructions. (*See* "I have had enough of Elektrim," *Forbes* (Poland), February 2006, attached as exhibit B). In these interviews, Solorz has repeatedly admitted that he controls Elektrim. For example, in the press article of July 25, 2005 Solorz was approach how Elektrim is going to pay its creditors and stated "I am considering other ways of satisfying creditors' claims" (See "I can pay off the creditors", *Puls Biznesu*, July 25, 2005, attached as exhibit C). Similarly, on October 19, 2005, Solorz was interviewed in connection with the secret transfer of Elektrim's disputed 48% stake in PTC to Mega. Solorz was asked how the company was going to pay off its debts to the bondholders and answered: "I am working on alternative solutions. Please wait calmly. I am negotiating." (*See* "Solorz: I Hid PTC for Elektrim's Benefit," *Puls Biznesu*, Oct. 19, 2005, attached as exhibit D).

8.  Solorz participated directly in many meetings throughout the negotiations regarding PTC, including the final rounds of discussion in Warsaw at the end of March 2006, at which I was present. Counsel representing Elektrim openly looked to Solorz for instruction and



ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

OHS East:160370771.4

deferred to him in meetings where he was present. In meetings and phone calls where Solorz was not present, they often stated that they would have to check with Solorz on various issues.

9. Mr. Piotr Nurowski, the member of the Supervisory Board of Elektrim delegated to fulfill the duties of the President (Chairman) of the Management Board of Elektrim, also deferred to Solorz.

10. It was clearly understood in the meetings with Elektrim's representatives that no actions would be taken by Elektrim unless Solorz approved. Likewise, it was clearly understood that once Solorz agreed on the terms and details of a PTC settlement, Elektrim would take all actions necessary to approve an implement the settlement.

11. When Solorz was not personally present in meetings, Professor Soltysinski, an attorney for Elektrim, was the lead negotiator for Elektrim. Prof. Soltysinski reported to Solorz, and often communicated a position in negotiations as being Solorz's or Elektrim's position. He also seemed careful to qualify any position or idea that did not have Elektrims' approval by expressly stating that qualification. Thus, when Prof. Soltysinski agreed to something, I had no doubt that Solorz and Elektrim were thereby agreeing.

12. Polsat Cyfrowy S.A. – a company from Solorz's capital group – is now a virtual mobile operator (MVNO) in the T-Mobile network.

13. Attached is an October 19, 2005, letter that recently came to light in the Elektrim bankruptcy. The letter shows that Elektrim's UK counsel, Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden"), withdrew from representation of Elektrim because of "conduct that is on its face an effort to put in place and execute transactions that transfer all of Elektrim's principal



assets to entities controlled by a single Elektrim shareholder at allegedly fraudulent values." Skadden concluded that there "may very well be an ongoing fraud on Elektrim, including its creditors, stockholders and employees." (*See* October 19, 2005, letter from Skadden Arps, Slate, Meagher and Flom, attached as exhibit E.)

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 17, 2008.

_____
Tomasz Dabrowski

ROHDE & VAN KAMPEN PLLC
1001 Fourth Avenue, Suite 4050
Seattle, Washington 98154-1000
(206) 386-7353

OHS East:160370771.4