HONORABLE JAMES L. ROBART

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VIVENDI S.A. and VIVENDI HOLDING I CORP.<br><br>                Plaintiffs,<br><br>            v.<br><br>T-MOBILE USA, INC., T-MOBILE DEUTSCHLAND GMBH, T-MOBILE INTERNATIONAL AG, DEUTSCHE TELEKOM AG, and ZYGMUNT SOLORZ-ZAK<br><br>                Defendants. | No. CV6-1524 JLR<br><br>**DECLARATION OF DR. CHRISTOF SIEFARTH, LL.M.** |

I, Dr. Christof Siefarth, LL. M., declare:

**INTRODUCTION**

1.     I have been asked by counsel for Vivendi S.A. ("Vivendi") and Vivendi Holding I Corp. ("VH1") to respond to, and comment upon, the declaration of Professor Paul Oberhammer dated December 19, 2007 (the "Oberhammer Declaration") on German law in connection with the RICO litigation pending before the United States District Court, Western District of Washington, at Seattle (the "RICO Litigation"), in addition to my declaration of November 21, 2007.



2.      My statements hereinafter are limited to German law (both German substantive law and German private international law) and the law of the European Union insofar as it is incorporated into German law.

**FACTS**

3.      I understand that Vivendi and VH1 allege that the Defendants have engaged in a pattern of racketeering activity and other fraudulent conduct, including U.S. wire fraud, and other actions under the Racketeer Influenced and Corrupt Organizations Act (hereinafter referred to as "RICO"), 18 U.S.C. §§1961 (b), (c) and (d).

4.      I have reviewed the Oberhammer Declaration and Defendants' Reply in Support of the Motion to Dismiss dated December 19, 2007. Upon review of the Oberhammer Declaration, I am unable to concur with various conclusions of Prof. Oberhammer regarding German law, particularly as set out in nos. 3 to 10, 13, 18, 29, 42, 43 to 49, 57 and 61 of the Oberhammer Declaration.

**JURISDICTION OF GERMAN COURTS**

5.      Prof. Oberhammer states in nos. 3 through 10 of his declaration that German courts could exercise jurisdiction over Mr. Zygmunt Solorz-Zak and that T-Mobile USA could be sued in Germany by application of Art. 6 no. 1 of the Council Regulation No. 44/2001 (the "Brussels Convention"). I do not agree with this opinion.

**JURISDICTION OVER MR. ZYGMUNT SOLORZ-ZAK**

6.      I strongly disagree with the opinion of Prof. Oberhammer in nos. 4 through 6 of his declaration that the Roche case decided by the European Court of Justice is limited to patent litigation and that the respective reference is misleading.  It is true that the Roche ruling was



2

rendered against the background of patent litigation; however, this is only relevant for the fact why the plaintiffs in such litigation had a strong interest in establishing one single place of jurisdiction in order to prevent divergences with respect to several violations of patents in different states. The European Court of Justice considers this as a reasonable interest not only in patent cases, rather the European Court of Justice considers judgments only irreconcilable if the divergences arise in the context of the same situation of law and fact, see no. 26 of the Roche ruling, attached as **Exhibit A** to my November 21, 2007, Declaration. Furthermore, the European Court of Justice states that the predictability of the place of jurisdiction is of higher value and that forum shopping in general should be prevented. Such principle is now considered to constitute a general rule of interpretation of Art. 6 no. 1 Brussels Convention.

7.    Consequently, the ruling in Freeport v. Arnoldsson (European Court of Justice Judgment of October 11, 2007, case C-98-06, attached as **Exhibit B** to the Oberhammer Declaration) also refers to the Roche ruling with regard to the requirement set out in no. 26 of the Roche ruling, see no. 40 of the Freeport ruling. Therefore, the European Court of Justice applied such principle also to the Freeport case, as Prof. Oberhammer himself admits, a case relating to a contractual claim, not a patent claim. Moreover, the European Court of Justice did not have to interpret in a binding way "the same situation in law and fact". The Court only decided that purported claims in tort and in contract do not necessarily mean a different situation in law and fact. Rather, the European Court of Justice left it up to the national court to consider whether the actions raised against the two defendants, although based on different legal claims, were nevertheless based on the same situation of law and fact with the danger of irreconcilable judgments.

8.    Considering such two cases recently decided by the European Court of Justice, it has to be noted that the background of the case at hand rather resembles the Roche ruling than the Freeport ruling. The Roche ruling relates to a violation of patents, thus, several acts which



are generally considered to constitute a tort. Secondly, similar to the situation in the Roche case, the case at hand includes a concerted action of several subsidiaries of a group of companies subject to such litigation.

9.      Prof. Oberhammer continues to be of the opinion that a German court may have jurisdiction over Mr. Solorz-Zak, see paras. 7 and 9 of the Oberhammer Declaration. As already explained under no. 7 of my November 21, 2007 Declaration, special jurisdiction over Mr. Solorz-Zak cannot be established pursuant to Art. 5 no. 3 Brussels Convention.

10.     Prof. Oberhammer agrees in nos. 9 and 10 of his Declaration that special jurisdiction pursuant to Art. 5 no. 3 Brussels Convention requires that the wrongful act would have to be committed in Germany to establish jurisdiction there. The mere publication of a press release by DT in general cannot be considered as a wrongful action contributable to Mr. Solorz-Zak. I am not aware of a ruling rendered by the European Court of Justice under Art. 5 no. 3 Brussels Convention which dealt with the attribution of tortious misconduct to other parties in a comparable situation. However, commentators to Art. 5 no. 3 Brussels Convention are of the opinion that a reciprocal attribution of acts for the purpose of establishing special jurisdiction for tortious acts would unreasonably broaden the scope of Art. 5 no. 3 Brussels Convention and is, therefore, not feasible, see Schlosser, EU-Zivilprozessrecht [European Civil Procedure Law], 2nd edition 2003, Art. 5 Brussels Convention, note 20a, attached as **Exhibit A**; Weller, IPRax 2000 p. 207, attached as **Exhibit B**. Whilst the press release was indeed published in Germany, it is not asserted by Plaintiffs (nor by Prof. Oberhammer, see no. 13 of the Oberhammer Declaration) that such publication was a press release made by Mr. Solorz-Zak himself. Rather, the statement in question was published on the website of DT (in collusion with Elektrim). Whether Mr. Solorz-Zak acted for Elektrim in the case at hand is not asserted by Plaintiffs. Regardless of whether he did or did not, it is not asserted that Mr. Solorz-Zak committed a wrongful action in Germany himself. However, if Mr. Solorz-Zak had acted for Elektrim, it nevertheless has to be



assumed that the contribution of Mr. Solorz-Zak was conducted at the seat of Elektrim and there is no indication that Mr. Solorz-Zak committed any act in Germany. The mere conduct in collusion with a party (DT) acting in Germany does not mean that Mr. Solorz-Zak is thereby deemed to have committed a wrongful action in Germany.

11.    I further disagree with Prof. Oberhammer's continued views expressed in paras. 3 and 29 of his Declaration that German courts could exercise jurisdiction over T-Mobile USA. It clearly follows from Art. 2 para. 2 Brussels Convention that parties residing outside a EU member state, such as T-Mobile USA, do not fall under the scope of the Brussels Convention. Consequently, T-Mobile USA could not be sued under Art. 6 para. 1 Brussels Convention, either. An analogous application of Art. 6 para. 1 Brussels Convention is not reasonable, see Schlosser, *supra*, Art. 6 Brussels Convention, note 2, attached as **Exhibit C**. Because of the clear wording of Art. 2 para. 2 and Art. 6 para. 1 Brussels Convention an "unintended regulatory gap", which is a prerequisite for an analogy, does not exist.

12.    Sec. 32 German Civil Procedure Code may not serve as a basis for jurisdiction either. It has been asserted by the Plaintiffs under no. 101 of the Third Amended Complaint that "DT, acting in collusion with Elektrim, issued a materially misleading press release". It has not been asserted that T-Mobile USA in this regard itself has committed any tortious acts. I understand that DT's press release has been asserted to constitute a tortious misconduct allegedly performed in Germany. However, in order to establish special jurisdiction before German courts under Sec. 32 German Civil Procedure Act, it is necessary to present facts in a substantiated way which permit the conclusion that a third party's specific misconduct has to be attributed to the other party, e.g. T-Mobile USA acting as a complice. Since this has not been asserted, the question whether there were any acts committed by T-Mobile USA in Germany (which I understand has not been asserted either) does not have to be examined.

## EVIDENTIARY ASPECTS

13.    I further disagree with the opinion expressed by Prof. Oberhammer in paras. 42 to 48 of the Oberhammer Declaration. Prof. Oberhammer, who has according to no. 2 of his May 17, 2007, Declaration no practical experience with German litigation, neither as a judge nor as an attorney, incorrectly reports on the actual handling of Secs. 141 and 142 German Civil Procedure Code.

14.    It may be true that Sec. 141 German Civil Procedure Code, attached as **Exhibit E** to the Oberhammer Declaration, allows the judge to subpoena the parties to appear before the court. However, Prof. Oberhammer fails to explain that judges mostly use templates when inviting the parties to an oral hearing: The parties are requested to appear in order to clarify the facts (making reference to Sec. 141 para. 1 German Civil Procedure Code) and for a – now mandatory – conciliation attempt (making reference to Sec. 278 para. 3 German Civil Procedure Code). Such clarification of the facts by hearing the party pursuant to Sec. 141 German Civil Procedure Code is, however, considered to be a presentation of facts by the respective party, but is not deemed to constitute the taking of evidence. Prof. Oberhammer also fails to mention that Sec. 141 para. 3 clause 2 German Civil Procedure Code allows the parties to request that not the respective party, but a representative attends the hearing, provided the representative is able to clarify the facts and is authorized to make declarations, particularly in connection with entering into a settlement. Such representative may, and in most cases is, the attorney acting as counsel to the party. As a matter of fact, in most cases such request to release the party from attending personally is filed, and almost ever granted by the court.

15.    The statement of Prof. Oberhammer's in no. 42 of his declaration, i.e. that parties to German litigation may absolutely freely apply for the presentation of documents etc., is misleading and incorrectly describes both the statutory provision and the actual handling. The right of the parties to request documents from the other party simply because they might be

relevant for the case is a relatively new concept introduced into German civil procedure law. Sec. 142 German Civil Procedure Code, attached as **Exhibit D**, has been amended recently and requires that the party has to specifically designate the respective documents (e.g. no reference to sets of documents) and that the party has to show the specific fact which it wants to prove therewith as well as the background why it expects such fact might be proven by a specific document. Mere "fishing expeditions" are prohibited under German law. It is very much in the discretion of the court whether to grant the request filed by one party to obtain documents from the other party. Therefore, the difference between U.S. and German litigation remains substantial, not only regarding the request for production of documents.

16.    Pre-trial discovery by U.S. courts is well known and usually executed by German companies. Whilst it is true that German courts consider the enforcement of pre-trial discovery orders as a violation of German sovereignty, this does not affect enforcement measures in the U.S.. Against this background, German companies with subsidiaries in the U.S. generally comply with discovery orders of U.S. courts on a voluntary basis in order to prevent further disadvantages, see Eschenfelder, IPRax 2006 p. 96, attached as **Exhibit E**. Furthermore, in contrast to document discovery orders, German courts have assisted U.S. courts in taking depositions under the Hague Convention on Taking of Evidence, see Munich Court of Appeals, IIC 1982, p. 765, attached as **Exhibit F**.

17.    I mainly concur with the explanations of Prof. Oberhammer in paras. 57 to 61 of the Oberhammer Declaration. However, it should be noted that judgments of U.S. courts are in most cases recognized in Germany. The question whether the enforcement of a U.S. judgment violates the public order has to be decided in each case. Moreover, the partial recognition of a U.S. judgment is always possible, see German Federal Supreme Court, NJW 1992, 3096, fourth head note, attached as **Exhibit G**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of January 2008

_____
Dr. Christof Siefarth, LL.M

8